IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |  |
|---|---|---|
| ALBERT G. HILL, III, individually and derivatively, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| v. | ) ) | 3:07-CV-02020-O |
| TOM HUNT, individually and in his Capacity as Trustee of the Margaret Hunt Trust Estate and as Trustee of the Haroldson Lafayette Hunt, Jr. Trust Estate, et al., | ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are the following:

1. Defendant Albert G. Hill, Jr.'s Motion to Disqualify Plaintiff's Counsel, Bickel & Brewer ("Def's Mot.") (Doc. # 5), filed December 11, 2007;

2. Defendant Albert G. Hill, Jr.'s Brief in Support of his Motion to Disqualify ("Def's Bf.") (Doc. # 8), filed December 11, 2007;

3. Defendant Albert G. Hill, Jr.'s Sealed Appendix in Support of his Motion to Disqualify ("Def's Appx.") (Doc. # 10), filed December 11, 2007;

4. Plaintiff Albert G. Hill, III's Response and Supporting Brief in Opposition to Defendant's Motion to Disqualify and Request for the Court to Sanction Albert G. Hill Jr. and his Counsel ("Pl's Resp.") (Doc. # 11), filed January 7, 2008;

5. Plaintiff Albert G. Hill, III's Appendix to his Response and Supporting Brief and Request for Sanctions ("Pl's Appx.") (Doc. # 11), filed January 7, 2008;

6. Defendant Albert G. Hill, Jr.'s Reply Brief in Support of his Motion to Disqualify

1

Plaintiff's Counsel ("Def's Reply") (Doc. # 17), filed January 22, 2008;

7. Defendant Albert G. Hill, Jr.'s Sealed Appendix to his Reply Brief ("Def's Appx. to Reply") (Doc. # 24), filed January 22, 2008;

8. Plaintiff Albert G. Hill, III's Sur-Reply in Opposition to Defendant Albert G. Hill, Jr.'s Motion to Disqualify ("Pl's Sur-Reply") (Doc. # 69), filed April 30, 2008;

9. Plaintiff Albert G. Hill, III's Appendix in Support of his Sur-Reply ("Pl's Appx. to Sur-Reply") (Doc. # 70), filed April 30, 2008;

10. Defendant Albert G. Hill, Jr.'s Sur-Sur-Reply Brief in Support of his Motion to Disqualify ("Def's Sur-Sur-Reply") (Doc. # 76), filed May 7, 2008;[1]

11. Defendant Albert G. Hill, Jr.'s Appendix in Support of his Sur-Sur-Reply ("Def's Appx. to Sur-Sur-Reply") (Doc. # 77), filed May 7, 2008.

Having reviewed and considered these filings, as well as oral arguments presented at a hearing on this matter, in light of the applicable law, the Court finds that Defendant Albert G. Hill, Jr.'s Motion to Disqualify Plaintiff's Counsel, Bickel & Brewer, should be and is hereby **GRANTED**.

I.      Background

This case involves causes of action arising out of allegations of mismanagement of the Margaret Hunt Trust Estate ("MHTE") and Haroldson Lafayette Hunt, Jr. Trust Estate ("HHTE"). *See* Doc. No. 1 (3:07-CV-2020-O) (N.D. Tex. Dec. 3, 2007). These trusts were created by H. L. Hunt, a wealthy Texas oilman, for his two eldest children, Margaret Hunt Hill

_____

[1] The Court notes that Defendant styled this pleading as a Sur-Reply. *See* Def's Sur-Sur-Reply at 1. However, the Court will refer to this document as a Sur-Sur-Reply, as it is a reply to Plaintiff's Sur-Reply.

and Haroldson Lafayette Hunt, Jr. *Id.* Albert G. Hill, Jr. ("Defendant") is the grandson of H. L. Hunt, and Albert G. Hill, III ("Plaintiff"), Defendant's son, is H. L. Hunt's great-grandson. *Id.* Plaintiff and Defendant are beneficiaries of the MHTE and HHTE. *Id.*

On November 8, 2007, Plaintiff initiated this suit in the 14th Judicial District of Dallas County against trustees, beneficiaries (including Defendant), and others involved in the management of the MHTE and HHTE, alleging violations of the federal Racketeer Influenced & Corrupt Organizations Act ("RICO"), fraud, breach of fiduciary duty, aiding and abetting, and civil conspiracy. *Id.* Plaintiff seeks removal of trustees, and an injunction preventing sale of the MHTE and HHTE's most valuable asset, Hunt Petroleum Corporation. *Id.* Defendants removed this action to federal court on December 3, 2007 on the basis that Plaintiff's RICO claims present a federal question. *Id.*

On December 11, 2007, Defendant moved to disqualify Plaintiff's counsel, the law firm of Bickel & Brewer ("B&B"). *See generally* Def's Mot. Defendant contends disqualification is required because B&B represents him in this matter, as well as in a separate matter. *See* Def's Bf. at 2-4, 5-13. Specifically, Defendant argues that B&B currently represents him with respect to a lawsuit filed in a New York state court ("the Coates Litigation/matter") involving Plaintiff's claim that he is the proper trustee of the Fisher Trust, set up by Defendant's long-time acquaintance Benjamin Coates, Sr. *Id.* at 6. Defendant also argues that B&B represents him in connection with administration of Hunt family trusts ("trust matters"), including the trusts at issue in this litigation. *Id.* at 9. Defendant contends that disqualification is required under the American Bar Association ("ABA") Model Rules, Texas Disciplinary Rules of Professional Conduct, and relevant Fifth Circuit precedent. *Id.* at 5-13.

3

Plaintiff responds that disqualification is not required because B&B never represented Defendant. Pl's Resp. at 4-9, 15-18; Pl's Sur-Reply at 4-14. Additionally, Plaintiff contends that Defendant's motion is frivolous and asks the Court to impose sanctions. Pl's Resp. at 24-25.

These issues have been briefed by the parties. In addition, the Court heard oral arguments regarding this motion on August 21, 2008. This matter is now ripe for determination.

II.    Legal Standards

This Court is obligated to take measures against unethical conduct occurring in connection with any proceeding before it. *In re Am. Airlines, Inc.*, 972 F.2d 605, 611 (5th Cir. 1992). A motion to disqualify counsel, such as the one now before the Court, is the proper method for a party-litigant to bring issues of unethical conduct to the attention of the Court. *Musicus v. Westinghouse Elec. Corp.*, 621 F.2d 742, 744 (5th Cir. 1980). Courts are required to address such motions because if they do not, conflicts may not be addressed at all, and it is the Court's "business" and "responsibility" to address such conflicts. *In re Am. Airlines, Inc.*, 972 F.2d at 611. The Fifth Circuit has elected to remain sensitive to preventing conflicts of interest, and the relevant ethical standards are to be rigorously applied when reviewing disqualification motions. *Id.* Unethical conduct does not have to threaten to taint proceedings to make disqualification proper. *Id.*

Motions to disqualify an attorney are substantive motions determined by standards developed under federal law. *In re Am. Airlines, Inc.*, 972 F.2d at 610. Although federal courts may adopt state or ABA rules as their ethical standards, whether and how those rules should be applied remains a question of federal law. *Id.* Thus, while Texas Disciplinary Rules of Professional Conduct may be relevant to the issue of disqualification, these rules are not

dispositive. *See In re Am. Airlines, Inc.*, 972 F.2d at 610; *In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir. 1992). The court views ABA and state rules and standards in light of the litigant's rights and the public interest, considering whether a conflict has the appearance of impropriety in general, or a possibility that a specific impropriety will occur, and the likelihood of public suspicion from the impropriety outweighs any social interests which will be served by the lawyer's continued participation in the case. *Horaist v. Doctor's Hosp. Of Opelousas*, 255 F.3d 261, 266 (5th Cir. 2001); *In re Dresser Indus., Inc.*, 972 F.2d at 544.

