IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

**ALBERT G. HILL, III,**                    §
                                            §
                    Plaintiff,              §
                                            §
v.                                          §          Civil Action No. **3:07-CV-2020-L**
                                            §
**WILLIAM SCHILLING, *et al.*,**            §
                                            §
                    Defendants.             §

## MEMORANDUM OPINION AND ORDER

Before the court is Blind Faith Speculations, L.L.C.'s Motion for Leave to Intervene, filed

October 15, 2015 (Doc. 1642). Having considered the motion, response, reply, record, and

applicable law, the court **denies** Blind Faith Speculations, L.L.C.'s Motion for Leave to Intervene.

## I.    Factual Background and Procedural History

This case involves a family dispute relating to the management of the Margaret Hunt Trust

Estate ("MHTE") and the Haroldson Lafayette Hunt, Jr. Trust Estate ("HHTE"), two trusts created

by the late Texas oil magnate H.L. Hunt for his eldest children, Margaret Hunt Hill and H. L. Hunt,

Jr. *See generally* Pl.'s First Am. Compl. (Doc. 616). Margaret Hunt Hill had three children,

including Albert G. Hill, Jr. ("Al Jr."), all of whom were beneficiaries of both the MHTE and

HHTE. *See id.* Al Jr., in turn, had three children, including Plaintiff Albert G. Hill, III ("Hill III"),

all of whom were also beneficiaries of the MHTE and HHTE. *See id.*[1]

---

[1] In a recent decision, the United States Court of Appeals for the Fifth Circuit mistakenly stated that H.L. Hunt was Albert G. Hill, III's father. *See Campbell Harrison & Dagley, L.L.P. v. Hill*, 782 F.3d 240, 241 (5th Cir.), *cert. denied*, 136 S. Ct. 247 (2015) ("Underlying the action is the Hills' claimed interest in several trusts established by Hill's father, H.L. Hunt."). H.L. Hunt is Albert G. Hill, III's great-grandfather.

In December 2007, Hill III brought this lawsuit in Texas state court in his individual capacity and on behalf of the MHTE and HHTE against specific beneficiaries, including Al Jr. and his siblings, the trustees, and members of the advisory boards (hereinafter "Defendants"), alleging wrongdoing in the management of the trusts and seeking a declaration that he was a direct and vested beneficiary of the MHTE. Following removal to federal court based on federal question jurisdiction, the case was randomly assigned to United States District Judge Reed C. O'Connor. After several years of litigation (including related state court actions and a severed attorney's fees dispute in federal court), the parties entered into a Global Settlement Agreement and Mutual Release Agreement (the "Settlement Agreement") (Doc. 879). One of the primary purposes of the Settlement Agreement was to separate the financial interests of Hill III from Defendants. To achieve this separation, separate new trusts (the "New Hunt Trusts") were established for each beneficiary of the MHTE and the HHTE. Among other things, the Settlement Agreement required Hill Jr. to pay a settlement to Hill III into the court's registry and required Hill III to replace trustees of various trusts with a bank trustee with greater than $10 billion in assets under management. (Doc. 879 at 19).

On November 8, 2010, Judge O'Connor issued a Final Judgment (Doc. 999) effectuating a comprehensive settlement between the various parties. In addition to ordering that a bank with greater than $10 billion in assets under management serve as sole trustee of the various trusts, the Final Judgment also contained the following provision regarding payment of Hill III's attorney's fees and costs:

> IT IS FURTHER ORDERED that any attorneys' fees and costs incurred by Al III, Erin and/or the Grandchildren in connection with the litigation settled through the Settlement Agreement may, at the election of All III, be paid from Al III's separate interest in the MHTE or, if such payment is to be made after the division of the

>MHTA as directed by this Final Judgment, from the New Hunt Trust of which Al III
>is the beneficiary, and the Trustee of such trust is hereby authorized, directed and
>ORDERED to make such payments upon either (a) Al III's request and written
>certification, made under oath before a notary public, that the attorneys' fees and
>costs requested to be paid were incurred by Al III, Erin, and/or the Grandchildren in
>connection with the litigation settled through the Agreement, or (b) further order of
>this Court.

