IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **ALBERT G. HILL, III,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:07-CV-2020-L** |
| | § | |
| **WILLIAM SCHILLING, *et al.*,** | § | |
| | § | |
| Defendants. | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the court is CHD and CNBW's Motion for Payment, filed June 16, 2015 (Doc. 1576).

Having considered the motion, responses, reply, surreply, appendices, record, and applicable law,

the court **grants in part** and **denies in part** CHD and CNBW's Motion for Payment.

**I.      Background Facts and Procedural History**

This case involves a family dispute relating to the management of the Margaret Hunt Trust

Estate ("MHTE") and the Haroldson Lafayette Hunt, Jr. Trust Estate ("HHTE"), two trusts created

by the late Texas oil magnate H.L. Hunt for his eldest children, Margaret Hunt Hill and H. L. Hunt,

Jr.  Margaret Hunt Hill had three children, including Albert G. Hill Jr. ("Al Jr."), all of whom were

beneficiaries of both the MHTE and HHTE.  Al Jr., in turn, had three children, including Albert G.

Hill, III ("Hill III" or "Al III"), all of whom were also beneficiaries of the MHTE and HHTE.

**A.      The Initial Lawsuit**

In November 2007, Al III brought this lawsuit in Texas state court in his individual capacity

and on behalf of the MHTE and HHTE against specific beneficiaries, including  Al Jr. and various

other members of his extended family, as well as against the trustees and advisory board members

of the MHTE and HHTE (the "Defendants").  Among other things, Al III alleged wrongdoing in the

management and administration of the MHTE and HHTE by their respective trustees and violations

of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C § 1961, *et seq.*  He also sought

a declaration that he was a direct and vested beneficiary of the MHTE as a consequence of his

father's disclaimer of various interests he held in the MHTE.[1]  Following removal to federal court

on December 3, 2007, the case was randomly assigned to United States District Judge Reed C.

O'Connor.

A parallel case proceeded in the Dallas County Probate Court ("Probate Court").  *See In re:*

*Margaret Hunt Trust Estate*, No. 07-02210-P2-A, Probate Court No. 2 in Dallas County, Texas (the

"Probate Suit").  Pending judicial resolution of the validity of Hill Jr.'s disclaimer, the MHTE

trustee tendered trust distributions in the amount of $88,428,312.42 (including interest) to the

Probate Court.  *See* MHTE's Notice of Compliance with Paragraphs 17 and 41 of the Final J. (Doc.

1013).  The trustee of the MHTE also deposited $4,125,000 into the registry of Probate Court

representing the disputed portion of MHTE's 2008 year-end distribution to its beneficiaries *See id.*

From October 2008 to November 2009, Campbell Harrison & Dagley, L.L.P., including

Suzanne E. Goss, of counsel to Campbell Harrison & Dagley, L.L.P. ("CHD"), and Calloway,

---

[1] Much of the dispute centered on Al III's claimed interest in the MHTE following the 2007 death of his paternal grandmother, Margaret Hunt Hill.  In 2005, Al Jr. signed an irrevocable disclaimer of a portion of his interest in the MHTE in favor of his three children, including Al III.  *See* Ex. C to Global Settlement and Mutual Release Agreement (2005 Disclaimer) (Doc. 879).  The effect of the disclaimer is that Al Jr.'s disclaimed interest passed to Al III and his two siblings after Margaret Hunt Hill's death.  *See* March 4, 2010 Mem. Op. & Order 7-8 (Doc. 611).  In 2007, Al Jr. sought to rescind his 2005 disclaimer, along with another partial disclaimer he had executed in 2007.  This litigation ensued.

Norris, Burdette & Weber, PLLC ("CNBW") represented Al III in this action, and also represented

Al III and his wife, Erin Nance Hill (collectively, the "Hills"), in related lawsuits filed in state court.[2]

## B.     The Settlement Agreement

Ultimately, Al III agreed to a settlement of the dispute, which United States Magistrate Judge

Paul D. Stickney placed on the record on May 5, 2010.  *See* Transcript of Settlement Agreement

Proceedings (Doc. 878).  On or about May 13, 2010, the parties entered into the Global Settlement

and Mutual Release Agreement (the "Settlement Agreement") (Doc. 879) that settled this action and

related state court actions.  The Settlement Agreement affirmed Al Jr.'s 2005 disclaimer (*see supra*

note 1) and provided, among other things, that the MHTE would be divided, pro rata, into separate

sub-trusts for all beneficiaries, including Al III, who would become the sole beneficiary to one of

the new subdivided trusts containing his individual interest, the MHTE-Albert G. Hill III Trust.

Each sub-trust was to be separately administered by a new successor trustee.  The Settlement

Agreement had six central components:

1.     A payment of $4,438,458.44 from the HHTE from the sale of certain of the MHTE's appraised illiquid assets, attributable to the MHTE-Albert G. Hill III Trust;

2.     Installment payments totaling $30,675,000 to be made by Al Jr. to Al III between 2010 and 2015 to be used by Al III to establish trusts for Al Jr.'s grandchildren;

3.     A payment of $10,5000,000 from the HHTE to Al III for estimated assignment gift taxes associated with establishing the grandchildren's trusts;

---

[2] CHD and CNBW represented Al III and Erin Hill, in both their individual capacities and in their representative capacities, on behalf of: (1) N. Hill; (2) C. Hill; (3) A. Hill; (4) the unborn beneficiaries of the MHTE and/or the HHTE who descend from Al III and/or Erin Hill; and (5) the unascertained beneficiaries of the MHTE and/or the HHTE who descend from Al III and/or Erin Hill.

4.      A payment of approximately $29,476,104.14 (originally tendered to the Probate Court), transferred into the registry of the court from the MHTE to Al III constituting Al III's interest in the MHTE;

5.      The fair market value of future income payments to be made to Al III from the MHTE-Albert G. Hill Trust and the MHTE-Albert G. Hill Jr. Income Beneficiary/Albert Hill III Termination Beneficiary Trust that Al III was required to establish (Doc. 999 ¶ 18); and

6.      A payment from Al III to Al Jr. and his affiliates in the amount of $7,500,000.

The Settlement Agreement provided that further details remained to be supplied and agreed upon by the parties, and authorized the district court to resolve any disputes that might arise in that process.  *See* Settlement Agreement, Sec. III, 5(c), p. 22 ("Any controversy or claim arising after the date of execution of this Agreement . . . shall be resolved by [Judge O'Connor], who shall retain continuing jurisdiction over this Agreement.").

## C.      CHD and CNBW Intervene in the Lawsuit

Following execution of the Settlement Agreement, on or about November 16, 2009, the Hills notified CHD and CNBW that they had obtained alternative representation and would no longer need their legal services.  On August 20, 2010, CHD and CNBW sought to intervene in this action "to secure their rights to receive a portion of the property that would otherwise be distributable to or on behalf of Albert G. Hill III, under the settlement agreement reached by the parties in this case." *See* Mot. Intervene 1 (Doc. 929).  Judge O'Connor ultimately granted CHD and CNBW's motion to intervene.  *See* Order (Doc. 997).  Several other claimants, including the Hills's former counsel, Lisa Blue, Charla Aldous, Steve Malouf, and their respective law firms (collectively, "BAM"), also

intervened to secure their alleged right to collect amounts due and owing under fee agreements with the Hills.

