IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **ALBERT G. HILL, III,** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. **3:07-CV-2020-L** |
| § | |
| **WILLIAM SCHILLING,** *et al.*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

Before the court is the Temporary Administrator of the Estate of Albert G. Hill, Jr.'s ("Hill Jr.") Motion to Substitute (Doc. 1839), filed April 17, 2018. Having considered the motion, response, reply, supplemental briefing concerning the effect of Hill Jr.'s death on his pending claims, record, and applicable law, the court **grants** the Temporary Administrator of the Estate of Albert G. Hill, Jr.'s Motion to Substitute (Doc. 1839), and **substitutes** Margaret Keliher ("Keliher"), the duly appointed Temporary Administrator of the Estate of Hill Jr., in the place of decedent Hill Jr.

### I. Factual History & Procedural Background

The court assumes the parties' familiarity with the protracted and contentious eleven-year litigation history in this family dispute and limits its discussion to those background facts related to the relief sought. In December 2007, Albert G. Hill, III ("Hill III") brought a lawsuit in Texas state court in his individual capacity and on behalf of the Margaret Hunt Trust Estate ("MHTE") and the Haroldson Lafayette Hunt, Jr. Trust Estate ("HHTE") against specific beneficiaries of the MHTE and HHTE, including his father (Hill Jr.), Hill Jr.'s siblings, and the trustees and members of the advisory boards of the MHTE and HHTE. Among other things, Hill III alleged wrongdoing in the

management and administration of the MHTE and HHTE by their respective trustees and violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C § 1961, *et seq*. He also sought a declaration that he was a direct and vested beneficiary of the MHTE as a consequence of his father's disclaimer of various interests he held in the MHTE.[1] Following removal to federal court on December 3, 2007, the case was randomly assigned to United States District Judge Reed C. O'Connor.

A.     **The Settlement Agreement**

Ultimately, Hill III agreed to a settlement of the dispute. On May 13, 2010, the parties entered into the Global Settlement and Mutual Release Agreement (the "Settlement Agreement") (Doc. 879) that settled this action and related state court actions. The Settlement Agreement affirmed Hill Jr.'s 2005 disclaimer (*see supra* note 1) and provided, among other things, that the MHTE would be divided, pro rata, into separate sub-trusts for all beneficiaries, including Hill III, who would become the sole beneficiary to one of the new subdivided trusts containing his individual interest, the MHTE-Albert G. Hill III Trust. Each sub-trust was to be separately administered by a new successor trustee. Pursuant to the Settlement Agreement, Hill Jr. also agreed to make installment payments totaling $30,675,000 to Hill III between 2010 and 2015 to be used by Hill III to establish trusts for Hill Jr.'s grandchildren, namely, Albert G. Hill, IV, Nance H. Hill, and Caroline M. Hill (the "Grandchildren's Trusts"). Doc. 879 at 18-19.

---

[1] Much of the dispute centered on Hill III's claimed interest in the MHTE following the 2007 death of his paternal grandmother, Margaret Hunt Hill. In 2005, Hill Jr. signed an irrevocable disclaimer of a portion of his interest in the MHTE in favor of his three children, including Hill III. *See* Ex. C to Global Settlement and Mutual Release Agreement (2005 Disclaimer) (Doc. 879). The effect of the disclaimer is that Hill Jr.'s disclaimed interest passed to Hill III and his two siblings after Margaret Hunt Hill's death. *See* March 4, 2010 Mem. Op. & Order 7-8 (Doc. 611). In 2007, Hill Jr. sought to rescind his 2005 disclaimer, along with another partial disclaimer he had executed in 2007. This litigation ensued.

**Memorandum Opinion and Order – Page 2**

The parties also agreed that monetary damages might not adequately recompense the parties for every breach and that, therefore, specific performance and injunctive relief would be available for any breach of any term of the Settlement Agreement. *Id.* § III(5)(r). Section III(5)(r) provides:

> (r) <u>Specific Performance</u>: The Parties agree that monetary damages alone may not be adequate recompense for any breach of this Agreement. In the event any Party breaches any of the obligations or responsibilities places upon such Party in this Agreement, then any other Party may seek any legal or equitable remedy that may be available for such breach . . . . The Parties agree that the remedy of specific performance and/or injunctive relief (whether mandatory or by restraint) shall be available for the breach of any term, condition, covenant, or warranty of this Agreement.

