IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **ALBERT G. HILL, III,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:07-CV-2020-L** |
| | § | |
| **WILLIAM SCHILLING,** *et al.*, | § | |
| | § | |
| Defendants. | § | |

# MEMORANDUM OPINION AND ORDER

Before the court are: Washburne and Summers' Emergency Motion to Enforce the Final Judgment and Settlement Agreement, and Application for Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction (Doc. 1876), filed under seal on May 29, 2018; and Albert G. Hill III's ("Hill III") Emergency Application for Temporary Restraining Order and Injunctive Relief to Enforce Global Settlement Agreement and Final Judgment and for Preservation of Assets and Records, filed May 17, 2018 (Doc. 1877).[1]

---

[1] Hill III seeks injunctive relief against Margaret Keliher, Individually and as Temporary Administrator of the Estate of the Albert G. Hill, Jr., Tyree Miller, proponent of the alleged Last Will and Testament of Hill Jr., Chester J. "Don" Donnally, Jr., Ivan Irwin, Jr., Thomas P. Tatham, and Joyce E. Waller.

**Memorandum Opinion and Order - Page 1**

After considering the motions, responses,[2] replies, evidence submitted by the parties with respect to the relief sought, pleadings, record, and applicable law, the court **denies** Washburne and Summers' Application for Temporary Restraining Order; **denies** Hill III's Application for Temporary Restraining Order; and **defers** ruling on the remainder of the relief requested pending its consideration of the parties' respective applications for preliminary injunction and related relief. If the court determines that a hearing on preliminary injunctive relief is necessary, it will conduct a hearing; otherwise, the matter will be decided on the written filings.

I. Background[3]

In December 2007, Hill III brought a lawsuit in Texas state court in his individual capacity and on behalf of the Margaret Hunt Trust Estate ("MHTE") and the Haroldson Lafayette Hunt, Jr. Trust Estate ("HHTE") against specific beneficiaries of the MHTE and HHTE, including his father (Hill Jr.), Hill Jr.'s siblings, and the trustees and members of the advisory boards of the MHTE and HHTE. Among other things, Hill III alleged wrongdoing in the management and administration of the MHTE and HHTE by their respective trustees and violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C § 1961, *et seq.* He also sought a declaration that he was a direct and vested beneficiary of the MHTE as a consequence of his father's disclaimer of various

---

[2] The court has considered the Response of Heather Hill Washburne and Elisa Hill Summers (Doc. 1866); The Trustees and Board Members' Brief in Opposition to Albert G. Hill III's Motion (Doc. 1864); Margaret Keliher, as Temporary Administrator of the Estate of Albert G. Hill, Jr., and Individually, and Tyree Miller, as Proponent of Albert G. Hill, Jr.'s Will Opposition (Doc. 1865); and Hill III's Response to the Motion of Heather Hill Washburne and Elisa Hill Summers for Leave to File, and their proposed Emergency Motion to Enforce the Final Judgment and the Settlement Agreement, and Application for Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction (Doc. 1863).

[3] The court's recitation of the relevant background is based on the materials contained in the appendixes submitted by the parties in support of their respective requests for injunctive relief, as well as the court's prior decisions in this case.

**Memorandum Opinion and Order - Page 2**

interests he held in the MHTE.[4] Following removal to federal court on December 3, 2007, the case was randomly assigned to United States District Judge Reed C. O'Connor.

### A. The Settlement Agreement

Ultimately, Hill III agreed to a settlement of the dispute. On May 13, 2010, the parties entered into the Global Settlement and Mutual Release Agreement (the "Settlement Agreement") (Doc. 879) that settled this action and related state court actions. The Settlement Agreement affirmed Hill Jr.'s 2005 disclaimer (*see supra* note 4) and provided, among other things, that the MHTE would be divided, pro rata, into separate subtrusts for all beneficiaries, including Hill III, who would become the sole beneficiary to one of the new subdivided trusts containing his individual interest, the MHTE-Albert G. Hill III Trust, and Hill Jr., as beneficiary of the MHTE - Albert G. Hill Jr. Trust and the HLHTE - Albert G. Hill Jr. Trust. Each subtrust was to be separately administered by a new successor trustee. Pursuant to the Settlement Agreement, Hill Jr. also agreed to make installment payments totaling $30,675,000 to Hill III between 2010 and 2015 to be used by Hill III to establish trusts for Hill Jr.'s grandchildren, namely, AGH, NHH, and CMH (the "Grandchildren's Trusts"). Doc. 879 at 18-19.

