IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

**ALBERT G. HILL, III,** §
§
Plaintiff, §
§
v. § Civil Action No. **3:07-CV-2020-L**
§
**WILLIAM SCHILLING, *et al.*,** §
§
Defendants. §

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court are Washburne and Summers' Motion to Enforce the Final Judgment and

the Settlement Agreement, and Application for Temporary Restraining Order, Preliminary

Injunction, and Permanent Injunction, Based on New Evidence and New Developments in the

Probate Court  (Doc. 1886) ("Washburne and Summers' Motion"), filed under seal on September

14, 2018; and Margaret Keliher ("Keliher"), as Independent Executor of the Estate of Albert G. Hill,

Jr.'s Joinder in Heather Hill Washburne and Elisa Hill Summers' Motion to Enforce the Final

Judgment and the Settlement Agreement, filed under seal on November 13, 2018 (Doc. 1916).

Having carefully considered the motion and joinder (Docs. 1886 and 1916), response (Docs. 1893-

1895), supplemental legal briefs (Docs. 1900, 1909, 1913), appendixes, rulings of the Honorable

Ingrid M. Warren in Probate Court No. Two of Dallas County, Texas, *see Estate of Albert Galatyn

Hill, Jr.*, *Deceased*, PR-17-04117-2 (the "Probate Proceeding"), record, and applicable law, the court

**grants** Washburne and Summers' Motion, as joined by Keliher.

## I.    Factual Background and Procedural History

The court has addressed this seemingly endless family dispute in a plethora of prior opinions beginning in 2007, and more recently on June 1, 2018, and July 3, 2018, in memoranda opinions and orders denying a previous motion to enforce the Settlement Agreement and Final Judgment and request for injunctive relief filed by Heather Hill Washburne ("Washburne") and Elisa Hill Summers ("Summers"), who are the daughters of Albert G. Hill, Jr. ("Hill Jr.") and the sisters of Plaintiff Albert G. Hill, III ("Hill III"). *See Hill v. Schilling*, No. 3:07-CV-2020-L, 2018 WL 2461877 (N.D. Tex. June 1, 2018) (Lindsay, J.) ("*Hill I*") (denying application for temporary restraining order); *Hill v. Schilling*, No. 3:07-CV-2020-L, 2018 WL 3239795 (N.D. Tex. July 3, 2018) (Lindsay, J.) ("*Hill II*") (denying application for preliminary and permanent injunction and denying motion to enforce final judgment and settlement agreement).  The court incorporates its opinions in *Hill I* and *Hill II* by reference as if repeated herein verbatim.  The court will limit its recitation of the background facts to those necessary to rule on the pending motion.

### A.    The Settlement Agreement and Final Judgment

In December 2007, Hill III brought a lawsuit in Texas state court in his individual capacity and on behalf of the Margaret Hunt Trust Estate ("MHTE") and the Haroldson L. Hunt, Jr. Trust Estate ("HHTE") against specific beneficiaries of the MHTE and HHTE, including his father (Hill Jr.), Hill Jr.'s siblings, and the trustees and members of the advisory boards of the MHTE and HHTE.  Among other things, Hill III alleged wrongdoing in the management and administration of the MHTE and HHTE by their respective trustees and sought a declaration that he was a direct and vested beneficiary of the MHTE as a consequence of his father's disclaimer of various interests he

held in the MHTE.[1]  Following removal to federal court on December 3, 2007, the case was randomly assigned to United States District Judge Reed C. O'Connor.

Ultimately, Hill III agreed to a settlement of the dispute.  On May 13, 2010, the parties entered into the Global Settlement and Mutual Release Agreement (the "Settlement Agreement") (Doc. 879) that settled this action and related state court actions.  The Settlement Agreement affirmed Hill Jr.'s 2005 disclaimer (*see supra* note 1) and provided for the partition of the MHTE and HHTE, pro rata, into separate subtrusts for all beneficiaries.  As relevant to the pending motion, under the Settlement Agreement, Hill III and his wife Erin Nance Hill ("Erin Hill"), individually and as next friend to their three children, Albert G. Hill, IV ("Hill IV"), Nance Haroldson Hill ("N. Hill"), and CMH (Hill Jr.'s grandchildren) (collectively, the "Grandchildren"),[2] as well as their heirs and descendants, agreed not to contest Hill Jr.'s will or file any action challenging the disposition of his property:

> (f)  No Contest of Al Jr.'s Last Will and Testament:  Al III, Erin, the Grandchildren, and all of their descendants and heirs agree not to contest the Last Will and Testament of Al Jr. or file any additional action, lawsuit, or legal proceeding challenging the disposition of his property.

Settlement Agreement § III(1)(f) (the "No Contest Clause").

---

[1] Much of the dispute centered on Hill III's claimed interest in the MHTE following the 2007 death of his paternal grandmother, Margaret Hunt Hill.  In 2005, Hill Jr. signed an irrevocable disclaimer of a portion of his interest in the MHTE in favor of his three children, including Hill III.  *See* Ex. C to Global Settlement and Mutual Release Agreement (2005 Disclaimer) (Doc. 879).  The effect of the disclaimer is that Hill Jr.'s disclaimed interest passed to Hill III and his two siblings after Margaret Hunt Hill's death.  *See* March 4, 2010 Mem. Op. & Order 7-8 (Doc. 611).  In 2007, Hill Jr. sought to rescind his 2005 disclaimer, along with another partial disclaimer he had executed in 2007.  This litigation ensued.

[2] As Albert G. Hill, IV and Nance Haroldson Hill are no longer minors, the court will use their full names, while still abbreviating the name of Hill III and Erin Hill's third child, CMH, as she is still a minor.

The parties also agreed that monetary damages might not adequately recompense the parties for every breach and that, therefore, specific performance and injunctive relief would be available for any breach of any term of the Settlement Agreement. *Id.* § III(5)(r). Section III(5)(r) provides:

> (r)  Specific Performance: The Parties agree that monetary damages alone may not be adequate recompense for any breach of this Agreement. In the event any Party breaches any of the obligations or responsibilities placed upon such Party in this Agreement, then any other Party may seek any legal or equitable remedy that may be available for such breach . . . . The Parties agree that the remedy of specific performance and/or injunctive relief (whether mandatory or by restraint) shall be available for the breach of any term, condition, covenant, or warranty of this Agreement.

*Id.* § III(5)(r). The parties additionally agreed that the rights, obligations, and benefits under the Settlement Agreement would survive their death:

> (m)  Binding Successors: This Agreement shall inure to the benefit of, and shall be binding upon the Agreeing Parties hereto, their heirs, executors, administrators, successors, employees, transferees, trustees, agents, and assigns.

*Id.* § III(5)(m). Finally, the parties agreed that this court would have continuing jurisdiction over any claim or controversy arising out of the Settlement Agreement:

> (c)  Federal Court's Continuing Jurisdiction: Any controversy or claim arising after the date of execution of this Agreement arising out of this Agreement and the Documentation shall be resolved by the Federal Court, the Honorable Reed O'Connor, who shall retain continuing jurisdiction over this Agreement.

*Id.* § III(5)(c).

