IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALBERT G. HILL, III, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:07-CV-2020-L** |
| | § | |
| **WILLIAM SCHILLING, *et al.*,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Pursuant to a *sua sponte* Order, on November 16, 2018, the court held a civil contempt hearing in Dallas, Texas, concerning Plaintiff Albert G. Hill, III ("Hill III"). Having carefully considered the witness's testimony and evidence presented, record, and applicable law, the court finds and orders as follows:

**I.      Background**

    **A.      The Settlement Agreement and Final Judgment**

The original action that gave rise to the contempt hearing was Hill III's attempt on November 9, 2017, to remove First Tennessee Bank NA ("FTB") as the trustee of several trusts, in the face of a court Order prohibiting him from this action. *See* July 10, 2017 Order (Doc. 1757). The circumstances relevant to this Memorandum Opinion and Order date back eleven years to 2007. In December 2007, Hill III brought a lawsuit in Texas state court in his individual capacity and on behalf of the Margaret Hunt Trust Estate ("MHTE") and the Haroldson L. Hunt, Jr. Trust Estate ("HHTE") against specific beneficiaries of the MHTE and HHTE, including his father Albert G. Hill, Jr. ("Hill Jr."), Hill Jr.'s siblings, and the trustees and members of the advisory boards of the

**Memorandum Opinion and Order – Page 1**

MHTE and HHTE. Among other things, Hill III alleged wrongdoing in the management and administration of the MHTE and HHTE by their respective trustees and sought a declaration that he was a direct and vested beneficiary of the MHTE as a consequence of his father's disclaimer of various interests he held in the MHTE.[1] Following removal to federal court on December 3, 2007, the case was randomly assigned to United States District Judge Reed C. O'Connor.

Ultimately, Hill III agreed to a settlement of the dispute. On May 13, 2010, the parties entered into the Global Settlement and Mutual Release Agreement (the "Settlement Agreement") (Doc. 879) that settled this action and related state court actions. The Settlement Agreement affirmed Hill Jr.'s 2005 disclaimer (*see supra* note 1) and provided for the partition of the MHTE and HHTE, pro rata, into separate subtrusts for all beneficiaries. On November 8, 2010, Judge O'Connor issued a final judgment (the "Final Judgment") implementing and memorializing the parties' Settlement Agreement. *See* Final J. ¶ 1 (Doc. 999). As part of the settlement of Hill III's disputed claims with Hill Jr., the Final Judgment required Hill Jr. to make four annual installment payments of $7.5 million each into the court's registry (the "Installment Payments"). *Id.* ¶ 21. The Final Judgment also required Hill III to establish separate irrevocable trusts for Hill Jr.'s grandchildren and to irrevocably assign his rights to receive the Installment Payments to these three trusts, *see id.* ¶¶ 19, 22, namely:

---

[1] Much of the dispute centered on Hill III's claimed interest in the MHTE following the 2007 death of his paternal grandmother, Margaret Hunt Hill. In 2005, Hill Jr. signed an irrevocable disclaimer of a portion of his interest in the MHTE in favor of his three children, including Hill III. *See* Ex. C to Global Settlement and Mutual Release Agreement (2005 Disclaimer) (Doc. 879). The effect of the disclaimer is that Hill Jr.'s disclaimed interest passed to Hill III and his two siblings after Margaret Hunt Hill's death. *See* March 4, 2010 Mem. Op. & Order 7-8 (Doc. 611). In 2007, Hill Jr. sought to rescind his 2005 disclaimer, along with another partial disclaimer he had executed in 2007. This litigation ensued.

**Memorandum Opinion and Order – Page 2**

(1) the Albert G. Hill III, 2010 Gift Trust fbo Albert G. Hill, IV

(2) the Albert G. Hill III, 2010 Gift Trust fbo Nance H. Hill

(3) the Albert G. Hill III, 2010 Gift Trust fbo CMH

(hereinafter, the "Grandchildren's Trusts").[2] Consistent with the Settlement Agreement, Judge O'Connor retained continuing jurisdiction over the implementation and enforcement of the Final Judgment:

> IT IS ORDERED that, without affecting the finality of this Final Judgment, the Court hereby retains continuing jurisdiction over the implementation of the [Settlement] Agreement, the Final Judgment, and the Parties for purposes of implementing and enforcing the [Settlement] Agreement and this Final Judgment. IT IS FURTHER ORDERED that any controversy or claim arising after the date of execution of the [Settlement] Agreement and arising out of the [Settlement] Agreement or the Documentation shall be resolved by this Court. Each of the Agreeing Parties agrees and covenants not to, and IT IS ORDERED that none of the Agreeing Parties shall, file or assert any of the released Claims (in law or in equity).

