IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **ALBERT G. HILL, III,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:07-CV-2020-L** |
| | § | |
| **WILLIAM SCHILLING,** *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER DENYING STAY PENDING APPEAL

Before the court is Emergency Motion to Stay Memorandum [Opinion] and Order and Incorporated Brief in Support (Doc. 1921), filed December 10, 2018, by Plaintiff Albert G. Hill, III ("Hill III" or "Al III") ("Hill III's Emergency Motion") (Doc. 1921). By his motion, Hill III requests that, pending the outcome of his anticipated appeal to the United States Court of Appeals for the Fifth Circuit, the court stay its December 7, 2018 Memorandum Opinion and Order (Doc. 1919) ("Permanent Injunction Order"). Hill III seeks this stay pursuant to Federal Rule of Civil Procedure 62. In its Permanent Injunction Order, exercising its continuing jurisdiction over this more-than-eleven-year-old family dispute, the court permanently enjoined Hill III and his wife Erin Hill, as well as their heirs and descendants, from violating certain provisions of the May 13, 2010 Global Settlement and Mutual Release Agreement (the "Settlement Agreement") (Doc. 879), incorporated into and implemented by the court's November 8, 2010 Final Judgment (Doc. 999).

On Thursday, December 13, 2018, the court held a telephonic hearing on Hill III's Emergency Motion. The following individuals participated in or were present at the telephonic hearing: Thomas M. Farrell, Esq., and A. Wolfgang McGavran, Esq., both of McGuire Woods,

L.L.P. (on behalf of Hill III); Emil Lippe, Jr., Esq., of Lippe & Associates (on behalf of Hill III); G. Michael Gruber, Esq., of Dorsey & Whitney, L.L.P. (on behalf of Margaret Keliher ("Keliher")), the Independent Executor of Estate of Albert G. Hill, Jr. ("Hill Jr."); Keliher (on her own behalf); Tom M. Dees, III, Esq., of Hallett & Perrin, P.C. (on behalf of Heather Hill Washburne ("Washburne") and Elisa Hill Summers ("Summers")); Thomas G. Yoxall, Esq., and W. Scott Hastings, Esq., both of Locke Lord, L.L.P. (on behalf of various third parties); and David Turner, General Counsel for A.G. Hill Partners, L.L.C. (on its behalf). At the close of the telephonic hearing, the court took Hill III's Emergency Motion under advisement. After considering Hill III's Emergency Motion, arguments of counsel at the hearing, record, and applicable law, and for the reasons stated below, the court **denies** Hill III's Emergency Motion to Stay (Doc. 1921).

## I. The Permanent Injunction Order (Doc. 1919)

The court dispenses with the factual background and procedural history, as it has set forth substantively this information many times, most recently in its Permanent Injunction Order (Doc. 1919), and repetition serves no useful purpose. Accordingly, the court refers all interested parties and persons to the Permanent Injunction Order (Doc. 1919).

On December 7, 2018, the court granted the relief sought by Washburne and Summers, joined by Keliher, after determining in a comprehensive, thirty-two page decision, that Hill III's challenge to Hill Jr.'s Will and to the appointment of Keliher, as Independent Executor of Hill Jr.'s Estate, as well as his appeal of Judge Ingrid M. Warren's October 11, 2018 Will Contest Order and Order Admitting Will to Probate violated the broad waiver he had agreed to in section III(1)(f) of the Settlement Agreement and paragraph 29 of the Final Judgment, intentionally relinquishing his

known right to contest Hill Jr.'s Will or challenge the disposition of his property in exchange for valuable consideration. The court ordered and decreed:

