UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ALBERT G. HILL, III,<br>    PLAINTIFF,<br><br>v.<br><br>WILLIAM SCHILLING, ET AL.,<br>    DEFENDANTS. | §<br>§<br>§<br>§   CIVIL CASE NO. 3:07-CV-2020-L-BK<br>§<br>§<br>§ |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the District Judge's *Amended Order of Reference*, Doc. 1940, *Margaret Keliher, as Independent Executor of the Estate of Albert G. Hill, Jr., Deceased's, Application and Brief in Support of Attorneys' Fees and Costs Pursuant to the Court's December 10, 2018 Memorandum Opinion and Order (ECF 1920)* is before the Court for a recommended disposition. For the reasons that follow, Keliher should be awarded attorneys' fees in the amount of $27,378.50 and costs of $15.00.

**A. Procedural History**

Given the limited scope of the issue before the Court, an extensive narrative of the parties' dispute is not necessary. To be brief, in December 2018, District Judge Sam A. Lindsay held Plaintiff, Albert G. Hill, III ("Hill III") in civil contempt for disobeying an order entered on July 10, 2017 (the "July 2017 Order"). Doc. 1920 at 11. The July 2017 Order was precipitated by an emergency motion (the "Emergency Motion") filed by then Defendant Albert G. Hill, Jr. ("Hill Jr.") regarding Hill III's attempts to violate a temporary restraining order ("TRO") the Court had entered just weeks earlier. *See* Doc. 1754. The July 2017 Order directed Hill III to neither remove nor attempt to remove First Tennessee Bank NA ("FTB") as trustee of three

trusts that Hill Jr. had established for the benefit of Hill III's children. Doc. 1757 at 2. It subsequently came to light that Hill III had attempted to do just that. Doc. 1920 at 11. Accordingly, on November 16, 2018, Judge Lindsay held a contempt hearing to consider imposing sanctions against Hill III (the "2018 Contempt Hearing"). Doc. 1918.

The Court thereafter held Hill III in civil contempt and determined that his actions had caused his opponent to incur unnecessary legal fees and costs. Doc. 1920 at 11. The Court further ordered that, as a sanction, Hill III would be required to pay the Estate of Hill, Jr. its reasonable and necessary attorney's fees and costs incurred in: (1) bringing the motion that precipitated the court's July 2017 Order; and (2) preparing for and participating in the 2018 Contempt Hearing. Doc. 1920 at 18. The fee issue has been fully briefed and is ripe for ruling.

**B. Applicable Law**

The Court of Appeals for the Fifth Circuit employs a two-step process when determining an award of attorneys' fees. *Jimenez v. Wood Cnty., Tex.*, 621 F.3d 372, 379 (5th Cir. 2010) (citing *Rutherford v. Harris Cnty., Tex.*, 197 F.3d 173, 192 (5th Cir. 1999)). The first step is the lodestar calculation, "which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work." *Id.* In evaluating the reasonableness of the number of hours claimed, courts determine "whether the total hours claimed are reasonable [and] also whether particular hours claimed were reasonably expended." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 325 (5th Cir. 1995). The party seeking attorneys' fees bears the burden of establishing the prevailing market rate for similar services. *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984). Following the calculation of the lodestar, the Court then must determine whether to adjust the fee on the basis of several other factors that may

2

be of significance in the particular case.[1]  There is a strong presumption that the lodestar calculation represents the reasonable fee.  *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

**C. Parties' Arguments and Analysis**

Margaret Keliher, as executor of Hill Jr.'s Estate, ("Keliher") has submitted a brief and supporting documentation requesting a total fee award of $30,682.50 and costs of $15.00.  Doc. 1928 at 6.  The requested fee is includes:  (1) $27,378.50 for fees incurred in July 2017 and November 2018, which generally encompasses the period leading up to the entry of the July 2017 Order as well as Keliher's preparation for and attendance at the 2018 Contempt Hearing; and (2) $3,304.00 for fees incurred in December 2018 in connection with drafting the instant motion.  Doc. 1928 at 6.

As an initial matter, because Hill III does not object to Keliher's attorneys' proposed hourly rates, and considering the Court's experience in assessing the reasonableness of attorney billing rates, the Court finds that the hourly rates charged in this case were reasonable.  *See Islamic Ctr. of Miss., Inc. v. City of Starkville*, 876 F.2d 465, 469 (5th Cir. 1989) ("When that rate is not contested, it is *prima facie* reasonable.").  As to the hours billed, Hill III raises only a limited number of objections, which will be addressed *in seriatim* below.

---

[1] *See Johnson v. Ga. Hwy. Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989).  The *Johnson* factors consist of: (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998).

*First*, Hill III argues that Keliher seeks fees of $596.50 for services performed on July 1 and July 2, 2017, which predate the July 3 email that referred to the removal of FTB as trustee and was the basis for the Emergency Motion and the July 2017 Order. Doc. 1932 at 2. Similarly, Hill III contends that Keliher seeks $387.50 for services performed after the filing of the Emergency Motion, which was not part of the "bringing" of the motion for which Judge Lindsay permitted a fee award. Doc. 1932 at 2.

