IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALBERT G. HILL, III, individually and as a Beneficiary of the Margaret Hunt Trust Estate, derivatively on behalf of the Margaret Hunt Trust Estate, individually as a beneficiary of the Haroldson Lafayette Hunt, Jr. Estate, and derivatively of the Haroldson Lafayette Hunt, Jr. Estate, | § § § § § § § § § § § § | |
| v. | § § § § | Civil Action No. **3:07-CV-2020-L** |
| WILLIAM SCHILLING et al., | § § § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is the Grandchildren's Motion for Leave to File Their Motion to Enforce Final Judgment and Global Settlement Agreement and for Other Relief, Brief in Support, and Evidentiary Appendix in Support (Doc. 2003) ("Motion for Leave"), filed under seal on December 11, 2020. Having considered the Motion for Leave, response (Doc. 2008), reply (Doc. 2009), pleadings, record, and applicable law, the court **denies** the Motion for Leave.

**I. Factual Background and Procedural History**

The Honorable Reed C. O'Connor issued a Final Judgment in this civil action on November 8, 2010. *See* Final J., Doc. 999. More than ten years later, on December 11, 2020, Albert G. Hill IV, Nance Hill, and Caroline Hill (collectively, the "Grandchildren" or "Movants"), filed their Motion for Leave under seal. Movants are not strangers to this litigation. They are the three children of Albert G. Hill, III ("Hill III") and Erin Nance Hill ("Erin Hill"), and the grandchildren

**Memorandum Opinion and Order – Page 1**

of Albert G. Hill, Jr. ("Hill Jr."). By their Motion for Leave, they seek to file their Motion to Enforce Final Judgment and Global Settlement Agreement and for Other Relief ("Motion to Enforce") in which they request that the court "find wrongful termination of the MHTE-Albert G. Hill, Jr. Trust and the HLHTE-Albert G. Hill, Jr. Trust ('Hill Jr. Trusts') and enter an order enforcing the Final Judgment and restoring the Hill Jr. Trusts and ordering all assets wrongfully distributed immediately returned." Mot. to Enforce ¶ 1, Doc. 2003-1. They also request imposition of a constructive trust over the "wrongfully distributed assets." *Id.* The Grandchildren contend that Hill Jr. (who passed away on December 2, 2017), "and others working in concert with him," have "wrongfully dissolved [the Hill Jr. Trusts] to extinguish the contractual rights of the Grandchildren of [Hill Jr.] whom this Honorable Court has long endeavored to protect." Brief in Support of Mot. to Enforce ¶¶ 1, 3, Doc. 2003-2. The Grandchildren allege that the following individuals participated in this breach of the Final Judgment: Hill Jr., now deceased; Heather Hill Washburne ("Washburne"); Elisa Hill Summers ("Summers"); Ivan Irwin, Jr. ("Irwin"), now deceased; Chester J. Donnally, Jr. ("Donnally"); and Thomas Tatham ("Tatham") (collectively, "Respondents"). The Grandchildren contend Respondents either "were directly involved or aided and abetted the wrongful dissolutions" of the Hill Jr. Trusts. *Id.* ¶ 4.

One day after the Grandchildren filed their Motion for Leave, on December 12, 2020, their parents—Hill III and Erin Hill—sought similar relief on behalf of themselves and the Grandchildren in a separately filed lawsuit against many of the same individuals. *See Hill III et al. v. Keliher et al.*, Civil Action No. 3:20-cv-3634-L (the "3634 Action"). Specifically, Hill III and Erin Hill, on behalf of themselves and the Grandchildren, alleged that, following Hill Jr.'s death, these same individuals and others breached duties owed to Hill III and Erin Hill (and, derivatively, the Grandchildren) by terminating and dissolving the Hill Jr. Trusts in 2016, rather than allowing

**Memorandum Opinion and Order – Page 2**

them to terminate twenty-one years after the deaths of their initial beneficiaries. *See generally* Pls.' Compl., Doc. 1 in Civil Action No. 3:20-cv-3634-L.

On March 25, 2022, the court granted Defendants' motions to dismiss the Complaint in the 3634 Action under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), finding that Hill III and Erin Hill, seeking relief on behalf of themselves and the Grandchildren, lacked standing to challenge the dissolution of the Hill Jr. Trusts, that their claims had been settled and released in the Final Judgment, and that Hill III and Erin Hill had taken positions, when it was to their benefit, contrary to the positions they espoused in the 3634 Action, and they were, therefore, estopped from bringing their current claims. *See* Mem. Op. & Order, Doc. 39 in Civil Action No. 3:20-cv-3634-L.

