IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **ALBERT G. HILL, III, individually and** | § | |
| **as a Beneficiary of the Margaret Hunt** | § | |
| **Trust Estate, derivatively on behalf of the** | § | |
| **Margaret Hunt Trust Estate, individually** | § | |
| **as a beneficiary of the Haroldson** | § | |
| **Lafayette Hunt, Jr. Estate, and** | § | |
| **derivatively on behalf of the Haroldson** | § | |
| **Lafayette Hunt, Jr. Estate,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:07-CV-2020-L** |
| | § | |
| | § | |
| **WILLIAM SCHILLING, et al.,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Washburne, Summers, and Keliher's ("Movants") Brief in Support of Award of Attorneys' Fees and Costs Pursuant to ECF 1919 (Doc. 1927) ("Brief"), filed on December 21, 2018, and Movants' Supplement to ECF 1927 (Doc. 1935) ("Supplement"), filed on January 4, 2019. In total, Movants seek attorney's fees in the amount of $1,122,029.50 and costs in the amount of $16,594.63. Having considered the legal briefing, evidence, record, and applicable law, and for the reasons stated below, the court **grants** Movants' request for attorney's fees in the amount of $510,979.50 and costs in the amount of $10,359.04. The court **denies** Movants' request for attorney's fees and costs in all other respects.

### I. Factual Background and Procedural History

To resolve Movants' request for attorney's fees and costs, the court must delve, once again, into the details of this family dispute related to trusts formed by Haroldson Lafayette ("H.L.")

Hunt, "the late Texas oil baron reputed to be one of the world's richest men when he died in 1974." *Hill v. Washburne*, 953 F.3d 296, 300 (5th Cir. 2020) (citing *Hill v. Schilling*, 495 F. App'x 480, 482 (5th Cir. 2012) (describing formation of the trusts)). Following the death of Margaret Hunt Hill on June 14, 2007, Plaintiff Albert G. Hill, III ("Mr. Hill III")—grandson of Margaret Hunt Hill and great-grandson of H.L. Hunt—commenced this lawsuit in November 2007 against numerous defendants, including his father, Albert G. Hill, Jr. ("Mr. Hill Jr."), and his two sisters, Heather Hill Washburne ("Ms. Washburne") and Elisa Hill Summers ("Ms. Summers"). The lawsuit involved, among other things, the effectiveness of a partial disclaimer executed by Mr. Hill Jr. with respect to the Margaret Hunt Trust Estate ("MHTE") under which Mr. Hill III would receive a portion of the MHTE following Margaret Hunt Hill's death, and the effectiveness of Mr. Hill Jr.'s revocation of that disclaimer by which Mr. Hill III would not receive any portion of the MHTE.

## A.  The Settlement Agreement and Final Judgment

In May 2010, Mr. Hill III and Mr. Hill Jr., along with the other parties to the lawsuit, entered into a Global Settlement and Mutual Release Agreement ("Settlement Agreement") (Doc. 879). The court incorporated the Settlement Agreement into its Final Judgment entered on November 8, 2010 (Doc. 999). Mr. Hill III received substantial monetary compensation as a result of the Settlement Agreement. In exchange, Mr. Hill III made certain agreements, including that he and his wife, Erin Hill, as well as their children and heirs, would not contest the Last Will and Testament of Mr. Hill Jr. ("Will") or file any action challenging the disposition of his property, as follows:

> (f) No Contest of Al Jr.'s Last Will and Testament: Al III, Erin, the Grandchildren, and all of their descendants and heirs agree not to contest the Last Will and

Testament of Al Jr. or file any additional action, lawsuit, or legal proceeding challenging the disposition of his property.

Settlement Agreement § III(1)(f) (Doc. 879) (the "No Contest Clause"). As part of the Final Judgment, the court, incorporating the "No Contest Clause" from the Settlement Agreement, ordered Mr. Hill III, Erin Hill, their children, as well as their heirs and descendants, not to contest Mr. Hill Jr.'s Will or challenge the disposition of his property:

> IT IS ORDERED that Al III (in all capacities), Erin [Hill] (in all her capacities), the Grandchildren, and all of their descendants and heirs shall not contest the Last Will and Testament of Al Jr., or file any additional action, lawsuit, or legal proceeding challenging the disposition of Al Jr.'s property.

Final J. ¶ 29 (Doc. 999).

### B. Relevant Chronology of Events in the Probate Court and Federal Court Following Mr. Hill Jr.'s Death

On December 2, 2017, Mr. Hill Jr. passed away. On December 7, 2017, the Will was submitted to Probate Court No. 2 in Dallas County, Texas, in Cause No. PR-17-04117-2 (the "probate proceeding") through the named Independent Executor's Application for Probate of Will and Issuance of Letters Testamentary. On December 22, 2017, Mr. Hill III filed his Original Answer in the probate proceeding (the "Original Answer"). The Original Answer contained a denial with respect to most of the allegations in the Application for Probate of Will and Issuance of Letters Testamentary, a request for a declaration that the proposed independent executor be disqualified, and a declaration related to the scope and authority of the executor and whether powers of appointment existed. On April 30, 2018, Mr. Hill III filed his Supplemental Answer and Original Counterclaim in the probate proceeding ("Supplemental Answer"). The Supplemental Answer contained additional allegations with respect to the trusts at issue.

On May 29, 2018, Ms. Washburne and Ms. Summers, joined by Margaret Keliher ("Ms. Keliher"), as Independent Executor of the Estate of Albert J. Hill, Jr., filed an Emergency Motion to Enforce the Final Judgment and the Settlement Agreement, seeking injunctive relief and attorney's fees. *See* Docs. 1876 and 1876-1. They argued that Mr. Hill III was violating the "No Contest Clause" and asserting claims regarding trusts in which he had no standing. They asked the undersigned to enjoin Mr. Hill III from asserting any claims in the probate proceeding. On June 1, 2018, the court denied Movants' request for a temporary restraining order. *Hill v. Schilling*, No. 3:07-CV-2020-L, 2018 WL 2461877 (N.D. Tex. June 1, 2018) (Lindsay, J.) ("*Hill I*"). On July 3, 2018, the court denied the remaining relief sought by Movants, including their request for attorney's fees, because:

> [T]he issue of whether [Mr.] Hill Jr.'s exercise of powers of appointment in his Will was valid is pending before the Probate Court. Further, while the court acknowledges its continuing jurisdiction over the implementation and enforcement of the Settlement Agreement and Final Judgment, it does not intend to engage in duplicative litigation, resulting in potentially conflicting rulings, or risk interfering with the Probate Court's jurisdiction.

*Hill v. Schilling*, No. 3:07-CV-2020-L, 2018 WL 3239795, at *10 (N.D. Tex. July 3, 2018) (Lindsay, J.) ("*Hill II*").

On July 13, 2018, Mr. Hill III filed in the probate proceeding his First Amended Original Answer ("First Amended Answer"). In the First Amended Answer, he raised, for the first time, a number of affirmative defenses including: (1) denying that Mr. Hill Jr. had testamentary capacity; (2) denying that the signature on the Will was authentic; and (3) contesting the independent executor's assertion that the Will was never revoked, modified, or superseded. On September 14, 2018, pointing to Mr. Hill III's First Amended Answer, Ms. Washburne and Ms. Summers filed their Motion to Enforce the Final Judgment and the Settlement Agreement, and Application for

Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction, Based on New Evidence and New Developments in the Probate Court ("Motion to Enforce") (Doc. 1886-1). They argued that, by asserting these new affirmative defenses—challenging Mr. Hill Jr.'s testamentary capacity and whether the signature in the Will was authentic, and whether the alleged Will was revoked, modified, or superseded—Mr. Hill III was now engaged in a "*traditional will contest in the Probate Proceeding*[,]" thereby violating the "No Contest Clause." *See* Mot. to Enforce 3, 7-9 (Doc. 1886-1) (emphasis added). Ms. Keliher joined in Ms. Washburne and Ms. Summers' Motion to Enforce. *See* Doc. 1916.

On September 26, 2018, the court entered an order deferring action on Movants' latest request for an injunction and attorney's fees until after the probate court ruled on a related request made by Ms. Washburne, Ms. Summers, and Ms. Keliher in the probate proceeding. *See* Mem. Op. & Order (Doc. 1888). On October 11, 2018, Judge Ingrid M. Warren, who was presiding over the probate proceeding, signed an Order Sustaining Applicant's Objection to Albert G. Hill, III Contesting the Decedent's Will and a separate Order Admitting Will to Probate and Authorizing Letters Testamentary. On October 25, 2018, Mr. Hill III initiated an appeal of these orders in Texas appellate courts and notified the undersigned of his appeal. *See* Notification to Court (Doc. 1903).

On December 7, 2018, after considering Mr. Hill III's First Amended Answer, and Movants' contention that the First Amended Answer was a new development in the probate proceeding that necessitated the court's exercise of its continuing jurisdiction pursuant to the Final Judgment, the court issued a Memorandum Opinion and Order in which it concluded, among other things, that Mr. Hill III had breached the "No Contest Clause" in the Settlement Agreement, as incorporated into the Final Judgment, by contesting his deceased father's Will in the probate proceeding in his First Amended Answer. *See Hill v. Schilling*, No. 3:07-CV-2020-L, 2018 WL

6436397, at *13 (N.D. Tex. Dec. 7, 2018), *aff'd in part and dismissed in part as moot sub nom.*
*Hill v. Washburne*, 949 F.3d 216 (5th Cir. 2020), *opinion revised and superseded*, 953 F.3d 296
(5th Cir. 2020), and *aff'd in part and dismissed in part as moot sub nom. Hill v. Washburne*, 953
F.3d 296 (5th Cir. 2020) ("*Hill III*"). The court granted the Motion to Enforce; permanently
enjoined Mr. Hill III from contesting his deceased father's Will; ordered him to dismiss his state
court appeals; and awarded Movants, pursuant to the terms of the Settlement Agreement and Final
Judgment, the recovery from Mr. Hill III of "all of their reasonable attorney's fees and costs of
litigation incurred as a result of [Mr.] Hill III's Will Contest in the Probate Court and subsequent
appeal." *Id.* at 15.

On December 10, 2018, Mr. Hill III filed an Emergency Motion to Stay Memorandum
Opinion and Order and Incorporated Brief in Support (Doc. 1921) ("Motion to Stay"), seeking a
stay of the court's enforcement of its permanent injunction pending his anticipated appeal to the
United States Court of Appeals for the Fifth Circuit. The court held a telephonic hearing on
December 13, 2018. On December 20, 2018, the court denied the Motion to Stay; ordered Mr. Hill
III to provide proof that he had complied with its directives in *Hill III*; and directed Movants to
provide it with documentation, including affidavits and invoices, supporting their request for
reasonable attorney's fees and costs by January 4, 2019. *See* Mem. Op. and Order (Doc. 1924).

On January 4, 2019, Mr. Hill III provided the court with a Notice of Compliance,
confirming that, in accordance with its directive in *Hill III*, on January 4, 2019, he "(1) filed in the
Probate Court No. 2, Dallas County, Texas in Cause No. PR-17-041117-2 a Notice of Withdrawal
of 'Will Contest'; and (2) filed in the Texas Fifth Court of Appeals in Cause No. 05-18-01291-CV
a Motion to Dismiss Appeal." Notice of Compliance (Doc. 1934).

**C.  Affirmance by the Fifth Circuit of the Court's Permanent Injunction and Remand for Consideration of Attorney's Fees and Costs Related to Unsuccessful Appeal**

On December 20, 2018, Mr. Hill III appealed the court's decision in *Hill III* and its denial of his Emergency Motion to Stay to the United States Court of Appeals for the Fifth Circuit. *See* Notice of Appeal (Doc. 1925). On March 13, 2020, the Fifth Circuit issued an opinion, among other things, affirming those portions of the court's permanent injunction prohibiting Mr. Hill III from challenging his father's Will in any court; dismissing as moot Mr. Hill III's appeal as to the terms of the court's permanent injunction related to certain probate proceedings; and remanding this matter for the limited purpose of addressing whether Ms. Washburne, Ms. Summers, and Ms. Keliher were entitled to attorney's fees and costs associated with Mr. Hill III's appeal. *See Hill v. Washburne*, 953 F.3d 296, 310 (5th Cir. 2020). On March 24, 2020, the Fifth Circuit issued its judgment as the mandate. *See* Doc. 1992.

