IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **ALBERT G. HILL, III and ERIN NANCE HILL,** | § § § | |
| Plaintiffs, | § § | |
| v. | § § § | Civil Action No. **3:20-CV-3634-L** |
| **THE ESTATE OF ALBERT G. HILL JR.; MARGARET KELIHER; TYREE B. MILLER; LYDA HILL; HEATHER HILL WASHBURNE; ELISA HILL SUMMERS; CHESTER J. DONNALLY, JR.; THE ESTATE OF IVAN IRWIN JR.; CAROL E. ERWIN; and THOMAS P. TATHAM,** | § § § § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Defendants' Motion for Award of Attorneys' Fees and Costs Pursuant to Federal Rule of Civil Procedure 54(d) and Brief in Support (Doc. 43), filed April 8, 2022; and Defendant Lyda Hill's Motion for Attorneys' Fees and Sanctions with Supporting Brief (Doc. 41), filed April 8, 2022. Having considered the motions, responses, replies, pleadings, record, and applicable law, the court **grants** Defendants' Motion for Award of Attorneys' Fees and Costs Pursuant to Federal Rule of Civil Procedure 54(d) (Doc. 43); and **grants in part** and **denies in part** Defendant Lyda Hill's Motion for Attorneys' Fees and Sanctions (Doc. 41).

### I.    Factual Background and Procedural History

Because this case is the subject of a prior memorandum opinion and order, *see Hill v. Estate of Hill*, No. 3:20-CV-3634-L, 2022 WL 891102, at *1 (N.D. Tex. Mar. 25, 2022), *appeal dismissed*

*sub nom. Hill v. Keliher*, No. 22-10408, 2022 WL 15117035 (5th Cir. June 16, 2022) ("*Estate of Hill*"), the court will recount only the background facts and procedural history that are pertinent to this decision. In addition, the court incorporates by reference the entirety of its decision in *Estate of Hill* as set forth herein verbatim.

This lawsuit, filed by Albert G. Hill, III ("Mr. Hill III") and Erin Nance Hill ("Ms. Erin Hill") (collectively, "Plaintiffs") on December 20, 2020, involved, once again, a dispute relating to two trusts formed by Haroldson Lafayette ("H.L.") Hunt, "the late Texas oil baron reputed to be one of the world's richest men when he died in 1974." *Hill v. Washburne*, 953 F.3d 296, 300 (5th Cir. 2020) (citations omitted). In addition to parsing through the terms of the trusts, the court was required, yet again, to revisit the Global Settlement and Mutual Release Agreement (the "GSA") and the final judgment (the "Final Judgment") issued on November 8, 2010, by the Honorable Reed O'Connor ("Judge O'Connor") of the United States District Court for the Northern District of Texas (Dallas Division) in the lawsuit styled *Hill v. Hunt et al.*, Civil Action No. 3:07-cv-2020-L (the "2020 Action").[1] As recently summarized by the Fifth Circuit with regard to the 2020 Action:

> In exchange for a nine-figure payment and other benefits, Hill III agreed "not to contest the Last Will and Testament of Al Jr. or file any additional action, lawsuit, or legal proceeding challenging the disposition of his property" (the no-contest clause). The parties further "agree[d] that the remedy of specific performance and/or injunctive relief (whether mandatory or by restraint) shall be available for the breach of any term, condition, covenant, or warranty of" the settlement agreement. The parties consented to the district court's continuing jurisdiction over actions to enforce the settlement agreement.

---

[1] CM-ECF citations from *Hill v. Hunt et al.*, Civil Action No. 3:07-cv-2020-L (the "2020 Action") are referenced herein as "2020 Action, Doc. __." Also, Judge O'Connor is currently assigned to the Fort Worth Division of the Northern District of Texas.

**Memorandum Opinion and Order – Page 2**

*Hill v. Washburne*, 953 F.3d 296, 301 (5th Cir. 2020). The Fifth Circuit also recognized in *Hill v. Washburne*, "After 'protracted [and] complicated' litigation, *Hill v. Schilling*, 593 F. App'x 330, 331 (5th Cir. 2014), squabbling over the trusts was supposedly ended by a settlement agreement confected in 2010. Yet, over the next four years, our court 'weighed in on the settlement' four times. *Id.* This appeal makes it five." *Hill v. Washburne*, 953 F.3d 296, 301 (5th Cir. 2020).

In this latest lawsuit, Plaintiffs asserted claims against the Estate of Albert G. Hill, Jr.; Margaret Keliher ("Ms. Keliher"), individually and as Executor of the Estate of Albert G. Hill, Jr.; Tyree Miller ("Mr. Miller"), individually and as Trustee of The Albert G. Hill, Jr. Family Trust; Chester J. "Don" Donnally, Jr. ("Mr. Donnally"), individually and in his capacity as the court-appointed trustee for the MHTE-Albert G. Hill, Jr. Trust and the HLHTE-Albert G. Hill, Jr. Trust; Carol E. Irwin ("Ms. Irwin"), in her capacity as Personal Representative and Independent Executor of the Estate of Ivan Irwin, Jr., Deceased; Thomas P. Tatham ("Mr. Tatham"), individually and in his capacity as an advisory board member for the MHTE-Albert G. Hill, Jr. Trust and the HLHTE-Albert G. Hill, Jr. Trust; Heather Hill Washburne ("Ms. Washburne"), individually and as an advisory board member for the MHTE-Albert G. Hill, Jr. Income Beneficiary/Heather Termination Beneficiary Trust; and Elisa Hill Summers ("Ms. Summers"), individually and as an advisory board member for the MHTE-Albert G. Hill, Jr. Income Beneficiary/Elisa Termination Beneficiary Trust (sometimes collectively, the "Hill Jr. Defendants"). Plaintiffs also asserted claims against Defendant Lyda Hill ("Ms. Lyda Hill").

In their Complaint, Plaintiffs contended that they and their three children (Albert Galatyn Hill IV, Nance Haroldson Hill, and Caroline Margaret Hill)[2] were contingent or remainder

---

[2] As Plaintiffs used the full names of their three children, the court will do the same. Moreover, none of the children is a minor.

beneficiaries of various trusts created as a result of the GSA and the Final Judgment. They asserted

that the Hill Jr. Defendants, following the December 2, 2017 death of Mr. Hill III's father, Albert

G. Hill, Jr. ("Mr. Hill Jr."), breached their duties owed to Plaintiffs in the GSA and Final Judgment

by terminating and dissolving these trusts in 2016, rather than allowing them to terminate twenty-

one years after the deaths of their initial beneficiaries. *See generally* Compl. (Doc. 1). They made

similar allegations against Ms. Lyda Hill pertaining to different trusts.[3]

The Hill Jr. Defendants and Ms. Lyda Hill moved to dismiss the Complaint pursuant to

Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), arguing, among other things, that Plaintiffs

lacked standing to assert these claims pursuant to the GSA and Final Judgment; that Plaintiffs'

claims had been settled, released, and adjudicated in the Final Judgment; and that Plaintiffs had

taken positions contrary to the positions they espoused in the Complaint when it was to their benefit

and were, therefore, estopped from bringing their current claims.

The court in *Estate of Hill*, relying on paragraph 28 of the Final Judgment, concluded that

Plaintiffs lacked standing to bring their claims:

> The Final Judgment enforced the agreeing parties' waiver of standing
> provision, whereby each agreeing party, defined to include Hill III, agreed to waive
> any right to demand information, seek accountings, or assert any claim or cause of

---

[3] In the Complaint, Plaintiffs asserted the following claims arising out of the 2016 termination and dissolution of the Hill Jr. Trusts and the purported termination and dissolution of the Lyda Hill Trusts: Breach of Contract (Count One) (except as to Defendants Messrs. Donnally and Tatham); Declaratory Relief (Count Two) (against all Defendants); Imposition of a Constructive Trust/Conversion (Count III) (against all Defendants); Tortious Interference with Contract (against Messrs. Donnally and Tatham only) (Count IV); Breach of Fiduciary Duties and Fee Disgorgement (against Messrs. Donnally, Irwin, and Tatham) (Count V); Aiding and Abetting Breach of Fiduciary Duties (against Mr. Hill Jr., Lyda Hill, Ms. Washburne, and Ms. Summers) (Count VI); Civil Conspiracy (against all Defendants) (Count VII); Aiding and Abetting (against Mr. Hill Jr., Ms. Keliher, Mr. Miller, Lyda Hill, Ms. Washburne, and Ms. Summers) (Count VIII); Unjust Enrichment (against Mr. Hill Jr., Lyda Hill, Ms. Washburne, and Ms. Summers) (Count IX); Equitable Reformation (against all Defendants) (Count X); and Exemplary Damages (against all Defendants). *See* Pls.' Compl., Doc. 1.

**Memorandum Opinion and Order – Page 4**

action in connection with, any trust for the primary benefit of a descendent of Margaret Hunt Hill of which he or she was not a current beneficiary:

**Waiver of Standing**

28. **IT IS ORDERED that**, pursuant to the Agreement, the Court finds that **during such time as an Agreeing Party is not a current beneficiary of a trust** for the primary benefit of a descendant of Margaret Hunt Hill ("MHH") (an "MHH Trust") and any other descendant of MHH is living, **such Agreeing Party has waived**: (1) his or her **status as an interested person** in such trust, **and (2) all rights that he or she may have** as a future or contingent beneficiary of such trust under the instrument establishing such MHH Trust, under applicable common law, or under applicable state law, **including but not limited to the right to demand information, seek an accounting, or assert any claim or cause of action in connection with any such trust**. . . . IT IS FURTHER ORDERED that, pursuant to the Agreement, the waivers by each Agreeing Party in this paragraph shall not apply to an MHH Trust during any period in which such Agreeing Party **is a current beneficiary** of that MHH Trust, although the waivers in this paragraph shall continue to apply to any actions taken or omitted by any other person or entity during the period that such Agreeing Party **was not a current beneficiary**. For purposes of this paragraph, "current beneficiary" means a person who, at the time a current beneficiary is determined, is then entitled to receive, or is then, in an exercise of discretion by the trustee of such trust, a possible recipient of, income or principal of such trust.

*Estate of Hill*, 2022 WL 891102, at *4 (quoting 2020 Action, Doc. 999 at 35-36, ¶ 28 (emphasis added)).

