IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALBERT G. HILL, III,<br>　　*Plaintiff,* | §<br>§<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO. 3:07-CV-02020-L |
| WILLIAM SCHILLING, *et al.,*<br>　　*Defendants.* | §<br>§<br>§ | |

**APPENDIX IN SUPPORT OF CAROLINE M. HILL'S RESPONSE IN OPPOSITION TO MOVANTS' MOTION FOR LEAVE TO FILE MOTION TO ENFORCE FINAL JUDGMENT AND SETTLEMENT AGREEMENT AND APPLICATION FOR TEEMPORARY RESTRAINING ORDER, PREELIMINARY INJUNCTION, AND <u>PERMANENT INJUNCTION, AND SUPPORTING BRIEF</u>**

| EX | DESCRIPTION | APP |
|----|-------------|-----|
| Ex. 1 | Global Settlement and Mutual Release Agreement (DKT 879) | APPX – 0001 - 0040 |
| Ex. 2 | Final Judgment (DKT 999) | APPX – 0041-0084 |
| Ex. 3 | Lyda Bunker Hunt Last Will and Testament | APPX – 0085 - 0098 |
| Ex. 4 | Memorandum Opinion and Order (DKT 1883) | APPX – 0099 - 0118 |
| Ex. 5 | Memorandum Opinion and Order (DKT 2010) | APPX – 0119 - 0137 |

Dated: October __20__, 2025        Respectfully submitted,

**BREWER, ATTORNEYS & COUNSELORS**

By: */s/ Joshua H. Harris*      
William A. Brewer III
State Bar No. 02967035
wab@brewerattorneys.com
Joshua H. Harris
State Bar No. 24127306
jkh@brewerattorneys.com
Polina M. DeClue
State Bar No. 24142831
pmd@brewerattorneys.com

1717 Main Street, Suite 5900
Dallas, Texas 75201
Telephone: (214) 653-4000
Facsimile: (214) 653-1015

**ATTORNEYS FOR CAROLINE M. HILL**

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that on October <u>20</u> , 2025, a true and correct copy of the foregoing was served upon all counsel of record in the above-captioned cause, pursuant to Tex. R. Civ. P. 21a.

G. MICHAEL GRUBER
Texas State Bar No. 08555400
Mike.gruber@gtlaw.com
BRIAN E. MASON
State Bar No. 24079906
Brian.mason@gtlaw.com
**GREENBERG TRAURIG, LLP**
2200 Ross Ave
Suite 5200
Dallas, Texas 75201
Telephone:  214.665.3600
Facsimile:  214.665.3601

**ATTORNEY FOR MOVANT MARGARET KELIHER (AS INDEPENDENT EXECUTOR OF THE ESTATE OF ALBERT G. HILL, JR., DECEASED, FORMER SOLE BENEFICIARY)**

MICHAEL J. LANG
State Bar No. 24036944
mlang@cwl.law
**CRAWFORD, WISHNEW & LANG PLLC**
1700 Pacific Avenue,
Suite 2390
Dallas Texas
Telephone: 214.817.4500
Facsimile:  214.817-4509

**ATTORNEY FOR MOVANT CAROL E. IRWIN (AS INDEPENDENT EXECUTOR OF THE ESTATE OF IVAN IRWIN, JR., DECEASED)(AS FORMER CO-TRUSTEES OF THE LYDA HUNT-MARGARET TRUSTS F/B/O ALERBT G. HILL, JR. )**

By: */s/ Joshua H. Harris*
      **Joshua H. Harris**

**APPENDIX IN SUPPORT OF CAROLINE M. HILL'S RESPONSE IN OPPOSITION TO MOVANTS' MOTION FOR LEAVE TO FILE MOTION TO ENFORCE FINAL JUDGMENT AND SETTLEMENT AGREEMENT AND APPLICATION FOR TEEMPORARY RESTRAINING ORDER, PREELIMINARY INJUNCTION, AND PERMANENT INJUNCTION, AND SUPPORTING BRIEF**     3

<u>**Draft Revised in Court on the Record - Version 16: 5-13-10**</u>

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

*Final*

| | | |
|---|---|---|
| ALBERT G. HILL III, individually as a Beneficiary of the Margaret Hunt Trust Estate, derivatively on behalf of the Margaret Hunt Trust Estate, individually as a beneficiary of the Haroldson Lafayette Hunt, Jr. Trust Estate, and derivatively on behalf of the Haroldson Lafayette Hunt, Jr. Trust Estate, | § § § § § § § § § § § | |
| Plaintiff, | § § § | CIVIL ACTION NO. 07-CV-02020-O |
| v. | § § | |
| MARGARET KELIHER, BRETT RINGLE, JOHN CREECY, WILLIAM SCHILLING, IVAN IRWIN JR., WILLIAM HERBERT HUNT, ALBERT G. HILL, JR., ALINDA H. WIKERT, LYDA HILL, HEATHER H. WASHBURNE, and ELISA H. SUMMERS | § § § § § § § § § | |
| Defendants. | | |

## <u>GLOBAL SETTLEMENT AND MUTUAL RELEASE AGREEMENT</u>

### I.    <u>PARTIES</u>

This Global Settlement and Mutual Release Agreement (the "Agreement") is made as of the date indicated below by and among the following parties, each of whom is entering into this Agreement in every capacity in which they have sued, or could have sued, or have been sued, or could have been sued in any lawsuit subject to this Agreement:

A.    Albert G. Hill, Jr., an individual residing in Dallas, Dallas County, Texas ("Al Jr.").

B.    Lyda Hill, an individual residing in Dallas, Dallas County, Texas ("Lyda").

14-10505.26341

APPX 0001

C.    Alinda Hill Wikert, an individual residing in Dallas, Dallas County, Texas ("Alinda").

D.    Albert G. Hill, III, an individual residing in Dallas, Dallas County, Texas ("Al III"), the son of Al Jr.

E.    Erin Nance Hill, an individual residing in Dallas, Dallas County, Texas ("Erin"), wife of Al III.

F.    In entering into this Agreement, Al III is also acting derivatively on behalf of the MHTE and the HHTE (defined below).  In addition, Al III and Erin are acting as next friends, and on behalf of their children, the lineal descendants of Al III, who are Albert Galatyn Hill IV, Nance Haroldson Hill and Caroline Margaret Hill (collectively, the "Grandchildren").

G.    Margaret Keliher, individually, and as Trustee of the Margaret Hunt Trust Estate (the "MHTE"), and advisory board member of the HHTE (defined below).

H.    John Creecy, individually, and as Trustee of the Haroldson L. Hunt, Jr. Trust Estate (the "HHTE").

I.    Brett Ringle, individually, and as former Trustee of the MHTE and current advisory board member of the MHTE.

J.    William L. Schilling, individually, and as advisory board member of the HHTE and MHTE.

K.    Ivan Irwin, Jr., an individual residing in Dallas, Dallas County, Texas.

L.    Heather Hill Washburne, Ray W. Washburne, and their three minor children Hill Washburne, Andrew Washburne, and Mary Washburne, all individuals residing Dallas, Dallas County, Texas (collectively, "Washburne," and Heather Hill Washburne, individually "Heather").

14-10505.26342

M.    Elisa Hill Summers, Stephen R. Summers, and their three minor children Emily Summers, Camille Summers, and Stephen R. Summers, Jr., all individuals residing in Dallas, Dallas County, Texas (collectively, "Summers," and Elisa Hill Summers, individually, "Elisa").

N.    William Herbert Hunt, as Independent Executor of the Estate of Tom Hunt, Deceased, an individual residing in Dallas, Dallas County, Texas.

The following persons, acting in all capacities referenced above, shall be hereinafter collectively referred to as the "Plaintiffs" or individually referred to as a "Plaintiff":

1.    Albert G. Hill, III, acting in all capacities;

2.    Erin Nance Hill, acting in all capacities;

3.    the minor (including, but not limited to, Albert Galatyn Hill IV, Nance Haroldson Hill, and Caroline Margaret Hill), incapacitated, unborn or unascertained persons having an interest in any trust subject to this Agreement and any person whose identity or address is unknown who may have an interest in any trust subject to this Agreement, all of whom are represented by the guardian ad litem appointed pursuant to this Agreement; and

4.    Assignees of Claims (as defined below).  Notwithstanding anything to the contrary herein, Assignees of Claims release only those claims they may have by, through, or under Al III, Erin, the Grandchildren or the assignments.

The following persons, acting in all capacities referenced above, shall be hereinafter collectively referred to as the "Defendants" or individually referred to as a "Defendant":

1.    Albert G. Hill, Jr., in all capacities;

2.    Lyda Hill, in all capacities;

3.    Alinda Hill Wikert, in all capacities;

4.    Margaret Keliher, in all capacities;

14-10505.26343

APPX 0003

5.  John Creecy, in all capacities;

6.  Brett Ringle, in all capacities;

7.  William L. Schilling, in all capacities;

8.  Heather Hill Washburne, in all capacities;

9.  Ray W. Washburne, in all capacities;

10.  Hill Washburne, in all capacities;

11.  Andrew Washburne, in all capacities;

12.  Mary Washburne, in all capacities;

13.  Elisa Hill Summers, in all capacities;

14.  Stephen R. Summers, in all capacities;

15.  Emily Summers, in all capacities;

16.  Camille Summers, in all capacities;

17.  Stephen R. Summers, Jr., in all capacities;

18.  William Herbert Hunt, in all capacities;

19.  Ivan Irwin, Jr., in all capacities;

20.  Michael Wisenbaker, Jr., in all capacities;

21.  Wesley Wisenbaker, in all capacities;

22.  Cody Wikert, in all capacities;

23.  Margretta Wikert, in all capacities;

24.  the MHTE; and

25.  the HHTE.

All of the parties listed above are collectively referred to herein as the "Agreeing Parties," and this term includes all descendants, minor children, and unborn children of each of

GLOBAL SETTLEMENT AND MUTUAL RELEASE AGREEMENT                    PAGE 4

the parties listed above.  All of the individuals or entities listed on Exhibit "A" hereto are referred to as the "Additional Parties," and, together with the Agreeing Parties, the "Parties". The Additional Parties are third-party beneficiaries of this Agreement.

## II.    RECITALS

**WHEREAS**, litigation (the "Litigation") currently exists, including the cases set forth on the attached Exhibit "B;"

**WHEREAS**, the Agreeing Parties desire to resolve and amicably settle the Litigation in all respects, and the Agreeing Parties recognize that this Agreement is the definitive act in accomplishing that objective, with the understanding that there will have to be considerable documentation (the "Documentation") approved by the relevant parties to the Litigation to effect implementation of all of the terms of this Agreement, to dismiss with prejudice all of the Litigation, and to otherwise evidence and effectuate in full this Agreement; and

**WHEREAS**, notwithstanding the contemplation of additional Documentation, the Agreeing Parties hereby expressly agree that by executing this Agreement they are agreeing to settle the Litigation, and if additional Documentation beyond this Agreement is never agreed to, the Parties have settled the Litigation nonetheless and in such event this Agreement shall be the final and definitive agreement among the Parties and shall be sufficient, upon filing with any court in the Litigation, to effectuate and enforce the terms of this Agreement.

**WHEREAS**, once the Documentation is completed, the Parties desire to execute and have their counsel file in the applicable courts the Documentation, including the agreed motions and agreed orders and/or agreed judgments necessary to dismiss all of the Litigation (the "Court Orders").

**NOW, THEREFORE**, for and in consideration of the foregoing and the respective promises, mutual promises, covenants, conditions, obligations, and undertakings contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Agreeing Parties hereby agree as follows:

### III.    OBLIGATIONS

1. **All Agreeing Parties' Obligations**: All Agreeing Parties agree that:

(a)    <u>Cooperation</u>:  They shall work together to complete this Agreement in a manner acceptable to the Federal Court, and, upon approval of this Agreement by the Federal Court, the Agreeing Parties (as appropriate) shall prepare agreed final judgments and the Documentation necessary to dismiss all of the Litigation, as set forth below.    Such Documentation shall be completed and submitted to the other courts within fourteen days of the approval of this Agreement by the Federal Court.

(b)    <u>Agreed Judgments</u>:  The Agreeing Parties (as appropriate) shall sign and cause their counsel to file: (i) in *Albert G. Hill, III v. Tom Hunt*, No. 3:07-CV-02020, United States District Court for the Northern District of Texas (Dallas Division) (the court shall be referred to as the "Federal Court" and the suit as the "Federal Suit") an Agreed Motion for Entry of Final Agreed Judgment and an Agreed Final Judgment; (ii) in *In re: Margaret Hunt Trust Estate*, Case No. 07-2210-P2-A, Probate Court No. 2, Dallas, Dallas County, Texas (the "Margaret Probate Suit") an Agreed Motion for Entry of Final Agreed Judgment and an Agreed Final Judgment; and (iii) in *In re Estate of Haroldson L. Hunt, Jr., Deceased*, Case No. 08-00830-2, Probate Court No. 2, Dallas, Dallas County, Texas (the "Haroldson Probate Suit") an Agreed Motion for Entry of Agreed Final Judgment and an Agreed Final Judgment.    The Agreeing Parties will request the Federal Court to appoint one Guardian ad Litem (or, the

14-10505.26346

minimum number of Guardians ad Litem as the Federal Court determines are necessary) and to conduct a hearing for the Federal Court to determine whether or not to approve this Agreement subject to the performance of this Agreement and further subject to the several state trial and appellate courts signing the agreed judgments, orders of dismissal, and other documents included in the Documentation.

The Agreeing Parties (as appropriate) shall jointly move the courts to enter Agreed Final Judgments, as follows:

(i)    As set forth in more detail below, in the Federal Suit the Agreed Final Judgment shall: (a) affirm the validity of Al Jr.'s Disclaimer (as defined below); (b) declare the beneficiaries of the MHTE and the HHTE; (c) divide the MHTE and HHTE into separate trusts for each current beneficiary in proportion to his or her beneficial ownership (the New Hunt Trusts – as described in detail below); (d) approve the resignation of the current trustees and other advisory board members and the appointment of successor trustees and other advisory board members for each separate trust; (e) acknowledge the withdrawal of all pending motions; (f) vacate certain orders (as described below); (g) dismiss all claims, causes of action, counts, counter-claims, and cross-claims with prejudice; (h) appoint a guardian ad litem; and (i) state that the United States District Court for the Northern District of Texas (Dallas Division), the Honorable Reed O'Connor, shall retain continuing jurisdiction over this Agreement.

GLOBAL SETTLEMENT AND MUTUAL RELEASE AGREEMENT                           PAGE 7

14-10505.26347

(ii)    As set forth in more detail below, in the Margaret Probate Suit the Agreed Final Judgment shall: (a) vacate Probate Court No. 2's Order Sustaining Al Jr.'s Motion for Summary Judgment; (b) order distribution of the funds held in the registry of Probate Court No. 2 or on deposit regarding the MHTE; (c) approve and adopt the Agreed Final Judgment entered in the Federal Suit; and (d) dismiss with prejudice all claims, causes of action, counts, counter-claims, and cross-claims not previously addressed, except as necessary to implement this Agreement.

(iii)    As set forth in more detail below, in the Haroldson Probate Suit the Agreed Final Judgment shall: (a) approve and adopt the Agreed Final Judgment entered in the Federal Suit; (b) state that Al III, his spouse, and his descendants are not current or vested beneficiaries of any trust for the primary benefit of any descendant of Margaret Hunt Hill ("MHH") or appointee of Haroldson L. Hunt, Jr. other than Al III or a descendant of Al III, and, pursuant to this Agreement, they do not have standing to assert any claim or cause of action in connection with any such trust; and (c) dismiss with prejudice all claims, causes of action, counts, counter-claims, and cross-claims.

(c)    Dismissals:  Within five days of entry of the last of the Agreed Final Judgments in the Probate Suits and the Federal Suit approving and implementing this Agreement, the Agreeing Parties shall dismiss with prejudice all claims, counter-claims, counts,

GLOBAL SETTLEMENT AND MUTUAL RELEASE AGREEMENT                                        PAGE 8

and causes of action currently on file in any of the Litigation with Agreed Motions, Orders of Dismissal, and/or other documents necessary to implement this Agreement except those claims necessary to implement this Agreement and in the cases of the Probate Suits and the Federal Suit in which cases there shall be Agreed Final Judgments consistent with and implementing this Agreement.

(d)    General, Mutual Releases:  By executing this Agreement, the Agreeing Parties hereby agree to general mutual releases, as follows:

(i)    As of the Effective Date, each Plaintiff (as defined above) on behalf of himself or herself, and those who claim by, through, or under them (including their present attorneys, agents, representatives, spouses, and heirs) individually and in every other capacity, hereby RELEASES, ACQUITS, AND FOREVER DISCHARGES each Defendant (including each trust for their benefit and their trustees) and each other Plaintiff (including each trust for their benefit and their trustees) and each Additional Party and each Plaintiff, Defendant, and Additional Party's agents, assigns, representatives, employees, present and former attorneys (except Bill Brewer, Bickel & Brewer, and Campbell Harrison & Dagley, L.L.P. and any of their agents, assigns, representatives, employees, partners, and present and former attorneys), parents, affiliates, subsidiaries, consultants, spouses, heirs, and executors or administrators of and from any and all past, present or future claims, actions, causes of action, counts, counter-claims, cross-claims, and appeals whatsoever,

14-10505.26349

at common law, statutory or otherwise (the "Claims"), which any such Plaintiff has or may have, known or unknown, now existing or that might arise hereafter, directly, indirectly, or derivatively arising out of the affairs or administration of any trust or business enterprise, the facts or allegations referred to or which could have been referred to in the Litigation, and any other transaction or dealings between the Parties, it being intended to release all Claims of any kind which each of the Plaintiffs has or may have, in any capacity, against those hereby released, whether asserted in the Litigation or not, and particularly, but not limited to, any and all Claims and demands for past, present and/or future damages, costs, pre-judgment interest, attorneys' fees, expenses, and any compensation whatsoever arising from Claims including, but not limited to, alleged breaches of fiduciary duty, alleged misrepresentations, alleged negligence, gross negligence, negligence per se, fraud or malice, tortious interference with inheritance rights, fraudulent destruction, removal, or concealment of any writing, alleged criminal activity, conspiracy, racketeering and/or alleged breaches of implied warranties, whether based on a tort, contract, statute, or any other legal theory, and whether for actual, compensatory, punitive or statutory damages, subrogation or indemnification, including reimbursement of trust funds, disgorgement or reimbursement of attorneys' fees, all other actual damages and punitive damages, any other pecuniary loss and

14-10505.26350

APPX 0010

any other expense and/or detriment of whatever kind or character, past, present or future, which any Plaintiff, in any capacity, has or may have against any Party, in any capacity, under any claim or theory whatsoever, including any and all known or unknown Claims for actual, punitive and all other economic damages. Notwithstanding the foregoing or anything to the contrary contained herein (other than as provided in Sections 5(h) and (i)), this does <u>not</u> constitute a release for any acts or conduct occurring after the Effective Date nor does it release any duty or obligation created under this Agreement.

(ii)    As of the Effective Date, each Defendant (as defined above), on behalf of himself or herself, and those who claim by, through, or under them (including their present attorneys, agents, representatives, spouses, and heirs), individually and in every other capacity, hereby RELEASES, ACQUITS, AND FOREVER DISCHARGES each Plaintiff (including each trust for their benefit and their trustees), each other Defendant (including each trust for their benefit and their trustees), and each Additional Party and each other Defendant, Plaintiff, and Additional Party's agents, assigns, representatives, employees, present and former attorneys (except Bill Brewer, Bickel & Brewer, *Francis Johnson Wright, Gregory Shamoun,* and any of their agents, assigns, representatives, employees, partners, and present and former attorneys), parents, affiliates, subsidiaries, consultants, spouses, heirs,



and executors or administrators of and from any and all past, present or future claims, actions, causes of action, counts, counter-claims, cross-claims, and appeals whatsoever, at common law, statutory or otherwise, which any such Defendant has or may have, known or unknown, now existing or that might arise hereafter, directly, indirectly, or derivatively arising out of the affairs or administration of any trust or business enterprise, the facts or allegations referred to or which could have been referred to in the Litigation, and any other transaction or dealings between the Parties, it being intended to release all Claims of any kind which each of the Defendants has or may have, in any capacity, against those hereby released, whether asserted in the Litigation or not, and particularly, but not limited to, any and all Claims and demands for past, present and/or future damages, costs, pre-judgment interest, attorneys' fees, expenses, and any compensation whatsoever arising from Claims including, but not limited to, alleged breaches of fiduciary duty, alleged misrepresentations, alleged negligence, gross negligence, negligence per se, fraud or malice, tortious interference with inheritance rights, fraudulent destruction, removal, or concealment of any writing, criminal activity, conspiracy, racketeering and/or alleged breaches of implied warranties, whether based on a tort, contract, statute, or any other legal theory, and whether for actual, compensatory, punitive or statutory damages, subrogation or indemnification, including

14-10505.26352

reimbursement of trust funds, disgorgement or reimbursement of attorneys' fees, all other actual damages and punitive damages, any other pecuniary loss and any other expense and/or detriment of whatever kind or character, past, present or future, which any Defendant, in any capacity, has or may have against any Party in any capacity under any claim or theory whatsoever, including any and all known or unknown Claims for actual, punitive and all other economic damages. Notwithstanding the foregoing or anything to the contrary contained herein (other than as provided in Sections 5(h) and (i)), this does <u>not</u> constitute a release for any acts or conduct occurring after the Effective Date nor does it release any duty or obligation created under this Agreement.

    (e)    <u>Representations and Warranties</u>: Each of the Agreeing Parties represents and warrants that they:

    (i)    have not conveyed, assigned, pledged, encumbered, or in any other way transferred to any other person or entity, all or any portion of the Claims they are dismissing and / or releasing, except Al III, Erin, and their minor children (collectively, the "Assignors") who have assigned certain percentages of their claims to: (a) Stephen Malouf, (b) the Law Offices of Stephen Malouf, (c) Lisa Blue, (d) Baron & Blue, (e) Charla Aldous, (f) Charla Aldous, PC, and (g) the Aldous Law Firm (collectively, the "Assignees of Claims") and further have—without admission of such act's validity, present

effect, or enforceability—conveyed, assigned, pledged, encumbered, or otherwise transferred certain percentages of the proceeds of their Claims in the Litigation to: (a) Campbell Harrison & Dagley, LLP, (b) Palm Beach Multi-Strategy Fund, LP, and/or (c) Bickel & Brewer (collectively, the "Assignees of Proceeds"). To the extent, however, any Assignee of Proceeds or any Assignee of Claims (collectively, the "Assignees") asserts any of the Claims by, through or under Assignors against any Party, Assignors hereby agree to indemnify and hold harmless any such Party for all damages, reasonable attorneys' fees, expenses, and costs. Settlement proceeds attributable to Plaintiffs shall be paid to, and deposited in, "BARON & BLUE IOLTA TRUST ACCOUNT."

(ii)  have determined, after investigation and consultation with their attorneys, that this Agreement is fair, reasonable, and supported by good, valid, and adequate consideration;

(iii)  have the requisite authority, capacity, and consent to execute this Agreement in the capacity indicated or on behalf of the entity indicated, and that this Agreement is binding upon such Party acting in the capacity herein or as a representative of the organization indicated herein; and

(iv)  have examined, or had examined by their representative, to the extent the Agreeing Parties desire to do so, the accounts, records,

files, reports, or other information necessary to make an informed decision about whether to execute this Agreement.

(f)    No Contest of Al Jr.'s Last Will and Testament:    Al III, Erin, the Grandchildren, and all of their descendants and heirs agree not to contest the Last Will and Testament of Al Jr. or file any additional action, lawsuit, or legal proceeding challenging the disposition of his property.

(g)    Only One Al Jr. Disclaimer:  The one and only valid disclaimer by Al Jr. with respect to the MHTE is attached hereto as Exhibit C (the "Disclaimer").

(h)    Tax Treatment:  Other than as set forth in this Agreement, each Agreeing Party is responsible for reporting and paying all of their own tax liabilities and will bear the legal obligation for tax liabilities going forward as of the Effective Date.

(i)    Stay of Payments:    All Agreeing Parties agree that any payments made pursuant to Paragraph 2(b) shall be stayed by order of the Federal Court if any third party claims are asserted against such payments.

2.    **Al Jr.'s Obligations:**  Al Jr. agrees to do the following:

(a)    Valid Disclaimer:  The one and only valid disclaimer by Al Jr. with respect to the MHTE is attached hereto as Exhibit C.  Al Jr. acknowledges that the Disclaimer is valid and enforceable and shall be given full force and effect with the result that Al III, Heather, and Elisa each shall receive his or her pro rata share of all interests as set forth in the Disclaimer as of the time of Margaret Hunt Hill's death.  As a result, Al III shall be entitled to be the beneficiary of his share of the corpus of the MHTE assets and shall receive 25% of Al Jr.'s interest in distributions from the MHTE as stated in the Agreed Final Judgment in the Margaret

GLOBAL SETTLEMENT AND MUTUAL RELEASE AGREEMENT                                PAGE 15

14-10505.26355

Probate Suit, which sum is currently in the registry of Probate Court No. 2 Dallas, Dallas County, Texas, or separately accounted for in the MHTE.

(b)   Al Jr. Settlement Payment:  Pay in settlement of disputed claims to Al III, by payment made to the registry of the Federal Court for the benefit of Al III, the total sum of $30 million, paid in four annual installments of $7.5 million each (one on each anniversary of the date the first installment is due), that start 24 months after the effective date of the Agreed Final Judgment in the Federal Suit (the "Al Jr. Settlement").

(c)   Repayment of Hill 3 Investments Payment:  Will return the payment of the sum of $300,000 paid to Al Jr. in *Albert G. Hill, III v. Albert G. Hill, Jr.*, No. 08-02578-C, 68th Civil District Court, Dallas, Dallas County, Texas within 5 days of entry of the Agreed Final Judgment in the Federal Suit.

(d)   Hill 3 Investments:    In a lawsuit known as *Albert G. Hill, III v. Albert G. Hill, Jr.* (No. 08-02578-C; 68th Judicial District Court, Dallas County, Texas) filed 3/7/2008, consolidated with *Daniel L. Jackson, Receiver for Hill 3 Investments, LLC v. Albert G. Hill III* (No. 08-15790; 191st Judicial District Court, Dallas County, Texas) and *Albert G. Hill, Jr., in his capacity as a shareholder of III Cell Corporation v. Al Hill, III, derivatively on behalf of the defense of III Cell Corporation*, (No. 08-13790; 68th Judicial District Court, Dallas County, Texas) (the "Hill 3 Investments Case"), Al Jr. agrees to pay $92,339 to Winstead, PC as his proportionate share of the attorneys' fees and expenses incurred by counsel for Daniel L. Jackson, Receiver for Hill 3 Investments, LLC, pursuant to the Order dated May 12, 2008 Order Appointing Receiver (the "Receiver Order").  Once all attorneys' fees and expenses incurred by counsel for Daniel L. Jackson, Receiver for Hill 3 Investments, LLC, have been paid in full in

GLOBAL SETTLEMENT AND MUTUAL RELEASE AGREEMENT                                PAGE 16

14-10505.26356

the Hill 3 Investments Case, Al Jr. agrees to the filing of an Agreed Motion to Dismiss With Prejudice and an Agreed Order of Dismissal With Prejudice in the Hill 3 Investments Case.

3.  **Trustees and Advisory Board Members' Obligations**:  The trustees and advisory board members of the MHTE and the HHTE agree to do the following:

(a)  Recognition of Validity of Al Jr.'s Disclaimer:  Recognize that the Disclaimer is valid and shall be given full force and effect, with the result that Al III, Heather, and Elisa each receive his or her pro rata share of his or her interests as set forth in the Disclaimer.

(b)  Payment to Al III from HHTE:  Cause to be paid in settlement of disputed claims to Al III by payment made to ~~"BARON & BLUE IOLTA TRUST ACCOUNT"~~ *The registry of the Federal Court* an amount equal to $10.5 million from the HHTE within ten (10) days after entry of the Agreed Final Judgment in the Federal Suit.

(c)  Separate Trusts:  Concurrently with the entry of the Agreed Judgment in the Probate Suits, effectuate the division of the MHTE and HHTE into separate trusts for each current beneficiary in proportion to his or her beneficial ownership (as set forth in more detail below in this Agreement and the Disclaimer).  All of the current trustees and advisory board members agree to resign their roles with the divided MHTE and HHTE within 14 days after the Trust Division Date (defined below).

