# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **ALBERT G. HILL III,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:07-CV-02020-L** |
| | § | |
| **WILLIAM SCHILLING,** *et al.,* | § | |
| *Defendants.* | § | |

## CAROLINE M. HILL'S RESPONSE AND SUPPORTING BRIEF IN OPPOSITION TO MOVANTS' MOTION TO ENFORCE FINAL JUDGMENT AND SETTLEMENT AGREEMENT AND APPLICATION FOR TEMPORARY RESTRAINING ORDER, <u>PRELIMINARY INJUNCTION AND PERMANENT INJUNCTION</u>

**BREWER, ATTORNEYS & COUNSELORS**

William A. Brewer III
State Bar No. 02967035
wab@brewerattorneys.com
Joshua H. Harris
State Bar No. 24127306
jharris@brewerattorneys.com
Jordon B.V. Smith
State Bar No. 24143774
jks@brewerattorneys.com
Amir I. Saada
State Bar No. 24149742
ais@brewerattorneys.com
1717 Main Street, Suite 5900
Dallas, Texas 75201
Telephone: (214) 653-4000
Facsimile: (214) 653-1015

**ATTORNEYS FOR CAROLINE M. HILL**

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ................................................................................. 1

II.   STATEMENT OF FACTS ...................................................................................... 2

III.  SUMMARY OF THE ARGUMENT ......................................................................... 5

IV.   ARGUMENT AND AUTHORITIES ........................................................................ 6

    A.    THE MOTION TO ENFORCE MUST BE DENIED BECAUSE THE COURT DID NOT RETAIN JURISDICTION OVER THE LYDA TRUST................................ 6

    B.    THE FEDERAL ANTI-INJUNCTION ACT PRECLUDES MOVANTS FROM OBTAINING THE REQUESTED RELIEF..................................................................11

        1.    Movants' Requested Relief is Not Expressly Authorized by an Act of Congress.. 12

        2.    Movants' Requested Relief is Not Necessary to Aid the Court in its Jurisdiction. 12

        3.    Movants' Requested Relief is Not Necessary to Protect or Effectuate the Court's Judgment. ......................................................................................................... 13

    C.    THE ABSTENTION DOCTRINE BARS MOVANTS' REQUESTED RELIEF.. 14

    D.    THE PROBATE EXCEPTION INDEPENDENTLY BARS MOVANTS' REQUESTS. ......................................................................................................... 16

    E.    THE REQUESTS FOR TRO, PRELIMINARY INJUNCTION, AND PERMANENT INJUNCTION MUST BE DENIED. ...................................................... 17

        1.    No likelihood of success on the merits. ................................................................ 18

        2.    No irreparable harm. ........................................................................................... 18

        3.    The balance of equities favors Ms. Hill. ............................................................. 19

        4.    The public interest weighs heavily against injunctive relief. ............................... 19

        5.    TRO relief is equally inappropriate. .................................................................... 19

        6.    Permanent injunction relief is categorically unavailable. .................................... 20

V.    REQUEST FOR RELIEF ........................................................................................ 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aerojet-Gen. Corp. v. Askew*,
  511 F.2d 710 (5th Cir. 1975) ..................................................................................................8

*Ashton v. Josephine Bay Paul & C. Michael Paul Found., Inc.*,
  918 F.2d 1065 (2d Cir. 1990)................................................................................................15

*Atlantic Coast Line R.R. v. Bhd. Of Locomotive Eng'rs*,
  398 U.S. 281 (1970)...............................................................................................................16

*Bob Jones Univ. v. Simon*,
  416 U.S. 725 (1974)...............................................................................................................10

*Canal Auth. v. Callaway*,
  489 F.2d 567 (5th Cir. 1974) ................................................................................................16

*Carpenter v. Providence Washington Ins. Co.*,
  45 U.S. 185 (1846).................................................................................................................9

*Christianson v. Colt Indus. Operating Corp.*,
  486 U.S. 800 (1988)...............................................................................................................6

*Clark v. Prichard*,
  812 F.2d 991 (5th Cir. 1987) ................................................................................................16

*Curtis v. Brunsting*,
  704 F.3d 406 (5th Cir. 2013) ................................................................................................15

*Dresser-Rand Co. v. Virtual Automation Inc.*,
  361 F.3d 831 (5th Cir. 2004) ................................................................................................18

*Freedom Path, Inc. v. Lerner*,
  No. 3:14-CV-1537-D, 2015 WL 770254 (N.D. Tex. Feb. 24, 2015) .....................................10

*Hawaii Hous. Auth. v. Midkiff*,
  467 U.S. 229 (1984)...............................................................................................................13

*Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*,
  456 U.S. 694 (1982)...............................................................................................................6

*Jiao v. Xu*,
  28 F.4th 591 (5th Cir. 2022) .................................................................................................17

*Klay v. United Healthgroup, Inc.*,
  376 F.3d 1092 (11th Cir. 2004) ..............................................................................12

*Kokkonen v. Guardian Life Insurance Co. of America*,
  511 U.S. 375 (1994).............................................................................................5, 6

*Marshall v. Marshall*,
  547 U.S. 293 (2006).............................................................................................15

*McCall-Bey v. Frazen*,
  777 F.2d 1178 (7th Cir. 1985) ..............................................................................6

*Middlesex Cnty. Ethics Comm. V. Garden State Bar Ass'n*,
  457 U.S. 423 (1982)..........................................................................................13, 14

*Mitchum v. Foster*,
  407 U.S. 225 (1972).............................................................................................10

