IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **ALBERT G. HILL, III, individually and as a Beneficiary of the Margaret Hunt Trust Estate, derivatively on behalf of the Margaret Hunt Trust Estate, individually as a Beneficiary of the Haroldson Lafayette Hunt, Jr. Estate, and derivatively on behalf of the Haroldson Lafayette Hunt, Jr. Estate,** | § § § § § § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:07-cv-2020-L |
| **WILLIAM SCHILLING, et al.,** | § § § | |
| Defendants. | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the court is the Motion to Enforce Final Judgment and Settlement Agreement and Application for Temporary Restraining Order, Preliminary Injunction and Permanent Injunction (Doc. 2055) ("Motion"), filed on December 23, 2025, by Margaret Keliher (as Independent Executor of the Estate of Albert G. Hill, Jr., Deceased) and Carol E. Irwin (as Independent Executor of the Estate of Ivan Irwin, Jr., Deceased, and Former Co-Trustee of the Lyda-Hunt–Margaret Trust f/b/o Albert Galatyn Hill, Jr.) (collectively, "Movants"). Having carefully considered the Motion, brief in support (Doc. 2056), response and brief in support (Doc. 2062), reply (Doc. 2060), appendixes, record, and applicable law, the court **denies** the Motion in its entirety.

## I.  Factual Background and Procedural History

This seemingly interminable family dispute relates to "the management of two trusts created by the late Texas oil magnate H.L. Hunt." *Hill v. Schilling*, 495 F. App'x 480, 482 (5th Cir. 2012).[1] "H.L. Hunt established the trusts at issue—the Margaret Hunt Trust Estate ('MHTE') and the H.L. Hunt, Jr. Trust Estate ('HHTE')—in the names of his two eldest children." *Id.* Margaret Hunt had three children, including Albert G. Hill, Jr. ("Hill Jr." or "Al Jr."), all of whom were beneficiaries of both the MHTE and HHTE. Hill Jr. in turn also had three children—one of whom is Albert G. Hill, III ("Hill III"). Hill III also has three children—Albert Hill, IV; Nance Hill; and Caroline M. Hill (collectively, the "Grandchildren"). Hill III initiated the instant litigation in Texas state court in December 2007, alleging various forms of wrongdoing by Hill Jr. and others in the management of the MHTE and HHTE, and seeking, *inter alia*, a declaration that he was a direct and vested beneficiary of the MHTE.

Movants request the court to intervene in a probate court proceeding related to a separate trust created under the 1954 Last Will and Testament of Lyda Bunker Hunt, who died in 1955. That trust, the Lyda Hunt–Margaret Trust f/b/o Albert Galatyn Hill, Jr. ("Lyda Hunt–Margaret Trust"), is the subject of a lawsuit brought by Caroline Hill in Probate Court No. 2 of Dallas County, Texas (the "State Probate Case").[2] In that case, Caroline Hill seeks an accounting and alleges that Hill Jr. and his co-trustees, between 2014 and 2017, "looted the [Lyda Hunt–Margaret Trust] and dissolved it, leaving nothing for the Grandchildren[,]" whom Hill Jr. had previously

---

[1] As described by the Fifth Circuit, H.L. Hunt is "the late Texas oil baron reputed to be one of the world's richest men when he died in 1974." *Hill v. Washburne*, 953 F.3d 296, 300-01 (5th Cir. 2020) (citations omitted).

[2] Cause No. PR-25-02919-2, *Caroline M. Hill v. Margaret Keliher (as Independent Executor of the Estate of Albert G. Hill, Jr., Deceased), Carol E. Irwin (as Independent Executor of the Estate of Ivan Irwin, Jr., Deceased), Joyce E. Waller (as Co-Trustees of the Lyda Hunt-Margaret Trusts f/b/o Albert G. Hill, Jr.), and Galatyn Finance, LLC*, Probate Court No. 2, Dallas County, Texas.

appointed as contingent beneficiaries of the Lyda Hunt–Margaret Trust, thereby entitling them to receive, upon Hill Jr.'s death, Hill Jr.'s "periodic interest income as well as an interest in the Lyda Hunt–Margaret Trust's corpus upon its eventual termination." Doc. 2057 at 20 (Caroline Hill's Orig. Pet. ¶ 2); *id.* at 26 (Caroline Hill's Orig. Pet. ¶ 31).

Movants seek to enjoin Caroline Hill from proceeding with the State Probate Case. They contend that Caroline Hill is breaching the May 13, 2010 Global Settlement and Mutual Release Agreement (the "GSA") (Doc. 879) that settled this action and the November 8, 2010 Final Judgment (the "Final Judgment"), issued by United States District Judge Reed C. O'Connor (the presiding judge at the time), in which he implemented and memorialized the GSA. *See* Final J. ¶ 1 (Doc. 999).

Although the history of the underlying dispute between Hill III and Hill Jr. is beyond the scope of this opinion, to resolve the pending Motion, the court must revisit, yet again, certain aspects of Hill III's dispute with Hill Jr. and others as well as its prior opinions. The court will limit its recitation of the background facts to those necessary to rule on the pending Motion.[3]

### A.  The Underlying Lawsuit

On June 14, 2007, Margaret Hunt Hill died and her equitable interest in the MHTE passed in equal shares to her three children—Hill Jr., Lyda Hill, and Alinda Hill Wickert—subject to any disclaimers. Doc. 212-2 at 10, ¶¶ 18, 19. In December 2007, Hill III brought a lawsuit in Texas state court in his individual capacity and on behalf of the MHTE and HHTE against specific beneficiaries of the MHTE and HHTE, including Hill Jr., Hill Jr.'s siblings, and the trustees and

---

[3] The court's recitation of the relevant background is based on the materials contained in the appendixes submitted by the parties in support of their legal briefs, the court's prior decisions in this case, and the copious record (including over 2060 separate docket entries).

**Memorandum Opinion and Order – Page 3**

members of the advisory boards of the MHTE and HHTE. Among other things, Hill III alleged wrongdoing in the management and administration of the MHTE and HHTE by their respective trustees and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C § 1961, *et seq.* A primary focus of the lawsuit was Hill III's claim to be a current beneficiary of the MHTE pursuant to Hill Jr.'s 2005 Disclaimer.[4] Following removal to federal court on December 3, 2007, the case was randomly assigned to Judge O'Connor.