III.  <u>Analysis</u>

As an initial matter, the Court finds that it is appropriate to resolve Defendant's Motion to Disqualify before reaching other pending motions, including Plantiff's Motion to Dismiss without prejudice and Plaintiff's Emergency Motion for Appointment of Receiver. *See* Doc. No. 39 (3:07-CV-2020-O) (N.D. Tex. Feb. 20, 2008); Doc. No. 100 (3:07-CV-2020-O) (N.D. Tex. Jul. 17, 2008). As previously noted, the Fifth Circuit requires courts take a "hands-on" approach to conflicts issues, and this Court is obligated to take measures against unethical conduct occurring in connection with any proceeding before it. *In re Am. Airlines, Inc.*, 972 F.2d at 611. The Court notes that Defendants have objected to dismissal prior to a ruling on the motion for disqualification. *See* Docs. Nos. 45-48 (3:07-CV-2020-O) (N.D. Tex. Mar. 11, 2008) (Responses to Plaintiff's Motion to Dismiss). Accordingly, the Court will address Defendant's motion to disqualify before resolving other pending motions in this case.

In assessing Defendant's motion, the Court will first determine whether Defendant has demonstrated that an attorney-client relationship was formed between himself and B&B. If so, the Court will determine whether Defendant is a current or former client of B&B, as ABA Model

Rules and Texas Disciplinary Rules of Professional Conduct propound different tests for assessing conflicts involving current and former clients. *See* MODEL RULES OF PROF'L CONDUCT R. 1.7, 1.9 (2002); TEX. DISCIPLINARY R. PROF'L CONDUCT 1.07, 1.09, reprinted in TEX. GOV'T. CODE, tit. 2, subtitle G, app. A (Vernon 2005). The Court will then apply the appropriate test(s) and determine whether disqualification is appropriate.

## A.   Attorney-Client Relationship

A party seeking to disqualify opposing counsel on the grounds of current and/or former representation must first establish that an actual attorney-client relationship existed between the party and the attorney he or she seeks to disqualify. *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1341, 1345 (5th Cir. 1981). The attorney-client relationship is contractual, whereby an attorney agrees to render professional services for a client. *Mellon Serv. Co. v. Touche Ross*, 17 S.W.3d 432, 437 (Tex. App.—Houston [1st Dist.] 2000, no pet.). However, the existence of an attorney-client relationship can be found without evidence of a signed written contract. *Nolan v. Foreman*, 665 F.2d 738, 739 n.3 (5th Cir. 1982). An agreement to form an attorney-client relationship, so as to give rise to a fiduciary duty of good faith and fair dealing, may be implied from conduct of parties. *See Perez v. Kirk & Carnahan*, 822 S.W.2d 261, 265 (Tex. App.—Corpus Christi 1991, writ denied). All that is required under Texas law is that the parties, explicitly or by their conduct, manifest an intention to create the attorney-client relationship. *Nolan*, 665 F.2d at 739, n.3. Payment of fees is not dispositive of the issue of whether there is an attorney-client relationship. *Simpson v. James*, 903 F.2d 372, 376 (5th Cir. 1990). Once an attorney-client relationship is established, it generally terminates when the purpose of employment is completed, absent contrary agreement. *Id.*

1.    <u>Attorney-Client Relationship - Coates Litigation</u>

Defendant Albert Hill, Jr. contends that B&B first represented him in connection with a matter involving the Fisher Trust, which culminated in the filing of the Coates lawsuit in a New York state court.  Def's Bf. at 6.  In addition, Defendant asserts that he has never consented to being sued by B&B, and first learned that his law firm was adverse to him when this suit was filed.  *Id.* at 6-7.

Plaintiff contends that the law firm of B&B has never represented Defendant with respect to the Coates litigation or any other matter.  Pl's Resp. at 4.  Plaintiff states that any and all discussions between B&B and Defendant were limited to Defendant's role as a fact witness in connection with the Coates litigation, as Defendant was a long-time acquaintance of Ben Coates, Sr. and had knowledge of Plaintiff's agreement to become trustee of the Fisher Trust.  *Id.* at 7.  Plaintiff notes that Defendant was not a party to the Coates complaint and did not sign an engagement letter with B&B in connection with the Coates litigation.  *Id.* at 8.

The parties have presented evidence demonstrating the following:  (1) Defendant, Plaintiff, and B&B attorneys held strategy meetings regarding the Coates litigation (*see* Def's Appx. to Reply at 3-4, 214, 221, 224-26, 247; Pl's Appx. at 5-6; Pl's Appx. to Sur-Reply at 10, 47, 57, 67, 71); (2)  Ms. Wright (Defendant's personal counsel) and B&B communicated regarding legal bills and case strategy in the Coates matter (*see* Def's Appx. to Reply at 213-18, 220-250, 262, 277; Pl's Appx. to Sur-Reply at 8-9, 51); (3) B&B sent invoices to Defendant regarding work done on the Coates matter (*see* Def's Appx. at 6-40; Def's Appx. to Reply at 5-9, 35-201, 218; Pl's Appx. to Sur-Reply at 62-63, 74-75); and (4) B&B sent draft engagement letters for the Coates litigation to both Plaintiff and Defendant, but only Plaintiff executed an

engagement letter (*see* Def's Appx. at 1-5; Pl's Appx. at 4-5; Def's Appx. to Reply at 13-34; Pl's Appx. to Sur-Reply at 4-7, 16-20, 24-28, 48, 57, 66-67). The parties disagree as to whether this evidence demonstrates the existence of an attorney-client relationship.

### a. Relationship Leading Up to the Filing of Coates Complaint - Communication regarding Legal Strategy and Costs

The evidence shows that, leading up to filing of the Coates suit on September 8, 2006, B&B attorneys engaged in substantive legal discussions with both Plaintiff and Defendant. In addition, the evidence shows that B&B responded to input and direction provided by Defendant regarding legal strategy and costs. Illustrating such interactions are e-mail exchanges between Mr. Brewer of B&B and Ms. Wright, Defendant's personal advisor. For example, on June 2, 2006, Ms. Wright e-mailed Mr. Brewer, stating that she "advised AGH Jr." (Defendant) that Mr. Brewer would have a draft of the complaint and be ready to give a presentation in three weeks. Def.'s Appx. to Reply at 222. Ms. Wright then conveyed Defendant's concern regarding the cost of B&B's legal work on the Coates matter, stating that Defendant was "anticipating a smaller amount to review the case." *Id.* On June 3, 2006, Mr. Brewer responded that "if al(s) want us to put the "pencils down," please advise me ASAP." *Id*. This e-mail demonstrates that B&B responded to input and direction from Defendant, provided through Ms. Wright, regarding legal services on the Coates matter.

Similarly, on June 6, 2006, Ms. Wright e-mailed Mr. Brewer to let him know Defendant and Plaintiff's goal was to have B&B review files, talk to necessary witnesses, and then give a presentation to Plaintiff and Defendant, moving forward after Plaintiff and Defendant considered their options "strategically," "legally," and "personally." *See* Def's Appx. to Reply at 223-24. Ms. Wright expressed Defendant's concern to Mr. Brewer that B&B was pursuing "ancillary

parties" before B&B completed review of files and legal issues. *Id.* Ms. Wright then suggested Mr. Brewer hold a meeting with Defendant for an "update on costs." *Id.* Mr. Brewer responded that B&B was only pursuing those people whose files were needed to intelligently analyze the circumstances, and then indicated when he was available to meet with Defendant. *Id.* at 224. This e-mail exchange indicates that Defendant was, prior to filing of the complaint in the Coates matter, significantly involved in directing B&B's legal work.