Final J. ¶ 39 (Doc. 999).  The Final Judgment also stated that claims by attorneys for fees and costs,

or "claims asserted in this Court by any other creditor of Al III or Erin, are hereby severed into a

separate action." *Id.* ¶ 40. The severed action was numbered Civil Action No. 3-10-CV-2269-O (the

"2269 Action").[2]   The Final Judgment further provided:

>[A]ny future distributions made to [Hill III] relating to his interest in the MHTE or
>the MHTE-Albert G. Hill III Trust shall be paid into the registry of this Court for the
>above-referenced severed action [brought by CHD and CNBW].  All funds paid to
>the registry of this Court under this Agreed Final Judgment shall be deemed to have
>been interpleaded into the registry of this Court for the benefit of Al III and subject
>to the claims in the above-referenced severed action and shall be disbursed only upon
>further Order of this Court after resolution of the above-referenced severed action.

Final J. ¶ 41.

On October 15, 2015, Blind Faith Speculations, LLC ("BFS") filed its motion to  intervene

in this lawsuit as a matter of right and as a matter of the court's discretion.[3]  In support, BFS argues

that, as a judgment creditor of Hill III, it is entitled to intervene to recover a debt secured by a note

---

[2] The Hills were represented by several attorneys in the trust dispute, including Lisa Blue, Charla Aldous, and Steve Malouf (collectively, "BAM"), and CHD and CNBW.  Following severance into the 2269 Action, the court entered an order awarding attorney's fees to BAM.  In light of an arbitration agreement between Hill III and CHD and CNBW, the court severed that dispute from the 2269 Action and referred it to arbitration.  *See* Civil Action No. 3-12-CV-4599-O-BK (the "4599 Action").  On June 3, 2015, the court issued a final judgment in favor of CHD and CNBW in the 4599 Action.  Final J. (Doc. 119).  CHD and CNBW subsequently filed a motion for payment in this action arguing that the judgment in the 4599 Action should be paid out of the proceeds held in the registry in this case and/or from the MHTE-Albert G. Hill III Trust corpus upon court order.  (Doc. 1576).  This motion is pending and under consideration by the court.

[3] On October 15, 2015, BFS also sought to intervene in *Campbell Harrison & Dagley, L.L.P. v. Hill*, 3-12-CV-4599-L-BK, but has since withdrawn that motion.

executed December 26, 2007 by Ahtrey Investments, L.L.C. ("Ahtrey"), assignee of Hill III, payable to BFS. BFS Mot. Intervene ¶¶ 3-7 (Doc. 1642).[4] BFS asserts that the debt constitutes an advance of funds to the Hills and Ahtrey to be used by them to pay attorney's fees and expenses incurred in this lawsuit. *Id.* ¶ 4. BFS further argues it is a "secured creditor" of the Hills, and its collateral consists of the proceeds held in the court's registry. *Id.* ¶ 5. BFS also states that it did not previously seek to intervene because "the Hills and Ahtrey at one time agreed to an agreement that would have protected [its] interest," which has since expired. *Id.* ¶ 16. BFS asserts that as of September 30, 2015, the amount due and owing under the note was $936,810.75 (including principal and interest). *Id.* ¶ 6.

In opposition, Hill III argues that: (1) the court lacks supplemental jurisdiction over BFS's proposed claim in intervention; (2) BFS is attempting to assert the same claims that PBL Multi-Strategy Fund, L.P. ("PBL") asserted in Civil Action No. 3-10-CV-2269-L; and (3) BFS has failed to meet the requirements for intervention under Federal Rule of Civil Procedure 24. Hill III Resp. 8-13 (Doc. 1644). Hill III also argues that BFS's intervention "would multiply an already sprawling litigation — in which the main case was closed in 2010 (and where over 600 documents have been filed on the docket since the Final Judgment was entered."). *Id.* at 14 (Doc. 1644). This statement by Hill III, while true and well-grounded, is the classic case of "the pot calling the kettle black," as he is the one most responsible for the proliferation of this "sprawling litigation." The statement by

---

[4] BFS's legal briefs are replete with inconsistencies that make it difficult for the court to understand its claim. For example, while BFS asserts in its motion to intervene that its loan to the Hills and Ahtrey was secured by a note dated *December 26, 2007* (*see* BFS Mot. Intervene ¶ 5), BFS contends in its Reply that its claim is "based on a separate note dated *June 5, 2009*[.]" *See* BFS Reply at 2 (emphasis added). In addition, while BFS attaches a copy of a note dated June 5, 2009, as an exhibit to its Reply Brief, the document is unsigned.