###    D.       The November 8, 2010 Final Judgment

On November 8, 2010, Judge O'Connor issued a Final Judgment implementing and memorializing the various obligations and rights of the parties under the Settlement Agreement. Among other things, the Final Judgment: affirmed Al Jr.'s 2005 disclaimer of a portion of his interest in the MHTE (*see supra* note 1) (Final J. ¶ 5); divided the MHTE and HHTE into separate sub-trusts for all beneficiaries, including the MHTE-Albert G. Hill III Trust of which Al III was the sole beneficiary (*id.* ¶¶ 6-8); and ordered the trustee of the MHTE to effect the transfer of funds previously tendered to the Probate Court to this court's registry for the benefit and account of Al III (*id.* ¶ 17).[3]

As part of the settlement of Al III's disputed claims with Al Jr. (the "Al Jr. Settlement"), the Final Judgment required Al Jr. to make four annual installment payments of $7.5 million each, beginning in November 2012, to be placed in trusts for the benefit of his grandchildren (the "Installment Payments"), and required Al III to establish separate irrevocable trusts for Al Jr.'s three

---

[3] Pursuant to the Final Judgment, the MHTE trustee filed a motion in the Probate Court seeking the transfer of funds to the federal court's registry.  Granting the motion, on November 16, 2010, the Honorable Robert E. Price, Judge of Probate Court No. 2, ordered that the $4,125,000 in interpleaded funds (plus accrued interest) be transferred to the federal court's registry for the benefit of Al III.  *See* MHTE's Notice Ex. G (Doc. 1013).  Of this amount, one-third remains in this court's registry, and the remainder has been split evenly and distributed to Al III's two siblings.  On November 17, 2010, Judge Price ordered the $88,428,312.42 in tendered funds (including accrued interest) transferred to the federal court's registry for the benefit of Al III.  *See id.*, Ex. C.  Of that amount, one-third (that is, $29,476,104.14) remains in this court's registry, and the  remainder has been split evenly and distributed to Al III's two siblings.  *See* Order (Doc. 1036).

grandchildren (the "Grandchildren's Trusts").  The Final Judgment also required the HHTE to

deposit $10,500,000 into the court's registry earmarked for estimated gift taxes associated with the

Grandchildren's Trusts.  Specifically, paragraph 21 of the Final Judgment states:

> 21.    IT IS ORDERED that Al Jr. shall pay in settlement of the disputed claims to
> Al III . . . by payment made to the registry of this Court for Al III's benefit,
> the total sum of $30.675 million. . . . IT IS FURTHER ORDERED that the
> trustee and advisory board members of the HHTE shall cause to be paid in
> settlement of disputed claims by Al III, by payment made to the registry of
> this Court for Al III's benefit, a total sum of $10.5 million from the HHTE
> within ten (10) days after the Court's entry of this Final Judgment.

The Final Judgment also required Al III to irrevocably assign his rights to receive the Installment

Payments to the Grandchildren's Trusts, as follows:

> 22.    IT IS ORDERED that no later than three (3) business days following Al III
> establishing the Grandchildren's Trusts . . ., Al III *shall irrevocably assign
> his right to receive the Installment Payments of the Al Jr. Settlement to the
> Grandchildren's Trusts* . . . with each trust receiving a principal amount
> equal to one-third (1/3) of the gross proceeds received from any payment of
> the Installment Payments, less any applicable gift taxes in excess of 10.5
> million ("Assignment 1").
>
> * * * *
>
>          IT IS FURTHER ORDERED that, within five (5) business days
> following Al Jr.'s payment of each of the Installment Payments of the
> Al Jr. Settlement to the registry of this Court for Al III's benefit, the
> Court shall distribute the entirety of each installment to the
> Grandchildren's Trusts with each of the Grandchildren's Trusts
> receiving a principal amount equal to one-third (1/3) of the gross
> proceeds received from each installment payment, less any applicable
> taxes, by wire transfer to such account(s) as provided in writing to
> this Court by the trustee of each of the Grandchildren's Trusts, and
> the Court shall provide notice of each such distribution paid by the
> Court to counsel for Al Jr. and Al III by ecf notification of the
> execution of the order.

Final J. ¶ 22 (emphasis added).

**Memorandum Opinion and Order - Page 6**

Following an extended period of litigation regarding Al III's compliance with aspects of the Final Judgment, on May 13, 2011, Al III executed Assignment 1, thereby assigning, transferring and conveying all his rights and interests in the Installment Payments to the Grandchildren's Trusts. *See* Resp. to Defs.' Mot. to Enforce Final J. 2 (Doc. 1160); Assignment 1 (1160-2). The court approved the executed trust instruments on June 30, 2011. *See* Order (Doc. 1174).

With regard to the potential gift taxes associated with the Grandchildren's Trusts, and following a status report by the court-appointed Guardian Ad Litem, Michael Hurst, on January 17, 2012, the court directed the Clerk of Court to:

> disburse **$10,263,750.00** from the registry to pay the Assignment Gift Tax pursuant to ¶ 21 of the Final Judgment, that representing the amount remaining from the $10.5 million earmarked for the Assignment Gift Tax. Final J. ¶ 21, ECF No. 999. The Clerk of Court is to pay the $10,263,750.00 from the deposit in the registry of funds from the HHTE designated for that purpose on a check made payable to "United States Treasury[.]"

Order 1-2 (Doc. 1222) (original emphasis).[4] CHD and CNBW did not object to this disbursement.

The Final Judgment contained a separate section pertaining to disputes over attorney's fees and costs that had arisen following execution of the Settlement Agreement. *See* Final J. ¶¶ 38-41 (Doc. 999). Specifically, the Final Judgment provides:

> 40.   IT IS ORDERED that all claims by [CHD, CNBW, and BAM], claims by any of All III or Erin's other legal counsel (current or former) to any attorneys' fees or reimbursement of any costs allegedly owed by Al III, Erin, or the Grandchildren, and claims asserted in this Court by any other creditors

---

[4] The court had previously ordered disbursement of $236,250 from the $10,500,000 earmarked for assignment gift taxes to pay the estimated gift tax liability associated with a separate assignment by Al III to the Single Fund Grandchildren's Trust under paragraph 21 of the Final Judgment. Order (Doc. 1169); *see* Final J. ¶¶ 21, 22 (Doc. 999).

**Memorandum Opinion and Order - Page 7**

of Al III or Erin, are hereby severed into a separate action over which this Court shall preside; provided, however, such severance shall in no way prevent, delay, or interfere with the Court's completion of the Settlement, or the Court's entry of Final Judgment. The Clerk of Court is instructed to open a matter under a separate cause number which will resolve the attorneys' fees dispute.

Paragraph 41 of the Final Judgment states:

> 41.    IT IS ORDERED that the Clerk of this Court is DIRECTED to accept into the registry of this Court for the above-referenced severed action all sums required to be deposited into the Court's registry for the benefit of Al III and the interpleaded funds in connection with the Margaret Probate Suit transferred from the registry of Probate Court No. 2 of Dallas County, Texas and from the trustee of the MHTE relating to Al III's interest in the MHTE. IT IS FURTHER ORDERED that until further Order of this Court, any future distributions to be made to Al III relating to his interest in the MHTE or the MHTE-Albert G. Hill III Trust shall be paid to the registry of this Court for the benefit of Al III and subject to the claims in the above-referenced severed action and shall be disbursed only upon further Order of this Court after resolution of the claims at issue in the above-referenced severed action.

Al III appealed the Final Judgment challenging, among other things, the addition of provisions that were not part of the Settlement Agreement. The Fifth Circuit affirmed the Final Judgment. *See Hill v. Schilling,* 495 F. App'x 480 (5th Cir. 2012) (consolidated appeal), *cert. denied*, 133 S. Ct. 2859 (2013).

### E.    The Attorney's Fees Dispute

Upon entry of the Final Judgment, and pursuant to paragraph 40 thereof, Judge O'Connor severed from the underlying trust action all claims by the Hills's creditors, including claims for attorney's fees by CHD and CNBW. *See Campbell Harrison & Dagley, LLP, et al. v. Hill*, C.A. No. 3-10-CV-2269-O (the "2269 Action"). Unable to reach agreement with the Hills as to payment of legal fees, and pursuant to an arbitration clause in the fee agreements, CHD and CNBW arbitrated

their claims against the Hills and received an award upholding their fee agreement and awarding them their damages, attorney's fees, and expenses.[5]  Following a mandate from the United States Court of Appeals for the Fifth Circuit, on June 3, 2015, the court entered a final judgment in CHD and CNBW's favor in the amount of $40,915,407.13.  *See* Mem. Op. & J. in *Campbell, Harrison & Dagley, L.L.P., et al. v. Albert G. Hill III, et al.*, Civil Action No. 3-12-CV-4599 (the "4599 Action") (Docs. 118 and 119).[6]

On June 16, 2015, CHD and CNBW filed their Motion for Payment in this action.  Having been fully briefed, the motion is ripe for decision.

## II.    Analysis

CHD and CNBW seek to satisfy their $40,915,407.13 judgment (the "4599 Judgment") from two possible sources of funds: (1) the funds transferred into this court's registry from the Probate Court, *see supra* note 3, as well as any assigned interest in other sums that were deposited into the court's registry for Al III's benefit in settlement of his disputed claims with Defendants following entry of the Final Judgment; and (2) the corpus of the MHTE-Albert G. Hill III Trust.  In support, CHD and CNBW argue that the Final Judgment entitles them to be paid first from the interpleaded

---

[5] Waiving their rights to arbitration, BAM litigated its dispute over attorney's fees with the Hills in the severed action.  Ultimately, the court awarded BAM a fee recovery in the amount of $21,924,961.  *See* Jan. 10, 2012 J. (Doc. 384 in the 2269 Action).