*Id.* § III(5)(r).

Further, Hill III agreed not to contest Hill Jr.'s will:

> (f) <u>No Contest of Al Jr.'s Last Will and Testament</u>: Al III, Erin, the Grandchildren, and all of their descendants and heirs agree not to contest the Last Will and Testament of Al Jr. or file any additional action, lawsuit, or legal proceeding challenging the disposition of his property.

*Id.* § III(1)(f). The parties additionally agreed that the rights, obligations, and benefits under the Settlement Agreement would survive their death:

> (m) <u>Binding Successors</u>: This Agreement shall inure to the benefit of, and shall be binding upon the Agreeing Parties hereto, their heirs, executors, administrators, successors, employees, transferees, trustees, agents, and assigns.

*Id.* § III(5)(m). Finally, the parties agreed that this court would have continuing jurisdiction over any claim or controversy arising out of the Settlement Agreement:

> (c) <u>Federal Court's Continuing Jurisdiction</u>: Any controversy or claim arising after the date of execution of this Agreement arising out of this Agreement and the Documentation shall be resolved by the Federal Court, the Honorable Reed O'Connor, who shall retain continuing jurisdiction over this Agreement.

*Id.* § III(5)(c).

### B. The Final Judgment

On November 8, 2010, Judge O'Connor issued a final judgment (the "Final Judgment") implementing and memorializing the parties' Settlement Agreement. *See* Final J. (Doc. 999). Among other things, the Final Judgment: affirmed Hill Jr.'s 2005 disclaimer of a portion of his interest in the MHTE (*see supra* note 1) (*id.* ¶ 5); divided the MHTE and HHTE into separate sub-trusts in accordance with the parties' agreement (*id.* ¶¶ 6-8); required Hill Jr. to make four annual installment payments of $7.5 million each into the court's registry (*id.* ¶ 21); and required Hill III to establish the Grandchildren's Trusts, which were separate irrevocable trusts for Hill Jr.'s grandchildren, and to irrevocably assign his rights to receive the installment payments to the Grandchildren's Trusts. *Id.* ¶¶ 19, 22.

The trust document that governs the Grandchildren's Trusts is "The Albert G. Hill, III 2010 Gift Trust," which is Exhibit 5 to the Final Judgment (the "Trust Instrument"). The Trust Instrument provides that until the primary beneficiary reaches the age of twenty-five, the income and principal of the Grandchildren's Trusts may only be used for the "health and education of the primary beneficiary . . . ." Doc. 999-1, ¶ 2.01. The Trust Instrument also provides that the Donor (Hill III) is required to provide support for his children.

> 3.04 Donor's Support Obligation. Despite any other trust provision of this instrument, the trustee shall make no payment to any beneficiary that would directly or indirectly discharge the legal obligation of any donor to support that beneficiary.

*Id.* ¶ 3.04. Thus, under the plain language of the Trust Instrument, as long as a beneficiary is under the age of twenty-five, the trustee is only authorized to make distributions for the health and education of the Grandchildren. The trustee has no authority to provide for the Grandchildren's support. That obligation rests with the Donor, Hill III. *Id.*

**Memorandum Opinion and Order – Page 4**

Finally, consistent with the Settlement Agreement, Judge O'Connor retained continuing jurisdiction over the implementation and enforcement of the Final Judgment:

> IT IS ORDERED that, without affecting the finality of this Final Judgment, the Court hereby retains continuing jurisdiction over the implementation of the [Settlement] Agreement, the Final Judgment, and the Parties for purposes of implementing and enforcing the [Settlement] Agreement and this Final Judgment. IT IS FURTHER ORDERED that any controversy or claim arising after the date of execution of the [Settlement] Agreement and arising out of the [Settlement] Agreement or the Documentation shall be resolved by this Court. Each of the Agreeing Parties agrees and covenants not to, and IT IS ORDERED that none of the Agreeing Parties shall, file or assert any of the released Claims (in law or in equity).