---

[4] Much of the dispute centered on Hill III's claimed interest in the MHTE following the 2007 death of his paternal grandmother, Margaret Hunt Hill. In 2005, Hill Jr. signed an irrevocable disclaimer of a portion of his interest in the MHTE in favor of his three children, including Hill III. *See* Ex. C to Global Settlement and Mutual Release Agreement (2005 Disclaimer) (Doc. 879). The effect of the disclaimer is that Hill Jr.'s disclaimed interest passed to Hill III and his two siblings after Margaret Hunt Hill's death. *See* March 4, 2010 Mem. Op. & Order 7-8 (Doc. 611). In 2007, Hill Jr. sought to rescind his 2005 disclaimer, along with another partial disclaimer he had executed in 2007. This litigation ensued.

**Memorandum Opinion and Order - Page 3**

The parties also agreed that monetary damages might not adequately recompense the parties for every breach and that, therefore, specific performance and injunctive relief would be available for any breach of any term of the Settlement Agreement. *Id.* § III(5)(r). Section III(5)(r) provides:

> (r) <u>Specific Performance</u>: The Parties agree that monetary damages alone may not be adequate recompense for any breach of this Agreement. In the event any Party breaches any of the obligations or responsibilities places upon such Party in this Agreement, then any other Party may seek any legal or equitable remedy that may be available for such breach . . . . The Parties agree that the remedy of specific performance and/or injunctive relief (whether mandatory or by restraint) shall be available for the breach of any term, condition, covenant, or warranty of this Agreement.

*Id.* § III(5)(r).

Further, Hill III agreed not to contest Hill Jr.'s will:

> (f) <u>No Contest of Al Jr.'s Last Will and Testament</u>: Al III, Erin, the Grandchildren, and all of their descendants and heirs agree not to contest the Last Will and Testament of Al Jr. or file any additional action, lawsuit, or legal proceeding challenging the disposition of his property.

*Id.* § III(1)(f). The parties additionally agreed that the rights, obligations, and benefits under the Settlement Agreement would survive their death:

> (m) <u>Binding Successors</u>: This Agreement shall inure to the benefit of, and shall be binding upon the Agreeing Parties hereto, their heirs, executors, administrators, successors, employees, transferees, trustees, agents, and assigns.

*Id.* § III(5)(m).

In the Settlement Agreement, Hill III also agreed to waive his standing and his right to demand information, seek accountings, or assert any claim or cause of action in connection with any trust for the primary benefit of a descendant of Margaret Hunt Hill (that is, Hill Jr.) of which Hill III is not a current beneficiary:

> (b) <u>Waiver of Standing</u>: During such time as an Agreeing Party is not a current beneficiary of a trust for the primary benefit of a descendant of MHH (an "MHH Trust") and any other descendant of MHH is living, such Agreeing Party hereby waives (1) his or her status as an interested person in such trust and (2) all rights that he or she may have as a future or contingent beneficiary of such trust under the instrument establishing such MHH Trust, under applicable common law, or under applicable state law, including but not limited to the right to demand information, seek an accounting or assert any claim or cause of action in connection with any such trust. Each Agreeing Party further agrees that the waivers in this subparagraph shall not apply to an MHH Trust during any period in which he or she is a current beneficiary of that MHH Trust, although the waivers in this subparagraph shall continue to apply to any actions taken or omitted by any other person or entity during the period that he or she was not a current beneficiary. For purposes of this paragraph, "current beneficiary" means a person who, at the time a current beneficiary is determined, is then entitled to receive, or is then, in an exercise of discretion by the trustee of such trust, a possible recipient of, income or principal of such trust.

*Id.* § III(5)(b).

Finally, the parties agreed that this court would have continuing jurisdiction over any claim or controversy arising out of the Settlement Agreement:

> (c) <u>Federal Court's Continuing Jurisdiction</u>: Any controversy or claim arising after the date of execution of this Agreement arising out of this Agreement and the Documentation shall be resolved by the Federal Court, the Honorable Reed O'Connor, who shall retain continuing jurisdiction over this Agreement.