On November 8, 2010, Judge O'Connor issued a final judgment (the "Final Judgment") implementing and memorializing the parties' Settlement Agreement. *See* Final J. ¶ 1 (Doc. 999). Among other things, the Final Judgment: affirmed Hill Jr.'s 2005 disclaimer of a portion of his interest in the MHTE (*see supra* note 1) (*id.* ¶ 5); and divided the MHTE and HHTE into separate

sub-trusts in accordance with the parties' agreement (*id.* ¶¶ 6-8), and through which Hill III obtained

the MHTE—Albert G. Hill III Trust (*see* Doc. 999 at 20) and the MHTE—Albert Hill, Jr. Income

Beneficiary/Al III Termination Beneficiary Trust (*id.* at 13), among other valuable consideration.

Of particular import, as part of the Final Judgment, the court, incorporating the No Contest

Clause from the Settlement Agreement, ordered Hill III and Erin Hill (in all their capacities) and the

Grandchildren not to contest Hill Jr.'s will or challenge the disposition of his property:

> IT IS ORDERED that Al III (in all capacities), Erin [Hill] (in all her capacities), the
> Grandchildren, and all of their descendants and heirs shall not contest the Last Will
> and Testament of Al Jr., or file any additional action, lawsuit, or legal proceeding
> challenging the disposition of Al Jr.'s property.

*Id.* ¶ 29. Finally, consistent with the Settlement Agreement, Judge O'Connor retained continuing

jurisdiction over the implementation and enforcement of the Final Judgment:

> IT IS ORDERED that, without affecting the finality of this Final Judgment,
> the Court hereby retains continuing jurisdiction over the implementation of the
> [Settlement] Agreement, the Final Judgment, and the Parties for purposes of
> implementing and enforcing the [Settlement] Agreement and this Final Judgment.
> IT IS FURTHER ORDERED that any controversy or claim arising after the date of
> execution of the [Settlement] Agreement and arising out of the [Settlement]
> Agreement or the Documentation shall be resolved by this Court. Each of the
> Agreeing Parties agrees and covenants not to, and IT IS ORDERED that none of the
> Agreeing Parties shall, file or assert any of the released Claims (in law or in equity).

*Id.* ¶ 45. Hill III appealed the Final Judgment challenging, among other things, the addition of

provisions that were not part of the Settlement Agreement. The Fifth Circuit affirmed the Final

Judgment. *See Hill v. Schilling*, 495 F. App'x 480 (5th Cir. 2012) (consolidated appeal).[3]

---

[3] On October 2, 2013, this matter was reassigned to the undersigned following the recusal of Judges
O'Connor, Lynn, Solis, Godbey, Boyle, Fitzwater, and Kinkeade. Accordingly, this court has continuing
jurisdiction over the implementation of the Settlement Agreement, Final Judgment, and the parties for
purposes of implementing and enforcing the Settlement Agreement and the Final Judgment. *See* Final J. ¶
45.

## B.     Hill Jr.'s Death and Probate of His Last Will and Testament ("Will")

On December 20, 2014, Hill Jr. executed his Will, in which he exercised various powers of appointment resulting in the exclusion of Hill III from his Will.  Hill Jr. died on December 2, 2017. On December 7, 2017, Tyree Miller ("Miller"), appointed as Independent Executor of Hill Jr.'s Estate by his Will, filed an Application for Probate of Will and Issuance of Letters Testamentary in the Probate Proceeding, seeking to probate Hill Jr.'s Will, to be appointed as the Independent Executor of Hill Jr.'s Estate, and to have letters testamentary issued in accordance with the Will.

On December 22, 2017, Hill III filed an Original Answer in the Probate Proceeding admitting the allegations regarding the date of Hill Jr.'s death, his age, the listing of his children, his domicile at death, and that the Probate Court has jurisdiction and venue over Hill Jr.'s probate matter, but otherwise denying all other allegations made by Miller in the Application for Probate of Will and Issuance of Letters Testamentary.  On January 5, 2018, in light of Hill III's Original Answer, Keliher filed an Emergency Application for Appointment of Temporary Administrator with the Probate Court, advising it of these proceedings, and the need for someone to represent the Estate of Hill Jr. On January 10, 2018, the Probate Court granted Keliher's application and appointed her as Temporary Administrator of the Estate of Hill Jr.  On May 15, 2018, this court granted Keliher's Motion for Leave to Substitute in this action in the place of Hill Jr.

In the Probate Proceeding, Hill III originally filed an Original Answer and his Supplemental Answer and Counterclaim seeking declaratory relief regarding powers of appointment exercised by Hill Jr. and the termination of certain trusts by his advisory board, demanding accountings of numerous trusts, and seeking other relief, such as injunctive relief, the imposition of constructive

trusts, damages (actual, consequential, and exemplary), and attorney's fees.  He also challenged

Miller's ability to serve as independent executor, citing a conflict of interest.

### C.   Washburne and Summers' Previous Application for Injunctive Relief and Motion to Enforce Settlement Agreement and Final Judgment

On May 29, 2018, Washburne and Summers filed an emergency motion to enforce the

Settlement Agreement and Final Judgment, as well as a request for temporary restraining order,

preliminary injunction, and permanent injunction, arguing that Hill III's filings in the Probate

Proceeding violated the terms of the Settlement Agreement and Final Judgment.  In response, Hill

III filed his own application for injunctive relief and motion to enforce the Settlement Agreement

and Final Judgment.  On June 1, 2018, the court denied the parties' requests for a temporary

restraining order.  *Hill I,* 2018 WL 2461877, at *6-8.  On July 3, 2018, the court denied all remaining

relief sought without prejudice, concluding that the requested relief on both sides was premature in

light of the pending Probate Proceeding.  *Hill II*, 2018 WL 3239795, at *10.

### D.   Washburne and Summers' Current Motion

In their current motion, Washburne and Summers inform the court that since the filing of

their previous motion and application for injunctive relief, "circumstances have changed in the

Probate Court, which necessitate filing this Motion."  Washburne & Summers' Mot. 2 (Doc. 1886).

Specifically, Washburne and Summers inform the court that following its July 3, 2018 decision in

*Hill II*:

> [Hill III] has filed new pleadings—his First Amended Original Answer (on July 13th), and his Second Amended Original Answer (on August 3rd)—in which he has dramatically expanded the scope of his Will Contest in the Probate Proceeding by pursuing a traditional will contest in the Probate Court by contesting whether [Hill Jr.]  had testamentary capacity in 2014 when he signed the Will, contesting the authenticity of Hill Jr.'s signature on the Will, contesting whether Hill Jr. revoked,

modified, and/or superseded his Will, and challenging the disposition of Hill Jr.'s property by seeking to disqualify Keliher from serving as Independent Executor of the Estate (all, collectively, referred to as the Will Contest).