*Id.* ¶ 45.

Pursuant to paragraphs 21 and 22 of the Final Judgment, Hill Jr. funded the Grandchildren's Trusts with the Installment Payments, which were paid into the court's registry. *See* Docs. 1328, 1446, 1532, 1647. On May 13, 2011, Hill III executed the required assignment, thereby assigning, transferring, and conveying all his rights and interests to the $30 million in Installment Payments to the Grandchildren's Trusts. *See* Assignment 1 (1160-2). The court approved the executed trust instruments on June 30, 2011, and also approved Hill III's request to disburse funds from the court's registry to pay the gift taxes associated with assignments to his children of his rights to the Installment Payments. *See* Docs. 1169, 1174, 1222. In January 2016, pursuant to a court order, the

---

[2] As Albert G. Hill, IV and Nance Haroldson Hill are no longer minors, the court will use their full names, while still abbreviating the name of Hill III and Erin Hill's third child, CMH, as she is still a minor.

**Memorandum Opinion and Order – Page 3**

funds that Hill Jr. had paid into the court's registry were released to fund the Grandchildren's Trusts. *See* Doc. 1686.

The trust document that governs the Grandchildren's Trusts is "The Albert G. Hill, III 2010 Gift Trust," which is Exhibit 5 to the Final Judgment (the "Trust Instrument"). The Trust Instrument provides that until the primary beneficiary reaches the age of twenty-five, the income and principal of the Grandchildren's Trusts may only be used for the "health and education of the primary beneficiary . . . ." Doc. 999-1, ¶ 2.01. Thus, under the plain language of the Trust Instrument, as long as a beneficiary is under the age of twenty-five, the trustee is only authorized to make distributions for the health and education of the Grandchildren. The trustee has no authority to provide for the Grandchildren's support. That obligation rests with the Donor, Hill III. *Id.* ¶ 3.04.

### B. Subsequent Litigation History

Following entry of the Final Judgment in 2010, this case has continued to be litigated in this court and on appeal. As relevant here, Hill Jr., prior to his death on December 2, 2017, sought emergency injunctive relief on the grounds that Hill III, with the assistance of FTB, the trustee of the Grandchildren's Trusts at the time, was violating the provisions of the Settlement Agreement, Final Judgment, and Trust Instrument, by using funds in the Grandchildren's Trusts for something other than their health and education, namely, to support his and Erin Hill's lavish lifestyle and to pay off his own creditors, even in the face of court orders stating that the funds in the Grandchildren's Trusts could not be used to pay creditors. Hill Jr. also brought a separate civil action against FTB, which was randomly assigned to Judge Jane J. Boyle and subsequently transferred to the undersigned. *See Albert G. Hill, Jr. v. First Tennessee Bank NA*, Civil Action No. 3:17-CV-1298-L (the "1298 Action").

On June 9, 2017, the court granted Hill Jr.'s Emergency Motion to Enforce Judgment and Application for Temporary Restraining Order and Injunctive Relief in this action and in the 1298 Action. The court determined that Hill Jr. met his burden to show that he had a substantial likelihood of success on the merits on his claim that Hill III and FTB had violated the Final Judgment, the Settlement Agreement, the Trust Instrument, and various court orders by, directly or indirectly, using funds from the Grandchildren's Trusts for purposes other than the Grandchildren's health and education. The court ordered that Hill III and his wife Erin Hill, and their agents, servants, employees, and attorneys, were temporarily enjoined as of the date of its Order from:

> (1) taking any action to use or access any funds from the Grandchildren's Trusts, directly or indirectly, for any reason, including but not limited to
>
> > (a) using or attempting to use funds from the Grandchildren's Trusts to reimburse Hill III for any expenses or paying any expense for Hill III that are for maintenance or support of the Grandchildren;
> >
> > (b) using or attempting to use funds from the Grandchildren's Trusts to reimburse Hill III for any expenses or paying any expense for Hill III that are for maintenance or support of the Property;
> >
> > (c) using or attempting to use funds from the Grandchildren's Trusts to reimburse Hill III for any expenses or paying any expense for Hill III that are not clearly for the Grandchildren's health or education; and
>
> (2) using any of the nearly $9 million dollars which Hill III requested and have been distributed from the Grandchildren's Trusts for any purpose, including but not limited to any reimbursement of any purported expenses for maintenance or support of the Grandchildren or the maintenance or support of the Property.