> that Hill III, Erin Hill, Albert G. Hill, IV, Nance Haroldson Hill, and CMH, and their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with them, directly or indirectly (the "Enumerated Persons"), are **hereby permanently enjoined and prohibited as of the date of this Permanent Injunction from violating the Final Judgment (Doc. 999) or breaching the Settlement Agreement (Doc. 879) by:**
>
> (1) contesting Hill Jr.'s Will in any manner, including, without limitation, contesting whether Hill Jr. lacked testamentary capacity to execute the Will, whether Hill Jr. signed the Will, whether Hill Jr. revoked, modified, and/or suspended the Will, and continuing to challenge Keliher's appointment as Independent Executor with his Will Contest in the Probate Court or in any other court;
>
> (2) appealing the October 11, 2018 Will Contest Order issued by Judge Ingrid M. Warren in Probate Court No. Two of Dallas County, Texas in *Estate of Albert Galatyn Hill, Jr., Deceased*, PR-17-04117-2; and
>
> (3) appealing the October 11, 2018 Order Admitting Will to Probate and Authorizing Letters Testamentary issued by Judge Ingrid M. Warren in Probate Court No. Two of Dallas County, Texas in *Estate of Albert Galatyn Hill, Jr., Deceased*, PR-17-04117-2.

Permanent Injunction Order 30 (Doc. 1919) (original emphasis).

The court also mandated that "the Enumerated Persons are hereby **ordered** to take steps **forthwith** to **dismiss** or **withdraw** the Will Contest filed in the Probate Court in PR-17-04117-2 and any appeal taken therefrom, and are further **ordered** to provide to the court by **December 17, 2018**, written, satisfactory proof that said dismissals or withdrawals have been accomplished." *Id.* at 30-31 (original emphasis).

Further, the court ordered that:

counsel for the Enumerated Persons, Thomas M. Farrell, Esq. of the law firm McGuire Woods and Emil Lippe, Jr., Esq. of the law firm Lippe & Associates, or any

> other counsel acting on behalf of the Enumerated Persons, are hereby **ordered** to take steps **forthwith** to **dismiss** or **withdraw** the Will Contest filed in the Probate Court in PR-17-04117-2 and any appeal taken therefrom filed for or on behalf of the Enumerated Persons. Thomas M. Farrell, Esq. of the law firm McGuire Woods and Emil Lippe, Jr., Esq. of the law firm Lippe & Associates are further **ordered** to provide the court by **December 17, 2018**, written, satisfactory proof that said dismissals or withdrawals have been accomplished.
>
> Thomas M. Farrell, Esq. of the law firm McGuire Woods and Emil Lippe, Jr., Esq. of the law firm Lippe & Associates, and any attorneys, agents, employees, or representatives associated with or in privity with them, or any other counsel acting on behalf of the Enumerated Persons, are further **enjoined** from filing, pursuing, or prosecuting any action in law or in equity, in state or federal court, for or on behalf of the Enumerated Persons, or any person or entity related to or in privity with them, relating to any claim that violates the terms of the Settlement Agreement or Final Judgment.

*Id.* at 31 (original emphasis).

On December 10, 2018, Hill III filed his Emergency Motion to Stay, requesting that the court stay the Permanent Injunction Order (Doc. 1919) and allow the United States Court of Appeals for the Fifth Circuit (the "Fifth Circuit") an opportunity to rule on the merits of his appeal. As previously stated, the court held a telephonic hearing on the matter on December 13, 2018.

**II.     Legal Standard under Rule 62**

Rule 62(d) of the Federal Rules of Civil Procedure provides, in relevant part: "While an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." A stay of an injunction should first be sought at the district court level. Fed. R. App. P. 8(a).

"A stay is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant."

*Barber v. Bryant*, 833 F.3d 510, 511 (5th Cir. 2016) (quoting *Nken v. Holder*, 556 U.S. 418, 427 (2009)). A stay is "an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." *Nken*, 556 U.S. at 433 (internal quotation marks and brackets omitted). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433-34 (citing, *inter alia*, *Clinton v. Jones*, 520 U.S. 681, 708 (1997)).

An application under Rule 62 to stay an injunction is committed to the court's discretion informed by the balancing of certain factors. 11 The Late Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 2904 (3d ed. 2012). The Fifth Circuit has held that a court must consider four factors in deciding whether to grant a stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Texas v. United States*, 787 F.3d 733, 747 (5th Cir. 2015) (quoting *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 410 (5th Cir. 2013)) (quoting *Nken*, 556 U.S. at 427). "There is substantial overlap between these and the factors governing preliminary injunctions . . . not because the two are one and the same, but because similar concerns arise whenever a court order may allow or disallow anticipated action before the legality of that action has been conclusively determined." *Nken*, 556 U.S. at 434 (internal citation omitted). "A stay 'is not a matter of right, even if irreparable injury might otherwise result to the appellant.'" *Texas*, 787 F.3d at 747 (quoting *Planned Parenthood*, 734 F.3d at 410) (quoting *Nken*, 556 U.S. at 427).