Keliher responds that the fees incurred prior to July 3, 2017 are recoverable because they stemmed from FTB's communication with Hill Jr. regarding one of his grandchildren's request for a trust disbursement that would have violated the TRO and which was then relied upon by Hill Jr. in his Emergency Motion. Doc. 1941 at 2. As to the post-filing fees of $387.50, Keliher contends that they directly related to the July 2017 Order because they were incurred in reviewing the Order itself. Doc. 1941 at 2. The Court concurs with Keliher for essentially the reasons she states. Any other reading would violate the spirit of Judge Lindsay's order authorizing a fee award.

*Second*, Hill III asserts that for the services rendered from July 5 to July 7, 2017, counsels' time entries are block-billed and thus not capable of complete segregation. Doc. 1932 at 2-3. He suggests a 25% across-the-board reduction. Doc. 1932 at 3. Keliher responds that only a few entries during this referenced period were in block format, and counsel excluded an appropriate amount of time for entries that did not relate to the Emergency Motion. Doc. 1941 at 3.

"The term 'block billing' refers to the disfavored 'time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.'" *Hoffman v. L & M Arts*, No. 3:10-CV-0953-D,

4

2015 WL 3999171, at *4 n.5 (N.D. Tex. July 1, 2015) (Fitzwater, J.) (quotation omitted). The practice "prevents the court from accurately determining the time spent on any particular task, thus impairing the court's evaluation of whether the hours were reasonably expended." *Id.* (citation omitted).

That is not, however, what Keliher's counsel has done in this case. To the contrary, upon review of the bills in question, it appears that counsel has been as detailed and diligent as reasonably possible in entering time and making appropriate reductions in those categories of the billing statements that are listed in block form. *See* Doc. 1929 at 37-39. Thus, no further reduction is warranted. *But cf. Bramlett v. Medical Protective Co. of Fort Wayne, Ind.*, No. 3:09-cv-1596-D, 2010 WL 3294248, at *3-4 (N.D. Tex. Aug. 20, 2010) (Fitzwater, C.J.) (reducing fee award by 25% because counsel's affidavit included "substantial blocks of time, listing multiple activities for those blocks of time" and "[did] not specify the time per legal service rendered or the date on which the service was rendered.").

***Third***, with respect to the 2018 Contempt Hearing, Hill III observes that Keliher included fees for two attorneys although only one of them, Brian Mason, entered an appearance. Doc. 1932 at 3. Thus, Hill III asserts that $672.00 for Kymberlee Milligan's attendance should be disallowed. Doc. 1932 at 3.

Keliher responds that Ms. Milligan is a paralegal who helped Mr. Mason prepare for the 2018 Contempt Hearing and attended to assist with exhibits and the PowerPoint presentation that Mr. Mason intended to present, and her attendance was thus reasonable and necessary. Doc. 1941 at 3-4. Keliher further notes that Hill III had two attorneys present at the hearing, one of whom said nothing. Doc. 1941 at 4.

Upon review of the pertinent billing records, the Court concurs with Keliher. It is apparent that Ms. Milligan was actively involved in the events that led up to the 2018 Contempt Hearing. *See* Doc. 1929 at 3 (Milligan time entry re preparing appendix in support of Hill Jr.'s motion to show cause and preparing for hearing on preliminary injunction); Doc. 1929 at 4 (Milligan time entry re preparing exhibits for show cause hearing). Under the circumstances, inclusion of her fee for $672.00 for attending the 2018 Contempt Hearing is not unreasonable.

*Fourth*, Hill III points out that Keliher has included in her request $3,319.00 for fees and costs she incurred in preparing the instant application, which the Court did not award and which also were block-billed. Doc. 1932 at 3. Keliher argues that, contrary to Hill III's assertion, it is appropriate for the Court to award fees for the preparation of attorneys' fee applications. Doc. 1941 at 4 (citing *In re Digerati Techs., Inc.*, 537 B.R. 317, 321 (Bankr. S.D. Tex. 2015). Keliher contends that these fees were clearly related to the July 2017 Order and the 2018 Contempt Hearing and therefore should be awarded. Doc. 1941 at 4.

As an initial matter, the total adjusted fee amount Keliher seeks is $3,304.00, not $3,319.00. See Doc. 1929 at 39-41. The $15.00 discrepancy appears to be the result of a parking charge incurred by Mr. Mason for appearing at the 2018 Contempt Hearing, which is a compensable expense. Doc. 1929 at 27. As to the attorneys' fee issue, however, Hill III's objection has merit. On its face, Judge Lindsay's order directing an award of fees does not include such fees. Moreover, Keliher's lone supporting citation is to *Digerati*, but that case is entirely inapposite as it addresses the compensability of fee application preparation specifically in the bankruptcy context. *See* 537 B.R. at 366 (noting that the Supreme Court has determined that bankruptcy professionals are entitled to reasonable fees and expenses incurred in preparing a fee application) (citing *Baker Botts, L.L.P. v. ASARCO, L.L.C.*, 135 S. Ct. 2158, 2167 (2015)).

6

Accordingly, Keliher is not entitled to recover the $3,304.00 she incurred in preparing the instant fee application.

**D. Conclusion**

For the reasons outlined above, Keliher should be awarded attorneys' fees in the amount of $27,378.50 and costs in the amount of $15.00.

**SO RECOMMENDED** on September 30, 2019.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must specify the finding or recommendation to which objection is made, the basis for the objection, and where in the magistrate judge's findings, conclusions and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).