The Grandchildren's Motion for Leave to file their Motion to Enforce—like their parents' lawsuit in the 3634 Action and previous filings in this case—centers on the dissolution of the Hill Jr. Trusts that are governed by the terms of the Margaret Hunt Trust Estate ("MHTE"); and (2) the Haroldson L. Hunt, Jr. Trust Estate ("HHTE" or "HLHTE"), two trusts formed on December 28, 1935, by Lyda Bunker Hunt and her husband Haroldson Lafayette ("H.L.") Hunt, "the late Texas oil baron reputed to be one of the world's richest men when he died in 1974." *Hill v. Washburne*, 953 F.3d 296, 300 (5th Cir. 2020) (citations omitted). An understanding of the formation of the MHTE and HHTE, as well as the genesis of this lawsuit that began in 2007 and concluded when Judge O'Connor entered a Final Judgment on November 8, 2010, is required to understand the relief the Grandchildren seek and the court's ruling.

### A. The MHTE and HHTE

The MHTE and HHTE are both governed by a document titled "Articles of Agreement and Declaration of Trust" (the "1935 Trust Instruments"). The terms of the Trust Instrument for the

**Memorandum Opinion and Order – Page 3**

MHTE are the same as those of the HHTE except for the designation of, and reference to, the primary beneficiary of each trust. The primary beneficiary of the MHTE was Margaret Hunt Hill and the primary beneficiary of the HHTE was Haroldson L. Hunt, Jr. ("Hassie"). The 1935 Trust Instruments provide that "it is the desire and purpose of said H. L. Hunt and Lyda Hunt" to create an "irrevocable trust," and both provide, among other things, that during the lifetime of the beneficiary, only the annual income could be distributed to the beneficiary requiring that the corpus remain "intact and undisturbed" until twenty-one years after the death of the named beneficiary, at which time the trust would terminate and the corpus of the trust would be distributed to the beneficiary's descendants per stirpes. App. to Grandchilden's Brief in Supp. of Mot. to Enforce ("Grandchildren's App.") at 7-8 (Art. IV § 3 (MHTE)) and at 17 (Art. IV § 3 (HHTE)).

Article III, Section 3 of the 1935 Trust Instruments, however, contains language suggesting that a current MHTE and HHTE beneficiary has powers of appointment, as follows:

> At the time of the death of the Beneficiary, her [or his] equitable interest in said Trust Estate, *unless disposed of otherwise by said Beneficiary*, shall pass to and vest in her [or his] heirs in accordance with the laws of descent and distribution then in force, applicable to the equitable interest of such Beneficiary and said Trust Estate. (The term "Beneficiary" applies not only to [Margaret Hunt or Haroldson L. Hunt, based on the language of the specific trust] but to all her [or his] successors to beneficial interests under this Trust.)")
.
Grandchildren's App. at 7 (Art. III § 3 (MHTE)) and at 17 (Art. III § 3 (HHTE)) (emphasis added).

On April 20, 2005, Hassie died. In his will, Hassie exercised his general testamentary power of appointment in the HHTE in favor of "the lineal descendants of my sister Margaret Hunt Hill, per stirpes." Doc. 212-6; Doc. 203 at 4-5, § 2; Doc. 211 at 2-4, § II.A. After Hassie's death, therefore, his equitable interests in the HHTE passed in equal shares to Margaret Hunt Hill's three children (Hill Jr., Lyda Hill, and Alinda Hill Wikert), as they were Margaret Hunt Hill's lineal descendants on the date of Hassie's death. *See id.*

**Memorandum Opinion and Order – Page 4**

### B. Hill Jr.'s 2005 Disclaimer

On March 22, 2005, Hill Jr. executed a disclaimer as to certain portions of the equitable interests he was to receive under the MHTE (the "2005 Disclaimer") in favor of his three children: Hill III, Washburne, and Summers. The effect of the 2005 Disclaimer is that Hill Jr.'s disclaimed interest passed to Hill III, Washburne, and Summers after Margaret Hunt Hill's death. Specifically, Hill Jr. disclaimed 75% of his one-third income interest in the MHTE, and 90% of his one-third termination interest in the MHTE (the "Disclaimed Beneficial Interests"). Doc. 879 at 39-40; Doc. 999-1 at 7-8.