On May 3, 2022, the court, on remand, granted Movants' request for attorney's fees and costs (Doc. 1993) for the time period from July 2019 through March 2020 related to Mr. Hill III's unsuccessful appeal of *Hill III* in the Fifth Circuit. *See Hill v. Schilling*, No. 3:07-CV-2020-L, 2022 WL 1321548, at *8 (N.D. Tex. May 3, 2022) ("*Hill IV*"). Specifically, the court awarded Ms. Washburne and Ms. Summers attorney's fees in the amount of $16,797 and costs in the amount of $750.59, and awarded Ms. Keliher attorney's fees in the amount of $107,509.82 and costs in the amount of $1620.02. *Id.* Mr. Hill III appealed the court's decision in *Hill IV*, and on July 1, 2022, the Fifth Circuit dismissed the appeal for want of prosecution. *See* Doc. 2018.

### D.  Movants' Pending Request for Attorney's Fees and Costs

Movants' request for attorney's fees and costs in their Brief (filed December 21, 2018) and Supplement (filed January 4, 2019) remains outstanding.[1]  In their Brief (Doc. 1927), Movants request an award of attorney's fees in the amount of $1,047,136 and costs in the amount $16,594.63 for the time period of December 22, 2017, through December 21, 2018 (which they further break down into three different time periods). In the Supplement (Doc. 1935), Movants request an award of attorney's fees in the amount of $74,893.50 for the time period of December 22, 2018, through January 4, 2019. Ms. Washburne and Ms. Keliher seek their attorney's fees and costs for the legal services of Hallett & Perrin, P.C. ("Hallett & Perrin"). Ms. Keliher, on behalf of the Estate of Albert G. Hill, Jr., seeks attorney's fees and costs for the legal services of three law firms, namely, Gruber Hail Johansen Shank LLP ("Gruber Hail"), Dorsey & Whitney LLP ("Dorsey"), and Bourland, Wall & Wenzel, P.C. ("Bourland, Wall & Wenzel").

Mr. Hill III has filed a brief in opposition to Movants' request (Doc. 1943), and Movants have filed their reply (Doc. 1944).

### II.  Legal Standard

In adjudicating an attorney's fees award, the court first calculates a "lodestar" fee by multiplying the hours expended by reasonable hourly rates. *See Hensley v. Eckerhart*, 461 U.S.

---

[1] On January 8, 2019, the undersigned referred Movants' pending request for attorney's fees and costs in their Brief and Supplement to United States Magistrate Judge Renée Harris Toliver "for hearing, if necessary, and for the United States Magistrate Judge to submit to the court proposed findings and recommendations for disposition of these matters." Amended Order of Reference 1 (Doc. 1940). On August 9, 2022—approximately two months after awarding Movants their attorney's fees and costs in *Hill IV* related to Mr. Hill III's unsuccessful appeal to the Fifth Circuit—to avoid further delay in the resolution of Movants' requests for attorney's fees and costs filed more than three years earlier, the court withdrew the reference to the magistrate judge. *See* Order Withdrawing Amended Order of Reference (Doc. 2020) ("These referred matters remain outstanding. In the interest of justice and to expedite resolution of these matters, the court hereby **withdraws** the reference (Doc. 1940) and **directs** the clerk of court to reflect the withdrawal on the Docket Sheet.") (original emphasis).

**Memorandum Opinion and Order – Page 8**

424, 433 (1983); *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012). The party seeking the fees bears the burden of establishing the number of hours expended by presenting adequate time records as evidence. *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The court should use this time as a benchmark and then exclude any time that is excessive, duplicative, unnecessary, or inadequately documented. *Id.* The hours remaining are those reasonably expended. The applicant bears the burden of establishing a reasonable number of hours expended and proving that billing judgment was exercised. *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006) (citation omitted). "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Id.* (citations omitted); *see also League of United Latin Am. Citizens v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997) ("The district court must eliminate excessive or duplicative time.") (citing *Watkins*, 7 F.3d at 457).

A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. *See Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984). The relevant legal community is the community in which the district court sits. *See Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). The burden is on the movant to "produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates" are reasonable. *Blum*, 465 U.S. at 896 n.11. There is a strong presumption of the reasonableness of the lodestar. *See Saizan*, 448 F.3d at 800.

After calculating the lodestar, the court may either (1) accept it or (2) decrease or enhance it based on the circumstances of the case, taking into account the *Johnson* factors. *See Forbush v. J.C. Penney Co.*, 98 F.3d 817, 821 (5th Cir. 1996). The *Johnson* factors are (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal

**Memorandum Opinion and Order – Page 9**

service properly; (4) the preclusion of other employment by the attorney as a result of taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 718 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 90 (1989).

Although the court can adjust the lodestar upward or downward after assessing the *Johnson* factors, the party seeking the adjustment bears the burden of establishing that an adjustment is warranted. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 329 (5th Cir. 1995) (per curiam) (citation omitted). Many of the *Johnson* factors are "presumably fully reflected in the lodestar amount," and such modifications are proper only in certain "'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings[.]" *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (citing *Blum*, 465 U.S. at 898-901). District courts "need not specifically discuss the *Johnson* factors where [they have] applied the *Johnson* framework." *EEOC v. Agro Distribution, LLC*, 555 F.3d 462, 473 (5th Cir. 2009).

### III. Analysis

In their Brief and Supplement, Movants divide their request for attorney's fees and costs into separate time periods, as illustrated in this chart:

|  | 12/22/17 to 07/12/18 | 7/13/18 to 12/07/18 | 12/08/18 to 12/21/18 | 12/22/18 to 01/04/19 | Totals |
|---|---|---|---|---|---|
| Fees | $464,412.25 | $531,755.75 | $50,968.00 | $74,893.50 | $1,122,029.50 |
| Costs | $6,210.93 | $10,359.04 | $24.66 | $0.00 | $16,594.63 |
|  |  |  |  |  | $1,138,624.13 |

From what the court can discern, Movants base this temporal division on the following events: (1) Mr. Hill III's filing of his Original Answer in the probate proceeding on December 22, 2017; (2) Mr. Hill III's filing of his First Amended Answer in the probate proceeding on July 13, 2018; (3) the court's December 7, 2018 decision in *Hill III* granting permanent injunctive relief and awarding Movants their attorney's fees and costs; and (4) Mr. Hill III's appeal of the court's decision in *Hill III* to the Fifth Circuit, which he initiated on December 22, 2018.

On January 18, 2019, Mr. Hill III filed his opposition to Movants' Brief and Supplement, contending that Movants are not entitled to the full amount of attorney's fees and costs requested because:

> (A) they seek attorneys' fees and costs for time periods not covered by the Court's Order [in *Hill III*]; (B) even in the period covered by the Order, Movants seek fees unrelated to the "Will Contest in the Probate Court and subsequent appeal"; (C) Movants' evidence of attorneys' fees is unreliable and should result in a reduced award because it consists of redacted, block-billed statements and Movants appear to have erred in some calculations; (D) Movants have not shown themselves to be entitled to the legal assistant and paralegal fees they seek; (E) Movants have not shown that they exercised the requisite billing judgment over their fees; and (F) the invoices submitted by Movants indicate that Movants did not themselves "incur" most of the costs they seek to recover.

*See* Al III's Resp. to ECF 1927 and ECF 1935 at 7 (Doc. 1943). According to Mr. Hill III, absent any supplemental evidence provided by Movants, "an amount of $157,498.67 would be the maximum amount of an award reasonable under the circumstances." *Id.* at 3. Along with his Response, Mr. Hill III has filed the Declaration of Emil Lippe, Jr., in Support of Albert G. Hill III's Response to ECF 1927 and ECF 1935 (Doc. 1943-1 at Ex. B). In his Declaration, Mr. Lippe,

who has represented Mr. Hill III in this case and the probate courts of Dallas County, Texas, opines, *inter alia*, that "the attorneys' fees which Movants seek to recover through their Brief and Supplement are neither reasonable nor necessary, and are in fact excessive." Lippe Decl. ¶ 6.

On January 29, 2019, Movants filed their reply brief as well as numerous exhibits responding to Mr. Hill III's contentions. *See* Washburne, Summers, Keliher Reply to ECF 1934 (Doc. 1944); Exs. 1-7 (Doc. 1944-1 though Doc. 1944-7). Movants argue: "True to form, Hill III is over-litigating again with ECF 1943. In fact, his recent pleading shows Hill III has misunderstood ECF 1919 (the "Order"). With ECF 1943, he is again nit-picking at every imaginable point, regardless of merit." Reply 1 (Doc. 1944). Movants also contend in their reply that they have provided "more than adequate evidence for the Court to determine the reasonableness of the attorneys' fees and costs Movants incurred due to Hill III's prohibited Will Contest[.]" *Id.* Movants also filed objections to Mr. Lippe's Declaration. *See* Obj. to the Decl. of Emil Lippe, Jr., in Support of Albert G. Hill III's Resp. to ECF 1927 and ECF 1935 (Doc. 1944-4) ("Movants' Objections").

### A. Movants' Objections to Mr. Lippe's Declaration and Mr. Hill III's Objections and Requested Deductions

Before determining the amount of reasonable attorney's fees and costs of litigation, the court must address the threshold matters of (1) Movants' Objections to Mr. Lippe's Declaration, and (2) Mr. Hill III's objections to the fees sought and his request for reductions.

### 1. Movants' Objections to Mr. Lippe's Declaration

#### a. *Movants' Objection No. 1*

In his Declaration, Mr. Lippe states that the fees sought by Movants are unreasonable, unnecessary, and excessive. Decl. of Mr. Lippe ¶ 6 (Doc. 1943-1 at 87 ¶ 6) (contending that the

entirety of the fees sought "are neither reasonable nor necessary, and are in fact excessive.").

Movants object.[2] In support, they argue:

> Mr. Lippe summarily pronounces the entirety of the fees sought by Movants to be unreasonable, unnecessary, and excessive without explaining the method by which he reached this opinion. The Lippe Declaration contains no discussion at all of the factors for determining the reasonableness of attorneys' fees identified in the Fifth Circuit's decision in *Johnson v. Georgia Highway Express, Inc.*, 448 F.2d 714 (5th Cir. 1974), the Supreme Court of Texas' decision in *Arthur Andersen & Company v. Perry Equipment Corporation*, 945 S.W.2d 812 (Tex. 1997), or Rule 1.04 of the Texas Disciplinary Rules of Professional Conduct, or the application of any such factors to the fees requested by Movants. Mr. Lippe pronounces the fees to be excessive based on nothing more than his say so.

Movants' Obj. No. 1 (Doc. 1944-4). Mr. Hill III did not file a response to Movants' Objections.

Because Mr. Lippe is offering his expert opinion concerning the reasonableness of the amount of attorney's fees sought by Movants, the court finds that the admissibility of his opinion should be evaluated pursuant to Rule 702 of the Federal Rules of Evidence, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Thus, "expert testimony is admissible only if it is both relevant and reliable."

*Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir.2002). Furthermore, Rule 702 requires that an expert be qualified to offer testimony by virtue of his "knowledge, skill, experience, training or

---

[2] The paragraphs in Mr. Lippe's Declaration are numbered incorrectly and include two instances of a paragraph 6 and two instances of paragraph 7. As such, Movants refer to their objection to the first instance of paragraph 6 as an objection to the "first paragraph 6" and refer to their objection to the second instance of paragraph 6 as an objection to the "second paragraph 6." Movants treat the two instances of paragraph 7 similarly. For ease of reference, the court uses the same terminology.

**Memorandum Opinion and Order – Page 13**

education." The trial court acts as a "gatekeeper" to ensure that "any and all scientific evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). "*Daubert*'s general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge" that is non-scientific in nature. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). In *Kumho Tire,* the Supreme Court resolved a split among the circuits and held that *Daubert*'s "gatekeeping" function applied to all expert opinion testimony based on specialized knowledge, not merely scientific expert testimony.

The Advisory Committee's Notes to Rule 702 contemplate that expert testimony may be based on experience, training, or both:

> Nothing in this amendment is intended to suggest that experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide a sufficient foundation for expert testimony. To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony. *See, e.g., United States v. Jones*, 107 F.3d 1147 (6th Cir. 1997) (no abuse of discretion in admitting the testimony of a handwriting examiner who had years of practical experience and extensive training, and who explained his methodology in detail); *Tassin v. Sears Roebuck*, 946 F. Supp. 1241, 1248 (M.D. La. 1996) (design engineer's testimony can be admissible when the expert's opinions "are based on facts, a reasonable investigation, and traditional technical/mechanical expertise, and he provides a reasonable link between the information and procedures he uses and the conclusions he reaches"). *See also Kumho Tire Co. v. Carmichael*, 119 S. Ct. 1167, 1178 (1999) (stating that "no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.").