Further, the court held that Mr. Hill III "is not now, nor will he ever be, a current beneficiary of the Hill Jr. Trusts, and the Waiver of Standing provision in the GSA and Final Judgment, therefore, bars him from seeking relief in this court with respect to the trusts at issue." *Id.* at *12. For these reasons, the court concluded that Mr. Hill III "has no standing, or any viable basis, for pursuing the claims in the Complaint." *Id.* Separately, the court concluded that Mr. Hill III lacked standing to assert any claims against Ms. Lyda Hill related to the HHTE because he released these claims in open court as part of the settlement. *Id.* at *13.

Based on its conclusion that Mr. Hill III lacked standing to assert any of the claims in the Complaint and noting that Ms. Erin Hill did not contest the Hill Jr. Defendants' and Ms. Lyda Hill's arguments that she lacked standing, the court granted the Hill Jr. Defendants' and Ms. Lyda Hill's respective motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). *Id.* at 11, 13.

In the alternative to dismissing Plaintiffs' claims against the Hill Jr. Defendants and Ms. Lyda Hill for lack of subject matter jurisdiction, the court dismissed their claims pursuant to Federal Rule of Civil Procedure 12(b)(6), concluding that (i) under Texas law, Plaintiffs were estopped from asserting that Mr. Hill Jr. did not have powers of appointment in the trusts; and (ii) Plaintiffs were judicially estopped from asserting that Ms. Lyda Hill lacked powers of appointment over her trusts. *Id.* at *15. The court concluded that leave to amend pleadings was not warranted and dismissed Plaintiffs' claim with prejudice, explaining:

> First, given the unique procedural history of this matter, which concluded in 2010 when Judge O'Connor issued the Final Judgment, the court can only conclude that Plaintiffs are proceeding in bad faith and allowing further amendment would be unduly prejudicial to Defendants, who have had to respond to these same contentions in multiple fora over a period of several years. In addition, in light of the court's determination that Plaintiffs are estopped from bringing their claims, either under a theory of judicial estoppel or quasi-judicial estoppel, any amendment would be futile.

*Id.* at *16.

On March 25, 2020, the court entered its Judgment, dismissing all claims asserted by Plaintiffs with prejudice and stating that "any request by Defendants for attorney's fees must be filed in accordance with Federal Rule of Civil Procedure 54(d)(2)[.]" Judgment 2 (Doc. 40). On April 8, 2022, pursuant to Rule 54(d), as well as the GSA and Final Judgment, the Hill Jr. Defendants and Ms. Lyda Hill filed their respective motions for attorney's fees and costs. The Hill

Jr. Defendants seek their attorney's fees and costs, and also ask the court to exercise its inherent powers and authority to evaluate Plaintiffs' conduct in filing this action and consider "entering an injunction precluding Plaintiffs, as vexatious litigators, from pursuing any further litigation against Defendants without obtaining leave of this Court." Hill Jr. Defs.' Mot. 13 (Doc 43). In addition to seeking her attorney's fees and costs, Ms. Lyda Hill asks the court to sanction Plaintiffs for abusing the judicial process and sanction Plaintiffs' attorneys pursuant to 28 U.S.C. § 1927 for enabling this conduct and violating their duties to the court. Lyda Hill's Mot. 2 (Doc 41). The motions have been fully briefed.

## II.    Legal Standard

In adjudicating an attorney's fees award, the court first calculates a "lodestar" fee by multiplying the hours expended by reasonable hourly rates. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012). The party seeking the fees bears the burden of establishing the number of hours expended by presenting adequate time records as evidence. *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The court should use this time as a benchmark and then exclude any time that is excessive, duplicative, unnecessary, or inadequately documented. *Id.* The hours remaining are those reasonably expended. The applicant bears the burden of establishing a reasonable number of hours expended and proving that billing judgment was exercised. *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006) (citation omitted). "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Id.* (citations omitted); *see also League of United Latin Am. Citizens v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997) ("The district court must eliminate excessive or duplicative time.") (citing *Watkins*, 7 F.3d at 457).

A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. *See Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984). The relevant legal community is the community in which the district court sits. *See Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). The burden is on the movant to "produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates" are reasonable. *Blum*, 465 U.S. at 896 n.11. There is a strong presumption of the reasonableness of the lodestar. *See Saizan*, 448 F.3d at 800.

After calculating the lodestar, the court may either (1) accept it or (2) decrease or enhance it based on the circumstances of the case, taking into account the *Johnson* factors. *See Forbush v. J.C. Penney Co.*, 98 F.3d 817, 821 (5th Cir. 1996). The *Johnson* factors are (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 718 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 90 (1989).

Although the court can adjust the lodestar upward or downward after assessing the *Johnson* factors, the party seeking the adjustment bears the burden of establishing that an adjustment is warranted. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 329 (5th Cir. 1995) (per curiam) (citation omitted). Many of the *Johnson* factors are "presumably fully reflected in the lodestar amount," and such modifications are proper only in certain "'rare' and 'exceptional' cases,

**Memorandum Opinion and Order – Page 8**

supported by both 'specific evidence' on the record and detailed findings[.]" *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (citing *Blum*, 465 U.S. at 898-901). District courts "need not specifically discuss the *Johnson* factors where [they have] applied the *Johnson* framework." *EEOC v. Agro Distribution, LLC*, 555 F.3d 462, 473 (5th Cir. 2009).

### III.    Analysis

#### A.  The Hill Jr. Defendants' Motion for Attorney's Fees and Costs

The Hill Jr. Defendants seek attorney's fees in the total amount of $284,393.06 and costs in the total amount of $3,061.19 pursuant to section III ¶ 5(r) of the GSA, which provides:

> (r) Specific Performance: The Parties agree that monetary damages alone may not be adequate recompense for any breach of this Agreement. In the event any Party breaches any of the obligations or responsibilities placed upon such Party in this Agreement, then any other Party may seek any legal or equitable remedy that may be available for such breach, and, if such Party is successful, *then the Party breaching this Agreement agrees to pay all of the other Parties' reasonable attorneys' fees and costs of litigation* in addition to any legal or equitable damages. The Parties agree that the remedy of specific performance and/or injunctive relief (whether mandatory or by restraint) shall be available for the breach of any term, condition, covenant, or warranty of this agreement.

2020 Action, Doc. 879 section III ¶ 5(r) (emphasis added).

Before determining the amount of reasonable attorney's fees and costs of litigation, the court must address the threshold matter of Plaintiffs' objections.

##### 1.  Plaintiffs' Objections to the Hill Jr. Defendants' Motion

Plaintiffs do not challenge the number of hours spent by the Hill Jr. Defendants' counsel in defending this action or the reasonableness of the hourly rates charged. Rather, they contend that the Hill Jr. Defendants should be precluded from recovering attorney's fees because they (a) sought and secured dismissal with prejudice and a take-nothing judgment against Plaintiffs' claims

under Federal Rule of Civil Procedure 12(b), rather than (b) "prevailing" on "affirmative claims for breach of the GSA." Pls.' Resp. 8 (Doc. 49). In support, Plaintiffs contend that the Hill Jr. Defendants cannot recover attorney's fees because the GSA requires Defendants to be "prevailing plaintiff[s] seeking affirmative claims for breach of the GSA" to recover attorney's fees. *Id.*

In response, the Hill Jr. Defendants maintain that "Plaintiffs' attempt to limit the attorney's fee provision in the GSA to plaintiffs has no basis in the text of the GSA." Hill Jr. Defs.' Reply 2 (Doc. 54). The court agrees. The plain language of the GSA does not condition the Hill Jr. Defendants' recovery of the attorney's fees and costs they incurred in this civil action on first obtaining "a victory on affirmative claims" for breach of contract. The GSA does not contain the words "prevailing plaintiff," "affirmative claims," or any similar limiting language. Instead, section 5(r) of the GSA expressly makes attorney's fees available to "any" non-breaching parties (here, the Hill Jr. Defendants), who successfully pursue "any legal or equitable remedy that is available" when breaching parties (here, Plaintiffs), violate their "obligations and responsibilities" set forth in the GSA. 2020 Action, Doc. 879 section III ¶ 5(r). As previously explained, *see supra* Sec. I, that is precisely what happened here, leading the court to grant the Hill Jr. Defendants' motion to dismiss. Section 5(r) also explicitly authorizes non-breaching parties to recover their attorney's fees "in addition to any legal or equitable damages," but it does not make recovering damages a prerequisite to recovering attorney's fees. *Id.*

In addition, Plaintiffs' passing reference to materially different language in Texas Civil Practice and Remedies Code § 38.001 does nothing to alter the material terms of the GSA. The Hill Jr. Defendants are not seeking attorney's fees pursuant to section 38.001. Instead, they seek to recover attorney's fees specifically provided for by contract. *See Structural Metals, Inc. v. S & C Elec. Co.*, 590 F. App'x 298, 304 (5th Cir. 2014) (quoting *In re Nalle Plastics Family Ltd.*

**Memorandum Opinion and Order – Page 10**

*P'ship*, 406 S.W.3d 168, 172 (Tex. 2013)) ("Texas follows the American Rule, which provides that there can be no recovery of attorney's fees unless authorized **by contract** or statute.") (emphasis added); *Epps v. Fowler*, 351 S.W.3d 862, 865 (Tex. 2011) (same). For these reasons, the court **overrules** Plaintiffs' objections to the Hill Jr. Defendants' fee request.

### 2.   The Hill Jr. Defendants' Fee Request

As previously stated, the Hill Jr. Defendants request attorney's fees in the total amount of $284,393.06 and costs in the total amount of $3,061.19, summarized as follows[4].

| Defendants | Fees | Costs | Total |
|---|---|---|---|
| Ms. Washburne and Ms. Summers | $104,176.00 | $1,326.89 | $105,502.89 |
| Mr. Donnally, Ms. Irwin, and Mr. Tatham | $21,517.50 | $601.45 | $22,118.95 |
| Ms. Keliher | $158,699.56 | $1,132.85 | $159,832.41 |
| | | | |
| TOTAL | $284,393.06 | $3,061.19 | $287,454.25 |

The Hill Jr. Defendants provide the court with detailed declarations from their legal counsel analyzing the legal services provided in this civil action. *See* Doc. 43-1 (Ex. A: Decl. of Tom M. Dees, III ("Mr. Dees")—counsel for Ms. Washburne and Ms. Summers); Doc. 43-2 (Ex. B: Decl. of Michael J. Lang ("Mr. Lang")—counsel for Mr. Donnally, Ms. Irwin, and Mr. Tatham); Doc. 43-3 (Ex. C: Decl. of Brian E. Mason ("Mr. Mason")—counsel for Ms. Keliher); Doc. 43-4 (Ex. D: Decl. of David J. Goodman ("Mr. Goodman")—counsel for Ms. Keliher); and Doc. 43-5 (Ex.