(d)  Appraisal of Illiquid Assets:  The Trustee of the MHTE shall provide the beneficiaries of the MHTE a list of MHTE assets as complete as possible in accordance with the information known to the trustee of the MHTE and to be supplemented upon discovery of additional information (if any) within 20 days of the Agreed Final Judgment by the Federal Court, and the list shall denominate to the extent the trustee is able to do so the illiquid assets of

14-10505.26357

APPX 0017

the MHTE. Without delaying division of cash and marketable securities, the MHTE shall cause the illiquid assets owned by the MHTE to be appraised, effective as of June 1, 2010, by three appraisers – one appointed by the MHTE within 30 days of entry of the Agreed Final Judgment by the Federal Court, one appointed by Al III within 30 days of the Agreed Final Judgment by the Federal Court, and one appointed by the two appraisers within 10 days of their appointment, which the Agreeing Parties will cooperate with as reasonable and necessary. Each appraiser shall be qualified by license applicable to the property to be appraised and shall appraise each asset as a whole. Their appraisals shall then be averaged and the Al III trust shall get cash in lieu thereof from the MHTE for his share of such illiquid assets. After the appraisal is complete, and not more than 180 days after the entry of the Agreed Final Judgment in the Federal Suit, the HHTE shall purchase or the MHTE shall distribute, as the cases may be, the illiquid assets owned by the MHTE. Al III's share of the MHTE shall pay the costs of the appraiser appointed by Al III. The MHTE shall pay the cost of the appraiser appointed by the MHTE. Al III's share of the MHTE and the MHTE will share equally the cost of the third appraiser. For any assets of the MHTE that cannot be appraised or sold, the MHTE shall assign to Al III's separate trust its proportionate undivided interest in such asset.

4.    **Al III and Erin's Obligations**:   Al III, Erin, both individually, and Al III derivatively, and Al III and Erin as next of friends, and on behalf of their children, and any guardian(s) ad litem appointed pursuant to this Agreement, shall do the following:

(a)    No Al Jr. HHTE Disclaimer:  Agree that there is no disclaimer by Al Jr. as to any interest in the HHTE.

(b)    Grandchildren's Trusts:  Al III shall irrevocably assign his right to receive the Al Jr. Settlement to separate trusts that Al III agrees to establish for each of the

14-10505.26358

Grandchildren, with each trust receiving a principal amount equal to 1/3 of the gross proceeds received from any payment of the Al Jr. Settlement less any applicable taxes in excess of $10.5 million. Al III shall pay out of these funds any applicable gift tax thereon. The trusts established for the Grandchildren shall provide quarterly trust statements to Al Jr. and Al III or their subsequent designees.

     (c)    <u>Debt Repayment</u>: Repay the following debts within 5 business days of the clearing of the last payment to Al III from funds in the registry of Probate Court No. 2 or segregated within the MHTE provided for herein:

     (i)    $6,740,103 through May 3, 2010, together with interest thereon at the rate of $570 per day commencing May 4, 2010 to Daniel Jackson as court-appointed receiver for Hill 3 Investments, LLC and

     (ii)    $820,735.15 through March 2, 2010 together with interest thereon at the rate of $396.72 per day to Abbott Financial, LLC.

     (d)    <u>Separate Hill 2010 Trust</u>: **PARAGRAPH TO COME**

     (e)    <u>Bank Trustee</u>:  Al III agrees to replace all Trustees for (1) Al III's MHTE New Hunt Trust, (2) the Hill Family Trust, (3) the Grandchildren's Trusts, (4) the Bordeaux Trust, and (5) the Separate Hill 2010 Trust with a bank trustee with greater than $10 billion in assets under management adjusted for inflation (a "Bank Trustee"). Al III shall select the Bank Trustees for all Al III Trusts for which a Bank Trustee is to be appointed.

     (f)    <u>Withdrawal of Federal Suit Motions and Request to Vacate Certain Orders</u>: Al III shall withdraw his Motion for Sanctions and for an Order to Show Cause, and

related filings (Doc. Nos. 439, 440, 479, 480, and 485), and the parties to the Federal Suit shall jointly request that the Court vacate certain orders related thereto (Doc. Nos. 474, 506, 541, 722, and 727). Al III shall also withdraw his Motion for In Camera Review of Materials Allegedly Protected by the Attorney-Client and Joint Defense Privileges Pursuant to Order dated 7-8-2009, and related filings (Doc. Nos. 636, 637, 718, and 719), and the parties to the Federal Suit shall jointly request that the Court vacate certain orders related thereto (Doc. Nos. 703 and 709). If the Federal court declines or does not rule on the parties' joint request to vacate all court opinions, memorandums, and orders regarding sanctions and contempt, the parties agree to jointly request that all such records be sealed.

(g)    No Lyda Hill Disclaimers:  Agree that there is no disclaimer by Lyda to the MHTE or HHTE, and that they shall not assert any claim, cause of action, count, or counter-claim to the contrary.

(h)    Attorneys' Fees and Costs:  Be responsible for their own attorneys' fees and costs incurred in all of the Litigation.

(i)    Bordeaux Trust and Hill Family Trust:  Any amounts wrongfully distributed or loaned from the Bordeaux Trust or Hill Family Trust since December 2007 will be returned or repaid to the trusts, and a Bank Trustee shall be named for such trusts.

(j)    Hill 3 Investments:  In the Hill 3 Investments Case, within 5 business days of the clearing of the last payment to Al III from funds in the registry of Probate Court No. 2 or segregated within the MHTE provided for herein, Al III agrees to pay $118,867.25 to Winstead, PC as his proportionate share of the attorneys' fees and expenses incurred by counsel for Daniel L. Jackson, Receiver for Hill 3 Investments, LLC, pursuant to the Receiver Order. Once all attorneys' fees and expenses incurred by counsel for Daniel L. Jackson, Receiver for

14-10505.26360

Hill 3 Investments, LLC, have been paid in full in the Hill 3 Investments Case, Al Jr. agrees to the filing of an Agreed Motion to Dismiss With Prejudice and an Agreed Order of Dismissal With Prejudice in the Hill 3 Investments Case.

5.    **All Agreeing Parties' Additional Obligations**:   All Agreeing Parties further agree that:

(a)    Covenant Not to Sue Parties:  Each of the Agreeing Parties agrees and covenants not to bring or assert any released Claims (in law or in equity), and claims brought to enforce this Agreement may only be brought in this Federal Court.

(b)    Waiver of Standing:  During such time as an Agreeing Party is not a current beneficiary of a trust for the primary benefit of a descendant of MHH (an "MHH Trust") and any other descendant of MHH is living, such Agreeing Party hereby waives (1) his or her status as an interested person in such trust and (2) all rights that he or she may have as a future or contingent beneficiary of such trust under the instrument establishing such MHH Trust, under applicable common law, or under applicable state law, including but not limited to the right to demand information, seek an accounting or assert any claim or cause of action in connection with any such trust.  Each Agreeing Party further agrees that the waivers in this subparagraph shall not apply to an MHH Trust during any period in which he or she is a current beneficiary of that MHH Trust, although the waivers in this subparagraph shall continue to apply to any actions taken or omitted by any other person or entity during the period that he or she was not a current beneficiary.  For purposes of this paragraph, "current beneficiary" means a person who, at the time a current beneficiary is determined, is then entitled to receive, or is then, in an exercise of discretion by the trustee of such trust, a possible recipient of, income or principal of such trust.

GLOBAL SETTLEMENT AND MUTUAL RELEASE AGREEMENT                                    PAGE 21

14-10505.26361

(c)    Federal Court's Continuing Jurisdiction:  Any controversy or claim arising after the date of execution of this Agreement arising out of this Agreement and the Documentation shall be resolved by the Federal Court, the Honorable Reed O'Connor, who shall retain continuing jurisdiction over this Agreement.

(d)    Guardian Ad Litem:  The Parties shall jointly request United States District Judge Reed O'Connor to appoint one (or however many the Federal Court determines are necessary) guardian ad litem(s), pursuant to Section 115.014 of the Texas Trust Code, to represent the interests of any minor, incapacitated, unborn, or unascertained person having an interest in any trust subject to this Agreement or any person whose identity or address is unknown who may have an interest in any trust subject to this Agreement, including the Grandchildren and any other future beneficiaries of the MHTE and the HHTE, and such guardian(s) ad litem agree to and approve the Documentation contemplated by this Agreement, the costs and fees for which shall be born in equal amounts by the MHTE and HHTE.

(e)    Agreement to Stay All Proceedings:  The Agreeing Parties shall take all necessary steps to stay all discovery or other proceedings between the Parties in the Litigation and to continue all deadlines in all Litigation, and all court settings and proceedings until further order of the Federal Court.  The Agreeing Parties shall not file additional motions, initiate any discovery or other proceedings in the Litigation, and will not pursue any pending motions seeking any relief from any court, except as contemplated by this Agreement.

(f)    Confidentiality:  With the exception of the release provisions hereof, the Agreeing Parties agree that the terms of this Agreement are confidential and shall remain confidential pursuant to the May 2010 Settlement Conference with Magistrate Judge Paul Stickney, except (1) for successor Trustees and Advisory Board members; (2) as otherwise necessary to effectuate

14-10505.26362

APPX 0022

the terms and conditions of this Agreement; (3) the financial legal, accounting, or business representatives of an Agreeing Party.

(g)    Settlement:  Notwithstanding the contemplation of additional Documentation, the Parties hereby expressly agree that by executing this Agreement they are agreeing to settle the Litigation, and if additional Documentation beyond this Agreement is never agreed to, the Parties have settled the Litigation nonetheless and in such event this Agreement shall be the final and definitive agreement among the Parties and shall be sufficient, upon filing with any court in the Litigation, to effectuate and enforce the terms of this Agreement.

(h)    Separate Trusts:  Concurrently with its approval of this Agreement, the Agreeing Parties shall jointly request that the Federal Court, the Honorable Reed O'Connor, enter an Agreed Final Judgment in the Federal Suit providing that the MHTE and the HHTE shall be divided into separate trusts (the "New Hunt Trusts") for each beneficiary in proportion to his or her beneficial ownership, as follows:

(i)    The Agreed Final Judgment dividing the MHTE and the HHTE shall provide that, except as specifically provided to the contrary in this Agreement, the rights of each beneficiary of each of the New Hunt Trusts shall be governed by the terms and provisions of the Articles of Agreement and Declaration of Trust establishing the MHTE and the HHTE.

(ii)    The effective date of such division (the "Trust Division Date") shall be the date when the assets of the MHTE and the HHTE have been transferred to the New Hunt Trusts pursuant to this Agreement.  The Trustees and Advisory Board Members agree to

14-10505.26363

APPX 0023

use best efforts to transfer cash and marketable securities from the MHTE and the HHTE to the New Hunt Trusts within 30 days after entry of the Agreed Final Judgment in the Federal Suit.

(iii)   The current trustees and advisory board members of the MHTE and the HHTE assert that they have fulfilled their duties faithfully and with loyalty to the trusts and the beneficiaries and there has been no judicial determination to the contrary.  Nevertheless, to facilitate the division of the trusts and other agreements herein, all current trustees and advisory board members of the MHTE and the HHTE agree to resign within 14 days after the Trust Division Date. The beneficiary of each of the New Hunt Trusts may recommend to United States District Judge Reed O'Connor who he or she desires to be the trustee and advisory board members of his or her separate trust.  The Agreeing Parties shall jointly request that the court approve the designations of who shall serve as trustee and advisory board members of each of the New Hunt Trusts, except that the current trustees and advisory board members of the MHTE and the HHTE shall have no responsibility and no liability for the appointment of new trustees and advisory board members for each of the New Hunt Trusts.

(i)   Agreement Regarding Successor Trustees:  No Agreeing Party or successor trustee of the MHTE, the HHTE, or any of the New Hunt Trusts, shall be authorized or entitled to investigate or maintain any claim or cause of action against any prior trustee or advisory board

GLOBAL SETTLEMENT AND MUTUAL RELEASE AGREEMENT                                      PAGE 24

14-10505.26364

APPX 0024

member for negotiating or implementing the terms of this Agreement, including the appointment of trustees or advisory board members for any of the New Hunt Trusts, or for any act or omission, in any capacity, that has been released by this Agreement or for failure to furnish any trust accounting for either of the MHTE or the HHTE, for time periods before and including the resignation dates of the trustees and advisory board members.

(j)      Purpose of this Agreement / No Admissions:  All Agreeing Parties agree that the principal purpose of this Agreement is to settle finally and forever all disputes relating to the Litigation, and that no part of this Agreement shall ever constitute an admission of fault of any kind by any Party hereto.

(k)      Effectuation of this Agreement:  Each of the Agreeing Parties shall, on demand, execute, and deliver to any other Party, any documents and do or cause to be done any other acts and things that may be necessary to effectuate the provisions and purposes of this Agreement.  If any Party fails, upon reasonable demand, to comply with this provision, that Party shall pay to all other Parties all attorneys' fees, costs, and other expenses reasonably incurred as a result of such failure.

(l)      Irrevocable Agreement: The Agreeing Parties agree that this is a totally binding Agreement that may not be altered by any Party without the written consent of all other Parties and will be in effect for all times, unless otherwise provided herein.

(m)      Binding Successors:  This Agreement shall inure to the benefit of, and shall be binding upon the Agreeing Parties hereto, their heirs, executors, administrators, successors, employees, transferees, trustees, agents, and assigns.

(n)    Waiver Provisions:  No waiver of any of the terms hereof shall be valid unless in writing and signed by all Parties.  No waiver of default of any provision hereof shall be deemed a waiver of any subsequent breach or default of the same or similar nature.

(o)    Joint Preparation:  This Agreement has been prepared by the joint efforts of all of the Agreeing Parties.

(p)    Review of the Agreement:  Each of the Agreeing Parties acknowledges that they have carefully read this Agreement, including all documents or exhibits that it incorporates and/or refers to, and that this instrument expresses the entire agreement among the Agreeing Parties concerning the subjects it purports to cover, and that each of the Agreeing Parties has executed this instrument freely and of their own accord.

(q)    Counterparts and Signatures:  This Agreement may be executed in multiple counterparts, and with signatures on documents transmitted by facsimile or e-mail, each of which when so executed and delivered shall be deemed an original for all purposes, shall be of equal rank, and all of which together shall constitute one instrument. The execution of one counterpart by a Party shall be deemed the execution of all counterparts by such Party.

(r)    Specific Performance: The Parties agree that monetary damages alone may not be adequate recompense for any breach of this Agreement.  In the event any Party breaches any of the obligations or responsibilities placed upon such Party in this Agreement, then any other Party may seek any legal or equitable remedy that may be available for such breach, and, if such Party is successful, then the Party breaching this Agreement agrees to pay all of the other Parties' reasonable attorneys' fees and costs of litigation in addition to any legal or equitable damages. The Parties agree that the remedy of specific performance and/or injunctive relief (whether

mandatory or by restraint) shall be available for the breach of any term, condition, covenant, or warranty of this Agreement.

(s)    <u>No Donative Intent</u>: Defendants' transfers of property pursuant to the provisions of this Agreement are made to compromise and settle all remaining disputed claims between the Parties. The Parties expressly deny the existence of any donative intent in connection with such transfers, it being expressly understood and agreed that transfers of property under this Agreement do not constitute gifts to or from any Party.

(t)    <u>Lift of Stay</u>: If any Agreeing Party files bankruptcy prior to final implementation of this Agreement, the Agreeing Parties agree that cause would exist to lift the automatic stay to fully implement this Agreement.

(u)    <u>Time is of the Essence</u>: Time is of the essence in performing the provisions of this Agreement.

(v)    <u>Applicability of Texas Law</u>: This Agreement shall be governed by, and shall be construed in accordance with, the laws of the State of Texas.

(w)    <u>Effective Date</u>: The effective date of this Agreement shall be May 5, 2010. Notwithstanding anything to the contrary herein, the releases as provided herein shall be effective only upon approval of this Agreement by the Federal Court following recommendation of the Guardian Ad Litem.

## IV.    SIGNATURES

EXECUTED on the dates set forth below.

Date: 5-13-10

Albert G. Hill, Jr.   WITH PERMISSION

GLOBAL SETTLEMENT AND MUTUAL RELEASE AGREEMENT                                    PAGE 27

14-10505.26367

APPX 0027

Date: _____5-13-10_____

*Lyda Hill*
*with Agreement of Frank Ikard*

_____
Lyda Hill

Date: _____5/13/10_____

_____
Alinda H. Wikert

Date: _____5-13-10_____

_____
Ivan Irwin, Jr.

Date: _____5-13-10_____

_____
Albert G. Hill, III, individually, derivatively
on behalf of the MHTE and the HHTE, and
as next friends, and on behalf of
Albert Galatyn Hill IV,
Nance Haroldson Hill and
Caroline Margaret Hill

Date: _____5-13-10_____

_____
Erin Nance Hill, individually, and as next
friends, and on behalf of
Albert Galatyn Hill IV,
Nance Haroldson Hill and
Caroline Margaret Hill

Date: _____5-13-10_____

MARGARET HUNT TRUST ESTATE

GLOBAL SETTLEMENT AND MUTUAL RELEASE AGREEMENT                    PAGE 28

14-10505.26368

By: _Margaret Keliher, Trustee_
    Margaret Keliher
    Trustee

By: _____
    Brett Ringle
    Advisory Board Member

By: William L. Schilling
    William L. Schilling
    Advisory Board Member
    by permission /Anw. Brandy/

Date: _May 13, 2010_

HAROLDSON L. HUNT, JR. TRUST ESTATE

By: _John H. Creecy, Trustee_
    John Creecy
    Trustee

By: _____
    Margaret Keliher
    Advisory Board Member

By: William L. Schilling by permission
    William L. Schilling
    Advisory Board Member

Date: _May 13, 2010_

_Heather Washburne_ with permission
Heather Washburne, Individually, and Collectively

GLOBAL SETTLEMENT AND MUTUAL RELEASE AGREEMENT     PAGE 29

14-10505.26369

Date: _____5-13-10_____

Elisa Summers, Individually, and
Collectively

Date: _____5-13-10_____

William Herbert Hunt, Independent
Executor of the Estate of Tom Hunt,
Deceased

Date: _____5/13/10_____

Michael Wisenbaker, Jr., Individually

Date: _____5/13/10_____

Wesley Wisenbaker, Individually

Date: _____5/13/10_____

Cody Wikert, Individually

Date: _____5/13/10_____

Margretta Wikert, Individually

Date: _____May 13, 2010_____

Margaret Keliher, Individually

Date: _____5/13/10_____

Brett Ringle, Individually

Date: _____5-13-10_____

William L. Schilling, Individually

**GLOBAL SETTLEMENT AND MUTUAL RELEASE AGREEMENT**                    PAGE 30

14-10505.26370

APPX 0030

Date: _May  13,  2010_                          _John H. Creecy_
                                                John Creecy, Individually

Date: _____                  _____
                                                Guardian Ad Litem

14-10505.26371

APPX 0031

Agreed and Approved by Stephen Malouf, the Law Offices of Stephen F. Malouf, PC, Lisa Blue, Baron & Blue, Charla Aldous, Charla Aldous, PC and the Aldous Law Firm as Assignees of Claims, without waiver or modification of their fee agreements with Plaintiffs.

Date: 5/13/10

Stephen Malouf, individually and on behalf of The Law Offices of Stephen F. Malouf, PC as Assignees of Claims

Date: 5/13/10

Lisa Blue, individually and on behalf of Baron & Blue as Assignees of Claims

Date: 5-13-10

Charla Aldous, individually and on behalf of Charla Aldous, PC and the Aldous Law Firm as Assignees of Claims

14-10505.26372

APPX 0032

EXHIBIT "A"

**Additional Parties**

William Herbert Hunt
Joyce E. Waller
Ty Miller
Keith Benedict
James Wikert
Michael Wisenbaker, Sr.
Brian Lidji
Kerry North
Netherland Sewell & Associates, Inc.
Tristone Capital, LLC
Hunt Petroleum Corporation and affiliates
Hill Development Corporation and affiliates
HH Services, LLC
XTO Energy, Inc.
Exxon Mobil Corporation
Locke Lord Bissell & Liddell, LLP
KPMG LLP
Goldman Sachs & Co.
Affiliate entities of Al Jr.
Affiliate entities of Lyda Hill
Affiliate entities of Alinda Wikert
Affiliate entities of MHTE
Affiliate entities of HHTE
All former trustees, advisory board members, and employees of the MHTE and the HHTE
All former officers, directors, and employees of HPC and its subsidiaries and affiliates
All former and present executors of the Estate of Haroldson L. Hunt, Jr.
Tom Hunt, in all capacities
Any other entities that are or could be related to the Litigation affecting any rights or claims of
any individuals, entities, affiliates or agents

14-10505.26373

APPX 0033

EXHIBIT "B"

### the "Litigation"

1. *In re: Margaret Hunt Trust Estate* (No. 07-2210-P2-A; Probate Court No. 2, Dallas County, Texas) (the "Probate Suit")

2. *Albert G. Hill III v. Tom Hunt, et al.* (No. 3:07-CV-02020; U.S. District Court, Northern District of Texas) (the "Federal Suit")

3. *Albert G. Hill III v. Tom Hunt, et al.* (No. 08-01862; 116th Judicial District Court, Dallas County, Texas) filed 2/16/2008. Non-suited.

4. *Albert G. Hill III v. Lyda Hill* (No. 08-2187; 160th Judicial District Court, Dallas County, Texas) filed 2/27/2008. Final judgment entered 8/3/2009.

5. *Albert G. Hill III v. Albert G. Hill Jr.* (No. 08-02578-C; 68th Judicial District Court, Dallas County, Texas) filed 3/7/2008, consolidated with *Daniel L. Jackson, Receiver for Hill 3 Investments, LLC v. Albert G. Hill III* (No. 08-15790; 191st Judicial District Court, Dallas County, Texas) and *Albert G. Hill, Jr., in his capacity as a shareholder of III Cell Corporation v. Al Hill, III, derivatively on behalf of the defense of III Cell Corporation,* (No. 08-13790; 68th Judicial District Court, Dallas County, Texas)

6. *In re Estate of Haroldson L. Hunt, Jr., Deceased* (No. 08-00830-2; Probate Court No. 2, Dallas County, Texas) filed 3/7/2008

7. *In re Margaret Hunt Hill—Albert G. Hill, III Trust* (No. 08-00924-P1, Probate Court No 1, Dallas County, Texas), consolidated with *Albert G. Hill III v. Chester Donnally, Jr.* (No. 08-2907-M; 298th Judicial District Court, Dallas County, Texas) filed 3/17/2008

8. *In re Hill 1980 Trusts* (No. 08-00925-3, Probate Court No. 3, Dallas County, Texas) consolidated with *Albert G. Hill v. Albert G. Hill Jr.* (No. 09-00506-3, Probate Court No. 3 Dallas County, Texas) and *Albert G. Hill v. Albert G. Hill Jr.* (No. 09-1165-3, Probate Court No. 3, Dallas County, Texas) transferred from *Albert G. Hill III v. Albert G. Hill Jr.* (No. 08-2910-F; 116th Judicial District Court, Dallas County, Texas) and *Albert G. Hill III v. Albert G. Hill Jr.* (No. 08-02915-I; 162nd Judicial District Court, Dallas County, Texas)

9. *In re: Albert G. Hill, III 2006 Trust* (No. 08-00926-3, Probate Court No. 2, Dallas County, Texas) consolidated with *Albert G. Hill III v. Joyce Waller, Individually and as Trustee of the Albert G. Hill, III 2006 Trust* (No. 08-2253-P2) transferred from *Albert G. Hill III v. Joyce Waller (No.* 08-02911-E; 101st Judicial District Court, Dallas County, Texas)

10. *Albert G. Hill, Jr. v. Erin Nance Hill, Individually and as Trustee of the Hill Family Trust, Bordeaux Irrevocable Trust—Al G. Hill, IV, Bordeaux Irrevocable Trust—Nance Haroldson Hill, Bordeaux Irrevocable Trust—Caroline Margaret Hill, and Albert G. Hill III, as next friend of his children Al G. Hill, IV, Nance Haroldson Hill, and Albert G. Hill, III* (No. 09-03782-2, Probate Court No. 2, Dallas County, Texas)

11. *Albert G. Hill, Jr., in his capacity as a shareholder of III Cell Corporation v. Al Hill, III, derivatively on behalf of the defense of III Cell Corporation,* (No. 08-13790; 68th Judicial District Court, Dallas County, Texas) consolidated with *Abbott Financial, LLC v. Albert G. Hill III v. Albert G. Hill, Jr.* (Cause No. 09-15798; 68th Judicial District Court of Dallas County, Texas)

12. *Erin Nance Hill, Individually and as Next Friend of Albert G. Hill IV, Nance Haroldson Hill and Caroline Margaret Hill v. Margaret Keliher, John Creecy, Brett Ringle and William Schilling* (No. CC-09-09312-E; in the County Court at Law No. 5)

13. *Ivan Irwin, Jr., Trustee of the Albert Hill Trust v. OmniAmerican Bank, Albert G. Hill, III and Erin Hill,* (No. 09-09241-G, 134th Judicial District Court, Dallas County, Texas)

14. *In re Albert G. Hill, Jr. and Victoria Howland f/k/a Victoria Vincent Hill,* (No. 05-10-00125-CV, Original Proceeding in the Fifth Court of Appeals of Dallas County, Texas

15. Appeals or mandamus proceedings corresponding to any of the above-listed proceedings, including, but not limited to the following:

   (a) Case No. 05-09-00892-CV, *In Re: Estate of Haroldson L. Hunt Jr., deceased,* Fifth Court of Appeals, Dallas County, Texas

   (b) Case No. 05-09-00893-CV, *In Re: Estate of Margaret Hunt Hill, deceased,* Fifth Court of Appeals, Dallas County, Texas

   (c) Case No. 05-09-01105-CV, *In Re: Estate of Haroldson L. Hunt, Jr., deceased,* Fifth Court of Appeals, Dallas County, Texas

   (d) Case No. 10-0272 (10-0292 and 10-0293 consolidated with 10-0272), *In re Albert G. Hill, III and Erin Hill,* Texas Supreme Court

   (e) Case No. _____MHTE_____, Appeal regarding Judge DeShazo's recusal ruling recently filed by Jeremy Martin

   (f) Case No. ___HHTE_____, Appeal regarding Judge DeShazo's recusal ruling recently filed by Jeremy Martin

   (g) *Albert Hill v. Tom Hunt, et.* al, No. 10-10370, United States Court of Appeals for the Fifth Circuit

16.    *In re The Hill 1977 Trust – Al G. Hill, III*, Case No. PR-10-01333-2, in Probate Court No. 2, Dallas County, Texas

14-10505.26376

APPX 0036

EXHIBIT C

Valid Disclaimer by Albert G. Hill, Jr.

**[INSERT DISCLAIMER BEHIND THIS PAGE]**

GLOBAL SETTLEMENT AND MUTUAL RELEASE AGREEMENT

14-10505.26377

*Al G. Hill, Jr.*

## DISCLAIMER

## MARGARET HUNT TRUST ESTATE

### RECITALS

1.    The Margaret Hunt Trust Estate (the "*Trust*") was created under the Articles of Agreement and Declaration of Trust dated December 28, 1935 (the "*Trust Agreement*") between H. L. Hunt and Lyda Hunt, as trustors, and H. L. Hunt, as trustee.

2.    During her lifetime, Margaret Hunt Hill ("*MHH*") is the only beneficiary who can receive distributions from the Trust. Under Article IV, Section 4 of the Trust Agreement, MHH is entitled to receive "such portions of the net profits accruing from time to time" to the Trust as the trustee (acting with the advice and consent of the advisory board) may see fit to distribute to MHH. (The right to receive discretionary distributions from time to time of some portion or all the Trust's net profits is hereinafter referred to as an "*Income Interest.*")

3.    MHH is currently a resident of and domiciled in the State of Texas. MHH is currently unmarried because her husband, Al G. Hill, is deceased. It is anticipated that MHH will still be a resident of and domiciled in the State of Texas at the time of her death and will be unmarried at that time.

4.    The Trust terminates 21 years after MHH's date of death (the "*Trust Termination Date*").

5.    MHH holds a general power of appointment with respect to the Trust, but if she does not exercise such power, MHH's Income Interest in the Trust will pass pursuant to Article III, Section 3 of the Trust Agreement to MHH's "heirs in accordance with the laws of descent and distribution then in force." Thus, each such heir of MHH will receive an Income Interest in the Trust (being such heir's fractional share of the entire Income Interest in the Trust) if MHH does not exercise her general power of appointment with respect to the Trust.