*New York Life Ins. Co. v. Gillispie*,
  203 F.3d 384 (5th Cir. 2000) ..............................................................................12, 13

*Provost v. Unger*,
  949 F.2d 161 (5th Cir. 1991) ................................................................................8

*State of Tex. v. Untied States*,
  837 F.2d 184 (5th Cir. 1988) ...............................................................................11

*Vendo Co. v. Lektro-Vend Corp.*,
  433 U.S. 623 (1977)..........................................................................................11, 12

*Younger v. Harris*,
  401 U.S. 37 (1971).............................................................................................13, 14

**Statutes**

28 U.S.C. § 1331.................................................................................................5, 6

28 U.S.C. § 2283...........................................................................................10, 11, 12

CODE § 32.001 ...................................................................................................14

CODE § 32.001(a).................................................................................................14

**Other Authorities**

Fed. R. Civ. P. 65(b) ............................................................................................18

Rule 65 ...................................................................................................... *passim*

## I.    PRELIMINARY STATEMENT

Movants ask this Court to do something extraordinary for a transparent reason: to avoid answering legitimate questions in probate court. In the Dallas County Probate Court, Ms. Hill is asking straightforward questions—what happened to the Lyda Hunt–Margaret Trust (the "**Lyda Trust**"), why were its assets transferred, and why was it dissolved.

Rather than answer those basic questions or defend their conduct in probate proceedings, Movants seek federal intervention to restrain a state matter involving a trust that was never before this Court. That effort mischaracterizes both the Settlement Agreement and the Final Judgment entered in this action. This Court never supervised the Lyda Trust, never adjudicated rights under it, and never entered any order depriving Ms. Hill—then a minor child—of her ability to seek relief in probate court. The Lyda Trust was not mentioned in the Settlement Agreement, not incorporated into the Final Judgment, and not among the trusts over which this Court retained limited post-judgment jurisdiction.

What Movants seek now is not enforcement of a federal judgment, but insulation from probate scrutiny. Accordingly, the Motion must be denied for three independent reasons. *First*, this Court lacks subject-matter jurisdiction, which it acknowledged in 2018, because the Lyda Trust was never part of the settlement, the Final Judgment, or the 1935 trusts derived from the instruments at issue in this case. *Second*, the Anti-Injunction Act categorically bars the relief Movants seek, as none of its narrow exceptions applies. *Third*, even if jurisdiction otherwise existed, well-established principles of abstention—including the probate exception—prohibit federal interference with an ongoing Texas probate proceeding. Because Movants cannot satisfy any of the mandatory requirements for injunctive relief under Rule 65, and because federal law forbids the relief they seek, the Motion should be denied in its entirety.

## II.    STATEMENT OF FACTS

The case arose out of litigation between Caroline Hill's father and grandfather concerning the administration of two *inter vivos* trusts created in 1935. At the time of that litigation and settlement, Caroline Hill was a minor child. The testamentary trust at issue here—the Lyda Trust— has been found to be outside of this Court's jurisdiction in this case.

The disputes resolved in this action concerned only the Margaret Hunt Trust Estate ("**MHTE**") and Haroldson L. Hunt, Jr. Trust Estate ("**HHTE**").[1] Those disputes arose out of litigation between Albert G. Hill III and his father concerning the administration and partitioning of those two trusts. The Court's Final Judgment in November 2010 incorporated the Settlement Agreement, created subtrusts, and included a Waiver of Standing clause.[2] The Court has confirmed that these instruments apply only to the MHTE and HHTE, not to unrelated testamentary trusts such as the Lyda Trust.[3] At no point did this Court purport to adjudicate, supervise, or restrict the rights of Ms. Hill—then a minor child—with respect to any separate testamentary trust governed by Texas probate law.

Section 5(b) of the Agreement, provides, as follows,

> During such time as an Agreeing Party is not a current beneficiary of trust for the primary benefit of a descendant of MHH (an "MHH Trust") and any other descendant of MHH is living, such Agreeing Party hereby waives (1) his or her status as an interested person in such trust and (2) all rights that he or she may have as a future or contingent beneficiary of such Trust under the instrument establishing such MHH Trust, under applicable common law, or under applicable state law, including but not limited to the right to demand information, seek an accounting or assert any claim or cause of action in connection with any such trust. Each Agreeing Party further agrees that the waivers in this subparagraph shall not apply to an MHH Trust during any period in which he or she is a current beneficiary of that MHH Trust, although the waivers in this

---

[1] *See* ECF 999.
[2] *See* ECF 999, at pp. 35-36.
[3] *See* App. at 57–58.

subparagraph shall continue to apply to any actions taken or omitted by any other person or entity during the period that he or she was not a current beneficiary. For purposes of this paragraph, "current beneficiary" means a person who, at the time a current beneficiary is determined, is then entitled to receive, or is then, in an exercise of discretion by the trustee of such trust, a possible recipient of, income or principal of such trust.[4]

Based on the language of section 5(b), it does not apply to the Lyda Trust that is the subject of the Dallas Probate Action.[5] Moreover, nothing in section 5(b) purports to bar a beneficiary—much less a minor child—from later seeking relief in Texas probate court concerning a separate testamentary trust.