## 1.  *The GSA*

Ultimately, Hill III agreed to a settlement of the dispute. On May 13, 2010, the parties entered into the GSA (Doc. 879) that settled this action and related state court actions. *See generally Hill v. Schilling*, 495 F. App'x at 482-83 (describing the genesis of the GSA). In the GSA, pursuant to a Waiver of Standing clause, each party agreed to waive his or her standing and right to demand information, seek accountings, or assert any claim or cause of action in connection with any trust "for the primary benefit of a descendant of Margaret Hunt Hill" of which he or she was not a current beneficiary. Doc. 879 at 21, § III ¶ 5(b) (the "Waiver of Standing Clause").

As recently summarized by the Fifth Circuit:

> In exchange for a nine-figure payment and other benefits, Hill III agreed "not to contest the Last Will and Testament of Al Jr. or file any additional action, lawsuit, or legal proceeding challenging the disposition of his property" (the no-contest clause). The parties further "agree[d] that the remedy of specific performance and/or injunctive relief (whether mandatory or by restraint) shall be

---

[4] In 2005, Hill Jr. signed an irrevocable disclaimer of a portion of his interest in the MHTE in favor of his three children, including Hill III. *See* Doc. 879 (GSA at Ex. C, 2005 Disclaimer). The effect of the disclaimer is that Hill Jr.'s disclaimed interest passed to Hill III and his two siblings after Margaret Hunt Hill's death. *See* Doc. 611 (March 4, 2010 Mem. Op. & Order 7-8). In 2007, Hill Jr. sought to rescind his 2005 disclaimer, along with another partial disclaimer he had executed in 2007. This litigation ensued.

available for the breach of any term, condition, covenant, or warranty of" the settlement agreement. The parties consented to the district court's continuing jurisdiction over actions to enforce the settlement agreement.

*Hill v. Washburne*, 953 F.3d 296, 301 (5th Cir. 2020).[5]

### 2. *The Final Judgment*

On November 8, 2010, Judge O'Connor issued the Final Judgment implementing and memorializing the parties' GSA, which he incorporated by reference into the Final Judgment. Doc. 999. Consistent with the GSA, the Final Judgment declared Hill Jr.'s 2005 Disclaimer valid and partitioned portions of the MHTE and the HHTE, as to which Hill Jr. did not disclaim any of his equitable interests, into the Hill Jr. Trusts and, for Hill III's benefit, his one-third interest in the Disclaimed Beneficial Interests, because of the 2005 Disclaimer, were partitioned into the Hill III Trusts.[6] Doc. 999 at 6, ¶ 5; Doc. 999 at 12-13, ¶¶ 8.f.i and 8.f.ii; Doc. 999 at 20, ¶ 8.i; Doc. 999 at 22-23, ¶ 9.c.[7] The Final Judgment provided that all of these trusts were governed by the 1935 Trust Instruments establishing the MHTE and HHTE. Doc. 999 at 24-25, ¶ 14.

The Final Judgment enforced the agreeing parties' Waiver of Standing Clause, as follows:

**Waiver of Standing**

28. IT IS ORDERED that, pursuant to the Agreement, the Court finds that during such time as an Agreeing Party is not a current beneficiary of a trust for the

---

[5] The Fifth Circuit also recognized in *Hill v. Washburne*, "After 'protracted [and] complicated' litigation, *Hill v. Schilling*, 593 F. App'x 330, 331 (5th Cir. 2014), squabbling over the trusts was supposedly ended by a settlement agreement confected in 2010. Yet, over the next four years, our court 'weighed in on the settlement' four times. *Id.* This appeal makes it five." *Hill v. Washburne*, 953 F.3d 296, 301 (5th Cir. 2020).

[6] These trusts are (1) the MHTE – Albert G. Hill, III Trust, for the benefit of Hill III, and (2) the MHTE – Albert G. Hill Jr. Income Beneficiary / Al III Termination Beneficiary Trust, for the benefit of Hill Jr. during his lifetime and for the benefit of Hill III after Hill Jr.'s death and are referred to herein, collectively, as the "Hill III Trusts."

[7] The Final Judgment also partitioned portions of the MHTE and HHTE into separate trusts for Lyda Hill, who became the sole current beneficiary of separate one-third shares of the MHTE and HHTE. Doc. 999 at 7-9, ¶¶ 8.a, 9.a.

primary benefit of a descendant of Margaret Hunt Hill ("MHH") (an "MHH Trust") and any other descendant of MHH is living, such Agreeing Party has waived: (1) his or her status as an interested person in such trust, and (2) all rights that he or she may have as a future or contingent beneficiary of such trust under the instrument establishing such MHH Trust, under applicable common law, or under applicable state law, including but not limited to the right to demand information, seek an accounting, or assert any claim or cause of action in connection with any such trust.

. . . IT IS FURTHER ORDERED that, pursuant to the Agreement, the waivers by each Agreeing Party in this paragraph shall not apply to an MHH Trust during any period in which such Agreeing Party is a current beneficiary of that MHH Trust, although the waivers in this paragraph shall continue to apply to any actions taken or omitted by any other person or entity during the period that such Agreeing Party was not a current beneficiary. For purposes of this paragraph, "current beneficiary" means a person who, at the time a current beneficiary is determined, is then entitled to receive, or is then, in an exercise of discretion by the trustee of such trust, a possible recipient of, income or principal of such trust.

Doc. 999 at 35-36, ¶ 28.

As part of the Final Judgment, the court, incorporating the No Contest Clause from the GSA, ordered Hill III and Erin Hill (in all their capacities) and the Grandchildren not to contest Hill Jr.'s will or challenge the disposition of his property:

IT IS ORDERED that Al III (in all capacities), Erin [Hill] (in all her capacities), the Grandchildren, and all of their descendants and heirs shall not contest the Last Will and Testament of Al Jr., or file any additional action, lawsuit, or legal proceeding challenging the disposition of Al Jr.'s property.

Doc. 999 at 36, ¶ 29.

Finally, consistent with the GSA, Judge O'Connor retained continuing jurisdiction over the implementation and enforcement of the Final Judgment:

IT IS ORDERED that, without affecting the finality of this Final Judgment, the Court hereby retains continuing jurisdiction over the implementation of the [Settlement] Agreement, the Final Judgment, and the Parties for purposes of implementing and enforcing the [Settlement] Agreement and this Final Judgment. IT IS FURTHER ORDERED that any controversy or claim arising after the date of execution of the [Settlement] Agreement and arising out of the [Settlement] Agreement or the Documentation shall be resolved by this Court. Each of the Agreeing Parties agrees and covenants not to, and IT IS ORDERED that none of

**Memorandum Opinion and Order – Page 6**

the Agreeing Parties shall, file or assert any of the released Claims (in law or in equity).