Defendant's role in directing B&B's legal work is further evidenced by Ms. Wright's e-mail to Mr. Brewer on June 16, 2006, noting a meeting scheduled on June 27, 2006 for B&B to give a presentation on the Coates matter to both Plaintiff and Defendant. *See* Def's Appx. to Reply at 226; *see also* Doc. No. 123 (3:07-CV-2020-O) (N.D. Tex. Aug. 21, 2008) (Power point presentation entitled "Analysis Concerning the Trust and Estate of Benjamin Coates, Sr."). The e-mail indicates that the presentation was to be given at Defendant's home. *See* Def's Appx. to Reply at 226.

The Court finds that the evidence demonstrates that B&B viewed and treated Defendant as a client leading up to filing of the Coates suit. Defendant was engaged in substantive legal discussions with B&B, and provided input and direction regarding the Coates matter. B&B responded to Defendant's input regarding legal strategy and costs. The evidence does not support Plaintiff's assertion that Defendant was dealt with merely a fact witness. Instead, the Court finds that the evidence before the Court indicates that B&B and Defendant had an attorney-client relationship.

**b.** **Relationship After Initiation of the Coates Litigation - Continued Communication regarding Legal Strategy and Costs**

The Court finds that after the complaint in Coates was filed on September 8, 2006, B&B

continued to treat Defendant as a client.  Even though Defendant was not named as a party in the Coates complaint, the evidence shows that B&B continued to respond to Defendant's input and direction regarding legal costs and strategy.  For example, on February 12, 2007, Ms. Wright sent an e-mail to B&B, copying Defendant and Plaintiff, asking for clarification of specific charges.  *See* Def's Appx. to Reply at 230.  Mr. Brewer sent a letter to Ms. Wright, dated February 15, 2007, providing Ms. Wright with the requested clarifications.  Def's Appx. to Reply at 244.  In addition, on May 16, 2007, Ms. Wright sent a member of B&B an e-mail requesting that the B&B team check with Defendant or Plaintiff directly before undertaking certain work or ideas.  *Id.* at 248.  This evidence demonstrates that after the Coates litigation was initiated, B&B continued to view and treat both Plaintiff and Defendant as clients.

Defendant also continued to communicate regarding legal strategy and participate in meetings with B&B after the initiation of the Coates litigation.  This is demonstrated by an e-mail, dated May 11, 2007, from Ms. Wright to Jennifer Coleman, assistant to Mr. Brewer, asking Ms. Coleman to make sure Defendant was added to an upcoming conference call.  Def's Appx. to Reply at 247.  In addition, on February 14, 2007, Ms. Wright sent an e-mail to B&B stating that she liked the "new and improved" complaint, and suggesting B&B add a certain cause of action to the draft amended complaint.  *Id.* at 246.  Both Plaintiff and Defendant were copied on this e-mail.  *Id.*  Thus, the evidence demonstrates that Defendant was viewed and treated as a client of B&B after initiation of the Coates litigation.

In addition, B&B sent Defendant invoices throughout the Coates litigation, demonstrating that Defendant was viewed and treated as a client.  *See* Def's Appx. to Reply at 5-9, 35-201, 218; Pl's Appx. to Sur-Reply at 62-63, 74-75.  B&B sent Defendant some invoices

directly, asking him to pay third parties for services rendered in the Coates litigation. *See* Def's Appx. to Reply at 35-37, 39-40, 44-45; Pl's Appx. to Sur-Reply at 74. B&B designated the cover letters forwarding these bills as attorney-client communications, demonstrating that B&B considered this correspondence to be privileged. Def's Appx. to Reply at 35, 39, 44. Other invoices were addressed to Plaintiff, and B&B sent copies to Defendant. *Id.* at 46-54, 56-63, 65-83, 84-92, 94-113, 115-122, 123-130, 146-152, 153-161, 162-174, 175-196. The evidence shows that at least some of these copies were hand-delivered to Defendant. *Id.* at 93, 114. In addition, some copies of invoices were forwarded by B&B with a cover letter labeled attorney-client communication. *Id.* at 194, 198.

Two B&B invoices for legal work completed on the Coates matter were sent *after* Defendant's motion to disqualify was filed on December 11, 2007. *See* Def's Appx. to Reply at 194-201. B&B's Director of Administration claims that these bills were mistakenly sent to Defendant. *See* Pl's Appx. to Sur-Reply at 62 ("I inadvertently copied Hill Jr. on two letters enclosing third-party invoices for the Coates Matter. . . From September 2007 onward, I intended to send all bills related to the Coates Matter to Hill III only"). However, this statement implicitly concedes B&B intended to send all invoices prior to September 7, 2007 to Defendant. Additionally, the billing descriptions within the invoices mistakenly sent to Defendant are not unlike the billing descriptions contained in invoices which were intended for Defendant. That B&B contends two statements were mistakenly sent to Defendant does not change the fact that the invoices indicate that B&B had an attorney-client relationship with Defendant. This contention actually suggests that B&B realized it could not continue to represent Defendant after Plaintiff filed this suit against Defendant.

An attorney-client relationship between Defendant and B&B is also demonstrated by the fact that some of the invoices B&B sent to Defendant contain confidential information. Ordinarily, invoices for legal fees are not privileged. *See In re Grand Jury Subpoena*, 913 F.2d 1118, 1123 (5th Cir. 1990) (matters involving payment of attorney fees are generally not privileged); *Stonehenge/Fasa-Tex., JDC, L.P. v. Miller*, Case No. 3:94-CV-912, 1998 WL 826880 at *2-3 (N.D. Tex. Nov. 23, 1998) (finding invoices for legal fees not protected by privilege). However, legal billing statements are privileged material when they contain confidential legal information. *Chaudry v. Gallerizzo*, 174 F.3d 394, 402-403 (4th Cir. 1999) (legal billing statements containing information regarding the advice sought and legal issues researched are privileged). While the majority of descriptions of legal work in the invoices sent to Defendant are general, there are a number of entries that convey confidential information. *See* Def's Appx. to Reply at 36, 50, 51, 52, 71, 87, 120, 124, 164-67, 181. Generally, when attorney-client communications are made in the presence of, or are viewed by, a third party, the communications are not privileged. *U.S. v. Blackburn,* 446 F.2d 1089, 1091 (5th Cir. 1971). Thus, if Defendant were not a client, B&B risked waiving attorney-client and work-product privileges by sending unredacted bills to Defendant.

If Defendant were not a client, B&B would have also risked waiving privilege by including Defendant in meetings regarding legal strategy. The evidence shows that Defendant was present during a number of strategy meetings. *See* Def's Appx. to Reply at 3-4, 214, 221, 224-26, 247; Pl's Appx. to Sur-Reply at 10, 47, 57, 67, 71. The Court finds Defendant's presence at meetings where legal strategy was discussed and receipt of legal invoices containing confidential information demonstrates that Defendant was viewed and treated as a client of

B&B.

Plaintiff asserts that Defendant's presence at meetings and receipt of invoices do not demonstrate an attorney-client relationship, as Defendant was involved in meetings because he was a fact witness, and billing information was provided as a "courtesy" because of Defendant's association with Mr. Coates and Plaintiff. Pl's Appx. at 5-6. Plaintiff further argues that B&B never risked waiver of privilege because of the common legal interest doctrine. Pl's Sur-Reply at 9-10.