Hill III reminds the court of an old Southern saying, "Advice is a lot like cooking; one should try it before feeding it to others."

In its reply brief, BFS states that the court has supplemental jurisdiction over its claims "because the court has custody and control over funds in which BFS has a lien." Reply 1 (Doc. 1656). BFS further contends that: "Not allowing the intervention would deprive BFS of its ability to satisfy its lien claim to part of the funds in *custodia legis*." *Id.* at 3. BFS acknowledges that it could "assert its claim in another forum and reduce that claim to judgment, including foreclosure of its lien, [but] it would still have to come back to this Court to get its money." *Id.*

Having been fully briefed, BFS's Motion to Intervene is ripe for decision. The court first addresses whether it has federal subject matter jurisdiction to consider BFS's claim.

## II.    Analysis

BFS alleges that the court has "jurisdiction to adjudicate [its] claim under 28 U.S.C. § 1367(a) based upon the court's jurisdiction under 28 U.S.C. § 1331." *See* Doc. 1642-1 (Proposed Complaint in Intervention). Hill III challenges BFS's assertion of supplemental jurisdiction under § 1367(a), arguing that the district court's original jurisdiction was founded solely on federal question jurisdiction under § 1331, and BFS's attempt to recover on a note guaranteeing a loan is not "so related" to the underlying lawsuit that the court must exercise supplemental jurisdiction. The court agrees with Hill III's argument.

Section 1367(a) provides, in pertinent part, as follows:

(a) . . . [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so *related to* the claims in the action within the original jurisdiction that they form part of the *same case or controversy* under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a) (emphasis added).  Otherwise stated, "Section 1367(a) is a broad grant of supplemental jurisdiction over other claims within the same case or controversy, as long as the action is one in which the district courts would have original jurisdiction." *Griffin v. Lee*, 621 F.3d 380, 385 (5th Cir. 2010) (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005)).

In this case, the underlying lawsuit asserted a federal racketeering claim, a matter that fell within the court's original jurisdiction allowing for removal to this court.  *See* 28 U.S.C. § 1331. The dispute centered on two trusts in which Hill III held an interest, and Hill III brought RICO and state common law claims against his father and other members of his extended family regarding mismanagement of the two trusts.  Thus, whether this court has supplemental jurisdiction over BFS's proposed claim in intervention on the note depends on whether the claim on the note and the federal claim are "so related" that they form part of "the same case or controversy." *See* 28 U.S.C. § 1367(a).

The gravamen of BFS's proposed complaint is the alleged failure of the Hills to honor a promissory note and a guaranty.  BFS's claim has little relation to the underlying lawsuit.  Further, other than its mere *ipse dixit*, BFS cites no cases in support of its argument that the court has supplemental jurisdiction in the circumstances presented.  Having carefully considered the parties' legal briefs, the record, and applicable law, the court concludes that BFS's claim that it is entitled to recover under a note and guaranty from the Hills is not "so related" to the underlying lawsuit involving Hill III's RICO and common law claims against his father and relatives such as to allow this court to exercise supplemental jurisdiction over this state law claim under 28 U.S.C. § 1367(c).

"Federal courts are courts of limited jurisdiction.  They possess only that power authorized by the Constitution and statute, which is not to be expanded by judicial decree."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994) (internal citations omitted).  "Unless a dispute falls within the confines of the jurisdiction conferred by Congress, such courts do not have authority to issue orders regarding its resolution."  *Griffin v. Lee*, 621 F.3d 380, 388 (5th Cir. 2010) (quoting *Giannakos v. M/V Bravo Trader*, 762 F.2d 1295, 1297 (5th Cir. 1985)).  "Such jurisdiction goes to the core of the court's power to act, not merely to the rights of the particular parties."  *Id.* (quoting *Giannakos*, 762 F.2d at 1297).