[6] This amount included: $3,150,000 in hourly attorney's fees to CHD; $152,167 in hourly attorney's fees to CNBW; $25,026,774 in contingent attorney's fees to CHD and CNBW; prejudgment interest; costs; and postjudgment interest.  *See* June 3, 2015 J. (Doc. 119 in the 4599 Action).

**Memorandum Opinion and Order - Page 9**

funds in the court's registry and, second, from the corpus of the trust if the registry funds are insufficient.

Numerous parties oppose CHD and CNBW's Motion for Payment, either in whole or in part, including Al Jr., Al III, and Al III's judgment creditors.[7] Al Jr., Al III, and Al III's creditors, like CHD and CNBW, rely on the language of the Settlement Agreement and Final Judgment to support their respective positions. Accordingly, prior to analyzing the parties' arguments, the court sets forth the law governing its interpretation of the Settlement Agreement and Final Judgment.

### A.      Rules of Contract Interpretation

The Settlement Agreement is governed by Texas law. Settlement Agreement, Sec. III, 5(v), p. 27 (Doc. 879). Under Texas law, a settlement agreement is a contract that is interpreted under the general principles of contract construction. *See Texas v. Am. Tobacco Co.*, 463 F.3d 399, 407 (5th Cir. 2006). Further, as a consent judgment, the interpretation of the Final Judgment is similarly governed by the laws relating to contract interpretation. *See Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 422 (Tex. 1999) ("An agreed judgment should be construed in the same manner as a contract."); *Hydroscience Techs., Inc. v. Hydroscience, Inc.*, 401 S.W.3d 783, 796 (Tex. App —Dallas 2013, pet. denied) ("An agreed judgment must be interpreted as if it were a contract

---

[7] Additionally, the HHTE and the current trustee of the MHTE-Albert G. Hill III Trust have filed responses to CHD and CNBW's motion reasserting their positions in this litigation. *See* Resp. of the HHTE New Hunt Trusts to Mot. for Payment (Doc. 1581) (seeking good and clear title to appraised illiquid assets they purchased from the MHTE in the amount of $4,438,458.44, earmarked for the interest of the MHTE-Albert G. Hill III Trust); Resp. of Wilmington Trust, N.A. to Mot. for Payment (Doc. 1587) (seeking instruction from the court regarding any future disbursements of trust funds to Al III's creditors).

**Memorandum Opinion and Order - Page 10**

between the parties, and the interpretation of the judgment is governed by the laws relating to contracts.") (citation omitted).

"The primary concern of a court in construing a written contract is to ascertain the true intention of the parties as expressed in the written instrument." *Am. Tobacco Co.*, 463 F.3d at 406 (citations omitted).  "In identifying such intent, 'we must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless.'" *Italian Cowboy Partner's, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011) (quoting *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003)). If a contract "is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe it as a matter of law." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).  "Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered." *Id.* at 394 (citation omitted).  "Courts interpreting unambiguous contracts are confined to the four corners of the document, and cannot look to extrinsic evidence to create an ambiguity." *Am. Tobacco Co.*, 463 F.3d at 407 (citation omitted).  A contract is not ambiguous simply because the parties advance different interpretations. *American Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003).  "[I]f the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, creating a fact issue of the parties' intent." *J.M. Davidson*, 128 S.W.3d at 299. "Only where a contract is ambiguous may a court consider the parties' interpretation and admit extraneous evidence to

determine the true meaning of the instrument." *Italian Cowboy Partner's*, 341 S.W.3d at 333-34 (citation omitted) (internal quotations omitted).

A "contract is not necessarily ambiguous merely because some sections arguably conflict." *NuStar Energy, L.P. v. Diamond Offshore Co.*, 402 S.W.3d 461, 466 (Tex. App. — Houston [14th Dist.] 2013, no pet.). "[I]n Texas, a specific contractual provision prevails over a general provision." *Evercore Capital Partners II, L.L.C. v. Davis Trust (In re Davis Offshore, L.P.)*, 644 F.3d 259, 266 (5th Cir. 2011) (citation omitted); *see also Luig v. North Bay Enters., Inc.*, 55 F. Supp. 3d 942, 953 (N.D. Tex. 2014) (quoting *NuStar Energy*, 402 S.W.3d at 466) ("[T]o the extent of any conflict, specific provisions control over more general ones.").

Finally, a court should avoid when possible "a construction [that] is unreasonable, inequitable, and oppressive." *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987); *see also Pavecon, Inc. v. R-Com, Inc.*, 159 S.W.3d 219, 222 (Tex. App.—Fort Worth 2005, no pet.) (stating that when interpreting a contract, a court should avoid, if possible, "a construction that is unreasonable, inequitable, or oppressive, or would lead to an absurd result.").

### B. Discussion

CHD and CNBW argue that they "are entitled to be paid out of the registry funds under the Final Judgment in the 2020 case." Mot. for Payment 8. They further argue that, in the event the funds in the registry are insufficient to satisfy the 4599 Judgment, paragraph 39 of the Final Judgment authorizes the corpus of the MHTE-Albert G. Hill III Trust to be used, pursuant to this court's order, for payment of their attorney's fees and expenses incurred in connection with the settled litigation. *Id.* at 12-13. Al Jr., Al III, and All III's creditors, either in whole or in part,

oppose the motion.  The court first turns to whether CHD and CNBW are entitled to be paid from funds in the court's registry under the terms of the Final Judgment and, if so, in what amount and from which particular funds.

### 1.    Payments from the Registry Funds

CHD and CNBW argue that the funds in the court's registry may be used to satisfy the 4599 Judgment. The court's registry currently contains approximately $52.8 million divided into the following numbered accounts:

> • Account CRIS307CV002020001 - interest in the amount of $ 2423.60 (representing the interest earned on the HHTE's payment of $10,500,000 earmarked for assignment gift tax funds previously disbursed per court orders (*see* Docs. 1222 and 1169));
>
> • Account CRIS307CV002020002 - settlement proceeds paid to Al III from the MHTE currently totaling $20,559,665.71, plus $15,070.02 in interest (representing amounts remaining from Al III's one-third portion of the $88,428,312.42—including accrued interest—transferred to the federal court's registry for the benefit of Al III from the Probate Court, including post-transfer disbursements);
>
> • Account CRIS307CV002020004 - Al III's separate interest in the MHTE pursuant to paragraphs 17 and 41 of the Final Judgment totaling $1,381,928.75, plus interest in the amount of $959.38;
>
> • Account CRIS307CV002020005 - Al III's separate interest in the MHTE pursuant to paragraphs 17 and 41 of the Final Judgment totaling $853,583, plus interest in the amount of $561.49;
>
> • Account CRIS307CV002020006 - funds set aside per court order granting Al III's motion to disburse funds held in court registry (*see* Doc. 1035) totaling $9,999.96, plus interest in the amount of $6.31;[8]

---

[8] On November 24, 2010, the court entered an order granting Al III's motion to disburse the funds held in Account No. CRIS307CV002020006 to the newly appointed trustees of six separate trusts established in accordance with paragraphs 27(c) and 27(d) of the Final Judgment.  Order (Doc. 1035).  The Order

• Account CRIS307CV002020007 - interest in the amount of $188.07 (representing interest earned on the Single Grandchildren's Trust disbursed per court order (Doc. 1379)); and

• Account CRIS307CV002020008 - Al Jr.'s four Installment Payments totaling $30,009,945.21, plus interest in the amount of $6807.72.[9]

### a.    May Funds in the Registry be Used to Satisfy the 4599 Judgment?

As an initial point of dispute, Al III challenges CHD and CNBW's contention that they "are entitled to be paid out of the registry funds under the Final Judgment in the 2020 case."  *See* Mot. for Payment 8 (Doc. 1576).  In support of their argument that funds in the court's registry may be used to pay the 4599 Judgment, CHD and CNBW state:

> The plain language of the 2020 Final Judgment provides that the registry funds are to be held subject to the "severed claims" and disbursed only after resolution of the severed claims[.] . . . The clear construction of [paragraphs 40 and 41] is that the claims of CHD and CNBW—once resolved—are to be paid out of the registry funds and that the firms have a first priority on those funds

*Id.* at 8-9 (emphasis added).