*Id.* ¶ 45.[2]

Hill III appealed the Final Judgment challenging, among other things, the addition of provisions that were not part of the Settlement Agreement. The Fifth Circuit affirmed the Final Judgment. *See Hill v. Schilling,* 495 F. App'x 480 (5th Cir. 2012) (consolidated appeal).

C.  **Hill Jr.'s Funding of the Grandchildren's Trusts**

Pursuant to the Final Judgment, Hill Jr. funded the Grandchildren's Trusts with a total of $30 million paid in four installments of $7.5 million each, which were paid into the court's registry. *See* Docs. 1328, 1446, 1532, 1647. On May 13, 2011, Hill III executed the required assignment, thereby assigning, transferring and conveying all his rights and interests in the installment payments to the Grandchildren's Trusts. *See* Assignment 1 (1160-2). The court approved the executed trust instruments on June 30, 2011. *See* Docs. 1169, 1222 1174. In January 2016, pursuant to a court order, the funds that Hill Jr. had paid into the court's registry were released to fund the Grandchildren's Trusts. *See* Doc. 1686.

---

[2] On October 2, 2013, this matter was reassigned to the undersigned following the recusal of Judges O'Connor, Lynn, Solis, Godbey, Boyle, Fitzwater, and Kinkeade. Accordingly, this court has continuing jurisdiction over the implementation of the Settlement Agreement, Final Judgment, and the parties for purposes of implementing and enforcing the Settlement Agreement and the Final Judgment. *See* Final J. ¶ 45.

**D.    Issuance of a TRO & Preliminary Injunction Against Hill III & First Tennessee Bank, N.A. ("FTB"), the Successor Trustee of the Grandchildren's Trusts**

On May 15, 2017, Hill Jr. filed under seal in this case an Emergency Motion to Enforce Judgment and Objection to Appointment of Successor Trustee in Violation of Final Judgment and Application for Temporary Restraining Order and Injunctive Relief ("Motion to Enforce Judgment"). That same day, Hill Jr. initiated a new lawsuit, Civil Action No. 3:17-cv-1298-L (the "1298 Action"), suing FTB and seeking a temporary restraining order and injunctive relief against it. *See* Orig. Compl. and Application for Temporary Restraining Order and Injunctive Relief, and Request for Appointment of Guardian Ad Litem.[3] Among other things, Hill Jr. contended in both civil actions that FTB—appointed by Hill III on February 8, 2017 as the successor trustee of the Grandchildren's Trusts—at Hill III's request, improperly distributed nearly $9 million of the funds in the Grandchildren's Trusts to: (1) purchase a residence for himself and his wife, Erin Nance Hill ("Erin Hill"), located at 981 Davis Drive, Atlanta, Georgia 30327 (the "Property" or "Residence"); (2) pay for upkeep on the Residence; (3) pay for Hill III and Erin Hill's legal fees; and (4) avoid execution on unencumbered assets in Hill III's own trusts. Hill Jr. sought to prevent FTB and Hill III, directly or indirectly, from violating the Final Judgment, Settlement Agreement, Trust Instrument, and prior court orders, and stop Hill III from using funds from the Grandchildren's Trusts to pay his personal obligations. On June 9, 2017, the court granted the TRO in both actions and set a preliminary injunction hearing for July 20, 2017. *See* Mem. Op. & Order (Doc. 1745). On July 13, 2017, by the agreement of Hill Jr. and FTB, the court entered an order in the 1298 Action

---

[3] The 1298 Action was randomly assigned to the Honorable Jane J. Boyle. On May 17, 2017, the undersigned agreed to accept a transfer of the 1298 Action in light of the related 2020 Action, pending before this court.