*Id.* § III(5)(c).

### B. The Final Judgment

On November 8, 2010, Judge O'Connor issued a final judgment (the "Final Judgment") implementing and memorializing the parties' Settlement Agreement. *See* Final J. (Doc. 999). Among other things, the Final Judgment: affirmed Hill Jr.'s 2005 disclaimer of a portion of his interest in the MHTE (*id.* ¶ 5); divided the MHTE and HHTE into separate sub-trusts in accordance

with the parties' agreement resulting in, among other subtrusts, the MHTE - Albert G. Hill Jr. Trust and the HLHTE - Albert G. Hill Jr. Trust (*id.* ¶¶ 6-9); incorporated Hill III's waiver of standing and his waiver of his right to demand information, seek accountings, or assert any claim or cause of action in connection with, any trust for the primary benefit of a descendent of Margaret Hunt Hill of which Hill III was not a current beneficiary (*id.* ¶ 28); and ordered Hill III not to contest Hill Jr.'s will or challenge the disposition of Hill Jr.'s property (*id.* ¶ 29).

Finally, consistent with the Settlement Agreement, Judge O'Connor retained continuing jurisdiction over the implementation and enforcement of the Final Judgment:

> IT IS ORDERED that, without affecting the finality of this Final Judgment, the Court hereby retains continuing jurisdiction over the implementation of the [Settlement] Agreement, the Final Judgment, and the Parties for purposes of implementing and enforcing the [Settlement] Agreement and this Final Judgment. IT IS FURTHER ORDERED that any controversy or claim arising after the date of execution of the [Settlement] Agreement and arising out of the [Settlement] Agreement or the Documentation shall be resolved by this Court. Each of the Agreeing Parties agrees and covenants not to, and IT IS ORDERED that none of the Agreeing Parties shall, file or assert any of the released Claims (in law or in equity).

*Id.* ¶ 45.[5]

Hill III appealed the Final Judgment challenging, among other things, the addition of provisions that were not part of the Settlement Agreement. The Fifth Circuit affirmed the Final Judgment. *See Hill v. Schilling,* 495 F. App'x 480 (5th Cir. 2012) (consolidated appeal).

---

[5] On October 2, 2013, this matter was reassigned to the undersigned following the recusal of Judges O'Connor, Lynn, Solis, Godbey, Boyle, Fitzwater, and Kinkeade. Accordingly, this court has continuing jurisdiction over the implementation of the Settlement Agreement, Final Judgment, and the parties for purposes of implementing and enforcing the Settlement Agreement and the Final Judgment. *See* Final J. ¶ 45.

C.  **Hill Jr.'s Will**

On December 20, 2014, Hill Jr. executed his will, in which he exercised his testamentary powers of appointment in the following trusts: (i) the MHTE - Albert G. Hill Jr. Trust; (ii) the HLHTE - Albert G. Hill Jr. Trust; (iii) the Lyda Hunt - Margaret Trusts, Al G. Hill, Jr.; and (iv) the Albert Hill Trust. On December 13, 2016, the MHTE - Albert G. Hill, Jr. Trust was terminated pursuant to a written instrument titled MHTE - Albert G. Hill, Jr. Trust Trustee Resolution and Record of Trust Termination; and the HLHTE - Albert G. Hill, Jr. Trust was terminated pursuant to a written instrument titled HLHTE - Albert G. Hill, Jr. Trust Trustee Resolution and Record of Trust Termination.[6] On December 28, 2016, the Lyda Hunt - Margaret Trusts, Albert G. Hill, Jr. was terminated pursuant to a written instrument titled the Lyda Hunt - Margaret Trusts, FBO Albert G. Hill, Jr. Record of Trust Termination. With respect to the fourth trust, the Albert Hill Trust, Hill Jr. exercised his testamentary power of appointment in favor of the Al G. Hill, Jr. Family Foundation in his will.[7]

---

[6] Under the Final Judgment, the trust instrument that governs the MHTE - Albert G. Hill Jr. Trust is the original 1935 trust instrument for the MHTE (that is, the Articles of Agreement and of Declaration of Trust of Margaret Hunt Trust Estate), and the trust instrument that governs the HLHTE - Albert G. Hill Jr. Trust is the original 1935 trust instrument for the HHTE (that is, the Articles of Agreement and of Declaration of Trust of Haroldson L. Hunt, Jr. Trust Estate).