*Id.* at 3.[4]  They also provide the court with a copy of the Probate Court's June 15, 2018 Order Granting Applicant Tyree Miller's Motion for Severance, in which the Probate Court severed Hill III's Will Contest from his counterclaims asserted in his Original Answer and Supplemental Answer and Original Counterclaim seeking declaratory relief regarding powers of appointment and the termination of certain trusts, demanding accountings of numerous trusts, and seeking other relief (such as injunctive relief, the imposition of constructive trusts, and damages) (referred to as the "Hill III Claims"), resulting in the following two lawsuits:

(a) First, the Will Contest, which remains in the Probate Proceeding (Cause No. PR-17-04117-2); and

(b) Second, Cause No. PR-18-2074-2 in which Hill III is asserting the Hill III Claims (the "Declaratory Judgment Action").[5]

Washburne and Summers argue that Hill III's Will Contest violates the No Contest Clause in paragraph 29 of the Final Judgment (Doc. 999) and section III(1)(f) of the Settlement Agreement (Doc. 879), under which Hill III, Erin Hill, the Grandchildren, and their descendants and heirs agreed not to contest Hill Jr.'s Will or bring any legal proceeding challenging the disposition of his property. In their motion, Washburne and Summers request that the court enjoin Hill III, Erin Hill, the

---

[4] Washburne and Summers assert that Miller, the original applicant in the Probate Court to serve as Independent Executor of the Estate, has since declined to so serve, and Keliher is appointed as the successor Independent Executor in the Will.

[5] Washburne and Summers make clear that their current request for relief only relates to the Will Contest, and that they "are not asking for the Court to address whether Hill III may inquire about: (a) Hill Jr. exercising powers of appointment in his Will, or (b) the termination of certain trusts during Hill Jr.'s lifetime."  Washburne & Summers' Mot. 2 (Doc. 1886).

Grandchildren, and their descendants and heirs from continuing to violate the Final Judgment and Settlement Agreement by contesting Hill Jr.'s Will and also seek an order mandating that Hill III dismiss the Will Contest in the Probate Court. Washburne & Summers' Mot. 5 (Doc. 1886).

On September 26, 2018, the court deferred ruling on Washburne and Summers' Motion, as Hill III had yet to file a response,[6] and a request for relief by Washburne and Summers to enjoin Hill III from violating the No Contest Clause was pending simultaneously before Judge Warren in the Probate Proceeding. *See* Order (Doc. 1888). The court explained: "Once the Probate Court addresses the outstanding Objection and Hill III files his response to [the] Motion, the court will consider the matter ripe for adjudication. The court directs Washburne and Summers to notify the court in writing when the Probate Court rules on Miller's Objection." *Id.* at 1-2. Washburne and Summers thereafter notified the court that on October 11, 2018, following a hearing, Judge Warren sustained Miller's objection to Hill III's violation of the No Contest Clause, appointed Keliher as Independent Executor of Hill Jr.'s Estate, and admitted Hill Jr.'s Will to Probate. *See* Order Sustaining Applicant's Objection to Albert G. Hill, III Contesting the Decedent's Will ("Will Contest Order"); Order Admitting Will to Probate and Authorizing Letters Testamentary ("Order Admitting Will to Probate"). In the Will Contest Order, Judge Warren found that Hill III, in violation of the No Contest Clause, was contesting the Will based on his allegations, among other things, that the Will should not be admitted to probate, that the signature on the Will was not Hill Jr.'s signature, that Hill Jr. lacked testamentary capacity when the Will was executed, and that Hill Jr. revoked the Will by executing a subsequent will or codicil, even though no such subsequent will

---

[6] On October 9, 2018, Hill III filed his response to Washburne and Summers' Motion. *See* Docs. 1893-1895.

or codicil had been presented to her; and that Hill III was challenging the disposition of Hill Jr.'s property by challenging the appointment of Keliher as the Independent Executor of Decedent's Estate. Based on her findings, Judge Warren enjoined Hill III from contesting or opposing the admission of Hill Jr.'s Will to probate.

On October 16, 2018, after considering Judge Warren's rulings, the court directed Washburne and Summers to notify it regarding the status of their request for injunctive relief, attorney's fees, and costs in this court. *See* Order (Doc. 1897). On October 23, 2018, Washburne and Summers notified the court that they were still seeking from this court and were entitled to injunctive relief, attorney's fees, and costs. *See* Doc. 1900. In his response filed on November 5, 2018, Hill III informed the court that he had filed an appeal of Judge Warren's Will Contest Order and Order Admitting Will to Probate in state court, that the No Contest Clause did not prevent him from prosecuting his appeal, and that Washburne and Summers were not entitled to injunctive relief or attorney's fees and costs. *See* Opp'n of Albert G. Hill, III to Doc. 1900 (Doc. 1909). On November 9, 2018, Washburne and Summers filed a reply to Hill III's opposition. *See* Doc. 1914.

## II.    Analysis

### A.    Jurisdiction to Enforce the Settlement Agreement

"Enforcement of [a] settlement agreement . . . is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994). The Supreme Court and the Fifth Circuit have found that a court's "'ancillary jurisdiction' 'to manage its proceedings, vindicate its authority, and effectuate its decrees' provides such an independent jurisdictional basis [but] only if 'the parties' obligation to comply with the terms of the settlement agreement ha[s] been made part of the order of

dismissal.'" *Hospitality House, Inc. v. Gilbert*, 298 F.3d 424, 430 (5th Cir. 2002) (quoting *Kokkonen*, 511 U.S. at 380-81).

The parties do not dispute that the Final Judgment both incorporated the terms of the Settlement Agreement and expressly retained jurisdiction to enforce it. *See* Final J. ¶ 45. Specifically, consistent with the Settlement Agreement, Judge O'Connor retained continuing jurisdiction over the implementation and enforcement of the Settlement Agreement and Final Judgment:

> IT IS ORDERED that, without affecting the finality of this Final Judgment, the Court hereby retains continuing jurisdiction over the implementation of the [Settlement] Agreement, the Final Judgment, and the Parties for purposes of implementing and enforcing the [Settlement] Agreement and this Final Judgment. IT IS FURTHER ORDERED that any controversy or claim arising after the date of execution of the [Settlement] Agreement and arising out of the [Settlement] Agreement or the Documentation shall be resolved by this Court. Each of the Agreeing Parties agrees and covenants not to, and IT IS ORDERED that none of the Agreeing Parties shall, file or assert any of the released Claims (in law or in equity).

*Id.* ¶ 45. Hill III argues, however, that this court cannot enforce the Settlement Agreement and Final Judgment because the Anti-Injunction Act bars the court from enjoining his appeal.

      *1.*     *Enforcement of the Settlement Agreement Under the Anti-Injunction Act and the All Writs Act*

Hill III argues that the Anti-Injunction Act prohibits this court from enforcing the Settlement Agreement and enjoining him from maintaining his state-court appeal of Judge Warren's Will Contest Order and Order Admitting Will to Probate. The requested injunctive relief invokes the All Writs Act and the Anti-Injunction Act. 28 U.S.C. §§ 1651(a), 2238. The Anti-Injunction Act provides, "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by an Act of Congress, or where necessary in aid of its

jurisdiction, or to protect and effectuate its judgments." 28 U.S.C. § 2283. The All Writs Act authorizes the court to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). As recognized by the Fifth Circuit, "the [All Writs] Act contains the same language as the second of the three exceptions in the Anti-Injunction Act, and the parallel 'necessary in aid of jurisdiction' language is construed similarly in both the All Writs Act and the Anti-Injunction Act." *Newby v. Enron Corp.*, 302 F.3d 295, 301 (5th Cir. 2002) ("*Newby I*") (collecting cases). The Anti-Injunction Act limits the authority granted by the All Writs Act. Under the Anti-Injunction Act, a federal court may enjoin state court proceedings only "[1] as expressly authorized by Act of Congress, or [2] where necessary in aid of its jurisdiction, or [3] to protect or effectuate its judgments." *See* 28 U.S.C. § 2283; *see also Health Net, Inc. v. Wooley*, 534 F.3d 487, 493 (5th Cir. 2008) ("The Anti-Injunction Act generally prohibits federal courts from interfering with proceedings in state court." (quoting *Vines v. University of La.*, 398 F.3d 700, 704 (5th Cir. 2005))). For the reasons that follow, the court concludes that this case falls within the third exception, commonly known as the "relitigation" exception, as well as the "in aid of jurisdiction" exception. The court also concludes that an injunction is required to deter and prevent future litigation of previously decided issues by a vexatious litigant.