TRO Order 16-17 (Doc. 1745). The court also ordered Hill III to submit a declaration or affidavit that explains and accounts for the use and distribution of the nearly $9 million that had been distributed from the Grandchildren's Trusts. *Id.* at 17. In the 1298 Action, the court enjoined FTB from, among other things, distributing funds from the Grandchildren's Trusts to Hill III that were

**Memorandum Opinion and Order – Page 5**

not for the Grandchildren's health and education. The court extended the TRO through October 6, 2017.³

In a subsequent Order dated July 10, 2017, the court denied as premature an emergency motion to enforce the TRO and to show cause filed by Hill Jr. In support of his Motion to Show Cause, Hill Jr. had argued that Hill III was indirectly violating the TRO by attempting to replace FTB as trustee of the Grandchildren's Trust, and trying to put in place a different trustee who would not be subject to the restraints in the TRO and, therefore, would be more amenable to his requests for money from the Grandchildren's Trusts to which he was not entitled. The court denied Hill Jr.'s motions as premature since the motions indicated that Hill III was *attempting* to violate the court's June 9, 2017 TRO, and the court did not know all the facts behind the motion. The court, however, stated:

> As the motions indicate that Albert G. Hill, III is attempting to violate the court's [TRO] Order, and the court does not know all the facts behind the motion, the court simply **reminds** Albert G. Hill, IIII that he, or any person or entity acting on his behalf directly or indirectly, **shall not take any action to circumvent, frustrate, thwart, or violate the court's Order**. If any evidence shows there is a violation of the [TRO] Order, sanctions, including contempt of court, will be imposed on the offending party, attorney, or any person or entity acting on behalf of the offending party.
>
> * * *
>
> Albert G. Hill, III **shall not** remove First Tennessee as trustee of the Grandchildren's Trusts or appoint a successor trustee. First Tennessee **shall** disregard any removal notices received from Albert G. Hill, III, and **shall** remain as trustee of the Grandchildren's Trusts until the court rules otherwise. Any attempts or actions by Albert G. Hill, III to remove First Tennessee as trustee of the Grandchildren's Trusts are **declared null and void**.

---

³ The 1298 Action has been settled. On July 20, 2018, the court approved the amended settlement agreement and issued a final judgment, dismissing the action with prejudice. *See* Judgment (Doc. 64) (under seal).

**Memorandum Opinion and Order – Page 6**

July 10, 2017 Order 2-3 ("July 10, 2017 Order") (Doc. 1757) (original emphasis).

On October 6, 2017, following a hearing, the court granted Hill Jr.'s Application for Preliminary Injunction, and ordered that Hill III and Erin Hill, and their agents, servants, employees, and attorneys, were preliminarily enjoined from, without request first being provided to this court under oath for review, and having been approved by this court:

> (1) taking any action to use or access any funds from the Grandchildren's Trusts, directly or indirectly, for any reason, including but not limited to
>
> > (a) using or attempting to use funds from the Grandchildren's Trusts to reimburse Hill III for any expenses or paying any expense for Hill III that are for maintenance or support of the Grandchildren;
> >
> > (b) using or attempting to use funds from the Grandchildren's Trusts to reimburse Hill III for any expenses or paying any expense for Hill III that are for maintenance or support of the Property;
> >
> > (c) using or attempting to use funds from the Grandchildren's Trusts to reimburse Hill III for any expenses or paying any expense for Hill III that are not clearly for the Grandchildren's health or education; and
>
> (2) using any of the nearly $9 million dollars that Hill III requested and have been distributed from the Grandchildren's Trusts for any purpose, including but not limited to any reimbursement of any purported expenses for maintenance or support of the Grandchildren or the maintenance or support of the Property.

The preliminary injunction replaced the TRO and remained in effect, after numerous extensions occasioned, in large part, by the death of Hill Jr., until the court issued a permanent injunction on May 23, 2018.

On November 13, 2017, the court held a hearing on Hill Jr.'s request for permanent injunctive relief.[4] Among other exhibits admitted into evidence, the court admitted Exhibit 288,

---

[4] Following the hearing, on May 23, 2018, the court granted Hill Jr.'s application for permanent injunction. The terms of the permanent injunction are the same as those of the preliminary injunction, *supra*.