The court does not consider the four factors on equal footing; instead, "[t]he first two factors . . . are the most critical." *Nken*, 556 U.S. at 433. As to the first factor, the Fifth Circuit has stated that "the movant need not always show a 'probability' of success on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." *Ruiz v. Estelle (Ruiz I)*, 650 F.2d 555, 565 (5th Cir. 1981). The year after this decision, however, the Fifth Circuit clarified the first factor, explaining that "[l]ikelihood of success remains a prerequisite in the usual case even if it is not an invariable requirement. Only if the balance of equities (i.e. consideration of the other three factors) is . . . heavily tilted in the movant's favor will we issue a stay in its absence, and, even then, the issue must be one with patent substantial merit." *Ruiz v. Estelle (Ruiz II)*, 666 F.2d 854, 856-57 (5th Cir. 1982) (internal quotation marks omitted); *see also In re First South Savings Ass'n*, 820 F.2d 700, 709 n.10 (5th Cir. 1987) (noting that in *Ruiz II*, "we cautioned against reading *Ruiz I* as 'a coup de grace for the likelihood-of-success criterion in this circuit.'") (quoting *Ruiz II*, 666 F.2d at 856).

### III. Analysis

As a preliminary matter, the court notes that Hill III failed to comply with the court's standing order that, prior to filing a motion in this matter, a party must seek leave of court. The court, therefore, will deny Hill III's Emergency Motion to Stay on this basis.

Moreover, even if the court considers Hill III's Emergency Motion for Leave, for the reasons that follow, he has not met his burden of showing that the circumstances justify an exercise of the court's discretion to stay its injunction pending appeal under the four-factor test previously set forth.

### A. Likelihood of Success on the Merits

Without having to rehash in full its Permanent Injunction Order (Doc. 1919), the court incorporates it now by reference as if stated herein verbatim and **determines** Hill III has little, if any, likelihood of success on the merits. As previously stated by the court in its Permanent Injunction Order (Doc. 1919), in the "No Contest Clause" of the Settlement Agreement, Hill III and Erin Hill, individually and as next friend to their three children, Albert G. Hill, IV, Nance Haroldson Hill, and CMH, as well as their heirs and descendants, **expressly** agreed not to contest Hill Jr.'s Will or file any action challenging the disposition of his property:

> (f) <u>No Contest of Al Jr.'s Last Will and Testament</u>: Al III, Erin, the Grandchildren, and all of their descendants and heirs agree not to contest the Last Will and Testament of Al Jr. or file any additional action, lawsuit, or legal proceeding challenging the disposition of his property.

Settlement Agreement § III(1)(f). As part of the Final Judgment, the court, incorporating the "No Contest Clause" from the Settlement Agreement, ordered Hill III and Erin Hill (in all their capacities) and the Grandchildren not to contest Hill Jr.'s Will or challenge the disposition of his property:

> IT IS ORDERED that Al III (in all capacities), Erin [Hill] (in all her capacities), the Grandchildren, and all of their descendants and heirs shall not contest the Last Will and Testament of Al Jr., or file any additional action, lawsuit, or legal proceeding challenging the disposition of Al Jr.'s property.

Final J. ¶ 29.

In the Permanent Injunction Order (Doc. 1919), the court undertook a careful review of the relevant language of the Settlement Agreement and Final Judgment and, applying Texas rules of contract interpretation, independently reached the same conclusion as Judge Warren reached, namely, that Hill III's Will Contest violated the terms of the Settlement Agreement and Final