### C. This Lawsuit

On June 14, 2007, Margaret Hunt Hill died and her equitable interest in the MHTE passed in equal shares to her three children—Hill Jr., Lyda Hill, and Alinda Hill Wickert—subject to any disclaimers. Doc. 212-2 at 10, ¶ 18. In December 2007, Hill III brought a lawsuit in Texas state court in his individual capacity and on behalf of the MHTE and HHTE against specific beneficiaries of the MHTE and HHTE, including Hill Jr., Hill Jr.'s siblings, and the trustees and members of the advisory boards of the MHTE and HHTE. Among other things, Hill III alleged wrongdoing in the management and administration of the MHTE and HHTE by their respective trustees and violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C § 1961, et seq.  A primary focus of the lawsuit was Hill III's claim to be a current beneficiary of the MHTE pursuant to Hill Jr.'s 2005 Disclaimer. Following removal to federal court on December 3, 2007, the case was randomly assigned to Judge O'Connor.

#### 1. The GSA

Ultimately, Hill III agreed to a settlement of the dispute. On May 13, 2010, the parties entered into the GSA (Doc. 879) that settled this action and related state court actions. *See*

generally *Hill v. Schilling*, 495 F. App'x 480, 482-83 (5th Cir. 2012) (describing genesis of the GSA). In the GSA, Hill III and Erin Hill (individually, as next friends for Movants, and on behalf of Movants, referred to as the "Grandchildren" in the GSA and in the Final Judgment)—agreed to a Waiver of Standing clause pursuant to which they agreed, among other things, to: (1) waive standing to assert any claim or cause of action relating to the trusts at issue in this case unless they were current beneficiaries; and (2) waive standing to assert any claim for actions taken or omitted at any time before they were a current beneficiary. Doc. 879 at 21, § III ¶ 5(b). In the GSA, the parties also stipulated that Hill Jr.'s 2005 Disclaimer was valid. As recently summarized by the Fifth Circuit:

> In exchange for a nine-figure payment and other benefits, Hill III agreed "not to contest the Last Will and Testament of Al Jr. or file any additional action, lawsuit, or legal proceeding challenging the disposition of his property" (the no-contest clause). The parties further "agree[d] that the remedy of specific performance and/or injunctive relief (whether mandatory or by restraint) shall be available for the breach of any term, condition, covenant, or warranty of" the settlement agreement. The parties consented to the district court's continuing jurisdiction over actions to enforce the settlement agreement.

*Hill v. Washburne*, 953 F.3d at 301.[1]

Judge O'Connor appointed a Guardian Ad Litem, Michael Hurst, to represent the Grandchildren's interests with respect to the GSA. *See* Doc. 880. He recommended the court approve the GSA and enter the Final Judgment subject to certain conditions.

---

[1] The Fifth Circuit also recognized in *Hill v. Washburne*, "After 'protracted [and] complicated' litigation, *Hill v. Schilling*, 593 F. App'x 330, 331 (5th Cir. 2014), squabbling over the trusts was supposedly ended by a settlement agreement confected in 2010. Yet, over the next four years, our court 'weighed in on the settlement' four times. *Id.* This appeal makes it five." *Hill v. Washburne*, 953 F.3d 296, 301 (5th Cir. 2020).

2. *The Final Judgment*

On November 8, 2010, Judge O'Connor issued the Final Judgment implementing and memorializing the parties' GSA, which he incorporated by reference into the Final Judgment. Doc. 999. In the Final Judgment, Judge O'Connor agreed with the Guardian Ad Litem that the GSA was in the Grandchildren's best interest and that the GSA and Final Judgment were fair, reasonable, and in the best interest of the parties, including the Grandchildren. Doc. 999 at 5-6, ¶ 4.

Consistent with the GSA, the Final Judgment declared Hill Jr.'s 2005 Disclaimer valid and partitioned portions of the MHTE and the HHTE, as to which Hill Jr. did not disclaim any of his equitable interests, into the Hill Jr. Trusts and, for Hill III's benefit, his one-third interest in the Disclaimed Beneficial Interests, because of the 2005 Disclaimer, were partitioned into the Hill III Trusts.[2] Doc. 999 at 6, ¶ 5; Doc. 999 at 12-13, ¶¶ 8.f.i and 8.f.ii; Doc. 999 at 20, ¶ 8.i; Doc. 999 at 22-23. ¶ 9.c.[3] The Final Judgment provided that all of these trusts (the "New Hunt Trusts") were governed by the 1935 Trust Instruments establishing the MHTE and HHTE. Doc. 999 at 24-25, ¶ 14.

The Final Judgment enforced the agreeing parties' Waiver of Standing provision, whereby each agreeing party, defined to include Hill III and Erin Hill (individually and as next friends for the Grandchildren and on behalf of the Grandchildren), agreed to waive any right to demand

---

[2] These trusts are (1) the MHTE – Albert G. Hill, III Trust, for the benefit of Hill III, and (2) the MHTE – Albert G. Hill Jr. Income Beneficiary / Al III Termination Beneficiary Trust, for the benefit of Hill Jr. during his lifetime and for the benefit of Hill III after Hill Jr.'s death and are referred to herein, collectively, as the "Hill III Trusts."