Fed. R. Evid. 702 Advisory Committee's Notes (2000 Amendments).

The Advisory Committee's Notes to Rule 702 further explain: "If the witness is relying solely or primarily on experience, then [he or she] must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that

**Memorandum Opinion and Order – Page 14**

experience is reliably applied to the facts." *Id.* This is because the "trial court's gatekeeping function requires more than simply taking the expert's word for it" that the claimed basis supports the opinion. *Id.* (citation and internal quotation marks omitted); *Pipitone*, 288 F.3d at 245-47 (finding expert testimony reliable when the expert explained how his experience in the field led him to opine that an absence of contamination of some samples did not undermine his conclusion that the plaintiff's infection came from the same drug). Overall, the trial court must strive to ensure that the expert, "whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152. As stated earlier, the relevance and reliability of expert testimony turn upon its nature and the purpose for which its proponent offers the testimony. *See, e.g., Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 195 (5th Cir. 2006) ("Of course, whether a proposed expert should be permitted to testify is case, and fact, specific.") (citing *Kumho Tire*, 526 U.S. at 150-51).

To begin, Movants do not dispute that Mr. Lippe is qualified to testify as an expert on attorney's fees. Instead, Movants dispute whether his opinion set forth in his Declaration satisfies Rule 702(b)-(d). Movants take issue with the underlying facts or data (which are absent from Mr. Lippe's Declaration) and the reliability of any methodology Mr. Lippe used to derive his conclusion that the attorney's fees sought are unreasonable and excessive in their entirety.

Here, a review of Mr. Lippe's Declaration, submitted as Exhibit "B" to Mr. Hill III's response, in which he sets forth his experience and qualifications as an attorney licensed to practice law in the State of Texas and admitted to practice in many judicial district courts, shows that Mr. Lippe is sufficiently qualified to render opinions regarding the reasonableness of attorney's fees. *See Primrose Operating Co. v. National Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) ("[T]he

fair and reasonable compensation for the professional services of a lawyer can certainly be ascertained by the opinion of members of the bar who have become familiar through experience and practice with the character of such services.") Movants' argument that Mr. Lippe's opinion is not supported by any legal authority, data, or methodology, however, is well taken. For example, Mr. Lippe provides no information regarding what he considers to be a reasonable value of the legal services provided by Movants' counsel or how he would calculate the prevailing rate for these legal services in the Dallas legal community. He fails to provide a sufficient factual basis for his opinion, fails to sufficiently explain his methodologies, and has not set forth the documents he has used in formulating his opinions. *See* Fed. R. Evid. 702 Advisory Committee's Notes, 2000 Amendments ("If the opinion is based solely or primarily on experience, the witness must connect the experience to the conclusion offered, must explain why the experience is a sufficient basis for the opinion, and must demonstrate the appropriateness of the application of the experience to the facts."). Although the court recognizes Mr. Lippe's many years of experience, given the conclusory and summary nature of his opinions, the court determines that his opinions as to the reasonableness of attorney's fees sought by Movants are not based on supporting facts or reliable methodologies. Moreover, he does not explain how or why his experience leads to the opinions or conclusions reached.

In addition, even assuming, *arguendo*, that his three examples of excessive or unreasonable fees are correct (which the court questions), such limited examples cannot substantiate Mr. Lippe's blanket conclusion that the entirety of the fees sought "are neither reasonable nor necessary, and are in fact excessive." Decl. of Mr. Lippe ¶ 6 (Doc. 1943-1 at 87 ¶ 6).

Accordingly, the court **sustains** Movants' Objection No. 1.

### b. *Movants' Objection No. 2*

Mr. Lippe states that: (a) Movants have made "heavy, and in some instances, complete redactions"; (b) the time entries submitted are "vague"; or (c) the redactions, block-billing, and alleged vagueness "make it impossible to properly evaluate the reasonableness or necessity of the work for which Movants[] seek to recover." Decl. of Mr. Lippe ¶ 6 (Doc. 1943-1 at 87 ¶ 6). Movants object to this statement "because it is vague, conclusory, fails to set forth sufficient facts upon which Mr. Lippe's opinion is based, and fails to demonstrate that Mr. Lippe's opinion is the product of reliable principles and methods." Movants' Obj. No. 2 (Doc. 1944-4).

The court has the relevant billing records before it and is able to evaluate the records. Whether redactions are present or whether time entries are vague is not a subject requiring expert testimony. The court, therefore, **sustains** Movants' Objection No. 2.

### c. *Movants' Objection No. 3*

Mr. Lippe states that the redactions "mak[e] it impossible to determine just what legal services were allegedly rendered." Decl. of Mr. Lippe ¶ 6 (Doc. 1943-1 at 87 ¶ 6). Movants object because this statement "is vague, conclusory, fails to set forth sufficient facts upon which Mr. Lippe's opinion is based, and fails to demonstrate that Mr. Lippe's opinion is the product of reliable principles and methods." Movants' Obj. No. 3 (Doc. 1944-4). They also argue that "Mr. Lippe fails to identify any specific redactions about which he complains or how any such redactions 'mak[e] it impossible to determine just what legal services were allegedly rendered.'" *Id.*

The court agrees that Mr. Lippe's statements are vague and conclusory. In addition, he does not identify specific redactions. The court is under no obligation to scour the record to find redactions, as it is Mr. Hill III's burden to ensure that Mr. Lippe identifies the examples of redactions that support his opinion. Accordingly, the court **sustains** Movants' Objection No. 3.

#### d. *Movants' Objection No. 4*

Mr. Lippe states that "some examples of unnecessary and unreasonable work are evident. For instance, Movants' counsel apparently spent approximately 30 hours of legal research for purposes of a motion to compel discovery during the July 6-9, 2018 period. *See* Ex. C-10 to Brief." Decl. of Mr. Lippe ¶ 7 (Doc. 1943-1 at 87 ¶ 7). He further asserts that, "[i]n my opinion, this is an excessive number of hours to spend on a short motion[] and is not a credible amount to charge for the work done." *Id.*

Movants object to this statement "because it is conclusory, fails to set forth sufficient facts upon which Mr. Lippe's opinion is based, and fails to demonstrate that Mr. Lippe's opinion is the product of reliable principles and methods." Movants' Obj. No. 4 (Doc. 1944-4). Movants also refer the court to Exhibit 3 to their reply (Doc. 1944-3), in which they explain that Mr. Lippe's statement that Movants' counsel spent "approximately 30 hours of legal research for purposes of a motion to compel discovery during the July 6-9, 2018 period" is inaccurate and unsupported by the time entries. *Id.* Movants also object to Mr. Lippe's statement that the motion to compel discovery was "a short motion." They argue:

> The Motion for Sanctions and, Alternatively, Motion to Compel Discovery was a 29-page motion with 173 pages of exhibits that was made necessary by [Mr.] Hill III's extensive objections to discovery requests served on him in the Will Contest in an effort to discover the bases for [Mr.] Hill III's contest of [Mr.] Hill Jr.'s [W]ill in order to prepare for trial on [Mr.] Hill III's prohibited Will Contest, as well as [Mr.] Hill III's failure to provide substantive responses to that discovery. As a result of that Motion, on August 7, 2018, the Probate Court overruled [Mr.] Hill III's objections to the discovery propounded on him and compelled him to provide full and complete responses and to produce the documents requested. The time spent by counsel on that motion was reasonable and necessary based on [Mr.] Hill III's refusal to comply with discovery requests. Mr. Lippe has failed to provide any reasoning behind his bald assertion that it was excessive or to point out what he contends would be a reasonable or "credible" amount of time to spend on the motion to compel.

Ex. 3 to Movants' Reply (Doc. 1944-3 at 1).

Having considered Mr. Lippe's Declaration, Movants' Objections, and Exhibit 3 to Movants' reply, the court agrees with Movants. First, the record does not support Mr. Lippe's assertion that counsel for Ms. Keliher "spent approximately 30 hours of legal research" during the period from July 6-9, 2018. From July 6, 2018, to July 9, 2018, there are only three entries that include legal research, which are entries by David J. Goodman ("Mr. Goodman") on July 6, 7, and 9, respectively. Even were the court to assume that the entire time listed in those entries is attributable to legal research, they add up to 14.25 hours. In addition, as legal research is only one of several other tasks included in each of those entries, it is likely that the amount of time Mr. Goodman spent on legal research was less than 14.25 hours.

The court also concludes, based on Exhibit 3 to Movants' reply and its review of the record, that Mr. Lippe's description of the "motion to compel" as a "short motion" is misleading and hyperbolic rhetoric. As the court has been dealing with this action for over nine years, it takes judicial notice that nothing substantive in this action has been "short." The Motion for Sanctions and, Alternatively, Motion to Compel Discovery was a 29-page motion with 173 pages of exhibits. In addition, his related argument that the fees associated with the "motion to compel" are excessive is conclusory and fails to take into account that the motion to compel was a 29-page motion with 173 pages of exhibits that was made necessary by Mr. Hill III's extensive objections to discovery requests served on him in the Will contest.

After a careful review of the billing entries and the record pertaining to the Motion for Sanctions and, Alternatively, Motion to Compel Discovery, the court agrees with Movants that Mr. Lippe's opinion regarding Movants' motion is based on inaccurate assumptions and is unsupported by the record. The court, therefore, **sustains** Movants' Objection No. 4.

**Memorandum Opinion and Order – Page 19**

### e.   Movants' Objection No. 5

In his Declaration, Mr. Lippe asserts "that counsel apparently spent approximately 65 hours of legal research for purposes of a brief filed with the Federal Court. See Ex. A-14, A-15, A-16 and A-17 to Brief."  Decl. of Mr. Lippe ¶ 6 (Doc. 1943-1 at 87 ¶ 6). He states: "In my opinion, especially because much of this research had been previously done in earlier filings, and the issues involved were not that complex, this is an excessive number of hours to spend on legal research[] and is not a credible amount to charge for the work done." *Id.*

Movants object to the second paragraph 6 in Mr. Lippe's Declaration. They argue this statement "is vague, conclusory, fails to set forth sufficient facts upon which Mr. Lippe's opinion is based, and fails to demonstrate that Mr. Lippe's opinion is the product of reliable principles and methods." Movants' Obj. No. 5 (Doc. 1944-4). They further contend that:

> Mr. Lippe fails to identify the specific time entries about which he is complaining or how he calculated the 65-hour figure. He also fails to identify the specific research "that had been previously done in earlier filings" or the specific "earlier filings" to which he refers. Further, Mr. Lippe fails to explain why the amount of time spent is "excessive" and not "credible," or what a reasonable or "credible" amount of time would have been.

*Id.*

In his criticism in the second paragraph 6 of his Declaration, Mr. Lippe cites to four different invoices from Hallett & Perrin—Exhibit A-14, Exhibit A-15, Exhibit A-16, and Exhibit A-17—pertaining to several briefs filed with the federal court over a four-month period (August 2018 through November 2018). Mr. Lippe, however, does not note the time entries to which he is referring in the four different invoices, or the research pertaining to which brief forms the basis of his statement. As such, the court is unable to determine exactly which research supports his statement or how he calculated the 65-hour figure.

For these reasons, the court concludes that Mr. Lippe's averments—that an excessive number of hours was spent on legal research that had been done previously on issues that were not complex—are too vague and conclusory for the court to assess their accuracy. As previously stated, the court is under no duty to comb through the voluminous record for billing entries that might support Mr. Lippe's contentions. The court, therefore, **sustains** Movants' Objection No. 5.

### f.   *Movants' Objection No. 6*

In his Declaration, Mr. Lippe states that, as "a further example [of billing excessive hours], much of Tom Dees' billings appear to have consisted of reviewing the work done by others at his firm or from another firm. See Ex. A-9, A-10, A-11, A-12, and A-13 to Brief. In my opinion this represents an unnecessary duplication and is, accordingly, not reasonable." Decl. of Mr. Lippe ¶ 7 (Doc. 1943-1 at 87 ¶ 7).