---

[4] The court notes some discrepancies between the fee and cost calculations set forth in the Hill Jr. Defendants' motion and the actual amounts substantiated by the invoices, particularly in the case of the invoices submitted by counsel for Mr. Donnally, Mr. Tatham, and Ms. Irvin. The court relies on the amounts reflected in the invoices attached to the Declaration of Michael J. Lang. *See* Doc. 43-2 at Ex. B and Exs. B-1 through B-7.

E: Decl. of W. Scott Hastings ("Mr. Hastings")—co-counsel for Ms. Keliher). As set out more fully below, the court concludes that these declarations are supported by evidence in the form of adequate time records establishing the number of hours expended by each timekeeper, the hourly rates charged, and the lodestar calculation for all of the legal services provided to the Hill Jr. Defendants in this matter. The evidence also establishes, in the exercise of billing judgment, the reasonableness of the hourly rates charged for these legal services, and evaluates the legal services provided based on the *Johnson* factors.

### a. Ms. Washburne and Ms. Summers' Fee Request for Legal Services Provided by Hallett & Perrin, P.C.

Ms. Washburne and Ms. Summers seek attorney's fees in the amount of $104,176 and costs of $1,326.89 (for a total of $105,502.89) that they incurred with the law firm of Hallett & Perrin, P.C. ("Hallett & Perrin"). They assert that counsel expended a total of 234.70 hours defending this action. These hours were billed through the work of four attorneys employed by Hallett & Perrin at that time: Mr. Dees; David M. Hammack ("Mr. Hammack"); Josh C. Rovelli ("Mr. Rovelli"); and Molly Cowan ("Ms. Cowan"). *See* Doc. 43-1 at Ex. A ¶ 23. Mr. Dees, in his Affidavit, summarizes the services, hours, and fees for legal services performed for Ms. Washburne and Ms. Summers in this civil action. *Id.* at Ex. A ¶ 5. Mr. Dees asserts that the fees and costs sought by his clients for this time period are "reasonable, necessary, and appropriate" taking into account the nature and complexity of this case. *Id.* at Ex. A ¶ 11. He asserts that the attorney's fees and costs incurred by Ms. Washburne and Ms. Summers in this action "are reasonable and consistent with the attorneys' fees customarily charged in the Northern District of Texas (Dallas Division) . . . for similar legal services." *Id.* at Ex. A ¶ 18. Mr. Dees also provides copies of the invoices for legal services performed for Ms. Washburne and Ms. Summers in this case. *Id.* at Ex. A ¶ 3 and Exs. A-

1 through A-7. The hours incurred—for which Ms. Washburne and Ms. Summers seek compensation—are 216 hours for Mr. Dees at an hourly rate of $450 for 2020 and $460 in 2021; 7.60 hours for Mr. Hammack at an hourly rate of $305; 6.1 hours for Mr. Rovelli at an hourly rate of $290; and 5 hours for Ms. Cowan at an hourly rate of $395. *Id.* at Ex. A ¶ 8. The total amount Ms. Washburne and Ms. Summers seek for these hours is $105,301. *Id.*

The court begins with determining what the reasonable hourly rates are for the attorneys who provided the services included in Ms. Washburne and Ms. Summers' request. As the fee applicants, Ms. Washburne and Ms. Summers bear the burden of demonstrating "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11. "Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." *Tollett*, 285 F.3d at 368 (citation omitted). "[T]rial courts are considered experts as to the reasonableness of attorney's fees[.]" *Primrose Operating Co.*, 382 F.3d at 562 (applying federal law); *Merge Off. Interiors, Inc. v. Alfa Adhesives, Inc.*, No. 3:19-CV-00336-M, 2020 WL 2115645, at *2 (N.D. Tex. May 3, 2020) (Lynn, C.J.) ("It is well-established that the Court may use its own expertise and judgment to independently assess the hourly rates charged for attorney's fees.") (citations omitted); *Hoffman v. L & M Arts*, No. 3:10-CV-0953-D, 2015 WL 3999171, at *2 (N.D. Tex. July 1, 2015) (Fitzwater, J.) (same).

Ms. Washburne and Ms. Summers assert that the following hourly rates are reasonable: $450 for legal services performed by Mr. Dees in 2020 and $460 for legal service performed by Mr. Dees in 2021; $305 for Mr. Hammack; $290 for Mr. Rovelli; and $395 for Ms. Cowan. They provide support through Mr. Dees' Declaration and exhibits to his Declaration, which attest to the qualifications and experience of these individuals. *See* Doc. 43-1 at Ex. A; *id.* at Ex. A-9

(Biographical Statement of Mr. Dees); Ex. A-10 (Biographical Statement of Mr. Hammack); Ex. A-11 (Biographical Statement of Mr. Rovelli); and Ex. A-12 (Biographical Statement of Ms. Cowan). Mr. Dees certifies that the requested rates are commensurate with similar services by lawyers and paralegals of reasonably comparable skill, experience, and reputation in the Dallas area. *Id.* at Ex. A ¶ 18.

Mr. Hill III does not contest that the hourly rates charged by counsel at Hallet & Perrin are reasonable. For the reasons that follow, the court concludes that the hourly rates Ms. Washburne and Ms. Summers request for the legal services of counsel at Hallett & Perrin are reasonable.

Mr. Dees is an attorney and shareholder at Hallet & Perrin and has been licensed to practice law in Texas since 2002. *Id.* at Ex. A ¶ 2 and Ex. A-9 (Biographical Statement of Mr. Dees). Mr. Hammack, an attorney and associate at Hallett & Perrin, has been licensed to practice law in Texas since 2014. *Id.* at Ex. A-10. Mr. Rovelli, an attorney and associate at Hallett & Perrin, has been licensed to practice law in Texas since 2015. *Id.* at Ex. A-11. Ms. Cowan, an attorney and associate at Hallett & Perrin, has been licensed to practice law in Texas since 1999. *Id.* at Ex. A-12. The court is familiar with the prevailing market rates in the Dallas legal market for attorneys with the skill, experience, and reputation of Ms. Washburne and Ms. Summers' counsel. Based on the court's knowledge of rates charged for legal services by attorneys with the level of skill, experience, and reputation as Ms. Washburne and Ms. Summers' counsel in the Dallas legal community, and its experience in setting attorney's fees in numerous other cases, and based on the certifications in Mr. Dees' Affidavit, the court determines that the hourly rates asserted are reasonable.

Having determined that the hourly rates for Ms. Washburne and Ms. Summers' attorneys are reasonable, the court next considers the time expended. Mr. Dees has provided the court with

detailed time records as evidence. *See* Doc. 43-1 at Ex. A ¶ 3 and Exs. A-1 through A-7 (invoices).

He certifies that the hours expended on the case were reasonable and necessary. *Id.* at Ex. A ¶ 11.

As previously stated, Plaintiffs do not object to the hours expended. Further, the Exhibits attached to Mr. Dees' Declaration show several "No Charge" entries indicating time was written off as excessive, redundant, or unnecessary. *See id.* at Ex. A and at Exs. A-1 through A-7. Further, Mr. Dees states that he "exercised billing judgment in good faith" as reflected by the numerous time entries marked as "NO CHARGE" and time entries containing reduced hours billed to the client. *See id.* at Ex. A ¶ 6. Based on its review of the invoices and Mr. Dees' Declaration, the court concludes the hours expended on the case were not excessive, duplicative, unnecessary, or inadequately documented.

The court will use the following hours and rates in calculating the loadstar amount: 216 hours at an hourly rate of $450 for legal services performed by Mr. Dees in 2020 and $460 for legal services performed by Mr. Dees in 2021 for a total of $99,239 in attorney's fees; 47.60 hours at an hourly rate of $305 for Mr. Hammack for a total of $2,318 in attorney's fees; 6.1 hours at an hourly rate of $290 for Mr. Rovelli for a total of $1,769 in attorney's fees; and 5 hours at an hourly rate of $395 for Ms. Cowan for a total of $1,975 in attorney's fees.

Prior to calculating the lodestar amount, the court notes that Mr. Dees has removed 2.5 hours at an hourly rate of $450 (for a total of $1,125) from Hallett and Perrin Invoice 209558 for purposes of the attorney's fee request because he determined it was a charge from another matter. *See id.* at Ex. A ¶ 8 and notes 11 and 12.

After taking into account the reduction of 2.5 hours from Hallett and Perrin Invoice 209558, the court determines that the number of hours spent (234.70), multiplied by the reasonable hourly rate, yields a lodestar of $104,176. The court concludes that each *Johnson* factor

permissibly considered is either subsumed within the lodestar calculation or is not sufficiently pertinent to the facts of the case to warrant discussion.

In addition, the court finds that Ms. Washburne and Ms. Summers have introduced sufficient evidence of costs in the amount of $1,326.89, and it concludes that this amount is reasonable. *See id.* at Ex. A ¶ 9 and Exs. A-1 through A-7 (invoices). Mr. Hill III does not contest the amount or reasonableness of the costs requested.

For these reasons, based on the lodestar amount and the relevant *Johnson* factors, the court will award Ms. Washburne and Ms. Summers attorney's fees in the amount of $104,176 and costs in the amount of $1,326.89.