6.    In addition to receiving an Income Interest in the Trust, if MHH does not exercise her general power of appointment with respect to the Trust, each intestate heir of MHH is also granted under Article IV, Section 3 of the Trust Agreement the right to receive a portion of the assets held in the Trust upon its termination, but only if such heir is still alive on the Trust Termination Date. (The right to participate in the Trust's termination distribution is hereinafter referred to as a "*Termination Interest.*")

7.    If MHH does not exercise her general power of appointment, each intestate heir of MHH will also possess under Article III, Section 3 of the Trust Agreement a general power of appointment allowing such heir to appoint his or her Income Interest or Termination Interest in the Trust, or both, to someone else.

8.    Al G. Hill, Jr. (the "*Disclaiming Beneficiary*") is one of MHH's three children. If the Disclaiming Beneficiary survives MHH by at least 120 hours, he will be entitled to receive both an Income Interest and a Termination Interest with respect to the Trust. (The Income Interest and Termination Interest in the Trust that the Disclaiming Beneficiary receives by virtue

14-10505.26378

being an intestate heir of MHH, but excluding any increase therein attributable to a disclaimer made by any other beneficiary, are hereinafter referred to, respectively, as the "*Initial Income Interest*" and the "*Initial Termination Interest*." Any increase in the Disclaiming Beneficiary's Income Interest and Termination Interest in the Trust attributable to a disclaimer made by another beneficiary are hereinafter referred to, respectively, as an "*Additional Income Interest*" and an "*Additional Termination Interest*.")

9.      Section 112.010(c-2) of the Texas Trust Code provides that a beneficiary may disclaim a "future interest" in a trust in whole or in part as long as such disclaimer is made no later than nine months after "the date of the event that causes the taker of the interest to be finally ascertained and the interest to be indefeasibly vested." For these purposes, the earliest date upon which the Disclaiming Beneficiary's interests in the Trust could be considered finally ascertained and indefeasibly vested is MHH's date of death. In addition, the Disclaiming Beneficiary has neither exercised dominion or control over the Trust interests being disclaimed herein nor accepted any benefits from the Trust, thereby satisfying the condition for making a disclaimer set out in section 112.010(c-1) of the Texas Trust Code.

10.      Section 25.2518-2(c)(3) of the U.S. Treasury Regulations provides that a beneficiary who receives an interest in property as the result of the lapse of a general power of appointment may make a "qualified disclaimer" with respect to such interest no later than 9 months after such lapse. As to the Disclaiming Beneficiary's interests in the Trust, this period for making a "qualified disclaimer" will extend through the date that is 9 months after MHH's date of death.

11.      The Disclaiming Beneficiary has decided to disclaim some portion of the Disclaiming Beneficiary's interests in the Trust that arise if MHH does not exercise her general power of appointment with respect to the Trust. In accordance with section 112.010(d) of the Texas Trust Code, the interests being disclaimed herein will pass as if the Disclaiming Beneficiary had predeceased MHH. Thus, under sections 38(a), 43 and 47 of the Texas Probate Code, these disclaimed interests will pass and vest (barring any disclaimers by the recipients) in the Disclaiming Beneficiary's own children, in equal shares, if all of such children survive MHH by at least 120 hours.

## DISCLAIMERS

In consideration of the foregoing, and in accordance with section 112.010 of the Texas Trust Code and sections 2046 and 2518 of the Internal Revenue Code, the Disclaiming Beneficiary is executing this instrument to evidence an irrevocable and unqualified refusal to accept, and does hereby irrevocably disclaim and renounce, the following interests in the Trust (the "*Disclaimed Interests*"):

(A)      75% of both the Initial Income Interest and Initial Termination Interest in the Trust the Disclaiming Beneficiary would otherwise receive solely by virtue of being an intestate heir of MHH;

(B)      An additional 15% of the Initial Termination Interest in the Trust the Disclaiming Beneficiary would otherwise receive solely by virtue of being an intestate heir of

-2-

14-10505.26379

MHH (leaving the Disclaiming Beneficiary with 40% of the Termination Interest with respect to his undisclaimed 25% portion of the Initial Income Interest, which equates to 10% of the Initial Termination Interest);

(C)    100% of any Additional Income Interest in the Trust the Disclaiming Beneficiary would otherwise receive as a result of a disclaimer made by another beneficiary;

(D)    100% of any Additional Termination Interest in the Trust the Disclaiming Beneficiary would otherwise receive as a result of a disclaimer made by another beneficiary; and

(E)    The Disclaiming Beneficiary's power of appointment with respect to each of the interests disclaimed under clauses (A) through (D) above, inclusive.

The Disclaiming Beneficiary is not renouncing or disclaiming any interests in the Trust besides the Disclaimed Interests. Thus, the Disclaiming Beneficiary is retaining all interests in the Trust other than the Disclaimed Interests (including, without limitation, the Beneficiary's power of appointment over such retained interests).

EXECUTED effective upon the date shown on the attached acknowledgment.

_____
Al G. Hill, Jr.

STATE OF TEXAS

COUNTY OF DALLAS

This instrument was acknowledged before me on _____ _____, 2005, by Al G. Hill, Jr.

JOYCE E. WALLER
Notary Public, State of Texas
My Commission Expires
05/31/2005

_____
Notary Public, State of Texas

ACKNOWLEDGMENT OF RECEIPT:

_____
Tom Hunt, Trustee

2123794_3.DOC

-2-

14-10505.26380

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **ALBERT G. HILL III**, individually as a Beneficiary of the Margaret Hunt Trust Estate, derivatively on behalf of the Margaret Hunt Trust Estate, individually as a beneficiary of the Haroldson Lafayette Hunt, Jr. Trust Estate, and derivatively on behalf of the Haroldson Lafayette Hunt, Jr. Trust Estate, | § § § § § § § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 3:07-CV-02020-O |
| v. | § § § | **CONFIDENTIAL** **UNDER SEAL** |
| **TOM HUNT**, MARGARET KELIHER, BRETT RINGLE, JOHN CREECY, WILLIAM SCHILLING, IVAN IRWIN JR., WILLIAM HERBERT HUNT, ALBERT G. HILL, JR., ALINDA H. WIKERT, LYDA HILL, HEATHER H. WASHBURNE, and ELISA M. SUMMERS, | § § § § § § § § § | |
| Defendants. | § | |

## FINAL JUDGMENT

On this day, the Court considered whether the proposed settlement (the "Settlement") should be approved pursuant to the terms set forth in the confidential Global Settlement and Mutual Release Agreement (the "Agreement") (ECF No. 879) relating to the above-captioned action and the additional actions (collectively, the "Litigation") listed in Exhibit "B" to the Agreement[1] as well as the Notice of Appeal filed by Albert G. Hill, III on July 9, 2010, and the Notice of Appeal filed by Erin Nance Hill, Individually and as Next Friend of Albert G. Hill, IV, Nance Haroldson Hill, and Caroline Margaret Hill on July 12, 2010, both with respect to the

---

[1]      Exhibit 1.

-1-

order signed by the Honorable Robert Price on April 13, 2010.  The Court, having considered all papers filed, the proceedings held herein, the representations made, the arguments of counsel, the approval of the Agreement by the Court-appointed guardian ad litem (as addressed below), and the Findings, Conclusions, and Recommendations of the United States Magistrate Judge Paul D. Stickney (ECF No. 917), has determined that the Settlement set forth in the Agreement (as modified herein) should be and hereby is approved in all respects.  The Court hereby enters this Final Judgment (the " Final Judgment") which constitutes a final adjudication of this action on the merits.  Accordingly, the Court makes the following findings and enters the following orders:

**Approval of the Agreement**

1.      IT IS ORDERED that the Agreement (including each of its terms, conditions, and exhibits) is incorporated herein as though fully set forth in this Final Judgment, except as otherwise stated herein.  IT IS FURTHER ORDERED that the definitions of the terms set forth in the Agreement are incorporated herein as though fully set forth in this Final Judgment.  IT IS FURTHER ORDERED that the Court has jurisdiction over the above-captioned action and the parties to this action.  In the event of any conflict between the Agreement and this Final Judgment, the terms of this Final Judgment shall control.

2.      The Agreement was entered into by the following "Agreeing Parties":

   a.   Albert G. Hill, Jr., in all capacities ("Al Jr.").

   b.   Lyda Hill, in all capacities ("Lyda").

   c.   Alinda Hill Wikert, in all capacities ("Alinda").

   d.   Albert G. Hill, III, in all capacities ("Al III").

   e.   Erin Nance Hill, in all capacities ("Erin").

APPX 0042

f.  In entering into the Agreement, Al III is also acting derivatively on behalf of the MHTE and the HHTE (defined below).  In addition, Al III and Erin are acting as next friends, and on behalf of their children, the lineal descendants of Al III, who are Albert Galatyn Hill IV, Nance Haroldson Hill, and Caroline Margaret Hill (collectively, the "Grandchildren").

g.  Margaret Keliher, individually, as Trustee of the Margaret Hunt Trust Estate (the "MHTE"), as advisory board member of the HHTE (defined below), and in all other capacities.

h.  John Creecy, individually, as Trustee of the Haroldson L. Hunt, Jr. Trust Estate (the "HHTE"), and in all other capacities.

i.  Brett Ringle, individually, as former Trustee of the MHTE, as current advisory board member of the MHTE, and in all other capacities.

j.  William L. Schilling, individually, as advisory board member of the HHTE and the MHTE, and in all other capacities.

k.  Ivan Irwin, Jr., in all capacities.

l.  Heather Hill Washburne, Ray W. Washburne, and their three minor children Hill Washburne, Andrew Washburne, and Mary Washburne, in all capacities (collectively, "Washburne," and Heather Hill Washburne, individually "Heather").

m. Elisa Hill Summers, Stephen R. Summers, and their three minor children Emily Summers, Camille Summers, and Stephen R. Summers, Jr., in all capacities (collectively, "Summers," and Elisa Hill Summers, individually, "Elisa").

-3-

n.  William Herbert Hunt, as Independent Executor of the Estate of Tom Hunt, Deceased, and in all other capacities.

o.  Michael Wisenbaker, Jr., in all capacities.

p.  Wesley Wisenbaker, in all capacities.

q.  Cody Wikert, in all capacities.

r.  Margretta Wikert, in all capacities.

s.  The MHTE.

t.  The HHTE.

u.  The Assignees of Claims (as defined in the Agreement).

v.  The Court-appointed guardian ad litem: Michael K. Hurst.

All of the individuals or entities listed on Exhibit "A" of the Agreement[2] are referred to in the Agreement as the "Additional Parties," and, together with the Agreeing Parties, the "Parties." The Additional Parties are third-party beneficiaries of the Agreement.

3.  Pursuant to Section 115.014 of the TEXAS PROPERTY CODE and other applicable authorities, the Court appointed Michael K. Hurst as the guardian ad litem to represent the interests of any minor, incapacitated, unborn, or unascertained person having an interest in any trust subject to the Agreement, and any person whose identity or address is unknown who may have an interest in any trust subject to the Agreement, including the Grandchildren and any other future beneficiaries of the MHTE and the HHTE (ECF No. 880). Based upon the representations made and the arguments of counsel, the Court finds that the guardian ad litem is fully informed as to the nature of the claims and defenses alleged, and the nature and consequences of the Agreement and related Documentation. The Court further finds that there is no

---

[2]    Exhibit 2.

-4-

conflict of interest between the guardian ad litem and the people he represents.  The Court further finds that there do not appear to be any conflicts of interest between or among the people the guardian ad litem represents.  The Court further finds that the interests of any minor, incapacitated, unborn, or unascertained people who have or may have an interest in any trust subject to the Agreement are substantially identical to and adequately represented by the adult beneficiaries who are parties to the Litigation; there do not appear to be any conflicts of interest between or among such people and such adult beneficiaries; and such people are bound by any relief granted by the Court in this matter through virtual representation.  The Court further finds that the guardian ad litem represents that the approval of the Agreement, subject to the conditions specified in the June 30, 2010 (ECF No. 895), July 7, 2010 (ECF No. 899), August 24, 2010 (ECF No. 950), and October 29, 2010 (ECF No. 985) reports provided to this Court by the guardian ad litem, is in the best interest of those persons he represents.  The Court further finds that the guardian ad litem recommends approval of the Agreement and the entry of this Final Judgment, subject to the conditions specified in the guardian ad litem's June 30, 2010 (ECF No. 895), July 7, 2010 (ECF No. 899), August 24, 2010 (ECF No. 950) and October 29, 2010 (ECF No. 985) reports.

4.     The Court, after considering the pleadings, proceedings held herein, and representations made and arguments of counsel, finds that the Agreement, the approval of the Agreement, and the entry of this Final Judgment is fair, reasonable, and in the best interests of the Parties, the MHTE, the HHTE, the beneficiaries, spouses, any minor, incapacitated, unborn, or unascertained people having an interest

APPX 0045

in any trust subject to the Agreement, and any person whose identity or address is unknown who may have an interest in any trust subject to the Agreement, including the Grandchildren and any other future beneficiaries of the MHTE and the HHTE. The Court further finds that this Final Judgment effectuates the intent of the parties as stated in the Agreement. IT IS THEREFORE ORDERED that the Agreement (as modified herein) is hereby approved in all respects.

**Affirmance of Al Jr.'s Disclaimer**

5. The Court finds and declares, and IT IS ORDERED, that Al Jr.'s original 2005 disclaimer relating to the MHTE, a copy of which is attached as Exhibit "C" to the Agreement (the "Disclaimer"),[3] is valid, enforceable, and shall be given full force and effect.

**Declaration of Beneficiaries, Division of Trusts, and Approval of Appointments of New Trustees and Advisory Board Members**

6. The Agreeing Parties have agreed to effectuate the division of the MHTE and the HHTE into separate trusts (collectively, the "New Hunt Trusts") as further described below. The Court acknowledges that Probate Court No. 2, Dallas County, Texas (the "Probate Court") previously entered orders sustaining motions for division of trust for the MHTE (ECF No. 253-2) and the HHTE (ECF No. 253-3), which orders have been appealed. However, the Agreeing Parties have agreed for purposes of the Settlement that the Probate Court's orders sustaining motions for division of trust for the MHTE and the HHTE will be set aside, and the parties will jointly request that they be set aside, and that this Court in this Final Judgment will order the division of the MHTE and the HHTE in accordance with the Agreement and this Final Judgment.

---

[3]    Exhibit 3.

APPX 0046

7.    Under Section 112.057 of the TEXAS PROPERTY CODE (permitting a trustee to divide a trust), the Court finds that the division of the MHTE and the HHTE into the New Hunt Trusts is not "expressly prohibited by the terms of the instrument establishing the trust[s]" and "does not impair the rights of any beneficiary or adversely affect the achievement of the purposes of the original trust[s]."   In addition, under Section 112.054 of the TEXAS PROPERTY CODE (permitting judicial division of a trust), the Court further finds that "all beneficiaries of [each] trust have consented" and the guardian ad litem (appointed to represent minor, incapacitated, unborn, or unascertained people having an interest in any trust subject to the Agreement, and any person whose identity or address is unknown who may have an interest in any trust subject to the Agreement), has consented (subject to the conditions specified in the June 30, 2010 (ECF No. 895), July 7, 2010 (ECF No. 899), August 24, 2010 (ECF No. 950), and October 29, 2010 (ECF No. 985) reports provided to this Court by the guardian ad litem) to a division of the MHTE and the HHTE into the New Hunt Trusts, and that such division is appropriate "because of circumstances not known to or anticipated by the settlor[s]" and this Final Judgment ordering such division "will further the purposes of [each] trust" and "is not inconsistent with a material purpose of the trust[s]."    In addition, this Court, through the exercise of its equitable jurisdiction over trusts, divides both the MHTE and the HHTE in the manner set forth in this Final Judgment to facilitate the implementation of the Agreement.

8.    IT IS ORDERED that, as provided in this Final Judgment, the MHTE shall be divided into separate trusts as set forth below, subject to any valid disclaimers by any current Beneficiary (defined below).  IT IS FURTHER ORDERED that the assets and

APPX 0047

liabilities of the MHTE were divided by operation of law into separate shares of a single trust effective as of the date of death of Margaret Hunt Hill on June 14, 2007 in the fractional shares set forth below. IT IS FURTHER ORDERED that in funding each of the New Hunt Trusts relating to the MHTE, the Trustee of the MHTE shall start with the separate shares as of the date of death of Margaret Hunt Hill on June 14, 2007, and then all subsequent receipts, disbursements, gains, and losses shall be allocated proportionately among the New Hunt Trusts relating to the MHTE, except: (1) such allocations shall be adjusted to reflect distributions made, assets set aside, and obligations incurred since the date of death of Margaret Hunt Hill that are properly attributable to a particular separate share or shares, or (2) as otherwise provided in the Agreement or in the Final Judgment in the Margaret Probate Suit (as that term is defined in the Agreement). IT IS FURTHER ORDERED that all undistributed "net profits" (as referred to in Article IV, Section 4 of the Agreement and Declaration of Trust establishing the MHTE) of the MHTE shall retain their character as "net profits" (and not corpus) of the New Hunt Trusts after distribution of the MHTE assets to the New Hunt Trusts. IT IS FURTHER ORDERED that:

a.  One-third (1/3) of the MHTE shall be set aside as a separate trust for the benefit of Lyda as the sole current Beneficiary (as the term "Beneficiary" is defined in the MHTE) of such separate trust.

   i.   The name of this separate trust shall be the "MHTE - Lyda Hill  Trust."

   ii.  The Court hereby APPROVES the appointment of the following successor trustee and advisory board members of the MHTE - Lyda Hill Trust, who shall succeed to such positions in accordance with Article II, Section 3 of

APPX 0048

the Articles of Agreement and Declaration of Trust of the MHTE, as of the date the current trustee and advisory board members resign from their respective positions:

    a)  Trustee Mary Jalonick;

    b)  Advisory Board Member Clay Hunt; and

    c)  Advisory Board Member Todd Hunt.

b.  One-twelfth (1/12) of the MHTE shall be set aside as a separate trust for the benefit of Michael B. Wisenbaker, Jr. as the sole current Beneficiary (as the term "Beneficiary" is defined in the MHTE) of such separate trust.

    i.  The name of this separate trust shall be the "MHTE - Michael B. Wisenbaker, Jr. Trust."

    ii.  The Court hereby APPROVES the appointment of the following successor trustee and advisory board members of the MHTE - Michael B. Wisenbaker, Jr. Trust, who shall succeed to such positions in accordance with Article II, Section 3 of the Articles of Agreement and Declaration of Trust of the MHTE, as of the date the current trustee and advisory board members resign from their respective positions:

        a)  Trustee Danny R. Bowlin;

        b)  Advisory Board Member Deborah A. Kitchens; and

        c)  Advisory Board Member Reagan B. Jensen.

c.  One-twelfth (1/12) of the MHTE shall be set aside as a separate trust for the benefit of Wesley H. Wisenbaker as the sole current Beneficiary (as the term "Beneficiary" is defined in the MHTE) of such separate trust.

APPX 0049

    i.   The name of this separate trust shall be the "MHTE - Wesley H. Wisenbaker Trust."

    ii.  The Court hereby APPROVES the appointment of the following successor trustee and advisory board members of the MHTE - Wesley H. Wisenbaker Trust, who shall succeed to such positions in accordance with Article II, Section 3 of the Articles of Agreement and Declaration of Trust of the MHTE, as of the date the current trustee and advisory board members resign from their respective positions:

        a)  Trustee Danny R. Bowlin;

        b)  Advisory Board Member Deborah A. Kitchens; and

        c)  Advisory Board Member Reagan B. Jensen.

d.  One-twelfth (1/12) of the MHTE shall be set aside as a separate trust for the benefit of Cody M. Wikert as the sole current Beneficiary (as the term "Beneficiary" is defined in the MHTE) of such separate trust.

    i.   The name of this separate trust shall be the "MHTE - Cody M. Wikert Trust."

    ii.  The Court hereby APPROVES the appointment of the following successor trustee and advisory board members of the MHTE - Cody Wikert Trust, who shall succeed to such positions in accordance with Article II, Section 3 of the Articles of Agreement and Declaration of Trust of the MHTE, as of the date the current trustee and advisory board members resign from their respective positions:

        a)  Trustee Danny R. Bowlin;

-10-

     b)  Advisory Board Member Deborah A. Kitchens; and

     c)  Advisory Board Member Reagan B. Jensen.

e.  One-twelfth (1/12) of the MHTE shall be set aside as a separate trust for the benefit of Margretta H. Wikert as the sole current Beneficiary (as the term "Beneficiary" is defined in the MHTE) of such separate trust.

    i.  The name of this separate trust shall be the "MHTE - Margretta H. Wikert Trust."

    ii.  The Court hereby APPROVES the appointment of the following successor trustee and advisory board members of the MHTE - Margretta H. Wikert Trust, who shall succeed to such positions in accordance with Article II, Section 3 of the Articles of Agreement and Declaration of Trust of the MHTE, as of the date the current trustee and advisory board members resign from their respective positions:

      a)  Trustee Danny R. Bowlin;

      b)  Advisory Board Member Deborah A. Kitchens; and

      c)  Advisory Board Member Reagan B. Jensen.

f.  Pursuant to the Disclaimer, Al Jr. disclaimed all but 25% of his one-third (1/3) Income Interest (defined in the Disclaimer as the right to receive discretionary distributions from time to time of some portion or all of the trust's net profits) in the MHTE and all but 10% of his one-third (1/3) Termination Interest (defined in the Disclaimer as the right to participate in the trust's termination distribution) in the MHTE.  This means that Al Jr. did not disclaim a one-twelfth (1/12) Income Interest in the MHTE and a one-thirtieth (1/30) Termination Interest in the

-11-

APPX 0051

MHTE.  Accordingly, IT IS FURTHER ORDERED that one-twelfth (1/12) of the MHTE shall be set aside and further divided into four separate trusts, as follows:

i. Two-fifths (2/5) of one-twelfth (1/12) of the MHTE set aside for the benefit of Al Jr. shall be set aside further as a separate trust for the benefit of Al Jr. as the sole current Beneficiary (as the term "Beneficiary" is defined in the MHTE) of such separate trust (as Al Jr. has disclaimed none of his interests or powers with respect to this portion of the MHTE).

    a)   The name of this separate trust shall be the "MHTE – Albert G. Hill, Jr. Trust."

    b)  The Court APPROVES the appointment of the following successor trustee and advisory board members of the MHTE – Albert G. Hill, Jr. Trust, who shall succeed to such positions in accordance with Article II, Section 3 of the Articles of Agreement and Declaration of Trust of the MHTE, as of the date the current trustee and advisory board members resign from their respective positions:

        a. Trustee Chester J. ("Don") Donnally, Jr.;

        b. Advisory Board Member Ivan Irwin, Jr.; and

        c. Advisory Board Member Thomas P. Tatham.

ii. One-fifth (1/5) of one-twelfth (1/12) of the MHTE shall be set aside as a separate trust for the benefit of Al Jr. as the sole current Income Beneficiary (as the term "Beneficiary" is defined in the MHTE) of such separate trust during the life of Al Jr. (with the Disclaimer by Al Jr. of his

-12-

APPX 0052

Termination Interest and his power of appointment applicable to this portion of the MHTE).

a)  The name of this separate trust shall be the "MHTE – Albert G. Hill, Jr. Income Beneficiary / Al III Termination Beneficiary Trust."

b)  The Court hereby APPROVES the appointment of the following successor trustee and advisory board members of the MHTE – Albert Hill, Jr. Income Beneficiary / Al III Termination Beneficiary Trust, who shall succeed to such positions in accordance with Article II, Section 3 of the Articles of Agreement and Declaration of Trust of the MHTE, as of the date the current trustee and advisory board members resign from their respective positions:

   a.  Trustee _____[Al III's Bank Trustee];[4]

   b.  Advisory Board Member _____ [Al III's designee];[5] and

   c.  Advisory Board Member Chester J. ("Don") Donnally, Jr..

c)  In accordance with the Disclaimer, the Termination Interest of the MHTE – Albert G. Hill, Jr. Income Beneficiary / Al III Termination Beneficiary Trust, as defined in the Disclaimer, being the right to participate in the trust's termination distribution,

---

[4]   Al III is ORDERED to submit the name of the person he would like to serve in this capacity within ten (10) days of the Court entering this Final Judgment.

[5]   Al III is ORDERED to submit the name of the person he would like to serve in this capacity within ten (10) days of the Court entering this Final Judgment.