This interpretation of section 5(b) of the Agreement is consistent with the terms of paragraph 28 of the Final Judgment, which state as follows:

> IT IS ORDERED that, pursuant to the Agreement, the Court finds that *during such time as an Agreeing Party is not a current beneficiary of a trust* for the primary benefit of a descendant of Margaret Hunt Hill ("MHH") and any other descendant of MHH is living, such agreeing Party has waived: (1) his or her status as an interested person in such trust, and (2) all rights that he or she may have as a future or contingent beneficiary of such trust under the instrument establishing such MHH Trust, under applicable common law, or under applicable state law, including but not limited to the right to demand information, seek an accounting, or assert any claim or cause of action in connection with any such trust.[6]

The Court's retention of jurisdiction in the Final Judgment is limited to enforcing and implementing that specific decree and the Settlement Agreement and the terms of the Final

---

[4] *See* ECF 879, at p.21.
[5] *See* ECF 879, at p.21.
[6] *See* ECF 879, at pp. 35-36.

Judgment.[7] The provision in which the Court retains jurisdiction is narrow and authorizes oversight of the 1935 *inter vivos* trusts—nothing more.[8]

On July 3, 2018, the Court was clear in establishing that the Settlement Agreement and Final Judgment "only modified the MHTE and HHTE."[9] Moreover, that "[w]*ith respect to any Hunt/Hill family trust other than the MHTE and HHTE, therefore, this court does not have continuing jurisdiction, and issues pertaining to those family trusts* [(*i.e.*, Lyda Trust)] *are not properly before this court.*" Finally, the Court declined to expand its continuing jurisdiction (as requested here) beyond enforcing the Settlement Agreement and Final Judgment.[10] The Court's ruling necessarily recognized that claims involving other trusts—including testamentary trusts created under separate instruments—belong in the appropriate state probate forum.

On September 5, 2025, Caroline Hill filed a petition in Probate Court No. 2 of Dallas County seeking an accounting in connection with the Lyda Trust and alleging fiduciary breaches between 2014–2016.[11] She invoked provisions of the Texas Property Code entitling beneficiaries to information and relief against trustees. On December 28, 2016, the trustees executed a "Record of Trust Termination," dissolving the Lyda Trust one year before Hill Jr. died in December 2017.[12] The questions raised in that petition could have been answered in probate court through routine fiduciary disclosures; instead, Movants chose to seek extraordinary federal intervention. Movants filed here: first, a Motion for Leave to file under seal; second, a Motion for Leave to file a Motion to Enforce the Settlement Agreement and Final Judgment against Caroline;

---

[7] *See* ECF 999, at p. 43.
[8] *See* ECF 999, at p. 43.
[9] App. at 57–58.
[10] *See* App. at 58.
[11] *See* App. at 105–122.
[12] *See* App. at 114.

third, a request for TRO, preliminary injunction, and permanent injunction and; fourth, Movants filed this Motion to Enforce.

### III.    SUMMARY OF THE ARGUMENT

Movants' Motion to Enforce is not a good-faith effort to implement a federal judgment. It is an attempt to avoid answering basic fiduciary questions properly raised in Texas probate court. Rather than defend their conduct in the forum charged with supervising trusts, Movants seek to use this Court's prior settlement as a shield against scrutiny that settlement never contemplated. First, the Motion to Enforce must be denied because this Court lacks subject-matter jurisdiction. The Court's limited retention of jurisdiction in the Final Judgment authorizes only enforcement of the Settlement Agreement as written and does not extend to the Lyda Hunt–Margaret Trust, a separate trust that was never litigated, mentioned, or incorporated into the Settlement Agreement or Final Judgment. Movants' attempt to stretch the Waiver of Standing provision to reach the Lyda Trust contradicts the plain language of the agreement, produces absurd results under Texas law, and conflicts with this Court's prior rulings expressly limiting its continuing jurisdiction to the MHTE and HHTE—not the Lyda Trust. Notwithstanding the former, Movants' requested relief is precluded under both statutory and doctrinal bars. The Anti-Injunction Act, federal abstention principles, and the probate exception each independently prohibit this Court from enjoining a pending Texas probate proceeding addressing state-law fiduciary duties. Finally, Movants cannot satisfy any of the mandatory requirements for injunctive relief under Rule 65, as they identify no irreparable harm, no likelihood of success on the merits, and no public interest favoring federal interference in state probate action.

## IV.   ARGUMENT AND AUTHORITIES[13]

### A.   THE MOTION TO ENFORCE MUST BE DENIED BECAUSE THE COURT DID NOT RETAIN JURISDICTION OVER THE LYDA TRUST.

The Motion to Enforce must be denied because the Court does not have jurisdiction over Ms. Hill's claims under the Lyda Trust that are pending in the State Probate Case. In short, federal jurisdiction existed in this action solely because of a federal law claim asserted by Plaintiff Al Hill III. The federal law claim was dismissed with prejudice as a result of the Settlement Agreement and Final Judgment. Now, the Court has no independent jurisdiction over the Lyda Trust. Accordingly, the Motion To Enforce fails as a matter of law.

In *Kokkonen v. Guardian Life Insurance Co. of America*[14], the United States Supreme Court held that enforcement of a settlement agreement is not a mere continuation of the underlying suit, but instead requires its own independent basis for federal jurisdiction.[15] Here, federal jurisdiction existed solely under 28 U.S.C. § 1331 according to Defendants based on Plaintiff's assertion of a federal RICO claim.[16] The Court did not have diversity jurisdiction before settlement and does not have it now.[17] In the Final Judgment, the Court expressly dismissed with prejudice "all claims, causes of action, counterclaims, crossclaims, and any other relief asserted or that could have been asserted," including the RICO claim—the only claim supporting federal question jurisdiction.[18] Once that claim was dismissed, no federal jurisdiction remained, and the Court could not "retain"

---

[13] Ms. Hill incorporates by reference pages 3 through 5 of her Response in Opposition to Movants' Motion for Leave to File Motion to Enforce Final Judgment and Settlement Agreement and Application for Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction, filed December 23, 2025 (Dkt. 2054), at 3–5.