Doc. 999 at 43, ¶ 45.[8] On October 2, 2013, this matter was reassigned to the undersigned following the recusal of Judge O'Connor (who had presided over the matter for approximately seven years), which was followed by the recusals of Judges Lynn, Solis, Godbey, Boyle, Fitzwater, and Kinkeade.

### B.  Hill Jr.'s Last Will and Testament

On December 20, 2014, Hill Jr. executed his Will, in which he exercised the testamentary special powers of appointment (1) "under Article III, Section 3 of the HLHTE-Albert G. Hill, Jr. Trust, created under a settlement agreement," in favor of the "Al G. Hill, Jr. Charitable Lead Annuity Trust" and (2) "under Article III, Section 3 of the MHTE-Albert G. Hill, Jr. Trust, created under a settlement agreement" in favor of the "Al G. Hill, Jr. Charitable Lead Annuity Trust." *Hill v. Schilling*, 2018 WL 3239795, at *4-5 (N.D. Tex. July 3, 2018) (Lindsay, J.). As previously noted, *supra*, these trusts were created under the GSA as part of the settlement of this dispute.

In addition, Hill Jr. exercised his testamentary powers of appointment over other family trusts not related to the MHTE or HHTE, including the Lyda Hunt–Margaret Trust and the Albert Hill Trust, as follows:

> (a) *I hereby exercise the testamentary special power of appointment* given to me under paragraph VIII, of The Lyda Hunt-Margaret Trusts, Al G. Hill, Jr., created under the Last Will and Testament of Lyda Bunker Hunt, dated the 16th day of September, 1954, in favor of my grandchildren [AGH, IV, NHH, and CMH], that they should succeed me as to all interests which I have in such Trust estate; [and]
>
> (b) *I hereby exercise the power of appointment* given to me under Article III, Section 3 of the Albert Hill Trust, dated the 10th day of April, 1945, in favor of the

---

[8] Hill III appealed the Final Judgment challenging, among other things, the addition of provisions that were not part of the GSA. The Fifth Circuit affirmed the Final Judgment. *See Hill v. Schilling*, 495 F. App'x 480 (5th Cir. 2012) (consolidated appeal).

**Memorandum Opinion and Order – Page 7**

Al G. Hill, Jr. Family Foundation ("Foundation"), so that the Foundation should succeed me as to all interests which I have in such Trust estate[.]

*Id.* at *4 (original emphasis).

### C.  Termination of Trusts During Hill Jr.'s Lifetime

On or about December 13, 2016, the Trustees and the Advisory Board Members of the Hill Jr. Trusts voluntarily dissolved the Hill Jr. Trusts. *Id.* at *5. Specifically, the MHTE - Albert G. Hill, Jr. Trust was terminated pursuant to a written instrument titled MHTE - Albert G. Hill, Jr. Trust Trustee Resolution and Record of Trust Termination and the HLHTE - Albert G. Hill, Jr. Trust was terminated pursuant to a written instrument titled HLHTE - Albert G. Hill, Jr. Trust Trustee Resolution and Record of Trust. *Id.*

In addition, on December 28, 2016, the Trustees and the Advisory Board Members voluntarily dissolved the Lyda Hunt–Margaret Trust pursuant to a written instrument titled the Lyda Hunt - Margaret Trusts, FBO Albert G. Hill, Jr. Record of Trust Termination. *Id.* Unlike the Hill Jr. Trusts, *supra*, the Lyda Hunt–Margaret Trust was never mentioned in the GSA and not incorporated into the Final Judgment. The court never supervised the Lyda Hunt–Margaret Trust and never adjudicated any rights under it.

### D.  Hill Jr.'s Death and the Probate of His Will

On December 6, 2017, counsel for Hill III filed a Suggestion of Death, stating, "upon the record, pursuant to Rule 25(a)(1) of the Federal Rules of Civil Procedure, the death of [Hill Jr.], Defendant, on December 2, 2017." Suggestion of Death (Doc. 1811). On December 7, 2017, Tyree Miller ("Miller"), named the Independent Executor of Hill Jr.'s Estate by his will, filed an Application for Probate of Will and Issuance of Letters Testamentary in Probate Court No. 2 of Dallas County, Texas (the "Hill Jr. Probate Proceeding"), seeking to probate Hill Jr.'s will, to be

appointed as the independent Executor of Hill Jr.'s Estate, and to have letters testamentary issued in accordance with the will. *Id.*

Hill III filed an Original Answer in the Hill Jr. Probate Proceeding, asserting, among other things, that Miller should be disqualified because of a conflict of interest and (1) claiming and seeking a declaration that Hill Jr. did not have the powers of appointment he exercised in his Will; (2) seeking accountings of certain trusts; (3) seeking injunctive relief; (4) seeking the imposition of constructive trusts; and (5) seeking damages and attorney's fees. *Id.*

### E. Hill III's Sisters' and Hill III's Respective Motions Seeking to Enforce the GSA and Final Judgment

On May 29, 2018, Heather Hill Washburne ("Washburne") and Elisa Hill Summers ("Summers")—Hill, III's sisters—filed a motion seeking to enjoin Hill III in the Hill Jr. Probate Proceeding from (1) contesting Hill Jr.'s Will and challenging the disposition of Hill Jr.'s property in violation of the No Contest Clause, and (2) violating the GSA and the Final Judgment by asserting claims concerning the Hill Jr. Trusts because he was not a current beneficiary. *See* Doc. 1876.