Courts have found privilege exists where a confidential communication is made to a third party if that party "has a common legal interest with respect to the subject matter of the communication." *Aiken v. Tex. Farm Bureau Mut. Ins. Co.*, 151 F.R.D. 621, 623 (E.D. Tex. 1993). The Fifth Circuit has stated that two types of communications are protected under the "common legal interest" doctrine, commonly called the joint-defense privilege: (1) communications between co-defendants in actual litigation and their counsel, (2) communications between potential co-defendants and their counsel. *In re Sante Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001); *see also FTC v. Think All Pub, LLC*, No. 4:07-CV-011, 2008 WL 687456 at *1 (E.D. Tex. Mar. 11, 2008) (noting that common interest doctrine is also referred to as joint defense doctrine); *U.S. v. Impasto*, No. 05-325, 2007 WL 2463310 at *4 (E. D. La. Aug. 28, 2007); *Killebrew v. City of Greenwood, Miss.,* No. 4:95-CV-355, 1997 WL 208140 at *2 (N.D. Miss. Apr. 11, 1997). The Fifth Circuit appears to generally require a "palpable threat of litigation at the time of communication" for there to be a common legal interest privilege *Id.* Because the common legal interest privilege is an obstacle to truthseeking, courts narrowly construe the doctrine to effectuate necessary consultation between legal advisers

and clients.  *Id.*  Courts have found a common interest between co-defendants, an insurer and insured, and a patentee and licensee.  *See Power-One, Inc. v. Artesyn Techs., Inc.*, No. 2:05-CV-463, 2007 WL 1170733 at *406 (E.D. Tex. Apr. 18, 2007); *In re LTV Secs. Litig.*, 89 F.R.D. 595, 604 (N.D. Tex. 1981).  It has been questioned whether, in the Fifth Circuit, the common interest doctrine extends to co-Plaintiffs.  *See Stanley v. Trinchard*, No. 02-1235, 2005 WL 399460 at *4 (E.D. La. Feb. 16, 2005).

The Court finds that the narrowly-construed common legal interest doctrine does not provide solid footing for asserting that communications between Defendant and B&B would be privileged if Defendant were not actually a client of B&B.  Plaintiff has produced no evidence of a joint defense or prosecution agreement between himself and Defendant.  In addition, this doctrine is narrowly construed, Plaintiff and Defendant were not co-defendants, and B&B sometimes communicated with Defendant directly rather than through Defendant's personal advisor Ms. Wright.[2]  Accordingly, if B&B did not consider Defendant a client, B&B risked waiver by providing confidential information to Defendant.  The Court finds that such behavior demonstrates the existence of an attorney-client relationship, and does not support the assertion that Defendant was a mere fact-witness who received bills as a courtesy**.**

c.  **Engagement Letters**

Plaintiff also argues that this Court cannot find an attorney-client relationship here because Defendant never signed an engagement letter with B&B.  Pl's Resp. at 8; Pl's Sur-Reply

---

[2] The Court notes that if Defendant was not a client of B&B and the common interest doctrine applied, B&B may still have breached a fiduciary duty by suing Defendant.  The Fifth Circuit has stated that an attorney should not be allowed to proceed against a co-defendant of a former client where the subject matter of the controversy is substantially related to matters in which the attorney was previously involved and where confidential exchanges of information took place.  *Wilson P. Abraham Const. Corp. v. Armco Steel Corp.*, 559 F.2d 250, 253 (5th Cir. 1977).

at 5. Plaintiff has presented affidavits from several attorneys with B&B stating that it is the firm's policy and practice not to represent someone without a signed letter of engagement. Pl's Appx. to Sur-Reply at 48, 57, 66-67. Plaintiff alleges that Defendant did not sign the engagement letter because he did not want to be a client of B&B, and that Defendant lied to the Court about why he was not made a party to the Coates litigation and did not sign an engagement agreement.[3] Pl's Appx. to Sur-Reply at 4-5.

The Court does not find Defendant's failure to sign an engagement agreement dispositive. A signed engagement letter is not required for the formation of an attorney-client relationship, which can be implied from the conduct of the parties. *Nolan*, 665 F.2d at 739 n.3; *Perez*, 822 S.W.2d at 265. While the evidence demonstrates that B&B generally requires a signed engagement letter from a client, B&B is not generally dealing with a situation like the one presented here, involving a father and son who are also business associates.[4] The determination of whether to imply a contract is based on an objective standard, not on the parties' alleged subjective states of mind. *Loeffler v. Lytle Indep. Sch. Dist.*, 211 S.W.3d 311, 346 (Tex. App.—San Antonio 2006, pet. struck); *CRSS Inc. v. Runion*, 992 S.W.2d 1, 4 (Tex.

---

[3] Defendant argues that Mr. Brewer of B&B suggested Defendant not be named a party in the Coates suit in case the Hills would later need to re-file the case in another venue with Defendant named as plaintiff. Def's Reply at 3-4. Defendant states that he declined to sign an engagement letter for the Coates litigation because he wanted any and all benefit of the litigation to go to his son. *Id.* Defendant also contends the engagement letter applies to him because B&B agreed to represent Plaintiff "and his affiliates," which includes Defendant. *Id.* at 4.

[4] *See* Pl's Appx. at 58-60; Def's Appx. to Reply at 202-205 (demonstrating that Plaintiff and AGH Consolidated, Ltd., which Defendant is the president of, entered into a Professional Services Contract that was in effect until October 18, 2007. This contract indicates that Plaintiff was a consultant for AGH Consolidated, Ltd. As a consultant, Plaintiff pursued information regarding administration of the HHTE. Pl's Appx. at 6-7. While the Court does not find this arrangement to be evidence that B&B was retained on behalf of Defendant through Plaintiff, as Defendant appears to argue (*see* Def's Appx. to Reply at 10), this evidence does show a business, in addition to familial, relationship between Plaintiff and Defendant).

App.—Houston [1st Dist.] 1995, writ denied). The objective evidence before the Court shows that B&B viewed and treated both Plaintiff and Defendant as clients regardless of whether there was a signed agreement between Defendant and B&B.

**d.    Payment of Fees**

Plaintiff also argues that the Court should not find B&B and Defendant had an attorney-client relationship because Plaintiff, not Defendant, paid B&B's legal bills. Pl's Sur-Reply at 10; Pl's Appx. at 6; Pl's Appx. to Sur-Reply at 9. Defendant responds that, while it is technically true that funds out of Plaintiff's accounts were used to pay legal bills, the funds in these accounts were proceeds of a loan secured by Defendant's assets from Hill 3 Investments, a company jointly owned by Plaintiff and Defendant. Def's Reply at 7.

The Court does not find it necessary to determine whose funds, ultimately, were used to pay B&B's legal bills. Payment of fees is not dispositive of the issue of whether there is an attorney-client relationship. *Simpson,* 903 F.2d at 376. The Court finds that, even if Plaintiff paid B&B's bills with funds he earned, the evidence before the Court demonstrates that B&B viewed both Plaintiff and Defendant as clients with respect to the Coates litigation.

**e.    Ms. Wright's role**

Plaintiff further argues that communications between B&B and Ms. Wright cannot support a finding of an attorney-client relationship between Defendant and B&B. Pl's Sur-Reply at 8-9. Plaintiff contends that B&B primarily dealt with Ms. Wright in her capacity as advisor to Plaintiff. *Id.* Plaintiff states that while Ms. Wright served as his father's attorney and advisor, his father permitted him to use Ms. Wright as a "sounding board" and advisor with respect to the Coates matter. *See* Pl's Appx. to Sur-Reply at 8 (Plaintiff's affidavit), 30 (e-mail from Ms.

16

Wright to Plaintiff, copying Defendant, regarding agreement with Mr. Brewer), 51 (affidavit of Mr. Brewer stating that B&B communicated with Ms. Wright in her capacity as attorney for Defendant, an important fact witness, and also as an informal advisor to Plaintiff).