Further, even assuming, *arguendo*, that it has supplemental jurisdiction, the court would decline to exercise such jurisdiction pursuant to 28 U.S.C. § 1367(c).  Under § 1367(c), a federal district court is permitted to decline to exercise supplemental jurisdiction when all claims over which the court had original jurisdiction have been dismissed.  *See* 28 U.S.C. § 1367(c).  A Final Judgment was entered in this civil action on November 8, 2010 (Doc. 999), and was affirmed by the Fifth Circuit in 2012.  *See Hill v. Schilling*, 495 F. App'x 480, 482-83 (5th Cir. 2012), *cert. denied*, 133 S. Ct. 2859 (2013).  Moreover, the Final Judgment severed all attorney's fees claims and potential creditor's claims into the 2269 Action.  On January 10, 2012, the court entered a final judgment in that action awarding attorney's fees to Hill III's former counsel.  (Doc. 384).  The Fifth Circuit has affirmed that final judgment.  *Hill*, 495 F. App'x at 487.[5]

---

[5] While BFS argues in its reply that this is "one of those relatively exceptional cases where the exercise of supplemental jurisdiction is appropriate even though the federal law claim has been adjudicated[,]" the court declines to consider this argument raised for the first time in BFS's reply brief.  *See, e.g., Senior Unsecured Creditor's Committee of First RepublicBank v. F.D.I.C.*, 794 F. Supp. 758, 772 (N.D. Tex. 1990).  Further, BFS relies on district court cases from other circuits, which are not controlling or persuasive authority.

While it might be more convenient for BFS to litigate its claim on a note and guaranty in this forum, convenience does not create federal subject matter jurisdiction. Accordingly, the court will deny BFS's motion for leave to intervene for lack of subject matter jurisdiction.[6]

## III.    Conclusion

For the reasons herein stated, the court **denies** Blind Faith Speculations, L.L.C.'s Motion for Leave to Intervene. The court **directs** the Clerk of Court to file a copy of this Memorandum Opinion and Order in Civil Action Nos. 3:07-CV-2020-L-BK and 3:12-CV-4599-L-BK.

---

[6] Alternatively, the court finds that, even assuming the existence of supplemental jurisdiction, BFS's motion for leave to intervene should be denied for failure to satisfy the criteria for either intervention as a matter of right or permissive intervention under Federal Rule of Civil Procedure 24. A party is entitled to intervene as of right if:

> (1) the motion to intervene is timely filed; (2) the potential intervener asserts an interest that is related to the property or transaction that forms the basis of the controversy in the case into which she seeks to intervene; (3) the disposition of that case may impair or impede the potential intervener's ability to protect her interest; and (4) the existing parties do not adequately represent the potential intervener's interest.

*See John Doe No. 1 v. Glickman*, 256 F.3d 371, 375 (5th Cir. 2001). BFS has failed to satisfy the court that its motion, filed approximately five years after Judge O'Connor issued a Final Judgment in this matter (*see* Doc. 999), is timely. *See id.* at 376 (enumerating four-factor test for determining timeliness). In addition, the 2269 Action that Judge O'Connor opened to handle claims by potential creditors seeking to intervene has similarly been concluded. Further, for the reasons stated by Hill III in his response (Doc. 1644), BFS has failed to show that it has a "direct, substantial [and] legally protectable" interest in the property or transaction which is the subject matter of the action. *See Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994) (citation omitted). As already noted by the court, BFS asserts in its motion that it is a secured creditor under a 2007 note and guaranty, and later asserts in its reply brief that it is a secured creditor under a 2009 note and guaranty. *Compare* BFS Mot. Intervene ¶ 5 *with* BFS Reply at 2. An executed copy of a note or guaranty of any nature is lacking. Given these discrepancies, and absent more, the court can only conclude that BFS is a general creditor.

Further, the court declines to exercise permissive intervention. BFS's motion is untimely, and BFS fails to demonstrate it "has a claim or defense that shares with the main action a common question of law or fact." *See* Fed. R. Civ. P. 24(b)(1)(B). BFS mischaracterizes the "overarching issue" in this lawsuit as "how the Proceeds shall be allocated among the various claimants." *See* BFS Mot. Intervene ¶ 11. As summarized by the Fifth Circuit, however, this litigation involved "the management and beneficiaries of the [MHTE] and [HHTE]" and has been "*settled* with a Global Settlement and Mutual Release Agreement . . . implemented by a final judgment by the district court." *Hill v. Schilling*, 593 F. App'x 330, 331 (5th Cir. 2014) (original emphasis).

**Memorandum Opinion and Order – Page 8**

It is so **ordered** this **23rd day** of **November, 2015.**

Sam A. Lindsay
United States District Judge

**Memorandum Opinion and Order – Page 9**