In opposition, Al III argues that CHD and CNBW "have not demonstrated any legal basis on which this Court may disburse funds from either the registry or the trust to satisfy the [4599

---

provided that "[e]ach distribution should be *payable on demand* by the newly appointed trustees of [each of the six trusts listed in the Order]."  Doc. 1035 at 1 (emphasis added).  Pending demand by the trustees of the trusts set forth in the Order, these funds shall remain in the court's registry and are not subject to the claims of creditors.

[9] The court issued an order earlier today concerning the $4,438,458.46 plus interest held in the registry in account "CRIS307CV002020007," representing the HHTE's payment from the sale of certain of the MHTE's appraised illiquid assets, earmarked for the benefit of the MHTE-Albert G. Hill III Trust.  In that order, the court directed the Clerk of Court to issue a check in the amount of $4,438,458.46, plus accrued interest, to the trustee of the HHTE for disbursement to the trustee of the MHTE-Albert G. Hill III Trust following execution of the appropriate assignment of interest form by Al III, the advisory board members, and the trustee.

**Memorandum Opinion and Order - Page 14**

Judgment]." *See* Pl.'s Corrected Mem. of Law in Resp. to Mot. for Payment 8 (Doc. 1595).[10]  More

specifically, Al III states: "Contrary to the assumptions underlying the Motion [for Payment], the

[4599] Judgment—standing alone or coupled with the Final Judgment—does not create any

attorney's lien or 'equitable right' in the registry or the trust." *Id.* at 9.

In their reply brief, responding to Al III's arguments, CHD and CNBW expand and clarify

the source of their alleged right to payment from the funds in the court's registry, stating:

> Generally, a money judgment is enforced by a writ of execution unless the
> Court orders otherwise.  *See* Fed. R. Civ. P. 69(a)(1).  Here, an order of the Court
> rather than a writ of execution is appropriate, because assets to satisfy the 4599
> Judgment are already within the Court's control; the registry funds may be disbursed
> only by this Court's order, and assets in the Hill Trust may be used to pay CHD and
> CNBW's judgment claims upon further order of the Court.  *See* Fed. R. Civ. P. 67(a);
> 28 U.S.C. §§ 2041-42, ECF 999 ¶ 39.  The Motion for Payment is the functional
> equivalent of a writ of execution: CHD and CNBW are asking the Court to order the
> clerk and/or the trustee of the Hill III Trust to turn over sufficient funds to satisfy the
> 4599 Judgment.

CHD and CNBW's  Reply in Support of Mot. for Payment 2 (Doc. 1599).  CHD and CNBW further

argue:

> The registry funds did not "just happen" to be there.  The Court did not order
> the funds to be held in the registry merely to pay all the funds out to the Hills after
> they lost all their fee disputes, as the Hills contend; they are there to secure payments
> of the amount the Hills owed.

*Id.* at 5.

---

[10] In opposition to CHD and CNBW's Motion for Payment, Al III also makes many of the same
arguments already rejected by this court in granting CHD and CNBW's Motion for Entry of Judgment in the
4599 Action (*see* Doc. 118 in 4599 Action).  The court will not revisit these arguments.

**Memorandum Opinion and Order - Page 15**

To evaluate the parties' arguments, a review of the pertinent language in the Final Judgment is in order. Paragraphs 40 and 41 provide, in relevant part:

> 40. IT IS ORDERED that all claims by [CHD, CNBW, and BAM], claims by any of All III or Erin's other legal counsel (current or former) to any attorneys' fees or reimbursement of any costs allegedly owed by Al III, Erin, or the Grandchildren, and claims asserted in this Court by any other creditors of Al III or Erin, are hereby severed into a separate action over which this Court shall preside; provided, however, such severance shall in no way prevent, delay, or interfere with the Court's completion of the Settlement, or the Court's entry of Final Judgment. The Clerk of Court is instructed to open a matter under a separate cause number which will resolve the attorneys' fees dispute.

> 41. IT IS FURTHER ORDERED that until further Order of this Court, any future distributions to be made to Al III relating to his interest in the MHTE or the MHTE-Albert G. Hill III Trust *shall be paid to the registry of this Court for the benefit of Al III and subject to the claims in the above-referenced severed action and shall be disbursed only upon further Order of this Court after resolution of the claims at issue in the above-referenced severed action.*

Final J. ¶¶ 40, 41 (emphasis added).

Based on the plain language of paragraphs 40 and 41, the court agrees with CHD and CNBW. The Final Judgment unambiguously contemplates that CHD and CNBW, after resolving their dispute over fees in the severed action, may seek payment from funds held in the court's registry specifically for this purpose. The Final Judgment approved the Settlement Agreement and the parties' agreement that: (1) assets should be paid to Al III to settle the parties' dispute; (2) the assets should be deposited into the registry of the court for the benefit of Al III; (3) the assets would be held in the registry for the payment of creditors; and (4) Al III's creditors would be paid by the court from funds paid into the court's registry for Al III's benefit after resolution of the claims in the severed action. *See generally* Settlement Agreement (Doc. 879): Final J. (Doc. 999). Al III was

a party to the Settlement Agreement and Final Judgment. Further, the Final Judgment has been affirmed on appeal. *See Hill v. Schilling,* 495 F. App'x 480 (5th Cir. 2012) (consolidated appeal), *cert. denied*, 133 S. Ct. 2859 (2013). Under these circumstances, the court rejects Al III's attempts to alter the terms of the Final Judgment, including specific provisions providing for payment of Al III's attorneys from funds being held in the court's registry following resolution of fee disputes in the severed action.

In addition, prior court orders support CHD and CNBW's argument. As one example, on February 18, 2011, Judge O'Connor entered an order granting CHD and CNBW's motion to compel arbitration of their fee dispute with Al III but dismissed their case without prejudice rather than staying the case pending the outcome of arbitration as CHD and CNBW had requested. *See* Order (Doc. 185 in the 2269 Action). Denying CHD and CNBW's subsequent motion to modify the order compelling arbitration to stay rather than dismiss their claims, Judge O'Connor stated, in relevant part:

> Despite the dismissal of [CHD and CNBW's] claims, *they will not be denied access to this Court if further dispute arises following arbitration. . . . Because [CHD and CNBW] will be able to continue to assert their interests following a determination at arbitration that they have a right to a portion of the funds currently in the registry*, the Court finds that its Order does not need to be modified.

*Id.* at 2 (internal citations omitted) (emphasis added). This order explicitly recognizes that CHD and CNBW may continue to assert their interest in this case, and to a portion of the funds held in the court's registry, after resolution of their arbitration.

In a separate order denying the Hills's motion to strike a response CHD and CNBW had filed to Al III's motion to permit payments from the court's registry, Magistrate Judge Renée Harris

**Memorandum Opinion and Order - Page 17**

Toliver addressed CHD and CNBW's interest in the registry funds, stating as follows: "While CHD and CNBW are not currently parties to this case, they clearly have a financial interest in the Funds, which might be used to satisfy any fee award they are granted in the upcoming arbitration proceeding with Hill III."  *See* Order 5 (Doc. 462 in 2269 Action).  Like Judge O'Connor, Magistrate Judge Toliver's order makes explicit that CHD and CNBW have a financial interest in a portion of the registry funds, which may be used to satisfy any fee award from their arbitration with the Hills.

In sum, assets to satisfy the 4599 Judgment are already within the court's control, that is, the interpleaded registry funds.  Paragraph 41 of the Final Judgment unambiguously provides that funds in the court's registry are being held "subject to the severed action[]" and that funds may be disbursed only upon further court order after resolution of the issues in the severed action.  Final J. ¶ 41.  Further, previous court orders contemplate that, under paragraph 41, CHD and CNBW may continue to assert their interest in the registry funds once they settle their dispute in the severed action.  Under these circumstances, the court concludes that, pursuant to the plain language of paragraph 41 the Final Judgment, no writ of execution is required for CHD and CNBW to assert their right to payment of the 4599 Judgment from funds in the court's registry.