preliminarily enjoining FTB from distributing or providing Hill III or Erin Hill use of or access to any funds from the Grandchildren's Trusts without first providing a request to the court for review and approval. Following a hearing, on October 6, 2017, the court granted Hill Jr.'s request for preliminary injunctive relief. *See* Mem. Op. & Order (Doc. 1785) (filed under seal). The court then set a permanent injunction hearing for Monday, November 13, 2017.[4]

On November 23, 2017, the court held a hearing on Hill Jr.'s application for permanent injunctive relief. Faced with extensive briefing and evidence filed by the parties, as well as the unexpected death of Hill Jr., the court has extended the preliminary injunction to May 31, 2018. *See* Docs. 1790, 1806, 1829.

### E. Hill Jr.'s Death & the Probate Court's Appointment of Keliher as the Temporary Administrator of his Estate

On December 6, 2017, counsel for Hill III filed a Suggestion of Death, stating, "upon the record, pursuant to Rule 25(a)(1) of the Federal Rules of Civil Procedure, the death of [Hill Jr.], Defendant, on December 2, 2017." Suggestion of Death (Doc. 1811). On December 7, 2017, an Application for Probate of Will and Issuance of Letters Testamentary was filed in Probate Court No. 2 of Dallas County, Texas (the "Probate Court"). *See Estate of Albert Galatyn Hill, Jr., Deceased,*

---

[4] In the 1298 Action, on October 25, 2017, Hill Jr. and FTB filed a Notice of Settlement and Request for Expedited Preliminary Settlement Status Conference, which attached a preliminary settlement agreement. On November 22, 2017, following a telephonic conference with the court, Hill Jr. and FTB submitted a joint status report requesting that Lori Ashmore Peters be appointed Attorney Ad Litem, agreeing to certain proposed changes to the settlement agreement, and asking the court to advise them as to whether these proposed changes satisfied the concerns it raised during the telephonic conference. On November 29, 2017, the court entered an order appointing the Attorney Ad Litem. Hill Jr. passed away on December 2, 2017, prior to the court's review of the proposed changes to the terms of the parties' settlement agreement and the Attorney Ad Litem filing a report with the court. On April 24, 2018, Keliher filed a motion to substitute (Doc. 52 in the 1298 Action), informing the court that the Attorney Ad Litem was finalizing her recommendation as to the settlement agreement, and that she and FTB anticipated filing a joint request for a final settlement approval hearing pursuant to their settlement agreement to finalize the agreement between the parties and end the litigation. Keliher's motion to substitute in the 1298 Action is not yet ripe and, accordingly, will be the subject of a separate court order.

PR-17-04117-2, pending in the Probate Court No. Two of Dallas County, Texas. On January 5, 2018, Keliher filed an Emergency Application for Appointment of Temporary Administrator with the Probate Court, advising it of these proceedings and the 1298 Action (*see supra* note 4), and the need for someone to represent the Estate of Hill Jr. in both proceedings. On January 10, 2018, the Probate Court granted Keliher's application and appointed her as Temporary Administrator of the Estate of Hill Jr.

On January 12, 2018, Keliher filed a Motion to Leave to file a (1) Motion to Substitute ("Motion to Substitute"), and subject to the court granting the Motion to Substitute, (2) a Supplement to the Emergency Motion to Enforce the Final Judgment and Application for Temporary Restraining Order and Injunctive Relief (the "Supplement"). On April 17, 2018, the court granted Keliher's Motion for Leave to file the Motion to Substitute, and denied, without prejudice, Keliher's Motion for Leave to file the Supplement as premature, as the court had not yet ruled on her Motion to Substitute. The court ordered Keliher to file the Motion to Substitute as a separate docket entry no later than April 18, 2018. Keliher filed the Motion to Substitute on April 17, 2018. After receiving leave of court, Hill III filed his response to the Motion to Substitute (Doc. 1841), as well as a supplement to his response (Doc. 1851). On May 2, 2018, with leave of court, Keliher filed a reply in further support of her Motion to Substitute (Doc. 1855).