[7] Hill III contends in both the Probate Court and this court: (1) that Hill Jr. lacked the power of appointment with respect to the trusts in question; and (ii) that Hill Jr.'s voluntary termination of the trusts during his lifetime was premature and in violation of the Settlement Agreement and Final Judgment. Washburne and Summers contend that Hill Jr. had authority to exercise his powers of appointment and terminate the trusts in question. The court need not rule on these issues at this juncture, as, for the reasons set forth herein, neither party has satisfied each of the requirements for seeking a temporary restraining order.

### D. Hill Jr.'s Death and the Application for Probate of Hill Jr.'s Will

On December 6, 2017, counsel for Hill III filed a Suggestion of Death, stating, "upon the record, pursuant to Rule 25(a)(1) of the Federal Rules of Civil Procedure, the death of [Hill Jr.], Defendant, on December 2, 2017." Suggestion of Death (Doc. 1811). On December 7, 2017, Tyree Miller ("Miller"), named the Independent Executor of Hill Jr.'s Estate by his will, filed an Application for Probate of Will and Issuance of Letters Testamentary in Probate Court No. 2 of Dallas County, Texas (the "Probate Court"), seeking to probate Hill Jr.'s will, to be appointed as the independent Executor of Hill Jr.'s Estate, and to have letters testamentary issued in accordance with the will. *See Estate of Albert Galatyn Hill, Jr., Deceased*, PR-17-04117-2, pending in the Probate Court No. Two of Dallas County, Texas.

On December 22, 2017, Hill III filed an Original Answer in the Probate Court admitting the allegations regarding the date of Hill Jr.'s death, his age, the listing of his children, his domicile at death, and that the Probate Court has jurisdiction and venue over Hill Jr.'s probate matter, but otherwise denying all other allegations made by Miller in the Application for Probate of Will and Issuance of Letters Testamentary. On January 5, 2018, in light of Hill III's Original Answer, Keliher filed an Emergency Application for Appointment of Temporary Administrator with the Probate Court, advising it of these proceedings, and the need for someone to represent the Estate of Hill Jr. On January 10, 2018, the Probate Court granted Keliher's application and appointed her as Temporary Administrator of the Estate of Hill Jr. On May 15, 2018, this court granted Keliher's Motion for Leave to Substitute in this action in the place of Hill Jr.

In addition to challenging Miller, the individual Hill Jr. selected to serve as Independent Executor under the Will, asserting he should be disqualified due to a conflict of interest, Hill III is

Memorandum Opinion and Order - Page 8

challenging the existence of Hill Jr.'s testamentary powers of appointment in certain trusts, *see supra* note 7, and challenging the powers granted to the Independent Executor under the will, asserting a claim for a declaration concerning the scope and authority of the Independent Executor and a determination as to the existence of any testamentary powers of appointment, and seeking injunctive relief. The Probate Court has set the issues Hill III raised in his initial pleading for a jury trial to begin on August 20, 2018.

In response to an order of the Probate Court to add all additional parties affected or interested in the matters asserted by Hill III, on April 30, 2018, Hill III filed a Supplemental Answer and Original Counterclaim adding thirteen new parties to the Probate Court litigation—including Washburne, Summers, and their children. In his amended pleading in the Probate Court, Hill III continues to argue that Hill Jr. did not have powers of appointment with respect to certain trusts to exercise in his will and seeks a declaration to this effect; seeks to disqualify Miller from serving as the Independent Executor of the Estate; seeks accountings of certain trusts; seeks injunctive relief; and seeks the imposition of constructive trusts. Hill III seeks actual, consequential, and exemplary damages as well as attorneys' fees.

## II. Legal Standard

There are four prerequisites for the extraordinary relief of preliminary injunction or TRO. A court may grant such relief only when the movant establishes that:

> (1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury [to the movant] outweighs the threatened harm to the defendant; and (4) the granting of the preliminary injunction will not disserve the public interest.

*Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *Canal Auth. of the State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) (*en banc*). The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a TRO or preliminary injunction can be granted. *Mississippi Power and Light Co. v. United Gas Pipeline*, 760 F.2d 618, 621 (5th Cir. 1985); *Clark*, 812 F.2d at 993. Otherwise stated, if a party fails to meet *any* of the four requirements, the court cannot grant the TRO or preliminary injunction.

In considering these four requirements and deciding whether to grant injunctive relief, courts must keep in mind that the granting of a TRO or preliminary injunction "is an extraordinary and drastic remedy [that] should not be granted unless the movant clearly carries the burden of persuasion," and a TRO or preliminary injunction is necessary "to preserve the court's ability to render a meaningful decision on the merits." *Callaway*, 489 F.2d at 573. Thus, "only those injuries that cannot be redressed by the application of a judicial remedy after a hearing on the merits can properly justify a preliminary injunction [or TRO]." *Id.*

### III. Analysis

#### A. Washburne and Summers's Application for Temporary Restraining Order

In support of their application for a temporary restraining order, Washburne and Summers argue that Hill III is violating the Final Judgment and breaching the Settlement Agreement by asserting claims contesting Hill Jr.'s will and objecting to Miller, who Hill Jr. selected to serve as the Independent Executor of the Estate. They also argue that Hill III is also violating the Final Judgment and breaching the Settlement Agreement by challenging the disposition of Hill Jr.'s property, and seeking declaratory relief regarding whether Hill Jr. had powers of appointment in certain trusts to exercise in his will, accountings of various trusts (including the HLHTE - Albert G.
**Memorandum Opinion and Order - Page 10**

Hill Jr. Trust and the MHTE - Albert G. Hill Jr. Trust), injunctive relief, constructive trusts, damages (actual, consequential, and exemplary), as well as attorneys' fees. They seek a temporary restraining order enjoining Hill III from:

>(1) contesting Hill Jr.'s Will;
>
>(2) filing any action, lawsuit, or legal proceeding challenging the disposition of Hill Jr.'s property;
>
>(3) demanding information and documents in connection with any trust for the primary benefit of a descendant of Margaret Hunt Hill (i.e., Hill Jr.) of which Hill III is not a current beneficiary, especially (i) the MHTE - Albert G. Hill, Jr. Trust, (ii) the HLHTE - Albert G. Hill, Jr. Trust, (iii) the Lyda Hunt - Margaret Trusts, Al G. Hill, Jr., and (iv) the Albert Hill Trust;
>
>(4) seeking an accounting in connection with any trust for the primary benefit of a descendant of Margaret Hunt Hill (i.e., Hill Jr.) of which Hill III is not a current beneficiary, especially (i) the MHTE - Albert G. Hill, Jr. Trust, (ii) the HLHTE - Albert G. Hill, Jr. Trust, (iii) the Lyda Hunt -Margaret Trusts, FBO Al G. Hill, Jr., and (iv) the Albert Hill Trust; and
>
>(5) asserting any claim or cause of action in connection with any trust for the primary benefit of a descendant of Margaret Hunt Hill (i.e., Hill Jr.) of which Hill III is not a current beneficiary, especially (i) the MHTE - Albert G. Hill, Jr. Trust, (ii) the HLHTE - Albert G. Hill, Jr. Trust, (iii) the Lyda Hunt -Margaret Trusts, FBO Al G. Hill, Jr., and (iv) the Albert Hill Trust.

Doc. 1876 at 3. They also request that the court: order Hill III to dismiss his claims in the Probate Court and provide them either: (i) an unsealed order as such to present to the Probate Court, or (ii) a sealed order as such and provide Washburne and Summers leave to submit the sealed order to the Probate Court for in camera review; and award them the recovery from Hill III of all reasonable attorney's fees and costs of litigation.

1. *Washburne and Summers's Standing*

The court first addresses Hill III's challenge to Washburne and Summers's standing. According to Hill III, Washburne and Summers's standing is "problematic." Hill III's Response to the Motion of Heather Hill Washburne and Elisa Hill Summers for Leave to File, and their proposed Emergency Motion to Enforce the Final Judgment and the Settlement Agreement, and Application for Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction 1 ("Hill III Resp. Br.") (Doc. 1863). The court disagrees.