a.      The "Relitigation" Exception

This case falls within the third exception, known as the "relitigation" exception, which permits the issuance of "injunctions that are necessary 'to protect or effectuate [a court's] judgments.'" *Mitchell v. Securities Am., Inc.*, No. 2014 WL 12833923, at *2 (N.D. Tex. Apr. 15, 2014) (Godbey, J.) (quoting *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355, 364 (3d Cir. 2001) (alteration in original) (in turn quoting *Chick Kam Choo v. Exxon Corp.*, 486 U.S.

140, 147 (1988))).  Because the exception is "founded in the well-recognized concepts of res judicata and collateral estoppel," "an essential prerequisite for applying the relitigation exception is that the claims or issues [that] the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court."  *Chick Kam Choo*, 486 U.S. at 147-48.

In the *Corrugated Container* case, the Fifth Circuit considered whether the district court had authority to enjoin plaintiffs in a class action in federal court from pursuing a lawsuit in state court. *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1332, 1333 (5th Cir. 1981).  The Fifth Circuit held that the district court's injunction fell within the relitigation exception because the lower court had approved the parties' settlement.  *Id.* at 1335 ("Unless the judgment is set aside on appeal, state proceedings seeking to relitigate issues covered by the federal judgment may be enjoined under the 'protection' exception." (citing *Woods Exploration & Producing Co. v. Aluminum Co. of Am.*, 438 F.2d 1286, 1311-1316 (5th Cir. 1971))).  The principles of res judicata bar subsequent state litigation over the same claims involved in the federal class action.  *Id.*  The court, therefore, concluded that the Anti-Injunction Act did not preclude the injunction because "there [were] federal judgments that approve[d] some of the settlements and that control the further litigation of the appellant's cause of action."  *Id.*

More recently, in *Newby v. Enron Corp.*, 338 F.3d 467 (5th Cir. 2003) ("*Newby II*"), the Fifth Circuit, relying on its decisions in *Corrugated Cardboard* and *Newby I*, upheld an MDL transferee court's injunction requiring the withdrawal of motions from state court that sought temporary injunctions to freeze the defendants' assets.  The court reasoned the injunction was proper given that the "requests for temporary injunctions in the state court . . . are an attempt to taunt the parties and the court and to undermine the district court's ability to control the consolidated litigation."  *Id.* at

475. The court approved of the narrow tailoring of the injunction, which directly addressed the treatment to the district court and did not bar the state proceeding in its entirety. *Id.* at 476.

Here, the court in 2010 issued a Final Judgment approving the parties' Settlement Agreement. *See* Final J. (Doc. 999). As discussed below, Hill III's Will Contest in the Probate Court and his appeal are an attempt to relitigate in another forum the same issues covered by the Final Judgment. This court may, therefore, enjoin Hill III from prosecuting his state court appeal to protect and effectuate the Final Judgment.

### b. The "In Aid of Jurisdiction" Exception

The court also determines that this case falls within the "in-aid-of-jurisdiction" exception to the Anti-Injunction Act. Generally, courts apply this narrow exception only when a state court proceeding "threatens to dispose of property that forms the basis for federal *in rem* jurisdiction." *Phillips v. Charles Schreiner Bank*, 894 F.2d 127, 132 (5th Cir. 1990) (quoting *Texas v. United States*, 837 F.2d 184, 186-87 n.4 (5th Cir. 1988)). "The traditional notion is that *in personam* actions in federal and state court may proceed concurrently, without interference from either court, and there is no evidence that the exception to [the Anti-Injunction Act] was intended to alter this balance." *Mitchell*, 2014 WL 12833923, at *3 (quoting *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 642 (1977)); *see also Newby I*, 302 F.3d at 301 ("Courts have read this language narrowly, finding a threat to the court's jurisdiction only where a state proceeding threatened to dispose of property that formed the basis for federal in rem jurisdiction or where the state proceeding threatened the continuing superintendence by a federal court."). Although this is not an *in rem* action, some courts have applied the "in-aid-of-jurisdiction" exception to enjoin state court proceedings in extraordinary *in personam* cases. *See In re Vioxx Prods. Liability Litig.*, 869 F. Supp. 2d 719, 725 (E.D. La. 2012)

(citing *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1202 (7th Cir. 1996)); *Mitchell*, 2014 WL 12833923, at *3. Several circuit courts, including the Fifth Circuit, have allowed district courts to enjoin state court proceedings where those proceedings are likely to interfere with an imminent or complete settlement. *In re Vioxx*, 869 F. Supp. 2d at 725 ("At this stage the settlement [becomes] a res or at least a quasi-res and justifies the Court's protection.") (citations omitted); *see also Corrugated Container*, 659 F.2d at 1333.

Additionally, the court concludes that judicial efficiency and finality also favor the protection of complex, time-consuming settlements from interference by state courts. *In re Vioxx*, 869 F. Supp. 2d at 726 (citations omitted); *see also Mitchell*, 2014 WL 12833923, at *3 (quoting *Prudential Ins.*, 261 F.3d at 366 (The relitigation exception "serves the important policy interest of judicial economy by permitting parties to enter into comprehensive settlements that prevent relitigation of settled questions at the core of a class action." (quotation marks omitted))). As recognized by the Hon. David C. Godbey in *Mitchell*:

> Finality is a crucial motivating factor for defendants to enter global settlements …. If subsequent state court proceedings can functionally interfere with or unsettle a completed settlement . . . it would have a chilling effect on future settlements and interfere with the ability of this Court and others to foster efficient global resolutions in complex [class action] litigation.

*Mitchell*, 2014 WL 12833923, at *3 (quoting *Vioxx*, 869 F. Supp. 2d at 728).

These justifications favor protection here as well. The parties, including Hill III, reached a Settlement Agreement that disposed of *all* claims. Were this court unable to prevent Hill III from continuing to litigate the claims at issue that were decided in the previous litigation, future parties would have little, if any, incentive to settle. For these reasons, and those previously stated, the court concludes that it has the power to enjoin Hill III from pursuing or proceeding with the litigation at

the trial level, on appeal from Judge Warren's court, or any such future litigation. The court is mindful that federal courts "must be wary of infringing on legitimate exercises of state judicial power." *Newby I*, 302 F.3d at 301 (citing *Younger v. Harris*, 401 U.S. 37, 44-45 (1971)). Here, however, the court has approved a Settlement Agreement and entered a Final Judgment; the state court has not. Rather than preserving the balance between the state and federal courts, abstention under these circumstances would undermine this court's ability to enforce its own orders and maintain jurisdiction of this case. For this reason, and as this is neither a criminal case nor closely related to a criminal matter, the court concludes that *Younger* does not require abstention in the present case. If Hill III is allowed to demonstrate such effrontery to this court by litigating in another forum to frustrate and circumvent the jurisdiction of the court that approved the Settlement Agreement and issued the Final Judgment, it is powerless to maintain jurisdiction to enforce its orders. After all, the Settlement Agreement and Final Judgment were expressly conditioned on the continuing jurisdiction of the court—an albatross[7] for which this court did not wish, but one that it is duty-bound to accept, bear, and maintain.