**Memorandum Opinion and Order – Page 7**

titled "*Removal and Appointment of Corporate Trustee*," dated November 9, 2017, documenting Hill III's attempt to remove FTB as the trustee of the Grandchildren's Trusts and to appoint Royal Bank of Canada ("RBC") in its place. Exhibit 288, executed by Hill III on November 9, 2017, provides in pertinent part:

> This instrument is executed this 9[th] day of Nov[ember], 2017 by the undersigned as the designated Trust Remover with respect to the following trust titled the "Albert G. Hill, III Gift Trust for the benefit of Nance H. Hill," the "Albert G. Hill, III Gift Trust for the benefit of Albert G. Hill, IV" and the "Albert G. Hill, III Gift Trust for the benefit of [CMH]," created under agreement dated May 13, 2011.
>
> Pursuant to the powers under the said Trust, particularly Article 4.04 and 4.05, the undersigned hereby removes the currently serving Trustee, First Tennessee Bank NA and appoint[s], Royal Bank of Canada "RBC" with more than ten billion dollars in assets under management adjusted for inflation per Art. 4.01, to serve as successor corporate trustee.

Concluding that Exhibit 288 demonstrated that Hill III was acting in direct violation of, among other orders, the court's July 10, 2017 Order, the court gave Hill III notice of a contempt hearing to be held in Dallas, Texas, allowing him reasonable time to prepare a defense. The court explained that the contempt hearing would involve whether Hill III's attempt to remove FTB as trustee (as documented by Exhibit 288) was in violation of the court's July 10, 2017 Order (Doc. 1757). The court stated:

> [T]he court earlier [in its July 10, 2017 Order] concluded that Hill Jr.'s motion for a show cause order was premature, "[a]s the motion[] indicate[s] that [Hill III] is *attempting* to violated the court's [TRO] Order, and the court does not know all the facts behind the motion[.]" Order 2 (Doc. 1757). At this juncture, however, the court has the benefit of a more fully developed factual record showing Hill III repeatedly attempting to remove FTB, a trustee bound by the TRO and Preliminary Injunction Orders in the 1298 Action, and to replace it with a trustee who is not bound by these orders, and, therefore, able to transfer funds from the Grandchildren's Trusts to Hill III and Erin Hill. Under these circumstances, the issue of whether Hill III should be required to show cause why he should not be held in contempt, a matter initially raised by Hill Jr. in July, is now ripe.

Show Cause Order 7. The court also found Hill III's November 16, 2017 Notice Regarding Supplemental Exhibits (Doc. 1798) inadequate.

On January 16, 2018, Hill III filed his Supplemental Response to the court's Show Cause Order. Among other things, he contended that the court's July 10, 2017 Order, forbidding him from removing or replacing FTB as trustee of the Grandchildren's Trusts, *see supra*, was no longer in effect on November 9, 2017, when he attempted to remove FTB as the trustee of the Grandchildren's Trusts. The court rejects Hill III's argument. Although it is true that the preliminary injunction order replaced the TRO Order, it did not supersede the July 10, 2017 Order, a free-standing order not tethered to either the TRO or preliminary injunction. As such, the court concluded that a show cause hearing was still required.[5]

On November 16, 2018, the court held a contempt hearing in Dallas, Texas, concerning the issues outlined above. Hill III was represented at the hearing by Thomas M. Farrell, Esq., of McGuire Woods and Emil Lippe, Jr., Esq., of Lippe & Associates. Also present at the hearing was Brian Mason, Esq., of Dorsey & Whitney representing Margaret Keliher ("Keliher"), Independent Executor of the Estate of Decedent, Hill Jr. After setting forth the legal standard for civil contempt, the court will address Hill III's testimony at the hearing, as well as other relevant evidence.

## II. Analysis

To hold a respondent in civil contempt, it must be established "by clear and convincing evidence that (1) a court order was in effect, (2) the order required specified conduct by the respondent, and (3) the respondent failed to comply with the court's order." *United States v. City*

---

[5] As to Hill III's obligations to set forth a specific accounting of the $9 million distributed from the Grandchildren's Trusts, with his supplemental filing, he has now satisfied this requirement with a detailed accounting.