Judgment. Permanent Injunction Order 22-25 (Doc. 1919). The court further determined that Hill III's appeal of Judge Warren's Will Contest Order and Order Admitting Will to Probate also violated the unambiguous provisions of the Settlement Agreement and Final Judgment. Noting the expansive waiver language used in the "No Contest Clause," the court concluded that Hill III waived his right to contest any aspect of Hill Jr.'s Will, *in any manner*, in exchange for the consideration he received under the Settlement Agreement, which included a nine-figure monetary amount. In his Emergency Motion to Stay, Hill III reurges his same argument, which both Judge Warren and this court concluded failed as a matter of law. In support, Hill III offers a tortured reading of the "No Contest Clause," arguing that it is only triggered by a decision that the Will is, indeed, Hill Jr.'s Last Will and Testament. While the court appreciates Mr. Farrell's and Mr. Lippe's zealous advocacy on behalf of Hill III, the court is satisfied by its thorough consideration of the applicable law and the extremely broad waiver executed by Hill III in the Settlement Agreement, as implemented in the Final Judgment, that it reached the correct conclusion. Further, adopting Hill III's interpretation of the plain language of the "No Contest Clause" would lead to an unreasonable and inequitable result. A court is to avoid when possible "a construction [that] is unreasonable, inequitable, and oppressive." *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987); *see also Pavecon, Inc. v. R-Com, Inc.*, 159 S.W.3d 219, 222 (Tex. App.—Fort Worth 2005, no pet.) (stating that when interpreting a contract, a court should avoid, if possible, "a construction that is unreasonable, inequitable, or oppressive, or would lead to an absurd result.").

Hill III also contends he is likely to succeed on the merits because the Permanent Injunction Order (Doc. 1919) lacks specificity in some respects and grants broad relief of which he did not have adequate notice. The court disagrees. With respect to specificity, insofar as Hill III complains about

**Memorandum Opinion and Order Denying Stay Pending Appeal - Page 8**

that portion of the court's order enjoining the Enumerated Persons from "filing, pursuing, or prosecuting any action in law or in equity, in state or federal court, for or on behalf of the Enumerated Persons, or any person or entity related to or in privity with them, relating to any claim that violates the terms of the Settlement Agreement and Final Judgment," this language merely supplements the court's more specific language enjoining the Enumerated Persons from violating the "No Contest Clause." Any further alleged violations of other terms of the Settlement Agreement and Final Judgment would necessarily require notice and an opportunity to be heard, and, as part of its continuing jurisdiction, the court would consider whether a violation had occurred only after due process concerns were satisfied.

Similarly, with respect to Hill III's argument that he had inadequate notice and that the injunction is not necessary because the Final Judgment "already speaks to what is prohibited and contains its own enforcement mechanisms," Emer. Mot. to Stay 9 (Doc. 1921), this argument is unpersuasive. As previously held in the Permanent Injunction Order (Doc. 1919), section III(5)(r) of the Settlement Agreement, incorporated into the Final Judgment, expressly provides for injunctive relief in the event of a breach:

> (r) <u>Specific Performance</u>: The Parties agree that monetary damages alone may not be adequate recompense for any breach of this Agreement. In the event any Party breaches any of the obligations or responsibilities placed upon such Party in this Agreement, then any other Party may seek any legal or **equitable remedy that may be available for such breach** . . . . The Parties agree that the remedy of specific performance and/or **injunctive relief (whether mandatory or by restraint) shall be available for the breach of any term, condition, covenant, or warranty of this Agreement**.

Permanent Injunction Order (Doc. 1919) (citing § III(5)(r) of the Settlement Agreement) (emphasis added).

For these reasons, the court **concludes** that Hill III has little, if any, likelihood of success on the merits. The first factor, therefore, weighs against granting Hill III's Emergency Motion to Stay.

B. **Whether Hill III Will Suffer Irreparable Injury**

Hill III contends he will suffer irreparable injury because absent a stay pending appeal, he may lose his chance to appeal Judge Warren's Will Contest Order and Order Admitting Will to Probate. He further contends that if he continues his appeal or other actions in state court, he may be in contempt of the Permanent Injunction Order (Doc. 1919). The court acknowledges that Hill III might suffer irreparable injury if the Fifth Circuit's review process exceeds the time by which the appellate court dismisses his appeal of Judge Warren's October 11, 2018 order for failure to prosecute. Hill III, however, has not shown how likely this injury will be, as the Fifth Circuit may expedite its review of his appeal, or, alternatively, on Hill III's motion, may stay enforcement of the Permanent Injunction Order. That this may occur, however, is not determinative. A stay here would result in irreparable injury **only** if Hill III prevails on the "ultimate" merits. As the court has previously stated, Hill III has little, if any, likelihood of success on the merits. On balance, therefore, the second factor weighs against granting Hill III's Emergency Motion to Stay.