[3] The Final Judgment also partitioned portions of the MHTE and HHTE into separate trusts for Lyda Hill, who became the sole current beneficiary of separate one-third shares of each of the MHTE and HHTE trusts. Doc. 999 at 7-9, ¶¶ 8.a, 9.a.

**Memorandum Opinion and Order – Page 7**

information, seek accountings, or assert any claim or cause of action in connection with, any trust for the primary benefit of a descendent of Margaret Hunt Hill of which he or she was not a current beneficiary, and to waive any right to assert any claim for actions taken or omitted at any time before they were a current beneficiary:

> **Waiver of Standing**
>
> 28. **IT IS ORDERED that**, pursuant to the Agreement, the Court finds that **during such time as an Agreeing Party is not a current beneficiary of a trust** for the primary benefit of a descendant of Margaret Hunt Hill ("MHH") (an "MHH Trust") and any other descendant of MHH is living, **such Agreeing Party has waived**: (1) his or her **status as an interested person** in such trust, **and (2) all rights that he or she may have** as a future or contingent beneficiary of such trust under the instrument establishing such MHH Trust, under applicable common law, or under applicable state law, **including but not limited to the right to demand information, seek an accounting, or assert any claim or cause of action in connection with any such trust**. . . . IT IS FURTHER ORDERED that, pursuant to the Agreement, the waivers by each Agreeing Party in this paragraph shall not apply to an MHH Trust during any period in which such Agreeing Party **is a current beneficiary** of that MHH Trust, although the waivers in this paragraph shall continue to apply to any actions taken or omitted by any other person or entity during the period that such Agreeing Party **was not a current beneficiary**. For purposes of this paragraph, "current beneficiary" means a person who, at the time a current beneficiary is determined, is then entitled to receive, or is then, in an exercise of discretion by the trustee of such trust, a possible recipient of, income or principal of such trust.

Doc. 999 at 35-36, ¶ 28 (emphasis added).

As the undersigned has held, per the Waiver of Standing clause, each of the parties "agreed to waive his or her standing and right to demand information, seek accountings, or assert any claim or cause of action in connection with any trust for the primary benefit of a descendant of Margaret Hunt Hill of which he or she was not a current beneficiary." Doc. 1883 at 6 (July 3, 2018 Memorandum Opinion and Order).

As part of the Final Judgment, the court, incorporating the No Contest Clause from the GSA, ordered Hill III and Erin Hill (in all their capacities) and the Grandchildren not to contest Hill Jr.'s will or challenge the disposition of his property:

> IT IS ORDERED that Al III (in all capacities), Erin [Hill] (in all her capacities), the Grandchildren, and all of their descendants and heirs shall not contest the Last Will and Testament of Al Jr., or file any additional action, lawsuit, or legal proceeding challenging the disposition of Al Jr.'s property.

Doc. 999 at 36, ¶ 29.

Finally, consistent with the Settlement Agreement, Judge O'Connor retained continuing jurisdiction over the implementation and enforcement of the Final Judgment.[4] On October 2, 2013, this matter was reassigned to the undersigned following the recusal of Judge O'Connor (who had presided over the matter for approximately seven years), which was followed by the recusals of Judges Lynn, Solis, Godbey, Boyle, Fitzwater, and Kinkeade.

**D. Hill Jr.'s Will and the Dissolution of the Hill Jr. Trusts**

On December 20, 2014, Hill Jr. executed his Will, in which he exercised powers of appointment over the Hill Jr. Trusts in favor of the Al G. Hill, Jr. Charitable Lead Annuity Trust created under Article IV of The Al G. Hill, Jr. Family Trust. Doc. 1883 at 8 (July 3, 2018 Memorandum Opinion and Order). On or about December 13, 2016, the Trustees and the Advisory Board Members of the Hill Jr. Trusts voluntarily dissolved the Hill Jr. Trusts. Doc. 1883 at 9 (July 3, 2018 Memorandum Opinion and Order).

On December 2, 2017, Hill Jr. passed away. On December 7, 2017, an Application for Probate of Will and Issuance of Letters Testamentary was filed in the case styled *Estate of Albert*

---

[4] Hill III appealed the Final Judgment challenging, among other things, the addition of provisions that were not part of the GSA. The Fifth Circuit affirmed the Final Judgment. *See Hill v. Schilling*, 495 F. App'x 480 (5th Cir. 2012) (consolidated appeal).