Movants object to the second paragraph 7 of Mr. Lippe's Declaration because it is vague, conclusory, fails to set forth sufficient facts upon which Mr. Lippe's opinion is based, and fails to demonstrate that Mr. Lippe's opinion is the product of reliable principles and methods. They further contend:

> Mr. Lippe fails to identify the specific time entries about which he is complaining; rather, he cites generally to all of Tom Dees' time entries from July 2018 through November 2018. Mr. Lippe also fails to identify "the work done by others at [Mr. Dees'] firm or from another firm" that he alleges Mr. Dees was supposedly duplicating or why Mr. Dees' review of such work performed by others would be unreasonable.

Movants' Obj. No. 6 (Doc. 1944-4).

Mr. Lippe has neglected to note the time entries that form the basis of his statement that Mr. Dees' billings is duplicative as he was only reviewing the work of others.  There is also no explanation for his belief that it would be unreasonable for Mr. Dees to review the work of others.

As noted previously, the court is under no duty to comb through the voluminous record for billing entries that might support Mr. Lippe's contentions. The court, therefore, **sustains** Movants' Objection No. 6.

### 2. Mr. Hill III's Objections to the Fees Sought and Request for Reductions

#### a. *Movants Seek Attorney's Fees and Costs for Time Periods Not Covered by the Court's Order in Hill III*

Mr. Hill III first contends that Movants seek attorney's fees and costs for time periods not covered by the court's order in *Hill III*. While he acknowledges that Movants are entitled to recover certain of their reasonable and necessary attorney's fees and costs for the time period of July 13, 2018 (when Mr. Hill III filed his First Amended Answer in the probate proceeding), to December 7, 2018 (when the court issued *Hill III*), he maintains that the remaining time periods fall outside the scope of the court's award of fees and costs in *Hill III*. For the reasons that follow, the court agrees.

In *Hill III*, the court permanently enjoined Mr. Hill III from contesting his deceased father's Will; ordered him to dismiss his state court appeals; and, pursuant to the terms of the Settlement Agreement and Final Judgment, awarded Movants the recovery from Mr. Hill III of "all of their reasonable attorney's fees and costs of litigation incurred as a result of [Mr.] Hill III's Will Contest in the Probate Court and subsequent appeal." *Hill III*, 2018 WL 6436397, at *15. The court's award of attorney's fees and costs is tethered to the express terms of the Settlement Agreement, incorporated into the Final Judgment, under which the parties agreed that "attorneys' fees and costs of litigation" were available "[i]n the event any Party breaches any of the obligations or responsibilities placed upon such Party in this Agreement[.]" Settlement Agreement § III(5)(r) (Doc. 879). Here, as detailed above, Mr. Hill III breached the "No Contest Clause" by contesting

the Will of his father. In the First Amended Answer, he raised, for the first time, a number of affirmative defenses including: (1) denying that Mr. Hill Jr. had testamentary capacity; (2) denying that the signature on the Will was authentic; and (3) contesting the independent executor's assertion that the Will was never revoked, modified, or superseded.

In reply, Movants urge the court to adopt a broader interpretation of its order in *Hill III* and include the time periods both prior to Mr. Hill III's First Amended Answer and after the court's order in *Hill III*. The court declines to read *Hill III* as broadly as Movants request. Accordingly, and as explained in detail below in the court's analysis of each time period during which Movants seeks their attorney's fees and costs, it will award Movants their reasonable and necessary attorney's fees and costs of litigation for the time period of July 13, 2018, to December 7, 2018, and deny Movants' request for attorney's fees and costs for the time periods of December 22, 2017, to July 12, 2018; December 8, 2018, to December 21, 2018; and December 22, 2018, to January 4, 2019.

### b. *Paralegal and Legal Assistant Fees*

In his opposition brief, Mr. Hill III maintains that Movants have not met their burden to recover fees for work by paralegals and legal assistants. Resp. 20-21 (Doc. 1943). He maintains that "Movants have not prove[d] that the paralegals and legal assistants performed legal work, their qualifications to perform that work, and that an attorney supervised that work." *Id.* He also points out that "Movants do not even attach resumes or biographical statements for most of the non-attorneys whose fees they seek to recover." *Id.* With respect to Ms. Keliher's request to recover attorney's fees for work by paralegals, the court agrees with Mr. Hill III. With respect to Ms. Washburne's and Ms. Summers' request to recover attorney's fees for work by paralegals,

however, the court concludes the matter is moot, as they are not seeking recovery of any fees for paralegal work for the time period between July 13, 2018, and December 7, 2018.

Paralegal work can be recovered as attorney's fees only if the work is legal rather than clerical. *Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) (applying Texas law). When obtaining payment for work done by paralegals or legal assistants, proof must include "'(1) the qualifications of the legal assistant to perform substantive legal work; (2) that the legal assistant performed substantive legal work under the direction and supervision of an attorney; (3) the nature of the legal work performed; (4) the legal assistant's hourly rate; and (5) the number of hours expended by the legal assistant.'" *In re Mud King Prod., Inc.*, 525 B.R. 43, 51-52 (Bankr. S.D. Tex. 2015) (quoting *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 764 (Tex. 2012)).

With respect to Ms. Keliher's request to recover fees for work by paralegals, she relies on the Declarations of G. Michael Gruber ("Mr. Gruber") and Mr. Goodman. For the relevant time period of July 13, 2018, to December 7, 2018, Mr. Gruber attaches billing invoices reflecting that paralegal Kymberlee Milligan ("Ms. Milligan") billed 6.8 hours at a billable hourly rate of $200 until October 2018, when her billable hourly rate was increased to $210 for a total fee of $1394. Affidavit of Mr. Gruber (Doc. 1927-2 at Ex. B ¶ 13). Mr. Gruber, however, fails to attach Ms. Milligan's curriculum vitae. While the resume of each paralegal is not required, based on the evidence provided, the court lacks adequate information regarding Ms. Milligan's education, training, and experience, all of which the court requires to assess her ability to perform substantive legal work or determine whether her hourly rate is reasonable. *See Vela*, 276 F.3d at 681 (affirming district court's award of attorney's fees for paralegals' work that "was of a more complex and tedious nature" than usual and legal in nature). In addition, after considering Mr. Gruber's Affidavit and the invoices, the court is left with insufficient evidence from which to conclude that

Ms. Milligan performed legal work at the direction of an attorney, rather than clerical work, a *sine qua non* for recovery of paralegal fees in the Fifth Circuit.

Similarly, for the same time period, Mr. Goodman attaches billing invoices reflecting that paralegal Donna Patterson ("Ms. Patterson") billed 83.75 hours at a billable hourly rate of $175 for a total fee of $14,656.25. Affidavit of Mr. Goodman (Doc. 1927-3 at Ex. C ¶ 16). Mr. Goodman has not provided the court with Ms. Patterson's curriculum vitae or other evidence regarding her education, training, or experience. As with Ms. Milligan, the court cannot assess Ms. Patterson's qualifications to perform substantive legal work or assess the reasonableness of her hourly rate. Further, based on Mr. Goodman's Affidavit and the invoices provided, the court does not have sufficient information to conclude that she performed legal work at the direction of an attorney, rather than clerical work.

For these reasons, the court concludes that Ms. Keliher has not met her burden to recover fees for work by paralegals and legal assistants. *See, e.g., In re Mud King*, 525 B.R. at 51-52 (disallowing fees for paralegals and legal assistants where burden not met). Accordingly, the court's calculation of the lodestar amount related to Ms. Keliher's request for attorney's fees will exclude their time.

### c. *Whether Movants Incurred the Fees and Costs*

Mr. Hill III challenges whether Movants actually incurred the attorney's fees and costs. His sole support for this challenge is that the invoices for legal services were sent to A.G. Hill Partners, LLC, and not to Movants individually. Resp. 26 (Doc. 1943). In reply, Movants contend that whether the invoices were sent to A.G. Hill Partners, LLC or to Movants individually is "irrelevant." Reply 9 (Doc. 1944). According to Movants:

A.G. Hill Partners, LLC is Washburne and Summers' family office which provides day-to-day administration and management of Washburne and Summers' business and personal affairs. A.G. Hill Partners, LLC also receives mail for Washburne, Summers, and Decedent's Estate, and handles bill paying for them. David Turner is the General Counsel of A.G. Hill Partners, LLC, and his assistant is Angi Kelly Moreno. There is nothing novel or contradictory about Movants' invoices being sent to A.G. Hill Partners, LLC for convenience and administrative purposes. Moreover, Hill III's questioning of whether Movants actually incurred these attorneys' fees and expenses is without merit. Movants' invoices were paid through A.G. Hill Partners, LLC—the family office—as part of its billing-paying function. Any money received from Hill III as a result the Order will be put back where it originated. There will be no "inappropriate windfall" from the Court ordering Hill III to pay the attorneys' fees and costs Movants' incurred because of Hill III's prohibited Will Contest.

*Id.* at 9-10.

The court agrees with Movants that there is nothing novel or contradictory about Movants' invoices being sent to A.G. Hill Partners, LLC, the family office, for convenience and administrative purposes. Given the lack of any support for his contention that Movants may not have incurred the fees and costs, the court rejects Mr. Hill III's challenge.[3]

### d. *Redacted Entries/Block Billing/Work Unrelated to Will Contest and Subsequent Appeal/Mathematical Errors*

Mr. Hill III argues that, even during the time frame in which he concedes Movants may recover their reasonable attorney's fees and costs, the amount of attorney's fees requested should be reduced by thirty percent because the invoices submitted contain redacted entries and block

---

[3] Relatedly, Mr. Hill III argues, "[o]n information and belief," that previously he "indirectly" paid a portion of legal fees for lawyers prosecuting claims against him because legal fees were allocated to various trusts, which "could mean that [he] has, in effect, already paid for a significant portion of the fees and costs 'incurred' by Movants." Resp. 27 (Doc. 1943). As Movants correctly note in their reply, however, "Hill III has provided no evidence to support this claim." Reply 10 (Doc. 1944). Instead, Mr. Hill III relies on an excerpt from a document regarding HH Services, LLC that is unrelated to this proceeding or the fees at issue. The court agrees with Movants that Mr. Hill III's theory "that he has already paid any portion of Movants' invoices due to [Mr.] Hill III's prohibited Will Contest is nothing but pure speculation and conjecture." *Id.* For these reasons, the court declines Mr. Hill III's invitation for more delay and will not allow unnecessary discovery on this matter.

billing,[4] and Movants seek to recover for work unrelated to the Will contest and subsequent appeal. He also complains of certain mathematical errors by Ms. Keliher's counsel.

As part of their reply, and in response to Mr. Hill III's opposition, Movants have agreed to remove the sum of $8,990 from their fee request to account for Mr. Hill III's objections to the inclusion of time not related to the Will contest and subsequent appeals in the state appellate courts. *See* Summary of Adjustments (Doc. 1944-7). Of this amount, $7,390 is for legal services during the time period of July 13, 2018, to December 7, 2018. After careful analysis of the briefing and invoices, as well as Affidavits submitted by counsel for Movants, the court concludes that this amount is sufficient to address Mr. Hill III's concerns with Movants' inclusion of fees for work unrelated to the Will contest and subsequent appeal between the dates of July 13, 2018, and December 7, 2018.

With regard to redacted entries and block billing during this same time period, the court concludes that no reduction is warranted. The invoices state the time worked and descriptions of those legal services performed by counsel for Movants as addressed in detail in the Affidavits of counsel filed in support. *See* Mr. Dees' Affidavit (Doc. 1927-1); Mr. Gruber's Affidavit (Doc. 1927-2); and Mr. Goodman's Affidavit (Doc. 1927-3). Counsel state in their respective Affidavits that the invoices have been redacted to exclude privileged attorney-client communications and attorney work product as well as legal services performed that are not related to Mr. Hill III's Will contest. Further, the invoices contain counsels' hand-written notes reflecting a reduction in hours worked and attorney's fees and costs being sought in connection with Movants' filing because of

---

[4] "Block billing" is a "time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Paris v. Dallas Airmotive, Inc.*, No. CIV.A. 3:97-CV-0208-L, 2004 WL 2100227, at *9 (N.D. Tex. Sept. 21, 2004) (citation omitted).