### b. Mr. Donnally, Mr. Tatham, and Ms. Irwin's Fee Request for Legal Services Provided by Crawford Wishnew & Lang, PLLC

Messrs. Donnally and Tatham, as well as Ms. Irwin, seek attorney's fees in the amount of $21,517.50 and costs of $601.45 (for a total of $22,118.95) that they incurred with the law firm of Crawford Wishnew & Lang, PLLC ("CWL"). They assert that counsel expended a total of 216 hours defending this action. These hours were billed through the work of Mr. Lang, a shareholder and attorney at CWL. *See* Doc. 43-3 at Ex. B ¶ 2. Mr. Lang, in his Declaration, summarizes the services, hours, and fees for legal services performed for Messrs. Donnally and Tatham, as well as Ms. Irwin, in this civil action. *Id.* at Ex. B ¶ 3. Mr. Lang asserts that the fees and costs sought by his clients for this time period are "reasonable, necessary, and appropriate," taking into account the nature and complexity of this case. *Id.* at Ex. B ¶ 11. He asserts that the attorney's fees and costs incurred by Messrs. Donnally and Tatham and Ms. Irwin in this action "are reasonable and consistent with the attorneys' fees customarily charged in the Northern District of Texas (Dallas Division) . . . for similar legal services." *Id.* at Ex. B ¶ 18. Mr. Lang also provides copies of the

invoices for legal services performed for Messrs. Donnally and Tatham and Ms. Irwin in this case. *Id.* at Ex. B ¶ 3 and Exs. B-1 through B-7. The hours incurred—for which Messrs. Donnally and Tatham and Ms. Irwin seek compensation—are 45.3 hours for Mr. Lang at an hourly rate of $475. *Id.* at Ex. B ¶ 8. The total amount seek for these hours is $21,517.50. *Id.*

The court begins with determining what the reasonable hourly rate is for Mr. Lang. As the fee applicants, Messrs. Donnally and Tatham and Ms. Irwin bear the burden of demonstrating "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11. "Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." *Tollett*, 285 F.3d at 368 (citation omitted). "[T]rial courts are considered experts as to the reasonableness of attorney's fees[.]" *Primrose Operating Co.*, 382 F.3d at 562 (applying federal law).

Messrs. Donnally and Tatham and Ms. Irwin assert that $475 for legal services performed by Mr. Lang is reasonable. They provide support through Mr. Lang's Declaration and exhibits to his Declaration, which attest to his qualifications and experience. *See* Doc. 43-2 at Ex. B; *id.* at Ex. B-8 (Biographical Statement of Mr. Lang). Mr. Lang certifies that the requested rate is commensurate with similar services by lawyers and paralegals of reasonably comparable skill, experience, and reputation in the Dallas area. *Id.* at Ex. B ¶ 18.

Mr. Hill III does not contest that the hourly rates charged by counsel at CWL are reasonable. For the reasons that follow, the court concludes that the hourly rates Messrs. Donnally and Tatham and Ms. Irwin request for the legal services of counsel at CWL are reasonable.

Mr. Lang is an attorney and shareholder at CWL and has been licensed to practice law in Texas since 2002. *Id.* at Ex. B ¶ 1 and Ex. B-9 (Biographical Statement of Mr. Lang). The court is

**Memorandum Opinion and Order – Page 17**

familiar with the prevailing market rates in the Dallas legal market for attorneys with the skill, experience, and reputation of Mr. Lang. Based on the court's knowledge of rates charged for legal services by attorneys with the level of skill, experience, and reputation as Mr. Lang in the Dallas legal community, and its experience in setting attorney's fees in numerous other cases, and based on the certifications in Mr. Lang's Declaration, the court determines that the hourly rates asserted are reasonable.

Having determined that the hourly rates for Mr. Lang are reasonable, the court next considers the time expended. Mr. Lang has provided the court with detailed time records as evidence. *See* Doc. 43-2 at Ex. B ¶ 2 and Exs. B-1 through B-7 (invoices). He certifies that the hours expended on the case were reasonable and necessary. *Id.* at Ex. B ¶ 12.

As previously stated, Plaintiffs do not object to the hours expended. Further, the Exhibits attached to Mr. Lang's Declaration show several "No Charge" entries indicating time was written off as excessive, redundant, or unnecessary. *See* Doc. 43-2 at Ex. B and at Exs. B-1 through B-7. Further, Mr. Lang states that he "exercised billing judgment in good faith" as reflected by the numerous time entries marked as "NO CHARGE" and time entries containing reduced hours billed to the client. *See id.* at Ex. B ¶ 6. Based upon its review of the invoices and Mr. Lang's Affidavit, the court concludes that the hours expended on the case were not excessive, duplicative, unnecessary, or inadequately documented.

The court calculates the loadstar amount as follows: 45.3 hours for Mr. Lang at an hourly rate of $475 for a total of $21,517.50 in attorney's fees.  The court determines that the number of hours spent (45.3), multiplied by the reasonable hourly rate ($475), yields a lodestar of $21,517.50. The court concludes that each *Johnson* factor permissibly considered is either subsumed within the lodestar calculation or is not sufficiently pertinent to the facts of the case to warrant discussion.

**Memorandum Opinion and Order – Page 18**

In addition, the court finds that Messrs. Donnally and Tatham and Ms. Irwin have introduced sufficient evidence of costs in the amount of $601.45, and it concludes that this amount is reasonable. *See id.* at Ex. B ¶ 9 and Exs. B-1 through B-7 (invoices). Mr. Hill III does not contest the amount or reasonableness of the costs requested.

For these reasons, based on the lodestar amount and the relevant *Johnson* factors, the court will award Messrs. Donnally and Tatham and Ms. Irwin attorney's fees in the amount of $21,517.50 and costs in the amount of $601.45.

### c. Ms. Keliher's Fee Request for Legal Services Provided by Dorsey & Whitney, LLP

Ms. Keliher seeks attorney's fees in the amount of $48,476 that she incurred with the law firm of Dorsey & Whitney, LLP ("Dorsey").[5] She asserts that counsel expended a total of 92.40 hours in this action. These hours were billed through the work of five attorneys and one paralegal employed by Dorsey at that time: Mr. Mason; G. Michael Gruber ("Mr. Gruber"); Doug Lang ("Mr. Lang"); Christina Carroll ("Ms. Carroll"); Amir Saboorian ("Mr. Saboorian"); and paralegal Kim Milligan ("Ms. Milligan"). *See* Doc. 43-3 at Ex. C ¶ 28. Mr. Mason, in his Declaration, states he is lead counsel for Ms. Keliher, "in her capacity as personal representative and successor Independent Executor of the Estate of Albert G. Hill, Jr." *Id.* at Ex. C ¶ 2. He summarizes the services, hours, and fees for legal services performed for Ms. Keliher in this civil action. *Id.* at Ex. C ¶ 3. Mr. Mason asserts that the fees and costs sought by his clients for this time period are "fair,

---

[5] The court notes that in the Hill Jr. Defendants' motion for attorney's fees, Mr. Miller is listed as a movant along with Ms. Keliher in her request for attorney's fees for legal services provided by Dorsey. Mr. Mason's Declaration makes clear, however, that he represented Ms. Keliher "in her capacity as personal representative and successor Independent Executor of the Estate of Albert G. Hill, Jr." Mr. Mason's Decl. at Ex. C ¶ 2. In addition, the evidence pertaining to fees relates solely to work performed for Ms. Keliher. *See* Docs. 43-3 through 43-5. As such, the court concludes that the inclusion of Mr. Miller in the motion was a typographical error.

reasonable and necessary, and equitable and just under the facts and circumstances in this civil action." *Id.* at Ex. C ¶ 11. He further asserts that the attorney's fees and costs incurred by Ms. Keliher in this action "are reasonable and consistent with the attorneys' fees customarily charged in the Northern District of Texas (Dallas Division) . . . for similar legal services." *Id.* at Ex. C ¶ 18. Mr. Mason also provides copies of the invoices for legal services performed for Ms. Keliher in this case. *Id.* at Ex. C ¶ 3 and Exs. C-1 through C-6. The hours incurred—for which Ms. Keliher seeks compensation—are 61.60 hours for Mr. Mason at an hourly rate of $495; 13.90 hours for Mr. Gruber at an hourly rate of $760; 4.70 hours for Mr. Lang at an hourly rate of $695; .50 hours for Ms. Carroll at an hourly rate of $475; 6.90 hours for Mr. Saboorian at an hourly rate of $390; and 4.90 hours for Ms. Milligan at an hourly rate of $250. *Id.* at Ex. C ¶ 8.  The total amount Ms. Keliher seeks for these hours is $48,476. *Id.*

The court begins with determining what the reasonable hourly rates are for the attorneys who provided the services included in Ms. Keliher's request. As the fee applicants, they bear the burden of demonstrating "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11. "Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." *Tollett*, 285 F.3d at 368 (citation omitted). "[T]rial courts are considered experts as to the reasonableness of attorney's fees[.]" *Primrose Operating Co.*, 382 F.3d at 562 (applying federal law).

Ms. Keliher asserts that the following hourly rates are reasonable: $495 per hour for Mr. Mason; $760 per hour for Mr. Gruber; $695 per hour for Mr. Lang; $475 per hour for Ms. Carroll; $390 per hour for Mr. Saboorian; and $250 per hour for Ms. Milligan. *Id.* at Ex. C ¶ 8.  The total amount Ms. Keliher seeks for these hours is $48,476. She provides support through Mr. Mason's

Declaration and exhibits to his Declaration, which attest to counsels' and Ms. Milligan's qualifications and experience. *See* Doc. 43-3 at Ex. C; *id.* at Ex. C-8 (Biographical Statement of Mr. Mason); Ex. C-9 (Biographical Statement of Mr. Gruber); Ex. C-10 (Biographical Statement of Mr. Lang); Ex. C-11 (Biographical Statement of Ms. Carroll); Ex. C-12 (Biographical Statement of Mr. Saboorian); and Ex. C-13 (Biographical Statement of Ms. Milligan). Mr. Mason certifies that the requested rates are commensurate with similar services by lawyers and paralegals of reasonably comparable skill, experience, and reputation in the Dallas area. *Id.* at Ex. C ¶ 18.

Plaintiffs do not contest that the hourly rates charged by counsel at Dorsey are reasonable. For the reasons that follow, the court concludes that the hourly rates Ms. Keliher requests for the legal services of counsel at Dorsey are reasonable.