-13-

having been disclaimed by Al Jr., shall be held and administered as provided by Section 112.010 of the TEXAS PROPERTY CODE with respect to the interests and powers disclaimed, except that with respect to the MHTE – Albert G. Hill, Jr. Income Beneficiary / Al III Termination Beneficiary Trust, each Potential Beneficiary (defined below) who is Elisa, Heather, or a descendant of Elisa or of Heather, shall be treated as deceased while any Potential Beneficiary (defined below) who is Al III or a descendant of Al III is living.

iii. One-fifth (1/5) of one-twelfth (1/12) of the MHTE shall be set aside as a separate trust for the benefit of Al Jr. as the sole current Income Beneficiary (as the term "Beneficiary" is defined in the MHTE) of such separate trust during the life of Al Jr. (with the Disclaimer by Al Jr. of his Termination Interest and his power of appointment applicable to this portion of the MHTE, but without any disclaimer by Heather applicable to this portion of the MHTE).

a) The name of this separate trust shall be the "MHTE – Albert G. Hill, Jr. Income Beneficiary / Heather Termination Beneficiary Trust."

b) The Court hereby APPROVES the appointment of the following successor trustee and advisory board members of the MHTE – Albert G. Hill, Jr. Income Beneficiary / Heather Termination Beneficiary Trust, who shall succeed to such positions in

-14-

APPX 0054

accordance with Article II, Section 3 of the Articles of Agreement and Declaration of Trust of the MHTE, as of the date the current trustee and advisory board members resign from their respective positions:

    a.   Trustee Chester J. ("Don") Donnally, Jr.;

    b.   Advisory Board Member Elisa H. Summers; and

    c.   Advisory Board Member Thomas P. Tatham.

c) In accordance with the Disclaimer, the Termination Interest of the MHTE – Albert G. Hill, Jr. Income Beneficiary / Heather Termination Beneficiary Trust, as defined in the Disclaimer, being the right to participate in the trust's termination distribution, having been disclaimed by Al Jr., shall be held and administered as provided by Section 112.010 of the TEXAS PROPERTY CODE with respect to the interests and powers disclaimed, except that with respect to the MHTE – Albert G. Hill, Jr. Income Beneficiary / Heather Termination Beneficiary Trust, each Potential Beneficiary (defined below) who is Al III, Elisa, or a descendant of Al III or of Elisa, shall be treated as deceased while any Potential Beneficiary (defined below) who is Heather or a descendant of Heather is living.

iv. One-fifth (1/5) of one-twelfth (1/12) of the MHTE shall be set aside as a separate trust for the benefit of Al Jr. as the sole current Income Beneficiary (as the term "Beneficiary" is defined in the MHTE) of such

-15-

APPX 0055

separate trust during the life of Al Jr. (with the Disclaimer by Al Jr. of his Termination Interest and his power of appointment applicable to this portion of the MHTE, but without any disclaimer by Elisa applicable to this portion of the MHTE).

a)  The name of this separate trust shall be the "MHTE – Albert G. Hill, Jr. Income Beneficiary / Elisa Termination Beneficiary Trust."

b)  The Court hereby APPROVES the appointment of the following successor trustee and advisory board members of the MHTE – Albert G. Hill, Jr. Income Beneficiary / Elisa Termination Beneficiary Trust, who shall succeed to such positions in accordance with Article II, Section 3 of the Articles of Agreement and Declaration of Trust of the MHTE, as of the date the current trustee and advisory board members resign from their respective positions:

   a.  Trustee Chester J. ("Don") Donnally, Jr.;

   b.  Advisory Board Member Heather H. Washburne; and

   c.  Advisory Board Member Thomas P. Tatham.

c)  In accordance with the Disclaimer, the Termination Interest of the MHTE – Albert G. Hill, Jr. Income Beneficiary / Elisa Termination Beneficiary Trust, as defined in the Disclaimer, being the right to participate in the trust's termination distribution, having been disclaimed by Al Jr., shall be held and administered as

APPX 0056

provided by Section 112.010 of the TEXAS PROPERTY CODE with respect to the interests and powers disclaimed, except that with respect to the MHTE – Albert G. Hill, Jr. Income Beneficiary / Elisa Termination Beneficiary Trust, each Potential Beneficiary (defined below) who is Al III, Heather, or a descendant of Al III or of Heather, shall be treated as deceased while any Potential Beneficiary (defined below) who is Elisa or a descendant of Elisa is living.

    v. For purposes of subparagraph f:

       a) A "Potential Beneficiary" at a particular time means: (1) a person who under the facts that exist at that time could receive, pursuant to an exercise of the trustee's discretion, net profits from a separate trust created in subparagraph f above, or (2) if the time in question is at the termination of the trust, then a person who could receive a share of the trust.

       b) Despite the preceding subparagraph, (1) in no event does a Potential Beneficiary include any person who could receive net profits or principal only on the occurrence of an event that, at the time in question, has not yet happened, such as the death of a person who then is living, and (2) in determining who is or is not a Potential Beneficiary at a particular time, a person living at the time in question shall be treated as deceased with respect to any

-17-

APPX 0057

interest or power such person has disclaimed at such time as provided under Texas law.

g. One-twelfth (1/12) of the MHTE shall be set aside as a separate trust for the benefit of Heather H. Washburne as the sole current Beneficiary (as the term "Beneficiary" is defined in the MHTE) of such separate trust (with the disclaimer by Heather dated March 13, 2008, of 25% of her Termination Interest and her power of appointment applicable to this portion of the MHTE).

   i. The name of this separate trust shall be the "MHTE - Heather H. Washburne Trust."

   ii. The Court hereby APPROVES the appointment of the following successor trustee and advisory board members of the MHTE - Heather H. Washburne Trust, who shall succeed to such positions in accordance with Article II, Section 3 of the Articles of Agreement and Declaration of Trust of the MHTE, as of the date the current trustee and advisory board members resign from their respective positions:

      a) Trustee Elisa Hill Summers;

      b) Advisory Board Member Ray W. Washburne; and

      c) Advisory Board Member Tyree B. Miller.

   iii. In accordance with the disclaimer by Heather dated March 13, 2008, three-tenths (3/10) of the Termination Interest of the MHTE – Heather H. Washburne Trust, as defined in her disclaimer, being the right to participate in the trust's termination distribution, and being disclaimed by Heather, shall be held and administered as provided by Section 112.010 of

-18-

the TEXAS PROPERTY CODE with respect to the interests and powers disclaimed.

h. One-twelfth (1/12) of the MHTE shall be set aside as a separate trust for the benefit of Elisa as the sole current Beneficiary (as the term "Beneficiary" is defined in the MHTE) of such separate trust (with the disclaimer by Elisa dated March 13, 2008, of 20% of her Termination Interest and her power of appointment applicable to this portion of the MHTE).

   i.   The name of this separate trust shall be the "MHTE - Elisa H. Summers Trust."

   ii.  The Court hereby APPROVES the appointment of the following successor trustee and advisory board members of the MHTE - Elisa H. Summers Trust, who shall succeed to such positions in accordance with Article II, Section 3 of the Articles of Agreement and Declaration of Trust of the MHTE, as of the date the current trustee and advisory board members resign from their respective positions:

         a)  Trustee Heather Hill Washburne;

         b)  Advisory Board Member Stephen R. Summers; and

         c)  Advisory Board Member Tyree B. Miller.

   iii. In accordance with the disclaimer by Elisa dated March 13, 2008, six twenty-fifths (6/25) of the Termination Interest of the MHTE – Elisa H. Summers Trust, as defined in her disclaimer, being the right to participate in the trust's termination distribution, and being disclaimed by Elisa, shall

-19-

be held and administered as provided by Section 112.010 of the TEXAS PROPERTY CODE with respect to the interests and powers disclaimed.

   i. One-twelfth (1/12) of the MHTE shall be set aside as a separate trust for the benefit of Al III as the sole current Beneficiary (as the term "Beneficiary" is defined in the MHTE) of such separate trust.

      i. The name of this separate trust shall be the "MHTE - Albert G. Hill III Trust."

      ii. The Court hereby APPROVES the appointment of the following successor trustee and advisory board members of the MHTE - Albert G. Hill III Trust, who shall succeed to such position in accordance with Article II, Section 3 of the Articles of Agreement and Declaration of Trust of the MHTE, as of the date the current trustee and advisory board members resign from their respective positions:

         a) Trustee _____ [Al III's Bank Trustee];[6]

         b) Advisory Board Member Al III; and

         c) Advisory Board Member A. Kimbrough Davis.

9. IT IS ORDERED, as provided in this Final Judgment, that the HHTE shall be divided into separate trusts as set forth below. IT IS FURTHER ORDERED that the assets and liabilities of the HHTE were divided by operation of law into separate shares of a single trust effective as of the date of death of Haroldson L. Hunt, Jr. on April 20, 2005 in the fractional shares set forth below. IT IS FURTHER ORDERED that in funding each of the New Hunt Trusts relating to the HHTE, the Trustee of the HHTE

---

[6]    Al III is ORDERED to submit the name of the person he would like to serve in this capacity within ten (10) days of the Court entering this Final Judgment.

APPX 0060

shall start with the separate shares as of the date of death of Haroldson L. Hunt, Jr. on April 20, 2005, and then all subsequent receipts, disbursements, gains, and losses shall be allocated proportionately among the New Hunt Trusts relating to the HHTE, except: (1) such allocations shall be adjusted to reflect distributions made, assets set aside, and obligations incurred since the date of death of Haroldson L. Hunt, Jr. that are properly attributable to a particular separate share or shares, or (2) as otherwise provided in the Agreement. IT IS FURTHER ORDERED that all undistributed "net profits" (as referred to in Article IV, Section 4 of the Agreement and Declaration of Trust establishing the HHTE) of the HHTE shall retain their character as "net profits" (and not corpus) of the New Hunt Trusts after distribution of the HHTE assets to the New Hunt Trusts. IT IS FURTHER ORDERED that:

a. One-third (1/3) of the HHTE shall be set aside as a separate trust for the benefit of Lyda as the sole current Beneficiary (as the term "Beneficiary" is defined in the HHTE) of such separate trust.

 i. The name of this separate trust shall be the "HLHTE - Lyda Hill Trust." The Court hereby APPROVES the appointment of the following successor trustee and advisory board members of the HLHTE - Lyda Hill Trust, who shall succeed to such positions in accordance with Article II, Section 3 of the Articles of Agreement and Declaration of Trust of the HHTE, as of the date the current trustee and advisory board members resign from their respective positions:

  a) Trustee Peggy Allison;

  b) Advisory Board Member Clay Hunt; and

-21-

      c)  Advisory Board Member Todd Hunt.

b.  One-third (1/3) of the HHTE shall be set aside as a separate trust for the benefit of Alinda as the sole current Beneficiary (as the term "Beneficiary" is defined in the HHTE) of such separate trust.

    i.  The name of this separate trust shall be the "HLHTE - Alinda H. Wikert Trust."

    ii.  The Court hereby APPROVES the appointment of the following successor trustee and advisory board members of the HLHTE - Alinda H. Wikert Trust, who shall succeed to such positions in accordance with Article II, Section 3 of the Articles of Agreement and Declaration of Trust of the HHTE, as of the date the current trustee and advisory board members resign from their respective positions:

      a)  Trustee Danny R. Bowlin;

      b)  Advisory Board Member Deborah A. Kitchens; and

      c)  Advisory Board Member Reagan B. Jensen.

c.  One-third (1/3) of the HHTE shall be set aside as a separate trust for the benefit of Al Jr. as the sole current Beneficiary (as the term "Beneficiary" is defined in the HHTE) of such separate trust.

    i.  The name of this separate trust shall be the "HLHTE - Albert G. Hill, Jr. Trust."

    ii.  The Court hereby APPROVES the appointment of the following successor trustee and advisory board members of the HLHTE - Albert G. Hill, Jr. Trust, who shall succeed to such positions in accordance with Article II,

APPX 0062

Section 3 of the Articles of Agreement and Declaration of Trust of the HHTE, as of the date the current trustee and advisory board members resign from their respective positions:

a) Trustee Chester J. ("Don") Donnally, Jr.;

b) Advisory Board Member Ivan Irwin, Jr.; and

c) Advisory Board Member Thomas P. Tatham.

10. The current trustees and other advisory board members of the MHTE and the HHTE are each ORDERED to:

a. distribute the entire trust estates of the MHTE and the HHTE to the trust estates of each of the New Hunt Trusts (as provided in this Final Judgment) within thirty (30) days after the date of the Court's entry of this Final Judgment; and

b. resign from their positions and cease serving as trustees and/or advisory board members immediately after they complete distributing the entire trust estates of the MHTE and the HHTE to the trust estates of each of the New Hunt Trusts; provided that the Trustees of the MHTE and HHTE shall hold back, and not divide and distribute, funds that are sufficient to meet the payment obligations of the MHTE and HHTE, as applicable, under the appraisal process (including the obligations to pay the appraisers and purchase the appraised assets, as applicable) described in the Agreement.

11. The trustee and other two advisory board members for each of the New Hunt Trusts (i.e., the New Hunt Trust Trustees and Advisory Board Members) are each ORDERED to comply with the appraisal process for the disposition of illiquid assets in the manner set forth in the Agreement as modified by this Final Judgment.

-23-

12. IT IS ORDERED that, upon entry of this Final Judgment, the trustee and other two advisory board members for each of the New Hunt Trusts shall initially be the same persons who are currently serving in those capacities for the MHTE (for the New Hunt Trusts relating to the MHTE) and the HHTE (for the New Hunt Trusts relating to the HHTE). Within fifteen (15) days after the Court's entry of this Final Judgment, the current trustees and advisory board members are ORDERED to appoint the persons set forth in Paragraphs 8 and 9 above as their successors for each of the New Hunt Trusts (i.e., the New Hunt Trust Trustees and Advisory Board Members), in accordance with the procedures in Article II, Section 3 of the Articles of Agreement and Declaration of Trust of the MHTE and the HHTE. IT IS FURTHER ORDERED that, upon the appointments of the New Hunt Trust Trustees and Advisory Board Members, the current trustees and advisory board members shall have no responsibility or liability for managing any of the New Hunt Trusts. IT IS FURTHER ORDERED that the current trustees and advisory board members of the MHTE and the HHTE shall have no responsibility or liability for the selection of such persons identified in Paragraphs 8 and 9 above who are appointed as the New Hunt Trustees and Advisory Board Members for each of the New Hunt Trusts.

13. IT IS ORDERED that the current trustees and advisory board members of the MHTE and the HHTE shall retain their positions with the MHTE and the HHTE solely to implement the distribution of the entire trust estates of the MHTE and the HHTE as provided in Paragraph 10 above.

14. IT IS ORDERED that the rights of each beneficiary of each of the New Hunt Trusts shall be governed by the terms and provisions of the respective Articles of Agreement

-24-

APPX 0064

and Declaration of Trust establishing the MHTE and the HHTE, except: (1) the name of the current Beneficiary shall be changed to reflect the separation of the trusts ordered herein, (2) the New Hunt Trusts shall be administered in accordance with any valid disclaimer applicable to the MHTE or such trusts, and (3) the terms of the MHTE - Albert G. Hill, Jr. Income Beneficiary / Al III Termination Beneficiary Trust, MHTE - Albert G. Hill III Trust, and the Margaret Hunt Hill – Albert G. Hill III Trust shall be modified to require a bank with greater than $10 billion in assets under management (adjusted for inflation) to serve as trustee at all times.

15. IT IS ORDERED that the current trustees and other advisory board members of the MHTE and the HHTE assert that they have fulfilled their duties faithfully and with loyalty to the trusts and the beneficiaries, and there has been no judicial determination to the contrary.  Nevertheless, to facilitate the division of the trusts and other provisions of the Agreement, all current trustees and other advisory board members of the MHTE and the HHTE have agreed to resign their respective positions with the MHTE, the HHTE, and the New Hunt Trusts as provided for herein.  The Court hereby APPROVES and ACCEPTS the resignations to be tendered by the current trustees and other advisory board members of the MHTE, the HHTE, and the New Hunt Trusts.  The Court also ORDERS that the current trustees and other advisory board members of the MHTE, the HHTE, and the New Hunt Trusts are released and discharged from any and all liability arising from any action or omission that occurs before and through their resignation dates from their respective positions with the MHTE, the HHTE, and the New Hunt Trusts, except to the extent that any such action or omission violates the Agreement or this Final Judgment.

APPX 0065

16.     IT IS ORDERED that no Agreeing Party, successor trustee, or successor advisory board member of the MHTE, the HHTE, or any of the New Hunt Trusts, shall be authorized, entitled, or required to investigate or maintain any claim or cause of action against any prior trustee or advisory board member for negotiating or implementing the terms of the Agreement or this Final Judgment, including the appointment of trustees or advisory board members for any of the New Hunt Trusts, or for any act or omission (in any capacity) that has been released by the Agreement or this Final Judgment, or for failure to furnish any trust accounting for either the MHTE, the HHTE, or the New Hunt Trusts for the time periods before and including the resignation dates of the current trustees and advisory board members.

**Payments**

17.     All income attributable to Al III's separate interest in the MHTE and available for distribution (including without limitation the amount tendered to, but not deposited with, the registry of Probate Court No. 2 Dallas, Dallas County, Texas but excluding the amount on deposit with the registry of such court) shall be disbursed to Al III within ten (10) days after entry of this Final Judgment by payment from the MHTE into the registry of this Court for the benefit and account of Al III (with the Court to release to Al III any amounts required to pay applicable taxes on this distribution), and the MHTE Trustee is hereby ORDERED to make such payment.  All income attributable to Heather's separate interest in the MHTE and available for distribution (including without limitation the amount tendered to, but not deposited with, the registry of Probate Court No. 2 Dallas, Dallas County, Texas but excluding the amount on deposit with the registry of such court) shall be disbursed to Heather

APPX 0066

within ten (10) days after entry of this Final Judgment by payment from the MHTE to such account as Heather shall identify in writing to counsel for the MHTE Trustee, and the MHTE Trustee is hereby ORDERED to make such payment.  All income attributable to Elisa's separate interest in the MHTE and available for distribution (including without limitation the amount tendered to, but not deposited with, the registry of Probate Court No. 2 Dallas, Dallas County, Texas but excluding the amount on deposit with the registry of such court) shall be disbursed to Elisa within ten (10) days after entry of this Final Judgment by payment from the MHTE to such account as Elisa shall identify in writing to counsel for the MHTE Trustee, and the MHTE Trustee is hereby ORDERED to make such payment.

18.     IT IS ORDERED that, concurrently with the entry of this Final Judgment, Al III shall establish an irrevocable discretionary asset protection trust (in a jurisdiction permitting such trusts) for the sole benefit of Al III during his life that distributes all trust assets to Al III's estate at his death (the "Al III Asset Protection Trust"), which shall be in the form set forth as an exhibit to this Final Judgment.[7]  IT IS FURTHER ORDERED that a bank with greater than $10 billion in assets under management (adjusted for inflation) shall serve as sole trustee of the Al III Asset Protection Trust at all times.  IT IS FURTHER ORDERED that Al III will assign Al III's Termination Interest in the MHTE to the Al III Asset Protection Trust.   IT IS FURTHER ORDERED that the phrase "Al III's Termination Interest," as used herein, means all rights Al III has or acquires in the future from any source or separate trust or due to any contingency to receive any assets held in the MHTE upon its termination if Al III is then living.  IT IS FURTHER ORDERED that the phrase "any assets held in the

---

[7]      Exhibit 4.

-27-

MHTE," as used herein, includes any assets held in any trust created in Paragraph 8 above from assets of the MHTE, including but not limited to the MHTE – Albert G. Hill III Trust and in the MHTE – Albert G. Hill Jr. Income Beneficiary / Al III Termination Beneficiary Trust.  IT IS FURTHER ORDERED that Al III may retain all rights to dispose of the Al III Asset Protection Trust's assets at his death, although his descendants may take from his estate through his will or intestate succession if Al III so chooses.

19.    IT IS ORDERED that no later than three (3) business days following the Court's entry of this Final Judgment, Al III shall establish separate irrevocable trusts for each of the Grandchildren (as that term is defined in the Agreement), pursuant to Section 4(b) of the Agreement (the "Grandchildren's Trusts"), which shall be in the form set forth as an exhibit to this Final Judgment.[8] IT IS FURTHER ORDERED that, within ten (10) business days of appointment, the trustee of each of the Grandchildren's Trusts (which shall be a bank with greater than $10 billion in assets under management (adjusted for inflation)) shall establish bank accounts for each of the Grandchildren's Trusts and provide wire transfer information to this Court for each such account to receive payments to be made to the Grandchildren's Trusts, pursuant to the Settlement.

20.    IT IS ORDERED that no later than three (3) business days following the Court's entry of this Final Judgment, Al III shall establish an irrevocable single trust for the benefit of the Grandchildren (as that term is defined in the Agreement), and also for the benefit of any children born to Al III after the date of this Final Judgment (the "Single Fund Grandchildren's Trust"), which shall be in the form set forth as an

---

[8]    Exhibit 5.

-28-

APPX 0068

exhibit to this Final Judgment.[9]  IT IS FURTHER ORDERED that, within ten (10) business days of appointment, the trustee of the Single Fund Grandchildren's Trust shall establish a bank account for the Single Fund Grandchildren's Trust and provide wire transfer information to this Court for each such account to receive payments to be made to the Single Fund Grandchildren's Trust.

21.    IT IS ORDERED that Al Jr. shall pay in settlement of disputed claims to Al III, with no admission of fault or liability by Al Jr., any and all such fault or liability being expressly denied by Al Jr., by payment made to the registry of this Court for Al III's benefit, the total sum of $30.675 million paid as follows (the "Al Jr. Settlement"): (a) one lump sum payment of $675,000 made no later than ninety (90) days following the Court's entry of this Final Judgment (the "Lump Sum Payment"), and (b) four (4) annual installments of $7.5 million each (one on each anniversary of the date the first installment is due) with the first installment due 24 months after the Court's entry of this Final Judgment, pursuant to Section 2(b) of the Agreement (the "Installment Payments").  IT IS FURTHER ORDERED that the trustee and advisory board members of the HHTE shall cause to be paid in settlement of disputed claims to Al III, by payment made to the registry of this Court for Al III's benefit, a total sum of $10.5 million from the HHTE within ten (10) days after the Court's entry of this Final Judgment.  Al III acknowledges, and it is ORDERED, that the amounts received by him from the Al Jr. Settlement and from the trustee of the HHTE are in settlement of his respective claims against Al Jr. and the trustee of the HHTE, but with no admission of fault or liability by Al Jr. or the trustee of the HHTE, any and all such fault or liability being expressly denied by Al Jr. and the trustee of the HHTE.

---

[9]    Exhibit 6.

APPX 0069

22.     IT IS ORDERED that no later than three (3) business days following Al III establishing the Grandchildren's Trusts (as stated in paragraph 20 above of this Final Judgment), Al III shall irrevocably assign his right to receive the Installment Payments of the Al Jr. Settlement to the Grandchildren's Trusts, pursuant to Section 4(b) of the Agreement, with each trust receiving a principal amount equal to one-third (1/3) of the gross proceeds received from any payment of the Installment Payments, less any applicable gift taxes in excess of $10.5 million ("Assignment 1").  IT IS FURTHER ORDERED that no later than three (3) business days following Al III establishing the Single Fund Grandchildren's Trust, Al III shall irrevocably assign his right to receive the Lump Sum Payment of the Al Jr. Settlement to the Single Fund Grandchildren's Trust, ("Assignment 2").  IT IS FURTHER ORDERED that Al III shall file a timely federal gift tax return reporting Assignment 1 and Assignment 2 as gifts by Al III to the Grandchildren's Trusts and to the Single Fund Grandchildren's Trust, respectively, and Al III shall pay any applicable gift tax due as a result of such gifts; provided that, (i) Al III shall submit to this Court a request for a distribution of the funds constituting the $10.5 million from the HHTE after March 1st of the year immediately following the year Assignment 1 and Assignment 2 (collectively, the "Assignments") are made, and (ii) if the Assignment Gift Tax (defined below) exceeds $10.5 million, Al III shall submit to this Court a copy of the completed federal gift tax return Al III intends to file with the IRS (which Al III shall not change before filing with the IRS) (the "Return") by March 1st of the year immediately following the year the Assignments are made, and Al III shall be entitled to receive a distribution from the registry of this Court from funds constituting the Al Jr.

APPX 0070

Settlement in an amount equal to the Assignment Gift Tax (defined below) less $10.5 million.  The "Assignment Gift Tax" means the amount of federal gift tax attributable to the Assignments as reflected on the Return.  IT IS FURTHER ORDERED that the trustee of each of the Grandchildren's Trusts shall provide quarterly trust statements to Al Jr. and Al III, or their designees, and shall provide quarterly trust statements of the Single Fund Grandchildren's Trust to Al Jr. or his designees.  IT IS FURTHER ORDERED that, within five (5) business days following Al Jr.'s payment of the Lump Sum Payment of the Al Jr. Settlement to the registry of this Court for Al III's benefit, the Court shall distribute the entirety of the Lump Sum Payment to the Single Fund Grandchildren's Trust by wire transfer to such account as provided in writing to this Court by the trustee of the Single Fund Grandchildren's Trust, and the Court shall provide notice of each such distribution paid by the Court to counsel for Al Jr. and Al III by ecf notification of the execution of the order.  IT IS FURTHER ORDERED that, within five (5) business days following Al Jr.'s payment of each of the Installment Payments of the Al Jr. Settlement to the registry of this Court for Al III's benefit, the Court shall distribute the entirety of each such installment to the Grandchildren's Trusts with each of the Grandchildren's Trusts receiving a principal amount equal to one-third (1/3) of the gross proceeds received from each installment payment, less any applicable taxes, by wire transfer to such account(s) as provided in writing to this Court by the trustee of each of the Grandchildren's Trusts, and the Court shall provide notice of each such distribution paid by the Court to counsel for Al Jr. and Al III by ecf notification of the execution of the order.  Each trustee of each of the Grandchildren's Trusts and of the Single Fund Grandchildren's Trust is

APPX 0071

ORDERED to assist the Court with the foregoing distributions to the Grandchildren's Trusts and to the Single Fund Grandchildren's Trust to the extent necessary by, among other things, providing proposed orders, judgments and notice to all interested parties of their intended actions. New trustees must prepare drafts of any proposed orders or judgments to be filed by the Court and obtain approval of interested parties, including Al Jr. and Al III. Any notice required will be satisfied by the filing of an order on the docket through the Case Management/Electronic Case Filing system ("ECF"). Accordingly, new trustees must register for ECF so that they may receive notice upon entry of an order.

23.    IT IS ORDERED that Al Jr. shall lend (or cause to be lent) the amount of $6,500,000 to the Single Fund Grandchildren's Trust no later than ninety (90) days following Al III establishing the Single Fund Grandchildren's Trust with the following terms:

a. The principal amount of $3,250,000 shall be repaid three (3) years after the loan is made (the "First Due Date"), and the principal amount of $3,250,000 shall be repaid nine (9) years after the loan is made. Al Jr. intends for the trustee of the Single Fund Grandchildren's Trust to have the option to renew the loan to provide for the repayment of the principal amount at the prevailing applicable federal interest rate for a maximum period of twenty (20) years.

b. All interest shall be accrued for the first three (3) years. Interest accrued on the principal amount of $3,250,000 due on the First Due Date shall be due and paid on the First Due Date. Interest on the remaining principal due after the First Due Date shall be accrued for two (2) additional years after the First Due Date. All interest accrued and unpaid two (2) years after the First Due Date shall be due and

-32-

paid on that date and all interest thereafter shall be payable annually on all unpaid principal.

    c.  All interest shall accrue on all amounts due at the federal rate applicable for loans in the month the loans are required to be made for the term applicable for each principal amount described above, pursuant to Section 1274(d)(1)(A) of the INTERNAL REVENUE CODE.

24.    IT IS ORDERED that Al Jr. shall execute and deliver to the trustee of the Grandchildren's Trust not later than three (3) business days following the Court's entry of this Final Judgment, a pledge agreement in the form set forth as an exhibit to this Final Judgment,[10] pursuant to which Al Jr. shall pledge distributions to the trustee of the Grandchildren's Trust from the HHTE as security for Al Jr.'s obligation to pay the Al Jr. Settlement.  Such pledge agreement does not relieve Al Jr. of his obligation to pay the Al Jr. Settlement, but rather is security for Al Jr.'s obligation to pay the Al Jr. Settlement.

25.    IT IS ORDERED that Al, Jr. shall return to the Aldous Law Firm the payment of the sum of $300,000 paid to Al Jr. in *Albert G. Hill, III v. Albert G. Hill, Jr.*, No. 08-02578-C, 68th Civil District Court, Dallas County, Texas (the "Hill 3 Investments Case") within five (5) days of the Court's entry of this Final Judgment.

26.    IT IS ORDERED that Al, Jr. shall pay $98,627.87 to Winstead, PC as his proportionate share of the attorneys' fees and expenses incurred by counsel for Daniel L. Jackson, Receiver for Hill 3 Investments, LLC, in the Hill 3 Investments Case, pursuant to the Order dated May 12, 2008 Order Appointing Receiver (the "Receiver Order").  After all attorneys' fees and expenses incurred by counsel for Daniel L.

---

[10]    Exhibit 7.

APPX 0073

Jackson, Receiver for Hill 3 Investments, LLC, have been paid in full in the Hill 3 Investments Case, Al Jr. agrees to the filing of an Agreed Motion to Dismiss With Prejudice and an Agreed Order of Dismissal With Prejudice in the Hill 3 Investments Case.

27.  IT IS ORDERED that Al III shall repay the following debts (within ten (10) days of the Court's entry of this Final Judgment) from payments Al III receives pursuant to the Settlement (all of which shall be made into the registry of this Court) by the Court making the following distributions to the following recipients and about which there shall be no objection by Al III, Erin, or the Grandchildren:

a.  $6,740,103 through May 3, 2010, together with interest thereon at the rate of $570 per day commencing on May 4, 2010, to Daniel Jackson, Receiver for Hill 3 Investments, LLC in the Hill 3 Investments Case;

b.  $820,735.15 through March 2, 2010, together with interest thereon at the rate of $396.72 per day, to Abbott Financial, LLC;

c.  $5,000 divided equally to the Hill Family Trusts for the Grandchildren as follows: (i) $1,666.66 to the Hill Family Trust: Albert Galatyn Hill, III Irrevocable Trust; (ii) $1,666.66 to the Hill Family Trust: Nance Haroldson Hill Irrevocable Trust; and (iii) $1,666.66 to the Hill Family Trust: Caroline Margaret Hill Irrevocable Trust.  It is expressly acknowledged that by Al III making these payments, Al III is not admitting or conceding any fault, wrongdoing, or liability of any kind;

d.  $5,000 divided equally to the Bordeaux Trusts for the Grandchildren as follows: (i) $1,666.66 to the Bordeaux Irrevocable Trust – Al G. Hill, IV Irrevocable Trust; (ii) $1,666.66 to the Bordeaux Irrevocable Trust – Nance Haroldson Hill

-34-

Irrevocable Trust; and (iii) $1,666.66 to the Bordeaux Irrevocable Trust – Caroline Margaret Hill Irrevocable Trust. It is expressly acknowledged that by Al III making these payments, Al III is not admitting or conceding any fault, wrongdoing, or liability of any kind; and

e. $125,156.12 to Winstead, PC as his proportionate share of the attorneys' fees and expenses incurred by counsel for Daniel L. Jackson, Receiver for Hill 3 Investments, LLC, pursuant to the Receiver Order in the Hill 3 Investments Case. Once all attorneys' fees and expenses incurred by counsel for Daniel L. Jackson, Receiver for Hill 3 Investments, LLC, have been paid in full in the Hill 3 Investments Case, Al III agrees to the filing of an Motion to Dismiss With Prejudice and an Agreed Order of Dismissal With Prejudice in the Hill 3 Investments Case.

IT IS FURTHER ORDERED that it is the responsibility of each party receiving payment to present an order to the Court stating that the above listed debts shall be paid out of the registry of the Court. Such order must be approved by all interested parties prior to filing.