[14] 511 U.S. 375 (1994).

[15] *See id.* at 378.

[16] *See* App. at 121.

[17] *See* App. at 121.

[18] App. at 39.

jurisdiction it no longer possessed. Courts have consistently recognized that where jurisdiction was premised solely on a federal question, dismissal of that claim eliminates any independent basis to enforce a settlement agreement. [19]

Federal courts are courts of limited jurisdiction and may not expand their authority in the interest of justice or by agreement of the parties.[20] As the Supreme Court has made clear, jurisdiction cannot be conferred by consent.[21] Although *Kokkonen* noted in *dicta* that incorporation of a settlement agreement into a judgment may, in some circumstances, support limited enforcement jurisdiction, that principle does not apply here. [22] This Court exercised only federal-question jurisdiction under § 1331, and that jurisdiction was extinguished when all claims—including the RICO claim—were dismissed with prejudice. The Supreme Court has since reaffirmed that when federal claims are dismissed, a federal court loses subject-matter jurisdiction over the action.[23]  Accordingly, the dismissal of all claims in this case eliminated the Court's jurisdiction, leaving nothing to retain and no jurisdiction to enforce the Settlement Agreement.

In Paragraph 45 of the Final Judgment, the Court retained jurisdiction to hear and resolve certain limited issues:

> IT IS ORDERED THAT, without affecting the finality of this Final Judgment, the Court hereby retains continuing jurisdiction over the implementation of the Agreement, the Final Judgment, the Parties for purposes of implementing and enforcing the Agreement and this

---

[19] *See McCall-Bey v. Fraze*n, 777 F.2d 1178, 1187 (7th Cir. 1985) (a federal court does not have automatic federal-question jurisdiction to enforce a settlement agreement merely because the underlying action arose under federal law).

[20] *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988).

[21] *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) ("[N]o action of the parties can confer subject matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant . . ..").

[22] *See* 511 U.S. at 381.

[23] *See McCall-Bey v. Fraze*n, 777 F.2d 1178, 1187 (7th Cir. 1985) (a federal court does not have automatic federal-question jurisdiction to enforce a settlement agreement merely because the underlying action arose under federal law).

Final Judgment. IT IS FURTHER ORDERED that any controversy or claim arising after the date of execution of the Agreement and arising out of the Agreement or the Documentation shall be resolved by this Court. Each of the Agreeing Parties agrees and covenants not to and IT IS ORDERED that none of the Agreement Parties shall, file or assert any of the released Claims (in law or in equity).[24]

Based on the plain language of the Final Judgment, the Court retained jurisdiction "over the implementation of the [Settlement] Agreement, the Final Judgment, and the Parties for purposes of implementing and enforcing the [Settlement] Agreement and this Final Judgment, and nothing more."[25] Accordingly, the plain language of the Final Judgment demonstrates that this Court did not retain jurisdiction over the State Probate Action.

Movants erroneously contend that the State Probate Case is subject to section 5(b) based on the language:

> (b) Waiver of Standing: During such time as an agreeing party is not a current beneficiary of a trust for the primary benefit of a decedent of MHH (an "MHH Trust") . . .."[26]

The fundamental and obvious flaw in Movants' argument is that the Lyda Trust is not a trust within the meaning of section 5(b). [27] Based on the plain language of section 5(b), it does not apply to the Lyda Trust.[28] The Lyda Trust is not mentioned in any section of the Settlement Agreement.[29] The Lyda Trust is not mentioned in section 28 or any other provision of the Final Judgment.[30] Indeed, the Lyda Trust was not mentioned in this action until Movants filed their Motion For Leave.[31]

This conclusion is consistent with this Court's prior decision in which it stated that:

---

[24] ECF 999, at p.43.
[25] ECF 999, at p.43.
[26] ECF 879, at p.21.
[27] *See* ECF 879, at p.21.
[28] *See* ECF 879, at p. 21.
[29] *See* ECF 879.
[30] *See* ECF 999.
[31] *See* Dkt. 1–2040.

> As a threshold matter, the court notes that Settlement Agreement and Final Judgment only modified the MHTE and HHTE. In the Final Judgment, Judge O'Connor retained "continuing jurisdiction over the implementation of the [Settlement] Agreement, the Final Judgment, and the parties for purposes of implementing and enforcing the [Settlement] Agreement and this Final Judgment." He Further ordered that "any controversy or claim arising after the date of execution of the [Settlement] Agreement and arising out of the [Settlement] Agreement or the Documentation shall be resolved by this Court." With respect to any Hunt/Hill family trusts other than the MHTE and HHTE, therefore, this court does not have continuing jurisdiction, and issues pertaining to those family trusts are not properly before this court. The court declines to expand its continuing jurisdiction beyond the implementation and enforcement of the Settlement Agreement and the Final Judgement.[32]

A couple of hypothetical examples help demonstrate the fundamental problems with Movants' interpretation of section 5(b) of the Settlement Agreement. Under Movants' interpretation, section 5(b) would apply if Ms. Hill's father created a trust from lottery winnings with Caroline as the primary beneficiary and her two brothers as contingent beneficiaries. Accordingly, Movants' position must be rejected because it would create an absurd result.[33] Similarly, if Ms. Hill created a trust from lottery winnings for her children, section 5(b) would apply to that trust. Once again, this absurdity demonstrates the fallacy in Movants' position.