Also, on May 29, 2018, Hill III filed his own motion to enforce the GSA and Final Judgment, contending that the Hill Jr. Trusts that were supposed to be preserved by the Final Judgment had been prematurely and unlawfully terminated by Hill Jr. and others, thereby destroying the valuable inheritance of Hill III and his descendants, from the H.L. Hunt family, estimated to be worth in excess of $1 billion. *See* Doc. 1877. Hill III challenged both Hill Jr.'s exercise of his powers of appointment in his Will in 2014 and the subsequent dissolution of the Hill Jr. Trusts in 2016. *Id.* He also challenged the dissolution of the Lyda Hunt–Margaret Trust. *Id.* Hill III sought an injunction to preserve the assets of the Hill Jr. Trusts as well as the Lyda

Hunt–Margaret Trust and to prevent dissipation, concealment, and further transfer of such assets, and preservation of all records relating to such trusts and actions affecting them. *Id.*

### F. The Court's July 3, 2018 Decision Declining to Extend its Continuing Jurisdiction Beyond the MHTE and HHTE—the Trusts at Issue in the Underlying Litigation

On July 3, 2018, the court denied the requests for injunctive relief of both parties without prejudice, holding any relief would be "premature" because of the pending severed probate proceedings, in which the parties were litigating the same issues. *Hill*, 2018 WL 3239795, at *11.[9] Further, as to any trusts other than the MHTE–Albert G. Hill, Jr. Trust and the HLHTE–Albert G. Hill, Jr. Trust, both created as part of the GSA and incorporated into the Final Judgment, the undersigned defined the scope of the court's continuing jurisdiction:

> As a threshold matter, *the court notes that the Settlement Agreement and Final Judgment only modified the MHTE and HHTE.* In the Final Judgment, Judge O'Connor retained "continuing jurisdiction over the implementation of the [Settlement] Agreement, the Final Judgment, and the Parties for purposes of implementing and enforcing the [Settlement] Agreement and this Final Judgment." *See* Final J. ¶ 45 (Doc. 999). He further ordered that "any controversy or claim arising after the date of execution of the [Settlement] Agreement and arising out of the [Settlement]Agreement or the Documentation shall be resolved by this Court." *Id. With respect to any Hunt/Hill family trusts other than the MHTE and HHTE, therefore, this court does not have continuing jurisdiction, and issues pertaining to*

---

[9] On September 12, 2018, Washburne and Summers filed another Emergency Motion to Enforce the Final Judgment and Settlement Agreement, and Application for Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction after Hill III took additional actions in the Hill Jr. Probate Proceeding challenging Hill Jr.'s Will and the disposition of his property. Doc. 1884. On December 7, 2018, the court granted the motion and request for injunctive relief, finding that Hill III's challenge to Hill Jr.'s Will and to the appointment of Keliher, as Independent Executor of Hill Jr.'s Estate, as well as his appeal of Judge Ingrid M. Warren's October 11, 2018 Will Contest Order and Order Admitting Will to Probate, violated the broad waiver he had agreed to in section III(1)(f) of the GSA and paragraph 29 of the Final Judgment, intentionally relinquishing his known right to contest Hill Jr.'s Will or challenge the disposition of his property in exchange for valuable consideration. Doc. 1919. Hill III appealed. Doc. 1925. The Fifth Circuit affirmed the "future-looking terms of the injunction: its prohibition on contesting Hill Jr.'s will in any manner, in any court; and its prohibition on filing, pursuing, or prosecuting any action . . . that violates the terms of the Settlement Agreement or Final Judgment." *Hill v. Washburne*, 953 F.3d 296, 310 (5th Cir. 2020) (internal quotation marks omitted). The Fifth Circuit dismissed as moot the remainder of Hill III's appeal because "in the interim, the Texas appeals court [] lost its jurisdiction over Hill III's state appeal," and Hill III withdrew his "failed will challenges in the probate court." *Id.* at 301.

> *those family trusts are not properly before this court. The court declines to expand its continuing jurisdiction beyond the implementation and enforcement of the Settlement Agreement and Final Judgment.*

*Id.* at 7 (emphasis in original).

Otherwise stated, the court limited its retention of continuing jurisdiction stemming from the Final Judgment to those trusts arising from the GSA and related to the MHTE and HHTE, which are the subject of the underlying litigation. Perforce, the court's continuing jurisdiction does not extend as far as other trusts, such as the Lyda Hunt–Margaret Trust (and trusts created under separate instruments), and the exercise of ancillary jurisdiction to enforce the Final Judgment is not warranted here. *Notably, no party or participant/intervenor in this matter challenged the court's limited retention of jurisdiction or appealed the decision.*

### G. Movants' Challenge to Caroline Hill's State Probate Suit Concerning the Lyda Hunt–Margaret Trust as a Violation of the GSA and Final Judgment and Request for Injunctive Relief

On September 5, 2025, Caroline Hill filed an Original Petition and Jury Demand in the State Probate Case, alleging misconduct relating to the Lyda Hunt–Margaret Trust, and demanding an accounting and attorney's fees from the prior co-trustees and the executor of Hill Jr.'s Will.

With leave of court, on December 23, 2025, Movants filed their Motion, contending that Caroline Hill, by seeking an accounting of the Lyda Hunt–Margaret Trust, "is violating the Waiver of Standing Clause in the [GSA] and Final Judgment which prevents her from seeking an accounting or asserting claims about a trust of which she is not a current beneficiary." Doc. 2056 at 5. Specifically, Movants assert that the Lyda Hunt–Margaret Trust

> was a trust for the primary benefit of Al Jr., a descendant of Margaret Hunt Hill. Caroline was a "contingent beneficiary" of the [Lyda Hunt–Margaret Trust]. She never became a "current beneficiary" because the [Lyda Hunt–Margaret Trust] was terminated in 2016, approximately one year before Al Jr.'s death. As a result, Caroline is breaching the [GSA] and violating the Final Judgment with her Lawsuit.

*Id.* Movants ask the court to enforce its Final Judgment and the GSA, and they seek a temporary restraining order, as well as preliminary and permanent injunctive relief:

- enjoining Caroline (together with her attorneys, representatives, and all persons acting in concert with her and participating with her, directly or indirectly) from violating the Waiver of Standing Clause in the Final Judgment and in the Settlement Agreement by demanding information, seeking an accounting, or asserting any claim or cause of action in connection with a trust for the primary benefit of a descendant of Margaret Hunt Hill of which she is not a current beneficiary, including but not limited to the [Lyda Hunt–Margaret Trust]; and

- order[ing] Caroline to dismiss with prejudice the lawsuit known as Cause No. PR-25-02919-2, Caroline M. Hill v. Margaret Keliher (as Independent Executor of the Estate of Albert G. Hill, Jr., Deceased), Carol E. Irwin (as Independent Executor of the Estate of Ivan Irwin, Jr., Deceased), Joyce E. Waller (as Co-Trustees of the Lyda Hunt-Margaret Trusts f/b/o Albert G. Hill, Jr.), and Galatyn Finance, LLC, Probate Court No. 2, Dallas County, Texas.

*Id.* at 16-17. Movants also seek attorney's fees and costs pursuant to the terms of the GSA. *Id.* at 17-18.