The Court finds that the evidence demonstrates that, while Ms. Wright advised Plaintiff in some instances, Ms. Wright was viewed by B&B as Defendant's attorney who communicated with B&B on Defendant's behalf. *See* Def's Appx. to Reply at 222 (Ms. Wright e-mailed Mr. Brewer that she advised Defendant that Mr. Brewer would have a draft of the complaint and a presentation ready in three weeks), 223-24 (Ms. Wright expressed Defendant's concern to Mr. Brewer that B&B was pursuing "ancillary parties"), 247 (Ms. Wright e-mailed Mr. Brewer's assistant, asking her to make sure Defendant was included on call). Ms. Wright's status as counsel to Defendant is evidenced by an e-mail from Ms. Wright asking B&B to separate out charges for the Coates litigation from charges for all "trust" matters, billed as "general" on the invoice in question. *See* Def's Appx. to Reply at 66-83, 175, 249. In this same e-mail, Ms. Wright also asked Mr. Brewer for a summary of the status of the Coates litigation. *Id.* at 249. In response, Mr. Brewer provided the requested litigation summary, but informed Ms. Wright that the "general advice" matter was being handled directly with Plaintiff. *Id.* at 250. The Court finds that Mr. Brewer's response demonstrates that Ms. Wright was not considered an advisor to Plaintiff with respect to the "general advice" matter, which appears to have been B&B's billing description for work completed in connection with the present action. *See* Def's Appx. to Reply at 66-83 (invoice replete with entries for legal work regarding the MHTE and HHTE billed to "general" matter, not Coates matter number). In addition, the response demonstrates that B&B recognized Ms. Wright's loyalty to Defendant, refusing to communicate with her on matters

where Plaintiff and Defendant's interests could be adverse. Accordingly, the Court finds that the evidence presented indicates that B&B was aware of Ms. Wright's status as Defendant's personal advisor and communicated with her as such. Accordingly, Ms. Wright's communications with B&B are relevant to the issue of whether B&B and Defendant formed an attorney-client relationship.

### f. Defendant's Interest in Coates Litigation

Plaintiff argued at the hearing on Defendant's motion to disqualify, held August 21, 2008, that the Court cannot find an attorney-client relationship between Defendant and B&B with respect to the Coates matter because Defendant has no interest in the Coates litigation. Plaintiff noted that Defendant is not a party to the Coates litigation and has no financial stake in its outcome.

The Court does not find this argument persuasive. The Court has found no case, and Plaintiff has not cited any, requiring an individual be named a party in a lawsuit in order for an attorney-client relationship to form. In addition, the argument that Defendant has no interest in the Coates matter is inconsistent with Plaintiff's argument that Defendant and Plaintiff have a common legal interest such that B&B never risked waiver of privilege by involving Defendant in the Coates litigation. Pl's Sur-Reply at 9-10. Furthermore, the evidence indicates that Defendant has interests that may be represented in the Coates litigation, including seeing Mr. Coates' intentions realized and Defendant's interest in his son's well-being. *See* Def's Appx. to Reply at 3-5; Pl's Appx. at 26-49. It is also possible that Defendant has a financial interest in the Coates litigation. The Coates complaint alleges that Defendant was initially selected by Mr. Coates to be in control of trust assets, but that after 2004, Defendant could not devote the time

required to manage the assets and therefore Plaintiff was selected to be trustee.  Pl's Appx. at 35-40.  Thus, the Court finds that Defendant has interests with respect to the Coates litigation that can be represented by counsel.

### g.  Attorney-Client Relationship

While Plaintiff correctly notes that courts do not imply an attorney-client relationship absent the parties intent to create one, the evidence here supports the conclusion that Defendant and B&B created an attorney-client relationship.  All that is required under Texas law is that the parties, explicitly or by their conduct, manifest an intention to create the attorney-client relationship.  *Nolan*, 665 F.2d at 739, n.3.  Overwhelmingly, the evidence here demonstrates that B&B had an attorney client relationship with Defendant with respect to the Coates litigation.

The evidence demonstrates that the belief that Defendant was B&B's client extended throughout the firm of Bickel & Brewer.  Susan McGuinnes, B&B's Assistant Director of Administration, avers that she sent invoices to Defendant because she believed that Defendant would facilitate their payment.  *See* Pl's Appx. to Sur-Reply at 74-75; *see also* Def's Appx. to Reply at 265-66 (Defendant's assistant, Joyce Waller, avers that "Bickel & Brewer would contact me to insure payment was forthcoming on the invoices that they sent to Mr. Hill and Mr. Hill III").  This corroborates that there was an attorney-client relationship between Defendant and the firm of B&B.

Plaintiff has presented evidence that B&B's Assistant Director of Administration, Susan McGuinnes, dealt with Ms. Waller, Defendant's assistant, because she mistakenly believed that Ms. Waller was Plaintiff's assistant.  *See* Pl's Appx. to Sur-Reply at 74-75.  However, the Court does not find this statement material, as Ms. McGuinnes addressed several invoices to Defendant

specifically, regardless of whether Ms. Waller was involved.  *Id.; see also* Def's Appx. to Reply at 35-37, 39-40, 44-45.

Having concluded that Defendant and B&B formed an attorney-client relationship with respect to the Coates Litigation, the Court will now evaluate whether such a relationship was formed with respect to matters involving the MHTE and HHTE, the trusts at issue in this litigation.

2.    Attorney-Client Relationship - Trust Matters

Defendant contends that B&B represented him in connection with the very matters and trusts at issue in this case — specifically, the administration of the Hunt family trusts, including the MHTE and HHTE.  Def's Bf. at 3.  Defendant asserts that, in connection with B&B's representation of him, B&B reviewed hundreds of pages of documents containing Defendant's confidential and privileged information and had numerous discussions with him regarding this information, including information regarding Defendant's finances, the trusts at issue in this case, and Defendant's personal intentions and preferences regarding same.  *Id.*

Plaintiff responds that B&B never represented Defendant with respect to trust matters. Pl's Resp. at 4.  Plaintiff states that B&B has represented Plaintiff in connection with the MHTE and HHTE since November 2006, and that B&B never had any discussions with Defendant about any issue even remotely relevant to this action.  *Id.* at 4-6.

The evidence presented by the parties demonstrates that: (1) a demand letter regarding the HHTE, dated February 21, 2007, was drafted by B&B for Defendant's signature and e-mailed to Plaintiff and Ms. Wright (*see* Def's Appx. to Reply at 10-11, 218, 251-52; Pl's Appx. to Sur-Reply at 11-12, 52); (2) B&B sent billing statements to Defendant containing charges for

legal services regarding the Hunt/Hill family background and trusts at issue in this litigation (*see* Def's Appx. to Reply at 94-97, 115-122, 153-161, 175-187); and (3) Defendant sent Mr. Brewer a letter on August 31, 2007 containing information regarding trust matters, receipt of which was acknowledge by Mr. Brewer by letter dated September 5, 2007 (Def's Appx. to Reply at 11, 209-211; Pl's Appx. to Sur-Reply at 53). The parties disagree about whether this evidence demonstrates an attorney-client relationship with respect to the MHTE and/or HHTE.

### a. HHTE Demand Letter

The evidence demonstrates that B&B prepared a letter to Mr. Bowlin and Mr. Gardner, formerly HHTE advisory board members, for Defendant's signature. *See* Def's Appx. to Reply at 10-11, 218, 251-52; Pl's Appx. to Sur-Reply at 11-12, 52. It appears that, on February 9, 2007, B&B sent a letter on Plaintiff's behalf to Mr. Bowlin and Mr. Gardner regarding a request that Plaintiff indemnify Mr. Bowlin and Mr. Gardner for conflicts arising from their dual roles as advisors to the HHTE and directors, employees, and officers of Hunt Petroleum Corporation. Def's Appx. to Reply at 206. On February 16, 2007, Mr. Bowlin and Mr. Gardner sent a letter to Defendant stating that they were resigning as advisors to the HHTE. *Id.* B&B drafted the HHTE demand letter, dated February 21, 2008, as a response. *Id.* This draft letter, among other things, demands information relating to the HHTE. *Id.* B&B billed for drafting this letter, sending an invoice to Plaintiff with a copy to Defendant. *See* Def's Appx. to Reply at 153-58 (invoice sent March 5, 2007, entry dated 02/20/07 by KZH with a billing description of "prepare letter from A. Hill, Jr. to D. Bowlin"). B&B e-mailed this draft letter to Ms. Wright, Defendant's personal advisor. *See* Def's Appx. at 251-52.