> **b.    *Are the Installment Payments held in Account No. CRIS307CV002020008 Subject to CHD and CNBW's Claims?***

A second point in dispute is the extent, if any, to which Al Jr.'s Installment Payments totaling $30,009,945.21, plus accrued interest, currently held in the court's registry in Account No. CRIS307CV002020008, are subject to CHD and CNBW's claims, or the claims of any other of Al

III's creditors.  Al Jr. and Al III both oppose CHD and CNBW's motion insofar as the law firms seek to recover the Installment Payments that the Clerk of Court is holding for the Grandchildren's Trusts.  *See* Hill Jr.'s Resp. to Mot. for Payment 1-8 (Doc. 1589); Pl.'s Corrected Mem. of Law in Resp. to Mot. for Payment 23 (Doc. 1595).  For the reasons that follow, the court agrees with Al Jr. and Al III that the Installment Payments are not subject to the claims of Al III's creditors under the terms of the Settlement Agreement and Final Judgment, and, instead, they are to be distributed to the Grandchildren's Trusts pursuant to paragraph 22 of the Final Judgment.

### i.    *The Installment Payments*

As already set forth in detail above, *see supra* Sec. I(D), as part of the settlement of Al III's disputed claims with Al Jr., the Final Judgment required Al Jr. to make four annual installment payments of $7.5 million each into the court's registry (all of which have been made as of the date of this decision).  *See* Final J. ¶ 21.  The Final Judgment also required Al III to establish separate irrevocable trusts for Al Jr.'s grandchildren and to irrevocably assign his rights to receive the Installment Payments to the Grandchildren's Trusts.  *See id.* ¶¶ 19, 22.  On May 13, 2011, Al III executed the required assignment, thereby assigning, transferring and conveying all his rights and interests in the Installment Payments to the Grandchildren's Trusts.  *See* Assignment 1 (1160-2). The court approved the executed trust instruments on June 30, 2011.  *See* Order (Doc. 1174).  The court has also approved Al III's request to disburse funds from the court's registry to pay the gift taxes associated with assignments to his grandchildren of his rights to the Installment Payments. *See* Docs. 1169, 1222.

**Memorandum Opinion and Order - Page 19**

ii.      *The Parties' Arguments*

In support of their purported right to satisfy the 4599 Judgment from the Installment Payments held in the court's registry, CHD and CNBW rely on language in paragraph 21 of the Final Judgment, which provides that Hill Jr.'s Installment Payments are "for Al III's benefit." Specifically, paragraph 21 provides:

> 21.      IT IS ORDERED that Al Jr. shall pay in settlement of the disputed claims to Al III . . . by payment made to the registry of this Court *for Al III's benefit*, the total sum of $30.675 million . . . IT IS FURTHER ORDERED that the trustee and advisory board members of the HHTE shall cause to be paid in settlement of disputed claims by Al III, by payment made to the registry of this Court for Al III's benefit, a total sum of $10.5 million from the HHTE within ten (10) days after the Court's entry of this Final Judgment.

Final J. ¶ 21 (emphasis added).  According to CHD and CNBW, the italicized language, *ipso facto*, makes the Installment Payments subject to their claims from the 4599 Judgment.  In support, CHD and CNBW argue that the same language is included in paragraph 41 of the Final Judgment, which provides, in relevant part, that:

> 41.      IT IS FURTHER ORDERED that until further Order of this Court, any future distributions to be made to Al III relating to his interest in the MHTE or the MHTE-Albert G. Hill III Trust shall be paid to the registry of this Court *for the benefit of Al III and subject to the claims in the above-referenced severed action* and shall be disbursed only upon further Order of this Court after resolution of the claims at issue in the above-referenced severed action.

Final J. ¶ 41 (emphasis added).

In opposition, Al Jr. argues that paragraph 22 of the Final Judgment specifically requires the court to distribute the entirety of the Installment Payments to the Grandchildren's Trusts within five (5) business days of Al Jr.'s Installment Payments, rather than to creditors.  Al Jr.'s Resp. to Mot.

**Memorandum Opinion and Order – Page 20**

for Payment 1 (Doc. 1589) (quoting Final J. ¶ 22); *see also id.* at 5 ("When District Judge Reed O'Connor approved the settlement and entered the Final Judgment . . . [he] included provisions in the Final Judgment to make sure that the Installment Payments are immediately distributed to the Grandchildren's Trusts and not to creditors[.]"). Al Jr. further contends that: "Paragraph 41 of the Final Judgment (on which CHD and CNBW rely) does not trump the specific provisions of paragraph 22 and does not give CHD and CNBW access to funds belonging to the Grandchildren's Trusts." *Id.* at 2. In further support, Al Jr. states:

> [T]his Court already authorized the release of funds to pay the gift taxes associated with Hill III's conveyance of his interests in the Installment Payments to the Grandchildren's Trusts — further evidencing that this is a completed transaction pursuant to the Final Judgment that cannot (and should not) be reversed years later.

*Id.* at 3 (original emphasis). Finally, Al Jr. argues that the Settlement Agreement, which is incorporated by reference into the Final Judgment, specifically provided that the Installment Payments shall not be used to pay creditors. *Id.* at 5 (quoting Settlement Agreement, Doc. 879 at 15). Al III similarly opposes CHD and CNBW's attempt to satisfy the 4599 Judgment from the amounts held in the registry for the Grandchildren's Trusts, arguing that: "The attorneys have repeatedly taken the language of Paragraph 41 completely out of context." Pl.'s Corrected Mem. of Law in Resp. to Mot. for Payment 23 (Doc. 1595).

### iii.   Discussion

Having considered the parties' arguments, examined the language of the pertinent provisions of the Settlement Agreement and Final Judgment, and applied the rules of contract interpretation set forth above, *see supra* Sec. II.A, the court determines that Al Jr.'s Installment Payments held in the

court's registry for the Grandchildren's Trusts in Account No. CRIS307CV002020008 are not subject to CHD and CNBW's claims, or the claims of any other of Al III's creditors.

As already stated, the court's primary concern "in construing a written contract is to ascertain the true intention of the parties as expressed in the written instrument." *Am. Tobacco Co.*, 463 F.3d at 406 (citations omitted).  "In identifying such intent, 'we must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless.'" *Italian Cowboy Partner's*, 341 S.W.3d at 333 (quoting *J.M. Davidson*, 128 S.W.3d at 229).  If a contract "is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe it as a matter of law." *Coker*, 650 S.W.2d at 393.  No party argues that the Final Judgment is ambiguous.  While the court notes what some might argue as tension between certain provisions, the court finds that the Final Judgment is unambiguous and will construe it as a matter of law.

First, as Al Jr. correctly notes, paragraph 22 of the Final Judgment expressly requires the court to distribute the Installment Payments to the Grandchildren's Trusts, as follows:

> IT IS FURTHER ORDERED that, *within five (5) business days* following Al Jr.'s payment of each of the Installment Payments of the Al Jr. Settlement to the registry of this Court for Al III's benefit, *the Court shall distribute the entirety of each installment to the Grandchildren's Trusts* with each of the Grandchildren's Trusts receiving a principal amount equal to one-third (1/3) of the gross proceeds received from each installment payment, less any applicable taxes, by wire transfer to such account(s) as provided in writing to this Court by the trustee of each of the Grandchildren's Trusts, and the Court shall provide notice of each such distribution paid by the Court to counsel for Al Jr. and Al III by ecf notification of the execution of the order.

Final J. ¶ 22 (emphasis added).   The italicized portion of paragraph 22 quoted above contains mandatory, rather than precatory, language, imposing a binding obligation on the court to distribute the Installment Payments to the Grandchildren's Trusts within five (5) days of Al Jr.'s payment of each such Installment Payment. *See, e.g., Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) (1998) ("[T]he mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion.").   Further, to accept CHD and CNBW's sweeping construction of paragraph 41 would render paragraph 22 meaningless, a result the court should avoid as it strives to harmonize and give effect to all provisions of the Final Judgment so that no provision will be rendered meaningless. " *See Italian Cowboy Partner's*, *supra*; *J.M. Davidson*, *supra*.

Second, to the extent CHD and CNBW suggest that the general language of paragraph 41 prevails over the more specific language of paragraph 22, the court rejects this argument and determines that, pursuant to the applicable legal standards, the more specific provision of paragraph 22 controls. *See Evercore Capital Partners II, L.L.C.*, 644 F.3d at 266 ("[I]n Texas, a specific contractual provision prevails over a general provision."); *Luig*, 55 F. Supp. 3d at 953 (quoting *NuStar Energy*, 402 S.W.3d at 466) ("[T]o the extent of any conflict, specific provisions control over more general ones.").