In addition to the parties' briefing on Keliher's Motion to Substitute, after counsel for Hill III filed the Suggestion of Death, on December 8, 2017, the court issued an order requiring briefing by the parties on the issue of whether Hill Jr.'s Motion to Enforce Judgment and request for injunctive relief survive his death. *See* Order (Doc. 1813). The parties filed their respective briefing in accordance with the court's order. *See* Temp. Admin.'s Resp. (Doc. 1826); Hill III's Resp. (Doc.

1824). On April 11, 2018, the court directed Hill III to respond to the Temporary Administrator's brief and the Temporary Administrator to respond to Hill III's brief. The parties filed these supplemental briefs. *See* Temp. Admin.'s Resp. (Doc. 1847); Hill III's Resp. (Doc. 1849).

## II. Legal Standards

### A. Federal Rule of Civil Procedure 25(a)

Rule 25 (a) (1) of the Federal Rules of Civil Procedure authorizes the substitution of proper parties in the event of an existing party's death while litigation is ongoing. It provides as follows:

> If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

Fed. R. Civ. P. 25(a)(1). Under Rule 25(a)(1), the court must, therefore, inquire into whether: (1) the claims pled are extinguished; (2) the motion is timely; and (3) the person being substituted is the proper party. Notably, Rule 25 "does not resolve the question [of] what law of survival actions should be applied. [It] simply describes the *manner* in which parties are to be substituted in federal court once it is determined that the applicable substantive law allows the action to survive a party's death." *Robertson v. Wegmann*, 436 U.S. 584, 587 n.3 (1978) (alterations and emphasis in original); *see also* 7C Charles Alan Wright et al., Federal Practice and Procedure § 1952 (3d ed. 2017 supp). ("Rule 25 is procedural . . . . Whether the death of a party extinguishes a claim for or against the party is not a question of procedure. It is a question of substance on which the state law ordinarily governs.").

B.  **Survival of Claims**

Whether a claim survives the death of a party is controlled by common law principles or a statute that provides for survival. *Thomes v. Porter*, 761 S.W.2d 592, 594 (Tex. App.—Fort Worth 1988, no writ). When no statute addresses the survivability of the claim, as in this case, common law rules are applied. *Id.* "[C]laims that are contractual in nature or affect property rights survive the death of [a] party." *Belt v. Oppenheimer, Blend, Harrison & Tate, Inc.*, 192 S.W.3d 780, 784 (Tex. 2006). "[T]he test most commonly used to determine survivability is whether or not the cause of action may be assigned." *Lindsay ex rel. Lindsay v. South San Antonio Indep. Sch. Dist.*, 983 S.W.2d 778, 779 (Tex. App.—San Antonio 1998, no pet.) (quoting *Traver v. State Farm Mut. Auto. Ins.*, 930 S.W.2d 862, 867 (Tex. App.—Fort Worth 1996), *rev'd on other grounds*, 980 S.W.2d 625 (Tex. 1998)); *see also Launius v. Allstate Ins. Co.*, 2007 WL 1135347, at *5 (N.D. Tex. Apr. 17, 2007) (same). "[A] cause of action for breach of contract is assignable and therefore survives the death of either party." *Lindsay ex rel. Lindsay*, 983 S.W.2d at 780 (citation omitted).

III. **Analysis**

A.  **Summary of the Parties' Arguments**

Pursuant to Federal Rule of Civil Procedure 25(a), Keliher moves to substitute into this case in the place of Hill Jr., deceased, "to enjoin [Hill III] from continuing to violate the Final Judgment entered on November 8, 2010 . . . and the [Settlement Agreement] entered into by Hill Jr., Hill III, and others in connection with this proceeding." Mot. to Substitute 1 (Doc. 1839). Keliher contends that "Texas law, the Final Judgment, and Settlement Agreement give [her] the contractual and legal authority to substitute into this lawsuit [on] behalf Hill Jr. to enforce the rights of his Estate based on Hill III's violations of the Final Judgment and Settlement Agreement." *Id.* at 1-2.