Washburne and Summers are Hill III's sisters and Hill Jr.'s daughters. They are both parties to the Settlement Agreement and the Final Judgment. As a result, they have standing to enforce the Settlement Agreement and the Final Judgment, and to assert claims against Hill III for violating the Settlement Agreement and the Final Judgment.

2. *Application for Temporary Restraining Order*

Having considered the Application for TRO, responses, replies, pleadings, record, and evidence presented and summarized above, the court determines that Washburne and Summers have failed to meet their burden of demonstrating that there is a substantial threat that irreparable harm will result if the injunction is not granted. Otherwise stated, their motion fails to present an emergency situation requiring issuance of a TRO. The court agrees with Hill III's assessment:

> The essence of the Washburne-Summers Motion is that Hill III is allegedly filing motions in the Probate Court improperly, but that nothing of substance has happened. In fact, the entire history of the Probate Court proceedings to date has been that although such Court has issued its Scheduling Order, absolutely no discovery has been allowed to date . . . The motion does not and cannot allege any genuine harm to the Probate Estate, or relief that Hill III is seeking against the movants. Hill III has been ordered by the Probate Court to include all parties who may be affected by the issues raised in his pleadings, and this has been done.

**Memorandum Opinion and Order - Page 12**

Hill III Resp. Br. 2-3. Further, the Probate Court's jury trial on issues Hill III raised in his initial pleading is not set to begin until August 20, 2018. Absent more, the court concludes that Washburne and Summers have failed to meet their burden of demonstrating that there is a substantial threat that irreparable harm will result if a temporary restraining order is not granted.

Moreover, given the complexity of the issues raised and the tortuous and torturous history of this action, the court is not convinced at this juncture, without further study of the materials presented, that Washburne and Summers have shown a substantial likelihood of success on the merits.

In light of these determinations, the court need not decide whether movants have satisfied the other two prerequisites to issuance of a TRO. Accordingly, the court **denies** Washburne and Summers's Application for TRO.

### B. Hill III's Application for Temporary Restraining Order

In support of his Application for TRO, Hill III contends that the major subtrusts that were supposed to be preserved by the Final Judgment—the MHTE - Albert G. Hill Jr. Trust and the HLHTE - Albert G. Hill Jr. Trust —"have been prematurely and unlawfully dissolved, destroying the valuable inheritance of Hill III, his siblings, and their descendants, from the H.L. Hunt family, estimated to be worth in excess of $1 billion." Hill III Application for TRO 2. According to Hill III, prior to May 15, 2018, he had only been given verbal information regarding such termination and, on May 15, 2018, for the first time, he learned that the MHTE - Albert G. Hill Jr. Trust and the HLHTE - Albert G. Hill Jr. Trust were terminated on December 13, 2016. Hill III contends:

> The Final Judgment made it clear that other than the specific changes set forth in the Judgment, all other provisions of the formative documents for the MHTE and HHTE trusts would remain in full force and effect. Such trust instruments both had

> substantially identical provisions, establishing them as irrevocable, providing that during the lifetime of the beneficiary, only the annual income could be distributed to the beneficiary, that the beneficiary could not request distribution of corpus or dissolution of the trust, and that 21 years after the death of the named beneficiary, the corpus of the trust would be distributed to the beneficiary's descendants per stirpes. In addition, on information and belief, the Lyda Hunt - Margaret Trusts FBO Albert G. Hill, Jr., had similar provisions. Therefore, following Hill Jr.'s death on December 2017, Hill III and his siblings, and their children, would have succeeded to Hill Jr.'s potential termination interest in the massive subtrusts created under the Final Judgment, and the Lyda Hunt Trust. It now appears that the Hill Jr. representatives are attempting to subvert the rights of his descendants through their illegal acts, which seek to deny Hill III, his siblings, and their children, from the rights that they acquired as a result of the [Settlement Agreement] and Final Judgment.

*Id.* at 3. Hill III seek a temporary restraining order to preserve the assets of the MHTE - Albert G. Hill Jr. Trust, the HLHTE - Albert G. Hill Jr. Trust, and the Lyda Hunt – Margaret Trusts FBO Albert G. Hill, Jr., and to prevent dissipation, concealment, and further transfer of such assets, and preservation of all records relating to such trusts and actions affecting them, including alleged privileged communications, and all metadata relating thereto, pending hearing on preliminary injunction. *Id.* at 4.