### c. Deterrence of Vexatious Litigants

The Fifth Circuit has recognized that "it is widely accepted that federal courts possess power under the All Writs Act to issue narrowly tailored orders enjoining repeatedly vexatious litigants from filing future state court actions without permission from the court." *Newby I*, 302 F.3d at 301 (concluding that district court had authority to issue an injunction under All Writs Act). Hill III has a well-documented history of ignoring his contractual obligations under the Settlement Agreement

---

[7] The history and metaphoric meaning of the term "albatross" is brilliantly depicted in *The Rime of the Ancient Mariner*, a poetic masterpiece by Samuel Taylor Coleridge.

and his obligations under the Final Judgment. He has shown no hesitation in violating multiple

provisions of the Settlement Agreement and Final Judgment. For example, Hill III failed to comply

with paragraph 43 of the Final Judgment, requiring him to complete a second appraisal process for

the illiquid assets of the four trusts referred to in that paragraph, necessitating a court order

compelling his compliance. *See* Feb. 7, 2017 Order (Doc. 1732). He also violated the terms of the

Settlement Agreement and Final Judgment with respect to the contractual limitations on the use of

more than $9 million in the Grandchildren's Trusts, ignoring that, pursuant to The Albert G. Hill,

III 2010 Gift Trust, which is Exhibit 5 to the Final Judgment, until the primary beneficiary reaches

the age of twenty-five, the income and principal of the Grandchildren's Trusts may only be used for

the "health and education of the primary beneficiary . . . ." Doc. 999-1, ¶ 2.01. As a result of Hill

III's and Erin Hill's violations, extensive and costly litigation ensued, consuming scarce judicial

resources, and the court ultimately issued a permanent injunction, enjoining Hill III and Erin Hill

from using the money in the Grandchildren's Trusts to support his and Erin Hill's lavish lifestyle.[8]

Multiple other examples of Hill III's thwarting and circumventing provisions of the Settlement

---

[8] After issuing a temporary restraining order (Doc. 1745) and preliminary injunction (Doc. 1785), the court permanently enjoined Hill III and Erin Hill from taking any action to use or access any funds from the Grandchildren's Trusts, directly or indirectly, for any reason, including but not limited to: using or attempting to use funds from the Grandchildren's Trusts to reimburse Hill III for any expenses or paying any expense for Hill III that are for maintenance or support of the Grandchildren; using or attempting to use funds from the Grandchildren's Trusts to reimburse Hill III for any expenses or paying any expense for Hill III that are for maintenance or support of the Property; using or attempting to use funds from the Grandchildren's Trusts to reimburse Hill III for any expenses or paying any expense for Hill III that are not clearly for the Grandchildren's health or education; and using any of the nearly $9 million dollars that Hill III requested and have been distributed from the Grandchildren's Trusts for any purpose, including but not limited to any reimbursement of any purported expenses for maintenance or support of the Grandchildren or the maintenance or support of the Property. May 23, 2018 Mem. Op. & Order 19 (Doc. 1867).

Agreement and Final Judgment abound. *See, e.g.*, June 30, 2011 Order 4-5 (Doc. 1174); June 25, 2014 Order 4 (Doc. 1499); Nov. 19, 2015 Show Cause Order (Doc. 1659); Feb. 2, 2016 Supplemental Order 2 (Doc. 1704); June 9, 2017 Mem. Op. & Order (Doc. 1745); October 6, 2017 Mem. Op. & Order (Doc. 1785); and Nov. 17, 2017 Show Cause Order (Doc. 1800).

Hill III's decision to contest Hill Jr.'s Will in Probate Court and his current appeal of Judge Warren's Will Contest Order and Order Admitting Will to Probate are further explicit examples of his failure to abide by the terms of the Settlement Agreement and Final Judgment. Based on Hill III's documented history of vexatious litigation and the court's continuing jurisdiction over the Settlement Agreement and Final Judgment, the court concludes that an injunction is required to preserve and protect its jurisdiction over the Settlement Agreement and Final Judgment. *See Newby I*, 302 F.3d at 300-01 (and cases cited therein).

**B.      Washburne and Summers' Motion to Enforce Settlement Agreement and Final Judgment**

Having ruled on the jurisdictional issue and Hill III's arguments regarding the Anti-Injunction Act, the court turns to the merits of Washburne and Summers' Motion to Enforce the Settlement Agreement and Final Judgment. Resolution of whether Hill III's Will Contest in Probate Court and his current appeal violate the Settlement Agreement and Final Judgment turns primarily on interpretation of a contract, the Settlement Agreement. The Settlement Agreement is governed by Texas law. Settlement Agreement § III(5)(v) (Doc. 879). Under Texas law, a settlement agreement is a contract that is interpreted under the general principles of contract construction. *Texas v. American Tobacco Co.*, 463 F.3d 399, 407 (5th Cir. 2006). Further, as a consent judgment, the interpretation of the Final Judgment is similarly governed by the laws relating to contract

interpretation. *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 422 (Tex. 1999) ("An agreed judgment should be construed in the same manner as a contract."); *Hydroscience Techs., Inc. v. Hydroscience, Inc.*, 401 S.W.3d 783, 796 (Tex. App.—Dallas 2013, pet. denied) ("An agreed judgment must be interpreted as if it were a contract between the parties, and the interpretation of the judgment is governed by the laws relating to contracts.") (citation omitted).

"When interpreting a contract, [the court's] 'primary objective is to ascertain and give effect to the parties' intent as expressed in the instrument. Objective manifestations of intent control,' not the subjective intent of the parties." *In the Matter of the Marriage of I.C. and Q.C.*, 551 S.W.3d 119,122 (Tex. 2018) (quoting *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 763-64 (Tex. 2018)). "In identifying such intent, 'we must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless.'" *Italian Cowboy Partner's, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011) (quoting *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003)). "Unless the contract indicates that the parties used a term in a technical or unusual sense, contractual terms are given their plain, ordinary, and generally accepted meaning." *In the Matter of the Marriage of I.C. and Q.C.*, 551 S.W.3d at 122 (citations omitted). If a contract "is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe it as a matter of law." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). "Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered." *Id.* at 394 (citation omitted).

"Courts interpreting unambiguous contracts are confined to the four corners of the document, and cannot look to extrinsic evidence to create an ambiguity." *American Tobacco Co.*, 463 F.3d at

407 (citation omitted). A contract is not ambiguous simply because the parties advance different interpretations. *American Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). "[I]f the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, creating a fact issue of the parties' intent." *J.M. Davidson*, 128 S.W.3d at 299. "Only where a contract is ambiguous may a court consider the parties' interpretation and admit extraneous evidence to determine the true meaning of the instrument." *Italian Cowboy Partner's*, 341 S.W.3d at 333-34 (citation omitted) (internal quotations omitted).