**Memorandum Opinion and Order – Page 9**

*of Jackson, Miss.*, 359 F.3d 727, 731 (5th Cir. 2004). "The contemptuous actions need not be willful so long as the contemnor actually failed to comply with the court's order." *American Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2000) (citing *NLRB v. Trailways, Inc.*, 729 F.2d 1013, 1017 (5th Cir. 1984)). "[I]n civil contempt proceedings the question is not one of intent but whether the alleged contemnors have complied with the court's order." *Jim Walter Res., Inc. v. International Union, United Mine Workers of Am.*, 609 F.2d 165, 168 (5th Cir. 1980) (internal quotation marks and citation omitted). "Good faith is not a defense to a civil contempt; the question is whether the alleged contemnor complied with the court's order." *Chao v. Transocean Offshore*, 276 F.3d 725, 728 (5th Cir. 2002). In the contempt context, "clear and convincing evidence" is:

> that weight of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct, weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case.

*Security & Exch. Comm'n v. Faulkner*, 2018 WL 888910, at *3-4 (N.D. Tex. Feb. 13, 2018) (Fitzwater, J.) (quoting *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995) (internal quotation marks omitted) (*in turn quoting In re Medrano*, 956 F.2d 101, 102 (5th Cir. 1992) (adopting in contempt context definition of clear and convincing evidence used in attorney disbarment proceeding)).

On November 16, 2018, the court conducted an evidentiary hearing pursuant to its Show Cause Order. Hill III was present at the hearing and represented by counsel. Counsel for Keliher, Independent Executor of Hill Jr.'s Estate, was also present. Hill III's counsel questioned him, as did the court. The court questioned Hill III concerning Exhibit 288, admitted at the permanent injunction hearing, titled "*Removal and Appointment of Corporate Trustee*," dated November 9, 2017, whereby Hill III attempted to remove FTB and replace it with RBC. At the hearing, Hill III

conceded that he attempted, albeit unsuccessfully, to remove FTB as trustee of the Grandchildren's Trust on November 9, 2017, and replace it with RBC. He testified, however, that he believed his actions were consistent with court orders in place at the time and were necessary to carry out the settlement in the 1298 Action. As previously stated, good faith is not a defense to civil contempt, and Hill III's testimony at the hearing that he believed he was in compliance is quite beside the point.

Given Hill III's concession, as well as the unequivocal language in Exhibit 288 admitted at the Permanent Injunction Hearing, *see supra*, this court **determines** that there is clear and convincing evidence that Hill III disobeyed a court order by attempting, on November 9, 2017, to remove FTB as trustee of the Grandchildren's Trusts, and to replace FTB with RBC, and caused his opponent to incur unnecessary legal fees and costs as a result of his conduct. This court, therefore, **holds** Hill III in civil contempt for violating its July 10, 2017 order.

### III. Appropriate Sanctions

Having held Hill III in civil contempt for violating the court's July 10, 2017 Order (Doc. 1757), the court now determines the appropriate sanction that should be imposed against him. Before imposing appropriate sanctions, however, a look at Hill III's repeated failure to heed the court's prior admonitions sheds light on the necessity of the imposition of sanctions for his recent attempts to remove FTB in violation of the court's July 10, 2017 Order. The court does not take this task lightly. The court has been painstakingly patient in dealing with Hill III, as demonstrated directly below, and reticent to hold him in contempt because it is a draconian remedy. Given his previous disregard of admonitions by the court, imposition of sanctions is imperative to obtain his compliance and deter him from engaging in conduct to circumvent or thwart the court's lawful

orders. In the absence of sanctions, Hill III will continue to engage in legal legerdemain and find ways to flaunt and ignore the court's orders as he has done in the past.

After years of litigation, this case was supposed to have been brought to a close on November 8, 2010, by the Final Judgment (Doc. 999), implementing the Settlement Agreement (Doc. 879), as well as a separate judgment in a related attorney's fees dispute severed from the underlying action. Since entry of Final Judgment, Hill III has inundated the court with unsuccessful motions to alter, amend, or vacate the Final Judgment, to recuse various judges for purported bias, and to stay proceedings, many of which have been filed solely to frustrate the court's implementation of the Final Judgment and Settlement Agreement. Hill III and his legal team have also taken numerous unsuccessful appeals to the United States Court of Appeals for the Fifth Circuit resulting in further protraction of this eleven-year-old case. During the eight-year period of postjudgment litigation, the court has repeatedly admonished Hill III, his wife Erin Hill, and their legal team that it will not hesitate to impose sanctions if these vexatious filings and dilatory tactics continue.