C. **Whether the Other Parties Will Be Substantially Harmed**

Hill III argues that a "relatively brief delay of a stay" while his appeal is pending would not cause harm to Washburne and Summers, or Keliher, because this dispute has been going on for over a decade. Emer. Mot. to Stay 9. The court disagrees. As argued by counsel for Washburne, Summers, and Keliher during the telephonic hearing, once all claims were settled in 2010, they were entitled to the benefit of their bargain reflected in the May 13, 2010 Settlement Agreement and November 8, 2010 Final Judgment. Imposition of the additional delay that a stay would unavoidably

cause would result in material harm to them. Further, in the event Hill III does not ultimately prevail, which is the likely outcome given the expansive waiver provision Hill III agreed to in the "No Contest Clause," Washburne and Summers, joined by Keliher, will be further forced to litigate in state court as Hill III continues to appeal and to violate the Settlement Agreement and Final Judgment, which causes these parties to incur further attorney's fees and costs and lose the benefit of their bargain.

In support of his argument that the sheer longevity of his dispute with his deceased father, Hill Jr., tips the scales of equity in his favor and dilutes any harm a stay would visit upon Hill Jr.'s Estate or Movants, Hill III cites *Reading & Petroleum Co. v. Musslewhite*, 14 F.3d 271, 272 (5th Cir. 1994). In *Musslewhite*, a federal district court enjoined Peter Manangklangi and his attorney, Benton Musslewhite, from further prosecuting a pending state court action that was duplicative of a previous federal lawsuit brought by Mr. Manangklangi seeking damages for an injury allegedly suffered during offshore oil well operations, and which the federal district court had dismissed with prejudice follow entry of summary judgment in defendants' favor. After learning that Mr. Musslewhite was flaunting court orders by seeking to prosecute the state court action in violation of its injunction, the court held Mr. Musselwhite and his client in contempt and, as part of a sanction, ordered Mr. Musslewhite to be incarcerated each business day from 8 a.m. to 5 p.m. until he purged himself of contempt by bringing to the attention of the state court the final judgment previously entered by the federal district court dismissing Mr. Manangklangi's personal injury lawsuit with prejudice. An appeal was taken, and, on Mr. Musslewhite's motion, the Fifth Circuit stayed execution of the commitment order. His opponent moved to vacate the stay, and the Fifth Circuit rejected the request, holding that execution of the commitment order would be stayed. *Id.* at 272-73. The Fifth Circuit

reasoned that a stay of the contempt order was a proper means to prevent the underlying dispute from being rendered moot and also to prevent the irreparable harm of a party being subject to a civil contempt order that might turn out to have been improvident. *Id.* at 272. The court also noted: "the granting of our stay could not possibly have caused 'substantial harm' . . . in light of the fact that the controversy as to the effect of the federal proceeding on the state court proceeding had been going on for more than ten years." *Musslewhite*, 14 F.3d at 272.

According to Hill III, this action is of similarly long duration and, under the reasoning in *Musslewhite*, a stay, therefore, would not cause substantial harm. This case, however, is distinguishable from *Musslewhite*. First, although Hill III is correct that the litigation between Hill III and Hill Jr. had been going on for several years (notwithstanding entry of a Final Judgment on November 8, 2010), the harm here in not to Hill Jr., but to his Estate and its Independent Executor seeking to probate his Will. The dispute between Hill III and the Estate and Independent Executor did not commence until shortly after Hill Jr.'s unexpected death on December 2, 2017, when Tyree Miller attempted to offer Hill Jr.'s Will to probate and have letters testamentary issued but was met with a will contest filed by Hill III in violation of the "No Contest Clause."