**Memorandum Opinion and Order – Page 9**

*Galatyn Hill, Jr.*, Deceased, in Cause No. PR-17-04117-2, Probate Court No. 2, Dallas County, Texas, seeking to admit the Will to probate, and to appoint an independent executor. "On December 22, 2017, Hill III entered the probate proceedings, challenging the terms of the will that appointed executors to [the Hill Jr. Trusts]." *Hill v. Washburne*, 953 F.3d at 302. On June 15, 2018, the Probate Court severed many of Hill III's claims into a separate proceeding styled Cause No. PR-18-02074-2. The severed claims are the same claims the Grandchildren assert in their Motion to Enforce, and the same as those raised in the 3634 Action, challenging whether Hill Jr. had the powers of appointment he exercised in his Will and whether the Trustees and Advisory Board members had the power to dissolve the trusts in 2016.

On May 29, 2018, Washburne and Summers filed a motion seeking to enjoin Hill III from (1) contesting the Will, (2) challenging the disposition of Hill Jr.'s property in violation of the No Contest Clause, and (3) violating the GSA and the Final Judgment by asserting claims concerning the Hill Jr. Trusts because he was not a current beneficiary. *See* Doc. 1876. Also, on May 29, 2018, Hill III filed his own motion to enforce the GSA and Final Judgment, contending that the Hill Jr. Trusts that were supposed to be preserved by the Final Judgment had been prematurely and unlawfully terminated by Hill Jr. and his cohorts, thereby destroying the valuable inheritance of Hill III and his descendants, from the H.L. Hunt family, estimated to be worth in excess of $1 billion. *See* Doc. 1877. Hill III challenged both Hill Jr.'s exercise of his powers of appointment in his Will in 2014 and the subsequent dissolution of the trusts in 2016. *Id.* Hill III sought an injunction to preserve the assets of the Hill Jr. Trusts and the Lyda Hill Trusts, and to prevent dissipation, concealment, and further transfer of such assets, and preservation of all records relating to such trusts and actions affecting them. *Id.*

On July 3, 2018, the court denied the requests for injunctive relief of both parties without prejudice, holding any relief would be "premature" because of the pending severed probate proceedings, in which the parties were litigating the same issues. Doc. 1883 at 2 (July 3, 2018 Memorandum Opinion and Order).

On September 12, 2018, Washburne and Summers filed another Emergency Motion to Enforce the Final Judgment and Settlement Agreement, and Application for Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction after Hill III took additional actions in the Probate Court challenging Hill Jr.'s Will and the disposition of his property. Doc. 1884. The court granted the motion (*see* Doc. 1919), and the Fifth Circuit affirmed. *Hill v. Washburne*, 953 F.3d at 310.

In November 2018, the parties filed competing summary judgment motions in Probate Court No. 2 regarding Hill Jr.'s Powers of Appointment. After the Probate Court had conducted hearings on those motions, Hill III nonsuited his claims without prejudice.

On December 11, 2020, the Grandchildren filed their Motion for Leave, once again seeking to assert the same claims as Hill III in the Probate Court and in this court based on the 2016 dissolution of the Hill Jr. Trusts. The next day, Hill III and Erin Hill filed the 3634 Action, on behalf of themselves and the Grandchildren, asserting many of the same claims made by the Grandchildren in their Motion for Leave.

## II. Analysis

In their Motion for Leave and attached Motion to Enforce, the Grandchildren argue that the Hill Jr. Trusts were "wrongful[ly] terminat[ed]," and they seek an order "restoring the Hill Jr. Trusts" and returning all assets wrongfully distributed to the Hill Jr. Trusts. Mot. to Enforce ¶ 1, Doc. 2003-1. They also seek the imposition of a constructive trust over the "wrongfully distributed

**Memorandum Opinion and Order – Page 11**

assets." *Id.* In addition, they request an accounting and damages for an alleged breach of fiduciary duty by Donnally and Tatham relating to The Single Fund Grandchildren's Trust. Brief in Support of Mot. to Enforce 22-23, Doc. 2003-2.

In opposition, Respondents contend:

(1) Movants have not argued or shown good cause why the Court should grant them leave to file their Motion to Enforce pursuant to this Court's Order (ECF 1789);

(2) Movants are not "Current Beneficiaries" of the trusts at issue, and therefore, do not have standing under the [GSA] (ECF 879), or the Final Judgment (ECF 999), to assert any claims relating to the [Hill Jr. Trusts];

(3) Movants improperly attempt to assert claims (i.e., a new lawsuit) against non-parties Donnally and Tatham in this closed civil action when neither of them are named as "Agreeing Parties" or "Additional Parties" in the GSA or the Final Judgment; and

(4) Movants' Motion to Enforce is inappropriate because it is duplicative of Hill III's and Erin [Hill]'s claims in [the 3634 Action].