**Memorandum Opinion and Order – Page 27**

legal services performed for Movants that are not related to Mr. Hill III's Will contest and subsequent appeal. *See* Mr. Dees' Affidavit (Doc. 1927-1at Ex. A ¶ 8 and Exs. A9-A20); Mr. Gruber's Affidavit (Doc. 1927-2 at Ex. B ¶ 8 and Exs. B12-B15, B17; and Mr. Goodman's Affidavit (Doc. 1927-3 at Ex. C ¶ 8 and Exs. C10-C17). The court concludes that Movants have produced detailed billing records, despite the use in certain instances of block billing and redactions as to certain time entries to protect attorney-client privilege and attorney work product, as well as to reflect a reduction in hours worked and attorney's fees and costs being sought for work not related to Mr. Hill III's Will contest and subsequent appeal.

Further, cases cited by Mr. Hill III to support a reduction for block billing are distinguishable. In *Paris v. Dallas Airmotive, Inc.*, the applicant "submitted block billing for *monthly* activities," as opposed to Movants' daily entries. No. CIV.A. 3:97-CV-0208-L, 2004 WL 2100227, at *9 (N.D. Tex. Sept. 21, 2004) (original emphasis). In *Barrow v. Greenville Independent School District*, unlike here, the applicant submitted block billing for nearly a seven-year period, with narratives so vague the court could not determine whether the services performed related to the fee award. No. 3:00-CV-0913-D, 2005 WL 6789456, at *5-6 (N.D. Tex. Dec. 20, 2005), *aff'd*, No. 06-10123, 2007 WL 3085028 (5th Cir. Oct. 23, 2007).

The court, however, agrees with Mr. Hill III that Ms. Keliher's counsel have mathematical errors in their calculations. The Brief indicates that the firms of Gruber Hail and Dorsey worked an adjusted 250.6 hours for an adjusted total of $95,399.50 in fees between December 7, 2017, through the date of the filing of the Brief on December 21, 2018. Brief at 23-24. To reach this total, Movants appear to have multiplied their "adjusted number of hours" by the applicable "hourly rate." This is a miscalculation. Specifically, Movants' Brief indicates an adjusted number of hours of 26.4 and an hourly rate of $700 for Mr. Gruber. Brief 23 (Doc. 1927). When these

numbers are multiplied together, it results in a total of $18,480. Movants, however, apparently seek to recover an "adjusted total" of $20,230 for Mr. Gruber's hours. *See id.* Similarly, with respect to Mr. Mason, Movants seek $64,840 in attorney's fees and describe this as the "adjusted total," but Mr. Mason's 170.5 "adjusted hours" multiplied by a billing rate of $350 is only $59,675.

In summary, after scrutinizing the records carefully, the court concludes that although there are instances of block billing and redacted entries during the time period of July 13, 2018, to December 7, 2018, Movants' evidence delineates the tasks performed with regard to the Will contest and subsequent appeal, and the detailed Affidavits of counsel demonstrate that Messrs. Dees, Gruber, and Goodman carefully reviewed the materials submitted to ensure the fees and costs sought relate to the Will contest and subsequent appeal. As such, the court rejects Mr. Hill III's request for a thirty percent reduction in attorney's fees.

The court, however, will adjust for the mathematical errors in Mr. Gruber's Affidavit when calculating the loadstar amount for fees Ms. Keliher incurred for work performed by them during the relevant time period. Further, in response to certain objections asserted by Mr. Hill III related to hours billed that are unrelated to the Will contest and subsequent appeal, Movants have agreed to a reduction of $8,990 from their fee request, of which $7,390 relates to the relevant time period. *See* Summary of Adjustments (Doc. 1944-7). The court will address this reduction in calculating the loadstar amount related to the pending fee requests.

### e.   *Whether Movants Exercised Billing Judgment*

Mr. Hill III contends that Movants' "evidence allegedly shows what they incurred but fails to show how billing judgment was exercised over that amount." Resp. 21-22 (Doc. 1943). He further contends that these incurred expenses "appear to include work that was unproductive,

excessive, and redundant." *Id.* at 22. He requests that "[a]s a result of Movants' lack of evidence regarding billing judgment, any award should be reduced by 10%." *Id.*

Texas law requires the exercise of billing judgment. When inquiring into the reasonableness of the hours for which the prevailing party seeks to recover, "[c]harges for duplicative, excessive, or inadequately documented work should be excluded." *El Apple I,* 370 S.W.3d at 762 (citing *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993)). Thus

> [c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. In the private sector, billing judgment is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority.

*Id.* (quoting *Hensley*, 461 U.S. at 437) (internal quotation marks and emphasis omitted). *Accord Walker v. United States Dep't of Hous. & Urban Dev.,*, 99 F.3d 761, 770 (5th Cir. 1996) ("[P]laintiffs are charged with the burden of showing the reasonableness of the hours they bill and, accordingly, are charged with proving that they exercised billing judgment."); *Saizan*, 448 F.3d at 799 ("Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant.").

In response to Mr. Hill III's argument that they failed to exercise billing judgment, Movants contend that they exercised billing judgment before "submitting the invoices to their clients." Reply 7 (Doc. 1944). This, on its own, is insufficient. *Altec Capital Servs., LLC v. Weir Bros., Inc.*, 2013 WL 866193, at *6 (N.D. Tex. Mar. 8, 2013) (Fitzwater, C.J.) ("It is not enough for the fee applicant merely to say that the fees charged by its attorneys necessarily reflect the exercise of billing judgment."). Movants, however, also point to multiple "no charge" entries in their invoices. Reply 8 and note 53.

**Memorandum Opinion and Order – Page 30**

After its review of the complete billing records for the relevant time period, the court concludes that Movants have provided sufficient evidence that counsel at Hallet & Perrin and at Bourland, Wall & Wenzel exercised billing judgment to exclude time that was unproductive, excessive, or redundant. The billing records contain the following "no charge" entries. *See* 1927-1 Ex. A-9 (7/17/18 TMD [NO CHARGE]); *id.* (7/25/18 TMD [NO CHARGE]); ECF 1927-1 Ex. A-10 (8/1/18 TMD [NO CHARGE]); *id.* (8/4/18 TMD [NO CHARGE]); *id.* (8/31/18 TMD [NO CHARGE]); Doc. 1927-1 Ex. A-13 (11/5/18 TJC [NO CHARGE]); *id.* (11/7/18 TJC [NO CHARGE]); Doc. 1927-3 Ex. C-9, p. 4 (6/15/18 JNM [NO CHARGE]); Doc. 1927-3 Ex. C-12, pp. 8-9 (9/25/18 JNM [NO CHARGE]); Doc. 1927-3 Ex. C-13, p. 7 (10/11/18 JNM [NO CHARGE]). Based on these "no charge" entries in counsels' billing records, the court concludes that Movants have met their burden of demonstrating their counsel at Hallett & Perrin and Bourland, Wall & Wenzel exercised billing judgment. With respect to counsel for Ms. Keliher at Dorsey, however, the court finds that the absence of reductions or documentation of hours written off as excessive or unproductive during the litigation indicates a lack of billing judgment. Under these circumstances, the court imposes a 10% reduction based on this deficiency. The court believes this amount is reasonable and will not entertain motions for reconsideration. *See, e.g.*, *Gurule v. Land Guardian, Inc.*, 912 F.3d 252, 258, 262 (5th Cir. 2018) (affirming reduction in fee award by 20% for failure to show exercise of billing judgment); *Walker*, 99 F.3d at 770 (affirming reduction in fee award by 15% for failure to show exercise of billing judgment); *Leroy v. City of Houston*, 831 F.2d 576, 586 and n.16 (5th Cir. 1987) (affirming reduction in fee award by 13% for failure to show exercise of billing judgment); *Hill IV*, 2022 WL 1321548, at *7 (reducing fee award by 13% for failure to show that billing judgment was exercised).

In sum, the court rejects Mr. Hill III's request for a ten percent reduction because of lack of billing judgment with respect to the legal services provided between July 13, 2018, and December 7, 2018, by Hallet & Perrin and Bourland, Wall & Wenzel, but agrees with Mr. Hill III's request for a ten percent reduction because of lack of billing judgment with respect to legal services provided by Dorsey.

**B. Movants' Request for Attorney's Fees and Costs in the Brief and Supplement**

To reiterate, Movants divide their request for attorney's fees and costs into four separate time periods: 12/22/2017 to 07/12/2018; 07/13/2018 to 12/07/2018; 12/08/2018 to 12/21/2018; and 12/22/2018 to 01/04/2019. Within each time period, the court has billing records and affidavits from numerous different law firms and attorneys representing Ms. Washburne and Ms. Summers, on the one hand, and Ms. Keliher, on the other hand.

**1. Attorney's Fees and Costs from 12/22/2017 to 07/12/2018**

The court first considers Movants' request for attorney's fees in the amount of $464,412.25 and costs in the amount of $6,210.93 for the time period of December 22, 2017 (the date Mr. Hill III filed his Original Answer in the probate proceeding), to July 12, 2018 (the day before Mr. Hill III filed his First Amended Answer in the probate proceeding). In his opposition brief, Mr. Hill III maintains that Movants are not entitled to any fees or costs for this time period, as Movants "seek attorneys' fees and costs for time periods not covered by the Court's Order[.]" *See* Resp. 7 (Doc. 1943). For the reasons that follow, the court agrees and denies Movants' request for attorney's fees and costs for this time period.

In his First Amended Answer filed in the probate proceeding on July 13, 2018, as previously noted, Mr. Hill III raised, *for the first time*, a number of affirmative defenses including: (1) denying that Mr. Hill Jr. had testamentary capacity; (2) denying that the signature on the Will

was authentic; and (3) contesting the independent executor's assertion that the alleged Will was never revoked, modified, or superseded. On September 14, 2018, following Mr. Hill III's First Amended Answer, Ms. Washburne and Ms. Summers filed their Motion to Enforce in this court. *See* Doc. 1886-1. They argued that, unlike their previous request for injunctive relief, which the court denied in *Hill I* and *Hill II*, by asserting these new affirmative defenses, Mr. Hill III was now engaged in a "*traditional will contest in the Probate Proceeding*." *See* Mot. Enforce 3, 7-9 (Doc. 1886-1) (emphasis added). Ms. Keliher joined in Ms. Washburne and Ms. Summers' Motion to Enforce. *See* Doc. 1916.

In *Hill III*, the court specifically cited to these new affirmative defenses raised by Mr. Hill III in his First Amended Answer, filed July 13, 2018, in concluding that Mr. Hill III was violating the "No Contest Clause" of the Settlement Agreement and Final Judgment. *Hill III,* 2018 WL 6436397, at *13. As such, and agreeing with Movants' contention that new developments in the probate proceeding necessitated the relief sought, the court granted Movants' request for a permanent injunction, enjoined Mr. Hill III from contesting his deceased father's Will, ordered him to dismiss his appeal of Judge Warren's October 11, 2018 order, and awarded Movants the recovery from Mr. Hill III of "all of their reasonable attorney's fees and costs of litigation incurred as a result of [Mr.] Hill III's Will Contest in the Probate Court and subsequent appeal." *Id.* at 15.

Based on its review of the chronology of filings in the probate proceeding and this court, as well as the arguments made by Movants in their Motion to Enforce, the undersigned concludes that Movants are not entitled to attorney's fees and costs for the date range of December 22, 2017, to July 12, 2018. It was not until Mr. Hill III filed his First Amended Answer in the probate proceeding on **July 13, 2018**, that he, in the words of Movants, engaged in a "traditional will contest in the Probate Proceeding." *See* Mot. Enforce 3, 7-9 (Doc. 1886-1). Further, it was the

affirmative defenses raised in Mr. Hill III's First Amended Answer that led the court to exercise its continuing jurisdiction and to enjoin Mr. Hill III from violating the "No Contest Clause." Accordingly, the court **denies** Movants' request for attorney's fees in the amount of $464,412.25 and costs in the amount of $6,210.93 for the time period of December 22, 2017, to July 12, 2018.

### 2.   Attorney's Fees and Costs from 07/13/2018 to 12/07/2018

The court now considers Movants' request for attorney's fees in the total amount of $531,755.75 and costs in the total amount of $10,359.04 for the time period of July 13, 2018 (the date Mr. Hill III filed his First Amended Answer in the probate proceeding), to December 7, 2018 (the date the court issued its decision in *Hill III*). For this time period, Ms. Washburne and Ms. Summers seek fees in the amount of $156,634.50 and costs of $2,959.56 that they incurred with the law firm of Hallett & Perrin. For this same time period, Ms. Keliher, on behalf of the Estate of Mr. Hill Jr., seeks fees in the amount of $34,325 and costs of $13 that Mr. Hill Jr.'s Estate incurred with the law firm of Dorsey,[5] and fees in the amount of $340,796.25 and costs of $7,386.48 which Mr. Hill Jr.'s Estate incurred with the law firm of Bourland, Wall & Wenzel.