Mr. Mason, an attorney and shareholder at Dorsey, has been licensed to practice law in Texas since 2012. *Id.* at Ex. C ¶ 1 and Ex. C-8 (Biographical Statement of Mr. Mason). Mr. Gruber, an attorney and shareholder at Dorsey, has been licensed to practice law in Texas since 1981. *Id.* at Ex. C-9. Mr. Lang, an attorney and of counsel at Dorsey, has been licensed to practice law in Texas since 1973. *Id.* at Ex. C-10. Ms. Carroll, an attorney and associate at Dorsey, has been licensed to practice law in Texas since 2014. *Id.* at Ex. C-11. Mr. Saboorian, an attorney and associate at Dorsey, has been licensed to practice law in Texas since 2020. *Id.* at Ex. C-12. Ms. Milligan, a paralegal at Dorsey, has over seven years of trial experience. *Id.* at Ex. C-13. The court is familiar with the prevailing market rates in the Dallas legal market for attorneys with the skill, experience, and reputation of Ms. Keliher's counsel and paralegals with the skill, experience, and reputation of Ms. Milligan. Based on the court's knowledge of rates charged for legal services by attorneys and paralegals with the level of skill, experience, and reputation as Ms. Keliher's counsel and paralegal in the Dallas legal community, and its experience in setting attorney's fees in

numerous other cases, and based on the certifications in Mr. Mason's Declaration, the court determines that the hourly rates asserted are reasonable.

Having determined that the hourly rates for Ms. Keliher's attorneys and paralegal are reasonable, the court next considers the time expended. Mr. Mason has provided the court with detailed time records as evidence. *See* Doc. 43-3 at Ex. C ¶ 3 and Exs. C-1 through C-7 (invoices). He certifies that the hours expended on the case were reasonable and necessary. *Id.* at Ex. C ¶ 11.

As previously stated, Plaintiffs do not object to the hours expended. Further, the Exhibits attached to Mr. Mason's Declaration show several "No Charge" entries indicating time was written off as excessive, redundant, or unnecessary. *See id.* at Ex. C and at Exs. C-1 through C-7. Further, Mr. Mason states that he "exercised billing judgment in good faith by making adjustment to the amounts billed to the Hill Jr. Estate by excluding and/or reducing hours billed to them in an effort to determine a reasonable and necessary fee for each invoice." *See id.* at Ex. C ¶ 6. Based on its review of the invoices and Mr. Mason's Declaration, the court concludes that the hours expended on the case were not excessive, duplicative, unnecessary, or inadequately documented.

The court will use the following hours and rates in calculating the loadstar amount:  61.60 hours at an hourly rate of $495 for Mr. Mason; 13.90 hours at an hourly rate of $760 per hour for Mr. Gruber; 4.70 hours at an hourly rate of $695 for Mr. Lang; .50 hours at an hourly rate of $475 for Ms. Carroll; 6.90 hours at an hourly rate of $390 for Mr. Saboorian; and 4.90 hours at an hourly rate of $250 for Ms. Milligan. *Id.* at Ex. C ¶ 8. The total amount Ms. Keliher seeks for these hours is $48,476.

The court determines that the number of hours spent (92.50), multiplied by the reasonable hourly rate, yields a lodestar of $48,476. The court concludes that each *Johnson* factor permissibly considered is either subsumed within the lodestar calculation or is not sufficiently pertinent to the

**Memorandum Opinion and Order – Page 22**

facts of the case to warrant discussion. For these reasons, based on the lodestar amount and the relevant *Johnson* factors, the court will award Ms. Keliher attorney's fees in the amount of $48,476 for legal services performed by counsel and paralegals at Dorsey.

> ### d. Ms. Keliher's Fee Request for Legal Services Provided by Bourland, Wall & Wenzel, P.C.

Ms. Keliher seeks attorney's fees in the amount of $87,438.56 that she incurred with the law firm of Bourland, Wall & Wenzel, P.C. ("Bourland, Wall & Wenzel"). She asserts that counsel expended a total of 830.49 hours in this action. These hours were billed through the work of four attorneys employed by Bourland, Wall & Wenzel at that time: Mr. Goodman; Jeffrey N. Myers ("Mr. Myers"); Eric J. Millner ("Mr. Millner"); and Austin L. Caldera ("Mr. Caldera"). *See* Doc. 43-4 at Ex. D ¶ 9. Mr. Goodman, in his Declaration, summarizes the services, hours, and fees for legal services performed for Ms. Keliher in this civil action. *Id.* at Ex. D ¶ 3. Mr. Goodman asserts that the fees and costs sought by his clients for this time period are "fair, reasonable and necessary, and equitable and just under the facts and circumstances in this civil action." *Id.* at Ex. D ¶ 10. He further asserts that the attorney's fees and costs incurred by Ms. Keliher in this action "are reasonable and consistent with the attorneys' fees customarily charged in the Northern District of Texas (Dallas Division) for similar legal services." *Id.* at Ex. D ¶ 15. Mr. Goodman also provides copies of the invoices for legal services performed for Ms. Keliher in this case. *Id.* at Ex. D ¶ 8 and Exs. D-1 through D-7. The hours incurred—for which Ms. Keliher seeks compensation—are 131.74 hours for Mr. Goodman at an hourly rate of $400 for his legal services in 2020 and $415 for his legal services in 2021; 17.25 hours for Mr. Myers at an hourly rate of $450 for his legal services in 2020 and $460 for his legal services in 2021; 72.75 hours for Mr. Millner at an hourly rate of $305 for his legal services in 2020 and $285 for his legal services in 2018; and 10.75 hours

for Mr. Caldera at an hourly rate of $150, and subsequently $200, for his legal services in 2020 and $215 for his legal services in 2021. *Id.* at Ex. D ¶ 9.  The total amount Ms. Keliher seeks for these hours is $87,438.56. *Id.*

The court begins with determining what the reasonable hourly rates are for the attorneys who provided the services included in Ms. Keliher's request. As the fee applicants, she bears the burden of demonstrating "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11. "Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." *Tollett*, 285 F.3d at 368 (citation omitted). "[T]rial courts are considered experts as to the reasonableness of attorney's fees[.]" *Primrose Operating Co.*, 382 F.3d at 562 (applying federal law).

Ms. Keliher asserts that the following hourly rates are reasonable: $400 for Mr. Goodman in 2020 and $415 in 2021; $450 for Mr. Myers in 2020 and $460 in 2021; $285 for Mr. Millner in 2018 and $305 in 2020; and $150 and $200 in 2020 for Mr. Caldera and $215 in 2021. *Id.* at Ex. D ¶ 9. The total amount Ms. Keliher seeks for these hours is $87,438.56. She provides support through Mr. Goodman's Declaration and exhibits to his Declaration, which attest to counsels' qualifications and experience. *See* Doc. 43-4 at Ex. D; *id.* at Ex. D-8 (Biographical Statement of Mr. Myers); Ex. D-9 (Biographical Statement of Mr. Goodman); Ex. D-10 (Biographical Statement of Mr. Millner); and Ex. D-11 (Biographical Statement of Mr. Caldera). Mr. Goodman certifies that the requested rates are commensurate with similar services by lawyers of reasonably comparable skill, experience, and reputation in the Dallas area. *Id.* at Ex. D ¶ 15.

**Memorandum Opinion and Order – Page 24**

Plaintiffs do not contest that the hourly rates charged by counsel at Bourland, Wall & Wenzel are reasonable. For the reasons that follow, the court concludes that the hourly rates Ms. Keliher requests for the legal services of counsel at Bourland, Wall & Wenzel are reasonable.

Mr. Goodman is an attorney and shareholder at Bourland, Wall & Wenzel and has been licensed to practice law in Texas since 1999. *Id.* at Ex. D ¶ 2 and Ex. C-9 (Biographical Statement of Mr. Goodman). Mr. Myers is an attorney and shareholder at Bourland, Wall & Wenzel and has been licensed to practice law in Texas since 1994. *Id.* at Ex. D-8 (Biographical Statement of Mr. Myers). Mr. Millner is an attorney and of counsel at Bourland, Wall & Wenzel and has been licensed to practice law in Texas since 2003. *Id.* at Ex. D-10 (Biographical Statement of Mr. Millner). Mr. Caldera is an attorney and associate at Bourland, Wall & Wenzel and has been licensed to practice law in Texas since 2020. *Id.* at Ex. D-11 (Biographical Statement of Mr. Caldera). The court is familiar with the prevailing market rates in the Dallas legal market for attorneys with the skill, experience, and reputation of Ms. Keliher's counsel. Based on the court's knowledge of rates charged for legal services by attorneys and paralegals with the level of skill, experience, and reputation as Ms. Keliher's counsel in the Dallas legal community, and its experience in setting attorney's fees in numerous other cases, and based on the certifications in Mr. Goodman's Declaration, the court determines that the hourly rates asserted are reasonable.

Having determined that the hourly rates for Ms. Keliher's attorneys are reasonable, the court next considers the time expended. Mr. Goodman has provided the court with detailed time records as evidence. *See* Doc. 43-4 at Ex. D ¶ 6 and Exs. D-1 through D-7 (invoices). He certifies that the hours expended on the case were reasonable and necessary. *Id.* at Ex. D ¶ 10.

As previously stated, Plaintiffs do not object to the hours expended. Based on its review of the invoices and Mr. Goodman's Declaration, the court concludes that the hours expended on the case were not excessive, duplicative, unnecessary, or inadequately documented.

The court will use the following hours and rates in calculating the loadstar amount: 131.74 hours at an hourly rate of $400 in 2020 and $415 in 2021 for Mr. Goodman; 17.25 hours at an hourly rate of $450 in 2020 and $460 in 2021 for Mr. Myers; 72.5 hours at an hourly rate of $285 in 2018 and $305 in 2020 for Mr. Millner; and 10.75 hours at an hourly rate of $150, and subsequently $200 in 2020 and $215 in 2021 for Mr. Caldera. *Id.* at Ex. D ¶ 9. The total amount Ms. Keliher seeks for these hours is $87,438.56.

The court determines that the number of hours spent (830.49), multiplied by the reasonable hourly rate, yields a lodestar of $87,438.56. The court concludes that each *Johnson* factor permissibly considered is either subsumed within the lodestar calculation or is not sufficiently pertinent to the facts of the case to warrant discussion. For these reasons, based on the lodestar amount and the relevant *Johnson* factors, the court will award Ms. Keliher attorney's fees in the amount of $87,438.56 for legal services performed by counsel at Bourland, Wall & Wenzel.