**Waiver of Standing**

28.    IT IS ORDERED that, pursuant to the Agreement, the Court finds that during such time as an Agreeing Party is not a current beneficiary of a trust for the primary benefit of a descendant of Margaret Hunt Hill ("MHH") (an "MHH Trust") and any other descendant of MHH is living, such Agreeing Party has waived: (1) his or her status as an interested person in such trust, and (2) all rights that he or she may have as a future or contingent beneficiary of such trust under the instrument establishing

-35-

such MHH Trust, under applicable common law, or under applicable state law, including but not limited to the right to demand information, seek an accounting, or assert any claim or cause of action in connection with any such trust.  IT IS FURTHER ORDERED that Al III and Erin shall at no time have standing with respect to the Single Fund Grandchildren's Trust, including as guardians of minor beneficiaries of the Single Fund Grandchildren's Trust and any trusts created thereunder.  IT IS FURTHER ORDERED that, pursuant to the Agreement, the waivers by each Agreeing Party in this paragraph shall not apply to an MHH Trust during any period in which such Agreeing Party is a current beneficiary of that MHH Trust, although the waivers in this paragraph shall continue to apply to any actions taken or omitted by any other person or entity during the period that such Agreeing Party was not a current beneficiary.  For purposes of this paragraph, "current beneficiary" means a person who, at the time a current beneficiary is determined, is then entitled to receive, or is then, in an exercise of discretion by the trustee of such trust, a possible recipient of, income or principal of such trust.

29.    IT IS ORDERED that Al III (in all capacities), Erin (in all capacities), the Grandchildren, and all of their descendants and heirs shall not contest the Last Will and Testament of Al Jr., or file any additional action, lawsuit, or legal proceeding challenging the disposition of Al Jr.'s property.

30.    The Court finds and declares, and IT IS ORDERED, that there is no disclaimer by Al Jr. as to any interest in the HHTE.

APPX 0076

31.     The Court finds and declares, and IT IS ORDERED, that there is no other disclaimer by Al Jr. as to any interest in the MHTE other than the Disclaimer referenced in Paragraph 5 above and attached as Exhibit "C" to the Agreement[11].

32.     Al III, Erin, both individually, and Al III derivatively, and Al III and Erin as next of friends, and on behalf of their children, agree that there is no disclaimer by Lyda to the MHTE or HHTE, and agree that they shall not, and they are hereby ORDERED not to, assert any claims, cause of action, count, or counter-claim to the contrary.

33.     The Parties (including Al III (in all capacities), Erin (in all capacities), the Grandchildren, and all of their descendants and heirs) agree, and IT IS ORDERED, that Al Jr., Al III, Heather, and Elisa shall take all steps necessary to seal the file and all records in Cause No. DF-79-02590, *In the matter of the divorce between Albert Galatyn Hill, Jr. and Victoria Howland f/k/a Victoria Vincent Hill*, 256th Family District Court, Dallas County, Texas (the "Family Court"), including executing and causing their counsel to file in all relevant courts a Stipulation and Joint Motion requesting that this matter be sealed.[12]

**Withdrawal of Certain Motions and Vacation of Certain Orders**

34.     IT IS ORDERED that the following documents and filings are withdrawn from the Court's docket: ECF Nos. 439, 440, 461, 479, 480, 485, 545, 567, 568, 574, 575, 580, 600, 603, 605, 636, 637, 705, 718, and 719.  IT IS FURTHER ORDERED that the following Orders are vacated: ECF Nos. 441, 442, 459, 474, 477, 506, 523, 531, 541, 576, 613, 641, 703, 709, 721, 722, 727, and 734.  All documents submitted same for in camera review shall be returned to the party submitting them.  Each party shall

---

[11]     Exhibit 3
[12]     Exhibits 8 and 9

-37-

make arrangements with the Court to retrieve its documents. IT IS FUTHER ORDERED that Defendants' Motion to Alter, Amend, and Vacate Rule 54(b) Final Judgment and Brief in Support Thereof (ECF No. 866) is hereby granted.

**General, Mutual Releases**

35.  IT IS ORDERED that the Agreeing Parties, on behalf of themselves and those who claim by, through, or under them (including their present attorneys, agents, representatives, spouses, and heirs), individually and in every other capacity, RELEASE, ACQUIT, and FOREVER DISCHARGE each other Agreeing Party (including each trust for their benefit, and each trustee of each trust for their benefit) and each Additional Party, and each Party's agents, assigns, representatives, employees, present and former attorneys (except Plaintiffs do <u>not</u> release Bill Brewer, Bickel & Brewer, and Campbell Harrison & Dagley, L.L.P., and except Defendants do <u>not</u> release Bill Brewer, Bickel & Brewer, Frances Johnson Wright, the Law Offices of Frances Johnson Wright, PC, C. Gregory Shamoun, and Shamoun & Norman, LLP, and any of their respective agents, assigns, representatives, employees, partners, and present and former attorneys), parents, affiliates, subsidiaries, consultants, spouses, heirs, and executors or administrators of and from any and all past, present, or future claims, actions, causes of action, counts, counter-claims, cross-claims, and appeals whatsoever at common law, statutory, or otherwise that were, or could have been, asserted in the Litigation (the "Claims") which any Agreeing Party has or may have, known or unknown, now existing or that might arise hereafter, directly, indirectly, or derivatively arising out of the affairs and administration of any trust or business enterprise, the facts or allegations referred to

APPX 0078

or which could have been referred to in the Litigation (listed on Exhibit B to the Agreement), and any other transactions or dealings between the Parties, it being the Agreeing Parties' intention to release all Claims of any kind which each of the Agreeing Parties has or may have, in any capacity, against those hereby released, and particularly, but not limited to, any and all Claims as described more fully in the Agreement, except as stated in this paragraph.

## Dismissal of Litigation

36.    IT IS ORDERED that all claims, causes of action, counter-claims, cross-claims, and any other relief asserted or that could have been asserted by or against any party to this action are dismissed with prejudice.

37.    IT IS ORDERED that the Agreeing Parties shall take all steps necessary to dismiss with prejudice all other Litigation (listed on Exhibit "B" to the Agreement[13]), including but not limited to, the entry of Final Judgments in the Margaret Probate Suit and the Haroldson Probate Suit (as those terms are defined in the Agreement); provided, however, that a final judgment was entered on August 3, 2009 in *Albert G. Hill III v. Lyda Hill*, No. 08-2187, 160th Judicial District Court, Dallas County, Texas, and therefore, that case cannot be dismissed and is not ordered to be dismissed in this Final Judgment.

## Attorneys' Fees and Costs

38.    IT IS ORDERED that Al III (in all capacities), Erin (in all capacities), and the Grandchildren are responsible for their own attorneys' fees and costs incurred in all the Litigation (listed on Exhibit "B" to the Agreement[14]), and such attorneys' fees and

---

[13]    Exhibit 1
[14]    Exhibit 1

-39-

costs shall not be the responsibility or liability of any of the other Agreeing Parties; provided, however, all attorneys' fees and costs incurred by the Court-appointed guardian ad litem only (i.e., $260,507.33 to the guardian ad litem and $84,947.50 to Chapman Hext & Co., P.C.) shall be borne in equal amounts by the MHTE and HHTE. Any attorneys' fees to be borne by Al III for representation in the lawsuits referenced in Exhibit A to the Agreement are to be paid from Al III's partitioned interest of the MHTE, or Al III himself.

39.    IT IS FURTHER ORDERED that any attorneys' fees and costs incurred by Al III, Erin, and/or the Grandchildren in connection with the litigation settled through the Settlement Agreement may, at the election of Al III, be paid from Al III's separate interest in the MHTE or, if such payment is to be made after the division of the MHTE as directed by this Final Judgment, from the New Hunt Trust of which Al III is the beneficiary, and the Trustee of such trust is hereby authorized, directed and ORDERED to make such payments upon either (a) Al III's request and written certification, made under oath before a notary public, that the attorneys' fees and costs requested to be paid were incurred by Al III, Erin, and/or the Grandchildren in connection with the litigation settled through the Agreement, or (b) further order of this Court.

40.    IT IS ORDERED that all claims by Campbell Harrison & Dagley, LLP, Calloway, Norris, Burdette & Weber, PLLC, Stephen F. Malouf, the Law Offices of Stephen F. Malouf, Lisa Blue, Baron & Blue, R. Dean Gresham, Gresham P.C., Charla G. Aldous, Aldous Law Firm, Charla Aldous, P.C., claims by any of Al III and Erin's other legal counsel (current or former) to any attorneys' fees or reimbursement of any

-40-

costs allegedly owed by Al III, Erin, or the Grandchildren, and claims asserted in this Court by any other creditors of Al III or Erin, are hereby severed into a separate action over which this Court shall preside; provided, however, such severance shall in no way prevent, delay, or interfere with the Court's completion of the Settlement, or the Court's entry of this Final Judgment.  The Clerk of the Court is instructed to open a matter under a separate cause number which will resolve the attorneys' fees dispute.

41.    IT IS ORDERED that the Clerk of this Court is DIRECTED to accept into the registry of this Court for the above-referenced severed action all sums required to be deposited into the Court's registry for the benefit of Al III and the interpleaded funds in connection with the Margaret Probate Suit transferred from the registry of Probate Court No. 2 of Dallas County, Texas and from the trustee of the MHTE relating to Al III's interest in the MHTE. IT IS FURTHER ORDERED that until further Order of this Court, any future distributions to be made to Al III relating to his interest in the MHTE or the MHTE-Albert G. Hill III Trust shall be paid to the registry of this Court for the above-referenced severed action. All funds paid to the registry of this Court under this Agreed Final Judgment shall be deemed to have been interpleaded into the registry of this Court for the benefit of Al III and subject to the claims in the above-referenced severed action and shall be disbursed only upon further Order of this Court after resolution of the claims at issue in the above-referenced severed action.

**Confidentiality**

42.    The Agreeing Parties agree, and IT IS ORDERED, that the terms of the Agreement are confidential and shall remain confidential pursuant to the Settlement Conferences with Magistrate Judge Paul Stickney, except to: (1) those released in the release

-41-

provisions of the Agreement and this Final Judgment, (2) successor trustees and advisory board members, (3) those otherwise necessary to effectuate the terms and conditions of this Final Judgment and the Agreement, and (4) the financial, legal, accounting, or business representatives of an Agreeing Party.  Accordingly, this Final Judgment shall be SEALED.

**Miscellaneous**

43.    IT IS ORDERED that, for the trusts listed below (the "Al III Trusts"), Al III and the "Purchaser" listed below (who is the former trustee of the listed trusts, acting in and bound in their individual capacities) shall have the illiquid assets of the Al III Trusts appraised pursuant to the appraisal process described in the Agreement (with each of the Purchaser and trust for Al III bearing the costs of their own appraiser and half the cost of the third appraiser) or such other appraisal process that is mutually agreeable to Al III and the Purchaser.  This appraisal process shall be completed not later than 180 days after entry of this Final Judgment.  Within thirty (30) days after completion of the appraisal process, each Purchaser listed below shall purchase the illiquid assets of the corresponding trust at the price determined by the appraisal process or such other price that is mutually agreeable to Al III and the Purchaser.

| TRUST | PURCHASER |
|---|---|
| Hill Grandchildren's Trust-Albert G. Hill, III | Al Jr. |
| Albert Galatyn Hill, III 1999 GC Trust | Al Jr. |
| Hill 1980 Trust - Albert G. Hill, III | Al Jr. |
| Hill 1977 Trust - Albert G. Hill, III | Lyda Hill |

44.    IT IS ORDERED that this Final Judgment, the Agreement, and the Settlement are not an admission or concession by any Agreeing Party of fault, wrongdoing, or liability

-42-

APPX 0082

of any kind, the truth or validity of any claims, causes of action, counter-claims, cross-claims, or other allegations of any liability, wrongdoing, or violation of law in this action or the other Litigation, all of which have been denied; this Final Judgment, the Agreement, and the Settlement are not a concession of wrongdoing or liability, and shall not be used in any way as an admission or concession with respect to any claim of wrongdoing, fault, or omission by any Agreeing Party or any other person in connection with any transaction or occurrence in any statement, release, or written document issued, filed, or made; and neither this Final Judgment, the Agreement, nor the Settlement, nor any related document, proceeding, or action, nor reports or accounts thereof, shall be offered or received in evidence in any civil, criminal, or administrative action or proceeding other than such proceedings as may be necessary to consummate or enforce this Final Judgment, the Agreement, or the Settlement.

45.     IT IS ORDERED that, without affecting the finality of this Final Judgment, the Court hereby retains continuing jurisdiction over the implementation of the Agreement, the Final Judgment, and the Parties for purposes of implementing and enforcing the Agreement and this Final Judgment.   IT IS FURTHER ORDERED that any controversy or claim arising after the date of execution of the Agreement and arising out of the Agreement or the Documentation shall be resolved by this Court.  Each of the Agreeing Parties agrees and covenants not to, and IT IS ORDERED that none of the Agreeing Parties shall, file or assert any of the released Claims (in law or in equity).

46.     The Court finds that, pursuant to Rules 54 and 58 of the FEDERAL RULES OF CIVIL PROCEDURE, this Final Judgment constitutes the final adjudication on the merits of

-43-

this action and should be entered without delay.  Accordingly, the Clerk is directed to

enter this Agreed Final Judgment forthwith.


**SO ORDERED** on this 8th day of **November, 2010**.


_____

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

APPX 0084

THE STATE OF TEXAS §

COUNTY OF DALLAS §     KNOW ALL MEN BY THESE PRESENTS:

THAT I, LYDA BUNKER HUNT, wife of H. L. Hunt, being a resident citizen of and having my domicile in the City of Dallas, Dallas County, Texas, being of sound and disposing mind and memory, and capable of making a valid deed and contract, do hereby make and publish this, my Last Will and Testament, hereby revoking all other Wills and Codicils by me at any time heretofore made.

### I.

It is my will and desire that all of my just debts, if any, including my last illness and funeral expenses, be paid out of my estate by my Executor to be hereinafter named, in accordance with the terms of the document or instrument evidencing such indebtedness or as soon after my decease as practicable, but in executing this provision of my Will, as well as all other provisions of this Will, my Executor shall bear in mind the preservation of my estate and the Trusts hereinafter created and the prevention of waste and extravagance.

### II.

I hereby will, devise and bequeath:

(a) Unto my son, LAMAR HUNT, my interest in my home and homestead known as "Mt. Vernon" and located at 4009 Lawther Drive, Dallas, Dallas County, Texas, and being more particularly described as follows, to wit:

> All of Tract Two (2), containing approximately four (4) acres; and all of Tract Three (3), containing approximately four (4) acres, and the Northeast Half of Tract One (1), containing approximately two (2) acres; all of said tracts being a part of Shore Acres Addition to the City of Dallas, Dallas County, Texas, according to the Map of said Addition of record in the Map Records of Dallas County, Texas;

together with all of the household goods, family automobile or automobiles and equipment belonging thereto or used in connection therewith, and all

For Identification:

_Lyda Bunker Hunt_
Lyda Bunker Hunt


TRUE AND CORRECT
COPY OF ORIGINAL
FILED IN DALLAS
COUNTY CLERK'S OFFICE

furniture, furnishings, fixtures, utensils, paraphernalia, and all other articles of use or ornament in and about said home and homestead. In the event my son, LAMAR HUNT, predeceases me or dies in a common disaster with me, leaving no lineal descendants, then all of such property shall become a part of the rest, residue and remainder of my estate and vest as hereinafter provided.

(b) Unto my daughters, MARGARET HUNT HILL and CAROLINE HUNT SANDS, or to the survivor of them, in equal shares, all of my books, clothing and jewelry.

### III.

I will and bequeath unto my sister, MATTIE VIRGINIA SESSIONS, of Lake Village, Arkansas, all of the land owned by me in Chicot County, State of Arkansas, together with all improvements of whatsoever kind or character located thereon.

In the event my sister, MATTIE VIRGINIA SESSIONS, predeceases me or dies in a common disaster with me, leaving no lineal descendants, then all of such property shall become a part of the rest, residue and remainder of my estate and vest as hereinafter provided.

### IV.

It is my will and I direct that my Executor pay all Federal estate taxes or any estate, succession, legacy or inheritance taxes, present or future, of any State which may be required to be paid by reason of my death or by reason of the passage to or receipt of any property by any Beneficiary under my Will out of my estate. My Executor shall have authority and discretion to question the levy of any tax by any person or official authorized by law to levy the same, to pay any such tax without questioning the propriety of such levy, or to litigate, compromise or settle such tax. The determination of my Executor in this connection for his action in questioning, litigating, compromising, settling or paying such tax shall be binding upon all my heirs and the Beneficiaries under this Will. If necessary, in order to raise money to pay taxes,

For Identification:

*Lyda Bunker Hunt*

Lyda Bunker Hunt

-2-



TRUE AND CORRECT COPY OF ORIGINAL FILED IN DALLAS COUNTY CLERK'S OFFICE

APPX 0086

my Executor shall have the right to sell, convey, assign, lease, let, hypothecate or mortgage any or all of the residue of my property to said Executor in his individual capacity, or jointly or severally to any or all of the Beneficiaries named in the Trusts hereinafter established, or to third parties, including the Trusts heretofore established in 1935 by my husband, H. L. Hunt, and me, and the judgment and decision of my Executor in this matter shall be final and conclusive.

V.

I will, devise and bequeath absolutely to THE H. L. HUNT FOUNDATION, a non-profit Texas corporation, all of my right, title and interest in and to all stocks and all bonds of any kind or character in which I may own an interest at the time of my death.

VI.

In disposing of the residue of my estate, as I do in the next succeeding paragraph hereof, I have expressly omitted my son, HAROLDSON LAFAYETTE HUNT, JR., as a Beneficiary, for the reason that my said son has a large estate in his own right, which is ample to provide for him and any family which he may subsequently have.

VII.

It is my will that all the rest, residue and remainder of my estate shall pass to and vest in the manner hereinafter set forth, to wit:

A.  I will that all of the rest, residue and remainder of my estate shall, as soon as conveniently possible after my death, be divided, by my Executor with the advice and approval of the other two Trustees hereinafter appointed, into five (5) parts or shares which shall be as nearly equal in value as practical; and where the word "share" is used herein it shall be construed to mean one-fifth (1/5th) of all of the rest, residue and remainder of my estate.

B.  In allocating such shares to the particular Trusts hereinafter created, my Executor and Trustees shall give due consideration to the kind and character of property included in each respective share and to the Beneficiaries of the share to receive same, to the end that the shares be

For Identification:


Lyda Bunker Hunt

-3-


TRUE AND CORRECT COPY OF ORIGINAL FILED IN DALLAS COUNTY CLERK'S OFFICE

APPX 0087

allocated so as to give the greatest benefit to the Trusts and the Beneficiaries thereunder, but such allocations as are made by my Executor and Trustees shall be final and conclusive.

C.  I hereby name, constitute and appoint my daughters, MARGARET HUNT HILL and CAROLINE HUNT SANDS, and my son, WILLIAM HERBERT HUNT, as Trustees to receive the devises and bequests hereinafter made, in Trust, for the use and benefit of the named Beneficiaries; and I hereby will, devise and bequeath to said Trustees, and their successors, the above mentioned five (5) shares of my estate, each to be held in Trust as follows:

From the five (5) shares, it is my intention to establish as hereinafter set out separate and distinct Trusts, a separate Trust for the use and benefit of each child of mine, namely, MARGARET HUNT HILL, CAROLINE HUNT SANDS, NELSON BUNKER HUNT, WILLIAM HERBERT HUNT and LAMAR HUNT, who does not have a child or children living at the time of my death, and a separate Trust for the use and benefit of each child of my said five (5) sons and daughters heretofore named living at the time of my death, and a separate Trust for each such child of my said five (5) sons and daughters born after my death, so that the number of Trusts hereby established out of said five (5) shares shall be equal to the total number of said five (5) children of mine who are without child or children at the time of my death and such children of my said five (5) sons and daughters living at my death and such children subsequently born to my said five (5) sons and daughters, respectively, after my death.

There shall be established from each share one or more Trusts.  Trusts which may be established hereunder:

(1)  For MARGARET HUNT HILL or for any child or children of MARGARET HUNT HILL shall be established only from Share No. 1;

(2)  For CAROLINE HUNT SANDS or for any child or children of CAROLINE HUNT SANDS shall be established only from Share No. 2;

(3)  For NELSON BUNKER HUNT or for any child or children of NELSON BUNKER HUNT shall be established only from Share No. 3;

(4)  For WILLIAM HERBERT HUNT or for any child or children of

For Identification:

Lyda Bunker Hunt

-4-

TRUE AND CORRECT COPY OF ORIGINAL FILED IN DALLAS COUNTY CLERK'S OFFICE

APPX 0088



WILLIAM HERBERT HUNT shall be established only from Share No. 4;

(5) For LAMAR HUNT or for any child or children of LAMAR HUNT shall be established only from Share No. 5.

The corpus of each such Trust shall be an equal interest as hereinafter provided in the share from which the respective Trusts are established, and each such Trust shall own and be entitled to an equal interest as hereinafter provided in and to all of the income derived from the properties allocated to such share.

Collectively, the several Trusts established out of each share shall be known as follows:

(1) Share No. 1 shall be known as the LYDA HUNT-MARGARET TRUSTS.

(2) Share No. 2 shall be known as the LYDA HUNT-CAROLINE TRUSTS.

(3) Share No. 3 shall be known as the LYDA HUNT-BUNKER TRUSTS.

(4) Share No. 4 shall be known as the LYDA HUNT-HERBERT TRUSTS.

(5) Share No. 5 shall be known as the LYDA HUNT-LAMAR TRUSTS.

All business transactions whatsoever for a particular Trust shall be conducted in the above name for the share out of which the particular Trust is established, and the legal title to all property acquired by said Trust estates, as well as the profits therefrom, increase and accretions thereto and income therefrom shall be vested in said Trustees.

At the time of my death, the number of Trusts capable of then being established out of each respective share shall be determined as aforesaid, and the then corpus of each such Trust (if more than one) shall be an equal undivided interest in the share of my estate from which said Trust or Trusts are established (if only one Trust, the then corpus shall be all of said share). Thereafter, as new Trusts are established hereunder from a particular share, the corpus of each such new Trust shall be carved out of the corpus and net increment to corpus then remaining in each existing Trust or Trusts established from such share, and each existing Trust or Trusts shall contribute equally from its corpus and net increment to corpus to each new Trust so that (when more than one Trust exists) the corpus of each of the Trusts established from a particular share during their existence shall never

For Identification:

*Lyda Bunker Hunt*
Lyda Bunker Hunt

-5-


TRUE AND CORRECT
COPY OF ORIGINAL
FILED IN DALLAS
COUNTY CLERK'S OFFICE

APPX 0089

478

be greater than an equal undivided interest in the aggregate of the corpora making up, from time to time, the share from which the particular Trust or Trusts are established.

Regardless of the establishment of future Trusts, income accruing, from time to time, to each particular Trust shall always remain income to such Trust.

D. It is contemplated that the Trusts above established and created will each constitute an active operating business entity, and to that end I will and direct that the Trustees hereinabove appointed, and their successors, shall have full and complete management and control of all of the assets and the business of each of said Trusts, and shall have plenary power and authority to do any and all things to carry on the affairs of said Trusts as going concerns. By way of indicating the nature of their intended powers, but without limiting their general authority by such enumeration of specific powers, they shall have absolute power and authority to bargain, exchange, sell, assign, convey, lease, let, mortgage or hypothecate any or all of the real estate or minerals of whatsoever nature belonging to said Trust estates; to conduct and carry forward the oil business, lumber, farming or ranch business, or any other business in keeping with the assets or properties of said Trust estates, and to that end to establish and maintain offices, to appoint agents, attorneys, accountants and employees, to pay compensation for services rendered, to invest and reinvest, from time to time, in new properties, whether by acquisition by fee title, in whole or in part, or by leasehold estates, and to develop and operate the same; to negotiate, execute and deliver mineral leases, unitization or pooling agreements, transfer and/or division orders, and royalty or mineral deeds; to vote stock either directly or by proxy; and to sell, assign, transfer and mortgage any and all real or personal property belonging to said Trusts; sales or purchase transactions of any nature by or for said Trusts may be for cash or credit, or partly for credit; said Trustees in behalf of said Trusts shall have the right to trade in any manner whatsoever, or engage in business enterprises, joint ventures, partnership ventures, either with said Trustees in their individual capacity, or jointly or severally with the Beneficiaries of these Trusts, or with third

For Identification:

_Lyda Bunker Hunt_
Lyda Bunker Hunt

-6-


TRUE AND CORRECT
COPY OF ORIGINAL
FILED IN DALLAS
COUNTY CLERK'S OFFICE

APPX 0090



parties, and my Trustees' judgment and decision herein shall be in all things final and conclusive; to designate a bank or banks for all cash or funds of said Trusts, to appoint in writing an agent or agents whose duty it shall be to deposit in the bank or banks so designated the moneys or funds belonging to said Trusts, and said written appointment shall expressly authorize said agent or agents to draw or sign checks in the name of said Trusts against funds on deposit, for purchases made on behalf of said Trusts, or in payment of operating expenses, or any other expenses of whatsoever nature incurred in the management and operation of said Trusts; and the naming of particular powers herein shall not be held to exclude power to do any other things which may be deemed to the interest or advantage of said Trusts. In addition, my Trustees shall have all of the rights, powers and privileges provided by the Texas Trust Act, and in the matter of investment of moneys or other property belonging to said Trusts, my Trustees shall have the right to invest and reinvest in any property of any nature and wheresoever situate, whether or not such property shall be authorized by the laws of the State of Texas or any other jurisdiction for the investment of Trust funds. It is my will that my Trustees herein shall have the right and power to do each and every act and thing necessary or proper, to the same extent as natural persons might or could do, to carry out fully the purposes of this, my Last Will and Testament. Any purchaser from said Trustees shall be under no obligation to inquire into the necessity, expediency or legality of any sale of the properties of the Trusts, or to see to the application of moneys paid as purchase moneys, or be charged with any duty with respect thereto. There shall be no duty on any depository bank to determine whether checks against the funds of the Trusts are drawn for an authorized purpose. All properties acquired for or on account of each of said Trusts shall be conveyed to said respective Trusts in the name of the share as set out in Paragraph VII C hereof, from which share such Trust or Trusts are established, and all business transactions of said Trusts shall be conducted in their respective names, and the legal title to all property so acquired by each of said Trusts shall be vested in the Trustees.

E. Retention and investment of the income, funds and properties of

For Identification:

*Lyda Bunker Hunt*
Lyda Bunker Hunt

-7-



TRUE AND CORRECT
COPY OF ORIGINAL
FILED IN DALLAS
COUNTY CLERK'S OFFICE

APPX 0091

180

the Trusts shall be at the sole discretion and judgment of said Trustees, and it is my will that my Trustees shall not be liable to any of said Beneficiaries, or to any person whomsoever claiming by, through or under my Will, because of any losses or damages which may be sustained from the retention of any property or on account of any investment made by them in handling said Trusts.

F.   The Beneficiaries may receive from time to time during the life of said Trusts, such portions of the net profits accruing from time to time to said Trusts, and such portion of the net increment in corpus accruing from time to time to said Trusts, as the Trustees may see fit to pay over and deliver to said Beneficiaries.  Net profits and net increment in corpus shall be determined by annual audits made, either for a calendar or fiscal year, by a Certified Public Accountant in accordance with generally accepted accounting principles.  Such distributions may be made at any time during the year, either before or after the final determination of net profits or net increment in corpus.  No duty is imposed upon the Trustees to make such distributions of net profits or net increment in corpus, but the power is conferred upon them so to do, and in exercising this discretion said Trustees shall give full consideration to the interests of the Beneficiaries and the respective Trusts to the end that the Beneficiaries have sufficient funds from this source if needed in order to maintain the standard of living to which each is accustomed.

Subject to the above, the amount of any such payment of net profits or net increment in corpus to the Beneficiaries by the Trustees shall be conclusive upon such Beneficiaries and upon anyone claiming by, through or under them; and no ownership or right of possession, control or transfer of any such net profits or net increment in corpus shall vest in any Beneficiary until such net profits or net increment in corpus shall have been actually paid over to said Beneficiary by said Trustees.  All sums payable to any Beneficiary under the Trusts herein established shall be free and clear of the debts, contracts, alienations and anticipations of the Beneficiaries, and free and clear of all liability for levies and attachments

For Identification:

*Lyda Bunker Hunt*

Lyda Bunker Hunt

-8-



TRUE AND CORRECT
COPY OF ORIGINAL
FILED IN DALLAS
COUNTY CLERK'S OFFICE

181

and proceedings of whatsoever kind at law or in equity.