This conclusion is consistent with the Court's prior orders. For example, in 2018, the Court squarely stated: "As a threshold matter, the court notes that the Settlement Agreement and Final Judgment only modified the MHTE and HHTE. With respect to any Hunt/Hill family trusts other than the MHTE and HHTE, therefore, the Court does not have continuing jurisdiction, and issues

---

[32] App. at 57.

[33] *Aerojet-Gen. Corp. v. Askew*, 511 F.2d 710, 722 (5th Cir. 1975) (stating that "[i]t is elementary contract law, however, that a contract should not be construed to yield absurd results"); *Provost v. Unger*, 949 F.2d 161, 165 (5th Cir. 1991) (stating that"[t]his result would be absurd, and we interpret contracts to avoid absurd results").

pertaining to those family trusts are not properly before this court."[34] That pronouncement is binding. The Lyda Trust was never one of the trusts modified by the Settlement Agreement or Final Judgment, and the Court's continuing jurisdiction does not extend to it.

The Settlement Agreement itself confirms this limitation.[35] The only trusts at issue were the 1935 MHTE and HHTE. To suggest otherwise is to rewrite the bargain struck by the parties and approved by the Court fifteen years ago. Movants' entire theory rests on the Waiver of Standing clauses in the Settlement Agreement and Final Judgment. But the waiver provisions Movants invoke were never a sweeping surrender of rights to challenge fiduciary misconduct in unrelated trusts.[36] It was a carefully negotiated term tied to the trusts actually in dispute in the 2010 litigation—the MHTE and HHTE. Because the Lyda Trust was not included in the Settlement Agreement or the Final Judgment, any motion purporting to enforce those orders against the Lyda Trust must be rejected.

Indeed, the waiver sought to be enforced cannot be divorced from its defined scope. The relief Movants seek would not be enforcement of a settlement at all; instead, it would be the Court repudiating its own prior ruling and expanding the settlement to cover trusts and claims that the parties never intended to include. That is an impermissible use of this Court's equitable power.[37] Enforcement means holding parties to the terms they agreed to, not enlarging those terms to shield trustees from accountability.

---

[34] App. at 57.

[35] *See* ECF 879.

[36] *See* ECF 879, at p.21.

[37] *Carpenter v. Providence Washington Ins. Co.*, 45 U.S. 185, 205 (1846) (stating that "[t]he court will no more vary the contract on the equity side than on the law side, nor give it an interpretation different from the plain import of the words, when the words are free from ambiguity and doubt. That would be to make a new contract,—a power which a court of equity never assumes.").

For all these reasons, the Motion to Enforce must be denied.[38]

**B.**     <u>**THE FEDERAL ANTI-INJUNCTION ACT PRECLUDES MOVANTS FROM OBTAINING THE REQUESTED RELIEF.**</u>

This Court has previously enforced the Settlement Agreement and Final Judgment through injunctive relief where a party sought to relitigate matters expressly resolved by that judgment, including a will contest barred by the No Contest Clause.[39] That circumstance is not present here. Ms. Hill's probate action does not seek to relitigate any issue adjudicated by this Court, does not implicate the No Contest Clause, and does not threaten the Court's jurisdiction over the MHTE or HHTE. Accordingly, none of the Anti-Injunction Act's narrow exceptions applies.

The Anti-Injunction Act (the "**Act**") prohibits "[a] court of the United States" from granting "an injunction to stay proceedings in a State court[.]"[40] The Act is broadly construed.[41] Indeed, this Court has noted that "[t]he Supreme Court has given the Anti-Injunction Act almost literal effect."[42] As the United States Supreme Court has noted, the Act "goes back almost to the beginnings of our history as a Nation,"[43] and its basic purpose is to avert "needless friction between state and federal courts."[44] The relief that Movants seek—enjoining a pending state court

---

[38] As demonstrated above, at best for Movants, section 5(b) is ambiguous. Based on the fact that Movants have the burden of proof on their Motion, the Motions should be denied based on this ambiguity.  However, if the Court decides to resolve the ambiguity, Ms. Hill is entitled to an evidentiary hearing and certain narrow and focused discovery. For example, Ms. Hill will request drafts of the Settlement Agreement and Final Judgment.

[39] *See* Dkt. 1919 at 10–16.

[40] 28 U.S.C. § 2283.

[41] *See, e.g., Freedom Path, Inc. v. Lerner*, No. 3:14-CV-1537-D, 2015 WL 770254, at *9 (N.D. Tex. Feb. 24, 2015); *see also Bob Jones Univ. v. Simon*, 416 U.S. 725, 737 (1974).

[42] *See Freedom Path*, 2015 WL 770254, at *9.

[43] *Mitchum v. Foster*, 407 U.S. 225, 231 (1972).