On January 6, 2026, Caroline Hill initially filed her response brief.[10] She contends, among other things, that (1) "this Court lacks subject matter jurisdiction, which it acknowledged in 2018, because the Lyda Hunt[–Margaret Trust] was never a part of the settlement, the Final Judgment, or the 1935 trusts derived from the instruments at issue in this case"; and (2) "the Anti-Injunction Act categorically bears the relief Movants seek, as none of the narrow exceptions apply." Doc. 2062 at 5. On January 13, 2026, Movants filed their reply. Accordingly, the Motion is ripe for disposition.

---

[10] On January 14, 2026, the court directed Caroline Hill to refile her Response and omit the GSA and Final Judgment (Doc. 2061). She complied with the court's directive on January 16, 2026 (Doc. 2062).

**Memorandum Opinion and Order – Page 12**

## II. Analysis

### A. Jurisdiction

Before turning to the parties' jurisdictional arguments, the court first addresses the scope of its continuing jurisdiction. Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (citations omitted); *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

On December 3, 2007, Defendants removed this action to federal court asserting federal question jurisdiction under 28 U.S.C. § 1331 based on Hill III's federal RICO claim. *See* Doc. 1 at 2-3. In the Final Judgment, the court expressly dismissed with prejudice "all claims, causes of action, counterclaims, crossclaims, and any other relief asserted or that could have been asserted," including the RICO claim—the only claim supporting federal question jurisdiction. Doc. 999 at 39. While the court's dismissal of all claims in this case eliminated its jurisdiction, in the Final Judgment, the court incorporated the GSA and retained jurisdiction to hear and resolve certain limited issues:

> IT IS ORDERED that, without affecting the finality of this Final Judgment, the Court hereby retains continuing jurisdiction over the implementation of the [Settlement] Agreement, the Final Judgment, and the Parties for purposes of implementing and enforcing the [Settlement] Agreement and this Final Judgment. IT IS FURTHER ORDERED that any controversy or claim arising after the date of execution of the [Settlement] Agreement and arising out of the [Settlement] Agreement or the Documentation shall be resolved by this Court. Each of the Agreeing Parties agrees and covenants not to, and IT IS ORDERED that none of the Agreeing Parties shall, file or assert any of the released Claims (in law or in equity).

Doc. 999 at 43, ¶ 45.

As previously explained, only July 3, 2018, the court rejected Hill III's attempt to expand the reach of the court's continuing jurisdiction under paragraph 45 of the Final Judgment beyond the MHTE and HHTE when he challenged the dissolution of the Lyda Hunt–Margaret Trust and sought an injunction to preserve the assets of the Lyda Hunt–Margaret Trust. *Hill*, 2018 WL 3239795, at *11. In its ruling, the court recognized that the: "*Settlement Agreement and Final Judgment **only** modified the MHTE and HHTE.*" *Id.* at 7 (original emphasis). Additionally, the court noted the limited nature of its continuing jurisdiction, when it stated:

> *With respect to any Hunt/Hill family trusts other than the MHTE and HHTE, therefore, this court does not have continuing jurisdiction, and issues pertaining to those family trusts are not properly before this court. The court declines to expand its continuing jurisdiction beyond the implementation and enforcement of the Settlement Agreement and Final Judgment.*

*Id.* (original emphasis).

With this background in mind, the court now addresses the parties' arguments regarding whether its continuing jurisdiction extends to the relief Movants seek. The court determines that its continuing jurisdiction does not apply to this subsequent, legal brouhaha between the parties.

Movants attempt to invoke the court's continuing jurisdiction under the Final Judgment. First, they assert that Caroline Hill, by filing the State Probate Case, "is violating the Waiver of Standing Clause in the [GSA] and the Final Judgment which prevents her from seeking an accounting or asserting claims about a trust of which she is not a current beneficiary." Doc. 2056 at 5. Next, they contend that, among other provisions, the court "specifically incorporated the Waiver of Standing Clause into its Final Judgment, which specifically states that this Court retains continuing jurisdiction over the implementation of the [GSA], the Final Judgment, and the Parties for purposes of implementing and enforcing the [GSA] and the Final Judgment." Doc. 2056 at 7-8. Movants also note that, "[s]ince entering the Final Judgment in November 2010, this Court has

repeatedly acknowledged and exercised its exclusive jurisdiction relating to the Settlement Agreement and the Final Judgment entering numerous orders enforcing the Final Judgment." *Id.* at 8. In the alternative, Movants argue that "the All Writs Act authorizes the Court to enjoin Caroline [Hill] from violating the Final Judgment by pursuing the Lawsuit." *Id.* at 9.

In response, Caroline Hill asserts as follows:

> Movants' Motion to Enforce is not a good-faith effort to implement a federal judgment. It is an attempt to avoid answering basic fiduciary questions properly raised in Texas probate court. Rather than defend their conduct in the forum charged with supervising trusts, Movants seek to use this Court's prior settlement as a shield against scrutiny that settlement never contemplated.

Doc. 2062 at 9. Caroline Hill argues that the Motion should be denied "because this Court lacks subject-matter jurisdiction." Specifically, she asserts:

> The Court's limited retention of jurisdiction in the Final Judgment authorizes only enforcement of the Settlement Agreement as written and does not extend to the Lyda Hunt–Margaret Trust, a separate trust that was never litigated, mentioned, or incorporated into the Settlement Agreement or Final Judgment. Movants' attempt to stretch the Waiver of Standing provision to reach the Lyda Trust contradicts the plain language of the agreement, produces absurd results under Texas law, and *conflicts with this Court's prior rulings expressly limiting its continuing jurisdiction to the MHTE and HHTE—not the Lyda Trust.*

*Id.* (emphasis added).

In reply, Movants reiterate their argument that the "Waiver of Standing Clause prohibits [Caroline Hill] from demanding information, seeking an accounting, or asserting any claim in connection with any trust for the primary benefit of a descendant of Margaret Hunt Hill [an MHH Trust] based upon action and inaction when [she] was not a current beneficiary." Doc. 2060 at 7. They contend "there is a genuine controversy between the parties regarding the interpretation and application of the Waiver of Standing Clause in the [GSA] and the Final Judgment, and this Court has the exclusive jurisdiction to determine this dispute." *Id.* at 3.

**Memorandum Opinion and Order – Page 15**

Notably absent from Movants' Motion and reply brief is any acknowledgment or discussion of the court's July 3, 2018 ruling that "[w]ith respect to any Hunt/Hill family trusts other than the MHTE and HHTE, therefore, this court does not have continuing jurisdiction, and issues pertaining to those family trusts are not properly before this court." *Hill*, 2018 WL 3239795, at *7. Instead, in their reply brief, Movants contend that the "Waiver of Standing Provision is not limited to only the MHTE and HHTE." Doc. 2060 at 4. Further, they assert that:

> This Court's prior orders did not (and could not) rewrite the Waiver of Standing Clause to narrow its application to only the MHTE or the HHTE. And the Court has never held that: (1) the parties to the Settlement Agreement and Final Judgment only agreed to waive standing relating to the trusts at issue the MHTE and HHTE; or (2) the "waiver" was limited to only those trusts.