Defendant argues that the HHTE demand letter demonstrates the existence of an

attorney-client relationship, as it was drafted for his signature and on his behalf. Def's Reply at

9. Plaintiff responds that this letter cannot be considered evidence of an attorney-client

relationship because it was drafted at his request, not Defendant's. Pl's Sur-Reply at 12; Pl's

Appx. to Sur-Reply at 11-12.

The Court does not find that the HHTE demand letter demonstrates the existence of an

attorney-client relationship between Defendant and B&B. The Court notes that the evidence

fails to demonstrate that Defendant requested the letter or that there was any discussion of the

letter with B&B. *See* Pl's Appx. to Sur-Reply at 12. In addition, the evidence demonstrates that

Defendant never signed the letter and sent a different response to Mr. Bowlin and Mr. Gardner.

*Id.* Accordingly, the Court does not find that the HHTE demand letter demonstrates that

Defendant and B&B formed an attorney-client relationship with respect to trust matters.

### b. Invoices for Legal Services

The evidence shows that B&B sent Defendant at least one invoice containing charges for

legal services relating to the trusts that are the focus of the trust litigation. *See* Def's Appx. to

Reply at 65-83 (invoice sent July 10, 2007, containing billing entries detailing legal services

B&B performed related to the trusts, including research regarding the removal of trustees,

review of 1935 trust documents, and research regarding M. Hunt Hill's descendants and

beneficiary rights under Texas law). These charges were billed to the "general" matter number

used for work done in this case. *See Id.* at 66-83; 249-50. Some of the billing descriptions

regarding trust matters contain information that appears confidential. *See Id.* at 68-69; *Chaudry,*

174 F.3d at 402-403.

The parties disagree about whether Defendant's receipt of billing information regarding

trust matters is evidence of an attorney-client relationship. Plaintiff has produced evidence that for two months, the accounting department of B&B inadvertently combined invoices for work done in this matter with those for the Coates matter. Pl's Appx. at 100 (Declaration of Michael J. McCormack).

The Court does not find that Defendant's receipt of a bill for work done on trust matters demonstrate the existence of an attorney-client relationship between Defendant and B&B. While it is clear that B&B intentionally sent Defendant invoices for the Coates matter, the evidence does not demonstrate that B&B intentionally sent Defendant bills on trust matters. Given that Defendant and Plaintiff have similar names and bills on the Coates matter were already being forwarded to Defendant, the Court credits Mr. McCormack's statement, which has not been disputed, that trust matter bills were inadvertently sent to Defendant.

The Court notes that three invoices contain charges for work billed to the Coates matter number but that appear relevant to this lawsuit. *See* Def's Appx. to Reply at 94-113 (invoice sent September 4, 2006, containing charges for research on Hunt family background and background of Plaintiff and Defendant); 115-122 (invoice sent October 24, 2006, containing charges for research regarding the Hunt family); 153-161 (invoice sent March 5, 2007, containing billing for review and revisions of letter to T. Hunt, review of the proposed indemnification agreement, and work regarding the letter from A Hill, Jr. to D. Bowlin).

The Court does not find that the HHTE demand letter demonstrates an attorney-client relationship. Similarly, the Court does not find that Defendant's receipt of an invoice containing charges for drafting of the HHTE demand letter demonstrates an attorney-client relationship. In addition, the Court does not find that Defendant's receipt of bills containing charges for research

relating to the Hunt/Hill family background is sufficient evidence of an attorney-client relationship with respect to trust matters. The billing descriptions for work on the HHTE demand letter and research regarding the Hunt/Hill background are not detailed, and no issue of waiver arises due to Defendant's receipt of the invoices containing these charges. In addition, these charges were billed to the Coates matter number, not the "general" matter number that appears to be used for charges in connection with this action. Unlike the Coates invoices, it is not clear that B&B intentionally sent invoices for trust matters to Defendant. Accordingly, Defendant's receipt of invoices with charges relevant to the trusts falls short of establishing that Defendant was viewed and treated as a client of B&B with respect to trust matters.

 **c**. **August 31, 2007/ September 5, 2007 Correspondence**

  The evidence shows that on August 31, 2007, Defendant sent Mr. Brewer a letter informing him of certain matters regarding the trusts at issue in this lawsuit. Def's Appx. to Reply at 209. Specifically, Defendant provided Mr. Brewer with information on Margaret Keliher's role with respect to the MHTE prior to her resignation. *Id.* The letter ended on a friendly note, with Defendant stating that he hoped Mr. Brewer would drop by for a visit sometime soon. *Id.* at 210. On September 5, 2007, Mr. Brewer responded that he appreciated Defendant's explanation, which was "useful" and "informative." *Id.* at 211. Mr. Brewer then provided information on how his summer went, and indicated that he intended to drop by Defendant's home for a visit sometime. *Id.*

  Defendant argues that these letters are evidence of an attorney-client relationship. Def's Reply at 10. Plaintiff disagrees, noting that the letters were not marked confidential. Pl's Sur-Reply at 13.

The Court finds that these letters do not evidence an attorney-client relationship with respect to trust matters. The letters are not marked attorney-client communication. In addition, the letters do not contain legal advice or any request for legal advice. Accordingly, the letters do not establish an attorney-client relationship.

### d. **Attorney-Client Relationship**

The Court finds that the evidence before it falls short of establishing that Defendant and B&B had an attorney-client relationship with respect to trust matters. While the evidence does not negate the possibility that an attorney-client relationship was formed, the evidence does not establish such a relationship. Unlike Defendant and B&B's relationship in connection with the Coates matter, there is no evidence that Defendant and B&B attorneys engaged in substantive legal discussions regarding trust matters or that Defendant provided input and direction regarding legal strategy and costs. Accordingly, the Court concludes that Defendant has failed to meet his burden of establishing an attorney-client relationship with respect to trust matters. *See In re Am. Airlines*, 972 F. 2d at 614.

Although no attorney-client relationship has been established between B&B and Defendant with respect to trust matters, Defendant did demonstrate that he was a client of B&B in connection with the Coates matter. The Court will now assess whether Defendant is a current or former client of B&B with respect to the Coates litigation and apply the appropriate conflicts analysis.

### B. **Suits Against Current Clients**

ABA Model Rules and Texas Disciplinary Rules of Professional Conduct propound different tests for conflicts of interests arising with respect to suits adverse to the interests of

current and former clients.  *See* MODEL RULES OF PROF'L CONDUCT R. 1.7, 1.9 (2002); TEX. DISCIPLINARY R. PROF'L CONDUCT 1.07, 1.09, reprinted in TEX. GOV'T. CODE, tit. 2, subtitle G, app. A (Vernon 2005).  With respect to current clients, the general rule is that, absent exceptional circumstances, a law firm may not sue its own client when it concurrently represents that client in another matter, even when the two matters are unrelated.  *In re Dresser Indus., Inc.*, 972 F.2d at 541.  This prevents a lawyer from suing its existing client without that client's consent.  *See* MODEL RULES OF PROF'L CONDUCT R. 1.7, cmt. 6.

Defendant argues that he should be considered a current client of B&B.  Def's Bf. at 3, 8. Though the Coates litigation was dismissed on January 16, 2008, Defendant contends that B&B's representation of the Hills continues in appellate proceedings.  Def's Reply at 2, n.3. Defendant also contends that the current client analysis is appropriate because the Coates litigation was pending when this motion to disqualify was filed.  *Id.*  Defendant contends that B&B never terminated or otherwise limited its representation of Defendant.  *Id.* at 6; Def's Bf. at 8.