Third, paragraph 22 unambiguously requires Al III to "*irrevocably assign* his right to receive the Installment Payments of the Al Jr. Settlement to the Grandchildren's Trusts[.]" *See* Final J. ¶ 22 (emphasis added).   Accepting CHD and CNBW's construction would lead to an unreasonable and oppressive result, which the court must avoid when possible. *See Reilly*, 727 S.W.2d at 530 (A court should avoid when possible "a construction [that] is unreasonable, inequitable, and

oppressive."). Specifically, Al III's irrevocable assignment of his right to the Installment Payments, as required by paragraph 4(b) of the Settlement Agreement and as implemented by paragraph 22 of the Final Judgment, results in Hill Jr.'s grandchildren receiving an interest in separate trusts, each containing slightly over $10 million, the Government receiving approximately $10.5 million in gift taxes (which the court already disbursed from the registry to the United States Treasury),[11] and Al III receiving nothing. The construction proffered by CHD and CNBW rests on a legal fiction that Al III received a benefit, which he did not. Further, it would be illogical and unreasonable to order payment to the United States Treasury of the gift taxes associated with Al III's irrevocable assignment of his interests in the Installment Payments to the Grandchildren's Trusts, which the court has done, and not fund these same trusts.

Fourth, and finally, the Final Judgment expressly approves, and incorporates, the Settlement Agreement. *See* Final J. at 2 ("IT IS ORDERED that the Agreement (including each of its terms, conditions, and exhibits) is incorporated herein as though fully set forth in this Final Judgment, except as otherwise stated.") (original typeface); *id.* at 4 ("The Court further finds that this Final Judgment effectuates the intent of the parties as stated in the Agreement. IT IS THEREFORE ORDERED that the Agreement (as modified herein) is hereby approved in all respects.") (original

---

[11] The court has already ordered disbursement to the United States Treasury of the $10,500,000 in gift taxes associated with Al III's assignment of his interest in the Installment Payments to the Grandchildren's Trusts and the Single Fund Grandchildren's Trust. *See* Docs. 1222, 1169. CHD and CNBW did not object to these disbursements, even though paragraph 21 of the Final Judgment directed the HHTE to pay $10,500,000 "for Al III's benefit," just as it ordered Al Jr. to make the Installment Payments for "Al III's benefit[.]" *See* Final J. ¶ 21. *The phrase "for Al III's benefit," used twice in paragraph 21, cannot be interpreted to mean one thing when applied to assignment gift taxes and another thing when applied to Installment Payments.*

**Memorandum Opinion and Order - Page 24**

typeface)  The Settlement Agreement on its face provides for a stay of the Installment Payments in the event creditors attempt to reach these funds, as follows:

> Stay of Payment: All agreeing parties agree that any payments paid pursuant to Paragraph 2(b) [the installment payments] shall be stayed by order of the Federal Court if any third party claims are asserted against such payments.

Settlement Agreement, Sec.III,1(I), p. 15.[12]  Under this provision, it is clear the parties intended to protect the Installment Payments from creditors.

In summary, while the court recognizes what some might argue as tension between paragraphs 22 and 41 of the Final Judgment, applying well-established rules of contract construction summarized above to the language of the Settlement Agreement and the Final Judgment, which memorializes and implements the Settlement Agreement, the court agrees with Al Jr. and Al III, and concludes that Al Jr.'s Installment Payments held in the court's registry for the Grandchildren's Trusts in Account No. CRIS307CV002020008 are not subject to CHD and CNBW's claims, or the claims of any other of Al III's creditors.  The court rejects CHD and CNBW's arguments to the

---

[12] Even were the court to find an ambiguity as to whether the Installment Payments were "for the benefit of Al III," as used in paragraph 41, the record demonstrates that the court and parties intended that the Installment Payments would not be used to pay creditors, and the Installment Payments would be stayed in the event creditors attempted to assert claims against such payment.  On May 5, 2010, when Magistrate Judge Stickney read the parties' settlement into the record, he stated:

> [The Court:] Now, let me say this so the record is perfectly clear, if I can say it in the right way.  That the purpose of this is for these trusts for the children.  That if there was some creditor that came in somewhere else or some other proceeding that tried to attach these future [installment] payments, that it's the Court's understanding that the intention of these payments are for the kids and that's where it's going to pass through eventually.  Somehow they should be stayed, these payments, should someone try to levy or attach these payments.

See Tr. of Settlement Agreement Proceedings at 13:12-21 (Doc. 878).

**Memorandum Opinion and Order - Page 25**

contrary, as they fail to harmonize all provisions of the Final Judgment so that no provision is rendered meaningless; exalt more general provisions at the expense of specific provisions; ignore the intent of the parties as set forth in the Settlement Agreement; and would lead to an unreasonable, inequitable, and oppressive result.[13]

### c.    *Priority Over Registry Funds*

A third point of contention relates to which of Al III's creditors has priority to receive payment from funds interpleaded and paid into the court's registry for the benefit of Al III.  CHD and CNBW assert that paragraphs 40 and 41 of the Final Judgment give them priority over the registry funds ahead of Al III's other creditors, and that "they are entitled to be paid from the registry funds before any other creditor is paid for another independent reason: the firms have a contractual assignment and priority lien over other creditors, created when their fee agreements were signed on October 17, 2008, and March 24, 2009."  Mot. for Payment 10.  In particular, CHD and CNBW argue that all other creditors' claims to the registry funds, assuming arguendo they have any such valid claims, "vested *after* CHD and CNBW's fee agreements (Oct. 17, 2008, and March 24, 2009), *after* the Settlement Agreement (May 5, 2010), and *after* the Final Judgment (Nov. 8, 2010)." *Id.* at 11 (original emphasis).

Intervenors and judgment creditors THH Properties L.P., D&B Thompson Investments, L.P., Thompson-Huffman L.P., and Melrose Properties, LLC (collectively, "THH") contest CHD and

---

[13] The court's conclusion that CHD and CNBW may not look to the Installment Payments held in the registry for the Grandchildren's Trusts to satisfy the 4599 Judgment obviates the need to consider Al III's argument that, under paragraph 38 of the Final Judgment,  his attorney's fees and costs shall only be borne by him, and not his children.

CNBW's assertion that they have priority over the funds held in the court's registry.  Additionally, intervenor and judgment creditor, PBL Multi-Strategy Fund, L.P. ("PBL") asserts it has priority over CHD and CNBW as to certain amounts awarded them in the 4599 Judgment.

As the court has determined that the requirements of interpleader have been met, the court must now determine the rights of the various claimants.  *See Fresh Am. Corp. v. Wal-Mart Stores, Inc.*, 393 F. Supp. 2d 411, 415 (N.D. Tex. 2005) (stating that once the court determines that the requirements of interpleader are met, "the next stage of the litigation is to determine the rights of the claimants.") (Lynn, J.).  The court addresses the judgment creditors' arguments in turn.

### i.    THH

Intervenor THH obtained a Consent Judgment against Al III on December 1, 2009, in a Louisiana state court, which ordered Al III to pay to THH the principal amount of $2,300,000, "together with legal interest thereon from the date of judicial demand, October 10, 2002, until paid in full."  *See* Consent Judgment in *THH Properties L.P., et al. v. Hill*, No. 470,225-C, in the First Judicial District Court, Caddo Parish, Louisiana ("Louisiana Judgment") (Doc. 1342-3).   On December 30, 2010, THH obtained a turnover order from the 95th Judicial District Court of Dallas County, Texas, ordering that Al III, in satisfaction of the Louisiana Judgment, "turn over to the Sheriff of Dallas County, Texas, for execution of the judgment creditors' judgment, any and all funds disbursed to him pursuant to the terms of the Global Settlement Agreement and the Final Judgment in Civil Action No: 3:07-CV-2020, . . . pending before the United States District Court for the Northern District of Texas, Dallas Division[,]" and "turn over to the Sheriff of Dallas County, Texas, for execution of [the Louisiana Judgment], any funds allocated, assigned, or awarded to him

for his use and benefit pursuant to the terms of the Global Settlement Agreement and the Final Judgment in the federal suit" up to "the amount necessary to satisfy [THH's] judgment, accrued post-judgment interest, attorney fees awarded by the Court, costs of court, and any fees and charges assessed by the Sheriff of Dallas County, Texas." *See* Turnover Order in *THH Properties L.P., et al. v. Hill*, No. DC-10-05793, in the District Court of Dallas County, Texas, 95th Judicial District ("Turnover Order") (Doc. 1342-4).