In opposition, Hill III does not contest the timeliness of Keliher's Motion to Substitute under Rule 25 or her qualifications to file a Motion to Substitute as the representative of Hill Jr.'s Estate, conceding that Keliher "has been so designated by the Probate Court." Hill III's Resp. 2 (Doc. 1841).[5] Hill III challenges Keliher's Motion to Substitute on the sole ground that Hill Jr.'s Motion to Enforce Judgment and related request for injunctive relief were extinguished upon his death. Hill III contends that even if Hill Jr. had standing during his lifetime to assert the causes of action presently being asserted before this court, which he challenges, his death has extinguished such causes of action. According to Hill III, Hill Jr.'s Estate has no standing to assert any claims arising from the alleged breaches relating to the Grandchildren's' Trust because Hill Jr. had no economic stake in management of the Trust. Hill III contends that, at this juncture, the GSA has been:

> fully performed, with Hill Jr. having paid the sums required, Hill III assigning the payment stream to the Grandchildren's Trusts, Hill III having established trusts fully in keeping with the terms expressly ordered by this Court, a Trustee being properly appointed and approved by the Court, and the Grandchildren's Trusts having been funded.

Hill III's Resp. 4 (Doc. 1841). As such, Hill III argues,

> Any claims of malfeasance by the Trustee fail to allege damage to any claims of property rights of the decedent, or a breach of contract that has harmed his Estate. The rights to enforce the substantive terms of the Grandchildrens' Trusts rightfully belong to the beneficiaries, and not to Hill Jr., or the personal representative of his Estate.

*Id.* at 4-5.

---

[5] As to the timeliness of the motion to substitute, Keliher's counsel filed the Motion for Leave to file her Motion to Substitute on January 12, 2018, thirty-seven (37) days from the date the suggestion of death was entered on the record on December 6, 2017. The Motion to Substitute was, therefore, on its face, timely filed in accordance with Rule 25(a)(1). *See* Fed. R. Civ. P. 25(a)(1) ("If the motion [to substitute] is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed").

**Memorandum Opinion and Order – Page 11**

For the reasons that follow, the court determines that, under common law principles, Hill Jr.'s claims are not extinguished by his death, and that his Estate, through Temporary Administrator Keliher, continues to have the same standing Hill Jr. had to enforce the Settlement Agreement, Final Judgment and the Grandchildren's Trusts while alive.

B.     **Discussion**

At the outset, to the extent Hill III is again raising the argument that Hill Jr. lacked standing to seek specific performance and seek injunctive relief as to Hill III's breach of the Settlement Agreement, Final Judgment, and Trust Instrument, the court has already rejected this argument. In its June 9, 2017 memorandum opinion and order granting Hill Jr.'s Application for TRO, the court rejected Hill III's argument that Hill Jr. lacked standing to bring his Motion to Enforce Judgment. *See* Mem. Op. & Order 10-11 (Doc. 1745). Further, on August 10, 2017, the court overruled Hill III's Objection to Jurisdiction, noting that Hill III was urging the same arguments the court had previously rejected in its June 9, 2017 ruling. *See* Order (Doc. 1769). The court rejects Hill III's most recent attempt to challenge Hill Jr.'s standing for the reasons previously set forth in its June 9, 2017 memorandum opinion and order.

This case is unique in that the court has retained jurisdiction over the Settlement Agreement (Doc. 879), the Final Judgment (Doc. 999), and the Trust Instrument (Doc. 999-1 at Ex. 5), which is a part of the Final Judgment. *In light of the idiosyncratic nature of this eleven-year old dispute, much of the case law upon which Hill III relies is inapposite. In this case, the parties expressly agreed that the rights, obligations, and benefits under the Settlement Agreement would survive their death, see Settlement Agreement § III(5)(m), and that if a party breaches the Settlement Agreement, any other party to the Settlement Agreement (including their administrators) can seek legal or*

**Memorandum Opinion and Order – Page 12**

*equitable relief, including injunctive relief, to enforce the rights and obligations under the Settlement Agreement. Id. § III(5)(r)*. Further, the parties agreed this court would retain continuing jurisdiction over the Settlement Agreement. *Id.* § III(5)(c). The court mandated in paragraph 45 of the Final Judgment that any controversy or claim arising out of the Settlement Agreement be resolved by this court. Although Hill III does not dispute the provisions of the Final Judgment that provide for continuing jurisdiction in this court to enforce the Settlement Agreement and Final Judgment, he nevertheless argues that the Settlement Agreement has been fully performed, thereby leaving Hill Jr. and his Estate with no recourse.