### 1. *Hill III's Standing*

Washburne and Summers, as well as the other respondents against whom Hill III seeks injunctive relief, *see supra* note 1, argue that Hill III has no standing with respect to the MHTE - Albert G. Hill, Jr. Trust or the HLHTE - Albert G. Hill Jr. Trust (the "Trusts") because, under the Final Judgment and the Settlement Agreement, Hill III was not a current beneficiary of the Trusts. The Settlement Agreement and Final Judgment prevent Hill III from demanding information, documents, or accountings, or asserting claims or causes of action, in connection with any trust for the primary benefit of a descendant of Margaret Hunt Hill (namely, Hill Jr.) of which Hill III is not

a current beneficiary, namely, the MHTE - Albert G. Hill Jr. Trust and the HLHTE - Albert G. Hill Jr. Trust.

In response to this argument, Hill III states:

> The arguments that Hill III lacks standing to bring his Emergency Application are circular. They are primarily based upon the assumption that the premature termination of the trusts was valid, and that the powers of appointment purportedly exercised by Hill Jr. in his Will were valid. This begs the question. If the trusts were illegally terminated to defeat Hill III's rights under the [Settlement Agreement] and the Final Judgment, or in violation of the fiduciary duties owed by the Trustees to all beneficiaries, even future beneficiaries, then Hill III does have standing to assert his claims.

Hill III Reply 2. The court agrees. The argument that Hill III lacks standing presupposes a finding by the court that the MHTE and HHTE Trust Instruments expressly permitted the Trustees, with the Advisory Board's consent, to voluntarily dissolve the Trusts and that the MHTE and HHTE Trust Instruments grant Hill Jr. the powers of appointment he exercised in his will. These matters are disputed. Accordingly, unless and until the court makes these rulings and interprets the relevant language of the various trust instruments, the court cannot say that Hill III waived his standing under section III(5)(b) of the Settlement Agreement.

2.   *Application for Temporary Restraining Order*

Having considered Hill III's Application for TRO, responses, replies, pleadings, record, and evidence presented and summarized above, the court determines that Hill III has failed to meet his burden of demonstrating that there is a substantial threat that irreparable harm will result if the

injunction is not granted. Otherwise stated, his motion fails to present an emergency situation requiring issuance of a TRO. there is no emergency.

As argued in the Trustees and Board Members' Brief in Opposition to Albert G. Hill III's Motion (Doc. 1864):

> [T]he actions Hill III complains of occurred in December of 2016. While Hill III claims he received written confirmation that the "major Trusts" of the Margaret Hunt Trust Estate (the "MHTE") and the Haroldson L. Hunt, Jr. Trust Estate (the "HHTE") (i.e., the MHTE—Albert G. Hill, Jr. Trust and the HLHTE—Albert G. Hill, Jr. Trust), which were purportedly to be preserved by the [Settlement Agreement] and [Final Judgment] were terminated, Hill III admits that he has known about the termination, but did not take any action. In fact, in a transcript of a hearing that occurred in the Probate Court on April 11th, Hill III's lawyer informed Probate Judge Warren that he had been informed that Hill Jr's MHTE and HHTE had been terminated, yet he waited over one month to file this emergency application for TRO.

Doc. 1864 at 1. Hill III does not dispute that he knew about the termination (albeit lacked written confirmation) well in advance of filing his application for TRO. This delay undercuts any argument by Hill III that failure to issue a temporary restraining order will result in irreparable harm.

Further, given the complexity of the issues raised and the tortuous and torturous history of this action, the court is not convinced at this juncture, without further study of the materials presented, that Hill III has shown a substantial likelihood of success on the merits.

In light of this determination, the court need not decide whether Hill III has satisfied the other two prerequisites to issuance of a TRO. Accordingly, the court **denies** Hill III's Application for TRO.

### IV. Conclusion

For the reasons stated herein, the court **denies** Washburne and Summers's Application for Temporary Restraining Order; **denies** Hill III's Application for Temporary Restraining Order; and **defers** ruling on the remainder of the relief requested pending its consideration of the parties' respective applications for preliminary injunction and related relief.

**It is so ordered** this 1st day of June, 2018.

_____
Sam A. Lindsay
United States District Judge