Finally, a court should avoid when possible "a construction [that] is unreasonable, inequitable, and oppressive." *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987); *see also Pavecon, Inc. v. R-Com, Inc.*, 159 S.W.3d 219, 222 (Tex. App.—Fort Worth 2005, no pet.) (stating that when interpreting a contract, a court should avoid, if possible, "a construction that is unreasonable, inequitable, or oppressive, or would lead to an absurd result.").

As previously explained, under the No Contest Clause, Hill III and Erin Hill, individually and as next friend to their three children, Hill IV, N. Hill and CMH, as well as their heirs and descendants, agreed not to contest Hill Jr.'s Will or file any action challenging the disposition of his property:

> (f)    No Contest of Al Jr.'s Last Will and Testament: Al III, Erin, the Grandchildren, and all of their descendants and heirs agree not to contest the Last Will and Testament of Al Jr. or file any additional action, lawsuit, or legal proceeding challenging the disposition of his property.

Settlement Agreement § III(1)(f). In its Final Judgment, the court, incorporating the No Contest Clause from the Settlement Agreement, ordered Hill III, Erin Hill, and the Grandchildren not to contest Hill Jr.'s Will or challenge the disposition of his property:

> IT IS ORDERED that Al III (in all capacities), Erin [Hill] (in all her capacities), the Grandchildren, and all of their descendants and heirs shall not contest the Last Will and Testament of Al Jr., or file any additional action, lawsuit, or legal proceeding challenging the disposition of Al Jr.'s property.

Final J. ¶ 29.

Under the applicable rules of contractual interpretation as set forth, the court concludes that Hill III's waiver of his right to challenge Hill Jr.'s Will or the disposition of his property is unambiguous. Further, Hill III does not argue that the language is ambiguous. Giving effect to the parties' intentions as expressed in the unambiguous contractual language, the court determines that Hill III has breached the Settlement Agreement and violated the Final Judgment by contesting Hill Jr.'s Will, both in Probate Court, initially, and now through his appeal of the Will Contest Order and Order Admitting Will to Probate. In the Probate Court, Hill III contested the Will by arguing, among other things, that the Will should not be admitted to probate, that the signature on the Will was not Hill Jr.'s signature, that Hill Jr. lacked testamentary capacity when the Will was executed, and that Hill Jr. revoked the Will by executing a subsequent will or codicil, even though no such subsequent will or codicil was presented. *See, e.g., In re Estate of Montez*, 2007 WL 4320747, at *3 (Tex. App.—San Antonio Dec. 12, 2007, pet. denied); *In re Estate of Hamill*, 866 S.W.2d 339, 341, 343 (Tex. App.—Amarillo 1993, no writ); *Gunter v. Pogue*, 672 S.W.2d 840, 841-43 (Tex. App.—Corpus Christi 1984, writ ref'd n.r.e.) (finding that challenges to a decedent's testamentary capacity and claims of undue influence were "unquestionably a will contest"); *Short v. Short*, 468 S.W.2d 164, 165 (Tex. Civ. App.—Tyler 1971, writ ref'd n.r.e.) ("This is a will contest. . . . Contestants . . . opposed probate [of a will] on the ground that the signature on the will was not genuine . . . ."); *Betts v. Betts*, 395 S.W.2d 673, 674 (Tex. Civ. App.—Amarillo 1965, no writ) ("The

subject matter of this case involves a contest of a will. Appellee . . . filed an application to probate the alleged last will and testament of his father . . . . His half-brother, appellant . . . filed the contest . . . . The first point asserts error of the trial court in . . . 'holding that contestant's evidence did not raise a material issue of fact as to whether or not the will sought to be probated had been revoked.'"). Hill III also violated the No Contest Clause in which he agreed not to challenge the disposition of Hill Jr.'s property by challenging the appointment of Keliher as the Independent Executor of the Estate.

Hill III's current appeal of Judge Warren's Will Contest Order and Order Admitting Will to Probate is no different. He waived his right to contest any aspect of Hill Jr.'s Will, *in any manner*, in exchange for the consideration he received under the Settlement Agreement. As Hill III's waiver prohibits him from contesting Hill Jr.'s Will or challenging the disposition of Hill Jr.'s property, it includes, by definition, any appeal of Judge Warren's rulings finding that Hill III was contesting the Will. Otherwise stated, as Hill III expressly waived his right to contest Hill Jr.'s Will or challenge the disposition of his property in the first instance, he cannot now use his initial challenge in Probate Court as a springboard to legitimize his appeal of Judge Warren's rulings.

Hill III argues that he did not waive any right to appeal the Probate Court's resolution, or any resolution by this court, of a dispute over whether the No Contest Clause has been violated. According to Hill III, "There is nothing in the no-contest waiver or the continuing jurisdiction provision of the Final Judgment that even remotely resembles an appeal waiver." Opp'n of Hill III 5-6 (Doc. 1909). The court disagrees. Hill III is asking the court to adopt or imply some exception to the expansive and unambiguous language contained in the No Contest Clause. The court declines to do this and finds no reason to sanction Hill III's failure to abide by the terms of the Settlement

Agreement as implemented by the Final Judgment, either in the first instance by contesting Hill Jr.'s Will and challenging the disposition of his property in the Probate Court, or now, by appealing Judge Warren's rulings.

Having concluded that, based on the unambiguous language of the Settlement Agreement, Hill III waived his right to contest Jr.'s Will or challenge the disposition of his property, *in any manner*, in exchange for the consideration he received under the Settlement Agreement, the court turns to Washburne and Summers' argument that, under the doctrine of quasi-estoppel (or estoppel by contract):

> it would be unconscionable, and render illusory the consideration Hill III provided to Hill Jr., and to Washburne and Summers, in the Settlement Agreement (the [No Contest Clause]), to allow Hill III to maintain a position in the Probate Court (the Will Contest) that is inconsistent with the one to which he acquiesced in this Court (agreeing to the [No Contest Clause])[.]

Washburne & Summers' Mot. 11.

Under Texas law, quasi-estoppel "precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken. The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit." *Hartford Fire Ins. Co. v. City of Mont Belvieu, Tex.*, 611 F.3d 289, 298 (5th Cir. 2010) (citation omitted); *see also Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008) ("Estoppel . . . generally prevents one party from misleading another to the other's detriment or to the misleading party's own benefit.") (citations omitted). Quasi-estoppel forbids a party from accepting the benefits of a transaction and then subsequently taking an inconsistent position to avoid corresponding obligations or effects. *Eckland Consultants, Inc. v. Ryder, Stilwell Inc.*, 176 S.W.3d 80, 87 (Tex. App.—Houston [1st Dist.] 2004,

no pet.). A party need not show a false representation or detrimental reliance in order to prove quasi-estoppel. *Steubner Realty 19, Ltd. v. Cravens Rd. 88, Ltd.*, 817 S.W.2d 160, 164 (Tex. App.—Houston [14th Dist.] 1991, no writ).