In addition, Hill III has a well-documented history of ignoring his contractual obligations under the Settlement Agreement and his obligations under the Final Judgment. He has shown no hesitation in violating multiple provisions of the Settlement Agreement and Final Judgment. For example, Hill III failed to comply with paragraph 43 of the Final Judgment, requiring him to complete a second appraisal process for the illiquid assets of the four trusts referred to in that paragraph, necessitating a court order compelling his compliance. *See* Feb. 7, 2017 Order (Doc. 1732). He also violated the terms of the Settlement Agreement and Final Judgment with respect to the contractual limitations on the use of more than $9 million in the Grandchildren's Trusts, ignoring that, pursuant to the Trust Instrument, until the primary beneficiary reaches the age of twenty-five,

the income and principal of the Grandchildren's Trusts may only be used for the "health and education of the primary beneficiary . . . ." Doc. 999-1, ¶ 2.01. As a result of Hill III's and Erin Hill's violations of the Trust Instrument, extensive and costly litigation ensued, consuming scarce judicial resources, and the court ultimately issued a permanent injunction, enjoining Hill III and Erin Hill from using the money in the Grandchildren's Trusts to support their lavish lifestyle.[6] Multiple other examples of Hill III's thwarting of the Settlement Agreement and Final Judgment abound. *See, e.g.*, June 30, 2011 Order 4-5 (Doc. 1174); June 25, 2014 Order 4 (Doc. 1499); Nov. 19, 2015 Show Cause Order (Doc. 1659); Feb. 2, 2016 Supplemental Order 2 (Doc. 1704); June 9, 2017 Mem. Op. & Order (Doc. 1745); October 6, 2017 Mem. Op. & Order (Doc. 1785); and Nov. 17, 2017 Show Cause Order (Doc. 1800).

Following entry of the Final Judgment, Hill III filed a motion to alter or amend the judgment challenging Judge O'Connor's implementation of the Settlement Agreement and moved to compel Judge O'Connor to recuse himself from all further proceedings because of his wife's ownership of stock in ExxonMobil Corporation, a nonparty entity released from all claims under the Settlement Agreement and Final Judgment. Judge O'Connor denied Hill III's motions. On April 1, 2011, Hill

---

[6] After issuing a temporary restraining order (Doc. 1745) and preliminary injunction (Doc. 1785), the court permanently enjoined Hill III and Erin Hill from taking any action to use or access any funds from the Grandchildren's Trusts, directly or indirectly, for any reason, including but not limited to: using or attempting to use funds from the Grandchildren's Trusts to reimburse Hill III for any expenses or paying any expense for Hill III that are for maintenance or support of the Grandchildren; using or attempting to use funds from the Grandchildren's Trusts to reimburse Hill III for any expenses or paying any expense for Hill III that are for maintenance or support of the Property; using or attempting to use funds from the Grandchildren's Trusts to reimburse Hill III for any expenses or paying any expense for Hill III that are not clearly for the Grandchildren's health or education; and using any of the nearly $9 million dollars that Hill III requested and have been distributed from the Grandchildren's Trusts for any purpose, including but not limited to any reimbursement of any purported expenses for maintenance or support of the Grandchildren or the maintenance or support of the Property. May 23, 2018 Mem. Op. & Order 19 (Doc. 1867).

III appealed Judge O'Connor's rulings, as well as his separate judgment awarding attorney's fees to Hill III's former attorneys in a related severed attorney's fees action, Civil Action No. 3-10-CV-2269-O-BK (the "2269 Action"). Consolidating the appeals for review, the Fifth Circuit affirmed Judge O'Connor's Final Judgment, dismissed Hill III's appeal of the attorney's fee award as barred by a valid waiver, and found that Judge O'Connor did not abuse his discretion in denying the recusal motion as untimely. *See Hill v. Schilling*, 495 F. App'x 480, 482-83 (5th Cir. 2012). The mandate issued on January 2, 2013.[7]

While this appeal was pending, Hill III filed a motion to enforce the Final Judgment and to compel transfer of books and records or, in the alternative, for relief from the Final Judgment under Rule 60(b), which Judge O'Connor referred to the Magistrate Judge. The Magistrate Judge denied the motion based on the pending motion for recusal.

On May 22, 2013, Judge O'Connor recused himself *sua sponte* for undisclosed reasons from the continuing litigation relating to the Settlement Agreement. Hill III filed a motion under Federal Rule of Civil Procedure 60(b), again questioning Judge O'Connor's impartiality, and asking the court to vacate the Settlement Agreement and Final Judgment, arguing that Judge O'Connor's subsequent *sua sponte* recusal somehow demonstrated that he must have had some unspecified conflict from the inception of this litigation. Alternatively, Hill III sought discovery into Judge O'Connor's reasons for recusal.