Further, the Fifth Circuit in *Musslewhite* emphasized that Mr. Musslewhite had presented "a substantial case on the merits" and that a "serious legal question [was] involved." *Id.* By contrast, given the broad language in the "No Contest Clause," in which Hill III **expressly** waived any ability to contest Hill Jr.'s Will or challenge the disposition of his property, Hill III's opinion that he will succeed on the merits of his appeal is, to be generous, overly optimistic, and his argument that he is not violating the "No Contest Clause" rests on an untenable reading of the plain language of the Settlement Agreement and Final Judgment, and is akin to sophistry.

Finally, Hill III—who has unequivocally and voluntarily waived his right to contest Hill Jr.'s Will, waived his right to challenge the disposition of Hill Jr.'s property, and agreed to the terms of the Settlement Agreement and Final Judgment—cannot be permitted to unilaterally exclaim, "King's X, this binding agreement no longer applies to me!" In light of Hill III's explicit waiver as contained in the Settlement Agreement and Final Judgment, he is estopped from disregarding or ignoring that to which he lawfully and voluntarily agreed. The third factor, therefore, weighs against granting Hill III's Emergency Motion to Stay.

D. **Whether A Stay of Enforcement of the Final Judgment Is in the Public Interest**

Hill III argues that a stay would serve the public interest because it preserves his rights in state and federal courts. The court rejects this argument. Public policy and the law mandate that Hill III should not be able to ignore his contractual obligations or this court's Final Judgment by thwarting the "No Contest Clause." As the court stated previously, the "public interest supports enforcement of prior court orders." Mem. Op. & Order 13 (Doc. 1745). The public fully expects parties to abide by the terms and provisions of a contract. A stay would serve only to allow Hill III to continue acting in public disregard of the court's lawful order, a result that would only prolong contentious, fractious, and unnecessary litigation that should have ended long ago—all of which are contrary to the public interest.

Hill III also asserts that "any alleged financial harm caused by a stay, such as attorneys' fees arising from the state court action while the appeal order is pending, would be readily calculable and could be secured by a bond." Hill III's Emer. Mot. to Stay 9 (Doc. 1921). Under ordinary circumstances, posting of a bond protects the prevailing party from the risk of a later uncollectible judgment and compensates him or her for delay in the entry of a final judgment. *See, e.g., Eurasia*

*Int'l, Ltd. v. Holman Shipping, Inc.*, 411 F.3d 578, 585 (5th Cir. 2005); *Hebert v. Exxon Corp.*, 953 F.2d 936, 938 (5th Cir. 1992). Considering Hill III's well-documented history of opposing virtually every court order and unsuccessfully appealing those that he dislikes,[*] the court rejects Hill III's request to stay the Permanent Injunction Order (Doc. 1919) and post a bond as security. In addition to his numerous unsuccessful appeals to the Fifth Circuit, since entry of Final Judgment, Hill III has inundated the court with unsuccessful motions to alter, amend, or vacate the Final Judgment; to recuse various judges for purported bias; and to stay proceedings, many of which have been filed solely to frustrate the court's implementation of the Final Judgment and Settlement Agreement. History has predictive value; and considering Hill III's documented history of trying to avoid his commitments under the Settlement Agreement and Final Judgment, his lack of hesitation to challenge rulings he dislikes by filing numerous unsuccessful appeals in the Fifth Circuit, and his failure to demonstrate a likelihood of success on the merits of an appeal, *see supra*, the court sees nothing to be gained by staying its injunction upon the posting of a bond as security. To accept Hill III's reasoning requires the court to turn a blind eye to the record in this case. The court declines to do so, as it would only serve to further prolong this contentious and tortuous litigation that was supposed to have been brought to a close on November 8, 2010, by the Final Judgment (Doc. 999), that incorporated and implemented the Settlement Agreement (Doc. 879). Accordingly, this final factor weighs against granting Hill III's Emergency Motion to Stay.

---

[*] *See, e.g.*, Doc. 1384 (Fifth Circuit opinion); Doc. 1385 (Fifth Circuit mandate); Doc. 1527 (Fifth Circuit opinion); Doc. 1528 (Fifth Circuit mandate); Doc. 1538 (Fifth Circuit opinion); Doc. 1539 (Fifth Circuit mandate); Doc. 1388 (United States Supreme Court denying Hill III's Petition for Writ of Certiorari).