Resp. to Mot. for Leave 1, Doc. 2008. In their reply brief, the Grandchildren urge the court to reject Respondents' arguments. *See* Reply, Doc. 2009. For the reasons that follow, the court will deny the Grandchildren's Motion for Leave.

### A. The Court's "Good Cause" Requirement

On November 2, 2017, the court issued an order stating: "Absent leave of court and good cause shown, no further filings are permitted in this civil action." Doc. 1789. In response to the Motion for Leave, Respondents contend that the Grandchildren have failed "to request leave to file their Motion to Enforce or to show good cause why the Court should grant the next generation of Hill III's family leave to file their Motion to Enforce and begin litigating in this 13-year-old closed civil action." Resp. to Mot. for Leave 8, Doc. 2008. In their reply brief, the Grandchildren maintain that Respondents' argument is "bizarre[,]" that the notion they did not seek leave is

"farcical," and that "[n]othing screams 'good cause' louder than a deliberate breach of the GSA, deliberate defiance of and violation of this Court's [Final Judgment], and the breach of fiduciary duties and trust by wrongfully terminating the MHTE-Al Hill Jr. Trust and HHTE-Al Hill Jr. Trust." Reply 2, Doc. 2009. According to the Grandchildren: "Respondents' inability to see 'good cause' staring them in the face does not mean it does not exist." *Id.* For the reasons that follow, the court agrees with Respondents and concludes that, although the Grandchildren filed a Motion for Leave, it does not comply with the letter or spirit of the court's November 2, 2017 Order.

First, in the Motion for Leave, the Grandchildren seek leave to file their "Motion, Brief, and Appendix, under seal, because the Brief, into which the Motion and the Appendix[] are incorporated, references and quotes from the documents that are filed with this Court under seal. Specifically, the Brief references . . . the [GSA] and the Court's Final Judgment." Motion for Leave ¶ 1. Based on this verbiage, the court finds the Motion for Leave is not responsive to the court's November 2, 2017 Order, issued to control the proliferation of filings in this closed case. Rather, it appears the Grandchildren are seeking leave of court only because they wish to file their documents under seal.

Second, the Motion for Leave fails to address the "good cause" requirement. The term "good cause" is not even mentioned in the Motion for Leave. The Grandchildren do not mention "good cause" until their reply brief, in which they colorfully assert that "[n]othing screams 'good cause' louder than a deliberate breach of the GSA," and that "Respondents' inability to see 'good cause' staring them in the face does not mean it does not exist." Reply 2, Doc. 2009. The Grandchildren's belief that "good cause" should be obvious, however sincerely held, is not the same as demonstrating "good cause" in an opening brief, as required by the court in its November 2, 2017 Order.

**Memorandum Opinion and Order – Page 13**

In addition, as the court has recognized, "Generally, arguments made for the first time in a reply are not appropriate for consideration." *Leeuw v. Kroger Texas, L.P.*, No. 3:19-CV-1771-L, 2021 WL 4295405, at *4 (N.D. Tex. Sept. 21, 2021) (citing *Perez v. Bruister*, 823 F.3d 250, 273 n.31 (5th Cir. 2016) ("This court will not consider arguments raised for the first time in a reply brief.")); *see also AAR, Inc. v. Nunez*, 408 F. App'x 828, 830 (5th Cir. 2011) ("Generally, and for obvious reasons, a reply brief is limited to addressing matters presented by appellant's opening brief and by appellee's response brief, and is not the appropriate vehicle for presenting new arguments or legal theories to the court.") (internal quotation marks and citation omitted).

For these reasons, the court concludes that the Grandchildren have failed to comply with its November 2, 2017 Order (Doc 1789), requiring any party seeking relief to file a motion for leave in which he or she shows good cause for filing yet another motion in this closed case. Because the Grandchildren failed to comply with this Order, and made no attempt to show good cause in their opening brief, the court **denies** the Motion for Leave.

### B. Standing

Alternatively, even assuming the Grandchildren complied with the court's November 2, 2017 Order, the court denies their Motion for Leave because they have failed to satisfy the requirement of standing.

"Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id.* (citations omitted). "The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). "The party invoking

federal jurisdiction bears the burden of establishing" that he, she, or it has standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Constitutional standing is assessed at the time a plaintiff commences an action. *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 460 (5th Cir. 2005).

To satisfy the "irreducible constitutional minimum" of standing under Article III, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338 (quoting *Lujan*, 504 U.S. at 560).