As previously explained, Movants have agreed to remove the sum of $8,990 from their fee request. *See* Summary of Adjustments (Doc. 1944-7). As previously noted, of this amount, $7,390 relates to the relevant time period. The court will take this downward adjustment into account when it calculates the loadstar amount related to legal services performed on behalf of Ms. Washburn and Ms. Summers by Hallett & Perrin, and performed on behalf of Ms. Keliher by Dorsey. None of the adjustments pertain to Bourland, Wall & Wenzel.

---

[5] Mr. Gruber informs the court that he left Gruber Hail and joined Dorsey in April 2018. Affidavit of Mr. Gruber (Doc. 1927-B at Ex. B ¶ 2). Because the court is analyzing Ms. Keliher's fee request for legal services from July 13, 2018, to December 7, 2018, the billing records pertaining to Mr. Gruber's legal services on behalf of the Hill Jr. Estate while he was at Gruber Hail are not relevant.

**Memorandum Opinion and Order – Page 34**

### a. *Ms. Washburne & Ms. Summers' Fee Request*

Ms. Washburne and Ms. Summers assert that, for the time period of July 13, 2018, to December 7, 2018, counsel expended a total of 386.4 hours related to the Will contest and subsequent appeal. These hours were billed through the work of four attorneys employed by Hallett & Perrin at that time: Mr. Dees; Lily H. Shanks ("Ms. Shanks"); Tracy J. Carson ("Mr. Carson"); and David M. Hammack ("Mr. Hammack"). *See* Doc. 1927-1 at Ex. A ¶ 14. Mr. Dees, in his Affidavit, summarizes the services, hours, and fees sought, "in the above-styled lawsuit and in the Probate Court as a result of [Mr.] Hill III's Will Contest[.]" *Id.* at Ex. A ¶ 15. Mr. Dees asserts that the fees and costs sought by his clients for this time period are "fair, reasonable and necessary, and equitable and just under the facts and circumstances of [Mr.] Hill III's Will Contest." *Id.* He asserts that the attorney's fees and costs incurred by Ms. Washburne and Ms. Summers as a result of Hill III's Will Contest "are reasonable and consistent with the attorneys' fees customarily charged in Dallas County, Texas for similar legal services." *Id.* at Ex. A ¶ 22. Mr. Dees also provides copies of the invoices that have been redacted to exclude privileged attorney-client communications and attorney work product, "as well as legal services performed that are not related to Hill III's Will Contest, and they contain hand-written notes reflecting a reduction in hours worked and attorneys' fees and costs being sought in connection with this filing, because of legal services performed for Washburne and Summers that are not related to Hill III's Will Contest." *Id.* at Ex. A ¶ 26 and Exs. A-9 through A-18. The hours incurred—for which Ms. Washburne and Ms. Summers seek compensation—are 331.8 hours for Mr. Dees at an hourly rate of $425; 47.4 hours for Ms. Shanks at an hourly rate of $295; 3.7 hours for Mr. Carson at an hourly rate of $220; and 3.5 hours for Mr. Hammack at an hourly rate of $325. *Id.* at Ex. A ¶ 14.  The total amount Ms. Washburne and Ms.

Summers seek for these hours, after Mr. Dees adjusted for work unrelated to the Will contest and subsequent appeal, is $156,634.50. *Id.*

The court begins with determining what the reasonable hourly rates are for the attorneys who provided the services included in Ms. Washburne and Ms. Summers' request. As the fee applicants, Ms. Washburne and Ms. Summers bear the burden of demonstrating "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11. "Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." *Tollett*, 285 F.3d at 368 (citation omitted). "[T]rial courts are considered experts as to the reasonableness of attorney's fees[.]" *Primrose Operating Co.*, 382 F.3d at 562 (applying federal law); *Merge Off. Interiors, Inc. v. Alfa Adhesives, Inc.*, No. 3:19-CV-00336-M, 2020 WL 2115645, at *2 (N.D. Tex. May 3, 2020) (Lynn, C.J.) ("It is well-established that the Court may use its own expertise and judgment to independently assess the hourly rates charged for attorney's fees.") (citations omitted); *Hoffman v. L & M Arts*, No. 3:10-CV-0953-D, 2015 WL 3999171, at *2 (N.D. Tex. July 1, 2015) (Fitzwater, J.) (same).

Ms. Washburne and Ms. Summers assert that the following hourly rates are reasonable: $450 for Mr. Dees; $295 for Ms. Shanks; $220 for Mr. Carson; and $235 for Mr. Hammack. They provide support through Mr. Dees' Affidavit and exhibits to his Affidavit, which attest to the qualifications and experience of these individuals. *See* Doc. 1927-1 at Ex. A; *id.* at Ex. A-21 (Biographical Statement of Mr. Dees); Ex. A-22 (Biographical Statement of Ms. Shanks); Ex. A-24 (Biographical Statement of Mr. Carson); and Ex. A-25 (Biographical Statement of Mr. Hammack). Mr. Dees certifies that the requested rates are commensurate with similar services by

lawyers and paralegals of reasonably comparable skill, experience, and reputation in the Dallas area. *Id.* at Ex. A ¶ 22.

Mr. Hill III does not contest that the hourly rates charged by counsel at Hallet & Perrin are reasonable. For the reasons that follow, the court concludes that the hourly rates Ms. Washburne and Ms. Summers request for the legal services of counsel at Hallett & Perrin are reasonable.

Mr. Dees is an attorney and shareholder at Hallet & Perrin and has been licensed to practice law in Texas since 2002. *Id.* at Ex. A ¶ 2.[6] Ms. Shanks is an attorney and shareholder at Hallett & Perrin who has been licensed to practice law in Texas since 2006. *Id.* at Ex. A-22. Mr. Carson is an attorney and associate at Hallett & Perrin who has been licensed to practice law in Texas since 2016. *Id.* at Ex. A-24. Mr. Hammack is an attorney and associate at Hallett & Perrin who has been licensed to practice law in Texas since 2014. *Id.* at Ex. A-25. The court is familiar with the prevailing market rates in the Dallas legal market for attorneys with the skill, experience, and reputation of Ms. Washburne and Ms. Summers' counsel. Based on the court's knowledge of rates charged for legal services by attorneys with the level of skill, experience, and reputation as Ms. Washburne and Ms. Summers' counsel in the Dallas legal community, and its experience in setting attorney's fees in numerous other cases, and based on the certifications in Mr. Dees' Affidavit, the court determines that the hourly rates asserted are reasonable.

Having determined that the hourly rates for Ms. Washburne and Ms. Summers' attorneys are reasonable, the court next considers the time expended. Mr. Dees has provided the court with detailed time records as evidence. *See* Doc. 1927-1 at Ex. A ¶ 12 and Exs. A-9 through A-18

---

[6] The court is basing its discussion on biographical statements submitted in 2018. As such, certain attorneys may have left Hallett & Perrin, and certain associates may now be shareholders.

(invoices). He certifies that the hours expended on the case between the dates of July 13, 2018, and December 7, 2018, were reasonable and necessary. *Id.* at Ex. A ¶ 15.

With respect to Mr. Hill III's objections to the hours expended, the court has already addressed his arguments and rejected them. *See supra* Sec. III(A). As previously discussed, Exhibits attached to Mr. Dees' Affidavit show several "No Charge" entries indicating time was written off as excessive, redundant, or unnecessary. *See* 1927-1 at Exs. A-9, A-10, and A-13. Based on its review of the invoices and Mr. Dees' Affidavit, the court concludes that the hours expended on the case were not excessive, duplicative, unnecessary, or inadequately documented.

Prior to calculating the loadstar amount, however, the court must consider those hours Ms. Washburne and Ms. Summers, in their reply brief, agreed to subtract as fees for legal work unrelated to the Will contest and subsequent appeal. *See* Reply at Exs. 1 and 7 (Docs. 1944-1 and 1944-7). Ms. Washburne and Ms. Summers have agreed to deduct from their fee request the following hours billed by Mr. Dees at his hourly rate of $425: 2.5 hours billed on October 30, 2018; 6 hours billed on October 31, 2018; 5.7 hours billed on November 1, 2018; and .2 hours billed on November 23, 2018. This results in a total reduction of 14.4 hours, which at Mr. Dees' hourly rate of $425 equals $6,120.

In his Affidavit, for the time period of July 13, 2018, to December 7, 2018, Mr. Dees billed 331.8 hours (adjusted after taking into account those hours unrelated to the Will contest and subsequent appeal) at $425 per hour, for a total of $141,015. Affidavit of Mr. Dees (Doc. 1927-1 at Ex. A ¶ 14). After reducing Mr. Dees' adjusted hours by 14.4 hours (based on Ms. Washburne and Ms. Summers' concession in their reply brief), Mr. Dees' hours total 317.4 (331.8 minus 14.4). At $425 per hour, his new total is $134,895 (317.4 hours multiplied by $425).

Based on this reduction, the court calculates the loadstar amount as follows: 317.4 hours at an hourly rate of $425 for Mr. Dees for a total of $134,895 in attorney's fees; 47.4 hours at an hourly rate of $295 for Ms. Shanks for a total of $13,983 in attorney's fees; 3.7 hours at an hourly rate of $220 for Mr. Carson for a total of $814 in attorney's fees; and 3.5 hours at an hourly rate of $235 for Mr. Hammack for a total of $822.50 in attorney's fees.

After making these reductions, the court determines that the number of hours spent (372), multiplied by the reasonable hourly rate yields a lodestar of $150,514.50. The court concludes that each *Johnson* factor permissibly considered is either subsumed within the lodestar calculation or is not sufficiently pertinent to the facts of the case to warrant discussion.

In addition, the court finds that Ms. Washburne and Ms. Summers have introduced sufficient evidence of costs in the amount of $2,959.56, and it concludes that this amount is reasonable. *See* Affidavit of Mr. Dees (Doc. 1927-1 at Ex. A ¶ 14 and Exs. A-1 and A3 through A-18 (invoices)). Mr. Hill III does not contest the amount or reasonableness of the costs requested.

For these reasons, based on the lodestar amount and the relevant *Johnson* factors, the court will award Ms. Washburne and Ms. Summers attorney's fees in the amount of $150,514.50 and costs in the amount of $2,959.56.

### b. Ms. Keliher's Fee Request

Ms. Keliher, on behalf of the Estate of Albert G. Hill, Jr., seeks to recover her attorney's fees and costs she incurred for the time period of July 13, 2018, to December 7, 2018, for work related to the Will contest and subsequent appeal by counsel and paralegals at Dorsey, as well as Bourland, Wall & Wenzel.

### i. Dorsey

Ms. Keliher asserts that, for the time period of July 13, 2018, to December 7, 2018, for work related to the Will contest and subsequent appeal, counsel and paralegals at Dorsey expended a total of 90.1 hours. These hours were billed through the work of three attorneys and one paralegal employed by Dorsey: Mr. Gruber; Mr. Mason; John Hunt ("Mr. Hunt"); and Ms. Milligan. *See* Doc. 1927-2 at Ex. B ¶ 13. Mr. Gruber, in his Affidavit, summarizes the services, hours, and fees sought, "in the above-styled lawsuit and in the Probate Court as a result of [Mr.] Hill III's Will Contest[.]" *Id.* at Ex. B ¶ 14. Mr. Gruber asserts that the fees and costs sought by his clients for this time period are "fair, reasonable and necessary, and equitable and just under the facts and circumstances of [Mr.] Hill III's Will Contest." *Id.* He asserts that the attorney's fees and costs incurred by Ms. Keliher as a result of Hill III's Will Contest "are reasonable and consistent with the attorneys' fees customarily charged in Dallas County, Texas for similar legal services." *Id.* at Ex. B ¶ 8. Mr. Gruber also provides copies of the invoices that have been redacted to exclude privileged attorney-client communications and attorney work product, "as well as legal services performed that are not related to Hill III's Will Contest, and they contain hand-written notes reflecting a reduction in hours worked and attorneys' fees and costs being sought in connection with this filing, because of legal services performed for the Hill Jr. Estate that are not related to Hill III's Will Contest." *Id.* and Exs. B-2 through B-17. The hours incurred—for which Ms. Keliher seeks compensation—are 6.1 hours for Mr. Gruber at an hourly rate of $700; 73.9 hours for Mr. Mason at an hourly rate of $350; 3.3 hours for Mr. Hunt at an hourly rate of $370; and 6.8 hours for Ms. Milligan at an hourly rate of $200 (increased to $210 in October 2018). *Id.* at Ex. B ¶ 13. The total amount Ms. Keliher seeks for these hours, after Mr. Gruber adjusted for work unrelated to the Will contest and subsequent appeal, is $34,325. *Id.*

The court now determines what the reasonable hourly rates are for the attorneys who provided the services included in Ms. Keliher's request. As the fee applicant, Ms. Keliher bears the burden of demonstrating "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11. "Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." *Tollett*, 285 F.3d at 368 (citation omitted). As previously stated, "[t]rial courts are considered experts as to the reasonableness of attorney's fees[.]" *Primrose Operating*, 382 F.3d at 562; *Merge Off. Interiors,* 2020 WL 2115645, at *2; *Hoffman*, 2015 WL 3999171, at *2.