### e. Ms. Keliher's Fee Request for Legal Services Provided by Locke Lord, LLP

Ms. Keliher seeks attorney's fees in the amount of $22,755 and costs of $1,132.85 (for a total of $23,877.85) that she incurred with the law firm of Locke Lorde, LLP ("Locke Lord"). She asserts that counsel expended a total of 27.75 hours in this action. These hours were billed through the work of Mr. Hastings, a shareholder and attorney at Locke Lord. *See* Doc. 43-5 at Ex. E ¶ 2. Mr. Hastings, in his Declaration, states he is co-counsel to Ms. Keliher in this matter. *Id.* at Ex. E ¶ 2. He summarizes the services, hours, and fees for legal services performed for Ms. Keliher in this civil action. *Id.* at Ex. D ¶ 3. Mr. Hastings asserts that the fees and costs sought by his client

for this time period are "reasonable, necessary, and appropriate," taking into account the nature and complexity of this case. *Id.* at Ex. E ¶ 11. He asserts that the attorney's fees and costs incurred by Ms. Keliher in this action "are reasonable and consistent with the attorneys' fees customarily charged in the Northern District of Texas (Dallas Division) . . . for similar legal services." *Id.* at Ex. E ¶ 18. Mr. Hastings also provides copies of the invoices for legal services performed for Ms. Keliher in this case. *Id.* at Ex. E ¶ 3 and Exs. E-1 through E-4. The hours incurred—for which Ms. Keliher seeks compensation—are 27.75 hours for Mr. Hastings at an hourly rate of $820. *Id.* at Ex. E ¶ 8. The total amount Ms. Keliher seeks for these hours is $22,755. *Id.*

The court begins with determining what the reasonable hourly rate is for Mr. Hastings. As the fee applicant, Ms. Keliher bears the burden of demonstrating "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11. "Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." *Tollett*, 285 F.3d at 368 (citation omitted). "[T]rial courts are considered experts as to the reasonableness of attorney's fees[.]" *Primrose Operating Co.*, 382 F.3d at 562 (applying federal law).

Ms. Keliher asserts that $820 for legal services performed by Mr. Hastings is reasonable. She provides support through Mr. Hastings' Declaration, which attests to his qualifications and experience. *See* Doc. 43-5 at Ex. E. Mr. Hastings certifies that the requested rate is commensurate with similar services by lawyers of reasonably comparable skill, experience, and reputation in the Dallas area. *Id.* at Ex. E ¶ 18.

Plaintiffs do not contest that the hourly rates charged by counsel at Locke Lord are reasonable. For the reasons that follow, the court concludes that the hourly rates Ms. Keliher requests for the legal services of counsel at Locke Lord are reasonable.

Mr. Hastings is an attorney and shareholder at Locke Lord and has been licensed to practice law since 1997. *Id.* at Ex. E ¶ 1. The court is familiar with the prevailing market rates in the Dallas legal market for attorneys with the skill, experience, and reputation of Mr. Hastings. Based on the court's knowledge of rates charged for legal services by attorneys with the level of skill, experience, and reputation as Mr. Hastings in the Dallas legal community, and its experience in setting attorney's fees in numerous other cases, and based on the certifications in Mr. Hastings' Declaration, the court determines that the hourly rates asserted are reasonable.

Having determined that the hourly rates for Mr. Hastings are reasonable, the court next considers the time expended. Mr. Hastings has provided the court with detailed time records as evidence. *See id.* at Ex. E ¶ 3 and Exs. E-1 through E-4 (invoices). He certifies that the hours expended on the case were reasonable and necessary. *Id.* at Ex. E ¶ 12.

As previously stated, Plaintiffs do not object to the hours expended. Based on its review of the invoices and Mr. Hastings' Declaration, the court concludes that the hours expended on the case were not excessive, duplicative, unnecessary, or inadequately documented.

The court will calculate the loadstar amount as follows: 27.75 hours for Mr. Hastings at an hourly rate of $820 for a total of $22,755 in attorney's fees.  The court determines that the number of hours spent (27.75), multiplied by the reasonable hourly rate ($820), yields a lodestar of $22,755. The court concludes that each *Johnson* factor permissibly considered is either subsumed within the lodestar calculation or is not sufficiently pertinent to the facts of the case to warrant discussion.

**Memorandum Opinion and Order – Page 28**

In addition, the court finds that Ms. Keliher has introduced sufficient evidence of costs in the amount of $1,132.85, and it concludes that this amount is reasonable. *See id.* at Ex. E ¶ 9 and Exs. E-1 through E-4 (invoices)). Mr. Hill III does not contest the amount or reasonableness of the costs requested.

For these reasons, based on the lodestar amount and the relevant *Johnson* factors, the court will award Ms. Keliher attorney's fees in the amount of $22,755 and costs in the amount of $1,132.85.

### f.   *The Hill Jr. Defendants' Request for Sanctions Against Plaintiffs*

Finally, the Hill Jr. Defendants request that the court use its inherent power to sanction Plaintiffs for their undeterred pattern of violating the GSA and Final Judgment, ceaseless litigation for twelve years after this matter was closed pursuant to the Final Judgment, and failure to abide by the court's numerous warnings. For the reasons detailed more fully below, *see infra* Sec. IV, after considering Plaintiffs' conduct in filing this action against the backdrop of the history of this matter, the 2020 Action, and the actions filed by Mr. Hill III in the probate court of Dallas County, Texas, *the court **grants** the Hill Jr. Defendants' request that the court exercise its inherent powers and authority to sanction Plaintiffs. The court hereby **enjoins** Plaintiffs, as serial litigators, from pursuing any further litigation against the Hill Jr. Defendants without obtaining leave of this court.*

### B.  Ms. Lyda Hill's Motion for Attorney's Fees and Costs

Ms. Lyda Hill seeks attorney's fees in the total amount of $36,895 for legal services provided by counsel at Winston & Strawn, LLP ("Winston & Strawn") and $181,400.50 for legal

services provided by counsel at Haynes & Boone, LLP ("Haynes & Boone") pursuant to section III ¶ 5(r) of the GSA.[6]

### 1.   Ms. Lyda Hill's Fee Request for Legal Services Provided by Winston & Strawn

Ms. Lyda Hill seeks attorney's fees in the amount of $36,895 that she incurred with the law firm of Winston & Strawn. She asserts that counsel expended a total of 39.50 hours in this action. These hours were billed through the work of Grant K. Schmidt ("Mr. Schmidt"), who, at all relevant times was an attorney at Winston & Strawn. *See* Doc. 42 at Ex. A ¶ 4. Mr. Schmidt, in his Declaration, states that he, along with Haynes & Boone, served as co-counsel to Ms. Lyda Hill in this matter. *Id.* He summarizes the services, hours, and fees for legal services performed for Ms. Lyda Hill in this civil action. *Id.* at Ex. A ¶ 5. Mr. Schmidt asserts that the fees and costs sought by his client for this time period are "reasonable and necessary," taking into account the nature and complexity of this case. *Id.* at Ex. A ¶ 8. He asserts that the attorney's fees and costs incurred by Ms. Lyda Hill in this action "are reasonable and consistent with the attorneys' fees customarily charged in Dallas County and Harris County, Texas for similar legal services." *Id.* at Ex. A ¶ 14. Mr. Schmidt also provides copies of the invoices for legal services performed for Ms. Lyda Hill in this case. *Id.* at Ex. A ¶ 7 and Ex. A-2. The hours incurred—for which Ms. Lyda Hill seeks compensation—are 39.50 hours for Mr. Schmidt at an hourly rate of $860 in January 2021, adjusted to an hourly rate of $935 thereafter for services performed on her behalf in this matter. *Id.* at Ex. A ¶ 8. The total amount she seeks for these hours is $36,895. *Id.*

---

[6] For the reasons previously stated, *see supra* Sec. III.A.1, the court **overrules** Plaintiffs' objection premised on the argument that section III ¶ 5(r) of the GSA limits the recovery of attorney's fee to Plaintiffs. As previously stated by the court in overruling this same objection made by Plaintiffs to the Hill Jr. Defendants' request for fees, Plaintiffs' construction of this provision has no basis in the text of the GSA.

The court begins with determining what the reasonable hourly rate is for Mr. Schmidt. As the fee applicant, Ms. Lyda Hill bears the burden of demonstrating "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11. "Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." *Tollett*, 285 F.3d at 368 (citation omitted). "[T]rial courts are considered experts as to the reasonableness of attorney's fees[.]" *Primrose Operating Co.*, 382 F.3d at 562 (applying federal law).

Ms. Lyda Hill asserts that the hourly rate of $860 in January 2021, adjusted to an hourly rate of $935 thereafter for legal services performed by Mr. Schmidt, is reasonable. She provides support through Mr. Schmidt's Declaration, which attests to his qualifications and experience. *See* Doc. 42 at Ex. A. Mr. Schmidt certifies that the requested rate is commensurate with similar services by lawyers of reasonably comparable skill, experience, and reputation in the Dallas County and Harris County area. *Id.* at Ex. A ¶ 14.

Plaintiffs contest the hourly rates charged by counsel at Winston & Strawn, arguing that the rates are unreasonable because they are more than the rates charged by Plaintiffs' counsel and other defense counsel in this case. For the reasons that follow, the court **overrules** Plaintiffs' objection and concludes that the hourly rates Ms. Lyda Hill requests for the legal services of counsel at Winston & Strawn are reasonable.

Mr. Schmidt is an attorney and has been licensed to practice law since 2013. *Id.* at Ex. A ¶ 2. At all relevant times, he worked at Winston & Strawn representing Ms. Lyda Hill. As the court recently recognized in considering similar requested hourly rates charged by counsel with similar experience in the 2020 Action, counsel practicing at large firms (such as Winston & Strawn) and

**Memorandum Opinion and Order – Page 31**

their rates are in line with the rates charged at comparable large firms in the area for similar legal services. *See* 2020 Action Doc. 2013 at 10. The court is familiar with the prevailing market rates in the Dallas legal market for attorneys with the skill, experience, and reputation of Mr. Schmidt. Based on the court's knowledge of rates charged for legal services by attorneys with the level of skill, experience, and reputation as Mr. Schmidt in the Dallas legal community, and its experience in setting attorney's fees in numerous other cases, and based on the certifications in Mr. Schmidt's Declaration, the court determines that the hourly rates asserted are reasonable.

Having determined that the hourly rates for Mr. Schmidt are reasonable, the court next considers the time expended. Mr. Schmidt has provided the court with detailed time records as evidence. *See id.* at Ex. A ¶ 7 and Ex. A-2 (invoice). He certifies that the hours expended on the case were reasonable and necessary. *Id.* at Ex. A ¶ 8.