G. The term of each Trust established and to be established hereunder shall be for the period of the life of the last to die of my said five (5) children, MARGARET HUNT HILL, CAROLINE HUNT SANDS, NELSON BUNKER HUNT, WILLIAM HERBERT HUNT and LAMAR HUNT, and their children who are living at the date of my death, plus an additional period of twenty-one (21) years.

H. The primary life Beneficiary of each Trust established or to be established hereunder from each respective share shall be one or more of the said five (5) children of mine who, at the time of my death, have no child or children then living, or shall be a child or children of my said five (5) sons and daughters who are living at the time of my death, and shall be a child or children of my said five (5) sons and daughters born after my death.

I. Upon the death of the primary life Beneficiary of each of the Trusts herein established or to be established, the remainder interest Beneficiary or Beneficiaries of each such Trust shall be such person or persons who are lineal descendants of such primary life Beneficiary, or who are brothers or sisters, or nephews or nieces or cousins of such primary life Beneficiary (but never the primary life Beneficiary, his or her estate, his or her creditors, or the creditors of his or her estate) to such extent or in such amounts or proportions, and in such lawful interests or estates, as said Beneficiary may by his or her Last Will and Testament appoint. Such primary life Beneficiary may at any time or from time to time during his or her life release such power of appointment with respect to any or all of the property subject to such power, and may further limit the persons in whose favor such power may be exercised. If the power of appointment is for any reason not validly exercised by such primary life Beneficiary in whole or in part, then upon his or her death such portion or all of the property, corpus and income making up such Trust as shall not have been validly appointed by him or her shall be held for the use and benefit of (a) the lineal descendants of such primary life Beneficiary, then living, per stirpes; or (b) if none, to the brothers and sisters, or their descendants, of such primary life Beneficiary, then living, per stirpes; or (c) if none of the foregoing be living, then to

For Identification:


Lyda Bunker Hunt

-9-


TRUE AND CORRECT
COPY OF ORIGINAL
FILED IN DALLAS
COUNTY CLERK'S OFFICE

APPX 0093

THE H. L. HUNT FOUNDATION, a non-profit Texas corporation.

J. At the end of the period of time when the Trusts herein established terminate, said Trustees shall proceed to wind up the affairs of each said particular Trust and shall distribute and deliver unconditionally the then corpus and undistributed income to the then Beneficiary or Beneficiaries of said particular Trust; provided, however, if such corpus and undistributed income has vested in a person under twenty-one (21) years of age, I authorize my Trustees, in their discretion, to retain the possession and managment of such minor's share until such minor has attained the age of twenty-one (21) years, or until his or her disabilities of minority have been removed by order of Court.

K. Should any one or more of the Trustees hereinabove appointed fail or refuse to serve for any reason, or having served, if a vacancy should occur in the office of any one or more of such Trustees, said Trusts shall not fail, but the surviving or remaining Trustees, or their successors, are hereby fully authorized and empowered in such event to designate and appoint some other person or persons as a substitute Trustee or Trustees in place of any such Trustee or Trustees failing or refusing to act, and it shall be the duty of such remaining or surviving Trustee or Trustees to make such designation forthwith.

If, in the judgment of said Trustees, it becomes necessary or advisable at any time to designate and appoint a separate Board of Trustees for any or all of said five (5) Trusts, the original Trustees herein appointed, or their successors, are hereby authorized and empowered to appoint at any time a Board of three (3) Trustees, including any one or more of themselves, or three (3) entirely different persons as the Board of Trustees of any particular Trust, and such new Board so appointed, and its successors, shall have all of the powers and authority granted the original Trustees named herein, including the power of designating and appointing successor Trustees. When any successor or new Trustee or separate Board of Trustees is designated, chosen or appointed, all of the property of whatsoever kind and character and wheresoever situated, belonging to the respective Trust or Trusts herein

For Identification:

*Lyda Bunker Hunt*
Lyda Bunker Hunt

-10-


TRUE AND CORRECT
COPY OF ORIGINAL
FILED IN DALLAS
COUNTY CLERK'S OFFICE

APPX 0094

established, shall thereupon immediately pass to and vest in such new Trustee or Trustees without any further act, deed or conveyance of any kind. Any Beneficiary or Beneficiaries under any of said Trusts who have reached the age of twenty-four (24) years shall be eligible to appointment as Trustee of any of such Trusts. The joint action of any two (2) of the Trustees herein designated or appointed, as herein provided, shall be sufficient to transact business and to bind the Trusts for which they are acting; provided, however, if there be only one remaining or surviving Trustee at any time, such Trustee shall be authorized to appoint an additional Trustee, and with such additional Trustee to appoint a third, both of which appointments shall be made forthwith after the occurrence of the vacancies. The said Trustees shall be entitled to determine and receive reasonable compensation for their services, to be paid by the respective Trusts served, and to be reimbursed for all expenses which they may incur in the handling of the Trust business.

One of said Trustees herein designated is hereinafter appointed as Independent Executor of this, my Will, and should his functions and duties as Executor overlap with his functions and duties as Trustee, he shall not for that reason be held to be disqualified in either capacity; but when his duties as Executor have been performed, he shall hold over as Trustee until my said estate is finally closed and disposed of as herein provided. It is my will and I direct that no bond shall ever be required of any of said Trustees or successor Trustees.

L. The Trustees shall keep or cause to be kept faithful records and books of account, reflecting at all times the true condition of the affairs of said Trusts, which said records and books of account shall at all reasonable times be open for the inspection of the Beneficiaries.

M. Whenever, under the provisions hereof, the Trustees are authorized to pay over, distribute or deliver property of the Trusts to the Beneficiaries, or to those entitled to take upon the termination of the respective Trusts, and such persons are at the time minors or under other disability, the Trustees, in their absolute discretion, may pay, distribute and deliver such property directly to such person or to the guardian of such person or to a third party

For Identification:

_Lyda Bunker Hunt_
Lyda Bunker Hunt

-11-


TRUE AND CORRECT
COPY OF ORIGINAL
FILED IN DALLAS
COUNTY CLERK'S OFFICE

184

for the benefit of such person, and the receipt in writing of such person or guardian or third party for such property shall be a full discharge to the Trustees for the payment, distribution and delivery of such property.

N. It is my intention to create hereby multiple separate Trusts, and it shall never be construed for any purpose whatsoever that the respective Trusts hereby established constitute a single Trust for the joint benefit of the Beneficiaries herein named.

### VIII.

It is not my intention to die intestate as to any of my property, and, therefore, should I die seized of any property, interest or estate, real or personal, and wheresoever situated, which has not been herein willed or which is not hereinabove disposed of, then in either such events, I hereby will and devise all such of my property and estate in fee simple absolute to THE H. L. HUNT FOUNDATION, a non-profit Texas corporation.

### IX.

I hereby name, constitute and appoint my son, WILLIAM HERBERT HUNT, as sole Independent Executor of this, my Last Will and Testament, and direct that no bond or other security be required of him; and that no action be had in any Court concerning my estate other than the probating of this, my Will, and returning an Inventory and Appraisement. During the period of time that my said Executor is administering my estate, it is my will and I direct that he shall have the same full powers granted to the Trustees herein designated, including, but without limitation, the power to sell, assign, alienate, mortgage, lease and convey.

I further will and direct that my Executor be reimbursed from my estate for all expenses which he may incur in connection with the handling thereof, and that he be paid reasonable compensation for services rendered in connection therewith, the amount to be fixed by said Executor with the advice and approval of the other two (2) Trustees herein named.

If for any reason my Executor herein named shall fail or refuse, or resign or be or become incapacitated to act, then I hereby name, constitute and appoint as an alternate, my daughter, MARGARET HUNT HILL, as sole Independent

For Identification:

_Lyda Bunker Hunt_
Lyda Bunker Hunt

-12-


TRUE AND CORRECT
COPY OF ORIGINAL
FILED IN DALLAS
COUNTY CLERK'S OFFICE

APPX 0096

185.

Executrix of this, my Will, and direct that no bond be required of her; and that no action be had in any Court concerning my estate other than the probating of this, my Will, and returning an Inventory and Appraisement, and that she have the same powers delegated to my Executor originally appointed herein.

X.

In construing my Will, except where the context otherwise requires, words in the singular form shall include the plural, and vice versa; and words in the masculine form shall include the feminine and neuter, and vice versa.

IN WITNESS WHEREOF, I, LYDA BUNKER HUNT, have hereunto set my hand this the 16th day of September, 1954, in the presence of ___ Latham Iris Anderson Latham and ___, whom I have requested to serve as attesting witnesses to this, my Last Will and Testament, and I have, for the purpose of identification, signed my name at the bottom of each preceding page of this Will.

Lyda Bunker Hunt
_____
Lyda Bunker Hunt

This instrument, consisting of thirteen (13) typewritten pages, including this certificate, each bearing the signature of the above named LYDA BUNKER HUNT, was by her on the date hereof signed, declared and published by her, the said LYDA BUNKER HUNT, as her Last Will and Testament, in the presence of us, the attesting witnesses, who have hereunto subscribed our names, in the presence of the said LYDA BUNKER HUNT, at her special instance and request, and in the presence of each other, we believing her to be of sound and disposing mind, this the 16th day of September, 1954.

_____ RESIDING AT Dallas, Texas
Iris Anderson Latham RESIDING AT Dallas, Texas
_____ RESIDING AT Dallas, Texas



SHANK, DEDMAN & PAYNE
ATTORNEYS AT LAW
702 MERCANTILE SECURITIES BUILDING
DALLAS, TEXAS

FILED
MAY 12 1955
ED. M. STEGER, CLERK,
County Court, Dallas County, Texas
By _____ Deputy

LAST WILL AND TESTAMENT
OF
LYDA BUNKER HUNT

ORIGINAL

TRUE AND CORRECT COPY OF ORIGINAL FILED IN DALLAS COUNTY CLERK'S OFFICE



THE STATE OF TEXAS
Probate Court No. 2

# CERTIFICATE

CAUSE NO.    PR-38861-1

*ESTATE OF: LYDA BUNKER HUNT, Deceased*

I, *JOHN F. WARREN, County Clerk of Dallas County and Clerk of the County Courts and Probate Courts within and for the County of Dallas, State of Texas, do hereby certify and that the following is a TRUE AND CORRECT COPY OF:*

**Judgment**
**Proof of Will-SIDNEY LATHAM**
**Proof of Will-J. A. GOODSON**
**Last Will and Testament of LYDA BUNKER HUNT**
**Order Admitting Will to Probate**

*The same appear in the Original now on file and of record in the Probate Courts of Dallas County, Texas.*

*WITNESS MY HAND AND OFFICIAL SEAL OF OFFICE, this **8th day of November, 2018.***

JOHN F. WARREN, County Clerk
Dallas County, Texas

By: _____ , Deputy
BEN JOHNSON

APPX 0098

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **ALBERT G. HILL, III,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:07-CV-2020-L** |
| | § | |
| **WILLIAM SCHILLING, *et al.*,** | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court are: Washburne and Summers' Emergency Motion to Enforce the Final Judgment and Settlement Agreement, and Application for Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction (Doc. 1876) ("W & S's Motion"), filed under seal on May 29, 2018; and Albert G. Hill, III's ("Hill III") Emergency Application for Temporary Restraining Order and Injunctive Relief to Enforce Global Settlement Agreement and Final Judgment and for Preservation of Assets and Records ("Hill III's Motion"), filed under seal on May 29, 2018 (Doc. 1877).[1]  On June 1, 2018, the court issued a memorandum opinion and order, incorporated by reference as if repeated verbatim herein, in which it concluded that neither side had satisfied its burden of demonstrating: (i) that a substantial threat of irreparable harm would result absent issuance of a temporary restraining order; or (ii) a substantial likelihood of prevailing on the merits. *Hill v. Schilling*, No. 3:07-CV-2020-L, 2018 WL 2461877, at *6-8  (N.D. Tex. June 1, 2018) (Lindsay, J.).

---

[1] Hill III seeks injunctive relief against Margaret Keliher, Individually and as Temporary Administrator of the Estate of the Albert G. Hill, Jr., Tyree Miller, proponent of the alleged Last Will and Testament of Hill Jr., Chester J. "Don" Donnally, Jr., Ivan Irwin, Jr., Thomas P. Tatham, and Joyce E. Waller (collectively, "Respondents").

**Memorandum Opinion and Order - Page 1**

For these reasons, the court denied the parties' respective requests for issuance of a temporary restraining order and "defer[red] ruling on the remainder of the relief requested pending its consideration of the parties' respective applications for preliminary injunction and related relief." *Id.* at *9.

After consideration of the remaining relief sought by the parties, legal briefs, appendixes, record, and applicable law, and in light of proceedings pending in the Probate Court No. Two of Dallas County, Texas, *see Estate of Albert Galatyn Hill, Jr.*, *Deceased*, PR-17-04117-2, for the reasons stated herein, the court **denies without prejudice as premature** the remaining relief sought in W & S's Motion (Doc. 1876) and Hill III's Motion (Doc. 1877).

## I.   Background[2]

On December 28, 1935, Haroldson L. Hunt (H. L. Hunt) and his wife Lyda Bunker Hunt created two trusts for their children, namely: (1) the Margaret Hunt Trust Estate ("MHTE"); and (2) the Haroldson L. Hunt, Jr. Trust Estate ("HHTE"). The *1935 Articles of Agreement and [] Declaration of Trust of Margaret Hunt Trust Estate* govern the MHTE (the "*1935 MHTE Trust Instrument*") and the *1935 Articles of Agreement and Declaration of Trust of Haroldson L. Hunt, Jr. Trust Estate* govern the HHTE (the "*1935 HHTE Trust Instrument*"). The terms of the MHTE and the HHTE are identical (except for the initial beneficiary). The 1935 MHTE Trust Instrument and the 1935 HHTE Trust Instrument both provide that "it is the desire and purpose of said H. L. Hunt and Lyda Hunt" to create an "irrevocable trust," and both provide, among other things, that during the lifetime of the beneficiary, only the annual income could be distributed to the beneficiary,

---

[2] The court's recitation of the relevant background is based on the materials contained in the appendixes submitted by the parties in support of their respective motions, as well as the court's prior decisions in this case.

**Memorandum Opinion and Order - Page 2**

requiring that the corpus remain "intact and undisturbed" until twenty-one years after the death of the named beneficiary, at which time the trust would terminate and the corpus of the trust would be distributed to the beneficiary's descendants per stirpes. Doc. 1857-3 at 201, 206-07; *id.* at 210, 216-17. Lyda Bunker Hunt later established trusts for her grandchildren though her Last Will and Testament, dated September 16, 1954, which included the Lyda Hunt - Margaret Trusts, Albert G. Hill, Jr.

In December 2007, Hill III brought a lawsuit in Texas state court in his individual capacity and on behalf of the MHTE and HHTE against specific beneficiaries of the MHTE and HHTE, including his father (Hill Jr.), Hill Jr.'s siblings, and the trustees and members of the advisory boards of the MHTE and HHTE. Among other things, Hill III alleged wrongdoing in the management and administration of the MHTE and HHTE by their respective trustees and violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C § 1961, *et seq.* He also sought a declaration that he was a direct and vested beneficiary of the MHTE as a consequence of his father's disclaimer of various interests he held in the MHTE.[3] Following removal to federal court on December 3, 2007, the case was randomly assigned to United States District Judge Reed C. O'Connor.

---

[3] Much of the dispute centered on Hill III's claimed interest in the MHTE following the 2007 death of his paternal grandmother, Margaret Hunt Hill. In 2005, Hill Jr. signed an irrevocable disclaimer of a portion of his interest in the MHTE in favor of his three children, including Hill III. *See* Ex. C to Global Settlement and Mutual Release Agreement (2005 Disclaimer) (Doc. 879). The effect of the disclaimer is that Hill Jr.'s disclaimed interest passed to Hill III and his two siblings after Margaret Hunt Hill's death. *See* March 4, 2010 Mem. Op. & Order 7-8 (Doc. 611). In 2007, Hill Jr. sought to rescind his 2005 disclaimer, along with another partial disclaimer he had executed in 2007. This litigation ensued.

**Memorandum Opinion and Order - Page 3**

### A.    The Settlement Agreement

Ultimately, Hill III agreed to a settlement of the dispute.  On May 13, 2010, the parties entered into the Global Settlement and Mutual Release Agreement (the "Settlement Agreement") (Doc. 879) that settled this action and related state court actions.  As relevant to the pending motions, the Settlement Agreement affirmed Hill Jr.'s 2005 disclaimer (*see supra* note 3) and provided for the partition of the MHTE and HHTE, pro rata, into separate subtrusts for all beneficiaries.  Under the Settlement Agreement, Hill III would become the sole beneficiary to one of the new subdivided trusts containing his individual interest, the MHTE - Albert G. Hill, III Trust; and Hill Jr. would become the beneficiary of the MHTE - Albert G. Hill, Jr. Trust and the HLHTE - Albert G. Hill Jr., Trust.  Each subtrust was to be separately administered by a new successor trustee.  The parties also agreed that monetary damages might not adequately recompense the parties for every breach and that, therefore, specific performance and injunctive relief would be available for any breach of any term of the Settlement Agreement.  Settlement Agreement § III(5)(r).

In the Settlement Agreement, each "Agreeing Party," defined to include Hill III, agreed to waive his or her standing and right to demand information, seek accountings, or assert any claim or cause of action in connection with any trust for the primary benefit of a descendant of Margaret Hunt Hill of which he or she was not a current beneficiary:

> (b)    <u>Waiver of Standing</u>: During such time as an Agreeing Party is not a current beneficiary of a trust for the primary benefit of a descendant of MHH (an "MHH Trust") and any other descendant of MHH is living, such Agreeing Party hereby waives (1) his or her status as an interested person in such trust and (2) all rights that he or she may have as a future or contingent beneficiary of such trust under the instrument establishing such MHH Trust, under applicable common law, or under applicable state law, including but not limited to the right to demand information, seek an accounting or assert any claim or cause of action in connection with any such trust. Each Agreeing

Memorandum Opinion and Order - Page 4

Party further agrees that the waivers in this subparagraph shall not apply to an MHH Trust during any period in which he or she is a current beneficiary of that MHH Trust, although the waivers in this subparagraph shall continue to apply to any actions taken or omitted by any other person or entity during the period that he or she was not a current beneficiary. For purposes of this paragraph, "current beneficiary" means a person who, at the time a current beneficiary is determined, is then entitled to receive, or is then, in an exercise of discretion by the trustee of such trust, a possible recipient of, income or principal of such trust.

*Id.* § III(5)(b). Further, Hill III agreed not to contest Hill Jr.'s will or file any action challenging the disposition of his property:

> (f)    No Contest of Al Jr.'s Last Will and Testament: Al III, Erin, the Grandchildren, and all of their descendants and heirs agree not to contest the Last Will and Testament of Al Jr. or file any additional action, lawsuit, or legal proceeding challenging the disposition of his property.

*Id.* § III(1)(f).

Finally, the parties agreed that this court would have continuing jurisdiction over any claim or controversy arising out of the Settlement Agreement:

> (c)    Federal Court's Continuing Jurisdiction: Any controversy or claim arising after the date of execution of this Agreement arising out of this Agreement and the Documentation shall be resolved by the Federal Court, the Honorable Reed O'Connor, who shall retain continuing jurisdiction over this Agreement.

*Id.* § III(5)(c).

**B.    The Final Judgment**

On November 8, 2010, Judge O'Connor issued a final judgment (the "Final Judgment") implementing and memorializing the parties' Settlement Agreement. *See* Final J. ¶ 1 (Doc. 999). Among other things, the Final Judgment affirmed Hill Jr.'s 2005 disclaimer of a portion of his interest in the MHTE (*id.* ¶ 5), resulting in a share of the MHTE for Hill III's benefit, as well as an

**Memorandum Opinion and Order - Page 5**

MHTE termination interest trust (*id.* ¶ 8.i), and a separate MHTE termination interest trust that was specifically created to provide Hill III with a portion of the corpus of the MHTE upon the termination of the MHTE termination interest trust (*id.* ¶ 8.f). With respect to Hill Jr., the division of the MHTE and HHTE into separate subtrusts in accordance with the Settlement Agreement resulted in the MHTE - Albert G. Hill, Jr. Trust and the HLHTE - Albert G. Hill, Jr. Trust. Like the MHTE and HHTE, these two trusts were governed by the *1935 MHTE Trust Instrument* and the *1935 HHTE Trust Instrument*, respectively. *Id.* ¶ 14.

The court also enforced the Agreeing Parties's waiver of standing provision, whereby each Agreeing Party, defined to include Hill III, agreed to waive any right to demand information, seek accountings, or assert any claim or cause of action in connection with, any trust for the primary benefit of a descendent of Margaret Hunt Hill of which he or she was not a current beneficiary:

### Waiver of Standing

28. *IT IS ORDERED that, pursuant to the Agreement, the Court finds that during such time as an Agreeing Party is not a current beneficiary of a trust for the primary benefit of a descendant of Margaret Hunt Hill ("MHH") (an "MHH Trust") and any other descendant of MHH is living, such Agreeing Party has waived: (1) his or her status as an interested person in such trust, and (2) all rights that he or she may have as a future or contingent beneficiary of such trust under the instrument establishing such MHH Trust, under applicable common law, or under applicable state law, including but not limited to the right to demand information, seek an accounting, or assert any claim or cause of action in connection with any such trust.* IT IS FURTHER ORDERED that Al III and Erin shall at no time have standing with respect to the Single Fund Grandchildren's Trust, including as guardians of minor beneficiaries of the Single Fund Grandchildren's Trust and any trusts created thereunder. IT IS FURTHER ORDERED that, pursuant to the Agreement, the waivers by each Agreeing Party in this paragraph shall not apply to an MHH Trust during any period in which such Agreeing Party is a current beneficiary of that MHH Trust, although the waivers in this paragraph shall continue to apply to any actions taken or omitted by any other person or entity during the period that such Agreeing Party was not a current beneficiary. For purposes of this paragraph, "current beneficiary" means a person who, at the time a current beneficiary is determined, is

Memorandum Opinion and Order - Page 6

then entitled to receive, or is then, in an exercise of discretion by the trustee of such trust, a possible recipient of, income or principal of such trust.

*Id.* ¶ 28 (emphasis added). The court additionally ordered Hill III not to contest Hill Jr.'s will or challenge the disposition of his property. *Id.* ¶ 29.

Finally, consistent with the Settlement Agreement, Judge O'Connor retained continuing jurisdiction over the implementation and enforcement of the Final Judgment:

> IT IS ORDERED that, without affecting the finality of this Final Judgment, the Court hereby retains continuing jurisdiction over the implementation of the [Settlement] Agreement, the Final Judgment, and the Parties for purposes of implementing and enforcing the [Settlement] Agreement and this Final Judgment. IT IS FURTHER ORDERED that any controversy or claim arising after the date of execution of the [Settlement] Agreement and arising out of the [Settlement] Agreement or the Documentation shall be resolved by this Court. Each of the Agreeing Parties agrees and covenants not to, and IT IS ORDERED that none of the Agreeing Parties shall, file or assert any of the released Claims (in law or in equity).

*Id.* ¶ 45.[4]

Hill III appealed the Final Judgment challenging, among other things, the addition of provisions that were not part of the Settlement Agreement. The Fifth Circuit affirmed the Final Judgment. *See Hill v. Schilling,* 495 F. App'x 480 (5th Cir. 2012) (consolidated appeal).

### C.    Hill Jr.'s Last Will and Testament ("Will")

On December 20, 2014, Hill Jr. executed his Will, which included the following provisions:

(a) *I hereby exercise the testamentary special power of appointment* given to me under paragraph VIII, of The Lyda Hunt-Margaret Trusts, Al G. Hill, Jr., created under the Last Will and Testament of Lyda Bunker Hunt, dated the 16th day of

---

[4] On October 2, 2013, this matter was reassigned to the undersigned following the recusal of Judges O'Connor, Lynn, Solis, Godbey, Boyle, Fitzwater, and Kinkeade. Accordingly, this court has continuing jurisdiction over the implementation of the Settlement Agreement, Final Judgment, and the parties for purposes of implementing and enforcing the Settlement Agreement and the Final Judgment. *See* Final J. ¶ 45.

Memorandum Opinion and Order - Page 7

September, 1954, in favor of my grandchildren [AGH, IV, NHH, and CMH], that they should succeed me as to all interests which I have in such Trust estate;

(b) *I hereby exercise the power of appointment* given to me under Article III, Section 3 of the Albert Hill Trust, dated the 10th day of April, 1945, in favor of the Al G. Hill, Jr. Family Foundation ("Foundation"), so that the Foundation should succeed me as to all interests which I have in such Trust estate;

(c) *I hereby exercise the power of appointment* given to me under Article III, Section 3 of the HLHTE-Albert G. Hill, Jr. Trust, created under a settlement agreement, by which the Haroldson L. Hunt, Jr. Trust Estate, dated 28th day of December, 1935, was split into separate trusts, in favor of the Al G. Hill, Jr. Charitable Lead Annuity Trust ("CLAT") created under Article IV of THE AL G. HILL, JR. FAMILY TRUST, more particularly defined in paragraph 2,2 below, so that such Al G. Hill, Jr. Charitable Lead Annuity Trust should succeed me as to all interests which I have in such Trust estate;

(d) *I hereby exercise the power of appointment* given to me under Article III, Section 3 of the MHTE-Albert G. Hill, Jr. Trust, created under a settlement agreement, by which the Margaret Hunt Trust Estate, dated December 28, 1935, was split into separate trusts, in favor of the Al G. Hill, Jr. Charitable Lead Annuity Trust created under Article IV of THE AL G. HILL, JR. FAMILY TRUST, more particularly defined in paragraph 2,2 below, so that such Al G. Hill, Jr. Charitable Lead Annuity Trust should succeed me as to all interests which I have in such Trust estate.

W & S's App., Ex. 1B (Doc. 1876-3 at 31) (emphasis added).[5]

D.    **Termination of the Trusts During Hill Jr.'s Lifetime**

On December 13, 2016, the MHTE - Albert G. Hill, Jr. Trust was terminated pursuant to a written instrument titled MHTE - Albert G. Hill, Jr. Trust Trustee Resolution and Record of Trust Termination (*id.* at Ex. 2A); and the HLHTE - Albert G. Hill, Jr. Trust was terminated pursuant to a written instrument titled HLHTE - Albert G. Hill, Jr. Trust Trustee Resolution and Record of Trust

---

[5] Although the Trustees are correct that Hill Jr.'s Will excluded Hill III, they erroneously state that his Will also excluded Hill III's children. Trustee Br. 24. Hill Jr.'s Will, however, conveyed the rights to the Lyda Hunt - Margaret Trusts, Albert G. Hill, Jr., to Hill III's children. Hill III's App. at 105 (Doc. 1877).

**Memorandum Opinion and Order - Page 8**

Termination (*id.* at Ex. 2B).  On December 28, 2016, the Lyda Hunt - Margaret Trusts, Albert G. Hill, Jr. was terminated pursuant to a written instrument titled the Lyda Hunt - Margaret Trusts, FBO Albert G. Hill, Jr. Record of Trust Termination (*id.* at 3A).

**E.    Hill Jr.'s Death and the Application for Probate of his Will**

On December 6, 2017, counsel for Hill III filed a Suggestion of Death, stating, "upon the record, pursuant to Rule 25(a)(1) of the Federal Rules of Civil Procedure, the death of [Hill Jr.], Defendant, on December 2, 2017." Suggestion of Death (Doc. 1811).  On December 7, 2017, Tyree Miller ("Miller"), named the Independent Executor of Hill Jr.'s Estate by his will, filed an Application for Probate of Will and Issuance of Letters Testamentary in Probate Court No. 2 of Dallas County, Texas (the "Probate Court"), seeking to probate Hill Jr.'s will, to be appointed as the independent Executor of Hill Jr.'s Estate, and to have letters testamentary issued in accordance with the will.  *See Estate of Albert Galatyn Hill, Jr.*, *Deceased*, PR-17-04117-2, pending in the Probate Court No. Two of Dallas County, Texas.

On December 22, 2017, Hill III filed an Original Answer in the Probate Court admitting the allegations regarding the date of Hill Jr.'s death, his age, the listing of his children, his domicile at death, and that the Probate Court has jurisdiction and venue over Hill Jr.'s probate matter, but otherwise denying all other allegations made by Miller in the Application for Probate of Will and Issuance of Letters Testamentary.  On January 5, 2018, in light of Hill III's Original Answer, Margaret Keliher ("Keliher") filed an Emergency Application for Appointment of Temporary Administrator with the Probate Court, advising it of these proceedings, and the need for someone to represent the Estate of Hill Jr.  On January 10, 2018, the Probate Court granted Keliher's application and appointed her as Temporary Administrator of the Estate of Hill Jr.  On May 15,

Memorandum Opinion and Order - Page 9

2018, this court granted Keliher's Motion for Leave to Substitute in this action in the place of Hill Jr.