[44] *See id.* at 233.

proceeding—falls within the plain language of the Anti-Injunction Act, and does not satisfy any of the three narrow exceptions.[45]

The Act contains three limited and narrow exceptions.[46] Those exceptions only apply when the injunction is (1) expressly authorized by an Act of Congress; (2) necessary to aid a federal court in its jurisdiction; or (3) necessary to protect or effectuate the federal court's judgments.[47]

### 1.    Movants' Requested Relief is Not Expressly Authorized by an Act of Congress.

The first exception to the Act requires that the requested relief is expressly authorized by an Act of Congress.[48] Movants have not and cannot point to a single federal law to establish that their request for relief is *expressly authorized*. In the State Probate Action, Ms. Hill seeks relief that is governed exclusively by Texas law—not federal law.[49] Based on Movants failure to point to a federal act that "by its very essence contemplate[s] or envision[s] any necessary interaction with state judicial proceedings," the Motion to Enforce must be denied because it is not expressly authorized by federal law.[50]

### 2.    Movants' Requested Relief is Not Necessary to Aid the Court in its Jurisdiction.

The second exception to the Anti-Injunction Act permits a federal court to stay proceedings in a state court only when an injunction is necessary to protect the federal court's jurisdiction.[51] Under this exception, courts "are guided by the overarching principle that federal courts are to be

---

[45] *See* Mot. at 1–3.

[46] 28 U.S.C. § 2283.

[47] 28 U.S.C. § 2283.

[48] 28 U.S.C. § 2283.

[49] *See* App. at 115–17.

[50] *See Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 630 (1977) (stating the Anti-Injunction "Act's purpose is to forestall the inevitable friction between the state and federal courts that ensues from the injunction of state judicial proceedings by a federal court").

[51] 28 U.S.C. § 2283.

cautious about infringing on the legitimate exercise of state judicial power."[52] For example, in the *State of Texas*, the United States Court of Appeals for the Fifth Circuit refused to grant an injunction because the movant pointed "to no authority indicating that Congress has tipped the balance in favor of federal interests."[53] In fact, the Supreme Court has explicitly held that claims brought to enforce a personal liability do not impede a federal court's jurisdiction where the same cause is pending because the principle of *res judicata* could be applied at the conclusion of one of the proceedings.[54] Thus, Movants have not demonstrated that their requested relief is necessary to aid the Court in the exercise of its jurisdiction.[55]

### 3. <u>Movants' Requested Relief is Not Necessary to Protect or Effectuate the Court's Judgment.</u>

The final exception to the Act allows a federal court to issue an injunction when necessary to protect or effectuate its judgments.[56] The Fifth Circuit applies a four-part test to determine whether an injunction staying a state proceeding properly fails within its exception.[57] The second part of the test requires that the Dallas Probate Court rendered a judgment—which has not occurred.[58] In addition, the third part of the test requires that the state court judgment was rendered on the merits and that has not happened.[59]

---

[52] *See State of Tex. v. Untied States*, 837 F.2d 184, 186 (5th Cir. 1988).
[53] *Id*. at 187.
[54] *See Vendo Co.*, 433 U.S. at 642.
[55] *See id.*
[56] 28 U.S.C. § 2283.
[57] *New York Life Ins. Co. v. Gillispie*, 203 F.3d 384, 387 (5th Cir. 2000) (stating the four parts that require "[f]irst, the parties in a later action must be identical to (or at least in privity with) the parties in a prior action. Second, the judgment in the prior action must have been rendered by a court of competent jurisdiction. Third, the prior action must have concluded with a final judgment on the merits. Fourth, the same claim or cause of action must be involved in both suits.").
[58] *See id.*
[59] *See id.*

Movants rely on inapposite authority. In *Klay*, the Eleventh Circuit held that a party may be entitled to an injunction in an effort to promote resolution of a "case properly before" a federal court.[60] An injunction is appropriate only upon a showing that without such relief, allowing the state proceeding to continue would eliminate the federal court's power to conclude ongoing litigation.[61] As mentioned above, the Settlement Agreement and Final Judgment do not encompass Ms. Hill's claims in the State Probate Action.[62] Accordingly, allowing the State Probate Case to proceed would not offend the Court's jurisdictional authority. At a minimum, the Court should allow the pending State Probate Case to reach a final judgment on the merits.[63] Of course, Ms. Hill's probate action will not relitigate issues decided by this Court because the Court did not address any issues under the Lyda Trust. There is therefore nothing to "protect or effectuate," and the Anti-Injunction Act squarely bars the relief sought.

## C.   THE ABSTENTION DOCTRINE BARS MOVANTS' REQUESTED RELIEF.

Even apart from the express prohibitions of the Anti-Injunction Act, well-established principles of federal abstention independently preclude the extraordinary relief Movants seek. To maintain the balance federalism requires, federal courts must refrain from interfering in ongoing state proceedings that implicate important state interests.[64] Ms. Hill's State Probate Action does exactly that—it concerns the interpretation, administration, and potential reinstatement of a Texas testamentary trust, a matter historically and exclusively reserved to the state probate courts.

---

[60] *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1102 (11th Cir. 2004)
[61] *Id.*
[62] *See* ECF 879, 999.
[63] *See Gillispie*, 203 F.3d at 387.
[64] *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 238 (1984) (stating that "under *Younger*-abstention doctrine, interests of comity and federalism counsel federal courts to abstain from jurisdiction whenever federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests.").

The Supreme Court in *Younger* declared that federal courts are required to abstain from interfering with ongoing state proceedings because it is "the Normal thing to do[.]"[65] Cases after *Younger* have emphasized the Supreme Court's emphasis on the duty federal courts have to not interfere with pending state judicial proceedings.[66] The need to abstain heightens "when the moving party has an adequate remedy at a law and will not suffer irreparable injury if denied equitable relief."[67] Based on these fundamental principles, this Court should abstain from granting Movants' relief because the probate proceeding implicates state interests and provides Movants with more than an adequate remedy at law.[68]

Even setting jurisdiction aside, Movants' position cannot be squared with fundamental trust law. Ms. Hill's Probate Petition seeks an accounting and alleges breaches of fiduciary duty between 2014 and 2016. Texas law imposes fiduciary obligations on trustees to all beneficiaries, including contingent beneficiaries, and provides remedies for breaches of those duties. Movants cannot transform a decade-old federal settlement into a license to disregard those obligations. Furthermore, the waiver provision cannot be read so broadly as to immunize Hill Jr. and the trustees from reasonable inquiry into the legitimacy of their conduct. Ms. Hill's petition is exactly that: an inquiry into whether trustees met their duties during the administration of the Lyda Trust.