*Id.* at 6 (internal punctuation omitted).

In making these statements, Movants misapprehend the essence of the court's July 3, 2018 decision, namely, that its continuing jurisdiction in this matter did not extend to "Hunt/Hill family trusts other than the MHTE and HHTE . . . ." *Hill*, 2018 WL 3239795, at *7. In light of the court's statement concerning the scope of its continuing jurisdiction, it did not need to rule, definitively, on the application, *vel non*, of the Waiver of Standing Clause to separate trusts that were never litigated, mentioned, or incorporated into the GSA or Final Judgment. Further, the court lacks authority to "render an advisory opinion on hypothetical or abstract facts." *U.S. Bank Tr. Nat'l Ass'n as Tr. of Tiki Series IV Tr. v. Walden*, 124 F.4th 314, 323 (5th Cir. 2024) ( citation omitted). This rule "ensure[s] that federal courts determine specific disputes between parties, rather than hypothetical legal questions, and in doing so, conserve judicial resources." *Texas v. Travis Cnty.*, 272 F. Supp. 3d 973, 980 (W.D. Tex. 2017) (citing *Flast v. Cohen*, 392 U.S. 83, 96-97 (1968)), *aff'd*, 910 F.3d 809 (5th Cir. 2018).

**Memorandum Opinion and Order – Page 16**

*The court previously determined that it lacked jurisdiction over Hunt/Hill family trusts other than the MHTE and HHTE. Hill*, 2018 WL 3239795, at *7. Movants offer no explanation for their failure to address the court's scope of jurisdiction, as enunciated by the undersigned on July 3, 2018, which unequivocally does not extend to issues arising under the Lyda Hunt–Margaret Trust. As such, the court determines Movants have forfeited and waived any argument they might seek to make in this regard. Although there is a difference between forfeiture and waiver, the court believes both have been satisfied in this instance. As aptly described by the United States Supreme Court, "[w]aiver is different than forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (internal quotation marks and citations omitted).

Here, Movants should have raised and addressed the court's previous ruling—limiting its continuing jurisdiction to issues arising out of the MHTE and HHTE—in their Motion and reply. In any event, it was incumbent upon Movants to address the court's jurisdictional ruling in their reply brief, as it was a substantial part of Caroline Hill's response to the Motion. Instead, Movants limit their focus to the terms of the Waiver of Standing Clause, to the exclusion of all else. Movants' cursory discussion of the Waiver of Standing Clause in their reply brief does not put the issue in play. In other words, an oblique discussion of matters unrelated to the court's limited retention of jurisdiction constitutes inadequate briefing. That Movants were on notice and did not address the court's jurisdictional limitations in a timely manner constitutes a forfeiture and a waiver. Knowing the court's continuing jurisdiction under the Final Judgment is of *paramount significance*—as Hill III's RICO claims have been dismissed with prejudice, leaving no federal claims—Movants ignored it. The only reasonable inference the court is able to make is that addressing the jurisdictional parameters of the court's continuing jurisdiction, as enunciated by the

court in its July 3, 2018 decision, would be adverse to Movants' current position. Moreover, Movants were clearly on notice of the court's earlier decision in which it unambiguously ruled that its exercise of continuing jurisdiction was limited to the MHTE and HHTE, yet they did not address this earlier decision of the court in their initial brief. Movants' failure to directly address the parameters of the court's continuing jurisdiction, as articulated in its July 3, 2018 decision, constitutes forfeiture.

In addition, relevant authority from the Fifth Circuit establishes that Movants have also waived their argument regarding jurisdiction. A litigant's failure to raise, address, or brief an argument in the district court constitutes a waiver of that issue on appeal. *Fruge v. Amerisure Mut. Ins. Co.*, 663 F.3d 743, 747 (5th Cir. 2011) ("Failure to raise an argument before the district court waives that argument" on appeal); *Lookingbill v. Cockrell*, 293 F.3d 256, 264 (5th Cir. 2002) (same) (citations omitted); *see also Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185, 190 (5th Cir. 2007) (explaining that inadequately briefed issues are considered waived) (citing *Burnley v. City of San Antonio*, 470 F.3d 189, 200 n.10 (5th Cir. 2006)) ("Burnley also seeks an award of appellate attorney's fees, but provides neither legal authority nor evidence in support of such an award. Accordingly, her argument is waived for inadequate briefing."); *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 407 n.9 (5th Cir. 2009) (a single sentence claim that a subrogation clause required payment, without further explanation, justified waiver on grounds of inadequate briefing) (citing *Nichols*, 495 F.3d at 190).

District courts have concluded, by analogy, that the failure to address, brief, or respond to an argument or issue in the district court also waives that argument or issue in the district court. *See, e.g.*, *Magee v. Life Ins. Co. of N. Am.*, 261 F. Supp. 2d 738, 748 n.10 (S.D. Tex. 2003) ("[F]ailure to brief an argument in the district court waives that argument in that court"); *see also*

*Kellam v. Metrocare Servs.*, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013) (Solis, J.) ("Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue.") (internal quotation marks omitted), *aff'd,* 560 F. App'x 360 (5th Cir. 2014); *Grimes v. Santander Consumer USA*, 2023 WL 5022276, at *5 n.6 (N.D. Tex. July 13, 2023) (Ramirez, J.), *report and recommendation adopted by*, 2023 WL 5021786 (N.D. Tex. Aug. 5, 2023) (Starr, J.) ("While the 'issues-not-adequately-briefed-are-waived rule' in [Fifth Circuit] cases derives from the Federal Appellate Rules of Procedure, Local Civil Rule 7.1 similarly requires motions and responses to be 'accompanied by a brief that sets forth the moving party's contentions of fact and/or law, and argument and authorities.'") (cleaned up) (citation omitted).