Plaintiff maintains that B&B never represented Defendant, and has not presented arguments or evidence regarding whether, assuming such a relationship, Defendant should be considered a current or former client of B&B.

The Court finds that, as of the date of the filing of the motion to disqualify, the attorney-client relationship between B&B and Defendant with respect to the Coates litigation had not been terminated.  *See Gosser-Samuels v. Jacqueline Designs Enters., Inc.,* 448 F.Supp. 2d 772, 783 (N.D. Tex. 2006) (termination of firm after motion to disqualify was filed did not cause the then meritorious motion to be less meritorious).  Once an attorney-client relationship is

established, it generally terminates when the purpose of employment is completed, absent

contrary agreement.  *Simpson*, 903 F.2d at 376.   Defendant has presented evidence that the

Coates litigation was still pending when this motion was filed.  *See* Def's Appx. to Reply at 197-

201 (invoice, sent January 14, 2008, for legal services billed in Coates matter).   In addition,

Defendant avers that B&B has not returned his personal files or otherwise indicated that its

representation of Defendant terminated.  *Id.* at 5.

The Court finds that because the Coates litigation was pending at the time this motion to

disqualify was filed, it is appropriate to apply the current conflict test under ABA Model Rule

1.7.  This rule provides that, absent exceptional circumstances, a law firm may not sue its own

client when it concurrently represents that client in another matter, even when the two matters

are unrelated.  *In re Dresser Indus., Inc.*, 972 F.2d at 541; MODEL RULES OF PROF'L CONDUCT R.

1.7.   Finding no exceptional circumstances, the Court concludes that B&B's representation of

Plaintiff in this suit violates ABA Model Rule 1.7.

Having concluded that Defendant is a current client of B&B and that B&B's

representation of Plaintiff in this suit violates ABA Model Rule 1.7, it is not necessary to address

whether B&B's representation violates ABA Rule 1.9, regarding suits against former clients.

The Court now considers whether disqualification is appropriate.

## C.     Appropriateness of Disqualification

A finding that an ethics rule has been violated, without more, is not sufficient to support

disqualification.  *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1314 (5th Cir. 1995).   There can be

exceptional circumstances where a clear impropriety will not determine the outcome of a motion

to disqualify, such as where an attorney shows some social interest to be served by the

representation that would outweigh a public perception of impropriety. *In re Dresser Indus., Inc.*, 972 F.2d at 544-45. In determining whether disqualification is appropriate, a court should consider whether a conflict has the appearance of impropriety in general or a possibility that a specific impropriety will occur, and the likelihood that public suspicion from the impropriety outweighs any social interest which will be served by the lawyer's continued participation in the case. *Id.; Horaist*, 255 F.3d at 266; *In re Dresser Indus., Inc.*, 972 F.2d at 544.

    1.   Appearance of Impropriety

      The Court finds that B&B's representation of Plaintiff in this action creates the appearance of impropriety. The similarities between the Coates matter and this action, as well as the timing of these two actions, creates the appearance that B&B may have learned information from Defendant in connection with the Coates matter that has or will be used to Defendant's disadvantage in this action.

      Plaintiff alleges in this case and in Coates that the respective defendants are thwarting the will of the trust settlors, have engaged in fraud and mismanagement of trust assets, and are subjecting the trust assets to substantial tax liabilities. *See generally* Doc. No. 1 (3:07-CV-2020-O) (N.D. Tex. Dec. 3, 2007) (Notice of Removal attaching Complaint); Pl's Appx. at 26-56 (Amended Complaint in Coates Litigation). Both actions involve allegations that central figures in the trusts have improper conflicts of interest and have failed to disclose information. *Id.* Plaintiff seeks removal of the individuals exercising control over trust assets in both cases. *Id.*

      These similarities, when coupled with the timing of the two actions, give rise to the appearance of impropriety. B&B filed the Coates complaint on behalf of Plaintiff and Defendant on September 8, 2006. Pl's Appx. at 5 (stating date Coates complaint was filed). Two months

later, in November 2006, Plaintiff contends he hired B&B to represent his interests with respect

to the HHTE and MHTE. *See* Pl's Resp. at 4. On November 8, 2007, B&B initiated this suit on

Plaintiff's behalf against, among others, Defendant. Doc. No. 1 (3:07-CV-2020-O) (N.D. Tex.

Nov. 8, 2007). The Court finds that the similarities between the Coates action and this action,

and the timing of these actions, gives rise to the appearance that B&B may have learned

information from Defendant in connection with the Coates matter that has or will be used to

Defendant's disadvantage in this action.

While the Coates matter pertains to the Fisher Trust and this action pertains to the HHTE

and MHTE, the evidence suggests that facts relevant to the Coates litigation are also relevant in

this action. These facts include those relating to Defendant's skill and knowledge with regard to

trust asset management. The Coates complaint alleges that Ben Coates initially wanted

Defendant to take over management of his trust assets, with Plaintiff to succeed Defendant in

this role. Pl's Appx. at 34-35. It is further alleged that Mr. Coates wanted the Hills to manage

his trust assets because of his "appreciation and respect" for what the Hills had achieved with

respect to their own assets. *Id.* at 36-42. It is alleged that Mr. Coates did not feel his own

children had the skills necessary to manage trust assets, unlike the Hills. *Id.* These allegations

indicate that Defendant's skill with respect to wealth management in the trust context is relevant

to the Coates matter. Similarly, in this action, Defendant's skill and trust asset management

abilities are at issue, as Plaintiff's alleges, among other things, that Defendant conspired to avoid

paying taxes with respect to the HHTE and MHTE. The fact that Defendant's trust asset

management is relevant in both suits creates the appearance that B&B learned information from

Defendant in connection with the Coates matter that has or will be used to Defendant's

disadvantage in this action.

This appearance of impropriety is further created by evidence that Defendant provided personal information to B&B in connection with the Coates matter that may be relevant to this action. Defendant has provided undisputed evidence that he gave B&B his personal files on the Coates matter, including correspondence to/from Mr. Coates. Def's Appx. to Reply at 4-5 (Defendant's affidavit), 218 (Ms. Wright's affidavit). The Coates complaint alleges that, as Mr. Coates prepared to put the Hills in control of his trust assets, Defendant provided Mr. Coates with advice on structuring these assets. Pl's Appx. at 36-40. Thus, Defendant's personal files may contain correspondence regarding structuring and management of trust assets, potentially revealing Defendant's personal preferences regarding the Hunt family trusts. Shortly after receiving Defendant's files, B&B began representing Plaintiff, culminating in the filing of this suit against Defendant, alleging mismanagement of the Hunt family trusts. The Court finds these circumstances creates the appearance of impropriety.[5]

This appearance of impropriety is furthered by the fact that B&B researched the Hunt and Hill family backgrounds, billing this work to the Coates matter number, in the months before B&B began its representation of Plaintiff in connection with trust matters. See Def's Appx. to Reply at 94-97 (invoice sent to Hills on September 4, 2006 with charges on 8/29/06 for research on the background of A. Hill Jr. and A. Hill III and on 8/30/06 regarding the Hunt family); 115-

---

[5] The Court notes that Defendant avers that the Hunt Family Trusts were discussed at strategy meetings with B&B in connection with the Coates litigation. Def's Appx. to Reply at 5. Plaintiff and a number of B&B attorneys have averred that these trusts were never discussed. Pl's Appx. at 5 (Plaintiff's Affidavit); Pl's Appx. to Sur-Reply at 10 (Plaintiff's affidavit), 47 (Declaration of Mr. Brewer), 57 (Declaration of Mr. Bickel), 67 (Declaration of Mr. Collins), 71 (Declaration of Mr. Affa). The Court does not find it necessary to determine the credibility of these respective assertions, as the objective evidence before the Court demonstrates that B&B's representation of Plaintiff in this action gives rise to an appearance of impropriety.