In response to CHD and CNBW's Motion for Payment, THH makes several arguments. First, THH argues that paragraphs 40 and 41 of the Final Judgment do not give CHD and CNBW priority over the funds in the court's registry but put all creditors on equal footing. Second, THH argues that its right to payment from the funds held in the court's registry is superior to the rights of CHD, CNBW, and remaining creditors by virtue of the Louisiana Judgment and the Turnover Order. *See* THH Resp. to Mot. for Payment 16 (Doc. 1585). THH further argues that, under their fee agreements, "CHD and CNBW have neither possessory liens nor contractual liens over the funds deposited in the registry of the Court." *Id.* at 13.

In reply, CHD and CNBW reiterate their arguments from their chief legal brief and also submit that, pursuant to the Final Judgment, THH has no rights to the funds held in the court's registry since THH intervened in *this lawsuit*, rather than in the 2269 Action, as contemplated by paragraph 40 of the Final Judgment. For the reasons that follow, the court determines that THH's claims have priority over CHD and CNBW's.

**Memorandum Opinion and Order - Page 28**

First, the court rejects CHD and CNBW's argument that the Final Judgment allows them to be paid ahead of Al III's other creditors from the funds in the registry.  Paragraph 40 provides, in pertinent part:

> 40.    IT IS ORDERED that all claims by [CHD, CNBW, and BAM], claims by any of All III or Erin's other legal counsel (current or former) to any attorneys' fees or reimbursement of any costs allegedly owed by Al III, Erin, or the Grandchildren, and *claims asserted in this Court by any other creditors of Al III or Erin*, are hereby severed into a separate action over which this Court shall preside; provided, however, such severance shall in no way prevent, delay, or interfere with the Court's completion of the Settlement, or the Court's entry of Final Judgment. The Clerk of Court is instructed to open a matter under a separate cause number which will resolve the attorneys' fees dispute.

Final J. ¶ 40 (emphasis added).  Under the plain language of the Final Judgment, THH is on equal footing with CHD, CNBW, and Al III's other creditors in this action.  Paragraph 41 of the Final Judgment provides that the registry funds are "deemed interpleaded" for Al III's benefit and subject to the claims in the severed action.  *See* Final J. ¶ 41.

Second, the court rejects CHD and CNBW's argument that they have a contractual assignment and priority lien over Al III's other creditors, created when their fee agreements were signed on October 17, 2008, and March 24, 2009, respectively.  CHD and CNBW's property rights under their fee agreements are governed by applicable state law.  *Marre v. United States*, 117 F.3d 297, 307 (5th Cir. 1997).  Under Texas law, a "contingency fee contract is generally considered to be an executory contract." *In re Willis*, 143 B.R. 428, 431 (Bankr. E.D. Tex. 1992); *Marre*, 117 F.3d at 307 (same).  It is also generally accepted that "an attorney does not receive a legal or equitable interest pursuant to a contingency fee contract until the contingency actually occurs." *Marre*, 117

F.3d at 308 (quoting *In re Willis*, 143 B.R. at 431). "Once the contingency occurs, the attorney has a lien on the judgment or settlement securing his services, and an attorney's lien is paramount to the rights of the parties in the suit, and is superior to other liens on the money or property involved, subsequent in point of time." *Id.* (citation omitted). Texas law does recognize, however, that "a properly worded contingent fee contract may effect an assignment of part of the recovery and a part of a cause of action to an attorney." *See Dow Chemical Co. v. Benton*, 357 S.W.2d 565, 568 (Tex. 1962). The question for the court in examining the fee agreements is whether the language in the agreements created "a present interest in the cause of action" or merely "contemplated the future payment of a fee." *Carroll v. Hunt*, 168 S.W.2d 238, 241 (Tex. 1943).

As THH correctly argues, contrary to CHD and CNBW's assertions, the fee agreements at issue do not assign a present interest in a cause of action or in the funds in the registry of the court but merely contemplate future payment of a fee. CHD's Hourly Rate and Contingency Fee Agreement provides, in relevant part:

> For and in consideration of the services rendered and to be rendered by [CHD] pursuant to this Agreement, Clients agree to pay to [CHD] legal fees on an hourly rate basis . . . and Clients additionally agree to pay and hereby assign to [CHD] *an undivided fifteen percent (15%) interest in the Gross Recovery* by Clients (or any one or more of them), resulting from any final non-appealable judgment, binding written settlement or partial settlement agreement, or other final resolution[.]

Doc. 1229-5, p. 3 (emphasis added). CNBW's Dallas Counsel's Attorney's Fee Agreement contains similar language, except CNBW's contingency fee in the gross proceeds is at a rate of ten percent (10%), rather than fifteen percent (15%). *See* Doc. 1229-9, p.3.

**Memorandum Opinion and Order - Page 30**

CHD and CNBW's reliance on *United States v. Brousseau*, 446 F. Supp. 2d 659 (N.D. Tex. 2006), is misplaced. In *Brousseau*, the court considered a representation agreement in which a client assigned his cause of action to his attorney. *Id.* at 661 (considering a representation agreement whereby the client "conveys, assigns, and transfers to Attorney his **causes of action**. . . .") (emphasis added). The court held that this language amounted to a "present assignment" of the client's causes of action to his attorney and, accordingly, that the attorney's ownership interest in the causes of action "vested immediately." *Id.* By contrast, CHD and CNBW received, at most, a right to recover the future payment of a fee. *See* Hourly Rate and Contingency Fee Agreement (Doc. 1229-5, p. 3); Dallas Counsel's Attorney's Fee Agreement (Doc. 1229-9, p.3). As correctly noted by THH: "Neither of these agreements assign any present interest in Al III's and the other represented parties' causes of action. Rather, these agreements are in the form of standard contingency fee arrangements and governed by general Texas law." THH Resp. to Mot. for Payment 10 (Doc. 1585). The fee agreements at issue are more akin to the fee agreement addressed by the Texas Supreme Court in *Carroll*, *supra*, where the client "agreed that, upon successful termination of the litigation, she would pay the attorneys out of the estate a fee equal to one-eighth of the property but not less than $7,500,000[.]" 168 S.W.2d at 239. The court found that the language created only an obligation of payment and did not effectuate a present assignment. *Id.* In *In re Willis*, *supra*, while not providing for a specified interest in the cause of action, the contingency fee agreement stated that "the Debtor 'assigns' counsel his fee out of the 'avails of the recovery.'" 143 B.R. at 432 n.4. The court found that this language resulted in "an ambiguity of intent which the basic rules of construction require

**Memorandum Opinion and Order - Page 31**

to be construed against the drafter (*i.e.*, counsel) to find that this contingency fee contract has not assigned a present vested interest in the settlement." *Id.*   Under the reasoning in *Carroll* and *In re Willis*, the court concludes that the language in the fee agreement, unlike that in *Brousseau*, *supra*, does not give CHD and CNBW a present vested interest in their fee agreements, and claims to payments from Al III, but only an obligation of payment once the contingencies are realized.  *See In re Willis*, 143 B.R. at 431; *Marre*, 117 F.3d at 308.  In this case, the contingency did not occur until May 11, 2015, when the United States Court of Appeals issued its mandate in this case, rendering judgment for CHD and CNBW, and confirming their arbitration award against the Hills. *See* Docs. 108 and 109 in the 4599 Action. *See generally Marre*, 117 F.3d at 308 n. 19 ("Although it is unclear what constitutes the defining moment at which the contingency occurs . . . we believe that at minimum, the contingency cannot occur before judgment is affirmed on appeal or when the time for filing an appeal has lapsed.") (internal citations omitted).  Until that time, CHD and CNBW held unliquidated claims.[14]

Finally, the court finds unavailing and unpersuasive CHD and CNBW's argument, raised in their reply brief, that THH has no right to access any of the registry funds because it intervened in this action, and not the severed 2269 Action.  As is clear from the record, when THH sought to intervene in the 2269 Action, Magistrate Judge Toliver rejected the request, stating: "The instant motion to intervene is denied because the monies for which Movants seek leave to intervene to collect are in the Court's registry in Case No. 3:07-CV-2020-P-BK."  Order (Doc. 541 in the 2269

---

[14] Even were the court to find that the contingency occurred upon entry of the Final Judgment on December 8, 2010, the Louisiana Judgment was signed on December 1, 2009.