As explained in detail in the first section of this memorandum opinion and order, the Settlement Agreement was a contractual right held by Hill Jr. during his life. Like other contractual rights, it was freely assignable. *See Lindsay ex rel. Lindsay*, 983 S.W.2d at 779-80. The Settlement Agreement itself provided contractual rights to Hill Jr.'s Estate upon his death:

> (m) <u>Binding Successors</u>: This Agreement shall inure to the benefit of, and shall be binding upon the Agreeing Parties hereto, their heirs, executors, administrators, successors, employees, transferees, trustees, agents, and assigns.

Doc. 879, § III(5)(m). The Trust Instrument, which is a part of the Final Judgment, *see* Doc. 999-1, Ex. 5, was a specific part of the consideration Hill III received under the Settlement Agreement and the Final Judgment. Hill Jr.'s Motion to Enforce Judgment arises out of a contract. *See* Doc. 879, § III(2)(b) (Hill Jr.'s obligations to pay $30 million to Hill III); *id.* § III(4)(b) (Hill III's obligation to irrevocably assign the $30 million to separate trusts for Hill Jr.'s Grandchildren); *see also* Hill Jr.'s Motion to Enforce Judgment, Doc. 1735 at 12 ("Here, an injunction is necessary to preclude violations of the Settlement Agreement and the Final Judgment . . ."). Because Hill Jr.'s Motion to

Enforce Judgment sounds in contract, his claim to enforce the Settlement Agreement and the remedies expressly included in the Settlement Agreement, including specific performance and injunctive relief, survive his death. *See* Doc. 879, § III(5)(r).

A review of the record demonstrates that Hill Jr. performed his obligations under the Settlement Agreement and Final Judgment when he agreed not to revoke his disclaimer in the MHTE, thereby allowing Hill III to obtain his vast inheritance early, *see supra* note 1, and when he made installment payments between 2010 and 2015 totaling over $30 million to establish the Grandchildren's Trusts. Hill Jr.'s agreement to make the installment payments was conditioned upon the terms of the Trust Instrument, which expressly provided that the assets would only be used for the Grandchildren's health and education. These restrictions, and Hill III's obligation to comply with them, are not extinguished by Hill Jr.'s death. To hold otherwise would produce an absurd and untenable result, as it would allow Hill III to abdicate and renege on the express and agreed-upon terms and provisions of the Settlement Agreement and Final Judgment. As Keliher correctly states: "If Hill Jr.'s Estate is not permitted to enforce Hill Jr.'s rights, the Estate will have lost over $130 million in value without the protections of the [Settlement Agreement], [Final Judgment], and the Grandchildren's Trusts which were the intended benefit of the bargain for Hill Jr." Temp. Admin.'s Resp. 3-4 (Doc. 1847).

## IV. Conclusion

For the reasons herein stated, the court **grants** the Temporary Administrator of the Estate of Albert G. Hill, Jr.'s Motion to Substitute (Doc. 1839). Temporary Administrator Margaret Keliher is hereby **substituted** in place of decedent Albert G. Hill, Jr. in this action, and the court **directs** the clerk of court to reflect this substitution on the docket sheet. In light of this substitution, the court's

ruling on Hill Jr.'s Motion to Enforce Judgment, and specifically his request for permanent injunctive relief to enforce the terms of the Settlement Agreement, Final Judgment, and Trust Instrument, pending at the time of his death, will issue in due course.

It is so **ordered** this **15th day** of **May, 2018.**

                                        Sam A. Lindsay
                                        United States District Judge