One form of quasi-estoppel, estoppel by contract, is based on the idea that a party to a contract cannot, to the prejudice of another, take a position inconsistent with the contract's provisions. *Freezia v. IS Storage Venture, LLC*, 474 S.W.3d 379, 387-88 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (citing *Zieben v. Platt*, 786 S.W.2d 797, 802 (Tex. App.—Houston [14th Dist.] 1990, no writ)). Estoppel by contract binds a party to the terms of his own contract, unless the contract is void, annulled, or set aside in some way. *Ohrt v. Union Gas Corp.*, 398 S.W.3d 315, 329 (Tex. App.—Corpus Christi 2012, pet. denied); *Royalco Oil & Gas Corp. v. Stockhome Trading Corp.*, 361 S.W.3d 725, 732 (Tex. App.—Fort Worth 2012, no pet.). Estoppel by contract precludes a party to a valid instrument from denying the truth of the recitals in the instrument. *Masgas v. Anderson*, 310 S.W.3d 567, 571 (Tex. App.—Eastland 2010, pet. denied).

As previously determined, Hill III agreed in the Settlement Agreement that he would not contest Hill Jr.'s Will or challenge the disposition of his property. The Settlement Agreement has not been declared void, annulled, or set aside; it was approved by Judge O'Connor and incorporated into the Final Judgment, which constitutes a final adjudication of the underlying litigation on the merits. As noted by Washburne and Summers, the Fifth Circuit has affirmed the Final Judgment on three separate occasions: (1) Doc. 1384 (opinion) and Doc. 1385 (mandate); (2) Doc. 1527 (opinion) and Doc. 1528 (mandate); and (3) Doc. 1538 (opinion) and Doc. 1539 (mandate). The United States Supreme Court denied Hill III's Petition for Writ of Certiorari. Doc. 1388. As such, it is indisputable that the Settlement Agreement is a valid instrument.

Hill III accepted the benefits of the settlement transaction by accepting a nine-figure monetary amount in consideration through the Settlement Agreement and Final Judgment, including Hill Jr.'s disclaimer (*see supra* note 1), through which Hill III obtained the MHTE—Albert G. Hill III Trust and the MHTE—Albert Hill, Jr. Income Beneficiary / Al III Termination Beneficiary Trust, among other valuable consideration. The court agrees with Movants that it is inequitable for Hill III to avoid his obligations under the Settlement Agreement and Final Judgment by contesting Hill Jr.'s Will and challenging the disposition of Hill Jr.'s property after receiving a nine-figure monetary amount in consideration through the Settlement Agreement in which he agreed not to contest the Will or challenge the disposition of Hill Jr.'s property.

In sum, under applicable Texas law governing contractual interpretation, the court concludes that, in the Settlement Agreement, as implemented by the Final Judgment, Hill III unambiguously waived his right to contest Hill Jr.'s Will or challenge Hill Jr.'s disposition of his property. The court further determines that Hill III's Will Contest in the Probate Court and his attempts to disqualify Keliher, as well as his appeal of Judge Warren's Will Contest Order and Order Admitting Will to Probate, are in breach of the Settlement Agreement and Final Judgment. Under the doctrine of quasi-estoppel (or estoppel by contract), the court concludes it would be inequitable for Hill III to avoid his obligations under the Settlement Agreement and Final Judgment by contesting Hill Jr.'s Will and challenging the disposition of his property after receiving a nine-figure monetary amount in consideration through the Settlement Agreement in which he agreed not to contest the Will or challenge the disposition of Hill Jr.'s property. For these reasons, Washburne and Keliher's Motion to Enforce the Settlement Agreement and Final Judgment, as joined by Keliher, will be granted.

### III.    Elements of a Permanent Injunction

Although the court has already determined that the All Writs Act authorizes enjoining Hill III from prosecuting his appeal in state court of Judge Warren's rulings, the court also concludes that injunctive relief is authorized under Federal Rule of Civil Procedure 65.   The elements for a permanent injunction are essentially the same as those for a preliminary injunction "with the exception that the plaintiff must show actual success on the merits rather than a mere likelihood of success." *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987).   As this circuit has repeatedly held:

> The party seeking a permanent injunction must satisfy a four-part test: it must show (1) success on the merits; (2) the failure to grant the injunction will result in irreparable injury; (3) the injury outweighs any damage that the injunction will cause the opposing party; and (4) the injunction will not disserve the public interest.

*United Motorcoach Ass'n, Inc. v. City of Austin*, 851 F.3d 489, 492-93 (5th Cir. 2017) (citing *VRC LLC v. City of Dallas*, 460 F.3d 607, 611 (5th Cir. 2006)); *Villas at Parkside Partners v. City of Farmers Branch*, 577 F. Supp. 2d 858, 877 (N.D. Tex. 2008) (citations omitted) (Lindsay, J.).

### A.    Actual Success on the Merits

The first element—actual success on the merits—has been established.   As set forth above, Washburne and Summers, joined by Keliher, have succeeded on the merits of their Motion to Enforce Judgment and their claim that Hill III has violated certain terms of the Settlement Agreement and Final Judgment.

With his Will Contest, Hill III is breaching the Settlement Agreement and violating the Final Judgment by: contesting Hill Jr.'s Will; contesting whether Hill Jr. had testamentary capacity in 2014; contesting the authenticity of Hill Jr.'s signature on the Will; contesting whether Hill Jr.

revoked, modified, and/or superseded his Will; and continuing to challenge Keliher's appointment as Independent Executor, thereby challenging the disposition of Hill Jr.'s property. Hill III specifically agreed in Section III(1)(f) of the Settlement Agreement (Doc. 879), and this court ordered Hill III in Paragraph 29 of the Final Judgment (Doc. 999), not to contest Hill Jr.'s Will. Hill III is ignoring his obligations under the parties' Settlement Agreement and this court's Final Judgment with his Will Contest, including without limitation by appealing Judge Warren's October 11, 2018 Will Contest Order and Order Admitting Will to Probate and Authorizing Letters Testamentary in *Estate of Albert Galatyn Hill, Jr., Deceased*, PR-17-04117-2.

### B. Threat of Immediate and Irreparable Harm

The court further determines that Washburne and Summers, joined by Keliher, have met their burden and established that they will suffer irreparable harm if Hill III is not permanently enjoined from contesting Hill Jr.'s Will and the disposition of his property, including by way of his appeal of Judge Warren's Will Contest Order and Order Admitting Will to Probate, and that they have no other adequate remedy at law. If Hill III is successful in his appeal, Washburne and Summers, joined by Keliher, and the Estate, will be irreparably harmed because the Will would not be probated. If Hill Jr.'s Will is not probated because of the Will Contest, the No Contest Clause of the Settlement Agreement and Final Judgment will have been rendered meaningless, Hill Jr.'s intentions for his Estate will have been ignored, and Hill Jr., as well as Washburne and Summers, joined by Keliher, will not have received the benefit of their bargain under the No Contest Clause of the Settlement Agreement, yet Hill III will still have received a nine-figure monetary amount in consideration.

## C. Harm to Movants Outweighs Threatened Harm to Hill III

The court also determines that the third element has been satisfied. Hill III will not suffer any harm if the court grants the injunctive relief sought by Washburne and Summers, joined by Keliher, because the court is enforcing the Settlement Agreement, a binding contract to which Hill III agreed, and is enforcing its own Final Judgment, by granting the injunctive relief sought. The court granting the injunctive relief sought constitutes enjoining Hill III from violating the contractual obligations he agreed to in the Settlement Agreement and from disregarding this court's Final Judgment. A party should expect that he will suffer an adverse ruling if the evidence shows that his actions caused the other party to suffer harm; and, in any event, the harm to Hill III does not outweigh the harm suffered by Movants.