---

[7] After the appeal was decided, Hill III moved the district court to vacate the fee award under Federal Rule of Civil Procedure 60(b), which the district court denied. Hill III's subsequent appeal was similarly dismissed by the Fifth Circuit as barred by a waiver of appeal executed by Hill III. *Campbell Harrison & Dagley, L.L.P. v. Hill*, 582 F. App'x 522 (5th Cir. 2014).

**Memorandum Opinion and Order – Page 14**

While these motions were pending, the case was reassigned to United States District Judge Jorge A. Solis, who rejected Hill III's objections to the Magistrate Judge's denial of his motion to enforce the Final Judgment and to compel transfer of books and records or, in the alternative, for relief from the Final Judgment under Rule 60(b). Judge Solis voluntarily recused himself after this ruling. Hill III then appealed Judge Solis's denial of his motion to enforce and compel, *speculating* that a conflict of interest must have existed when he issued his ruling. The Fifth Circuit rejected Hill III's arguments and affirmed the district court's ruling. *See Hill v. Schilling*, 578 F. App'x 456 (5th Cir. 2014) (Doc. 1527).

The undersigned, to whom the case was reassigned following Judge Solis's *sua sponte* recusal in September 2013, denied the motion for vacatur filed by Hill III after Judge O'Connor's voluntary recusal, and rejected Hill III's request to take discovery from Judge O'Connor pertaining to the reasons for his *sua sponte* recusal. (Doc. 1476). The Fifth Circuit affirmed the court's decision. *See Hill v. Schilling,* 593 F. App'x 330 (5th Cir. 2014) (Doc. 1538).

On May 21, 2013, the Hills filed a motion to recuse Magistrate Judge Toliver in the 2269 Action, and asked the court to reopen the case and vacate the Magistrate Judge's order regarding a fee dispute related to the Settlement Agreement. The Hills argued that the Magistrate Judge should have recused herself because a close friend of hers was a potential material witness in the 2269 Action. On April 15, 2014, the court denied the Hills' recusal motion. (Doc. 561 in the 2269 Action). On appeal, the Fifth Circuit affirmed the court's decision, as well as the district court's denial of a motion filed by Hill III in this action to vacate the Final Judgment based on new evidence. *See Hill,* 593 F. App'x at 334-35.

Recognizing the significant impact of Hill III's vexatious filings on the court's already strained judicial resources, the court has previously put Hill III and his counsel on notice of the possible imposition of sanctions for continued use of dilatory litigation tactics and submission of frivolous and vexatious filings. As stated by the court in an April 17, 2014 decision:

> Federal courts have inherent authority "to protect the efficient and orderly administration of justice and . . . to command respect for [their] orders, judgments, procedures, and authority." *In re Stone*, 986 F.2d 898, 902 (5th Cir. 1993). Included in such power is the authority to levy sanctions in response to abusive litigation practices. *See id.* The court has concluded that Plaintiff's Rule 60(b) motion asserts no new grounds for relief and simply rehashes an argument regarding recusal that has been conclusively rejected by the Fifth Circuit. Plaintiff's motion and litigating posture on this matter cause[] undue burden on the court's resources and harass[] Defendants. This litigation—which came to an end with a November 2010 judgment—has become unduly protracted; however, at some point all litigation must come to an end. Considerable but scarce judicial resources have been expended. The judgment of this case is final, has been affirmed by the Fifth Circuit, and certiorari has been denied. This is Plaintiff's second Rule 60(b) motion since judgment was entered, and a motion for leave to file a third, "emergency," Rule 60(b) motion has recently been filed. This litigation, and the to-and-fro surrounding it, must end.
>
> **In this vein, if any further motion is filed to reconsider, amend or alter the judgment, or any similar motion seeking to vacate the November 2010 final judgment, and the court finds such motion is baseless, frivolous, or without merit, the court will impose sanctions against the offending attorney or party. The parties are strongly warned not to test the court's patience in this regard.** Further, counsel are cautioned that the court will impose sanctions against them if it determines that 28 U.S.C. § 1927 is violated. This statute provides:
>
>> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

*Hill v. Schilling*, 2014 WL 1516193, at *5-6 (N.D. Tex. Apr. 17, 2014) (Doc. 1476) (original emphasis).