**Memorandum Opinion and Order Denying Stay Pending Appeal - Page 14**

## IV. Conclusion

Having considered the relevant factors, the court, in carefully exercising its discretion, **concludes** that Hill III has not shown he is entitled to a stay of enforcement of the court's Permanent Injunction Order (Doc. 1919). In light of the extremely broad and unambiguous waiver of his right to contest Hill Jr.'s Will or challenge the disposition of his property, set forth in section III.1.f. of the Settlement Agreement (Doc. 879), as implemented by paragraph 29 of the Final Judgment (Doc. 999), Hill III has shown little, if any, likelihood of success on the merits and has shown only a speculative irreparable injury. Likewise, Hill III has not met his burden to show that, were the court to grant his stay, Washburne and Summers, joined by Keliher, will not be substantially harmed. Finally, Hill III has not shown the public's interest would benefit from a stay. Even were the court to conclude that the last two factors—namely, that a stay would not substantially injure Movants and would serve the public interest—weigh in Hill III's favor, such a showing would not be enough to justify the issuance of a stay pending appeal, as Hill III has failed to meet his burden on the first two factors, which carry the most weight.

For these reasons, the court hereby **denies** Hill III's Emergency Motion to Stay Memorandum [Opinion] and Order and Incorporated Brief in Support (Doc. 1921). **The court will not entertain any further motions to stay its order granting injunctive relief.**

In light of the passage of time, the court **sets** new dates for compliance with its Permanent Injunction Order (Doc. 1919). Accordingly, the court **vacates** its December 11, 2018 Order (Doc. 1922), in which it stayed the enforcement of the Permanent Injunction Order pending the disposition

of Hill III's Emergency Motion. The compliance deadlines contained in the Permanent Injunction Order (Doc. 1919) are hereby **extended** as follows:

The Enumerated Persons set forth in the Permanent Injunction Order (Doc. 1919), and restated herein, are hereby **ordered** to take steps **forthwith** to **dismiss** or **withdraw** the Will Contest filed in the Probate Court in PR-17-04117-2 and any appeal taken therefrom, and are further **ordered** to provide to the court by **Friday, January 4, 2019**, written, satisfactory proof that said dismissals or withdrawals have been accomplished.

Further, counsel for the Enumerated Persons, Thomas M. Farrell, Esq. of the law firm McGuire Woods and Emil Lippe, Jr., Esq. of the law firm Lippe & Associates, or any other counsel acting on behalf of the Enumerated Persons, are hereby **ordered** to take steps **forthwith** to **dismiss** or **withdraw** the Will Contest filed in the Probate Court in PR-17-04117-2 and any appeal taken therefrom filed for or on behalf of the Enumerated Persons. Thomas M. Farrell, Esq. of the law firm McGuire Woods and Emil Lippe, Jr., Esq. of the law firm Lippe & Associates are further **ordered** to provide the court by **Friday, January 4, 2019**, written, satisfactory proof that said dismissals or withdrawals have been accomplished.

Finally, the court **awards** Washburne and Summers, joined by Keliher, the recovery from Hill III all of their reasonable attorney's fees and costs of litigation incurred as a result of Hill III's Will Contest in the Probate Court and subsequent appeal. In the Settlement Agreement, incorporated into the Final Judgment, the parties agreed that "attorneys' fees and costs of litigation" were available "[i]n the event any Party breaches any of the obligations or responsibilities placed upon

such Party in this Agreement[.]" Settlement Agreement § III(5)(r) (Doc. 879). The court **directs** counsel for Movants to provide it with documentation, including affidavits and invoices, supporting their request for reasonable attorney's fees and costs. The deadline to submit proof of reasonable attorney's fees and costs is **Friday, January 4, 2019**. Hill III's response shall be filed no later than **Friday, January 18, 2019.** Washburne and Summers' reply, if any, shall be filed no later than **Tuesday, January 29, 2019.** Keliher may opt to file her own reply by this deadline, or indicate her joinder in Washburne and Summers' reply.

It is so **ordered** this **20th day** of **December, 2018.**

*[signature]*
Sam A. Lindsay
United States District Judge