To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. As the parties seeking relief, the Grandchildren have the burden of demonstrating they have standing to assert their claims, meaning they must establish they are current beneficiaries of the Hill Jr. Trusts. *See Singh v. RadioShack Corp.*, 882 F.3d 137, 150-51 (5th Cir. 2018) ("Under Article III of the Constitution, plaintiffs seeking redress in federal court have the burden of proving they have standing, meaning they are entitled to have the court decide the merits of the dispute or of particular issues.") (internal citations, footnotes, and quotation marks omitted).

Here, even assuming, *arguendo*, that Hill Jr. improperly exercised powers of appointment over the Hill Jr. Trusts in his Will and that the trusts were not dissolved in 2016, the Grandchildren would not be "current beneficiaries" of the Hill Jr. Trusts and, under Section III Paragraph 5(B) of the GSA (Doc. 879) and Paragraph 28 of the Final Judgment (Doc. 999), by definition, they would lack standing. This is because their father, Hill III, is still alive. As previously stated, *see supra* at 4, under the 1935 Trust Instruments,

**Memorandum Opinion and Order – Page 15**

> At the time of the death of the Beneficiary, her [or his] equitable interest in said Trust Estate, unless disposed of otherwise by said Beneficiary, shall pass to and vest in her [or his] heirs in accordance with the laws of descent and distribution then in force, applicable to the equitable interest of such Beneficiary and said Trust Estate. (The term "Beneficiary" applies not only to [Margaret Hunt or Haroldson L. Hunt, based on the language of the specific trust] but to all her [or his] successors to beneficial interests under this Trust.)")

Grandchildren's App. at 7 (Art. III § 3 (MHTE)) and at 17 (Art. III § 3 (HHTE)).

Thus, upon Hill Jr.'s death, under the laws of descent and distribution, Hill Jr.'s then-living children (Hill III, Washburne, and Summers) would have become the current beneficiaries of the Hill Jr. Trusts. Because Hill III is still living, the Grandchildren would not qualify as current beneficiaries and, therefore, would not have standing under the terms of the GSA and Final Judgment.

The court also rejects the Grandchildren's attempt to couch their challenge to the 2016 dissolution of the Hill Jr. Trusts as a violation of the GSA and the Final Judgment, rather than as a claim for a breach of the 1935 Trust Instruments. As previously explained, *see supra* at 7, Judge O'Connor in the Final Judgment expressly stated that the New Hunt Trusts, which includes the Hill Jr. Trusts, were governed by the 1935 Trust Instruments establishing the MHTE and HHTE. Doc. 999 at 24-25, ¶ 14. As with the 3634 Action and Hill Jr.'s claims in the Probate Court, this dispute is essentially a claim for breach of the 1935 Trust Instruments. The court does not read the GSA or Final Judgment as modifying the 1935 Trust Instruments.

For these reasons, in the alternative to denying the Motion for Leave for failure to show "good cause," the court denies the Motion for Leave because the Grandchildren have failed to establish they have standing to assert their challenge to the 2016 dissolution of the Hill Jr. Trusts. The court also agrees with Respondents that, as the Grandchildren's Motion for Leave is, in many key respects, duplicative of the 3634 Action filed by their parents, they should not be permitted to

**Memorandum Opinion and Order – Page 16**

waste scarce judicial resources and use the Motion for Leave as a backup plan, should their parents' lawsuit fail, which it has. *See* Mem. Op. & Order, Doc. 39 in Civil Action No. 3:20-cv-3634-L (dismissing with prejudice all claims by Hill III and Erin Hill, on their own behalf and on behalf of the Grandchildren, challenging the dissolution of the Hill Jr. Trusts).[5]

### C. Potential Claims Relating to the Single Fund Grandchildren's Trust Against Donnally and Tatham

In their Motion to Enforce, the Grandchildren also seek an accounting and damages for an alleged breach of fiduciary duty by Donnally and Tatham. The Single Fund Grandchildren's Trust, also known as the "2010 GC Trust," is a stand-alone document created pursuant to the GSA and the Final Judgment. Doc. 999 at 28-29, ¶ 20; Doc. 999-1 at Ex. 6 (trust agreement for the "2010 GC Trust"). Specifically, in the Final Judgment, Judge O'Connor ordered Hill III to set up a trust for his children to receive certain consideration contemplated in the GSA and the Final Judgment. Hill III created the trust, and Hill Jr. was the initial trustee. Doc. 999-1 at Ex. 6.