Ms. Keliher asserts that the following hourly rates are reasonable: $700 for Mr. Gruber; $350 for Mr. Mason; and $370 for Mr. Hunt. She provides support through Mr. Gruber's Affidavit and exhibits to his Affidavit, that attest to the qualifications and experience of these individuals. *See* Doc. 1927-2 at Ex. B; *id.* at Ex. B-20 (Biographical Statement of Mr. Gruber); Ex. B-21 (Biographical Statement of Mr. Mason); and Ex. B-22 (Biographical Statement of Mr. Hunt). Mr. Gruber certifies that the requested rates are commensurate with similar services by lawyers and paralegals of reasonably comparable skill, experience, and reputation in the Dallas area. *Id.* at Ex. B ¶ 8.

Mr. Hill III does not contest that the hourly rates charged by counsel at Dorsey. For the reasons that follow, the court concludes that the hourly rates Ms. Keliher requests for the legal services of counsel at Dorsey are reasonable.

Mr. Gruber is an attorney and shareholder at Dorsey and has been licensed to practice law in Texas since 1981. *Id.* at Ex. B ¶ 2 and Ex. B-20.[7] Mr. Mason is an attorney and associate at Dorsey who has been licensed to practice law in Texas since 2012. *Id.* at Ex. B-21. Mr. Hunt is an attorney and associate at Dorsey who has been licensed to practice law in Texas since 2018. *Id.* at Ex. B-22. The court is familiar with the prevailing market rates in the Dallas legal market for attorneys with the skill, experience, and reputation of Ms. Keliher's counsel. Based on the court's knowledge of rates charged for legal services by attorneys with the level of skill, experience, and reputation as Ms. Keliher's counsel in the Dallas legal community, and its experience in setting attorney's fees in numerous other cases, and based on the certifications in Mr. Gruber's Affidavit, the court determines that the hourly rates asserted are reasonable.

Having determined that the hourly rates for Ms. Keliher's attorneys at Dorsey are reasonable, the court next considers the time expended. Mr. Gruber has provided the court with detailed time records as evidence. *See* Doc. 1927-2 at Ex. B ¶ 13 and Exs. B-12 through B-17 (invoices). He certifies that the hours expended on the case between the dates of July 13, 2018, and December 7, 2018, were reasonable and necessary. *Id.* at Ex. B ¶ 13.

As previously explained in considering Mr. Hill III's objections, *see supra* Sec. III(2)(e), based on its review of Mr. Gruber's Affidavit and the billing invoices during the relevant time period, the court concludes there is no evidence that counsel at Dorsey exercised billing judgment by writing off time that was excessive, duplicative, unnecessary, or inadequately documented. As such, the court will reduce the amount of fees by ten percent.

---

[7] The court is basing its discussion on biographical statements submitted in 2018. As such, certain attorneys may have left the Dorsey firm, and certain associates may now be shareholders.

Prior to calculating the loadstar amount, however, the court must consider those hours Ms. Keliher has agreed to subtract in response to Mr. Hill III's argument that she is seeking fees for legal work unrelated to the Will contest and subsequent appeal. *See* Reply at Exs. 1 and 7 (Docs. 1944-1 and 1944-7). Ms. Keliher has agreed to deduct from her fee request the following hours billed by Mr. Mason at his hourly rate of $350: 1.90 hours billed on October 18, 2018; 1.8 hours billed on November 1, 2018; and .50 hours billed on November 5, 2018. At Mr. Mason's hourly rate of $350, this reduction results in a total reduction of 4.2 hours which at his billable rate equals $1,470.

Per Mr. Gruber's Affidavit, for the time period of July 13, 2018, to December 7, 2018, Mr. Mason billed 73.9 hours (adjusted after taking into account hours unrelated to the Will contest and subsequent appeal) at $350 per hour, for a total of $27,440. Affidavit of Mr. Gruber (Doc. 1927-1 at Ex. B ¶ 13). As previously noted in discussing Mr. Hill III's objections, *see supra* Sec. III(2)(d), this is a mathematical error in calculating Mr. Mason's fees. Movants seek $27,440 in attorney's fees and describe this as the "adjusted total," but Mr. Mason's 73.9 "adjusted hours" multiplied by a billing rate of $350 is $25,865, not $27,440.[8]

After reducing Mr. Mason's adjusted hours by 4.2 hours (based on Ms. Keliher's concession that this amount must be subtracted), Mr. Mason's hours total 69.7 (73.9 minus 4.2). At $350 per hour, his new total is $24,395 (69.7 multiplied by $350).

In addition, the court previously determined in addressing Mr. Hill III's objections that Ms. Keliher is not entitled to recover legal fees for paralegal work performed by Ms. Milligan. *See*

---

[8] While the court also agreed with Mr. Hill III that Mr. Gruber's total fees were miscalculated, *see supra* Sec. III(2)(d), those errors were not for the time period of July 13, 2018, to December 7, 2018. Accordingly, the court need not make any adjustments based on these miscalculations.

*supra* Sec. III(2)(b). The court, therefore, must subtract 6.8 hours at a rate of $200 per hour, raised to $210 per hour after October 2018. Finally, the court will also reduce the fees by 10 percent based on the lack of evidence of billing judgment by counsel at Dorsey.

Based on these reductions, the court calculates the loadstar amount as follows: 6.1 hours at an hourly rate of $700 for Mr. Gruber for a total of $4,270 in attorney's fees; 69.7 hours at an hourly rate of $350 for Mr. Mason for a total of $24,395 in attorney's fees; and 3.3 hours at an hourly rate of $370 for Mr. Hunt for a total of $1221 in attorney's fees.

After making these reductions, the court determines that the number of hours spent (79.1), multiplied by the reasonable hourly rates, minus ten percent for failure to exercise billing judgment, yields a lodestar of $26,897.40 ($29,886 minus $2,988.60). The court concludes that each *Johnson* factor permissibly considered is either subsumed within the lodestar calculation or is not sufficiently pertinent to the facts of the case to warrant discussion.

In addition, the court finds that Ms. Keliher has introduced sufficient evidence of costs in the amount of $13 and that this amount is reasonable. *See* Affidavit of Mr. Gruber (Doc. 1927-2 at Ex. B ¶ 13 and Exs. B-12 through B-17 (invoices). Mr. Hill III does not contest the reasonableness of costs.

For these reasons, based on the lodestar amount and the relevant *Johnson* factors, the court will award Ms. Keliher attorney's fees in the amount of $26,897.40 and costs in the amount of $13 for legal services provided by Dorsey from July 13, 2018, to December 7, 2018.

### ii.   *Bourland, Wall & Wenzel*

Ms. Keliher asserts that, for the time period of July 13, 2018, to December 7, 2018, for work related to the Will contest and subsequent appeal, counsel and paralegals at Bourland, Wall & Wenzel expended a total of 1054 hours. These hours were billed through the work of eleven

attorneys and one paralegal: Mr. Goodman; Jeffrey N. Myers ("Mr. Myers"); Eric J. Millner ("Mr. Millner"); Brittany A. Weaver ("Ms. Weaver"); Darren B. Moore ("Mr. Moore"); Elizabeth A. Feeney ("Ms. Feeney"); Lisa H. Jamieson ("Ms. Jamieson"); Margaret C. Sanders ("Ms. Sanders"); Natalie S. Bracket ("Ms. Bracket"); Peter C. Hogue ("Mr. Hogue"); William R. "Butch" Korb ("Mr. Korb"); and Ms. Patterson (paralegal). *See* Affidavit of Mr. Goodman (Doc. 1927-3 at Ex. C ¶ 16). Mr. Goodman, in his Affidavit, summarizes the services, hours, and fees sought, "in the above-styled lawsuit and in the Probate Court as a result of [Mr.] Hill III's Will Contest[.]" *Id.* at Ex. C ¶ 14. Mr. Goodman asserts that the fees and costs sought by his clients for this time period are "fair, reasonable and necessary, and equitable and just under the facts and circumstances of [Mr.] Hill III's Will Contest." *Id.* He asserts that the attorney's fees and costs incurred by Ms. Keliher as a result of Hill III's Will Contest "are reasonable and consistent with the attorneys' fees customarily charged in Dallas County, Texas for similar legal services." *Id.* at Ex. C ¶ 24. Mr. Goodman also provides copies of the invoices that have been redacted to exclude privileged attorney-client communications and attorney work product, "as well as legal services performed that are not related to Hill III's Will Contest, and they contain hand-written notes reflecting a reduction in hours worked and attorneys' fees and costs being sought in connection with this filing, because of legal services performed for the Hill Jr. Estate that are not related to Hill III's Will Contest." *Id.* at Ex. C ¶ 8 and Exs. C-10 through C-17. The hours incurred—for which Ms. Keliher seeks compensation—are 447.25 hours for Mr. Goodman at an hourly rate of $375; 96.25 hours for Mr. Myers at an hourly rate of $430; 361.25 hours for Mr. Millner at an hourly rate of $285; 23 hours for Ms. Weaver at an hourly rate of $215; .75 hours for Mr. Moore at an hourly rate of $370; 13.25 hours for Ms. Feeney at an hourly rate of $190; .25 hours for Ms. Jamieson at an hourly rate of $400; .75 hours for Ms. Sanders at an hourly rate of $260; .50 hours

for Ms. Bracket at an hourly rate of $340; 25.50 hours for Mr. Hogue at an hourly rate of $205; and 1.50 hours for Mr. Korb at an hourly rate of $430.

The court now determines what the reasonable hourly rates are for the attorneys who provided the services included in Ms. Keliher's request. As the fee applicant, Ms. Keliher bears the burden of demonstrating "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11. "Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." *Tollett*, 285 F.3d at 368 (citation omitted). As previously stated, "[t]rial courts are considered experts as to the reasonableness of attorney's fees[.]" *Primrose Operating*, 382 F.3d at 562; *Merge Off. Interiors,* 2020 WL 2115645, at *2; *Hoffman*, 2015 WL 3999171, at *2.

Ms. Keliher asserts that the following hourly rates are reasonable: $375 for Mr. Goodman; $430 for Mr. Myers; $285 for Mr. Millner; $215 for Ms. Weaver; $370 for Mr. Moore; $190 for Ms. Feeney; $400 for Ms. Jamieson; $260 for Ms. Sanders; $340 for Ms. Bracket; $205 for Mr. Hogue; and $430 for Mr. Korb. She provides support through Mr. Goodman's Affidavit and exhibits to his Affidavit, which attest to the qualifications and experience of these individuals. *See* Doc. 1927-3 at Ex. C; *id.* at Ex. C-18 (Biographical Statement of Mr. Goodman); Ex. C-19 (Biographical Statement of Mr. Myers); Ex. C-20 (Biographical Statement of Mr. Millner); Ex. C-21 (Biographical Statement of Ms. Weaver); Ex. C-22 (Biographical Statement of Mr. Moore); Ex. C-23 (Biographical Statement of Ms. Feeney); Ex. C-24 (Biographical Statement of Ms. Jamieson); Ex. C-25 (Biographical Statement of Ms. Sanders); Ex. C-26 (Biographical Statement of Ms. Bracket); Ex. C-27 (Biographical Statement of Mr. Hogue); and Ex. C-28 (Biographical Statement of Mr. Korb). Mr. Goodman certifies that the requested rates are commensurate with

similar services by lawyers of reasonably comparable skill, experience, and reputation in the Dallas area. *Id.* at Ex. C ¶ 24.