As previously stated, Plaintiffs do not object to the hours expended. Based on its review of the invoice and Mr. Schmidt's Declaration, the court concludes that the hours expended on the case were not excessive, duplicative, unnecessary, or inadequately documented.

The court will calculate the loadstar amount as follows: 39.50 hours for Mr. Schmidt at an hourly rate of $860 in January 2021, adjusted to an hourly rate of $935 thereafter for legal services performed by Mr. Schmidt, for a total of $36,895 in attorney's fees. The court determines that the number of hours spent (39.50), multiplied by the reasonable hourly rate ($860 in January 2021, adjusted to an hourly rate of $935 thereafter), yields a lodestar of $36,895. The court concludes that each *Johnson* factor permissibly considered is either subsumed within the lodestar calculation or is not sufficiently pertinent to the facts of the case to warrant discussion.

For these reasons, based on the lodestar amount and the relevant *Johnson* factors, the court will award Ms. Lyda Hill attorney's fees in the amount of $36,895 for legal services provided by counsel at Winston & Strawn.

### 2.   Ms. Lyda Hill's Fee Request for Legal Services Provided by Haynes & Boone

Ms. Lyda Hill seeks attorney's fees in the amount of $181,400.50 that she incurred with the law firm of Haynes & Boone. She asserts that counsel and paralegals expended a total of 214.40 hours in this action. These hours were billed through the work of Carrie L. Huff ("Ms. Huff"); Ryan Paulsen ("Mr. Paulsen"); and paralegal Casey McGovern ("Ms. McGovern"). *See* Doc. 42 at Ex. B ¶ 8. Ms. Huff summarizes the services, hours, and fees for legal services performed for Ms. Lyda Hill in this civil action. *Id.* at Ex. B ¶ 7. Ms. Huff asserts that the fees and costs sought by her client for this time period are "reasonable and necessary," taking into account the nature and complexity of this case. *Id.* at Ex. B ¶ 10. She asserts that the attorney's fees and costs incurred by her client in this action "are reasonable and consistent with the attorneys' fees customarily charged in Dallas County and Harris County, Texas for similar legal services." *Id.* at Ex. B ¶ 14. Ms. Huff also provides copies of the invoices for legal services performed for Ms. Lyda Hill in this case. *Id.* at Ex. B ¶ 7 and Ex. B-1 through B-6. The hours incurred—for which Ms. Lyda Hill seeks compensation—are 157.90 hours for Ms. Huff at an hourly rate of $900; 51.1 hours for Mr. Paulsen at an hourly rate of 725; and 5.4 hours at an hourly rate of $395. *Id.* at Ex. B ¶ 8. The total amount she seeks for these hours is $181,400.50. *Id.*

The court begins with determining what the reasonable hourly rate is for Ms. Huff, Mr. Paulsen, and Ms. McGovern. As the fee applicant, Ms. Lyda Hill bears the burden of demonstrating "that the requested rates are in line with those prevailing in the community for similar services by

lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11. "Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." *Tollett*, 285 F.3d at 368 (citation omitted). "[T]rial courts are considered experts as to the reasonableness of attorney's fees[.]" *Primrose Operating Co.*, 382 F.3d at 562 (applying federal law).

She asserts that the following hourly rates are reasonable: $900 for Ms. Huff; $725 for Mr. Paulsen; and $395 for Ms. McGovern. She provides support through Ms. Huff's Declaration and Exhibits thereto, which attest to their qualifications and experience. *See* Doc. 42 at Ex. B ¶8 and Ex. B-7 (Biographical Statement of Ms. Huff); Ex. B-8 (Biographical Statement of Mr. Paulsen). Ms. Huff certifies that the requested rates are commensurate with similar services by lawyers and paralegals of reasonably comparable skill, experience, and reputation in the Dallas County and Harris County areas. *Id.* at Ex. B ¶ 14.

Plaintiffs contest the hourly rates charged by counsel at Haynes & Boone, arguing that the rates are unreasonable because they are more than the rates charged by Plaintiffs' counsel and other defense counsel in this case. The court **overrules** Plaintiffs' objection for the same reasons it overruled Plaintiffs' objection to the hourly rates of counsel at Winston & Strawn. *See supra* Sec. III.B.1.

Ms. Huff, an attorney and shareholder at Haynes & Boone, has been licensed to practice law in Texas since 1988. *Id.* at Ex. B ¶ 2 & Ex. B-7 (Biographical Statement of Ms. Huff). Mr. Paulsen is an attorney at Haynes & Boone and has been licensed to practice law in Texas since 2007. *Id.* at Ex. B ¶ 8 and Ex. B-8 (Biographical Statement of Mr. Paulsen). As the court recently recognized in considering similar requested hourly rates charged by counsel with similar experience in the 2020 Action, counsel practicing at large firms (such as Winston & Strawn and

Haynes & Boone) and their rates are in line with the rates charged at comparable large firms in the area for similar legal services. *See* 2020 Action Doc. 2013 at 10. The court is familiar with the prevailing market rates in the Dallas legal market for attorneys with the skill, experience, and reputation of Ms. Huff and Mr. Paulsen and the experience of paralegal Ms. McGovern. Based on the court's knowledge of rates charged for legal services by attorneys and paralegals with the level of skill, experience, and reputation as Ms. Huff, Mr. Paulsen, and Ms. McGovern in the Dallas legal community, and its experience in setting attorney's fees in numerous other cases, and based on the certifications in Ms. Huff's Declaration, the court determines that the hourly rates asserted are reasonable.

Having determined that the hourly rates for Ms. Huff, Mr. Paulsen, and Ms. McGovern are reasonable, the court next considers the time expended. Ms. Huff has provided the court with detailed time records as evidence. *See id.* at Ex. B ¶ 9 and Exs. B-1 through B-6 (invoices). She certifies that the hours expended on the case were reasonable and necessary. *Id.* at Ex. B ¶ 11.

As previously stated, Plaintiffs do not object to the hours expended. Based on its review of the invoices and Ms. Huff's Declaration, the court concludes that the hours expended on the case were not excessive, duplicative, unnecessary, or inadequately documented.

The court will calculate the loadstar amount as follows: 157.90 hours for Ms. Huff at an hourly rate of $900; 51.1 hours for Mr. Paulsen at an hourly rate of $725; and 5.4 hours for Ms. McGovern at an hourly rate of $395 for a total of $181,400.50 in attorney's fees. The court determines that the number of hours spent (214.40), multiplied by the reasonable hourly rates yields a lodestar of $181,400.50. The court concludes that each *Johnson* factor permissibly considered is either subsumed within the lodestar calculation or is not sufficiently pertinent to the facts of the case to warrant discussion.

**Memorandum Opinion and Order – Page 35**

For these reasons, based on the lodestar amount and the relevant *Johnson* factors, the court will award Ms. Lyda Hill attorney's fees in the amount of $181,400.50 for legal services provided by counsel and paralegals at Haynes & Boone.

### 3.   Ms. Lyda Hill's Request for Sanctions Against Plaintiffs and Their Counsel

In addition to seeking her attorney's fees and costs, she asks the court to sanction Plaintiffs for abusing the judicial process. Lyda Hill's Mot. 2 (Doc 41). One such sanction she seeks against Plaintiffs is an order requiring them to seek leave of court before filing any additional claims against her. The court has already considered this same request by the Hill Jr. Defendants and granted it. *Similarly here, in light of Plaintiffs' documented abusive litigation practices, see infra Sec. IV, the court* **grants** *her request and hereby* **enjoins** *Plaintiffs from filing any further litigation in this court without first seeking leave.*

Ms. Lyda Hill also seeks to sanction Plaintiffs' counsel in this case pursuant to 28 U.S.C. § 1927. Under section 1927, the court is able to impose sanctions against "any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously[.]" Plaintiffs' many attorneys who represented him in this action have filed responses, opposing Lyda Hill's request. *See* Skepner Law Firm's Resp. to Def. Lyda Hill's Mot. for Attorney's Fees and Sanctions (Doc. 50); Brian Antweil's and Rapp & Krock, P.C.'s Limited Resp. to Def. Lyda Hill's Mot. for Attorney's Fees and Sanctions (Doc. 51); and Lathrop GPM LLP's Resp. in Opposition to Def. Lyda Hill's Mot. for Attorney's Fees and Sanctions (Doc. 58).

Sanctions under 28 U.S.C. § 1927 can only be awarded against counsel. *See Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525 (5th Cir. 2002). Before awarding sanctions under 28 U.S.C. § 1927, the court must find "that the sanctioned attorney multiplied the proceedings both

'unreasonably' and 'vexatiously.'" *Oblio Telecom, Inc. v. Patel*, No. 3:08-CV-0279-L, 2010 WL 99353, at *2 (N.D. Tex. Jan. 8, 2010) (quoting *Vanderhoff v. Pacheco*, No. 09-30064, 2009 WL 2776607 at *3 (5th Cir. Sept. 2, 2009)). "Sanctions under [section 1927] are punitive in nature and require 'clear and convincing evidence, that *every facet* of the litigation was patently meritless' and 'evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court.'" *Bryant v. Military Dep't of Mississippi*, 597 F.3d 678, 694 (5th Cir. 2010) (citing *Procter & Gamble Co.*, 280 F.3d 519 at 525-26) (emphasis in original). "Clear and convincing evidence is that weight of proof which 'produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts' of the case." *Shafer v. Army & Air Force Exch. Serv.*, 376 F.3d 386, 396 (5th Cir. 2004), *opinion clarified*, No. 03-10074, 2004 WL 2107672 (5th Cir. Sept. 17, 2004) (quoting *In re Medrano*, 956 F.2d 101, 102 (5th Cir. 1992)).

The court concludes on the record before it that clear and convincing evidence of bad faith or improper motive on the part of counsel for Plaintiffs is lacking. Accordingly, the court **denies** Ms. Lyda Hill's request for sanctions pursuant to 28 U.S.C. § 1927.