In addition to asserting that Miller should be disqualified due to a conflict of interest, Hill III is: (1) claiming and seeking a declaration that Hill Jr. did not have the powers of appointment he exercised in his Will with respect to the MHTE - Albert G. Hill, Jr. Trust, the HLHTE - Albert G. Hill, Jr. Trust, the Lyda Hunt - Margaret Trusts, Albert G. Hill, Jr. , and the Albert Hill Trust; (2) seeking accountings of certain trusts; (3) seeking injunctive relief; (4) seeking the imposition of constructive trusts; and (5) seeking damages and attorney's fees.  The Probate Court has held several hearings and has set these issues for a trial to begin on August 20, 2018.[6]

### F.      The Pending Motions

Pending are W & S's and Hill III's respective requests for preliminary and permanent injunctive relief and motions to enforce the Settlement Agreement and Final Judgment that are the subject of this memorandum opinion and order.  *See* W & S's Motion (Doc. 1876); Hill III's Motion (Doc. 1877).  In support of their motion, Washburne and Summers argue that Hill III is violating the Final Judgment and breaching the Settlement Agreement by: asserting claims contesting Hill Jr.'s Will; objecting to Miller as the Independent Executor of the Estate; challenging the disposition of Hill Jr.'s property; and seeking declaratory relief regarding whether Hill Jr. had powers of appointment in certain trusts to exercise in his Will, as well as accountings of various trusts

---

[6] In response to an order of the Probate Court to add all additional parties affected or interested in the matters asserted by Hill III, on April 30, 2018, Hill III filed a Supplemental Answer and Original Counterclaim adding thirteen new parties to the Probate Court litigation—including Washburne, Summers, and their children. In his amended pleading in the Probate Court, Hill III continues to argue that Hill Jr. did not have the powers of appointment with respect to the trusts to exercise in his Will and seeks a declaration to this effect.

**Memorandum Opinion and Order - Page 10**

(including the HLHTE - Albert G. Hill, Jr. Trust and the MHTE - Albert G. Hill, Jr. Trust). They seek to enjoin Hill III from:

> (1) contesting Hill Jr.'s Will;

> (2) filing any action, lawsuit, or legal proceeding challenging the disposition of Hill Jr.'s property;

> (3) demanding information and documents in connection with any trust for the primary benefit of a descendant of Margaret Hunt Hill (i.e., Hill Jr.) of which Hill III is not a current beneficiary, especially (i) the MHTE - Albert G. Hill, Jr. Trust, (ii) the HLHTE - Albert G. Hill, Jr. Trust, (iii) the Lyda Hunt - Margaret Trusts, Al G. Hill, Jr., and (iv) the Albert Hill Trust;

> (4) seeking an accounting in connection with any trust for the primary benefit of a descendant of Margaret Hunt Hill (i.e., Hill Jr.) of which Hill III is not a current beneficiary, especially (i) the MHTE - Albert G. Hill, Jr. Trust, (ii) the HLHTE - Albert G. Hill, Jr. Trust, (iii) the Lyda Hunt - Margaret Trusts, FBO Al G. Hill, Jr., and (iv) the Albert Hill Trust; and

> (5) asserting any claim or cause of action in connection with any trust for the primary benefit of a descendant of Margaret Hunt Hill (i.e., Hill Jr.) of which Hill III is not a current beneficiary, especially (i) the MHTE - Albert G. Hill, Jr. Trust, (ii) the HLHTE - Albert G. Hill, Jr. Trust, (iii) the Lyda Hunt - Margaret Trusts, FBO Al G. Hill, Jr., and (iv) the Albert Hill Trust.

W & S's Motion 3 (Doc. 1876).

In support of his motion, Hill III contends that the major subtrusts that were supposed to be preserved by the Final Judgment have been prematurely and unlawfully terminated by Hill Jr. and his cohorts, thereby destroying the valuable inheritance of Hill III and his descendants, from the H.L. Hunt family, estimated to be worth in excess of $1 billion. Hill III's Mot. 2. According to Hill III:

> *In [his] Will, Hill Jr. purported to exercise phantom "powers of appointment" to alter completely the passage of the MHTE and HHTE subtrusts resulting from the GSA, totally disinheriting Hill III, his siblings, and their children.* Accordingly, Hill III appeared in the Probate Proceeding challenging the ability of the decedent to alter the fixed provisions for succession to the income distribution rights and the

Memorandum Opinion and Order - Page 11

termination distribution rights under such subtrusts which had been preserved and carried forward by the GSA and Final Judgment.

Hill III's Brief 5 (emphasis added).  Further, Hill III asserts:

> The Final Judgment made it clear that other than the specific changes set forth in the Judgment, all other provisions of the formative documents for the MHTE and HHTE trusts would remain in full force and effect. Such trust instruments both had substantially identical provisions, establishing them as irrevocable, providing that during the lifetime of the beneficiary, only the annual income could be distributed to the beneficiary, that the beneficiary could not request distribution of corpus or dissolution of the trust, and that 21 years after the death of the named beneficiary, the corpus of the trust would be distributed to the beneficiary's descendants per stirpes. In addition, on information and belief, the Lyda Hunt - Margaret Trusts FBO Albert G. Hill, Jr., had similar provisions. Therefore, following Hill Jr.'s death on December 2017, Hill III and his siblings, and their children, would have succeeded to Hill Jr.'s potential termination interest in the massive subtrusts created under the Final Judgment, and the Lyda Hunt Trust. It now appears that the Hill Jr. representatives are attempting to subvert the rights of his descendants through their illegal acts, which seek to deny Hill III, his siblings, and their children, from the rights that they acquired as a result of the [Settlement Agreement] and Final Judgment.

*Id.* at 3.  Hill III seeks an injunction to preserve the assets of the MHTE - Albert G. Hill Jr. Trust, the HLHTE - Albert G. Hill, Jr. Trust, and the Lyda Hunt - Margaret Trusts, Albert G. Hill, Jr., and to prevent dissipation, concealment, and further transfer of such assets, and preservation of all records relating to such trusts and actions affecting them.  *Id.* at 4.  He also seeks to restrain and enjoin Respondents from destroying, spoiling, altering, modifying, deleting, or concealing, any evidence of or relating to the:

> 1. Exercise of the purported powers of appointment of Hill Jr. over the MHTE - Albert G. Hill, Jr. Trust, and the HLHTE - Albert G. Hill, Jr. Trust, or assistance in carrying out such purported powers;

> 2. Dissolution or termination of the MHTE - Albert G. Hill, Jr. Trust, the HLHTE - Albert G. Hill, Jr. Trust, and/or Lyda Hunt - Margaret Trusts FBO Albert G. Hill, Jr., or assistance or implementation of such termination or dissolution;

**Memorandum Opinion and Order - Page 12**

3. Management, operation, payment of funds for any purpose other than investment; or

4. Transfer, sale, encumbrance, secreting, or any other disposition of or alteration of any assets that had formerly been held by either MHTE - Albert G. Hill, Jr. Trust, the HLHTE - Albert G. Hill, Jr. Trust, or Lyda Hunt - Margaret Trusts FBO Albert G. Hill, Jr.

As previously stated, on June 1, 2018, the court issued a memorandum opinion and order, denying the parties' respective requests for a temporary restraining order, concluding that neither side had satisfied its burden of demonstrating: (i) that a substantial threat of irreparable harm would result absent issuance of a temporary restraining order; or (ii) a substantial likelihood of prevailing on the merits. *Hill*, 2018 WL 2461877, at *6-8. The court "defer[red] ruling on the remainder of the relief requested pending its consideration of the parties' respective applications for preliminary injunction and related relief." *Id.* at *9. The court now turns to the remaining relief requested.

## II.    Analysis

### A.    The Scope of the Court's Continuing Jurisdiction

As a threshold matter, the court notes that Settlement Agreement and Final Judgment only modified the MHTE and HHTE. In the Final Judgment, Judge O'Connor retained "continuing jurisdiction over the implementation of the [Settlement] Agreement, the Final Judgment, and the Parties for purposes of implementing and enforcing the [Settlement] Agreement and this Final Judgment." *See* Final J. ¶ 45 (Doc. 999). He further ordered that "any controversy or claim arising after the date of execution of the [Settlement] Agreement and arising out of the [Settlement] Agreement or the Documentation shall be resolved by this Court." *Id. With respect to any Hunt/Hill family trusts other than the MHTE and HHTE, therefore, this court does not have continuing jurisdiction, and issues pertaining to those family trusts are not properly before this court. The*

Memorandum Opinion and Order - Page 13

*court declines to expand its continuing jurisdiction beyond the implementation and enforcement of the Settlement Agreement and Final Judgment.*

### B.    Hill III's Standing

Prior to making any determination on the merits, the court must resolve the disputed issue of whether Hill III waived his standing to seek relief in the Probate Court and this court. Specifically, in response to Hill III's Motion, Respondents argue that Hill III waived his standing under the Settlement Agreement and the Final Judgment to assert any claims regarding: the MHTE - Albert G. Hill, Jr. Trust; the HLHTE - Albert G. Hill, Jr. Trust; and the Lyda Hunt - Margaret Trusts, Albert G. Hill, Jr.:

> The MHTE and HHTE Trust Instruments expressly permitted the Trustees, with the Advisory Board's consent, to voluntarily dissolve the Trusts and the MHTE and HHTE Trust Instruments expressly grant Hill, Jr. power of appointment. The Trustees, with the approval of the Advisory Boards, terminated both Trusts in December 2016, before Hill Jr.'s death in December 2017. In addition, in his Will, Hill Jr. exercised his power of appointment in favor of beneficiaries that did not include Hill III.

> *Here, the Trustees, with the approval of the Advisory Boards, terminated the Trusts before Hill Jr.'s death and, additionally, Hill Jr. exercised his powers of appointment effective upon his death so Hill III never became a beneficiary. Consequently, Hill III and his children are not and have never been beneficiaries of the MHTE—Albert G. Hill, Jr. Trust or the HLHTE—Albert G. Hill, Jr. Trust (or the Lyda Hunt—Margaret Trusts, Albert G. Hill, Jr. to the extent Hill III is attempting to seek relief regarding this trust). In fact, Hill III has no interest whatsoever in these two trusts; he is a stranger to these trusts*.

Doc. 1864 at 10 (emphasis added).

In response to the argument that he waived his standing with respect to these trusts in the Settlement Agreement and Final Judgment, Hill III asserts:

> The arguments that Hill III lacks standing . . . are circular. They are primarily based upon the assumption that the premature termination of the trusts was valid, and

Memorandum Opinion and Order - Page 14

that the powers of appointment purportedly exercised by Hill Jr. in his Will were valid. This begs the question. If the trusts were illegally terminated to defeat Hill III's rights under the [Settlement Agreement] and the Final Judgment, or in violation of the fiduciary duties owed by the Trustees to all beneficiaries, even future beneficiaries, then Hill III does have standing to assert his claims.

Doc. 1880 at 2.

Paragraph 28 of the Final Judgment provides, in relevant part:

**Waiver of Standing**

28. IT IS ORDERED that, pursuant to the Agreement, the Court finds that *during such time as an Agreeing Party is not a current beneficiary of a trust* for the primary benefit of a descendant of Margaret Hunt Hill ("MHH") (an "MHH Trust") and any other descendant of MHH is living, such Agreeing Party has waived: (1) his or her status as an interested person in such trust, and (2) all rights that he or she may have as a future or contingent beneficiary of such trust under the instrument establishing such MHH Trust, under applicable common law, or under applicable state law, including but not limited to the right to demand information, seek an accounting, or assert any claim or cause of action in connection with any such trust.

Final J. ¶ 28 (emphasis added).  Paragraph 28 also defined the term "current beneficiary," for purposes of determining standing as: "a person who, at the time a current beneficiary is determined, is then entitled to receive, or is then, in the exercise of discretion by the trustee of such trust, a possible recipient of, income or principal of such trust." *Id.*

Paragraph 28 is unambiguous.  Hill III only agreed to waive his  standing to the extent he was "not a current beneficiary" of a trust for the primary benefit of a descendant of Margaret Hunt Hill. *Id.*  Absent Hill Jr.'s exercise of "powers of appointment" in his Will in favor of beneficiaries that did not include Hill III, and absent dissolution of the trusts at issue prior to his death, under the express terms of the MHTE and HHTE, Hill III, as a lineal descent of Hill Jr., would be a current

**Memorandum Opinion and Order - Page 15**

beneficiary.  Otherwise stated, if it is determined that: (i) Hill Jr. lacked the powers of appointment he sought to exercise in his Will, and (ii) prematurely and unlawfully dissolved the relevant trusts during his lifetime, as Hill III contends, then under the unambiguous terms of the trust instruments, following Hill Jr.'s death, Hill III would be a current beneficiary with standing under the Final Judgment.

Pending before the Probate Court is Hill III's request for a declaratory judgment that Hill Jr. lacked the powers of appointment he sought to exercise in his Will with respect to the MHTE - Albert G. Hill, Jr. Trust, the HLHTE - Albert G. Hill, Jr. Trust, the Lyda Hunt - Margaret Trusts, Albert G. Hill, Jr., and the Albert Hill Trust.  If the Probate Court decides that Hill Jr.'s exercise of these powers of appointment was invalid, then Hill Jr.'s beneficiary designations in his Will would lapse.  By contrast, if the Probate Court decides that Hill Jr. properly exercised these powers of appointment in his Will, thereby lawfully excluding Hill III from any inheritance, Hill III would not qualify as a current beneficiary and the waiver of standing provision in the Settlement Agreement and Final Judgment would, therefore, bar him from seeking relief in the Probate Court or this court with respect to the trusts at issue.  Under the latter scenario, whether the termination of the trusts during Hill Jr.'s lifetime was impermissible would be moot.

Insofar as the parties seek to present these issues before the undersigned, while also pursuing them in the Probate Court, the court declines this invitation.  These disputed matters are *inextricably intertwined* with the probate of Hill Jr.'s Will.  As Keliher's counsel, Jeffrey N. Myers, acknowledged at a March 29, 2018 hearing before the Probate Court, whether the powers of

**Memorandum Opinion and Order - Page 16**

appointment exercised by Hill Jr. in his Will were valid is a matter of state law properly before the

Probate Court.  *See* Hill III App. at 278 (Doc. 1877) (Hr'g Tr., 18:20-22) ("[T]he existence of a

power of appointment is a state law matter which you would rule upon.")  Further, the Probate Court

Judge engaged in the following colloquy with Emil Lippe, Jr., Esq., Hill III's counsel, with respect

to the impact on the dispositions in Hill Jr.'s Will were he to lack the powers of appointment:

> Mr. Lippe:  If we had a will that said that the executor is entitled to convey the Brooklyn Bridge to Vladimir Putin, and the decedent didn't own the Brooklyn Bridge, that's—it's a silly example, but that's essentially what we're dealing with.  We're dealing with a grant of power that I say—that we contend can't be done.  Now, they'll disagree, of course.
>
> The Court:  Well, Mr. Lippe, I think that's a perfect example, because I have the exact same example in my mind.  Maybe not Vladimir Putin; however, the Brooklyn Bridge was the example I was thinking about.  And if a will disposes of the Brooklyn Bridge or the Margaret Hunt Bridge, then that doesn't mean the will is invalid.  It means maybe that disposition is invalid, right?  It means it may lapse.  It doesn't mean that the will is invalid.
>
> Mr. Lippe:  And I believe our request for declaratory relief is asking the Court to make a ruling as to whether or not certain portions of the will can be enforced.

*Id.* at 144 (Hr'g Tr., 16:20-25, 17:1-14).[7]

---

[7] Hill III agreed not to contest Hill Jr.'s Will or the disposition of his property.  Settlement Agreement § III(1)(f) (Doc. 879); Final J. ¶ 25 (Doc. 999).  If Hill III is correct, however, that Hill Jr. lacked the powers of appointment he exercised in his Will and impermissibly dissolved the trusts in violation of the 1935 MHTE Trust Instrument and the 1935 HHTE Trust Instrument—which H.L. Hunt and Lyda Hunt intended to be irrevocable—then the assets that were the subject of the powers of appointment would not rightfully have been Hill Jr.'s property.  The court declines to read the Settlement Agreement and Final Judgment so broadly as to immunize Hill Jr. and the trustees from reasonable inquiry into the legitimacy of both Hill Jr.'s exercise of powers of appointment in his Will to the exclusion of lineal descendants and the termination during his lifetime of trusts intended to be irrevocable.

**Memorandum Opinion and Order - Page 17**

In light of the Probate Court's consideration of Hill Jr.'s Will and the attendant unique circumstances, the court must consider the probate exception to federal jurisdiction. As previously summarized by this court:

> A longstanding limitation on federal jurisdiction is the probate exception, which is a judicially created doctrine. *Marshall v. Marshall*, 547 U.S. 293, 298, 126 S.Ct. 1735, 164 L.Ed.2d 480 (2006). It is an exception "to otherwise proper federal jurisdiction." *Id.* at 308. The probate exception is to be narrowly construed, and in defining its scope, the United States Supreme Court recently held:
>
> > [T]he probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.
>
> *Id.* at 311–12. "In determining whether a suit in federal court interferes with state probate proceedings, [the Fifth Circuit] considers whether the plaintiff's claim implicates the validity of the probate proceedings or whether the plaintiff is merely seeking adjudication of a claim between the parties." *Breaux v. Dilsaver*, 254 F.3d 533, 536 (5th Cir. 2001) (citations and internal quotations omitted); *see also Morgan v. Chase Home Finance, L.L.C.*, 306 F. App'x 49, 53 (5th Cir. 2008).

*Lennon v. Scott & Stringfellow, LLC*, 2010 WL 1962672, at *3 (N.D. Tex. May 14, 2010) (Lindsay, J.). More recently, the Fifth Circuit recognized that: "[T]o determine whether the probate exception deprives a federal court of jurisdiction, *Marshall* requires a two-step inquiry into (1) whether the property in dispute is estate property within the custody of the probate court and (2) whether the plaintiff's claims would require the federal court to assume *in rem* jurisdiction over that property." *Curtis v. Brunsting*, 704 F.3d 406, 409 (5th Cir. 2013). "If the answer to both inquiries is yes, then the probate exception precludes the federal district court from exercising diversity jurisdiction." *Id.*

**Memorandum Opinion and Order - Page 18**

Not surprisingly, the parties offer different interpretations of the probate exception and its application to the pending motions. While Respondents argue that the probate exception has no application, as all issues raised "relate to the [Settlement Agreement] and [Final Judgment] [and] therefore are subject to this Court's exclusive jurisdiction[,]" *see* Consolidated Reply 17 (Doc. 1878), Hill III asserts it applies, but only to certain issues. The court need not reach this question today because, as illustrated above by Mr. Myers's statement and the colloquy between the Probate Judge Court and Mr. Lippe, the issue of whether Hill Jr.'s exercise of powers of appointment in his Will was valid is pending before the Probate Court. Further, wile the court acknowledges its continuing jurisdiction over the implementation and enforcement of the Settlement Agreement and Final Judgment, it does not intend to engage in duplicative litigation, resulting in potentially conflicting rulings, or risk interfering with the Probate Court's jurisdiction.

In sum, Hill III's standing hinges on whether, following Hill Jr.'s death, he was a current beneficiary of the MHTE and HHTE, in which case the waiver of standing provision in the Final Judgment is not triggered. If the powers of appointment Hill Jr. exercised in his Will are valid, and the trusts at issue were lawfully dissolved during Hill Jr.'s lifetime, Hill III would not be a current beneficiary and, therefore, would lack standing under the Final Judgment. This dispute is pending in the Probate Court. Until the Probate Court resolves Hill III's request for declaratory relief as to whether Hill Jr. lacked the powers of appointment he sought to exercise in his Will, the court cannot determine whether Hill III waived his standing under section III(5)(b) of the Settlement Agreement and paragraph 28 of the Final Judgment.

**Memorandum Opinion and Order - Page 19**

### III.    Conclusion

For the reasons stated herein, the court **denies without prejudice as premature** the remaining relief sought in Washburne and Summers' Emergency Motion to Enforce the Final Judgment and Settlement Agreement, and Application for Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction (Doc. 1876); and **denies without prejudice as premature** Albert G. Hill, III's Emergency Application for Temporary Restraining Order and Injunctive Relief to Enforce Global Settlement Agreement and Final Judgment and for Preservation of Assets and Records (Doc. 1877).[8]

**It is so ordered** this 3rd day of July, 2018.

Sam A. Lindsay
United States District Judge

---

[8] Nothing in this decision should be construed by the parties as the court's endorsement of either side's version of the facts or interpretation of the relevant trust instruments.

**Memorandum Opinion and Order - Page 20**

APPX 0118

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **ALBERT G. HILL, III, individually and as a Beneficiary of the Margaret Hunt Trust Estate, derivatively on behalf of the Margaret Hunt Trust Estate, individually as a beneficiary of the Haroldson Lafayette Hunt, Jr. Estate, and derivatively of the Haroldson Lafayette Hunt, Jr. Estate,** | § § § § § § § § § § § | |
| v. | § § § | Civil Action No. **3:07-CV-2020-L** |
| **WILLIAM SCHILLING et al.,** | § § § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is the Grandchildren's Motion for Leave to File Their Motion to Enforce Final Judgment and Global Settlement Agreement and for Other Relief, Brief in Support, and Evidentiary Appendix in Support (Doc. 2003) ("Motion for Leave"), filed under seal on December 11, 2020. Having considered the Motion for Leave, response (Doc. 2008), reply (Doc. 2009), pleadings, record, and applicable law, the court **denies** the Motion for Leave.

## I. Factual Background and Procedural History

The Honorable Reed C. O'Connor issued a Final Judgment in this civil action on November 8, 2010. *See* Final J., Doc. 999. More than ten years later, on December 11, 2020, Albert G. Hill IV, Nance Hill, and Caroline Hill (collectively, the "Grandchildren" or "Movants"), filed their Motion for Leave under seal. Movants are not strangers to this litigation. They are the three children of Albert G. Hill, III ("Hill III") and Erin Nance Hill ("Erin Hill"), and the grandchildren

**Memorandum Opinion and Order – Page 1**

of Albert G. Hill, Jr. ("Hill Jr."). By their Motion for Leave, they seek to file their Motion to Enforce Final Judgment and Global Settlement Agreement and for Other Relief ("Motion to Enforce") in which they request that the court "find wrongful termination of the MHTE-Albert G. Hill, Jr. Trust and the HLHTE-Albert G. Hill, Jr. Trust ('Hill Jr. Trusts') and enter an order enforcing the Final Judgment and restoring the Hill Jr. Trusts and ordering all assets wrongfully distributed immediately returned." Mot. to Enforce ¶ 1, Doc. 2003-1. They also request imposition of a constructive trust over the "wrongfully distributed assets." *Id.* The Grandchildren contend that Hill Jr. (who passed away on December 2, 2017), "and others working in concert with him," have "wrongfully dissolved [the Hill Jr. Trusts] to extinguish the contractual rights of the Grandchildren of [Hill Jr.] whom this Honorable Court has long endeavored to protect." Brief in Support of Mot. to Enforce ¶¶ 1, 3, Doc. 2003-2. The Grandchildren allege that the following individuals participated in this breach of the Final Judgment: Hill Jr., now deceased; Heather Hill Washburne ("Washburne"); Elisa Hill Summers ("Summers"); Ivan Irwin, Jr. ("Irwin"), now deceased; Chester J. Donnally, Jr. ("Donnally"); and Thomas Tatham ("Tatham") (collectively, "Respondents"). The Grandchildren contend Respondents either "were directly involved or aided and abetted the wrongful dissolutions" of the Hill Jr. Trusts. *Id.* ¶ 4.

One day after the Grandchildren filed their Motion for Leave, on December 12, 2020, their parents—Hill III and Erin Hill—sought similar relief on behalf of themselves and the Grandchildren in a separately filed lawsuit against many of the same individuals. *See Hill III et al. v. Keliher et al.*, Civil Action No. 3:20-cv-3634-L (the "3634 Action"). Specifically, Hill III and Erin Hill, on behalf of themselves and the Grandchildren, alleged that, following Hill Jr.'s death, these same individuals and others breached duties owed to Hill III and Erin Hill (and, derivatively, the Grandchildren) by terminating and dissolving the Hill Jr. Trusts in 2016, rather than allowing

**Memorandum Opinion and Order – Page 2**

them to terminate twenty-one years after the deaths of their initial beneficiaries. *See generally* Pls.'
Compl., Doc. 1 in Civil Action No. 3:20-cv-3634-L.

On March 25, 2022, the court granted Defendants' motions to dismiss the Complaint in the
3634 Action under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), finding that Hill III
and Erin Hill, seeking relief on behalf of themselves and the Grandchildren, lacked standing to
challenge the dissolution of the Hill Jr. Trusts, that their claims had been settled and released in
the Final Judgment, and that Hill III and Erin Hill had taken positions, when it was to their benefit,
contrary to the positions they espoused in the 3634 Action, and they were, therefore, estopped
from bringing their current claims. *See* Mem. Op. & Order, Doc. 39 in Civil Action No. 3:20-cv-
3634-L.

The Grandchildren's Motion for Leave to file their Motion to Enforce—like their parents'
lawsuit in the 3634 Action and previous filings in this case—centers on the dissolution of the Hill
Jr. Trusts that are governed by the terms of the Margaret Hunt Trust Estate ("MHTE"); and (2) the
Haroldson L. Hunt, Jr. Trust Estate ("HHTE" or "HLHTE"), two trusts formed on December 28,
1935, by Lyda Bunker Hunt and her husband Haroldson Lafayette ("H.L.") Hunt, "the late Texas
oil baron reputed to be one of the world's richest men when he died in 1974." *Hill v. Washburne*,
953 F.3d 296, 300 (5th Cir. 2020) (citations omitted). An understanding of the formation of the
MHTE and HHTE, as well as the genesis of this lawsuit that began in 2007 and concluded when
Judge O'Connor entered a Final Judgment on November 8, 2010, is required to understand the
relief the Grandchildren seek and the court's ruling.

**A. The MHTE and HHTE**

The MHTE and HHTE are both governed by a document titled "Articles of Agreement and
Declaration of Trust" (the "1935 Trust Instruments"). The terms of the Trust Instrument for the

**Memorandum Opinion and Order – Page 3**

MHTE are the same as those of the HHTE except for the designation of, and reference to, the primary beneficiary of each trust. The primary beneficiary of the MHTE was Margaret Hunt Hill and the primary beneficiary of the HHTE was Haroldson L. Hunt, Jr. ("Hassie"). The 1935 Trust Instruments provide that "it is the desire and purpose of said H. L. Hunt and Lyda Hunt" to create an "irrevocable trust," and both provide, among other things, that during the lifetime of the beneficiary, only the annual income could be distributed to the beneficiary requiring that the corpus remain "intact and undisturbed" until twenty-one years after the death of the named beneficiary, at which time the trust would terminate and the corpus of the trust would be distributed to the beneficiary's descendants per stirpes. App. to Grandchilden's Brief in Supp. of Mot. to Enforce ("Grandchildren's App.") at 7-8 (Art. IV § 3 (MHTE)) and at 17 (Art. IV § 3 (HHTE)).

Article III, Section 3 of the 1935 Trust Instruments, however, contains language suggesting that a current MHTE and HHTE beneficiary has powers of appointment, as follows:

> At the time of the death of the Beneficiary, her [or his] equitable interest in said Trust Estate, *unless disposed of otherwise by said Beneficiary*, shall pass to and vest in her [or his] heirs in accordance with the laws of descent and distribution then in force, applicable to the equitable interest of such Beneficiary and said Trust Estate. (The term "Beneficiary" applies not only to [Margaret Hunt or Haroldson L. Hunt, based on the language of the specific trust] but to all her [or his] successors to beneficial interests under this Trust.)")
.

Grandchildren's App. at 7 (Art. III § 3 (MHTE)) and at 17 (Art. III § 3 (HHTE)) (emphasis added).