Here, the state's regulation and administration of testamentary trusts implicate one of the most significant areas of state interest—the supervision of estates, fiduciaries, and probate

---

[65] *Younger v. Harris*, 401 U.S. 37, 45 (1971) (stating "it has been perfectly natural for our cases to repeat time and time again that the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such inunctions.")

[66] *See, e.g., Middlesex Cnty. Ethics Comm. V. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982) (highlighting that "*Younger*…and its progeny espouse a strong federal policy against federal-court interference with pending state judicial proceedings *absent extraordinary circumstances*") (emphasis added).

[67] *Younger*, 401 U.S. at 43–44.

[68] *See, e.g., Middlesex Cnty.*, 457 U.S. at 431; *Younger*, 401 U.S. at 43–45.

matters.[69] Thus, this Court should abstain in favor of the State Probate Court proceeding because the issues presented in that state court lawsuit are governed by Texas law, and, were never at issue in this case.[70] Additionally, Movants, as parties to the probate proceeding, will have a full and fair opportunity to raise any defenses or arguments under state law. Federal intervention would thus directly contravene the *Younger* doctrine's foundational command that federal courts ought not to interfere with ongoing state proceedings when the state forum affords an adequate avenue for review.[71] Therefore, the Motion to Enforce must be denied under the *Younger* abstention doctrine.[72]

## D.    THE PROBATE EXCEPTION INDEPENDENTLY BARS MOVANTS' REQUESTS.

Even if the Court were to conclude that the Settlement Agreement and Final Judgment somehow reached the Lyda Trust, which they do not, federal jurisdiction is still foreclosed by the probate exception. This long-standing doctrine, reaffirmed by the Supreme Court in *Marshall v. Marshall*, limits federal courts from interfering with state probate proceedings.[73] Specifically, federal courts may not probate or annul a will, administer a decedent's estate, or dispose of property that is in the custody of a state probate court.[74]

The Fifth Circuit applies a straightforward test: if (1) the property in dispute is within the custody of a state probate court, and (2) the plaintiff's claims would require the federal court to assume *in rem* jurisdiction over that property, then the probate exception applies.[75]

---

[69] *See, e.g.*, TEX. ESTATES CODE § 32.001.
[70] *See* App. at 115–17; *see also* TEX ESTATES CODE § 32.001(a).
[71] *See Younger*, 401 U.S. at 43–45.
[72] *See, e.g., Middlesex Cnty.*, 457 U.S. at 431; *Younger*, 401 U.S. at 43–45.
[73] *Marshall v. Marshall*, 547 U.S. 293 (2006).
[74] *See Ashton v. Josephine Bay Paul & C. Michael Paul Found., Inc.*, 918 F.2d 1065, 1071 (2d Cir. 1990).
[75] *Curtis v. Brunsting*, 704 F.3d 406, 409 (5th Cir. 2013).

Ms. Hill's claims in the State Probate Case fits squarely within the exception. She seeks an accounting and fiduciary remedies concerning the Lyda Trust, a testamentary trust created under Lyda Bunker Hunt's will and terminated in 2016.[76] Those claims fall within the statutory authority of the Dallas County Probate Court, which is already exercising jurisdiction over the Lyda Trust and its administration. Federal intervention here would necessarily "dispose of property" and "administer a decedent's estate" in direct contravention of *Marshall*. Movants' requested injunctive relief would do precisely what the probate exception forbids: enjoin ongoing state probate proceedings and substitute federal control for state administration. Respect for comity and federalism demands otherwise. The Probate Court has the expertise, the statutory mandate, and the jurisdiction to address Caroline's claims. This Court does not.

The probate exception thus provides an independent and sufficient ground to deny Movants' Motion to Enforce and their requests for a TRO, preliminary injunction, and permanent injunction.

### E.     THE REQUESTS FOR TRO, PRELIMINARY INJUNCTION, AND PERMANENT INJUNCTION MUST BE DENIED.

Movants do not stop at seeking leave and enforcement. They also demand the extraordinary remedies of a temporary restraining order, a preliminary injunction, and a permanent injunction to bar Ms. Hill from pursuing her claims under Texas law in the State Probate Case.[77] These requests must be denied because Movants cannot satisfy any of the prerequisites for equitable relief under Rule 65.

The United States Supreme Court has emphasized that "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the

---

[76] *See* App. at 115–17.
[77] *See* Motion to Enforce at 1-2.

state courts to proceed in an orderly fashion to finally determine the controversy."[78] The Fifth

Circuit has long held that a movant must demonstrate four elements to obtain a preliminary

injunction: (1) a substantial likelihood of success on the merits, (2) a substantial threat of

irreparable harm if the injunction is not granted, (3) the threatened injury outweighs the harm the

injunction would cause the non-movant, and (4) the injunction will not disserve the public

interest.[79] These elements are cumulative—failure on any one is fatal.[80] Movants stumble on all

four.