The Fifth Circuit has also held that a party abandons a theory of recovery or defense by failing to pursue or defend it during the course of litigation in the district court. *See Black v. North Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) ("[Plaintiff's] failure to pursue [her] claim beyond her complaint constituted abandonment."); *Vela v. City of Houston*, 276 F.3d 659, 679 (5th Cir. 2001) ("The vague language [in defendant's original pleading] coupled with the complete absence of the issue in all subsequent documents" constituted abandonment of the defense.); *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1164 (5th Cir. 1983) (a party "in his [or her] opposition to a motion for summary judgment cannot abandon an issue and then . . . by drawing on the pleadings resurrect the abandoned issue.") (citation and internal quotation marks omitted).

Finally, even if the court were to entertain Movants' contention that the Waiver of Standing Clause requires it to enjoin Caroline Hill from seeking an accounting related to the Lyda Hunt–Margaret Trust, as she "is not a current beneficiary of a trust for the primary benefit of a descendant of [Margaret Hunt Hill]"—an argument that fails to address head-on the court's July 3, 2018 decision in which it declined to expand its continuing jurisdiction to reach the Lyda Hunt–Margaret

Trust—applying Movants' interpretation of the Waiver of Standing Clause would lead to an absurd result. Under Texas law, which both parties agree applies here, a court is to avoid when possible "a construction [that] is unreasonable, inequitable, and oppressive." *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987); *see also Pavecon, Inc. v. R-Com, Inc.*, 159 S.W.3d 219, 222 (Tex. App.—Fort Worth 2005, no pet.) (stating that when interpreting a contract, a court should avoid, if possible, "a construction that is unreasonable, inequitable, or oppressive, or would lead to an absurd result.") (emphasis added).[11]

The absurdity or unreasonableness of Movants' position is straightforward: this matter, concluded in 2010, would continue *ad infinitum*, as Movants would be given a blank check to continue this litigation for successive generations. As the Fifth Circuit aptly and previously noted, "[a]fter 'protracted [and] complicated' litigation, *Hill v. Schilling*, 593 F. App'x 330, 331 (5th Cir. 2014), squabbling over the trusts was supposedly ended by a settlement agreement confected in 2010. Yet, over the next four years, our court 'weighed in on the settlement' four times. *Id.* This

---

[11] "In construing a contract under Texas law, courts must examine and consider the entire writing and give effect to all provisions such that none are rendered meaningless." *International Turbine Servs., Inc. v. VASP Brazilian Airlines*, 278 F.3d 494, 497 (5th Cir. 2002) (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). Contract provisions "cannot be read in isolation; all of the provisions must be considered with reference to the whole." *In re Ford Motor Co.*, 211 S.W.3d 295, 298 (Tex. 2006); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003) ("No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument."). Contract provisions must also be interpreted "so as to avoid meanings that produce unreasonable, oppressive, or absurd results." *Mid-Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F.3d 105, 114 (5th Cir. 2010) (citation omitted); *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311 (Tex. 2005) (per curiam) ("[C]ourts construe contracts from a utilitarian standpoint bearing in mind the particular business activity sought to be served, and will avoid when possible and proper a construction [that] is unreasonable, inequitable, and oppressive."). In addition, courts "presume parties intend what the words of their contract say" and "strive to honor the parties' agreement and not remake their contract by reading additional provisions into it." *Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010) (citations omitted).

appeal makes it five." *Hill v. Washburne*, 953 F.3d at 301. Unfortunately, the "squabbling" has not relented since the Fifth Circuit made its pronouncement more than five years ago in 2020.

Caroline Hill provides two hypotheticals to demonstrate the problems with Movants' attempt to use the Waiver of Standing Clause to enjoin the State Probate Case:

> Under Movants' interpretation, [the Waiver of Standing Clause] would apply if Ms. Hill's father created a trust from lottery winnings with Caroline as the primary beneficiary and her two brothers as contingent beneficiaries. Accordingly, Movants' position must be rejected because it would create an absurd result. Similarly, if Ms. Hill created a trust from lottery winnings for her children, section 5(b) would apply to that trust. Once again, this absurdity demonstrates the fallacy in Movants' position.

Doc. 2062 at 13 (footnote omitted).

The court is mindful that the Lyda Hunt–Margaret Trust is a separate trust that was never litigated, mentioned, or incorporated into the GSA or Final Judgment. Movants' attempt to expand and stretch the Waiver of Standing provision to reach the Lyda Hunt–Margaret Trust not only produces absurd and unreasonable results under Texas law, *see supra*, but also conflicts with this court's prior ruling expressly limiting its continuing jurisdiction to the MHTE and HHTE—not the Lyda Hunt–Margaret Trust.

For these reasons, the court concludes that, while it retains continuing jurisdiction with respect to any controversy or claim arising after the date of execution of the GSA and arising out of the GSA pursuant to paragraph 45 of the Final Judgment, its continuing jurisdiction **only** reaches as far as the MHTE and HHTE—the specific trusts at issue in this litigation—and it does not extend to issues involving the Lyda Hunt–Margaret Trust.

This determination is consistent with the court's prior ruling (*see Hill*, 2018 WL 3239795, at *7, *11) rebuffing Hill III's challenge to Hill Jr.'s and his co-trustees' 2016 dissolution of the Lyda Hunt–Margaret Trust, as well as Hill III's attempt to invoke the court's continuing

jurisdiction by seeking an injunction to preserve the assets of the Lyda Hunt–Margaret Trust and to prevent the dissipation, concealment, and further transfer of its assets. *See* Doc. 1877. Movants' requested relief with respect to Caroline Hill's actions is akin to Hill III's requested relief with respect to Hill Jr.'s and his co-trustees' dissolution of the Lyda Hunt–Margaret Trust. Both seek to invoke the court's continuing jurisdiction to enjoin actors in state court raising issues arising under Hunt/Hill family trusts *other than the MHTE and HHTE*. When the court rejected Hill III's attempts to enjoin Hill Jr. and his co-trustees from dissolving the Lyda Hunt–Margaret Trust, concluding its lacked continuing jurisdiction with respect to Hunt/Hill family trusts other than the MHTE and HHTE, there was nary an outcry from Movants (or any other party). In acting as an umpire, the court calls balls, outs, and strikes as to both teams. The participants expect such calls to be fair and even-handed, and the court is merely performing its judicial obligations consistent with its prior ruling. Therefore, the court sees no pathway to expand its jurisdiction and hold that the actions taken by Caroline Hill in the State Probate Case fall within the ambit of the MHTE and HHTE and, concomitantly, the reach of the court's continuing jurisdiction.[12]

In addition, the court *declines* to accept Movants' invocation of the All Writs Acts as an alternative theory of jurisdiction. *See* Doc. 2056 at 9-10. The All Writs Act does not provide an independent grant of jurisdiction. *See* 28 U. S. C. § 1651(a) (permitting writs "necessary or appropriate in aid of" a court's jurisdiction). The "express terms of the All Writs Act confine a

---

[12] Movants appear to think that the court's continuing jurisdiction is unlimited. Such is not the case. Even if the court were to accept Movants' argument that Caroline Hill's actions pertaining to the Lyda Hunt–Margaret Trust fall within its continuing jurisdiction, this case could go on indefinitely. In other words, if the court does not take a common-sense approach, this matter could continue *ad infinitum*. All parties involved in the settlement contemplated that there would be an eventual cessation to this litigation, initiated by Hill III in 2007, concerning "the management of two trusts created by the late Texas oil magnate H.L. Hunt." *Hill v. Schilling*, 495 F. App'x 480, 482 (5th Cir. 2012). Otherwise, they would not have agreed to settle the litigation.