122 (invoice sent to Hills on October 24, 2006 with charges on 9/1/06 and 9/5/06 for research regarding the Hunt family). The fact that B&B used the Coates matter number for research on the Hunt/Hill family background suggests such research is relevant to the Coates matter, and that Defendant, who likely has extensive knowledge regarding his own family's background, provided information to B&B regarding his family. Such information is relevant to this action, creating the appearance that B&B may have learned information from Defendant that has or would be used to Defendant's disadvantage in this action.

The appearance of impropriety created by B&B's representation of Plaintiff is highlighted by an e-mail from Ms. Wright to Mr. Brewer, dated February 14, 2007, suggesting that conspiracy be added as a cause of action in the amended Coates complaint. Def's Appx. to Reply at 246. While it is unclear whether a conspiracy count was ever added in the Coates lawsuit, Defendant is accused of civil conspiracy in this action. This evidence gives rise to the appearance that Defendant and his personal attorney made suggestions to strengthen Plaintiff's chances of prevailing in Coates, and that these suggestions were then used against Defendant in this suit.

Similarly, Defendant avers that, in connection with the Coates litigation, B&B attorneys revealed that it is part of their strategy to allege that a defendant attempted to avoid paying taxes or to include a reference to the IRS in pleading of a lawsuit in order to harass a defendant. Def's Appx. at 5. In Coates, the amended complaint alleges that the defendant mismanaged trust assets in a way that subjects the assets to liability for payment of U.S. taxes. Pl's Appx. at 53-54. In this suit, it is alleged that Al Hill, Jr. and the other defendants have conspired to avoid paying taxes with respect to the HHTE and MHTE. Doc. No. 1 (3:07-CV-2020-O) (N.D. Tex. Dec. 3,

2007) (Complaint at 37-38).

The similarities between the legal and factual issues involved in the Coates matter and this action, coupled with the timing of these two actions, create the appearance that B&B may have learned information from Defendant that led to the filing of this lawsuit or that would otherwise be helpful to B&B in pursuing this litigation.[6] Accordingly, B&B's representation of Plaintiff in this suit creates the appearance of impropriety, indicating that disqualification of B&B is warranted for its violation of ABA Model Rule 1.7.

2.  Likelihood of Public Suspicion

The Court finds that disqualification of B&B is also appropriate in light of the risk of public suspicion if B&B were allowed to continue representing Plaintiff in this case. The Court has found Defendant to be a client of B&B. B&B also represents Plaintiff, who is suing Defendant. The Court finds that allowing B&B to continue pursuing this case against its own client would severely undermine public confidence in lawyers and the justice system as a whole. As previously discussed, the factual and legal similarities between the Coates matter and this action create the appearance that B&B may have learned information from Defendant that led to the filing of this lawsuit or that would otherwise be helpful to B&B in pursuing this litigation. The public would likely be suspicious of a justice system that appears to allow an attorney to obtain information from its client relevant to an action it brings against that client. Additionally, it is very likely that B&B will depose Defendant, cross examine him at trial, argue to the jury that he lacks credibility, and attack Defendant's integrity and/or skill with respect to trust asset

---

[6] The Court is not suggesting that any mismanagement of the HHTE or MHTE has in fact occurred, and leaves resolution of such issues to trial on the merits.

management.  Allowing B&B to do this, after having represented Defendant in connection with a lawsuit alleging that Defendant was selected to control substantial trust assets due to his trust asset management skill, would cause reasonable members of the public to question the duty of loyalty attorneys owe to clients and invite skepticism of the justice system.  The Court notes that this is a high-profile case, and that the public is aware of the disqualification issue.  Pl's Appx. at 176 (article entitled "Betrayal of Trust by Bickel & Brewer: All Hill Jr. Moves to Disqualify Bickel and Brewer"); *see also* Dallas Morning News article by Diane Jennings, dated August 22, 2008, entitled "Bickel & Brewer Law Firm's Role in Hunt Heirs' Case Debated."  Accordingly, the Court finds the likelihood of public suspicion if B&B were allowed to remain in this case demonstrates that disqualification is appropriate.

Plaintiff argues that even if this Court finds a violation of an ABA or state rule or standard, Defendant's motion should be denied because disqualification is a harsh remedy, and such relief cannot be granted unless Defendant demonstrates actual harm.  Pl's Resp. at 10-11. Plaintiff also argues that disqualification is improper due to the substantial burden on Plaintiff, and because the motion to disqualify represents an improper effort to gain a tactical advantage. Pl's Sur-reply at 17-18.

The Court does not find that actual harm is a requirement for disqualification for conflicts of interest.  The Fifth Circuit has elected to remain sensitive to preventing conflicts of interest, and unethical conduct does not have to threaten to taint proceedings to make disqualification proper.  *In re Am. Airlines, Inc.*, 972 F.2d at 611.

Similarly, the burden on Plaintiff does not indicate that disqualification is inappropriate. Disqualification will always place a burden on the litigant whose counsel is disqualified.  This

Court is required to weigh this burden with the public's interest, as disqualification cases indicate that public policy considerations drive the disqualification analysis. *See Islander E. Rental Program v. Ferguson*, 917 F.Supp. 504, 508 (S.D. Tex. 1996).

The Court also finds insufficient evidence that Defendant's motion is a tactical weapon. The Court notes that Defendant sought disqualification shortly after this case was filed, and that, while Defendant did file new evidence in support of his reply, some evidence was not available when Defendant filed his motion. *See* Def's Appx. to Reply at 194-201 (invoices sent to Defendant after the filing of this motion). In addition, any prejudice to Plaintiff was reduced by allowing Plaintiff to file his Sur-Reply and appendix. Accordingly, for the foregoing reasons, the Court finds disqualification of B&B is appropriate.

IV.     Motion for Sanctions

Plaintiff asks the Court to sanction Defendant and his counsel under the Court's inherent authority and under 28 U.S.C. § 1927. Pl's Resp. at 12-13, 24. Having found Defendant's motion meritorious, the Court denies this request.

V.     Conclusion

Based on the foregoing reasons, the Court finds that B&B should be disqualified from representing Plaintiff in this suit. Defendant and B&B formed an attorney-client relationship with respect to the Coates litigation. Defendant was a client of B&B's when this lawsuit and motion to disqualify were filed. Accordingly, B&B's representation of Plaintiff in this suit violates ABA Model Rule 1.7, which prohibits an attorney from representing a party who is suing a current client. The Court finds that disqualification of B&B is appropriate given the appearance of impropriety and risk of public suspicion of the justice system were B&B allowed

34

to continue to represent Plaintiff in this action.

Accordingly, the Court finds that Defendant Albert G. Hill, Jr.'s Motion to Disqualify Plaintiff's Counsel, Bickel & Brewer, should be and is hereby **GRANTED.**

Plaintiff is ORDERED to retain replacement counsel within **45 days** of the date of this order. If Plaintiff retains counsel before then, he should notify the Court immediately, with replacement counsel filing an appearance of record, so that this case can proceed.

Orders granting motions to disqualify counsel are not appealable before final judgment. *See Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424 (1985); *Gibbs v. Paluk*, 742 F.2d 181 (5th Cir. 1984). It is not the intention of this Court to certify this issue for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). To the extent mandamus relief may be available, the parties are free to seek such relief should they consider it appropriate. However, this Court does not intend to revisit the disqualification issue, and the parties are ORDERED to file no further pleading on this issue. All further relief on this issue should be sought from the United States Court of Appeals for the Fifth Circuit as may be appropriate in due course.

**SO ORDERED** this **4**th day of **September, 2008.**


_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**