Action).  On June 4, 2014, the court granted THH's motion to intervene in this case.  *See* Order (Doc. 1484).

In sum, the court will deny CHD and CNBW's Motion for Payment insofar as they assert a superior interest in funds held in the court's registry for the benefit of Al III over THH.  Further, the court determines that, pursuant to the Louisiana Judgment and the Turnover Order, THH is entitled to receive payment of its claims from funds in the court's registry in advance of payments made to CHD and CNBW.

### ii.     PBL

Judgment creditor PBL argues it has a security interest perfected prior to CHD and CNBW, but concedes that, pursuant to a subordination agreement, "CHD's and CNBW's contingent fee claims have priority to the extent of the amount awarded in the 4599 Judgment, $25,026,744[.]" PBL Surreply to Reply of CHD and CNBW in Supp. of Mot. for Payment 2 (Doc. 1609). PBL further concedes that: "CHD also has priority for its hourly fees in the amount of $3,150,000." *See id.*  As no funds will remain in the court's registry following payments to THH and the law firms, the court need not address PBL's argument that it has a superior claim over CHD and CNBW's award of attorney's fees and expenses in the 4599 Judgment in the amount of "$6,709,132.19 (expenses, $69,045.59; attorney's fees, $6,643,085.60)," as well as interest awarded on this amount. *See id.* at 3.

### 2.     Payments from the MHTE-Albert G. Hill III Trust

The court now turns to CHD and CNBW's argument that, in the event the registry's funds are insufficient to satisfy the 4599 Judgment, paragraph 39 of the Final Judgment authorizes the

**Memorandum Opinion and Order - Page 33**

corpus of the MHTE-Albert G. Hill III Trust to be used, pursuant to this court's order, for payment of attorney's fees and expenses owed by the Hills in connection with the settled litigation.  Mot. for Payment 12-13; Reply 7-8.  In opposition, Al III argues that CHD and CNBW can be paid under paragraph 39 only at his election.  *See* Al III Resp. 23 (Doc.1595) (Paragraph 39 "does not authorize payment to CHD and CNBW *absent [Al III's] election*[.]") (emphasis added).

> Paragraph 39 of the Final Judgment states:

> 39.    IT IS FURTHER ORDERED that any attorney's fees and costs incurred by Al III, Erin, and/or the Grandchildren in connection with this litigation settled through the Settlement Agreement may, at the election of Al III, be paid from Al III's separate interest in the MHTE or, if such payment is to be made after the division of the MHTE as directed by this Final Judgment, from the New Hunt Trust of which Al III is the beneficiary, and *the Trustee of the trust is hereby authorized, directed and ORDERED to make such payments upon either* (a) Al III's request and written certification, made under oath before a notary public, that the attorneys' fees and costs requested to be paid were incurred by Al III, Erin, and/or the Grandchildren in connection with the litigation settled through the Agreement, *or (b) further order of this Court*.

Final J. ¶ 39 (Doc. 999) (emphasis added).

As is evident from the plain language, paragraph 39 provides that CHD and CNBW may be paid from the trust upon "further order of this Court."  The record provides no support for Al III's arguments to the contrary.  Further, in the 2269 Action, when Al III argued to the court that paragraph 39 allowed payment of his fees and costs to defend against BAM's claims, he acknowledged that it is "undisputed that this Court has the discretion to authorize or order such

**Memorandum Opinion and Order - Page 34**

[attorney's fees] payments under Paragraph 39 of the Final Judgment."  Doc. 184-2 at 9, ¶ 15.[15]

Accordingly, pursuant to paragraph 39 of the Final Judgment, the court will grant CHD and CNBW's Motion for Payment insofar as they seek to collect the remainder of the 4599 Judgment from the corpus of the MHTE-Albert G. Hill III Trust.

## III.    Conclusion

For the reasons herein stated, CHD and CNBW's Motion for Payment is **denied in part** and **granted in part**.  Specifically, the motion is **denied** insofar as CHD and CNBW seek to satisfy the 4599 Judgment with the funds held in Account No. CRIS307CV002020008 (the Installment Payments and accrued interest), and **denied** insofar as CHD and CNBW assert priority over Intervenor THH to the funds interpleaded into the court's registry.  The motion is **granted** in all other respects.

Accordingly, it is hereby **ordered** that, pursuant to paragraphs 21 and 22 of the Final Judgment and Assignment 1 (Doc. 1160-2), as approved by the court on June 30, 2011 (Doc. 1174), the court will disburse from the funds interpleaded into the court's registry and held in Account No. CRIS307CV002020008 the entirety of the Installment Payments, $30,009,945.21, plus accrued interest, to the Grandchildren's Trusts, with each of the Grandchildren's Trusts receiving a principal amount equal to one-third (1/3) of the $30,009,945.21, plus one-third (1/3) of the accrued interest.

---

[15] The court rejects Al III's conclusory argument that the MHTE-Albert G. Hill III Trust is a spendthrift trust.  Al III cites no clause in the trust instrument to support this claim.  Further, the Final Judgment, affirmed on appeal, provides for fees and expenses to be paid from the trust estate and allows Al III to pay his attorney's fees and expenses upon his certification—features inconsistent with a spendthrift trust.  *See, e.g.*, Final J. ¶ 39; *see generally* Tex. Prop. Code § 112.035(a)-(c) (defining spendthrift trust).

Prior to disbursement, the court requires additional information.  First, Al III must provide the name(s) and address(es) of the current trustee(s) of each of the Grandchildren's Trusts, as well as the name(s) of the individual(s) that will obtain the checks from the court's clerk.  Second, Al III must provide the court with the amount of any tax obligation exceeding $10,500,000 resulting from Assignment 1.  Al III shall provide a written statement with all of the information requested in this Order to the Clerk of Court no later than **January 22, 2016.**  Following payment to the Grandchildren's Trusts, approximately $22,800,000 will remain in the court's registry.

It is further **ordered** that, after the funds held in Account No. CRIS307CV002020008 are disbursed to the trustee(s) of the Grandchildren's Trusts, from the remaining funds in the court's registry attributable to payments to Al III under the Settlement Agreement, the Clerk of Court **shall pay** THH Properties L.P., D&B Thompson Investments, L.P., Thompson-Huffman L.P., and Melrose Properties, LLC, the sum of $3,406,426.03 (as well as an additional $252.06 per diem in interest calculated from December 2, 2009 until the date of disbursement),[16] by sending a check made payable to "THH Properties L.P., D&B Thompson Investments, L.P., Thompson-Huffman L.P., and Melrose Properties, LLC" to:

Mr. Lee H. Ayres
Ayres, Shelton, Williams, Benson & Paine, L.L.C.
333 Texas Street, Suite 1400 (71101)
P.O. Box 1764
Shreveport, Louisiana 71166

---

[16] The sum of $3,406,426.03 includes the $2,300,000 judgment together with legal interest from the date of judicial demand (October 10, 2002) through December 1, 2009 (the date of the consent judgment) in the amount of $1,106,426.03, an amount previously agreed upon by the parties.

**Memorandum Opinion and Order - Page 36**

Following payment to THH, approximately $18,800,000 will remain in the court's registry.

It is further **ordered** that after THH is paid in full, from the remaining funds in the court's registry attributable to payments to Al III under the Settlement Agreement, the Clerk of Court **shall pay** Campbell Harrison & Dagley, L.L.P., Suzanne E. Goss, and Calloway, Norris, Burdette & Weber, PLLC, by sending a check made payable to "Campbell Harrison & Dagley, L.L.P., Suzanne E. Goss, and Calloway, Norris, Burdette & Weber, PLLC" to:

> Mr. Thomas C. Wright
> Wright & Close LLP
> One Riverway, Suite 2200
> Houston, Texas 77056

Finally, it is hereby **ordered** that all payments from the MHTE-Albert G. Hill III Trust by the trustee or by Al III pursuant to paragraph 39 of the Final Judgment are **stayed** pending satisfaction of the remaining amounts due to CHD and CNBW under the 4599 Judgment from the unencumbered assets in the MHTE-Albert G. Hill III Trust.

It is so **ordered** this **15th day** of **January, 2016.**

_Sam A. Lindsay_
Sam A. Lindsay
United States District Judge