Further, Hill III accepted the benefits of the settlement transaction memorialized in the Settlement Agreement by accepting a nine-figure monetary amount in consideration through the Settlement Agreement and the Final Judgment, including Hill Jr.'s disclaimer (*see supra* note 1), through which Hill III obtained the MHTE—Albert G. Hill III Trust (*see* Doc. 999 at 20) and the MHTE—Albert Hill, Jr. Income Beneficiary/Al III Termination Beneficiary Trust (*id.* at 13), among other valuable consideration. The court concludes it would be unconscionable to allow Hill III to maintain a position in the Probate Court and in an appeal of Judge Warren's Will Contest Order and Order Admitting Will to Probate that is inconsistent with the one to which he acquiesced in this court (namely, agreeing to the No Contest Clause in the Settlement Agreement) and for which he accepted a nine-figure monetary amount in consideration, and thereby avoid his obligations under the Settlement Agreement and Final Judgment.

### D. The Public Interest

Finally, enforcement of the Settlement Agreement and Final Judgment by granting the injunctive relief Washburne and Summers, joined by Keliher, seek will not disserve the public interest because movants are asking the court to enforce the parties' Settlement Agreement and its own Final Judgment. Public policy mandates that Hill III should not be able to ignore his contractual obligations or this court's Final Judgment by thwarting the No Contest Clause. As the court stated previously, the "public interest supports enforcement of prior court orders." Mem. Op. & Order 13 (Doc. 1745). The public fully expects parties to abide by the terms and provisions of a contract. For these reasons, the court concludes that granting the injunctive relief sought by Washburne and Summers, joined by Keliher, which the parties agreed would be a remedy available for any breach of the Settlement Agreement, *see* Settlement Agreement § III(5)(r), serves the public interest.

For all of the reasons set forth in this section, Washburne and Summers, joined by Keliher, have met their burden and satisfied each of the four required elements for the entry of a permanent injunction by a preponderance of the evidence. Accordingly, the court will grant Washburne and Summers' Application for Permanent Injunction, as joined by Keliher.

## IV. Conclusion and Permanent Injunction

For the reasons herein stated, the court **grants** Washburne and Summers' Motion to Enforce the Final Judgment and the Settlement Agreement, and Application for Permanent Injunction (Doc. 1886)[9]; and **grants** Margaret Keliher, as Independent Executor of the Estate of Albert G. Hill, Jr.'s

---

[9] To the extent Movants initially sought a temporary restraining order and preliminary injunction, those requests have been rendered moot, as the relief requested by Washburne and Summers at this juncture is for a permanent injunction only. Washburne & Summers' Resp. to ECF 1897 (Doc. 1900).

Joinder in Heather Hill Washburne and Elisa Hill Summers' Motion to Enforce the Final Judgment and the Settlement Agreement (Doc. 1916)**.**

Washburne and Summers, joined by Keliher, have established that they are entitled to entry of permanent injunctive relief as requested on September 12, 2018 (Doc. 1886), October 23, 2018 (Doc. 1900), and November 8, 2018 (Doc. 1913). The court, therefore, **grants** Washburne and Summers' Application for Permanent Injunction, joined by Keliher, and **orders and decrees** that Hill III, Erin Hill, Albert G. Hill, IV, Nance Haroldson Hill, and CMH, and their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with them, directly or indirectly (the "Enumerated Persons"), are **hereby permanently enjoined and prohibited as of the date of this Permanent Injunction from violating the Final Judgment (Doc. 999) or breaching the Settlement Agreement (Doc. 879) by:**

(1) contesting Hill Jr.'s Will in any manner, including, without limitation, contesting whether Hill Jr. lacked testamentary capacity to execute the Will, whether Hill Jr. signed the Will, whether Hill Jr. revoked, modified, and/or suspended the Will, and continuing to challenge Keliher's appointment as Independent Executor with his Will Contest in the Probate Court or in any other court;

(2) appealing the October 11, 2018 Will Contest Order issued by Judge Ingrid M. Warren in Probate Court No. Two of Dallas County, Texas in *Estate of Albert Galatyn Hill, Jr., Deceased*, PR-17-04117-2; and

(3) appealing the October 11, 2018 Order Admitting Will to Probate and Authorizing Letters Testamentary issued by Judge Ingrid M. Warren in Probate Court No. Two of Dallas County, Texas in *Estate of Albert Galatyn Hill, Jr., Deceased*, PR-17-04117-2.

Further, the Enumerated Persons are hereby **ordered** to take steps **forthwith** to **dismiss** or **withdraw** the Will Contest filed in the Probate Court in PR-17-04117-2 and any appeal taken

therefrom, and are further **ordered** to provide to the court by **December 17, 2018**, written, satisfactory proof that said dismissals or withdrawals have been accomplished.

Further, counsel for the Enumerated Persons, Thomas M. Farrell, Esq. of the law firm McGuire Woods and Emil Lippe, Jr., Esq. of the law firm Lippe & Associates, or any other counsel acting on behalf of the Enumerated Persons, are hereby **ordered** to take steps **forthwith** to **dismiss** or **withdraw** the Will Contest filed in the Probate Court in PR-17-04117-2 and any appeal taken therefrom filed for or on behalf of the Enumerated Persons. Thomas M. Farrell, Esq. of the law firm McGuire Woods and Emil Lippe, Jr., Esq. of the law firm Lippe & Associates are further **ordered** to provide the court by **December 17, 2018**, written, satisfactory proof that said dismissals or withdrawals have been accomplished.

Thomas M. Farrell, Esq. of the law firm McGuire Woods and Emil Lippe, Jr., Esq. of the law firm Lippe & Associates, and any attorneys, agents, employees, or representatives associated with or in privity with them, or any other counsel acting on behalf of the Enumerated Persons, are further **enjoined** from filing, pursuing, or prosecuting any action in law or in equity, in state or federal court, for or on behalf of the Enumerated Persons, or any person or entity related to or in privity with them, relating to any claim that violates the terms of the Settlement Agreement or Final Judgment.

**The court expects total compliance with its decision and permanent injunction. If any enjoined person or entity fails to follow or violates the court's instructions or directives as herein set forth, such person or entity will be subject to further appropriate sanctions, including contempt of court.**

Finally, the court **awards** Washburne and Summers, joined by Keliher, the recovery from Hill III all of their reasonable attorney's fees and costs of litigation incurred as a result of Hill III's Will Contest in the Probate Court and subsequent appeal. In the Settlement Agreement, incorporated into the Final Judgment, the parties agreed that "attorneys' fees and costs of litigation" were available "[i]n the event any Party breaches any of the obligations or responsibilities placed upon such Party in this Agreement[.]" Settlement Agreement § III(5)(r) (Doc. 879). The court **directs** counsel for Movants to provide it with documentation, including affidavits and invoices, supporting their request for reasonable attorney's fees and costs. The deadline to submit proof of reasonable attorney's fees and costs is **Friday, December 21, 2018**. Hill III's response, if any, shall be filed no later than **Friday, January 11, 2019.** Washburne and Summers' reply, if any, shall be filed no later than **Tuesday, January 22, 2019.** Keliher may opt to file her own reply by this deadline, or indicate her joinder in Washburne and Summers' reply.

It is so ordered this 7th day of December, 2018.

Sam A. Lindsay
United States District Judge