In a separate order also issued on April 17, 2014, the court again cautioned Hill III and his counsel regarding the risk of sanctions:

> It is obvious to the court that Plaintiff doggedly seeks to have the settlement agreement and final judgment in this case vacated; but the judgment of this case is final, has been affirmed by the United States Court of Appeals for the Fifth Circuit, and certiorari has been denied by the United States Supreme Court. This is Plaintiff's third attempt at Rule 60(b) relief. This litigation, and the to-and-fro surrounding it, must end. The court incorporates by reference, as if repeated verbatim herein, its warning to the parties and counsel regarding sanctions set out in its Memorandum Opinion and Order that was issued earlier today.
>
> * * *
>
> *As this is Plaintiff's third attempt to vacate the judgment in this case, the court believes a specific warning to him is necessary. This case was closed on November 8, 2010, and we are still litigating a judgment that has been affirmed by the Fifth Circuit and denied certiorari by the Supreme Court. "The jig is up," and it is time to wind down this litigation! Plaintiff and his counsel need to heed the words of Willie Nelson's classic country and western song: "Turn out the Lights, the Party's Over." No further warning will be given to Plaintiff or his counsel regarding attempts to vacate the judgment. The court will not replow this ground. If Plaintiff or his counsel files another frivolous motion, the sanctions machine will be in full operation.*

Order at 5, 3-07-CV-2020-L (Apr. 17, 2014) (Doc. 1477) (original emphasis).

On November 25, 2014, the Fifth Circuit also weighed in, taking the "opportunity to remind Hill III of the warning that the district court recently issued to the parties in this case—the district court 'will impose sanctions' for any motion that is '*baseless, frivolous, or without merit . . .*' Hill III is well-advised 'not to test the court's patience in this regard.'" *Hill*, 593 F. App'x at 335 (quoting *Hill*, 2014 WL 1516193 at *6).

"Upon a finding of contempt, the district court has broad discretion in assessing sanctions to protect the sanctity of its decrees and the legal process." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 582 (5th Cir. 2005). "Judicial sanctions in civil contempt proceedings, may in a

proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *American Airlines, Inc.*, 228 F.3d at 585. The court's contempt power is "broad . . . encompassing . . . remedial powers 'determined by the requirements of full remedial relief,' as necessary 'to effect compliance with [the court's] decree.'" *In re Bradley*, 588 F.3d 254, 265 (5th Cir. 2009) (citations omitted). It includes the "'imposition of fines, the awarding of costs, and the shifting of fees.'" *Id.* (quoting *NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 894 F.2d 696, 702 (5th Cir. 1990)).

Although the court denied Hill Jr.'s Motion to Show Cause as premature (*see* Doc. 1757), in light of Hill III's demonstrated failure to comply with court orders, further development of the factual record since Hill Jr. initially filed his Motion to Show Cause, and in particular Exhibit 288 that was admitted into evidence at the permanent injunction hearing and at the Show Cause Hearing, as well as Hill III's testimony at the November 16, 2018 Show Cause Hearing, the court hereby **concludes** that the following are appropriate sanctions. First, Hill III is required to pay the Estate of Hill Jr. its reasonable and necessary attorney's fees and costs incurred in bringing the initial Emergency Motion to Enforce the Court's June 9, 2017 Memorandum Opinion and Order and Motion for Show Cause (Doc. 1754). This filing by Hill Jr. precipitated the court's July 10, 2017 Order explicitly enjoining Hill III from removing FTB as trustee of the Grandchildren's Trusts, which he disobeyed. Second, Hill III is required to pay the Estate of Hill Jr. its reasonable and necessary attorney's fees and costs incurred in preparing for and participating in the November 16, 2018 evidentiary hearing. Within **14** days of the date this memorandum opinion and order is filed, Keliher, as Independent Executor of the Estate of Hill Jr., must apply for such fees and costs by filing an application, supporting brief, and supporting evidence in the form of an appendix. Opposition

**Memorandum Opinion and Order – Page 18**

briefs and supporting evidence in the form of appendixes must be filed within **14** days, and reply briefs must be filed within **10** days of the filing of the opposition response.

The court **determines** that the imposition of the previously described attorney's fees and legal costs as a sanction is eminently reasonable and fair, as Hill Jr., now deceased, and the Estate of Hill Jr. have incurred attorney's fees and costs in connection with Hill III's attempts to remove FTB as trustee of the Grandchildren's Trusts.

It is so **ordered** this **10th day** of **December, 2018.**

_____
Sam A. Lindsay
United States District Judge