The Grandchildren contend that, following Hill Jr.'s death on December 2, 2017, there was a vacancy in the office of Trustee and that Donnally and Tatham, the designated "appointers and receivers," have failed to fill the vacancy. Brief in Support of Mot. to Enforce 22-23, Doc. 2003-2. The Grandchildren assert they "have no idea who, if anyone, has been administering the 2010 GC Trust and what has happened to its assets." *Id.* at 23. They seek a full accounting and disclosure

---

[5] Although the Grandchildren are correct that the 3634 Action contained many claims not present in their Motion for Leave, the common theme of the 3634 Action and the Motion for Leave is that the court declare and find wrongful termination/dissolution of the MHTE-Albert G. Hill, Jr. Trust and the HLHTE-Albert G. Hill, Jr. Trust and enter an order enforcing the Final Judgment and restoring the Hill Jr. Trusts and ordering all assets wrongfully distributed immediately returned. For the reasons set forth by the court in its memorandum opinion and order dismissing the 3634 Action, *see* Doc. 39 in Civil Action No. 3:20-cv-3634-L, the Grandchildren's claims pertaining to the alleged wrongful termination/dissolution of the Hill Jr. Trusts also fail. Accordingly, on this basis, as well as those previously noted, the Grandchildren cannot establish good cause to file their Motion for Leave.

**Memorandum Opinion and Order – Page 17**

of all transactions and contend that Donnally's and Tatham's failure to appoint a successor trustee is a breach of their fiduciary duty owed to them and "has exposed the trust assets to a substantial risk of loss." *Id.* They request that the court

> order an accounting in relation to the 2010 GC Trust, award damages for breach of fiduciary duty against Donnally and Tatham for failing to fill the vacancy in the office of the 2010 GC Trust and for all losses incurred and, if the "removers and appointers" will not do their job, appoint a new trustee to fill that vacancy and serve in that capacity.

*Id.*

In opposition, Respondents contend that Donnally and Tatham are not parties to this lawsuit, or "Agreeing Parties" or "Additional Parties" in the GSA or Final Judgment. Resp. to Mot. for Leave 12, Doc. 2008. They maintain that the Grandchildren are attempting to assert a new lawsuit against Donnally and Tatham within this civil action. *Id.*

The court has reviewed the docket sheet in this civil action. Donnally is listed on the docket sheet as a "Trustee." Tatham is not listed on the docket sheet in any capacity. As the Grandchildren correctly point out in their reply brief, however, Donnally and Tatham have filed numerous pleadings in the matter following entry of the Final Judgment. Reply 7, Doc. 2009 and notes 13 and 14. In their reply brief, the Grandchildren also suggest that, in the event the court finds this case to be closed to future filings and that the Grandchildren should not be permitted to pursue their claims against Donnally and Tatham in this action, the court should sever their claims against Donnally and Tatham into a new cause. *Id.* at 9.

The court agrees with the Grandchildren that "An integral part of the GSA and [Final Judgment] was the establishment of the 2010 GC Trust, and Donnally and Tatham accepted their position as 'Appointers and Removers' of the Trustee of the 2010 GC Trust." *See id.* at 7. If, as the Grandchildren contend, Donnally and Tatham have left the position of Trustee vacant for

**Memorandum Opinion and Order – Page 18**

several years, an inquiry is in order as to the time period the 2010 GC Trust has been without a Trustee and into whether Donnally and Tatham breached their fiduciary duties by failing to appoint a Trustee under the standard required by the Final Judgment.

Given that sixteen months have passed since the Grandchildren filed their Motion for Leave, the court has concerns that the matters presented with regard to the administration of the 2010 GC Trust may be moot. Accordingly, the court will deny the Grandchildren's requested relief without prejudice. Should the Grandchildren wish to pursue their claims against Donnally and Tatham arising from their respective positions as "Appointers and Removers" of the Trustee of the 2010 GC Trust, they must show that both Donnally and Tatham are parties to this lawsuit and that any purported claims are ripe for consideration.

### III.   Conclusion

Based on the foregoing, the court **denies** the Grandchildren's Motion for Leave to File Their Motion to Enforce Final Judgment and Global Settlement Agreement and for Other Relief (Doc. 2003). Specifically, insofar as the Grandchildren seek to challenge the 2016 dissolution of the Hill Jr. Trusts following the death of Hill Jr. and request the imposition of a constructive trust on the wrongfully distributed assets, the court **denies** the Motion for Leave **with prejudice**. Insofar as the Grandchildren seek an accounting and damages for an alleged breach of fiduciary duty by Donnally and Tatham, the court **denies** the Motion for Leave **without prejudice**.

**It is so ordered** this 13th day of April, 2022.

_Sam A. Lindsay_
Sam A. Lindsay
United States District Judge