Mr. Hill III does not contest the hourly rates charged by counsel at Bourland, Wall & Wenzel. For the reasons that follow, the court concludes that the hourly rates Ms. Keliher requests for the legal services of counsel are reasonable.

Mr. Goodman is an attorney and shareholder at Bourland, Wall & Wenzel and has been licensed to practice law in Texas since 1999. *Id.* at Ex. C ¶ 2 and Ex. C-18.[9] Mr. Myers is an attorney and shareholder at Bourland, Wall & Wenzel who has been licensed to practice law in Texas since 1994. *Id.* at Ex. C-19. Mr. Millner is an attorney and of counsel at Bourland, Wall & Wenzel who has been licensed to practice law in Texas since 2003. *Id.* at Ex. C-20. Ms. Weaver is an attorney and associate at Bourland, Wall & Wenzel who has been licensed to practice law in Texas since 2015. *Id.* at Ex. C-21. Mr. Moore is an attorney and shareholder at Bourland, Wall & Wenzel who has been licensed to practice law in Texas since 2000. *Id.* at Ex. C-22. Ms. Feeney is an attorney and associate at Bourland, Wall & Wenzel who has been licensed to practice law in Texas since 2018. *Id.* at Ex. C-23. Ms. Jamieson is an attorney and shareholder at Bourland, Wall & Wenzel who has been licensed to practice law in Texas since 1984. *Id.* at Ex. C-24. Ms. Sanders is an attorney and associate Bourland, Wall & Wenzel and has been licensed to practice law in Texas since 2011. *Id.* at Ex. C-25. Ms. Brackett is an attorney and shareholder at Bourland, Wall & Wenzel who has been licensed to practice law in Texas since 2005. *Id.* at Ex. C-26.  Mr. Hogue is an attorney and associate at Bourland, Wall & Wenzel who has been licensed to practice law in

---

[9] Once again, the court is basing its discussion on biographical statements submitted in 2018. As such, certain attorneys may have left the firm of Bourland, Wall & Wenzel, and certain associates may now be shareholders.

Texas since 2016. *Id.* at Ex. C-27. Mr. Korb is an attorney and shareholder at Bourland, Wall & Wenzel who has been licensed to practice law in Texas since 1986. *Id.* at Ex. C-28. The court is familiar with the prevailing market rates in the Dallas legal market for attorneys with the skill, experience, and reputation of Ms. Keliher's counsel. Based on the court's knowledge of rates charged for legal services by attorneys with the level of skill, experience, and reputation as Ms. Keliher's counsel in the Dallas legal community, and its experience in setting attorney's fees in numerous other cases, and based on the certifications in Mr. Goodman's Affidavit, the court determines that the hourly rates asserted are reasonable.

Having determined that the hourly rates for Ms. Keliher's attorneys at Bourland, Wall &Wenzel are reasonable, the court next considers the time expended. Mr. Goodman has provided the court with detailed time records as evidence. *See* Doc. 1927-3 at Ex. C ¶ 16 and Exs. C-10 through C-17 (invoices). He certifies that the hours expended on the case between the dates of July 13, 2018, and December 7, 2018, were reasonable and necessary. *Id.* at Ex. C ¶ 17. For the reasons that follow, the court determines that, with the exception of the hours billed by Ms. Patterson for paralegal work, the hours expended were reasonable and necessary.

 With respect to Mr. Hill III's objections to the hours expended, the court has already addressed his arguments and rejected them. *See supra* Sec. III(A). As previously discussed, exhibits attached to Mr. Goodman's Affidavit show "No Charge" entries indicating time was written off as excessive, redundant, or unnecessary. *See* 1927-3 at Exs. C-12 and C-13. Based on its review of the invoices and Mr. Goodman's Affidavit, the court concludes that the hours expended on the case were not excessive, duplicative, unnecessary, or inadequately documented.

The court previously determined in addressing Mr. Hill III's objections that Ms. Keliher is not entitled to recover legal fees for paralegal work performed by Ms. Patterson. *See supra* Sec.

III(2)(b). The court, therefore, must subtract 83.75 hours at a rate of $175 per hour in calculating the loadstar.

Based on this reduction for Ms. Patterson's hours, the court calculates the loadstar amount as follows: 447.25 hours for Mr. Goodman at an hourly rate of $375 for a total of $167,718.75; 96.25 hours for Mr. Myers at an hourly rate of $430 for a total of $41,387.50; 361.25 hours for Mr. Millner at an hourly rate of $285 for a total of $102,956.25; 23 hours for Ms. Weaver at an hourly rate of $215 for a total of $4,945; .75 hours for Mr. Moore at an hourly rate of $370 for a total of $277.50; 13.25 hours for Ms. Feeney at an hourly rate of $190 for a total of $2,517.50; .25 hours for Ms. Jamieson at an hourly rate of $400 for a total of $100; .75 hours for Ms. Sanders at an hourly rate of $260 for a total of $195; .50 hours for Ms. Bracket at an hourly rate of $340 for a total of $170; 25.50 hours for Mr. Hogue at an hourly rate of $205 for a total of $5,227.50; and 1.50 hours for Mr. Korb at an hourly rate of $430 for a total of $645.

After making the reduction for the 83.75 hours billed by Ms. Patterson (paralegal) at her hourly rate of $175 for a total of $14,656.25, the court determines that the number of hours spent (970.25), multiplied by the reasonable hourly rates, yields a loadstar of $326,140 ($340,796.25 minus $14,656.25). The court concludes that each *Johnson* factor permissibly considered is either subsumed within the loadstar calculation or is not sufficiently pertinent to the facts of the case to warrant discussion.

In addition, the court finds that Ms. Keliher has introduced sufficient evidence of costs in the amount of $7,386.48 and that this amount is reasonable. *See* Affidavit of Mr. Goodman (Doc. 1927-3 at Ex. C ¶ 16 and Exs. C10 through C-17 (invoices)). Mr. Hill III does not contest the reasonableness of costs.

For these reasons, based on the lodestar amount and the relevant *Johnson* factors, the court will award Ms. Keliher attorney's fees in the amount of $326,140 and costs in the amount of $7,386.48 for legal services provided by Bourland, Wall & Wenzel from July 13, 2018, to December 7, 2018.

### 3.   Attorney's Fees from 12/08/2018 to 12/21/2018

Movants request attorney's fees in the amount of $50,968, and costs in the amount of $24.66 for the time period of December 8, 2018 (the day after the court issued its decision in *Hill III*), to December 21, 2018 (the date Movants submitted their request for fees and costs). From what the court can discern, these fees and costs are related to responding to Mr. Hill III's Emergency Motion to Stay, as well as fees and costs Movants incurred in compiling their evidence in support of their request for attorney's fees and costs. The court declines to award attorney's fees and costs for this time period.

As previously noted, the court issued its decision in *Hill III* on December 7, 2018. In *Hill III*, the court awarded Movants the recovery from Mr. Hill III of "all of their reasonable attorney's fees and costs of litigation incurred as a result of [Mr.] Hill III's Will Contest in the Probate Court and subsequent appeal." *Hill III,* 2018 WL 6436397, at *15. Although Mr. Hill III filed an Emergency Motion to Stay, and Movants filed a response, attorney's fees and costs incurred in responding to the Emergency Motion to Stay are not fees incurred by Movants "as a result of Hill III's Will Contest in the Probate Court and subsequent appeal." *Hill III,* 2018 WL 6436397, at *15. Further, the court determines that redacting invoices for submittal as part of Movants' request for attorney's fees does not qualify as attorney's fees and costs incurred by Movants "as a result of Hill III's Will Contest in the Probate Court and subsequent appeal." *Id*. The court in *Hill III* did not authorize the recovery of these fees and costs. Further, the court in *Hill III* did not provide for

fees and costs resulting from motions or appeals pertaining to *Hill III*, much less allowing Movants to recover their fees and costs in preparing their submission on attorney's fees and costs. Finally, the court agrees with Mr. Hill III that its order in *Hill III* "is in the past tense—it awards Movants the fees and costs they have 'incurred' and not that they 'have incurred or will incur.'" Resp. 10-11 (Doc. 1934) (quoting *Hill III*, 2018 WL 6436397, at *15).

Accordingly, the court **denies** Movants' request for attorney's fees in the amount of $50,968 and costs in the amount of $24.66 for the time period of December 8, 2018, to December 21, 2018.

### 4.  Attorney's Fees from 12/22/2018 to 01/04/2019

In their Supplement (Doc. 1935), Movants request attorney's fees in the amount of $74,893.50 for the time period of December 22, 2018 (the day after Mr. Hill III filed his notice of appeal of *Hill III* with the Fifth Circuit), to January 4, 2019 (the date Movants filed their Supplement).[10]

These attorney's fees arise from Mr. Hill III's appeal of the court's decision in *Hill III*, which he initiated on December 21, 2018. To reiterate, in *Hill III*, the court awarded Movants the recovery from Mr. Hill III of "all of their reasonable attorney's fees and costs of litigation incurred as a result of [Mr.] Hill III's Will Contest in the Probate Court and subsequent appeal." The court's reference to the "subsequent appeal" in *Hill III* refers to Mr. Hill III's appeal in state court of Judge Warren's October 11, 2018 Order Sustaining Applicant's Objection to Albert G. Hill, III Contesting the Decedent's Will and separate Order Admitting Will to Probate and Authorizing

---

[10] Specifically, Movants request an award of attorney's fees in the amount of $74,893.50 arising from: fees incurred from Hallett & Perrin, P.C. and Dorsey & Whitney, LLP for the time period of December 22, 2018, through January 4, 2019; fees incurred from Bourland, Wall & Wenzel, P.C. for the time period of December 19, 2018, through December 31, 2018; and fees incurred from Locke Lord LLP for the time period of December 20, 2018, to December 29, 2019.

Letters Testamentary, appeals the court directed Mr. Hill III to dismiss or withdraw. The court in *Hill III* did not award Movants' costs of appeal to the Fifth Circuit. As previously explained, the Fifth Circuit, in its March 12, 2020 decision, in addition to affirming those portions of the court's permanent injunction prohibiting Mr. Hill III from challenging his father's Will in any court, remanded this matter for the limited purpose of addressing whether Movants were entitled to attorney's fees and costs associated with Mr. Hill III's unsuccessful appeal. *See Hill v. Washburne*, 953 F.3d 296, 310 (5th Cir. 2020). On May 3, 2022, the court, on remand, granted Movants' request for attorney's fees (Doc. 1993) for the time period from July 2019 through March 2020 related to Mr. Hill III's appeal to the Fifth Circuit. *See Hill IV*, 2022 WL 1321548, at *1.

As this chronology makes clear, the attorney's fees sought by Movants in the Supplement are outside the scope of the court's decision in *Hill III*, in which the court only awarded fees and costs related to any appeal of Judge Warren's orders in the state courts. In addition, in *Hill IV*, following the Fifth Circuit's remand, the court has already awarded fees and costs requested by Movants pertaining to Mr. Hill III's appeal to the Fifth Circuit. The court declines to award attorney's fees and costs related to Mr. Hill III's appeal beyond the amounts it previously awarded Movants in *Hill IV*.

Accordingly, the court **denies** Movants' request in their Supplement (Doc. 1935) for attorney's fees in the amount of $74,893.50 for the time period of December 22, 2018, to January 4, 2019.

### IV. Conclusion

Based on the foregoing, the court **grants** Movants' request for attorney's fees and costs for legal fees and costs incurred as a result of Mr. Hill III's Will contest and subsequent appeal in the state appellate courts. The court **awards** Ms. Washburne and Ms. Summers attorney's fees in the

amount of **$150,514.50** and costs in the amount of **$2,959.56** for work performed by attorneys at Hallet & Perrin. The court **awards** Ms. Keliher attorney's fees in the amount of **$34,325** and costs in the amount of **$13** for work performed by attorneys at Dorsey; and attorney's fees in the amount of **$326,140** and costs in the amount of **$7,386.48** for work performed by attorneys at Bourland, Wall & Wenzel. Postjudgment interest shall accrue on the total amount of attorney's fees and costs ($521,338.54) at the applicable federal rate of 4.73% from the date of this Memorandum Opinion and Order until all amounts awarded are paid in full. The court **denies** Movants' request for attorney's fees and costs in all other respects.

**It is so ordered** this 22nd day of November, 2022.

Sam A. Lindsay
United States District Judge