## IV.   Conclusion and Final Admonishment

### A.   Conclusion

Based on the foregoing, the court **grants** Defendants' Motion for Award of Attorneys' Fees and Costs Pursuant to Federal Rule of Civil Procedure 54(d) (Doc. 43). The court **awards** Ms. Washburne and Ms. Summers attorney's fees in the amount of **$104,176** and costs in the amount of **$1,326.89** for work performed by attorneys at Hallet & Perrin. The court **awards** Mr. Donally, Mr. Tatham, and Ms. Irwin attorney's fees in the amount of **$21,517.50** and costs in the amount

of **$601.45** for work performed by attorneys at CWL. The court **awards** Ms. Keliher attorney's fees in the amount of **$48,476** for work performed by attorneys at Dorsey. The court **awards** Ms. Keliher (as Independent Executor of the Estate of Mr. Hill Jr.), attorney's fees in the amount of **$87,468.56** for work performed by attorneys at Bourland, Wall & Wenzel; and attorney's fees in the amount of **$22,755** and costs in the amount of **$1,132.85** for work performed by attorneys at Locke Lord. Postjudgment interest shall accrue on the total amount of attorney's fees and costs due and owing to the Hill Jr. Defendants **($287,454.25)** at the applicable federal rate of 4.76% from the date of this Memorandum Opinion and Order until all amounts awarded are paid in full.

Further, the court **grants in part** and **denies in part** Defendant Lyda Hill's Motion for Attorneys' Fees and Sanctions with Supporting Brief (Doc. 41). The court **grants** the motion insofar as her request for attorney's fees and costs, and for injunctive relief against Plaintiffs; and **denies** the motion insofar as she seeks sanctions against Plaintiffs' attorneys pursuant to 28 U.S.C. § 1927. The court **awards** her attorney's fees in the amount of **$36,895** for work performed by attorneys at Winston & Strawn, and **$181,400.50** for work performed by attorneys at Haynes & Boone. Postjudgment interest shall accrue on the total amount of attorney's fees and costs due and owing to Ms. Lyda Hill **($218,295.50)** at the applicable federal rate of 4.76% from the date of this Memorandum Opinion and Order until all amounts awarded are paid in full.[7]

### B. Final Admonishment

After years of litigation, this case was supposed to have been brought to a close on November 8, 2010, by the Final Judgment (Doc. 999), implementing the GSA (Doc. 879), as well as a separate judgment in a related attorney's fees dispute severed from the underlying action.

---

[7] As this is an order disposing of motions for attorney's fees, no judgment by separate document is required. Fed. R. Civ. P. 58(a)(3).

Since entry of Final Judgment, Mr. Hill III has inundated the court with unsuccessful motions to alter, amend, or vacate the Final Judgment; to recuse various judges for purported bias; and to stay proceedings, many of which have been filed solely to frustrate the court's implementation of the Final Judgment and GSA. Mr. Hill III and his legal team have also taken numerous unsuccessful appeals to the United States Court of Appeals for the Fifth Circuit resulting in further protraction of this fifteen-year-old case. During the twelve-year period of postjudgment litigation, the court has repeatedly admonished Mr. Hill III, his wife Ms. Erin Hill, and their legal team that it will not hesitate to impose sanctions if these vexatious and frivolous filings and dilatory tactics continue.

Notwithstanding repeated admonishments to Mr. Hill III and Ms. Erin Hill, and Mr. Hill III and Ms. Erin Hill's express statements on prior occasions that they wished to end this litigation, the litigation continues. At a hearing held on November 16, 2018, Ms. Erin Hill even questioned why the court required her presence, after she stated that she did not wish to be a party to any further litigation. After expressing a purported desire to end this litigation, they have done just the opposite by promising the court, on the one hand, that they wanted to wrap up all litigation, and then later actively and needlessly participating in continued litigation. Such inconsistent and combative positions are nonsensical and are analogous to a person boldly proclaiming to the court that he or she can ride two horses going in opposite directions at the same time and not fall off!

In addition, Mr. Hill III has a well-documented history of ignoring his contractual obligations under the GSA and his obligations under the Final Judgment, which includes stealing money from his own children (Mr. Hill Jr.'s grandchildren). He has shown no hesitation in violating multiple provisions of the GSA and Final Judgment. As just one example, he violated the terms of the GSA and Final Judgment with respect to the contractual limitations on the use of

more than $9 million in the Grandchildren's Trusts,[8] ignoring that, pursuant to the Trust Instrument, until the primary beneficiary reached the age of twenty-five, the income and principal of the Grandchildren's Trusts could only be used for the "health and education of the primary beneficiary . . . ." 2020 Action Doc. 999-1 (Ex. 1 to Final J. ¶ 2.01). As a result of Mr. Hill III's and Ms. Erin Hill's violations of the Trust Instrument, extensive and costly litigation ensued, consuming scarce judicial resources, and the court ultimately issued a permanent injunction enjoining Mr. Hill III and Ms. Erin Hill from using the money in the Grandchildren's Trusts (trusts held for the benefit of their children) to support the couple's lavish lifestyle.[9]

In addition to stealing money from the Grandchildren's Trusts, Mr. Hill III has repeatedly violated the GSA and Final Judgment by challenging the disposition of his deceased father's property. The court previously determined that an injunction against Mr. Hill III was required "to deter and prevent future litigation of previously decided issues by a vexatious litigant" after he

---

[8] As part of the settlement of Mr. Hill III's disputed claims with Mr. Hill Jr., the Final Judgment required Mr. Hill Jr. to make four annual installment payments of $7.5 million each into the court's registry and required Mr. Hill III to establish separate irrevocable trusts for Mr. Hill Jr.'s grandchildren and to irrevocably assign his rights to receive the Installment Payments to these three trusts (the "Grandchildren's Trusts"). 2020 Action Doc. 999 (Final J. ¶¶ 19, 22).

[9] After issuing a temporary restraining order (Doc. 1745) and preliminary injunction (Doc. 1785), the court permanently enjoined Mr. Hill III and Ms. Erin Hill from taking any action to use or access any funds from the Grandchildren's Trusts, directly or indirectly, for any reason, including but not limited to: using or attempting to use funds from the Grandchildren's Trusts to reimburse Mr. Hill III for any expenses or paying any expense for Mr. Hill III that are for the maintenance or support of the Grandchildren; using or attempting to use funds from the Grandchildren's Trusts to reimburse Mr/ Hill III for any expenses or paying any expense for Mr. Hill III that are for the maintenance or support of the Property; using or attempting to use funds from the Grandchildren's Trusts to reimburse Mr. Hill III for any expenses or paying any expense for Mr. Hill III that are not clearly for the Grandchildren's health or education; and using any of the nearly $9 million dollars that Mr. Hill III requested and have been distributed from the Grandchildren's Trusts for any purpose, including but not limited to any reimbursement of any purported expenses for maintenance or support of the Grandchildren or the maintenance or support of the Property. 2020 Action Doc. 1867 (May 23, 2018 Mem. Op. & Order 19).

**Memorandum Opinion and Order – Page 40**

contested Hill Jr.'s Will in direct violation of the GSA and the FJ. 2020 Action Doc. 1919 (Order at 12).

Recognizing the significant impact of Hill III's vexatious and serial filings on the court's already strained judicial resources, the court previously put Mr. Hill III and his counsel on notice of the possible imposition of sanctions for continued use of dilatory litigation tactics and submission of frivolous and vexatious filings. *See, e.g., Hill v. Schilling*, 2014 WL 1516193, at *5-6 (N.D. Tex. Apr. 17, 2014); Order at 5, 3-07-CV-2020-L (Apr. 17, 2014) (Doc. 1477). On November 25, 2014, the Fifth Circuit also weighed in, taking the "opportunity to remind Hill III of the warning that the district court recently issued to the parties in this case—the district court 'will impose sanctions' for any motion that is 'baseless, frivolous, or without merit . . .' Hill III is well-advised 'not to test the court's patience in this regard.'" *Hill v. Schilling*, 593 F. App'x 330, 335 (5th Cir. 2014) (quoting *Hill*, 2014 WL 1516193 at *6).

Indeed, the court held Mr. Hill III in civil contempt on December 10, 2018, after concluding there was clear and convincing evidence that he disobeyed a court order by attempting, on November 9, 2017, to remove First Tennessee Bank as trustee of the Grandchildren's Trusts, and to replace it with another bank. *See* 2020 Action Doc. 1920 at 19. As a sanction, the court ordered him to pay his opponents' legal fees and costs. *Id.*

If Mr. Hill III or Ms. Erin Hill seeks to file any other litigation before the undersigned, each must provide an affidavit or declaration to the court that he or she has provided a copy of this Memorandum Opinion and Order to any attorney who represents him or her in any such litigation. Further, any attorney who undertakes such representation must also file an affidavit or declaration with the court that he or she has been provided a copy of this Memorandum Opinion and Order and read it in its entirety. The court finds this requirement necessary because, apparently, neither

Mr. Hill III nor Ms. Erin Hill provides attorneys who represent them in new litigation with the full history of this **and related** litigation. Further, it is incumbent on attorneys who undertake representation to "get the full story" before deciding to represent the Hills. If this directive is violated by Mr. Hill III, Ms. Erin Hill, or any attorney engaged in the representation of either of them in further litigation, the court will impose sanctions, against the Hills or the attorney at fault, that may include contempt of court, monetary penalties, injunctive relief, or other reasonable sanctions in the court's arsenal, which include Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, the court's inherent authority to impose sanctions, and any other authority under applicable law. Also, in the event this directive is violated, the court will seek authorization from the Fifth Circuit to hire additional resources and staff to deal with what it perceives or determines to be a violation of the order. This court simply cannot allow Mr. Hill III and Ms. Erin Hill to continue to consume a grossly inordinate amount of this court's scarce judicial resources to the detriment of other litigants appearing before it.[10] If the court determines that monetary sanctions are warranted, they will be quite substantial because sanctions previously imposed have been ineffective and not deterred the Hills' wayward behavior and conduct.

The court **directs** the clerk of court to **docket** this Memorandum Opinion and Order in this action and also in **Civil Action No. 3:07-CV-2020-L**.

**It is so ordered** this 5th day of December, 2022.

Sam A. Lindsay
United States District Judge

---

[10] On November 22, 2022, the court issued a 53-page Memorandum Opinion and Order in the 2020 Action (Doc. 2023), and the current Memorandum Opinion and Order is 42 pages long. Both required a painstaking review of numerous, voluminous documents; resolution of extensive evidentiary objections; extremely detailed legal research; and numerous, extended discussions between the court and its law clerk.