On April 20, 2005, Hassie died. In his will, Hassie exercised his general testamentary power of appointment in the HHTE in favor of "the lineal descendants of my sister Margaret Hunt Hill, per stirpes." Doc. 212-6; Doc. 203 at 4-5, § 2; Doc. 211 at 2-4, § II.A. After Hassie's death, therefore, his equitable interests in the HHTE passed in equal shares to Margaret Hunt Hill's three children (Hill Jr., Lyda Hill, and Alinda Hill Wikert), as they were Margaret Hunt Hill's lineal descendants on the date of Hassie's death. *See id.*

Memorandum Opinion and Order – Page 4

### B.  Hill Jr.'s 2005 Disclaimer

On March 22, 2005, Hill Jr. executed a disclaimer as to certain portions of the equitable interests he was to receive under the MHTE (the "2005 Disclaimer") in favor of his three children: Hill III, Washburne, and Summers. The effect of the 2005 Disclaimer is that Hill Jr.'s disclaimed interest passed to Hill III, Washburne, and Summers after Margaret Hunt Hill's death. Specifically, Hill Jr. disclaimed 75% of his one-third income interest in the MHTE, and 90% of his one-third termination interest in the MHTE (the "Disclaimed Beneficial Interests"). Doc. 879 at 39-40; Doc. 999-1 at 7-8.

### C.  This Lawsuit

On June 14, 2007, Margaret Hunt Hill died and her equitable interest in the MHTE passed in equal shares to her three children—Hill Jr., Lyda Hill, and Alinda Hill Wickert—subject to any disclaimers. Doc. 212-2 at 10, ¶ 18. In December 2007, Hill III brought a lawsuit in Texas state court in his individual capacity and on behalf of the MHTE and HHTE against specific beneficiaries of the MHTE and HHTE, including Hill Jr., Hill Jr.'s siblings, and the trustees and members of the advisory boards of the MHTE and HHTE. Among other things, Hill III alleged wrongdoing in the management and administration of the MHTE and HHTE by their respective trustees and violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C § 1961, et seq.  A primary focus of the lawsuit was Hill III's claim to be a current beneficiary of the MHTE pursuant to Hill Jr.'s 2005 Disclaimer. Following removal to federal court on December 3, 2007, the case was randomly assigned to Judge O'Connor.

#### 1.  The GSA

Ultimately, Hill III agreed to a settlement of the dispute. On May 13, 2010, the parties entered into the GSA (Doc. 879) that settled this action and related state court actions. *See*

Memorandum Opinion and Order – Page 5

*generally Hill v. Schilling*, 495 F. App'x 480, 482-83 (5th Cir. 2012) (describing genesis of the GSA). In the GSA, Hill III and Erin Hill (individually, as next friends for Movants, and on behalf of Movants, referred to as the "Grandchildren" in the GSA and in the Final Judgment)—agreed to a Waiver of Standing clause pursuant to which they agreed, among other things, to: (1) waive standing to assert any claim or cause of action relating to the trusts at issue in this case unless they were current beneficiaries; and (2) waive standing to assert any claim for actions taken or omitted at any time before they were a current beneficiary. Doc. 879 at 21, § III ¶ 5(b). In the GSA, the parties also stipulated that Hill Jr.'s 2005 Disclaimer was valid. As recently summarized by the Fifth Circuit:

> In exchange for a nine-figure payment and other benefits, Hill III agreed "not to contest the Last Will and Testament of Al Jr. or file any additional action, lawsuit, or legal proceeding challenging the disposition of his property" (the no-contest clause). The parties further "agree[d] that the remedy of specific performance and/or injunctive relief (whether mandatory or by restraint) shall be available for the breach of any term, condition, covenant, or warranty of" the settlement agreement. The parties consented to the district court's continuing jurisdiction over actions to enforce the settlement agreement.

*Hill v. Washburne*, 953 F.3d at 301.[1]

Judge O'Connor appointed a Guardian Ad Litem, Michael Hurst, to represent the Grandchildren's interests with respect to the GSA. *See* Doc. 880. He recommended the court approve the GSA and enter the Final Judgment subject to certain conditions.

---

[1] The Fifth Circuit also recognized in *Hill v. Washburne*, "After 'protracted [and] complicated' litigation, *Hill v. Schilling*, 593 F. App'x 330, 331 (5th Cir. 2014), squabbling over the trusts was supposedly ended by a settlement agreement confected in 2010. Yet, over the next four years, our court 'weighed in on the settlement' four times. *Id.* This appeal makes it five." *Hill v. Washburne*, 953 F.3d 296, 301 (5th Cir. 2020).

**Memorandum Opinion and Order – Page 6**

2. *The Final Judgment*

On November 8, 2010, Judge O'Connor issued the Final Judgment implementing and memorializing the parties' GSA, which he incorporated by reference into the Final Judgment. Doc. 999. In the Final Judgment, Judge O'Connor agreed with the Guardian Ad Litem that the GSA was in the Grandchildren's best interest and that the GSA and Final Judgment were fair, reasonable, and in the best interest of the parties, including the Grandchildren. Doc. 999 at 5-6, ¶ 4.

Consistent with the GSA, the Final Judgment declared Hill Jr.'s 2005 Disclaimer valid and partitioned portions of the MHTE and the HHTE, as to which Hill Jr. did not disclaim any of his equitable interests, into the Hill Jr. Trusts and, for Hill III's benefit, his one-third interest in the Disclaimed Beneficial Interests, because of the 2005 Disclaimer, were partitioned into the Hill III Trusts.[2] Doc. 999 at 6, ¶ 5; Doc. 999 at 12-13, ¶¶ 8.f.i and 8.f.ii; Doc. 999 at 20, ¶ 8.i; Doc. 999 at 22-23. ¶ 9.c.[3] The Final Judgment provided that all of these trusts (the "New Hunt Trusts") were governed by the 1935 Trust Instruments establishing the MHTE and HHTE. Doc. 999 at 24-25, ¶ 14.

The Final Judgment enforced the agreeing parties' Waiver of Standing provision, whereby each agreeing party, defined to include Hill III and Erin Hill (individually and as next friends for the Grandchildren and on behalf of the Grandchildren), agreed to waive any right to demand

---

[2] These trusts are (1) the MHTE – Albert G. Hill, III Trust, for the benefit of Hill III, and (2) the MHTE – Albert G. Hill Jr. Income Beneficiary / Al III Termination Beneficiary Trust, for the benefit of Hill Jr. during his lifetime and for the benefit of Hill III after Hill Jr.'s death and are referred to herein, collectively, as the "Hill III Trusts."

[3] The Final Judgment also partitioned portions of the MHTE and HHTE into separate trusts for Lyda Hill, who became the sole current beneficiary of separate one-third shares of each of the MHTE and HHTE trusts. Doc. 999 at 7-9, ¶¶ 8.a, 9.a.

**Memorandum Opinion and Order – Page 7**

information, seek accountings, or assert any claim or cause of action in connection with, any trust for the primary benefit of a descendent of Margaret Hunt Hill of which he or she was not a current beneficiary, and to waive any right to assert any claim for actions taken or omitted at any time before they were a current beneficiary:

**Waiver of Standing**

28. **IT IS ORDERED that**, pursuant to the Agreement, the Court finds that **during such time as an Agreeing Party is not a current beneficiary of a trust** for the primary benefit of a descendant of Margaret Hunt Hill ("MHH") (an "MHH Trust") and any other descendant of MHH is living, **such Agreeing Party has waived**: (1) his or her **status as an interested person** in such trust, **and (2) all rights that he or she may have** as a future or contingent beneficiary of such trust under the instrument establishing such MHH Trust, under applicable common law, or under applicable state law, **including but not limited to the right to demand information, seek an accounting, or assert any claim or cause of action in connection with any such trust**. . . . IT IS FURTHER ORDERED that, pursuant to the Agreement, the waivers by each Agreeing Party in this paragraph shall not apply to an MHH Trust during any period in which such Agreeing Party **is a current beneficiary** of that MHH Trust, although the waivers in this paragraph shall continue to apply to any actions taken or omitted by any other person or entity during the period that such Agreeing Party **was not a current beneficiary**. For purposes of this paragraph, "current beneficiary" means a person who, at the time a current beneficiary is determined, is then entitled to receive, or is then, in an exercise of discretion by the trustee of such trust, a possible recipient of, income or principal of such trust.

Doc. 999 at 35-36, ¶ 28 (emphasis added).

As the undersigned has held, per the Waiver of Standing clause, each of the parties "agreed to waive his or her standing and right to demand information, seek accountings, or assert any claim or cause of action in connection with any trust for the primary benefit of a descendant of Margaret Hunt Hill of which he or she was not a current beneficiary." Doc. 1883 at 6 (July 3, 2018 Memorandum Opinion and Order).

APPX 0126

As part of the Final Judgment, the court, incorporating the No Contest Clause from the GSA, ordered Hill III and Erin Hill (in all their capacities) and the Grandchildren not to contest Hill Jr.'s will or challenge the disposition of his property:

> IT IS ORDERED that Al III (in all capacities), Erin [Hill] (in all her capacities), the Grandchildren, and all of their descendants and heirs shall not contest the Last Will and Testament of Al Jr., or file any additional action, lawsuit, or legal proceeding challenging the disposition of Al Jr.'s property.

Doc. 999 at 36, ¶ 29.

Finally, consistent with the Settlement Agreement, Judge O'Connor retained continuing jurisdiction over the implementation and enforcement of the Final Judgment.[4] On October 2, 2013, this matter was reassigned to the undersigned following the recusal of Judge O'Connor (who had presided over the matter for approximately seven years), which was followed by the recusals of Judges Lynn, Solis, Godbey, Boyle, Fitzwater, and Kinkeade.

### D.  Hill Jr.'s Will and the Dissolution of the Hill Jr. Trusts

On December 20, 2014, Hill Jr. executed his Will, in which he exercised powers of appointment over the Hill Jr. Trusts in favor of the Al G. Hill, Jr. Charitable Lead Annuity Trust created under Article IV of The Al G. Hill, Jr. Family Trust. Doc. 1883 at 8 (July 3, 2018 Memorandum Opinion and Order). On or about December 13, 2016, the Trustees and the Advisory Board Members of the Hill Jr. Trusts voluntarily dissolved the Hill Jr. Trusts. Doc. 1883 at 9 (July 3, 2018 Memorandum Opinion and Order).

On December 2, 2017, Hill Jr. passed away. On December 7, 2017, an Application for Probate of Will and Issuance of Letters Testamentary was filed in the case styled *Estate of Albert*

---

[4] Hill III appealed the Final Judgment challenging, among other things, the addition of provisions that were not part of the GSA.  The Fifth Circuit affirmed the Final Judgment. *See Hill v. Schilling*, 495 F. App'x 480 (5th Cir. 2012) (consolidated appeal).

**Memorandum Opinion and Order – Page 9**

*Galatyn Hill, Jr.*, Deceased, in Cause No. PR-17-04117-2, Probate Court No. 2, Dallas County, Texas, seeking to admit the Will to probate, and to appoint an independent executor. "On December 22, 2017, Hill III entered the probate proceedings, challenging the terms of the will that appointed executors to [the Hill Jr. Trusts]." *Hill v. Washburne*, 953 F.3d at 302. On June 15, 2018, the Probate Court severed many of Hill III's claims into a separate proceeding styled Cause No. PR-18-02074-2. The severed claims are the same claims the Grandchildren assert in their Motion to Enforce, and the same as those raised in the 3634 Action, challenging whether Hill Jr. had the powers of appointment he exercised in his Will and whether the Trustees and Advisory Board members had the power to dissolve the trusts in 2016.

On May 29, 2018, Washburne and Summers filed a motion seeking to enjoin Hill III from (1) contesting the Will, (2) challenging the disposition of Hill Jr.'s property in violation of the No Contest Clause, and (3) violating the GSA and the Final Judgment by asserting claims concerning the Hill Jr. Trusts because he was not a current beneficiary. *See* Doc. 1876. Also, on May 29, 2018, Hill III filed his own motion to enforce the GSA and Final Judgment, contending that the Hill Jr. Trusts that were supposed to be preserved by the Final Judgment had been prematurely and unlawfully terminated by Hill Jr. and his cohorts, thereby destroying the valuable inheritance of Hill III and his descendants, from the H.L. Hunt family, estimated to be worth in excess of $1 billion. *See* Doc. 1877. Hill III challenged both Hill Jr.'s exercise of his powers of appointment in his Will in 2014 and the subsequent dissolution of the trusts in 2016. *Id.* Hill III sought an injunction to preserve the assets of the Hill Jr. Trusts and the Lyda Hill Trusts, and to prevent dissipation, concealment, and further transfer of such assets, and preservation of all records relating to such trusts and actions affecting them. *Id.*

**Memorandum Opinion and Order – Page 10**

On July 3, 2018, the court denied the requests for injunctive relief of both parties without prejudice, holding any relief would be "premature" because of the pending severed probate proceedings, in which the parties were litigating the same issues. Doc. 1883 at 2 (July 3, 2018 Memorandum Opinion and Order).

On September 12, 2018, Washburne and Summers filed another Emergency Motion to Enforce the Final Judgment and Settlement Agreement, and Application for Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction after Hill III took additional actions in the Probate Court challenging Hill Jr.'s Will and the disposition of his property. Doc. 1884. The court granted the motion (*see* Doc. 1919), and the Fifth Circuit affirmed. *Hill v. Washburne*, 953 F.3d at 310.

In November 2018, the parties filed competing summary judgment motions in Probate Court No. 2 regarding Hill Jr.'s Powers of Appointment. After the Probate Court had conducted hearings on those motions, Hill III nonsuited his claims without prejudice.

On December 11, 2020, the Grandchildren filed their Motion for Leave, once again seeking to assert the same claims as Hill III in the Probate Court and in this court based on the 2016 dissolution of the Hill Jr. Trusts. The next day, Hill III and Erin Hill filed the 3634 Action, on behalf of themselves and the Grandchildren, asserting many of the same claims made by the Grandchildren in their Motion for Leave.

## II. Analysis

In their Motion for Leave and attached Motion to Enforce, the Grandchildren argue that the Hill Jr. Trusts were "wrongful[ly] terminat[ed]," and they seek an order "restoring the Hill Jr. Trusts" and returning all assets wrongfully distributed to the Hill Jr. Trusts. Mot. to Enforce ¶ 1, Doc. 2003-1. They also seek the imposition of a constructive trust over the "wrongfully distributed

**Memorandum Opinion and Order – Page 11**

assets." *Id.* In addition, they request an accounting and damages for an alleged breach of fiduciary duty by Donnally and Tatham relating to The Single Fund Grandchildren's Trust. Brief in Support of Mot. to Enforce 22-23, Doc. 2003-2.

> In opposition, Respondents contend:

> (1) Movants have not argued or shown good cause why the Court should grant them leave to file their Motion to Enforce pursuant to this Court's Order (ECF 1789);

> (2) Movants are not "Current Beneficiaries" of the trusts at issue, and therefore, do not have standing under the [GSA] (ECF 879), or the Final Judgment (ECF 999), to assert any claims relating to the [Hill Jr. Trusts];

> (3) Movants improperly attempt to assert claims (i.e., a new lawsuit) against non-parties Donnally and Tatham in this closed civil action when neither of them are named as "Agreeing Parties" or "Additional Parties" in the GSA or the Final Judgment; and

> (4) Movants' Motion to Enforce is inappropriate because it is duplicative of Hill III's and Erin [Hill]'s claims in [the 3634 Action].

Resp. to Mot. for Leave 1, Doc. 2008. In their reply brief, the Grandchildren urge the court to reject Respondents' arguments. *See* Reply, Doc. 2009. For the reasons that follow, the court will deny the Grandchildren's Motion for Leave.

### A.  The Court's "Good Cause" Requirement

On November 2, 2017, the court issued an order stating: "Absent leave of court and good cause shown, no further filings are permitted in this civil action." Doc. 1789. In response to the Motion for Leave, Respondents contend that the Grandchildren have failed "to request leave to file their Motion to Enforce or to show good cause why the Court should grant the next generation of Hill III's family leave to file their Motion to Enforce and begin litigating in this 13-year-old closed civil action." Resp. to Mot. for Leave 8, Doc. 2008. In their reply brief, the Grandchildren maintain that Respondents' argument is "bizarre[,]" that the notion they did not seek leave is

**Memorandum Opinion and Order – Page 12**

"farcical," and that "[n]othing screams 'good cause' louder than a deliberate breach of the GSA, deliberate defiance of and violation of this Court's [Final Judgment], and the breach of fiduciary duties and trust by wrongfully terminating the MHTE-Al Hill Jr. Trust and HHTE-Al Hill Jr. Trust." Reply 2, Doc. 2009. According to the Grandchildren: "Respondents' inability to see 'good cause' staring them in the face does not mean it does not exist." *Id.* For the reasons that follow, the court agrees with Respondents and concludes that, although the Grandchildren filed a Motion for Leave, it does not comply with the letter or spirit of the court's November 2, 2017 Order.

First, in the Motion for Leave, the Grandchildren seek leave to file their "Motion, Brief, and Appendix, under seal, because the Brief, into which the Motion and the Appendix[] are incorporated, references and quotes from the documents that are filed with this Court under seal. Specifically, the Brief references . . . the [GSA] and the Court's Final Judgment." Motion for Leave ¶ 1. Based on this verbiage, the court finds the Motion for Leave is not responsive to the court's November 2, 2017 Order, issued to control the proliferation of filings in this closed case. Rather, it appears the Grandchildren are seeking leave of court only because they wish to file their documents under seal.

Second, the Motion for Leave fails to address the "good cause" requirement. The term "good cause" is not even mentioned in the Motion for Leave. The Grandchildren do not mention "good cause" until their reply brief, in which they colorfully assert that "[n]othing screams 'good cause' louder than a deliberate breach of the GSA," and that "Respondents' inability to see 'good cause' staring them in the face does not mean it does not exist." Reply 2, Doc. 2009. The Grandchildren's belief that "good cause" should be obvious, however sincerely held, is not the same as demonstrating "good cause" in an opening brief, as required by the court in its November 2, 2017 Order.

**Memorandum Opinion and Order – Page 13**

In addition, as the court has recognized, "Generally, arguments made for the first time in a reply are not appropriate for consideration." *Leeuw v. Kroger Texas, L.P.*, No. 3:19-CV-1771-L, 2021 WL 4295405, at *4 (N.D. Tex. Sept. 21, 2021) (citing *Perez v. Bruister*, 823 F.3d 250, 273 n.31 (5th Cir. 2016) ("This court will not consider arguments raised for the first time in a reply brief.")); *see also AAR, Inc. v. Nunez*, 408 F. App'x 828, 830 (5th Cir. 2011) ("Generally, and for obvious reasons, a reply brief is limited to addressing matters presented by appellant's opening brief and by appellee's response brief, and is not the appropriate vehicle for presenting new arguments or legal theories to the court.") (internal quotation marks and citation omitted).

For these reasons, the court concludes that the Grandchildren have failed to comply with its November 2, 2017 Order (Doc 1789), requiring any party seeking relief to file a motion for leave in which he or she shows good cause for filing yet another motion in this closed case. Because the Grandchildren failed to comply with this Order, and made no attempt to show good cause in their opening brief, the court **denies** the Motion for Leave.

## B.  Standing

Alternatively, even assuming the Grandchildren complied with the court's November 2, 2017 Order, the court denies their Motion for Leave because they have failed to satisfy the requirement of standing.

"Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id.* (citations omitted). "The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). "The party invoking

**Memorandum Opinion and Order – Page 14**

federal jurisdiction bears the burden of establishing" that he, she, or it has standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Constitutional standing is assessed at the time a plaintiff commences an action. *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 460 (5th Cir. 2005).

To satisfy the "irreducible constitutional minimum" of standing under Article III, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338 (quoting *Lujan*, 504 U.S. at 560).

To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. As the parties seeking relief, the Grandchildren have the burden of demonstrating they have standing to assert their claims, meaning they must establish they are current beneficiaries of the Hill Jr. Trusts. *See Singh v. RadioShack Corp.*, 882 F.3d 137, 150-51 (5th Cir. 2018) ("Under Article III of the Constitution, plaintiffs seeking redress in federal court have the burden of proving they have standing, meaning they are entitled to have the court decide the merits of the dispute or of particular issues.") (internal citations, footnotes, and quotation marks omitted).

Here, even assuming, *arguendo*, that Hill Jr. improperly exercised powers of appointment over the Hill Jr. Trusts in his Will and that the trusts were not dissolved in 2016, the Grandchildren would not be "current beneficiaries" of the Hill Jr. Trusts and, under Section III Paragraph 5(B) of the GSA (Doc. 879) and Paragraph 28 of the Final Judgment (Doc. 999), by definition, they would lack standing. This is because their father, Hill III, is still alive. As previously stated, *see supra* at 4, under the 1935 Trust Instruments,

**Memorandum Opinion and Order – Page 15**

> At the time of the death of the Beneficiary, her [or his] equitable interest in said Trust Estate, unless disposed of otherwise by said Beneficiary, shall pass to and vest in her [or his] heirs in accordance with the laws of descent and distribution then in force, applicable to the equitable interest of such Beneficiary and said Trust Estate. (The term "Beneficiary" applies not only to [Margaret Hunt or Haroldson L. Hunt, based on the language of the specific trust] but to all her [or his] successors to beneficial interests under this Trust.)")

Grandchildren's App. at 7 (Art. III § 3 (MHTE)) and at 17 (Art. III § 3 (HHTE)).

Thus, upon Hill Jr.'s death, under the laws of descent and distribution, Hill Jr.'s then-living children (Hill III, Washburne, and Summers) would have become the current beneficiaries of the Hill Jr. Trusts. Because Hill III is still living, the Grandchildren would not qualify as current beneficiaries and, therefore, would not have standing under the terms of the GSA and Final Judgment.

The court also rejects the Grandchildren's attempt to couch their challenge to the 2016 dissolution of the Hill Jr. Trusts as a violation of the GSA and the Final Judgment, rather than as a claim for a breach of the 1935 Trust Instruments. As previously explained, *see supra* at 7, Judge O'Connor in the Final Judgment expressly stated that the New Hunt Trusts, which includes the Hill Jr. Trusts, were governed by the 1935 Trust Instruments establishing the MHTE and HHTE. Doc. 999 at 24-25, ¶ 14. As with the 3634 Action and Hill Jr.'s claims in the Probate Court, this dispute is essentially a claim for breach of the 1935 Trust Instruments. The court does not read the GSA or Final Judgment as modifying the 1935 Trust Instruments.

For these reasons, in the alternative to denying the Motion for Leave for failure to show "good cause," the court denies the Motion for Leave because the Grandchildren have failed to establish they have standing to assert their challenge to the 2016 dissolution of the Hill Jr. Trusts. The court also agrees with Respondents that, as the Grandchildren's Motion for Leave is, in many key respects, duplicative of the 3634 Action filed by their parents, they should not be permitted to

**Memorandum Opinion and Order – Page 16**

waste scarce judicial resources and use the Motion for Leave as a backup plan, should their parents'

lawsuit fail, which it has. *See* Mem. Op. & Order, Doc. 39 in Civil Action No. 3:20-cv-3634-L

(dismissing with prejudice all claims by Hill III and Erin Hill, on their own behalf and on behalf

of the Grandchildren, challenging the dissolution of the Hill Jr. Trusts).[5]

### C. Potential Claims Relating to the Single Fund Grandchildren's Trust Against Donnally and Tatham

In their Motion to Enforce, the Grandchildren also seek an accounting and damages for an

alleged breach of fiduciary duty by Donnally and Tatham. The Single Fund Grandchildren's Trust,

also known as the "2010 GC Trust," is a stand-alone document created pursuant to the GSA and

the Final Judgment. Doc. 999 at 28-29, ¶ 20; Doc. 999-1 at Ex. 6 (trust agreement for the "2010

GC Trust"). Specifically, in the Final Judgment, Judge O'Connor ordered Hill III to set up a trust

for his children to receive certain consideration contemplated in the GSA and the Final Judgment.

Hill III created the trust, and Hill Jr. was the initial trustee. Doc. 999-1 at Ex. 6.

The Grandchildren contend that, following Hill Jr.'s death on December 2, 2017, there was

a vacancy in the office of Trustee and that Donnally and Tatham, the designated "appointers and

receivers," have failed to fill the vacancy. Brief in Support of Mot. to Enforce 22-23, Doc. 2003-

2. The Grandchildren assert they "have no idea who, if anyone, has been administering the 2010

GC Trust and what has happened to its assets." *Id.* at 23. They seek a full accounting and disclosure

---

[5] Although the Grandchildren are correct that the 3634 Action contained many claims not present in their Motion for Leave, the common theme of the 3634 Action and the Motion for Leave is that the court declare and find wrongful termination/dissolution of the MHTE-Albert G. Hill, Jr. Trust and the HLHTE-Albert G. Hill, Jr. Trust and enter an order enforcing the Final Judgment and restoring the Hill Jr. Trusts and ordering all assets wrongfully distributed immediately returned. For the reasons set forth by the court in its memorandum opinion and order dismissing the 3634 Action, *see* Doc. 39 in Civil Action No. 3:20-cv-3634-L, the Grandchildren's claims pertaining to the alleged wrongful termination/dissolution of the Hill Jr. Trusts also fail. Accordingly, on this basis, as well as those previously noted, the Grandchildren cannot establish good cause to file their Motion for Leave.

**Memorandum Opinion and Order – Page 17**

of all transactions and contend that Donnally's and Tatham's failure to appoint a successor trustee is a breach of their fiduciary duty owed to them and "has exposed the trust assets to a substantial risk of loss." *Id.* They request that the court

> order an accounting in relation to the 2010 GC Trust, award damages for breach of fiduciary duty against Donnally and Tatham for failing to fill the vacancy in the office of the 2010 GC Trust and for all losses incurred and, if the "removers and appointers" will not do their job, appoint a new trustee to fill that vacancy and serve in that capacity.

*Id.*

In opposition, Respondents contend that Donnally and Tatham are not parties to this lawsuit, or "Agreeing Parties" or "Additional Parties" in the GSA or Final Judgment. Resp. to Mot. for Leave 12, Doc. 2008. They maintain that the Grandchildren are attempting to assert a new lawsuit against Donnally and Tatham within this civil action. *Id.*

The court has reviewed the docket sheet in this civil action. Donnally is listed on the docket sheet as a "Trustee." Tatham is not listed on the docket sheet in any capacity. As the Grandchildren correctly point out in their reply brief, however, Donnally and Tatham have filed numerous pleadings in the matter following entry of the Final Judgment. Reply 7, Doc. 2009 and notes 13 and 14. In their reply brief, the Grandchildren also suggest that, in the event the court finds this case to be closed to future filings and that the Grandchildren should not be permitted to pursue their claims against Donnally and Tatham in this action, the court should sever their claims against Donnally and Tatham into a new cause. *Id.* at 9.

The court agrees with the Grandchildren that "An integral part of the GSA and [Final Judgment] was the establishment of the 2010 GC Trust, and Donnally and Tatham accepted their position as 'Appointers and Removers' of the Trustee of the 2010 GC Trust." *See id.* at 7. If, as the Grandchildren contend, Donnally and Tatham have left the position of Trustee vacant for

**Memorandum Opinion and Order – Page 18**

several years, an inquiry is in order as to the time period the 2010 GC Trust has been without a Trustee and into whether Donnally and Tatham breached their fiduciary duties by failing to appoint a Trustee under the standard required by the Final Judgment.

Given that sixteen months have passed since the Grandchildren filed their Motion for Leave, the court has concerns that the matters presented with regard to the administration of the 2010 GC Trust may be moot. Accordingly, the court will deny the Grandchildren's requested relief without prejudice. Should the Grandchildren wish to pursue their claims against Donnally and Tatham arising from their respective positions as "Appointers and Removers" of the Trustee of the 2010 GC Trust, they must show that both Donnally and Tatham are parties to this lawsuit and that any purported claims are ripe for consideration.

## III.    Conclusion

Based on the foregoing, the court **denies** the Grandchildren's Motion for Leave to File Their Motion to Enforce Final Judgment and Global Settlement Agreement and for Other Relief (Doc. 2003). Specifically, insofar as the Grandchildren seek to challenge the 2016 dissolution of the Hill Jr. Trusts following the death of Hill Jr. and request the imposition of a constructive trust on the wrongfully distributed assets, the court **denies** the Motion for Leave **with prejudice**. Insofar as the Grandchildren seek an accounting and damages for an alleged breach of fiduciary duty by Donnally and Tatham, the court **denies** the Motion for Leave **without prejudice**.

**It is so ordered** this 13th day of April, 2022.

_Sam A. Lindsay_
Sam A. Lindsay
United States District Judge

**Memorandum Opinion and Order – Page 19**

APPX 0137