### 1.    No likelihood of success on the merits.

As shown above, the Lyda Trust is not subject to the Settlement Agreement or the Final

Judgment. The "waiver of standing" clauses cannot be stretched to trusts that were never part of

the settled litigation. The Court has already made clear that this Court's jurisdiction is confined to

the MHTE and HHTE.[81] Without jurisdiction, there is no possibility, let alone a substantial

likelihood, of success. Accordingly, Movants are not entitled to injunctive relief. This alone defeats

the injunction request.

### 2.    No irreparable harm.

Movants also cannot demonstrate that they will suffer irreparable harm. "[H]arm is

irreparable where there is no adequate remedy at law."[82] The only "harm" Movants identify is the

inconvenience and expense of defending themselves in the State Probate Action. That is not

irreparable harm. Movants' reliance on the Settlement Agreement's remedial provisions does not

change this result. Parties cannot, by contractual provision, transform ordinary litigation costs into

---

[78] *See Atlantic Coast Line R.R. v. Bhd. Of Locomotive Eng'rs*, 398 U.S. 281, 297 (1970).
[79] *See Canal Auth. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974).
[80] *See Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987).
[81] *See* App. at 57-58.
[82] *See Jiao v. Xu*, 28 F.4th 591, 598 (5th Cir. 2022)

irreparable harm or override the requirements of Rule 65. Even where a contract contemplates injunctive relief, a movant must still independently satisfy all four Rule 65 factors. Movants have not done so here.

### 3.    The balance of equities favors Ms. Hill.

Movants are not entitled to injunctive relief because granting an injunction would strip Caroline Hill of her statutory rights as a beneficiary to demand an accounting and to hold trustees accountable under the Texas Property Code. It would deprive her of her chosen forum, the State Probate Court, which is uniquely suited to resolve trust and estate disputes. Movants, by contrast, face nothing more than the obligation to account for their conduct. Accordingly, the equities tilt decisively against an injunction.

### 4.    The public interest weighs heavily against injunctive relief.

Public policy favors the enforcement of fiduciary duties and the proper administration of trusts. It also favors respect for the probate exception, which reserves to state courts the administration of estates and testamentary trusts. Enjoining Ms. Hill's Probate case would undermine both principles, inviting federal intrusion into matters that belong in state probate court and signaling that fiduciaries can evade scrutiny by invoking old settlements.

### 5.    TRO relief is equally inappropriate.

Movants also request a temporary restraining order. TROs are reserved for true emergencies where immediate and irreparable harm will occur before the Court can hold a hearing.[83] The Probate case has been pending since September 2025. There is no emergency, no imminent irreparable harm, and no justification for *ex parte* federal intervention in a routine probate proceeding.

---

[83] Fed. R. Civ. P. 65(b).

**6.      Permanent injunction relief is categorically unavailable.**

A permanent injunction requires not only a showing of irreparable harm, but also actual success on the merits.[84] Movants cannot prevail on the merits because neither the Settlement Agreement nor the Final Judgment applies to the Lyda Trust. Without jurisdiction or a valid claim, their demand for permanent relief is without merit.

In short, Movants have not carried their burden on any element of Rule 65. Their requests for a TRO, preliminary injunction, and permanent injunction must be denied.

## V.      REQUEST FOR RELIEF

For all the foregoing reasons, Caroline Hill respectfully requests that the Court deny Movants' Motion to Enforce in its entirety and grant her all other appropriate relief.

---

[84] *See Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 847 (5th Cir. 2004).

Dated: January 16, 2025.

Respectfully submitted,

**BREWER, ATTORNEYS & COUNSELORS**

By: */s/ Joshua H. Harris*
William A. Brewer III
State Bar No. 02967035
wab@brewerattorneys.com
Joshua H. Harris
State Bar No. 24127306
jharris@brewerattorneys.com
Jordon B.V. Smith
State Bar No. 24143774
jks@brewerattorneys.com
Amir I. Saada
State Bar No. 24149742
ais@brewerattorneys.com

1717 Main Street, Suite 5900
Dallas, Texas 75201
Telephone: (214) 653-4000
Facsimile: (214) 653-1015

**ATTORNEYS FOR CAROLINE M. HILL**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on January 16, 2025, a true and correct copy of the foregoing was served upon all counsel of record in the above-captioned cause, pursuant to Tex. R. Civ. P. 21a.

G. MICHAEL GRUBER
Texas State Bar No. 08555400
Mike.gruber@gtlaw.com
BRIAN E. MASON
State Bar No. 24079906
Brian.mason@gtlaw.com
**GREENBERG TRAURIG, LLP**
2200 Ross Ave
Suite 5200
Dallas, Texas 75201
Telephone: 214.665.3600
Facsimile:  214.665.3601
**ATTORNEY FOR MOVANT MARGARET KELIHER (AS INDEPENDENT EXECUTOR OF THE ESTATE OF ALBERT G. HILL, JR., DECEASED, FORMER SOLE BENEFICIARY)**

MICHAEL J. LANG
State Bar No. 24036944
mlang@cwl.law
**CRAWFORD, WISHNEW & LANG PLLC**
1700 Pacific Avenue,
Suite 2390
Dallas Texas
Telephone: 214.817.4500
Facsimile: 214.817-4509
**ATTORNEY FOR MOVANT CAROL E. IRWIN (AS INDEPENDENT EXECUTOR OF THE ESTATE OF IVAN IRWIN, JR., DECEASED) (AS FORMER CO-TRUSTEES OF THE LYDA HUNT-MARGARET TRUSTS F/B/O ALERBT G. HILL, JR.)**