**Memorandum Opinion and Order – Page 22**

court 'to issuing process in aid of its existing statutory jurisdiction; the Act does not enlarge that jurisdiction.'" *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 33 (2002) (cleaned up) (quoting *Clinton v. Goldsmith*, 526 U.S. 529, 534-535 (1999)). This Act is to be construed narrowly and applied "only under such extraordinary circumstances . . . that indisputably *demand* such a course of action as absolutely necessary to vouchsafe the central integrity of the federal court judgment." *Singh v. Duane Morris LLP*, 538 F.3d 334, 341 (5th Cir. 2008) (original ellipses and emphasis) (citation omitted). Movants have failed to persuade the court that invocation of the All Writs Act here is either appropriate or warranted.

For these reasons, the court **denies** the Motion for lack of jurisdiction. As the court lacks jurisdiction, it cannot address Movants' application for a temporary restraining order, preliminary injunction, or permanent injunction.

## B.  The Anti-Injunction Act

In addition, as a separate and independent reason to deny the Motion, the court agrees with Caroline Hill that the Anti-Injunction Act precludes Movants from obtaining the requested relief.

The Anti-Injunction Act (the "Act") provides that "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. As the United States Supreme Court has noted, the Act "goes back almost to the beginnings of our history as a Nation," and its basic purpose is to avert "needless friction between state and federal courts." *Mitchum v. Foster*, 407 U.S. 225, 231-32 (1972).

Caroline Hill contends that "[t]he relief that Movants seek—enjoining a pending state court proceeding—falls within the plain language of the Anti-Injunction Act[] and does not satisfy any of the three narrow exceptions." Doc. 2062 at 10-11. The court agrees, as the Act contains three

limited and narrow exceptions. 28 U.S.C. § 2283. Those exceptions only apply when the injunction is (1) expressly authorized by an Act of Congress; (2) necessary to aid a federal court in its jurisdiction; or (3) necessary to protect or effectuate the federal court's judgments. *Id.* Federal courts cannot enjoin state court proceedings unless an injunction fits precisely within one of the Anti-Injunction Act's three designated exceptions. *Atl. Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970). Otherwise stated, "the Act is an absolute prohibition against any injunction of any state-court proceedings, unless the injunction falls within one of the three specifically defined exceptions in the Act." *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 630 (1977). Further, the "Act's purpose is to forestall the inevitable friction between the state and federal courts that ensues from the injunction of state judicial proceedings by a federal court." *Id.* (citation omitted).

The first exception to the Act requires that the requested relief be expressly authorized by an Act of Congress. 28 U.S.C. § 2283. Movants have not and cannot point to a single federal law to establish that their request for relief is expressly authorized. Thus, the first exception has not been satisfied.

The second exception to the Act permits a federal court to stay proceedings in a state court only when an injunction is necessary to protect the federal court's jurisdiction. *Id.* Under this exception, courts "are guided by the overarching principle that federal courts are to be cautious about infringing on the legitimate exercise of state judicial power." *State of Tex. v. United States*, 837 F.2d 184, 186 (5th Cir. 1988) (citing *Younger v. Harris*, 401 U.S. 37, 44-45 (1971)). Movants have not demonstrated that their requested relief is necessary to aid the court in the exercise of its jurisdiction, specifically when the court has already explicitly narrowed its continuing jurisdiction

in this case to disputes involving the MHTA and HHTE, trusts in the GSA and incorporated into the Final Judgment.

The third exception to the Act allows a federal court to issue an injunction when necessary to protect or effectuate its judgments. 28 U.S.C. § 2283. The Fifth Circuit applies a four-part test to determine whether an injunction staying a state proceeding properly falls within this exception. *See New York Life Ins. Co. v. Gillispie*, 203 F.3d 384, 387 (5th Cir. 2000). First, "the parties in a later action must be identical to (or at least in privity with) the parties in a prior action." *Id.* Second, the judgment in the prior action must have been rendered by a court of competent jurisdiction. *Id.* Third, "the prior action must have concluded with a final judgment on the merits." *Id.* Fourth, the "same claim or cause of action must be involved in both suits." *Id.*

Although the first part of the test may be satisfied—as Caroline Hill is the Plaintiff in the State Probate Case and was represented virtually in this case by her parents with respect to the GSA and by a court-appointed guardian-ad-litem with respect to the Final Judgment—the remaining three parts of the test have not been met. The second part of the test requires that the Dallas Probate Court must have rendered a judgment—which has not occurred. The third part of the test requires that the state court judgment must have been rendered on the merits—which has not occurred. Finally, the fourth part of the test requires that the same claim or cause of action must be involved in both suits—which is not the case. Under these circumstances, in the alternative to denying the Motion for lack of jurisdiction, the court also *denies* the Motion under the Anti-Injunction Act.[13]

---

[13] In light of the court's decision, it need not reach Caroline Hill's remaining arguments that (1) "principles of federal abstention independently preclude the extraordinary relief Movants seek[;]" and (2) "[e]ven if the Court were to conclude that the [GSA] and Final Judgment somehow reached the Lyda Trust, which they do not, federal jurisdiction is still foreclosed by the probate exception." Doc. 2062 at 18, 20.

**Memorandum Opinion and Order – Page 25**

### III.     Conclusion

For the reasons previously set forth herein, the court **denies** the Motion to Enforce Final Judgment and Settlement Agreement and Application for Temporary Restraining Order, Preliminary Injunction and Permanent Injunction (Doc. 2055). Further, all allowable and reasonable costs of court incurred by Caroline Hill are taxed against Movants.

**It is so ordered** this 30th day of January, 2026.

Sam A. Lindsay
United States District Judge